# EXHIBIT A

# SECURED PROMISSORY NOTE

$32,500,000.00

Dated: As of September 20, 2019
New York, New York

**SECURED PROMISSORY NOTE** (hereinafter, this "**Note**") made as of the 20th day of September, 2019, by **MO 2999TC, LLC**, a Delaware limited liability company having an address at 13901 Midway Road, Suite 102-243, Dallas, Texas 75244 (the "**Maker**"), for the benefit of **2999 Turtle Creek LLC**, a Delaware limited liability company, its successors and/or assigns, as their interests may appear (hereinafter, the "**Payee**"), having offices at 520 Madison Avenue, Suite 3501, New York, NY 10022.

**FOR VALUE RECEIVED**, Maker promises to pay to the order of Payee, at 520 Madison Avenue, Suite 3501, New York, NY 10022, or at such other place as Payee may designate to Maker in writing from time to time, the principal sum of THIRTY-TWO MILLION FIVE HUNDRED THOUSAND AND 00/100 DOLLARS ($32,500,000.00), together with interest thereon at the Interest Rate (as defined below) (or the Default Rate, as defined below, if applicable), calculated in accordance with the terms and conditions set forth in this Note, from and including the date of this Note to the date this Note is paid in full, as follows:

A. On the date hereof (the "**Closing Date**"), interest on the principal sum of this Note from (and including) the Closing Date to September 30, 2019 at the Interest Rate.

B. Thereafter, interest only at the Interest Rate on the outstanding Principal Balance (as defined below) shall be due monthly and shall be paid monthly in arrears, commencing on November 1, 2019, and monthly thereafter on the first (1st) day of each month (the "**Payment Date**") until the Maturity Date (as defined below) (each such monthly payment, a "**Monthly Payment**").

C. Thereafter, on the Maturity Date, the entire outstanding principal balance of this Note, together with all accrued and unpaid interest through the Maturity Date at the Interest Rate, and all other sums payable to the holder of this Note (whether pursuant to this Note or the Deed of Trust or Other Security Documents (as such terms are hereinafter defined)) shall become due and payable.

1. For the purposes of this Note, these terms shall be defined as follows:

   a. The term "**Alternative Rate**" shall mean, in the event LIBOR is no longer available or charging of interest that is calculated based upon LIBOR would violate applicable law or regulation, then in Payee's sole discretion, the Alternative Rate shall be used instead of the Libor Based Rate, which shall mean either the Prime Based Rate (as hereinafter defined) or ARRC Based Rate, as hereinafter defined, in Payee's sole discretion as to whether Prime Based Rate or ARRC Based Rate shall be used.

   b. The term "**ARRC Based Rate**" shall mean the sum of (i) Ten and 00/100 Percent

(10.00%) per annum plus (ii) the ARRC Rate (as hereinafter defined).

c. The term "**ARRC Rate**" shall mean such replacement of LIBOR as may be approved by the Alternative Reference Rates Committee (ARRC) (or comparable organization) and approved and/or published by the Federal Reserve; <u>provided</u>, <u>however</u>, in no event shall the ARRC Rate be less than 2.3017%.

d. The term "**Business Day**" shall mean a weekday, Monday through Friday, except a legal holiday or a day on which banking institutions in New York, New York are authorized by law to be closed.

e. The term "**Debt**" shall mean all principal, interest and other sums of any nature whatsoever, which may or shall become due to Payee in accordance with the provisions of this Note, the Deed of Trust or Other Security Documents.

f. The term "**Deed of Trust**" shall mean that certain Deed of Trust, Security Agreement and Fixture Filing dated as of the date hereof, in the principal amount of $32,500,000.00, encumbering premises located at 2999 Turtle Creek, Dallas, Texas 75219 (the "**Property**").

g. The term "**Interest Period**" shall mean, initially, the period commencing on (and including) the Closing Date and ending on (and including) the last day of the calendar month in which the Closing Date occurs. Thereafter, each Interest Period shall commence on (and include) the first day of each calendar month immediately following the last day of the previous Interest Period and end on (and include) the last day of such calendar month.

h. The term "**Interest Rate**" as used in this Note shall mean interest at the annual rate equal to the greater of (i) Ten and 00/100 Percent (10.00%) per annum plus LIBOR (collectively, the "**LIBOR Based Rate**") (or the Alternative Rate, as applicable), and (ii) Twelve and 40/100 Percent (12.40%) per annum (the "**Fixed Base Rate**"), adjusted for each Interest Period based upon the greater of the LIBOR Based Rate (or the Alternative Rate, as applicable) and the Fixed Base Rate at 11:00 a.m. (E.S.T.) two (2) Business Days prior to the Reset Date (as defined below) applicable to such Interest Period (or the date hereof with respect to the first Interest Period hereunder), which Interest Rate shall be applicable from the date of this Note to the Maturity Date, except as otherwise expressly provided herein.

i. The term "**LIBOR**" shall mean the London Interbank Offered Rate (as defined below) for U.S. dollar deposits being delivered in the London interbank eurodollar market of one (1) month maturity (One Month LIBOR) as reported in the Money Rates Section of the Wall Street Journal (or such other commercially available source providing quotations of such London Interbank Offered Rate as may be designated by Payee from time to time) as of 11:00 a.m., E.S.T., on a Business Day (or if not so reported, then as determined by Payee from another recognized source of interbank quotation), rounded up to the nearest one-eighth of one percent (1/8%). A certificate made by an officer of Payee stating the LIBOR in effect on any given

day, for the purposes hereof, shall be conclusive evidence of the LIBOR in effect on such day. The LIBOR is a base reference rate of interest adopted by Payee as a general benchmark from which Payee determines the floating interest rates chargeable on various loans to borrowers with varying degrees of creditworthiness, and Maker acknowledges and agrees that Payee has made no representations whatsoever that the LIBOR is the interest rate actually offered by Payee to borrowers of any particular creditworthiness. For the avoidance of doubt, LIBOR shall never be less than [Two and Four-Tenths Percent (2.40%)].

j. The term "**Loan Documents**" shall mean this Note, the Deed of Trust and all and any of the documents now or hereafter executed by Maker and/or others and by or in favor of Payee, which evidences, secures or guarantees all or any portion of the payments due under this Note or otherwise is executed and/or delivered in connection with this Note, the Deed of Trust, guarantees and agreements.

k. The term "**London Interbank Offered Rate**" shall mean the London interbank offered rate administered by ICE Benchmark Administration Limited (or any other Person which takes over the administration of such rate).

l. The term "**Maturity Date**" shall mean the earlier of (i) October 1, 2020, as the same may be extended pursuan to the terms hereof, or (ii) such sooner date, by acceleration or otherwise, as may be applicable pursuant to the terms hereof, at which time the entire Debt shall become due and payable. For the avoidance of doubt, upon Maker exercising its option to extend the Maturity Date to the First Extended Term Maturity Date or the Second Extended Term Maturity Date, as applicable, pursuant to Section 7 below, all references to Maturity Date in the Loan Documents shall be deemed to mean the First Extended Term Maturity Date or the Second Extended Term Maturity Date, as applicable.

m. The term "**Other Security Documents**" shall mean any of the documents other than this Note or the Deed of Trust, now or hereafter executed by the Maker or others, and by or in favor of Payee, which wholly or partially secure or guarantee payment of this Note, or which otherwise pertain to the loan evidenced by this Note (the "**Loan**").

n. The term "**Person**" shall mean an individual, a corporation, a partnership, a limited liability company, an association, a trust or any other entity or organization, including a government or political subdivision or an agency or instrumentality thereof.

o. The term "**Prime Based Rate**" shall mean the sum of (i) Seven and 15/100 Percent (7.40%) per annum plus (ii) the Prime Rate (as hereinafter defined).

p. The term "**Prime Rate**" shall mean the annual rate of interest which is the highest prime lending rate of interest most recently in effect (as published in the Money Rates Section in The Wall Street Journal or if The Wall Street Journal fails to publish such rate, such other publication as Payee shall designate in its sole

discretion). A certificate made by an officer of Payee stating the Prime Rate in effect on any given day, for the purposes hereof, shall be conclusive evidence of the Prime Rate in effect on such day. The Prime Rate is a base reference rate of interest adopted by Payee as a general benchmark from which Payee determines the floating interest rates chargeable on various loans to borrowers with varying degrees of creditworthiness and Maker acknowledges and agrees that Payee has made no representations whatsoever that the Prime Rate is the interest rate actually offered by Payee to borrowers of any particular creditworthiness. In the event that the concept of the Prime Rate shall no longer exist, then the Prime Rate shall be deemed to be the Prime Rate as last reported in The Wall Street Journal.

q. The term "**Principal Balance**" shall mean the outstanding principal balance of this Note from time to time.

r. The term "**Reset Date**" shall mean the first day of each Interest Period.

2. Any capitalized terms used herein but not defined shall have the meanings ascribed to them in the Loan Documents or Other Security Documents.

3. Interest shall be computed on the basis of a year of 360 days and actual days elapsed.

4. The failure to make any payment required under this Note or the occurrence of any Event of Default (as such term is defined in the Loan Documents) shall constitute an Event of Default under this Note.

5. Upon the occurrence of an Event of Default: (a) interest shall accrue hereunder at the Default Rate commencing upon the occurrence of the Event of Default through the earlier of the dater (i) such Event of Default is cured as provided for herein, in the Loan Documents, or as otherwise permitted by Lender in Lender's sole discretion, and so long as no other Events of Default shall then exist, (ii) the payment of all amounts due to Lender under the Loan, (or (iii) the entry of a Judgment of Foreclosure and Sale, (b) Payee may, at its option, without any written notice given to the Maker (such notice being expressly waived), DECLARE AND DEMAND this Note and the Debt immediately due and payable and (c) Payee may pursue all rights and remedies available hereunder or under Deed of Trust and the Other Security Documents. Payee's rights, remedies and powers, as provided in this Note or the other Loan Documents are cumulative and concurrent, and may be pursued singly, successively or together against Maker, any Guarantor of the indebtedness evidenced hereby or against any collateral granted or pledged by Maker under any of the Loan Documents or any other collateral security given at any time to secure the payment hereof, all at the sole discretion of Payee. Additionally, Payee may resort to every other right or remedy available at law or in equity without first exhausting the rights and remedies contained herein, all in Payee's sole discretion. Failure of Payee, for any period of time or on more than one occasion, to DECLARE AND DEMAND this Note and the Debt immediately due and payable shall not constitute a waiver of the right to exercise the same at any time from and after any Event of Default.

6. A payment shall not be deemed to have been made on any day unless such payment has been received by Payee, at the required place of payment, in U.S. dollars by no later than 1:00 p.m.

(New York time) on such day. Whenever any payment to Payee hereunder would otherwise be due (except by reason of acceleration) on a day that is not a Business Day, such payment shall instead be due on the next succeeding Business Day. If any installment of principal, interest or other sums due hereunder or under the Deed of Trust or any Other Security Document are not paid on the date on which same are due, such payment shall be deemed late and the Maker shall pay to the Payee a late charge of ten percent (10.00%) of such unpaid installment as a late payment charge, such late charge to be immediately due and payable without demand by the Payee. Notwithstanding anything to the contrary, Monthly Payments shall be paid first from the Interest Reserve (as hereinafter defined) and all payments due under this Note, the Deed of Trust and the Loan Documents shall be made by means of wire transfer to the order of Payee, as directed by Payee, and Payee shall have the absolute right to reject any payment not made by wire transfer. In addition, Maker shall pay to Payee the sum of $1,000.00 for any payment which is returned for any reason by Maker's bank unpaid.

7. Subject to Payee's due diligence review and completion of a credit check, satisfactory to Payee in its sole discretion, and provided that: (i) this Note, the Deed of Trust and the Other Security Documents are in full force and effect and there exists no Event of Default at the time of the giving of Maker's notice to extend, (ii) Maker has made all Monthly Payments in accordance with the terms and conditions hereof, (iii) there have been no prior defaults under the Loan Documents, and (iv) Maker establishes with and funds to Payee an interest reserve (or, if one is established simultaneously herewith, then replenishes such interest reserve) for the payment of all interest to become due at the applicable Interest Rate during the applicable Extended Term, as calculated by Payee, including, without limitation, execution of all documentation reasonably required by Payee to establish such interest reserve, if applicable, then Maker shall have the option, upon providing written notice to Payee (in the manner provided in the Deed of Trust) to extend the term of this Note for two (2) consecutive periods of six (6) months each (each an "**Extended Term**", with the applicable extended maturity dates being known as the "**First Extended Term Maturity Date**" and the "**Second Extended Term Maturity Date**", if and as applicable). Maker's notice of its intention to extend the term of this Note shall not be effective unless, with respect to each Extended Term, such notice is delivered along with payment in an amount equal to One Percent (1.00%) of the sum of $32,500,000.00, regardless of the amount advanced to Maker (the "**Extension Fee**"). Maker's notice must be received by Payee no earlier than one hundred twenty (120) days prior to the initial Maturity Date (or the First Extended Term Maturity Date, if and as applicable) and no later than thirty (30) days prior to the Maturity Date (or the First Extended Term Maturity Date, if and as applicable), ***time being of the essence with respect thereto***. Any extension of the term as set forth herein shall be on the same terms and conditions of this Note, the Deed of Trust and the Other Security Documents, except as otherwise provided in this Note, the Deed of Trust and the Other Security Documents.

8. If Maker does not properly exercise the extension option extending the term of this Note until the First Extended Term Maturity Date (and the Second Extended Term Maturity Date, if and as applicable), in accordance herewith, and Maker does not otherwise pay the Debt to Payee on or before the Maturity Date (or the First Extended Term Maturity Date, if and as applicable), then Payee may elect, at its sole discretion, to extend the term of this Note until the First Extended Term Maturity Date (or the Second Extended Term Maturity Date, if and as applicable) (each, a "**Payee's Option to Extend**") by delivering written notice thereof to Maker (in the manner provided in the

Deed of Trust). If Payee elects to exercise a Payee's Option to Extend in accordance herewith, an extension fee in the amount of One and 50/100 Percent (1.50%) of the sum of $32,500,000.00, regardless of the amount actually advanced to Maker (the "**Deferred Extension Fee**") shall be earned as of the date Payee exercises each such option, but payment of a Deferred Extension Fee shall be deferred until the earlier of the (i) the First Extended Term Maturity Date (or the Second Extended Term Maturity Date, if and as applicable); (ii) the date upon which this Note is prepaid in full; or (iii) the occurrence of an Event of Default under the Loan Documents.

9. As additional consideration to Payee for the making of the Loan, Maker shall remit to Payee, due, owing and earned on the earlier of (a) the Maturity Date (subject to extension as contained herein), (b) the date of the acceleration of the Principal Balance in accordance with the Loan Documents, or (c) the date upon which this Note is prepaid in full (or in part, with such proportionate share of the Exit Fee being paid in connection therewith), **TIME BEING OF THE ESSENCE**, in addition to the entire Principal Balance then remaining unpaid, all accrued and unpaid interest, any Prepayment Premium due and owing and all others sums due and owing under the Loan Documents, the sum equal to **$325,000.00** (the "**Exit Fee**"). The Exit Fee is to be paid in accordance with the terms hereof in addition to, and separate from, any other fee, cost or sum due hereunder or under the Deed of Trust or Loan Documents, including the Prepayment Premium. Payment of the Exit Fee is an absolute obligation of the Maker, and the Exit Fee shall be paid regardless of whether the Maturity Date is as stated herein, or earlier due to acceleration of the Principal Balance by Payee in accordance with the terms hereof and regardless of the amount actually advanced under the Loan Documents; provided, however, if the Exit Fee constitutes interest under applicable law, the amount of the Exit Fee will be automatically reduced to an amount that, when added to all other amounts due hereunder and under the other Loan Documents that constitute interest under applicable law, will not exceed the maximum amount of interest that may be contracted for, charged or received with respect to the Loan under applicable law for the actual period of time such loan is outstanding. Notwithstanding the foregoing, the Exit Fee shall be waived in the event Payee makes a construction or other loan to Maker secured by the Property to replace the Loan, which construction or other loan Payee may provide in its sole and absolute discretion on terms and conditions satisfactory to Payee.

Amounts paid pursuant to the Exit Fee and the Prepayment Premium shall and are intended to be exclusive of each other, and payment of the Exit Fee and the Prepayment Premium shall not act as an offset or reduction of the other.

10. (a) Provided that Maker shall pay to Payee (in addition to the Exit Fee and such other amounts coming due under the Loan through the date of such prepayment) a prepayment premium in an amount equal to twelve (12) Monthly Payments with respect to the initial term (excluding short term interest paid for the partial month of September, 2019) which would have been due and payable to Payee absent prepayment of the obligations hereunder (with the Interest Rate used to calculate the Prepayment Premium (as defined below) being that on the date of the Prepayment Notice (as defined below), if the Interest Rate is variable hereunder), less any Monthly Payments of interest actually paid in full by Maker and received by Payee, such that Payee shall have received not less than twelve (12) full Monthly Payments hereunder (based upon the principal sum of $32,500,000, regardless of the amount actually advanced to Maker) (the "**Initial Term Prepayment Premium**"), then Maker shall have the right to prepay the Principal Balance in whole

only, along with interest, additional interest, and any other sums due under this Note, the Deed of Trust or the Other Security Documents upon prior irrevocable written notice sent by Maker (an "**Initial Term Prepayment Notice**"), setting forth the intended prepayment date ("**Initial Term Prepayment Date**"), which Initial Term Prepayment Notice must be received by Payee not more than sixty (60) days prior to the Initial Term Prepayment Date and not less than thirty (30) days prior to the Initial Term Prepayment Date and on the Initial Term Prepayment Date, Maker shall make prepayment as herein above provided, failure of which to timely prepay shall result in a $1,000 prepayment cancellation fee to compensate Payee for expenses associated with Maker's failure to comply with its request and is not a penalty. Notwithstanding anything to the contrary contained herein, unless prepayment is tendered on the first day of a calendar month and unless Maker has tendered the Monthly Payment for the month in which the prepayment of the Debt occurs, Maker shall along with the prepayment of the Debt pay the entire Monthly Payment due for the month in which the Initial Term Prepayment Date occurs (which amount shall constitute additional consideration for the prepayment).

(b) Notwithstanding anything to the contrary contained herein, if Maker elects to exercise its option to extend the term of this Note in accordance herewith (or if Payee exercises Payee's Option to Extend), simultaneously with any prepayment of the Debt during the Extended Term, in addition to the Initial Term Prepayment Premium, Maker shall also pay to Payee an additional prepayment premium in an amount equal to six (6) Monthly Payments (based upon the principal sum of $32,500,000, regardless of the amount actually advanced to Maker) which would have been due and payable to Payee during and on account of the Extended Term, absent prepayment of the obligations hereunder (with the Interest Rate used to calculate the Extended Term Prepayment Premium being that on the date of the Extended Term Prepayment Notice, if the Interest Rate is variable hereunder), less any Monthly Payments of interest actually paid in full by Maker and received by Payee during and on account of the Extended Term, such that Payee shall have received not less than six (6) full Monthly Payments hereunder (based upon the principal sum of $32,500,000, regardless of the amount actually advanced to Maker) during and on account of the Extended Term (the "**Extended Term Prepayment Premium**" and together with the Initial Term Prepayment Premium, hereinafter referred to, collectively, as the "**Prepayment Premium**"), then Maker shall have the right to prepay the Principal Balance in whole only, along with interest, additional interest, and any other sums due under this Note, the Deed of Trust or the Other Security Documents upon prior irrevocable written notice sent by Maker (an "**Extended Term Prepayment Notice**" and together with the Initial Term Prepayment Notice, hereinafter referred to, collectively, as the "**Prepayment Notice**"), setting forth the intended prepayment date ("**Extended Term Prepayment Date**" and together with the Initial Term Prepayment Date, hereinafter referred to, collectively, as the "**Prepayment Date**"), which Extended Term Prepayment Notice must be received by Payee not more than sixty (60) days prior to the Extended Term Prepayment Date and not less than thirty (30) days prior to the Extended Term Prepayment Date and on the Extended Term Prepayment Date, Maker shall make prepayment as herein above provided, failure of which to timely prepay shall result in a $1,000 prepayment cancellation fee to compensate Payee for expenses associated with Maker's failure to comply with its request and is not a penalty

**(C) SUCH PREPAYMENT PREMIUM SHALL BE PAID WHETHER THE PREPAYMENT IS VOLUNTARY OR INVOLUNTARY, INCLUDING ANY**

**PREPAYMENT AFFECTED BY THE ACCELERATION PROVISIONS CONTAINED IN THE NOTE OR THE OTHER LOAN DOCUMENTS. UPON ACCELERATION, THE PREPAYMENT PREMIUM SHALL BE CALCULATED BASED UPON THE AMOUNT OF THE PREPAYMENT DUE ON THE DATE OF SUCH ACCELERATION; PROVIDED, HOWEVER, IF SUCH PREPAYMENT PREMIUM CONSTITUTES INTEREST UNDER APPLICABLE LAW, THE AMOUNT OF SUCH PREPAYMENT PREMIUM WILL BE REDUCED TO AN AMOUNT WHICH, WHEN ADDED TO ALL OTHER AMOUNTS WHICH CONSTITUTE INTEREST UNDER APPLICABLE LAW, WILL NOT EXCEED THE MAXIMUM AMOUNT OF INTEREST WHICH MAY BE CONTRACTED FOR, CHARGED OR RECEIVED WITH RESPECT TO THE LOAN EVIDENCED HEREBY UNDER APPLICABLE LAW FOR THE ACTUAL PERIOD OF TIME THE LOAN IS OUTSTANDING.**

11. Intentionally omitted.

12. Separate and in addition to all other payment obligations of Maker contained herein, Maker shall be required to pay a yearly servicing fee equal to ten (10) basis points per annum on the maximum Principal Balance of this Note (whether advanced or yet to be advanced) payable in monthly installments (the "**Servicing Fee**"). The Servicing Fee shall increase to twenty-five (25) basis points after the occurrence of an Event of Default. The Maker acknowledges and agrees that a Servicing Fee shall be due on the date hereof (which shall prepay the first yearly Servicing Fee), and the obligation to pay the Servicing Fee shall be secured by the Deed of Trust.

13. Maker acknowledges that this Note and Maker's obligations under this Note are and shall at all times continue to be absolute and unconditional in all respects. This Note, the Deed of Trust and the Other Security Documents set forth the entire agreement and understanding of Payee and Maker.

14. Maker agrees to pay all costs and expenses of collection incurred by Payee, in addition to principal and interest (including, without limitation, reasonable attorneys' fees and disbursements), and including all costs and expenses incurred in connection with the pursuit by Payee of any of its rights or remedies hereunder or under the Deed of Trust and/or the Other Security Documents or the protection of or realization of collateral or in connection with any of Payee's collection efforts, whether or not any action or proceeding on this Note, on the Deed of Trust and/or the Other Security Documents or any foreclosure proceeding is filed, all such costs and expenses being payable on demand, together with interest at the Default Rate thereon and being secured by the Deed of Trust and the Other Security Documents.

15. The indebtedness herein evidenced by this Note is secured by the Deed of Trust and the Other Security Documents.

16. THIS NOTE HAS BEEN EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF NEW YORK AND, EXCEPT AS OTHERWISE PROVIDED IN HEREIN, THIS NOTE, THE DEED OF TRUST AND EACH OF THE OTHER SECURITY DOCUMENTS SHALL IN ALL RESPECTS BE GOVERNED, CONSTRUED, APPLIED AND ENFORCED IN ACCORDANCE WITH THE INTERNAL

LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW (OTHER THAN SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW).

NOTWITHSTANDING THE FOREGOING CHOICE OF LAW:

(i) THE PROCEDURES GOVERNING THE ENFORCEMENT BY PAYEE OF ITS FORECLOSURE AND OTHER REMEDIES AGAINST MAKER UNDER THE DEED OF TRUST AND UNDER THE OTHER SECURITY DOCUMENTS WITH RESPECT TO THE PREMISES (AS SUCH TERM IS DEFINED IN THE DEED OF TRUST) OR OTHER ASSETS SITUATED IN THE STATE OF TEXAS, INCLUDING BY WAY OF ILLUSTRATION, BUT NOT IN LIMITATION, ACTIONS FOR FORECLOSURE, FOR INJUNCTIVE RELIEF OR FOR THE APPOINTMENT OF A RECEIVER SHALL BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS;

(ii) PAYEE SHALL COMPLY WITH APPLICABLE LAW IN THE STATE OF TEXAS TO THE EXTENT REQUIRED BY THE LAW OF SUCH JURISDICTION IN CONNECTION WITH THE FORECLOSURE OF THE SECURITY INTERESTS AND LIENS CREATED UNDER THE DEED OF TRUST AND THE OTHER SECURITY DOCUMENTS WITH RESPECT TO THE PREMISES OR OTHER ASSETS SITUATED IN THE STATE OF TEXAS;

(iii) PROVISIONS OF FEDERAL LAW AND THE LAW OF THE STATE OF TEXAS SHALL APPLY IN DEFINING THE TERMS HAZARDOUS SUBSTANCES AND ENVIRONMENTAL LAWS (AS SUCH TERMS ARE DEFINED IN THE OTHER SECURITY DOCUMENTS) APPLICABLE TO THE PREMISES; AND

(iv) THE PERFECTION AND PRIORITY OF THIS NOTE SHALL BE GOVERNEED BY THE LAWS OF THE STATE OF TEXAS.

NOTHING CONTAINED HEREIN OR ANY OTHER PROVISIONS OF THE DEED OF TRUST OR OTHER SECURITY DOCUMENTS SHALL BE CONSTRUED TO PROVIDE THAT THE SUBSTANTIVE LAWS OF THE STATE OF TEXAS SHALL APPLY TO ANY PARTIES, RIGHTS AND OBLIGATIONS UNDER THIS NOTE, THE DEED OF TRUST OR THE OTHER SECURITY DOCUMENTS, WHICH, EXCEPT AS EXPRESSLY PROVIDED IN CLAUSES (i), (ii) AND (iii) ABOVE, ARE AND SHALL CONTINUE TO BE GOVERNED BY THE SUBSTANTIVE LAW OF THE STATE OF TEXAS, EXCEPT AS SET FORTH IN CLAUSES (i), (ii) AND (iii) ABOVE. IN ADDITION, THE FACT THAT PORTIONS OF THIS NOTE, THE DEED OF TRUST AND THE OTHER SECURITY DOCUMENTS MAY INCLUDE PROVISIONS DRAFTED TO CONFORM TO THE LAW OF THE STATE OF TEXAS IT IS NOT INTENDED, NOR SHALL IT BE DEEMED, IN ANY WAY, TO DEROGATE THE PARTIES' CHOICE OF LAW AS SET FORTH OR REFERRED TO IN THIS NOTE, THE DEED OF TRUST OR IN THE OTHER SECURITY DOCUMENTS. THE PARTIES FURTHER AGREE THAT THE PAYEE MAY ENFORCE ITS RIGHTS UNDER THIS NOTE, THE DEED OF TRUST AND THE OTHER SECURITY DOCUMENTS INCLUDING, BUT NOT LIMITED TO, ITS RIGHTS TO SUE THE MAKER OR TO COLLECT ANY OUTSTANDING INDEBTEDNESS IN ACCORDANCE WITH

APPLICABLE LAW.

17. Maker does hereby agree that upon the occurrence of an Event of Default, which includes, without limitation, the failure of Maker to pay the Debt in full on the Maturity Date, Payee shall be entitled to receive and Maker shall pay interest on the entire Debt at the rate of twenty-four percent (24%) per annum or at the maximum rate of interest which Maker may by law pay, whichever is lower (the "**Default Rate**"), to be computed from the occurrence of the Event of Default until the actual receipt and collection of the Debt, including all periods prior to or subsequent to the entry of a Judgment of Foreclosure and Sale. This charge shall be added to the Debt, and shall be deemed secured by the Deed of Trust. This clause, however, shall not be construed as an agreement or privilege to extend the date of the payment of the Debt, nor as a waiver of any other right or remedy accruing to Payee by reason of the occurrence of any Event of Default.

18. This Note is subject to the express condition that at no time shall Maker be obligated or required to pay interest on the Principal Balance at a rate which could subject Payee to either civil or criminal liability as a result of being in excess of the maximum rate which Maker is permitted by law to contract or agree to pay. For the purposes of calculating the actual amount of interest paid and or payable, in respect of laws pertaining to usury or such other laws, all sums paid or agreed to be paid to Payee for the use, forbearance or detention of the indebtedness evidenced hereby shall, to the extent permitted by applicable law, be amortized, allocated and spread from the date of disbursement of the proceeds thereof until payment in full of the Loan obligations, so that the actual rate of interest on account thereof is uniform throughout the term hereof. If, by the terms of this Note, Maker is at any time required or obligated to pay interest on the Principal Balance at a rate in excess of such maximum rate, the rate of interest under this Note shall be deemed to be immediately reduced to such maximum rate, and interest payable hereunder shall be computed at such maximum rate and the portion of all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of the Principal Balance.

19. In the event LIBOR is no longer available or charging of interest that is calculated based upon LIBOR would violated applicable law or regulation, then in Payee's sole discretion, the Alternative Rate shall replace the LIBOR Based Rate, which Alternative Rate shall mean either the Prime Based Rate or the ARRC Based Rate (in Payee's sole discretion as to whether the Prime Based Rate or the ARRC Based Rate shall be used.

20. No delay on the part of Payee in exercising any right or remedy under this Note, the Deed of Trust or the Other Security Documents or failure to exercise the same shall operate as a waiver in whole or in part of any such right or remedy. No notice to or demand on Maker shall be deemed to be a waiver of the obligation of Maker or of the right of Payee to take further action without further notice or demand as provided in this Note, the Deed of Trust and the Other Security Documents.

21. Each of Payee's rights and remedies under this Note shall be in addition to all of its other rights and remedies under the Deed of Trust, Other Security Documents and applicable law.

22. **TIME IS OF THE ESSENCE** with regard to Maker's performance of all the terms,

covenants and conditions of this Note.

23. Any provision of this Note, the Deed of Trust or the Other Security Documents that is prohibited or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof or affecting the validity or enforceability of such provision.

24. All of the provisions of this Note shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

25. Maker hereby warrants, represents and covenants that no funds disbursed hereunder shall be used for personal family or household purposes.

26. Maker (and the undersigned representative of Maker, if any) represents that Maker has full power, authority and legal right to execute and deliver this Note and that the Debt hereunder constitutes a valid and binding obligation of Maker.

27. All notices to be given under this Note shall be given in the same manner as provided in the Deed of Trust.

28. This Note, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Maker or Payee, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

29. Without limiting any other provisions of the Deed of Trust or the Loan Documents, Maker, for itself and all endorsers, guarantors and sureties of this Note, and their heirs, legal representatives, successors and assigns, hereby waives valuation, appraisement, presentment for payment, demand, notice of nonpayment, notice of dishonor, protest of any dishonor, notice of protest and protest of this Note, lack of diligence, delays in collection or enforcement of this Note, notice of the intention to accelerate, the benefit of all applicable law affording any right or redemption or cure and all other notices in connection with the delivery, acceptance, performance, default or enforcement of the payment of this Note, except as expressly provided herein or in the Deed of Trust or any of the Other Security Documents, and in connection with any suit, action or proceeding brought by Payee on this Note, any and every right it may have to (a) a trial by jury, (b) interpose any counterclaim therein (other than a counterclaim which can only be asserted in a suit, action or proceeding brought by Payee on this Note and cannot be maintained in a separate action), and (c) have the same consolidated with any other or separate suit, action or proceeding, and agrees that their respective liability shall be unconditional and without regard to the liability of any other party and shall not be in any manner affected by any indulgence, extension of time, renewal, waiver or modification granted or consented to by Payee. Maker, for itself and all endorsers, guarantors and sureties of this Note, and their heirs, legal representatives, successors and assigns, hereby consents to every extension of time, renewal, waiver or modification that may be granted by Payee with respect to the payment or other provisions of this Note, and to the release of any makers, endorsers, guarantors or sureties, and their heirs, legal representatives, successors and assigns, and of any collateral given to secure the payment hereof, or any part hereof, with or without substitution, and agrees that additional makers, endorsers, guarantors or sureties and their

heirs, legal representatives, successors and assigns, may become parties hereto without notice to Maker or to any endorser, guarantor or surety and without affecting the liability of any of them.

30. FOR ANY CLAIM, ACTION, OR DISPUTE ARISING UNDER, OR TO INTERPRET OR APPLY, THIS NOTE OR ANY OTHER SECURITY DOCUMENT, OR TO RESOLVE ANY DISPUTE ARISING UNDER THE FOREGOING OR THE RELATIONSHIP BETWEEN THE PARTIES, MAKER IRREVOCABLY SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK AND THE UNITED STATES DISTRICT COURT LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK CITY, NEW YORK, AND APPELLATE COURTS FROM ANY OF SUCH COURTS. MAKER IRREVOCABLY WAIVES ANY OBJECTION THAT IT MAY HAVE AT ANY TIME TO VENUE OF ANY SUCH SUIT, ACTION, OR PROCEEDING BROUGHT IN ANY SUCH COURT, INCLUDING ANY CLAIM THAT ANY SUCH SUIT, ACTION, OR PROCEEDING SO BROUGHT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. NOTHING IN THE DEED OF TRUST OR OTHER SECURITY DOCUMENTS SHALL BE DEEMED TO PRECLUDE PAYEE FROM BRINGING ANY SUIT, ACTION, OR PROCEEDING RELATING TO ANY OTHER SECURITY DOCUMENT OR THE DEBT IN ANY OTHER JURISDICTION WHERE PAYEE COULD OTHERWISE PROPERLY BRING SUCH SUIT, ACTION, OR PROCEEDING. MAKER FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO MAKER AT THE ADDRESS SET FORTH ON PAGE 1 HEREOF, AND CONSENTS AND AGREES THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHALL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).

31. To the extent applicable, in an action commenced in the Commercial Division, New York State Supreme Court, the parties hereby agree, subject to the requirements for a case to be heard in the Commercial Division, to apply the Court's accelerated adjudication procedures set forth in Rule 9 of the Rules of Practice for the Commercial Division, in connection with any dispute, claim or controversy arising out of or relating to this Note or any of the Loan Documents, or the breach, termination, enforcement or validity thereof.

32. The parties intend that each of the Makers (if more than one) shall be fully liable, jointly and severally, for all of the Debt. Nonetheless, in case a court finds that any Maker is not such a primary obligor with respect to all or any part of such obligations, the Makers expressly waive the benefit of any and all defenses and discharges available to a guarantor, surety, endorser or accommodation party dependent on an obligor's character as such. Without limiting the generality of the foregoing, the liability of the Makers hereunder shall not be affected or impaired in any way by any of the following acts or things (which the Payee is hereby expressly authorized to do, omit or suffer from time to time without notice to or consent of anyone): (a) any acceptance of collateral security, guarantors, accommodation parties or sureties for any or all indebtedness arising under this Note, the Deed of Trust or the Other Security Documents; (b) any extension or renewal of any such indebtedness (whether or not for longer than the original period) or any modification of the interest rate, maturity or other terms of any such indebtedness; (c) any waiver or indulgence

granted to either Maker, and any delay or lack of diligence in the enforcement of the indebtedness arising under this Note, the Deed of Trust or the Other Security Documents; (d) any full or partial release of, compromise or settlement with, or agreement not to sue, either Maker or any guarantor or other person liable on any such indebtedness; (e) any release, surrender, cancellation or other discharge of any indebtedness arising under this Note, the Deed of Trust or the Other Security Documents, or the acceptance of any instrument in renewal or substitution for any instrument evidencing any such indebtedness; (f) any failure to obtain collateral security (including rights of setoff) for any indebtedness arising under this Note, the Deed of Trust or the Other Security Documents, or to see to the proper or sufficient creation and perfection thereof, or to establish the priority thereof, or to preserve, protect, insure, care for, exercise or enforce any collateral security for any such indebtedness; (g) any modification, alteration, substitution, exchange, surrender, cancellation, termination, release or other change, impairment, limitation, loss or discharge of any collateral security for any such indebtedness; (h) any assignment, sale, pledge or other transfer of any of the indebtedness arising under this Note, the Deed of Trust or the Other Security Documents; or (i) any manner, order or method of application of any payments or credits on any indebtedness arising under this Note, the Deed of Trust or the Other Security Documents. Each Maker also hereby waives any right of contribution, subrogation, indemnification or other right arising as a result of any payment made toward the Debt of the other Maker.

33. Each of the Makers (if more than one) hereby waives, for the benefit of the Payee: (a) any right the Payee, as a condition of payment or performance by either Maker, to (i) proceed against the other Maker or any other person or entity, (ii) proceed against or exhaust any collateral for the Debt held from the other Maker or any other person or entity, (iii) proceed against or have resort to any balance of any deposit account, securities account, or credit on the books of the Payee in favor of the other Maker or any other person or entity, or (iv) pursue any other remedy in the power of the Payee whatsoever; (b) any defense arising by reason of the incapacity, lack of authority or any disability or other defense of the other Maker, including any defense based on or arising out of the lack of validity or the unenforceability of the Debt or any agreement or instrument relating thereto or by reason of the cessation of the liability of the other Maker from any cause other than payment in full of the Debt; (c) any defense based upon any statute or rule of law which provides that the obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal; (d) any defense based upon the Payee's errors or omissions in the administration of the Debt; (e) (i) any principles or provisions of law, statutory or otherwise, which are or might be in conflict with the terms hereof and any legal or equitable discharge of its obligations hereunder, (ii) the benefit of any statute of limitations affecting its liability hereunder or the enforcement hereof, (iii) any rights to set-offs, recoupments and counterclaims, and (iv) promptness, diligence and any requirement that the Payee protect, secure, perfect or insure any security interest or lien or any property subject thereto; (f) notices, demands, presentments, protests, notices of protest, notices of dishonor and notices of any action or inaction, including acceptance hereof, notices of default thereunder or under this Note, the Deed of Trust or the Other Security Documents, any agreement or instrument related thereto, notices of any renewal, extension or modification of the Debt or any agreement related thereto, notices of any extension of credit to the other Maker and notices of any matters referred to in any guaranty securing this Note and any right to consent to any thereof; and (g) any defenses or benefits that may be derived from or afforded by law which limit the liability of or exonerate sureties, or which may conflict with the terms hereof.

34. Maker hereby represents that each of the respective properties which make up the Property, based on appraisals thereof, are sufficient to secure the Debt. By virtue of the respective contributions of each of the properties (if more than one) which constitute the Property (as defined in the Deed of Trust) to the lien of the Deed of Trust as security for this Note, Maker hereby represents that is solvent as of the date hereof. Notwithstanding anything to the contrary in this Note, Payee's recourse with respect to Maker's obligations under this Note shall be limited to Maker's interest in the Property (as defined in the Deed of Trust), as cross-collateralized pursuant to the Loan Documents, and the remedies set forth therein. Maker further consents that in a foreclosure proceeding, Payee will be entitled to a consolidated judgment of foreclosure for the entire Debt, as cross-collateralized against the Property. Nothing in this paragraph shall be construed so as to limit the obligations of (a) the Guarantor (as defined in the Deed of Trust) under any guarantees and/or indemnities executed in connection with this Note, including without limitation, (i) the Environmental Indemnity dated as of the date of this Note made by Maker and Guarantor, collectively as the Indemnitors, in favor of Payee (the "**Environmental Indemnity Agreement**"), (ii) that certain Guaranty, and (iii) that certain Guaranty of Completion, each executed by Guarantor in favor of Payee as of the date hereof, or (b) Maker under any guarantees and/or indemnities executed in connection with this Note, including without limitation, the Environmental Indemnity Agreement.

35. On the date hereof, Maker has funded to Payee an interest reserve (the "**Interest Reserve**") for the payment of all interest that that shall become due and owing at the Interest Rate for the first four (4) months of the term of the Loan. Upon each of the third (3rd) and seventh (7th) month anniversary of the closing of the Loan, Maker shall be required to replenish the Interest Reserve so that the amounts held in the Interest Reserve shall be equal to all interest that shall become due and owing for the succeeding four (4) months of the term of the Loan. Failure to fund such Interest Reserve as and when required pursuant to this Section shall constitute an immediate Event of Default under the Loan Documents.

**[Remainder of Page Intentionally Left Blank]**

**IN WITNESS WHEREOF**, Maker has duly executed this Note the day and year first above written.

**MO 2999TC, LLC**,
a Delaware limited liability company

By: ____________________
Name: Timothy Lynch Barton
Title: Authorized Signatory

STATE OF TEXAS )
: ss.:
COUNTY OF Dallas )

On the 17 day of September, in the year 2019, before me, the undersigned, a Notary public in and for said State, personally appeared TIMOTHY LYNCH BARTON, Authorized Signatory of MO 2999TC, LLC, a Delaware limited liability company, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument, and that such individual did make such appearance before the undersigned in the City of Dallas, State of Texas.

____________________
Notary Public

NOTARY PUBLIC STATE OF TEXAS
Bella D Khusal
My Commission Expires 09/24/2022
ID No. 131734480

ADDENDUM TO NOTE
(Texas)

The term "**maximum rate**" shall mean the highest lawful rate of interest applicable to this Note (the "**Maximum Rate**"). In determining the Maximum Rate, due regard shall be given to all payments, fees, charges, deposits, balances and agreements which may constitute interest or be deducted from principal when calculating interest. If Chapter 303 of the Finance Code, Vernon's Texas Civil Statutes, is deemed (by any court of competent jurisdiction) to be applicable to this Note, and applicable state or federal law does not permit a higher interest rate, the "weekly ceiling" (as defined in Chapter 303 of the Finance Code, Vernon's Texas Civil Statutes) shall be the interest rate ceiling applicable to this Note and shall be the basis for determining the Maximum Rate. If applicable state or federal law allows a higher interest rate or federal law preempts the state law limiting the rate of interest, then the foregoing interest rate ceiling shall not be applicable to this Note. If the Maximum Rate is increased by statute or other governmental action subsequent to the date of this Note, then the new Maximum Rate shall be applicable to this Note from the effective date thereof, unless otherwise prohibited by applicable law.

Interest on the unpaid principal balance of this Note shall be computed on the basis set forth in Article 1 of this Note (the "**Stated Rate**"), but in no event shall the Stated Rate be greater than the Maximum Rate described immediately above.

It is expressly stipulated and agreed to be the intent of the undersigned and holder hereof (together with its successors and assigns, the "**Noteholder**") at all times to comply with applicable law governing the Maximum Rate or amount of interest payable on or in connection with this Note and the Loan (or applicable United States federal law to the extent that it permits the Noteholder to contract for, charge, take, reserve or receive a greater amount of interest than under any such applicable State law). If the applicable law is ever judicially interpreted so as to render usurious any amount called for under this Note or under the Deed of Trust or any other Loan Document, or contracted for, charged, taken, reserved or received with respect to the Loan, or if acceleration of the maturity of this Note or if any prepayment by the undersigned results in the undersigned having paid any interest in excess of that permitted by law, then it is the undersigned's and the Note holder's express intent that all excess amounts theretofore collected by the Noteholder be credited on the principal balance of this Note without any prepayment premium (or, if this Note has been or would thereby be paid in full, refunded to the undersigned), and the provisions of this Note, the Deed of Trust and the other Loan Documents immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new documents, so as to comply with applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder and thereunder. The right to accelerate maturity of this Note does not include the right to accelerate any interest which has not otherwise accrued on the date of such acceleration, and the Noteholder does not intend to collect any unearned interest in the event of acceleration. All sums paid or owed to be paid to the Noteholder for the use, forbearance or detention of the indebtedness evidence hereby shall, to the extent permitted by applicable law be amortized, prorated, allocated and spread throughout the full term of such indebtedness until payment in full so that the rate or amount of interest on account of such indebtedness does not exceed the Maximum Rate. Notwithstanding any provisions contained in this Note, the Deed of Trust or in any of the other Loan Documents that permit the compounding

of interest (including, without limitation, any provision by which any accrued interest is added to the principal amount of this Note), if and to the extent the laws of the State of Texas are deemed to apply to the aforesaid provisions (by any court of competent jurisdiction), the total amount of interest that the undersigned is obligated to pay and the Noteholder is entitled to receive with respect to this Note shall not exceed the amount calculated on a simple (i.e., non-compounded) interest basis at the Maximum Rate on principal amounts actually advanced to or for the account of the undersigned, including all current and prior advances and any advances made pursuant to the Security Instrument or other Loan Documents (such as for the payment of taxes, insurance premiums, repairs and other expenses or costs).

THE UNDERSIGNED AND ALL OTHER MAKERS, SIGNERS, SURETIES, GUARANTORS AND ENDORSERS OF THIS NOTE WAIVE DEMAND, PRESENTMENT, NOTICE OF DISHONOR, NOTICE OF INTENT TO DEMAND OR ACCELERATE PAYMENT HEREOF, DILIGENCE IN THE COLLECTING, GRACE, NOTICE AND PROTEST AND AGREE TO ONE OR MORE EXTENSIONS FOR ANY PERIOD OR PERIODS OF TIME AND PARTIAL PAYMENTS, BEFORE OR AFTER MATURITY, WITHOUT PREJUDICE TO THE HOLDER HEREOF. IF COLLECTION PROCEDURES ARE EVER COMMENCED, BY ANY MEANS, INCLUDING LEGAL PROCEEDINGS OR THROUGH A PROBATE OR BANKRUPTCY COURT, OR IF THIS NOTE IS PLACED IN THE HANDS OF ANY ATTORNEY FOR COLLECTION AFTER DEFAULT OR MATURITY, THE UNDERSIGNED AGREES TO PAY ALL COSTS OF COLLECTION OR ATTEMPTED COLLECTION, INCLUDING REASONABLE ATTORNEY'S FEES ACTUALLY INCURRED.

**[NO FURTHER TEXT ON THIS PAGE]**

**MO 2999TC, LLC**,
a Delaware limited liability company

By: ______________________
Name: Timothy Lynch Barton
Title: Authorized Signatory

STATE OF TEXAS )
: ss.:
COUNTY OF Dallas )

On the 17 day of September, in the year 2019, before me, the undersigned, a Notary public in and for said State, personally appeared TIMOTHY LYNCH BARTON, Authorized Signatory of MO 2999TC, LLC, a Delaware limited liability company, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument, and that such individual did make such appearance before the undersigned in the City of Dallas, State of Texas.

______________________
Notary Public

NOTARY PUBLIC STATE OF TEXAS
Bella D Khusal
My Commission Expires
09/24/2022
ID No. 131734480