# EXHIBIT H

Martin J. Lehman
State Bar No. 12172900
Palmer Lehman Sandberg, PLLC
8350 N. Central Expressway, Suite 1111
Dallas, Texas 75206
Telephone: (214) 242-6444
Facsimile: (214) 265-1950
mlehman@pamlaw.com

ATTORNEYS FOR HAPPY STATE BANK

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MANSIONS APARTMENT HOMES AT | § | Case No. 20-43643-elm |
| MARINE CREEK, LLC | § | |
| Debtor | § | Chapter 11 |

## HAPPY STATE BANK'S MOTION TO DISMISS FOR CAUSE

COMES NOW Happy State Bank ("HSB") and files this Motion to Dismiss for Cause the bankruptcy of Mansions Apartment Homes at Marine Creek LLC ("Mansions," "Borrower" or the "Debtor") , and shows:

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C §1334. This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A).

2. HSB moves for dismissal of this case for cause[1] for the reasons including, but not limited to, the following:

   a. On information and belief, Mansions was not authorized to file the bankruptcy petition.

[1] "The court shall commence the hearing on a motion under this subsection [1112(b)(1)] not later than 30 days after filing of the motion, and shall decide the motion not later than 15 days after commencement of such hearing…" Bankruptcy Code §1112(b)(3).

b. The bankruptcy petition was not filed in good faith.

c. There is no going concern to preserve, no employees to protect, and no hope of rehabilitation.

3. Mansions is a single asset real estate debtor as defined in Bankruptcy Code §101(51B). Mansions has no operations, no revenue, and no employees other than the principals.

4. In June, 2018, HSB loaned $5,400,000.00 to Mansions (the "Loan") to finance Mansions' purchase of 40.4892 acres of undeveloped land in Tarrant County (the "Property"). The Loan is evidenced by a promissory note in the original principal amount of $5,400,000.00 dated June 6, 2018, made by Mansions payable to the order of HSB. To secure payment of the Loan, Mansions gave HSB a deed of trust (the "HSB Deed of Trust") on the Property.

5. The Property was to be developed as an apartment complex, hence the name *Mansions Apartment Homes at Marine Creek*. However, 2 ½ years have elapsed since the Loan was made, and not a shovelful of dirt has been moved.

6. The Loan was original scheduled to mature on June 5, 2020. When it became clear that Mansions would not be able to pay the Loan at its original maturity date, HSB agreed in writing to extend the maturity to September 4, 2020.

7. Mansions defaulted by failing to pay the Loan when it matured on the extended maturity date of September 4, 2020.

8. After the Loan matured, by letter dated September 25, 2020, HSB made written demand for payment on Mansions. Despite demand, the Loan was not paid.

9. Due to the default, HSB filed suit against Mansions (and guarantors of the Loan), and had the Property posted for a non-judicial foreclosure sale to be conducted on December 1, 2020.

10. After the Loan matured and after HSB made written demand for payment, HSB proposed that the parties enter into a Forbearance Agreement that would effectively reinstate the Loan and extend the Loan maturity to April 4, 2021.

11. However, HSB received 4 different versions of ownership and/or management of Mansions. These different versions of ownership and/or management are shown by (i) a *Company Agreement* of Mansions dated March 19, 2018, provided to HSB at the time the Loan was made, (ii) *Regulations* of Mansions dated the exact same day (March 19, 2018), but provided to HSB by Mansions' attorney on October 26, 2020, (iii) 2018 federal income tax return and schedule K-1s provided by Mansions to HSB, and (iv) Mansions' records on file with the Texas Secretary of State.

12. The different versions of ownership and/or management of Mansions are significant because:

a. HSB is required by federal regulations/laws to identify and verify beneficial owners of its legal entity customers, as part of its federally required anti-money laundering compliance program, and

b. It is a default under the loan documents if, without the prior written consent of HSB, "any ownership interest of [Mansions] … is transferred, assigned, or otherwise hypothecated…," and HSB had not consented to (nor been asked to consent to) any transfers of ownership of Mansions.

13. The different versions of ownership and/or management are also significant because, without knowing which version of the ownership and/or management is accurate, it is impossible to determine if Mansions was authorized to file the bankruptcy petition commencing this case.

14. In October and November, 2020, in connection with the proposed Forbearance Agreement, HSB repeatedly requested the following (the "Requisite Forbearance Information"):

a. The names and respective percentage ownership interests of all current owners of Borrower;

b. The names of all managers of Borrower;

c. If the names and respective ownership interests of the current owners of the Borrower differ from JMJ Development, LLC – 74%, Hal Thorne – 25%, Timothy Barton – 1%, copies of the documents evidencing the assignments/transfers of the ownership to the current status – which assignments/transfers must then be consented to by HSB (and which consent may be refused by HSB in its sole discretion, as provided in the Loan Documents);

d. A signed Certification of Beneficial Ownership accurately reflecting the current ownership of Borrower;

e. A company resolution of Borrower, in a form satisfactory to HSB, authorizing the execution of the Forbearance Agreement and stating who is authorized to execute the Forbearance Agreement on behalf of Borrower; and

f. The Forbearance Agreement fully executed by Borrower (in accordance with the company resolution) and by each of the Guarantors.

15. Despite HSB's repeated requests, the Requisite Forbearance Information was never provided, a Certificate of Beneficial Ownership and a Forbearance Agreement were never signed, and the Loan remained matured and in default.

16. <u>After HSB proposed that the parties enter into the Forbearance Agreement</u>, HSB

learned of these additional defaults on the Loan (that is, defaults in addition to the failure to pay the Loan when it matured):

a. In 2018, Mansions gave David Campbell a second lien deed of trust on the Property (this is both a default under the HSB Deed of Trust, and a default under Campbell's guaranty of the Loan).

b. Campbell had scheduled for December 1, 2020, a foreclosure sale of the Property under the Campbell Deed of Trust.

c. In August, 2019, a tax lien transfer contract executed by Mansions to FGMS Holdings, LLC ("FGMS") was recorded in the real property records. This tax lien transfer contract provides for the financing of the 2018 ad valorem taxes, penalties, interest, and fees owed on the Property in the amount of $79,960.09, resulting in FGMS holding a lien on the Property superior to the HSB Deed of Trust.

d. <u>On September 14, 2020, Mansions had conveyed 13.4330 acres of the Property to D4MC LLC</u>.

17. On November 25, 2020, HSB withdrew the proposal to enter into a Forbearance Agreement.

18. On November 25, 2020, Mansions filed Borrower's Verified Motion for Temporary Restraining Order/Temporary Injunction in Cause No. 342-321533-20, styled *Happy State Bank vs. Mansions Apartment Homes at Marine Creek LLC*, et al. A hearing on Mansions' motion was held on November 30, 2020, at the conclusion of which the Honorable Kimberly Fitzpatrick, Judge of the 342nd District Court, Tarrant County, denied Mansions' motion.

19. The petition commencing this case was then filed on November 30, 2020, thus

staying HSB's December 1, 2020, foreclosure sale.

20. Mansions' schedules and statement of financial affairs show:

a. Mansions single asset is the Property, less the 13.4330 acres wrongfully conveyed to D4MC LLC on September 14, 2020.

b. Mansions has no other assets – no cash, no receivables, nothing.

c. Mansions has no executory contracts.

d. Mansions has no revenue from any source.

21. Mansions' schedules show $4,454,578.12 of unsecured non-priority debt. However, $3,971,669.18 (almost 90%) is owed to insiders and/or affiliates of Mansions for business debt. However, it is unfathomable (or at minimum, highly suspect) that a company whose only asset is undeveloped land could incur that amount of legitimate business debt with insiders and/or affiliates.

22. In September, 2020, Mansions' attorney advised HSB that "anticipated new HUD loan in the amount of $35,155,800 to Grantee [D4MC LLC, which was apparently to purchase 13.43 acres of the Property from Mansions] has been delayed, and may not now be proceeding." Nevertheless, on September 14, 2020, Mansions deeded 13.4330 acres of the Property to D4MC LLC (i) in violation of the terms of the HSB Deed of Trust, and (ii) apparently without receiving any payment for the transfer.

23. Further, the transferee, D4MC LLC, is an insider and/or affiliate of Mansions. D4MC LLC's sole managing member is JMJD4 LLC. JMJD4, LLC has two managing members: TRWF Lodge LLC and Enoch Investors. In turn, (according to the SOS records) TRWF Lodge LLC is the sole manager and sole director of Mansions.

24. Despite Mansions' conveyance of the 13.4330 acres to an insider and/or affiliate a

mere 2 ½ months before the bankruptcy, Mansions falsely states in its statement of financial affairs that Mansions <u>has made no transfers of property within 1 year before filing this case that benefitted any insider</u>.

**ARGUMENT AND AUTHORITIES**

25. "Except as provided in paragraph (2) and subsection (c) [neither of which are applicable here], on request of a party in interest, and after notice and a hearing, the court shall convert a case under … chapter [11] to a case under chapter 7 or dismiss a case under … chapter [11], whichever is in the best interests of the creditors and the estate, for cause…" Bankruptcy Code §1112(b)(1). HSB is a party in interest. Bankruptcy Code §1109(b) ("A party in interest, including… a creditor… may raise and may appear on any issue in a case under this chapter.").

26. The Honorable Harlin Hale held that a creditor has standing to object to a chapter 11 bankruptcy filing, and that the case should be dismissed if the filing was not authorized, even though Judge Hale agreed that the "case cries out for bankruptcy relief." *In re Orchard at Hansen Park, LLC*, 347 B.R. 822, 827, 2006 Bankr. LEXIS 1414, 13 (Bankr. N.D. Tex. 2006) (chapter 11 case dismissed when the required consent of the debtor LLC members for the filing was not obtained). Here, Mansions' inability to account for the multiple conflicting versions of its ownership and/or management makes it impossible to determine that the filing of this bankruptcy case was authorized. Thus, this case should be dismissed.

27. The Fifth Circuit has provided guidance for trial courts determining if a debtor lacked good faith in filing for bankruptcy relief. *In re Little Creek Dev. Co*., 779 F.2d 1068, 1986 U.S. App. LEXIS 21644 (5th Cir. 1986). In Little Creek, the issue of good faith arose in connection with relief from the automatic stay under §362(d) and dismissal or conversion under §1113(b). There, the Fifth Circuit stated:

Numerous cases have found a lack of good faith to constitute "cause" for lifting the stay to permit foreclosure or for dismissing the case.

Determining whether the debtor's filing for relief is in good faith depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities. Findings of lack of good faith in proceedings based on §§ 362(d) or 1112(b) have been predicated on certain recurring but non-exclusive patterns, and they are based on a conglomerate of factors rather than on any single datum. Several, but not all, of the following conditions usually exist. The debtor has one asset, such as a tract of undeveloped or developed real property. The secured creditors' liens encumber this tract. There are generally no employees except for the principals, little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments pursuant to 11 U.S.C §§361, 362(d)(1), 363(e), or 364(d)(1). Typically, there are only a few, if any, unsecured creditors whose claims are relatively small. The property has usually been posted for foreclosure because of arrearages on the debt and the debtor has been unsuccessful in defending actions against the foreclosure in state court. Alternatively, the debtor and one creditor may have proceeded to a stand-still in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford. Bankruptcy offers the only possibility of forestalling loss of the property. There are sometimes allegations of wrongdoing by the debtor or its principals. The "new debtor syndrome," in which a one-asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors, exemplifies, although it does not uniquely categorize, bad faith cases.

Resort to the protection of the bankruptcy laws is not proper under these circumstances because there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation, except according to the debtor's "terminal euphoria." The Sixth Circuit in *Winshall Settlor's Trust*, 758 F.2d at 1137, aptly noted that

> the purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state. *See In re Dolton Lodge Trust No. 35188*, 22 B.R. 918, 922 (Bankr. N.D. Ill. 1982). "If there is not a potentially viable business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost its *raison d'etre*…" *In re Ironsides, Inc.*, 34 Bankr. 337, 339 (Bankr. W.D. Ky 1983).

Neither the bankruptcy courts nor the creditors should be subjected to the costs and delays of a bankruptcy proceeding under such conditions.

*Little Creek*, 779 F.2d 1068, at 1072-73, 1986 U.S. App. LEXIS 21644 at 10-13.

28. The facts and circumstances in the case at bar are practically a mirror image of the "recurring but nonexclusive pattern" described by the Fifth Circuit in *Little Creek*. Accordingly,

this case should be dismissed.

## PRAYER

WHEREFORE, Happy State Bank requests (i) that this bankruptcy case be dismissed, (ii) that for 180 days after the entry of this order, no bankruptcy petitions shall be filed by, on behalf of, or against Mansions Apartment Homes at Marine Creek, LLC, or by, on behalf of, or against any owner of any part of the Property (including without limitation, D4MC LLC), and (iii) that HSB be granted such other and further relief to which it may be justly entitled.

Respectfully submitted,

*/s/ Martin J. Lehman*
Martin J. Lehman
State Bar No. 12172900

**Palmer Lehman Sandberg, PLLC**
8350 N. Central Expressway, Suite 1111
Dallas, Texas 75206
Telephone: (214) 242-6444
Facsimile: (214) 265-1950
Email: mlehman@pamlaw.com

ATTORNEYS FOR HAPPY STATE BANK

## CERTIFICATE OF SERVICE

The undersigned certifies that he served all parties requesting notice in this case with a copy of the foregoing Notice via this Court's ECF electronic filing system on the date of filing of the Notice and on the following parties on 12/24/2020:

D4MC LLC
1755 Wittington Place
Suite 340
Dallas, Texas 75234
**See mailing matrix attached hereto.**

*/s/ Martin J. Lehman*
Martin J. Lehman