**IX.**
**JURY DEMAND**

42. Plaintiffs demand a jury trial and tender the appropriate fee with this *Original Petition, Requests for Disclosure, and Verified Ex Parte Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction*.

**X.**
**REQUEST FOR DISCLOSURE**

43. Pursuant to Texas Rule of Civil Procedure 194, Defendants are requested to disclose, within the time required by Rule 194.3, the information or material described in Rule 194.2.

**XI.**
**PRAYER**

For the reasons set forth above, the Plaintiffs respectfully request that Defendants be cited to appear and answer, and that the Court render judgment against Defendants and in favor of Plaintiffs, awarding Plaintiffs the following relief:

(a) any and all actual damages suffered in an amount within the jurisdictional limits of the Court;

(b) a temporary restraining order enjoining and restraining Defendants and their agents, servants, employees, attorneys, and those persons and entities in active concert or participation with them and/or under their ownership and/or control who receive actual notice of the order, including but not limited to, the entities through which the Collateral or any asset of the Collateral is held and/or owned, whether directly or indirectly, in whole or in part, and any entity pledging a security interest to Plaintiffs in connection with the Loan, from engaging in the following acts or practices:

(i) directly or indirectly encumbering, diluting, or making inferior Plaintiffs' security interest in the unencumbered value of the Collateral, or allowing the encumbrance, dilution, or making inferior of Plaintiffs' security interest in the unencumbered value of the Collateral;

(ii) directly or indirectly granting to any party a security interest in the Collateral or any assets of the Collateral, or allowing the granting to any other party a security interest in the Collateral or any assets of the Collateral;

(iii) directly or indirectly selling, transferring, disposing, destroying, unwinding, or altering the Collateral or any assets of the Collateral, or any portion thereof, or allowing the transfer, disposal, destruction, unwinding, or alteration of the Collateral or any assets of the Collateral, or any portion thereof;

(iv) transferring, concealing, destroying, mutilating, altering, falsifying, or removing from the jurisdiction of this Court any records, documents, and/or communications relating to the Collateral or the assets of the Collateral, or allowing the transfer, concealment, destruction, mutilation alteration, falsification, or removal of the same; and

(v) continuing to interfere with Plaintiffs perfecting their security interest in the Collateral by requiring Defendants to within five business days deliver to Plaintiffs the documents necessary for all Collateral to immediately be properly and fully perfected;

(c) temporary injunctive relief;

(d) permanent injunctive relief;

(e) pre-judgment interest at the contractually-agreed upon rate of 18%;

(f) post-judgment interest at the contractually-agreed upon rate of 18%;

(g) attorney's fees;

(h) costs of suit; and

(i) such other and further relief to which Plaintiffs show themselves to be justly entitled whether at law or in equity.

Case 21-31254-swe11 Doc 143-6 Filed 12/06/21 Entered 12/06/21 11:51 Page 16 of 17

Respectfully submitted,

***/s/ Dee J. Kelly, Jr.***

Dee J. Kelly, Jr.
dee.kelly@kellyhart.com
State Bar No. 11217250
Joakim G. Soederbaum
joakim.soederbaum@kellyhart.com
State Bar No. 24091338
KELLY, HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Phone: 817-332-2500
Facsimile: 817-878-9280

**COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.30

Diligent attempts to notify counsel for the parties against whom ex parte relief is sought have been unsuccessful, and the circumstances do not permit additional efforts to give notice.

***/s/ Joakim G. Soederbaum***

Joakim G. Soederbaum

## VERIFICATION

STATE OF TEXAS §
§
COUNTY OF TARRANT §

Before me, the undersigned authority, on this day personally appeared L. Allen Hodges III, who is personally known to me, and being first duly sworn according to law, upon his oath deposed and said:

1. "My name is L. Allen Hodges III. I am over twenty-one (21) years of age, of sound mind, and have never been convicted of a felony. I am fully competent to testify to, and have personal knowledge of, the facts stated within this verification, and every statement of fact contained herein is true and correct. I am the independent executor of The Estate of Leland A. Hodges Jr., one of the plaintiffs in the above-referenced lawsuit. I obtained personal knowledge of the facts stated herein by and through, among other things, my review of the documents referenced in Plaintiffs' *Original Petition, Requests for Disclosure, and Verified Ex Parte Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction*, my personal involvement in the Loan transaction, and my personal interactions with the persons and entities at issue in the above-referenced lawsuit, including but not limited to my interactions with Defendant Tim Barton."

2. "I have read Plaintiffs' *Original Petition, Requests for Disclosure, and Verified Ex Parte Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction* in the above-referenced lawsuit. The statements of fact contained in paragraphs 14-21 therein are within my personal knowledge and are true and correct."

3. "Further, affiant sayeth not."

L. Allen Hodges III

SUBSCRIBED AND SWORN to before me, the undersigned notary, on the 21st day of April, 2020.

Notary in and for the State of Texas

(Personalized Seal)

NOTARY PUBLIC STATE OF TEXAS
TRACEE FRANKLIN
Notary ID #130322587
My Commission Expires
August 5, 2023

# EXHIBIT G

Joyce W. Lindauer
State Bar No. 21555700
Kerry S. Alleyne
State Bar No. 24066090
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR DEBTOR

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **2999TC LP, LLC,** | § | **CASE NO. 20-43204-mxm-11** |
| | § | |
| **DEBTOR.** | § | **CHAPTER 11** |

# DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION DATED JULY 19, 2021

**TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:**

COMES NOW 2999TC LP, LLC ("Debtor"), the Debtor in the above-styled and numbered case, and files this its Third Amended Plan of Reorganization (the "Plan"). The Debtor owns a membership interest and capital account in 2999TC JMJ MGR LLC, which is part of a group of entities owning a 2.5-acre tract of real property in Dallas, Texas to be developed into a luxury hotel and condominiums. Periodic financial reports will be filed with the Court, as required by the Bankruptcy Code, covering the profitability, projections of cash receipts and disbursements for a reasonable period. These reports shall be available on the Court's PACER site using the Debtor's name and/or case number as referenced above or can be also obtained from Debtor's counsel by written request.

Case 21-31954-swe11 Doc 64-6 Filed 11/06/21 Entered 11/06/21 21:27:30 Page 2 of 16

# TABLE OF CONTENTS

ARTICLE I - DEFINITIONS AND USE OF TERMS .................... 3

ARTICLE II - CONCEPT OF THE PLAN .................... 6

ARTICLE III - GENERAL TERMS AND CONDITIONS .................... 7

ARTICLE IV - DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS .................... 8

ARTICLE V- PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS .................... 8

ARTICLE VI - MEANS FOR IMPLEMENTATION OF PLAN .................... 10

ARTICLE VII - TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .................... 11

ARTICLE VIII - ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS .................... 11

ARTICLE IX - EFFECT OF CONFIRMATION .................... 12

ARTICLE X - MISCELLANEOUS PROVISIONS .................... 13

ARTICLE XI - MODIFICATION OF THE PLAN .................... 15

ARTICLE XII - RETENTION OF JURISDICTION .................... 15

## ARTICLE I
## <u>DEFINITIONS AND USE OF TERMS</u>

**<u>Defined</u> <u>Terms</u>**. Unless the context otherwise requires, capitalized terms shall have the meanings set forth in this section 1.01.

"**Administrative Expense Claim**" means an administrative expense or claim described in Bankruptcy Code § 503 and entitled to administrative priority pursuant to Bankruptcy Code § 507(a)(1), including, but not limited to, Fee Claims.

"**Allowed Amount**" means the amount of any Allowed Claim.

"**Allowed Claim**" means a Claim against the Debtor allowable under the Bankruptcy Code to the extent that: (i) a Proof of Claim or request for payment was timely filed, or, with leave of the Bankruptcy Court, late filed, and as to which no objection has been timely filed with the Bankruptcy Court, or, if filed, is allowed by a Final Order, unless otherwise provided in this Plan; (ii) the Claim is scheduled and not listed as disputed, contingent, or unliquidated, and no objection has been timely filed or, if filed, is allowed by a Final Order; or (iii) with respect to an Administrative Expense Claim or Fee Claim, the Administrative Expense Claim or Fee Claim has been approved by a Final Order upon notice and application to the Bankruptcy Court.

"**Assets**" means property of the Estate.

"**Avoidance Actions**" means any and all rights, claims, and causes of action which a trustee, Debtor, or other appropriate party in interest would be able to assert on behalf of the Estate under applicable state statutes or the avoidance provisions of chapter 5 of the Bankruptcy Code, including actions under one or more of the provisions of Bankruptcy Code §§ 506, 542-551, and 553.

"**Bankruptcy Case**" or "**Case**" means this bankruptcy case: Case No. 20-43204-mxm-11, styled as 2999TC LP, LLC, pending before the Bankruptcy Court.

"**Bankruptcy Code**" or "**Code**" means the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, as amended.

"**Bankruptcy Court**" or "**Court**" means the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, or other such court that may have jurisdiction with respect to the reorganization of the Debtor pursuant to Chapter 11 of the Bankruptcy Code.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as amended, and "**Bankruptcy Rule**" refers to a specific rule therein.

"**Bar Date**" means March 11, 2021, the deadline established by the Bankruptcy Court pursuant to Bankruptcy Rule 3003(c)(3), after which any Proof of Claim may not be timely filed, except Claims held by governmental agencies.

"**Business Day**" shall mean any day that is not a Saturday, Sunday, or one of the legal holidays listed in Bankruptcy Rule 9006(a).

"**Claim**" shall have the meaning set forth in Bankruptcy Code § 101(5).

"**Claimant**" or "**Creditor**" means the holder of a Claim or interest in Assets.

"**Class**" means any class into which Claims are classified pursuant to the Plan. Each subclass of a class shall be treated as a separate class.

**"Collateral"** means the real or personal property securing a Secured Claim.

"**Confirmation**" means the Bankruptcy Court's entry of the Confirmation Order.

"**Confirmation Date**" means the date on which the Order confirming this Plan is entered.

"**Confirmation Hearing**" means the hearing or hearings held before the Bankruptcy Court in which the Debtors will seek Confirmation of this Plan.

"**Confirmation Order**" means the Order confirming this Plan.

"**Contested**" when used with respect to a Claim, means a Claim against the Debtor: (i) that is listed in the Debtor's Schedules of Assets and Liabilities as disputed, contingent, or unliquidated; (ii) that is listed in the Debtor's Schedules of Assets and Liabilities as undisputed, liquidated, and not contingent and as to which a Proof of Claim has been filed with the Bankruptcy Court, to the extent the Proof of Claim amount exceeds the scheduled amount; (iii) that is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (iv) as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

"**Debtor**" means 2999TC LP, LLC, the Debtor herein. Where the context so requires, "**Debtor**" shall also include the Reorganized Debtor.

"**Disputed**" with respect to a Claim means either: (i) a Claim which has been objected to by the Debtor; or (ii) a Claim that is listed on the Debtor's bankruptcy schedules as "disputed, contingent or unliquidated" and for which such Creditor or Interest holder has not filed a Proof of Claim.

"**Effective Date**" means the thirtieth (30th) day after the Confirmation Date.

"**Estate**" means the bankruptcy estate of the Debtor in this Case.

"**Fee Claim**" means a Claim under Bankruptcy Code §§ 330 or 503 for allowance of compensation and reimbursement of expenses to professionals in this Bankruptcy Case.

"**Fee Application**" means an application filed with the Bankruptcy Court for allowance of a Fee Claim.

"**Final Order**" means an Order as to which any appeal that has been taken has not been stayed following the expiration of the time for appeal or has been resolved, or as to which the time for appeal has expired.

"**Impaired**" means the treatment of an Allowed Claim or Interest pursuant to the Plan unless, with respect to such Claim or Interest, either: (i) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest; (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after occurrence of a default, the Debtor (A) cures any default that occurred before or after the commencement of the Chapter 11 Case on the Petition Date, other than default of the kind specified in § 365(b)(2) of the Bankruptcy Code; (B) reinstates the maturity of such Claim or Interest as such maturity existed before such default; (C) compensates the holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (D) does not otherwise alter the legal, equitable or contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest; or (iii) the Plan provides that on the Effective Date, the holder of such Claim or Interest receives, on account of such Claim or Interest, cash equal to the Allowed Amount of such Claim or Interest.

"**Insider**" has the meaning provided by § 101(31) of the Bankruptcy Code.

"**Interest**" means any equity or ownership interest in the Debtor.

"**Lien**" means any charge against or interest in property to secure payment of debt or performance of an obligation and includes a judicial lien, security interest, and deed of trust, mortgage and property tax lien.

"**Order**" means an Order of the Bankruptcy Court.

"**Petition Date**" means October 16, 2020, the date on which the Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code.

"**Plan**" means this *Chapter 11 Plan of Reorganization*, including any amendments, modifications or corrections made thereto pursuant to the Bankruptcy Code.

"**Priority Tax Claim**" means a Claim entitled to priority pursuant to Bankruptcy Code § 507(a)(8).

**"Priority Wage Claim"** means a Claim entitled to priority pursuant to Bankruptcy Code § 507(a)(4).

**"Priority Unsecured Claim"** means an Unsecured Claim entitled to priority under Bankruptcy Code § 507(a), except Priority Tax Claims and Priority Wage Claims.

"**Proof of Claim**" means a written statement setting forth a Creditor's Claim filed in this Case and conforming substantially to the appropriate official form.

**"Reorganized Debtor"** means the Debtor as it exists after Confirmation of the Plan.

"**Schedules and Statements**" means the Debtor's bankruptcy schedules A/B, D-H and the Statement of Financial Affairs.

"**Secured Claim**" means a Claim that is secured within the meaning of Bankruptcy Code § 506(a). Should the value of the Collateral securing a Secured Claim be less than the amount of the claim, the claim will be bifurcated into a Secured Claim equal to the value of the Collateral and a general unsecured claim for the remainder, pursuant to Bankruptcy Code § 506(d).

"**Unsecured Claim**" means any Claim that is not a Secured Claim or an Administrative Expense Claim and that is not entitled to priority treatment under Bankruptcy Code § 507.

## ARTICLE II
## CONCEPT OF THE PLAN

**2.01** The Plan is a plan of reorganization. The Debtor shall continue its business after the Confirmation Date. The Debtor owns a membership interest and a $4,000,000.00 capital account in 2999TC JMJ MGR, LLC, which is part of a group of entities collectively owning a 2.5-acre tract of real property located at 2999 Turtle Creek Boulevard in Dallas, Texas (the "Property"), to be developed into a luxury hotel and condominiums. The Debtor will fund the Plan from the proceeds of a redemption of its capital account by 2999TC JMJ MGR, LLC. This redemption will occur approximately six to nine months after the Effective Date of the Plan through a refinance of the debt on the Property and recapitalization of all entities holding direct or indirect interests in the Property, including 2999TC JMJ MGR, LLC. **The Plan will pay all Allowed Claimants except for the Hodges Group, 100% of their Claims, with interest**. The Plan will pay the Hodges Group $4,000,000.00 with interest as further set forth in Article V of the Plan. This equates to 78% of the amount set forth in the Proofs of Claim filed by the Hodges Group on March 11, 2021. The Hodges Group withdrew their proofs of claims on July 30, 2021.

**2.02** Prior to the filing of this case the Debtor was engaged in litigation in the case of *L. Allen Hodges III, as Independent Executor of the Estate of Leland A. Hodges Jr., Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. v. 2999TC LP, LLC, JMJ Development, LLC, and Tim Barton*, Cause No. 141-316567-20 in the 141st Judicial District Court of Tarrant County, Texas (the "Lawsuit"). The Lawsuit was removed to the Bankruptcy Court by the Debtor upon the filing of this Bankruptcy Case. Subsequently, the plaintiffs in the Lawsuit (hereinafter referred to as the "Hodges Group") dismissed their claims against the Debtor and the Bankruptcy Court remanded the Lawsuit back to the state court for further determination. The Debtor appealed the Court's order remanding the Lawsuit and dismissing the Hodges Group's claims. The United States District Court for the Northern District of Texas, Fort Worth Division affirmed the bankruptcy court's order, and the Debtor appealed the portion of the order pertaining to the dismissal of the claims against the Debtor to the Fifth Circuit Court of Appeals. On July 6, 2021, the Fifth Circuit dismissed the appeal on jurisdictional grounds. Additional information on

the procedural history of the appeal is set forth in the Third Amended Disclosure Statement accompanying this Plan. The Hodges Group consists of the largest Claims in this Case, although the Debtor disputes the validity of these Claims in full, and the Debtor's objection to the Hodges Group Claims which are pending adjudication by the Court, have now been mooted by the withdrawal of the claims.

## ARTICLE III
## GENERAL TERMS AND CONDITIONS

**3.01** **Treatment of Claims**. This Plan is intended to resolve all Claims against the Debtor and/or property of the Debtor of whatever character, whether contingent or liquidated, or whether allowed by the Bankruptcy Court pursuant to Bankruptcy Code Section 502(a). However, only Allowed Claims will receive payments under the Plan. The Plan is designed to ensure that Claimants shall receive at least as much pursuant to this Plan as they would receive in a liquidation pursuant to Chapter 7 of the Bankruptcy Code.

**3.02** **Time for Filing Claims**. The holder of any Administrative Claim other than (i) a Fee Claim, (ii) a liability incurred and paid in the ordinary course of business by the Debtor, or (iii) an Allowed Administrative Claim, must file with the Bankruptcy Court and serve on the Debtor and its respective counsel, notice of such Administrative Claim within thirty (30) days after the Effective Date. At a minimum, such notice must identify (i) the name of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim. Failure to file this notice timely and properly shall result in the Administrative Claim being forever barred and discharged.

Each Person asserting an Administrative Expense that is a Fee Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court, and serve on the Debtor's counsel and the U. S. Trustee, a Fee Application within sixty (60) days after the Effective Date.

A person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

Liabilities incurred from the Petition Date through the Effective Date in the ordinary course of business shall be paid in the ordinary course of business by the Debtor.

**3.03** **Modification to the Plan**. In accordance with Bankruptcy Rule 3019, to the extent applicable, this Plan may be modified or amended upon application of the Debtor, or corrected prior to the Confirmation Date, provided that notice and an opportunity for hearing have been given to any affected party. The Plan may be modified at any time after Confirmation and before the Effective Date, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code, the circumstances warrant such modification and Debtor consents thereto in writing.

## ARTICLE IV
## <u>DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS</u>

The Debtor designates the following Classes of Claims and Interests pursuant to Bankruptcy Code Section 1123.

| **CLASSIFICATION OF CLAIMS** |
| --- |
| Class 1: Priority Unsecured Claims other than Priority Tax Claims |
| Class 2 – Claims of L. Allen Hodges III, as Independent Executor of the Estate of Leland A. Hodges Jr., Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. |
| Class 3: General Unsecured Claims |
| Class 4: Insider Claims |
| Class 5: Equity Interests |

## ARTICLE V

## <u>PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS</u>

***A. <u>NON-CLASSIFIED CLAIMS.</u>*** The following Claims are not classified, pursuant to Bankruptcy Code Section 1123:

**<u>Treatment of Administrative Claims</u>**. Each holder of an Administrative Claim other than Professional Fee Administrative Claims shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Administrative Claim, (i) Cash equal to the unpaid portion of such Allowed Administrative Claim or (ii) such other treatment as to which the Debtor and such holder shall have agreed upon in writing; provided, however, that Allowed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Bankruptcy Case shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto. On or before the Effective Date, the Debtor or Reorganized Debtor shall pay or have paid in full all Allowed Administrative Claims. All Allowed Administrative Claims shall be paid by the Reorganized Debtor when they are due until the Bankruptcy Case is closed pursuant to a final decree, order of dismissal, or order of conversion. Until entry of such an order, the Reorganized Debtor shall file with the Bankruptcy Court and serve upon the United States Trustee a quarterly financial report. Any administrative ad valorem tax claims shall be paid pursuant to otherwise applicable state law.

**<u>Treatment of Professional Fee Administrative Claims.</u>** All persons who are awarded compensation or reimbursement of expenses by the Bankruptcy Court in accordance with sections 330 or 331 of the Bankruptcy Code or entitled to the priorities established pursuant to sections 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code, shall be paid in full, in Cash, the amounts allowed by the Bankruptcy Court on the later of the Effective Date or the date on which the order allowing such Claim becomes a Final Order, or upon such other terms as may be mutually agreed upon between

such holder of an Allowed Professional Fee Claim and the Reorganized Debtor.

**Treatment of Priority Tax Claims.** Priority Tax Claims shall be paid in full over sixty (60) months from the Effective Date at an interest rate of 5% per annum. Payments shall commence on the first day of the month following the Effective Date and continue on the first day of each month thereafter until paid in full.

**Title 28 U.S.C. Section 1930 Fees.** The Reorganized Debtor shall pay all post-Confirmation fees assessed by the Office of the United States Trustee until this Case is closed by the Court or the Reorganized Debtor is otherwise released from such obligations by the Court.

***B. CLASSIFIED CLAIMS.*** The following Claims are classified pursuant to Bankruptcy Code Section 1123, and are treated as follows:

**Class 1: Allowed Unsecured Priority Claims Other Than Priority Tax Claims**

Class 1 Claims shall consist of Unsecured Priority Claims other than Priority Tax Claims. The Debtor does not believe any such Claims exist. To the extent such Claims do exist, they shall be paid in full, with interest at the rate of 5% per annum, in six (6) equal monthly installments. Payments shall commence on the first (1st) day of the third (3rd) calendar month following the Effective Date and continue on the first day of each month thereafter until paid in full. Interest shall begin to accrue on the Effective Date. This Class is Impaired by the Plan and the holders of these Claims are entitled to vote to accept or reject the Plan.

**Class 2: Allowed Claims of L. Allen Hodges III, as Independent Executor of the Estate of Leland A. Hodges Jr., Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. (the "Hodges Group")**

Class 2 shall consist of the Allowed Claims of each member of the Hodges Group. The Hodges Group filed proofs of claim against the Debtor for an unsecured amount of $5,302,424.52 which were withdrawn on July 30, 2021. The Debtor disputed the validity of the Class 2 Claims and objected to the Class 2 Claims. The withdrawal of the claims moots the objection to the proof of claims.

The Debtor proposes to pay the Hodges Group claims owed by the Debtor, the amount of $4,000,000.000 over two years in equal monthly installments commencing on the first day of the first month after the Effective Date and continuing the first day of each succeeding month with a final lump sum payment of the full remaining balance due two years from the anniversary of the Effective Date. Interest at the rate of 5% per annum shall begin to accrue on the Effective Date. The monthly payments will be calculated based on an amortization schedule of 5% interest per annum over a 30-year period equating to $21,472.86 monthly.

If the Reorganized Debtor fails to make any payment as set out above, that failure shall be an event of default. If the Reorganized Debtor fails to cure a monetary event of default within ten (10) days after receipt of written notice of default from this Claimant, then the Claimant may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies the Claimant may have under its loan documents or state law without application of the automatic stay; and/or (c) seek such relief as may be appropriate in the Court.

This Claim is Impaired and the holder of this Claim is entitled to vote to accept or reject the Plan.

**Class 3: Allowed General Unsecured Claims**

Class 3 shall consist of Allowed Unsecured Claims other than the Claims in Classes 2 and 4. Class 3 Claims shall be paid in full, over five years in equal monthly installments commencing on the first day of the month following the Effective Date and continuing on the first day of each succeeding month with a final lump sum payment of the full remaining balance due within 60 months from the first payment. Interest at the rate of 1% per annum shall begin to accrue on the Effective Date. This Class is Impaired, and any holder of a Claim in this Class is entitled to vote to accept or reject the Plan.

**Class 4: Allowed Insider Claims**

Class 4 shall consist of the Allowed Claims of Insiders of the Debtor. Class 4 Claims shall be paid in full without interest, but only after all other Claimants in the Case have been paid in full as set out above. Class 4 Claimants are Impaired and are deemed to have rejected the Plan, but their claims will not be counted for or against Confirmation.

**Class 5 - Equity Interests**

All Equity Interests in the Debtor shall be retained.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF PLAN

**6.01 Implementation of Plan.** This Plan will be implemented, pursuant to Section 1123(a)(5) of the Code, by the commencement of payments as called for above.

Upon the Effective Date, all property of the Debtor and its Estate shall vest in the Reorganized Debtor.

## ARTICLE VII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.01 Rejection of Executory Contracts and Unexpired Leases**. All executory contracts and unexpired leases not assumed by the Debtor as of the Confirmation Date shall be deemed as rejected by this Plan.

**7.02 Reservation of Rights**. The Debtor shall have the right to assume or reject, pursuant to Bankruptcy Code Section 365, prior to the Confirmation Date, any executory contract or unexpired lease of real property (to the extent permitted under the Bankruptcy Code).

**7.03 Bar Date for Claims Based on Rejection**. If the rejection of an executory contract or an unexpired lease results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Plan Proponent or their properties or agents, successors, or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Reorganized Debtor, by the earlier of (a) the end of the month following the period in which the Effective Date occurs or (b) such other deadline as the Court may set for asserting a Claim for such damages. Any Rejection Claim arising from the rejection of an unexpired lease or executory contract shall be treated as a General Unsecured Claim; *provided, however*, that any Rejection Claim based upon the rejection of an unexpired lease of real property either prior to the Confirmation Date or upon the entry of the Confirmation Order shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. Nothing contained herein shall be deemed an admission that such rejection gives rise to or results in a Claim or shall be deemed a waiver of any objections to such Claim if asserted.

## ARTICLE VIII
## ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS

**8.01 The Debtor's Causes of Action**. Except as otherwise released pursuant to the Plan, all Claims recoverable under Section 550 of the Bankruptcy Code, all Claims against third parties on account of an indebtedness, and all other Claims of any kind or character whatsoever owed to or in favor of the Debtor or Reorganized Debtor or the Estate to the extent not specifically compromised and released pursuant to this Plan or any agreement referred to and incorporated herein, are hereby preserved and retained for enforcement by the Reorganized Debtor for the benefit of the Creditors subsequent to the Effective Date. This Plan shall not estop the Debtor or Reorganized Debtor from asserting any claim or cause of action whether disclosed or not.

Prior to the filing of this case the Debtor was engaged in litigation in the case of *L. Allen Hodges III, as Independent Executor of the Estate of Leland A. Hodges Jr., Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. v. 2999TC LP, LLC, JMJ Development, LLC, and Tim Barton*, Cause No. 141-316567-20 in the 141st Judicial District Court of Tarrant County, Texas (the "Lawsuit"). The Lawsuit was removed to the Bankruptcy Court by the Debtor upon the filing of this Bankruptcy Case then remanded by the Bankruptcy Court back to the state court. The Debtor appealed the Court's order remanding the Lawsuit.

Case 21-31954-mvl11 Doc 43-6 Filed 12/06/21 Entered 12/06/21 11:31:30 Page 12 of 16

The United States District Court for the Northern District of Texas, Fort Worth Division affirmed the bankruptcy court's orders and the Debtor appealed the portion of the order pertaining to the dismissal of the claims against the Debtor to the Fifth Circuit Court of Appeals. The Fifth Circuit dismissed the appeal on July 6, 2021, on jurisdictional grounds. The Hodges Group withdrew their Claims on July 30, 2021.

The causes of action that belong to the Debtor, that are currently known by the Debtor are its counterclaims against the Hodges Group that were the subject of the adversary proceeding that has been remanded to State Court. Although the Debtor voluntarily non-suited its claims against the Hodges Group after the case was remanded to the State Court, the causes of actions remain to be pursued by the Debtor.

**8.02 Objections to Claims.** Any party authorized by the Bankruptcy Code may object to the allowance of Pre-Petition Date Claims at any time prior to sixty (60) days after the Effective Date and, as to Rejection Claims, at any time prior to sixty (60) days after the filing of any such Rejection Claim. Any proof of Claim filed after the Court sets bar dates shall be of no force and effect and shall be deemed disallowed. All Contested Claims shall be litigated to Final Order; *provided, however,* that the Debtor or Reorganized Debtor may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court. Notwithstanding the foregoing, a person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

No distributions under this Plan shall be made to the holder of a Claim that is in dispute, unless and until such Claim becomes an Allowed Claim. If a Claim is disputed in whole or in part because the Debtor or Reorganized Debtor asserts a right of offset against such Claim or recoupment against the holder of such Claim, then, if and to the extent the Claim giving rise to the offset or recoupment is sustained by Final Order, the Claim in dispute shall be reduced or eliminated and, if applicable, the holder of such Claim shall be required to pay the amount of such offset or recoupment, less the amount of its Allowed Claim. In addition, any party authorized by the Bankruptcy Code, at any time, may request that the Court estimate any contingent, disputed or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code, regardless of any prior objections.

## ARTICLE IX
## EFFECT OF CONFIRMATION

**9.01 Discharge and Release of Debtor**. Pursuant to Bankruptcy Code Section 1141(d), confirmation of this Plan does discharge the Debtor.

**9.02 Legal Binding Effect**. The provisions of this Plan, pursuant to the Bankruptcy Code Section 1141 shall bind the Debtor and all Creditors, whether or not they accept this Plan. The distributions provided for Claimants shall not be subject to any Claim by another creditor or interest holder by reason of any assertion of a contractual right of subordination.

**9.03 Discharge**. Confirmation of the Plan shall result in the inability to commence or

continue any judicial, administrative, or other action or proceeding on account of any Pre-Petition Date Claims against the Debtor or Reorganized Debtor.

Except as provided in the Plan, from and after the Confirmation Date, all holders of Claims against the Debtor are restrained and enjoined by the Confirmation of the Plan: (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtor or Reorganized Debtor, or its property; (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Assets or the Debtor or Reorganized Debtor on account of such Claims; (c) from creating, perfecting, or enforcing any encumbrance of any kind against the Assets, or the Debtor or Reorganized Debtor on account of such Claims; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor or Reorganized Debtor on account of such Claims; and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan on account of such Claims; provided, however, that each holder of a Contested Claim may continue to prosecute its proof of Claim in the Bankruptcy Court and all holders of Claims shall be entitled to enforce its rights under the Plan and any agreements executed or delivered pursuant to or in connection with the Plan. Creditors shall not pursue claims against non-debtor third parties at the same time as their claims are being paid through the Plan.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

**10.01** **Request for Relief Under Bankruptcy Code Section 1129**. In the event any Impaired Class shall fail to accept this Plan in accordance with Bankruptcy Code Section 1129(a), the Plan Proponent reserves the right to, and does hereby request the Bankruptcy Court to confirm the Plan in accordance with Bankruptcy Code Section 1129(b).

**10.02** **Revocation**. The Plan Proponent reserves the right to revoke and withdraw this Plan at any time prior to the Confirmation Date.

**10.03** **Effect of Withdrawal or Revocation**. If the Plan Proponent revokes or withdraws this Plan prior to the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.

**10.04** **Due Authorization by Creditors**. Each and every Claimant who elects to participate in the distributions provided herein warrants that it is authorized to accept in consideration of its Claim against the Debtor the distributions provided in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

**10.05** **Entire Agreement**. This Plan, as described herein, the Confirmation Order, and all other documents and instruments to effectuate this Plan provided for herein, constitute the entire agreement and understanding among the parties hereto relating to the subject matter hereof and supersedes all prior discussions and documents.

**10.06** **Section 1146 Exemption.** Pursuant to Section 1146 of the Bankruptcy Code, the issuance, transfer or exchange or any security under this Plan or the making or delivery of any instrument or transfer pursuant to, in implementation of or as contemplated by this Plan or the transfer of any property pursuant to this Plan shall not be taxed under any federal, state or local law imposing a stamp, transfer or similar tax or fee.

**10.07** **Provisions Governing Distributions.** All payments and distributions under the Plan shall be made by the Reorganized Debtor as indicated. Any payments or distributions to be made by the Plan Proponent pursuant to the Plan shall be made as soon as reasonably practicable after the Effective Date, except as otherwise provided for in the Plan, or as may be ordered by the Bankruptcy Court. Any payment or distribution by the Reorganized Debtor pursuant to the Plan, to the extent delivered by the United States Mail, shall be deemed made when deposited into the United States Mail.

Payments of Cash to be made by the Reorganized Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth on the proofs of Claim or proofs of interest filed by such holders (or at the last known addresses of such holders if no proof of Claim or proof of interest is filed). All Claims for undeliverable distributions shall be made on or before the second anniversary of the Effective Date. After such date, all unclaimed property shall remain the property of the Reorganized Debtor and the Claim of any other holder with respect to such unclaimed property shall be discharged and forever barred.

Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of delivery thereof. Requests for reissuance of any check shall be made directly to the Plan Proponent by the holder of the Allowed Claim to whom such check originally was issued. Any claim in respect of such a voided check within ninety (90) days after the date of delivery of such check. After such date, all Claims in respect of void checks shall be discharged and forever barred, and the amount of such checks shall become Unclaimed Property and returned to the Reorganized Debtor.

No interest shall be paid on any Claim unless, and only to the extent that, the Plan specifically provides otherwise.

**10.08** **Governing Law.** Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the internal laws of the State of Arkansas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

**10.09** **Default**. Unless otherwise stated in this Plan, if the Reorganized Debtor fails to satisfy any of the obligations under this Plan and such default is not cured within 30 business days of the date of transmission of notice of the default to the Reorganized Debtor, then the defaulted party may pursue all of its remedies outside of the Bankruptcy Court, including, but not limited to, foreclosure on its lien(s) on property. For purposes of this provision, notice shall be provided to the Reorganized Debtor, c/o Joyce Lindauer, Esq. via facsimile at (972) 503-4034 and email at joyce@joycelindauer.com.

## ARTICLE XI
## MODIFICATION OF THE PLAN

**11.01** The Debtor may propose amendments to or modifications of this Plan at any time prior to Confirmation, upon notice to all parties-in-interest. After Confirmation, the Reorganized Debtor may, with approval of the Court and so long as it does not materially or adversely affect the interest of creditors, modify to remedy any defect or omission or reconcile any inconsistencies in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of this Plan.

## ARTICLE XII
## RETENTION OF JURISDICTION

Notwithstanding confirmation of the Plan or the Effective Date having occurred, the Court will retain jurisdiction for the following purposes:

**12.01** **Allowance of Claims**. To hear and determine the allowability of all Claims upon objections to such Claims.

**12.02** **Executory Contracts and Unexpired Leases Proceedings**. To act with respect to proceedings regarding the assumption of any executory contract or unexpired lease of the Debtor pursuant to Section 365 and 1123 of the Code and Article VII of the Plan.

**12.03** **Plan Interpretation**. To resolve controversies and disputes regarding the interpretation of the Plan.

**12.04** **Plan Implementation**. To implement and enforce the provisions of the Plan and enter orders in aid of confirmation and implementation of the Plan.

**12.05** **Plan Modification**. To modify the Plan pursuant to Section 1127 of the Code and applicable Bankruptcy Rules.

**12.06** **Adjudication of Controversies**. To adjudicate such contested matters and adversary proceedings as may be pending or subsequently initiated in the Court against the Debtor.

**12.07** **Injunctive Relief**. To issue any injunction or other relief as appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunctions or other

Case 21-31954-sgj11 Doc 96 Filed 08/24/21 Entered 08/24/21 11:51:11 Page 16 of 16

relief issued under the Plan or in the Confirmation Order.

**12.08** **Interpleader Action**. To entertain interpleader actions concerning assets to be distributed or other assets of the Estate.

**12.09** **Correct Minor Defects**. To correct any defect, cure any omission or reconcile any inconsistency or ambiguity in the Plan, the Confirmation Order or any document executed or to be executed in connection therewith, as may be necessary to carry out the purposes and intent of the Plan, provided that the rights of any holder or an Allowed Claim are not materially and adversely affected thereby.

**12.10** **Authorization of Fees and Expenses**. To review and authorize payment of professional fees incurred prior to the Effective Date.

**12.11** **Post-Confirmation Orders Regarding Confirmation**. To enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified, or vacated.

**12.12** **Final Decree**. To enter a final decree closing the Case pursuant to Bankruptcy Rule 3022.

Respectfully Submitted,

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer
Texas State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, TX 75202
Telephone: (972) 503-4033
joyce@joycelindauer.com

**ATTORNEYS FOR THE DEBTOR**

*/s/Timothy Barton*
President of the Debtor as
Proponent of the Plan

# EXHIBIT H

Martin J. Lehman
State Bar No. 12172900
Palmer Lehman Sandberg, PLLC
8350 N. Central Expressway, Suite 1111
Dallas, Texas 75206
Telephone: (214) 242-6444
Facsimile: (214) 265-1950
mlehman@pamlaw.com

ATTORNEYS FOR HAPPY STATE BANK

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MANSIONS APARTMENT HOMES AT | § | Case No. 20-43643-elm |
| MARINE CREEK, LLC | § | |
| Debtor | § | Chapter 11 |

## HAPPY STATE BANK'S MOTION TO DISMISS FOR CAUSE

COMES NOW Happy State Bank ("HSB") and files this Motion to Dismiss for Cause the bankruptcy of Mansions Apartment Homes at Marine Creek LLC ("Mansions," "Borrower" or the "Debtor") , and shows:

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C §1334. This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A).

2. HSB moves for dismissal of this case for cause[1] for the reasons including, but not limited to, the following:

a. On information and belief, Mansions was not authorized to file the bankruptcy petition.

[1] "The court shall commence the hearing on a motion under this subsection [1112(b)(1)] not later than 30 days after filing of the motion, and shall decide the motion not later than 15 days after commencement of such hearing…" Bankruptcy Code §1112(b)(3).

b. The bankruptcy petition was not filed in good faith.

c. There is no going concern to preserve, no employees to protect, and no hope of rehabilitation.

3. Mansions is a single asset real estate debtor as defined in Bankruptcy Code §101(51B). Mansions has no operations, no revenue, and no employees other than the principals.

4. In June, 2018, HSB loaned $5,400,000.00 to Mansions (the "Loan") to finance Mansions' purchase of 40.4892 acres of undeveloped land in Tarrant County (the "Property"). The Loan is evidenced by a promissory note in the original principal amount of $5,400,000.00 dated June 6, 2018, made by Mansions payable to the order of HSB. To secure payment of the Loan, Mansions gave HSB a deed of trust (the "HSB Deed of Trust") on the Property.

5. The Property was to be developed as an apartment complex, hence the name *Mansions Apartment Homes at Marine Creek*. However, 2 ½ years have elapsed since the Loan was made, and not a shovelful of dirt has been moved.

6. The Loan was original scheduled to mature on June 5, 2020. When it became clear that Mansions would not be able to pay the Loan at its original maturity date, HSB agreed in writing to extend the maturity to September 4, 2020.

7. Mansions defaulted by failing to pay the Loan when it matured on the extended maturity date of September 4, 2020.

8. After the Loan matured, by letter dated September 25, 2020, HSB made written demand for payment on Mansions. Despite demand, the Loan was not paid.

9. Due to the default, HSB filed suit against Mansions (and guarantors of the Loan), and had the Property posted for a non-judicial foreclosure sale to be conducted on December 1, 2020.

10. After the Loan matured and after HSB made written demand for payment, HSB proposed that the parties enter into a Forbearance Agreement that would effectively reinstate the Loan and extend the Loan maturity to April 4, 2021.

11. However, HSB received <u>4 different versions of ownership and/or management of Mansions</u>. These different versions of ownership and/or management are shown by (i) a *Company Agreement* of Mansions dated March 19, 2018, provided to HSB at the time the Loan was made, (ii) *Regulations* of Mansions dated the exact same day (March 19, 2018), but provided to HSB by Mansions' attorney on October 26, 2020, (iii) 2018 federal income tax return and schedule K-1s provided by Mansions to HSB, and (iv) Mansions' records on file with the Texas Secretary of State.

12. The different versions of ownership and/or management of Mansions are significant because:

a. HSB is required by federal regulations/laws to identify and verify beneficial owners of its legal entity customers, as part of its federally required anti-money laundering compliance program, and

b. It is a default under the loan documents if, without the prior written consent of HSB, "any ownership interest of [Mansions] … is transferred, assigned, or otherwise hypothecated…," and HSB had not consented to (nor been asked to consent to) any transfers of ownership of Mansions.

13. The different versions of ownership and/or management are also significant because, <u>without knowing which version of the ownership and/or management is accurate, it is impossible to determine if Mansions was authorized to file the bankruptcy petition commencing this case.</u>

14. In October and November, 2020, in connection with the proposed Forbearance Agreement, HSB repeatedly requested the following (the "Requisite Forbearance Information"):

a. The names and respective percentage ownership interests of all current owners of Borrower;

b. The names of all managers of Borrower;

c. If the names and respective ownership interests of the current owners of the Borrower differ from JMJ Development, LLC – 74%, Hal Thorne – 25%, Timothy Barton – 1%, copies of the documents evidencing the assignments/transfers of the ownership to the current status – which assignments/transfers must then be consented to by HSB (and which consent may be refused by HSB in its sole discretion, as provided in the Loan Documents);

d. A signed Certification of Beneficial Ownership accurately reflecting the current ownership of Borrower;

e. A company resolution of Borrower, in a form satisfactory to HSB, authorizing the execution of the Forbearance Agreement and stating who is authorized to execute the Forbearance Agreement on behalf of Borrower; and

f. The Forbearance Agreement fully executed by Borrower (in accordance with the company resolution) and by each of the Guarantors.

15. Despite HSB's repeated requests, the Requisite Forbearance Information was never provided, a Certificate of Beneficial Ownership and a Forbearance Agreement were never signed, and the Loan remained matured and in default.

16. After HSB proposed that the parties enter into the Forbearance Agreement, HSB

learned of these additional defaults on the Loan (that is, defaults in addition to the failure to pay the Loan when it matured):

a. In 2018, Mansions gave David Campbell a second lien deed of trust on the Property (this is both a default under the HSB Deed of Trust, and a default under Campbell's guaranty of the Loan).

b. Campbell had scheduled for December 1, 2020, a foreclosure sale of the Property under the Campbell Deed of Trust.

c. In August, 2019, a tax lien transfer contract executed by Mansions to FGMS Holdings, LLC ("FGMS") was recorded in the real property records. This tax lien transfer contract provides for the financing of the 2018 ad valorem taxes, penalties, interest, and fees owed on the Property in the amount of $79,960.09, resulting in FGMS holding a lien on the Property superior to the HSB Deed of Trust.

d. <u>On September 14, 2020, Mansions had conveyed 13.4330 acres of the Property to D4MC LLC</u>.

17. On November 25, 2020, HSB withdrew the proposal to enter into a Forbearance Agreement.

18. On November 25, 2020, Mansions filed Borrower's Verified Motion for Temporary Restraining Order/Temporary Injunction in Cause No. 342-321533-20, styled *Happy State Bank vs. Mansions Apartment Homes at Marine Creek LLC*, et al. A hearing on Mansions' motion was held on November 30, 2020, at the conclusion of which the Honorable Kimberly Fitzpatrick, Judge of the 342nd District Court, Tarrant County, denied Mansions' motion.

19. The petition commencing this case was then filed on November 30, 2020, thus

staying HSB's December 1, 2020, foreclosure sale.

20. Mansions' schedules and statement of financial affairs show:

a. Mansions single asset is the Property, less the 13.4330 acres wrongfully conveyed to D4MC LLC on September 14, 2020.

b. Mansions has no other assets – no cash, no receivables, nothing.

c. Mansions has no executory contracts.

d. Mansions has no revenue from any source.

21. Mansions' schedules show $4,454,578.12 of unsecured non-priority debt. However, $3,971,669.18 (almost 90%) is owed to insiders and/or affiliates of Mansions for business debt. However, it is unfathomable (or at minimum, highly suspect) that a company whose only asset is undeveloped land could incur that amount of legitimate business debt with insiders and/or affiliates.

22. In September, 2020, Mansions' attorney advised HSB that "anticipated new HUD loan in the amount of $35,155,800 to Grantee [D4MC LLC, which was apparently to purchase 13.43 acres of the Property from Mansions] has been delayed, and may not now be proceeding." <u>Nevertheless, on September 14, 2020, Mansions deeded 13.4330 acres of the Property to D4MC LLC (i) in violation of the terms of the HSB Deed of Trust, and (ii) apparently without receiving any payment for the transfer</u>.

23. Further, the transferee, D4MC LLC, is an insider and/or affiliate of Mansions. D4MC LLC's sole managing member is JMJD4 LLC. JMJD4, LLC has two managing members: TRWF Lodge LLC and Enoch Investors. In turn, (according to the SOS records) TRWF Lodge LLC is the sole manager and sole director of Mansions.

24. Despite Mansions' conveyance of the 13.4330 acres to an insider and/or affiliate a

mere 2 ½ months before the bankruptcy, Mansions falsely states in its statement of financial affairs that Mansions has made no transfers of property within 1 year before filing this case that benefitted any insider.

**ARGUMENT AND AUTHORITIES**

25. "Except as provided in paragraph (2) and subsection (c) [neither of which are applicable here], on request of a party in interest, and after notice and a hearing, the court shall convert a case under … chapter [11] to a case under chapter 7 or dismiss a case under … chapter [11], whichever is in the best interests of the creditors and the estate, for cause…" Bankruptcy Code §1112(b)(1). HSB is a party in interest. Bankruptcy Code §1109(b) ("A party in interest, including… a creditor… may raise and may appear on any issue in a case under this chapter.").

26. The Honorable Harlin Hale held that a creditor has standing to object to a chapter 11 bankruptcy filing, and that the case should be dismissed if the filing was not authorized, even though Judge Hale agreed that the "case cries out for bankruptcy relief." *In re Orchard at Hansen Park, LLC*, 347 B.R. 822, 827, 2006 Bankr. LEXIS 1414, 13 (Bankr. N.D. Tex. 2006) (chapter 11 case dismissed when the required consent of the debtor LLC members for the filing was not obtained). Here, Mansions' inability to account for the multiple conflicting versions of its ownership and/or management makes it impossible to determine that the filing of this bankruptcy case was authorized. Thus, this case should be dismissed.

27. The Fifth Circuit has provided guidance for trial courts determining if a debtor lacked good faith in filing for bankruptcy relief. *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1986 U.S. App. LEXIS 21644 (5th Cir. 1986). In Little Creek, the issue of good faith arose in connection with relief from the automatic stay under §362(d) and dismissal or conversion under §1113(b). There, the Fifth Circuit stated:

Numerous cases have found a lack of good faith to constitute "cause" for lifting the stay to permit foreclosure or for dismissing the case.

Determining whether the debtor's filing for relief is in good faith depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities. Findings of lack of good faith in proceedings based on §§ 362(d) or 1112(b) have been predicated on certain recurring but non-exclusive patterns, and they are based on a conglomerate of factors rather than on any single datum. Several, but not all, of the following conditions usually exist. The debtor has one asset, such as a tract of undeveloped or developed real property. The secured creditors' liens encumber this tract. There are generally no employees except for the principals, little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments pursuant to 11 U.S.C §§361, 362(d)(1), 363(e), or 364(d)(1). Typically, there are only a few, if any, unsecured creditors whose claims are relatively small. The property has usually been posted for foreclosure because of arrearages on the debt and the debtor has been unsuccessful in defending actions against the foreclosure in state court. Alternatively, the debtor and one creditor may have proceeded to a stand-still in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford. Bankruptcy offers the only possibility of forestalling loss of the property. There are sometimes allegations of wrongdoing by the debtor or its principals. The "new debtor syndrome," in which a one-asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors, exemplifies, although it does not uniquely categorize, bad faith cases.

Resort to the protection of the bankruptcy laws is not proper under these circumstances because there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation, except according to the debtor's "terminal euphoria." The Sixth Circuit in *Winshall Settlor's Trust*, 758 F.2d at 1137, aptly noted that

> the purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state. *See In re Dolton Lodge Trust No. 35188*, 22 B.R. 918, 922 (Bankr. N.D. Ill. 1982). "If there is not a potentially viable business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost its *raison d'etre*…" *In re Ironsides, Inc.*, 34 Bankr. 337, 339 (Bankr. W.D. Ky 1983).

Neither the bankruptcy courts nor the creditors should be subjected to the costs and delays of a bankruptcy proceeding under such conditions.

*Little Creek*, 779 F.2d 1068, at 1072-73, 1986 U.S. App. LEXIS 21644 at 10-13.

28. The facts and circumstances in the case at bar are practically a mirror image of the "recurring but nonexclusive pattern" described by the Fifth Circuit in *Little Creek*. Accordingly,

this case should be dismissed.

**PRAYER**

WHEREFORE, Happy State Bank requests (i) that this bankruptcy case be dismissed, (ii) that for 180 days after the entry of this order, no bankruptcy petitions shall be filed by, on behalf of, or against Mansions Apartment Homes at Marine Creek, LLC, or by, on behalf of, or against any owner of any part of the Property (including without limitation, D4MC LLC), and (iii) that HSB be granted such other and further relief to which it may be justly entitled.

Respectfully submitted,

*/s/ Martin J. Lehman*
Martin J. Lehman
State Bar No. 12172900

**Palmer Lehman Sandberg, PLLC**
8350 N. Central Expressway, Suite 1111
Dallas, Texas 75206
Telephone: (214) 242-6444
Facsimile: (214) 265-1950
Email: mlehman@pamlaw.com

ATTORNEYS FOR HAPPY STATE BANK

**CERTIFICATE OF SERVICE**

The undersigned certifies that he served all parties requesting notice in this case with a copy of the foregoing Notice via this Court's ECF electronic filing system on the date of filing of the Notice and on the following parties on 12/24/2020:

D4MC LLC
1755 Wittington Place
Suite 340
Dallas, Texas 75234
**See mailing matrix attached hereto.**

*/s/ Martin J. Lehman*
Martin J. Lehman

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 21-31954-HDH-11** |
| | § | |
| **2999TC ACQUISITIONS, LLC,** | § | **CHAPTER 11** |
| | § | |
| **DEBTOR.** | § | |
| | § | |

**ORDER GRANTING HNGH TURTLE CREEK, LLC 'S MOTION TO DISMISS DEBTOR'S BANKRUPTCY CASE OR, IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY, WITH INCORPORATED BRIEF IN SUPPORT**

Upon consideration of the *Motion to Dismiss Debtor's Bankruptcy Case or, in the Alternative, for Relief from the Automatic Stay, with Incorporated Brief in Support* (the "**Motion**") filed by HNGH Turtle Creek, LLC ("**HN**"), seeking dismissal of the 2999 TC Acquisitions, LLC's bankruptcy; the Court having reviewed the Motion and all related responses replies and filings; and the Court having found and determined that the legal and factual bases set forth in the Motion do establish just cause for the relief granted therein, it is HEREBY ORDERED THAT:

1. HN's Motion is GRANTED;

2. The above-captioned bankruptcy case is hereby dismissed; and

3. The Court retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

**### End of Order ###**

Order prepared by:

**KANE RUSSELL COLEMAN LOGAN PC**

By: */s/ John J. Kane*
John J. Kane (TX Bar No. 24066794)
R. Hale Neilson (TX Bar No. 24116820)
Bank of America Plaza
901 Main Street, Suite 5200
Dallas, Texas 75202
Tel.: (214) 777-4200
Fax: (214) 777-4299
E-mail: jkane@krcl.com
E-mail: kwoodard@krcl.com
E-mail: hneilson@krcl.com

***Counsel to HNGH Turtle Creek, LLC***