Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR DEBTOR

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>2999TC ACQUISITIONS, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 21-31954-hdh |

**DEBTOR'S RESPONSE TO HNGH TURTLE CREEK, LLC'S MOTION TO DISMISS DEBTOR'S BANKRUPTCY CASE OR, IN THE ALTERNATIVE, <u>FOR RELIEF FROM THE AUTOMATIC STAY (DOC. NO. 9)</u>**

**TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:**

COMES NOW 2999TC Acquisitions, LLC, debtor herein ("Debtor") and files this Response to the Motion to Dismiss Debtor's Bankruptcy Case or, in the Alternative, for Relief from the Automatic Stay filed by HNGH Turtle Creek, LLC ("HNGH") (the "Motion"), and would show the Court as follows:

## I. JURISDICTION

1. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. SUMMARY OF RESPONSE

### A. <u>Dismissal</u>

**EXHIBIT "3"**

2. HNGH seeks immediate dismissal of this case within days after its commencement, alleging a bad faith filing under 11 U.S.C. 1112(b) and the Fifth Circuit's *Little Creek* decision.

3. In support, HNGH cites unrelated bankruptcy filings by other entities which share common control with the Debtor, the "single-asset real estate" ("SARE") nature of the case, and the alleged "two-party dispute" between HNGH and the Debtor. Furthermore, Debtor did not waive its rights as asserted by HNGH. There is no evidence Barton or Debtor did not intend to comply with any contractual terms. Debtor did not default under the forbearance agreement especially prior to HNGH filing its deed in lieu of foreclosure with the County Clerk in breach of the forbearance agreement and prior to Debtor filing its bankruptcy petition. Debtor does not seek to "dishonor its contractual obligations" or "delay HNGH's exercise of remedies despite no hope of a timely reorganization."

4. Not one of these arguments bears the slightest weight under scrutiny: a) unrelated bankruptcy cases involving different properties, creditors and factual circumstances are exactly that – unrelated – and have no bearing on this case[1]; b) the *Little Creek* decision has been largely pre-empted by the passage of 11 U.S.C. Section 362(d)(3), which was intended to define the rights of both[2] debtors and secured creditors in SARE cases in response to the problematic factors involved in that case and others like it. When it filed its petition herein the Debtor elected to proceed under Section 362(d)(3) and has complied and will comply with its provisions in quickly moving toward confirmation of a plan of reorganization, hopefully with good faith negotiations from HNGH ; c) this is not a two-party dispute, as can be seen from the list of creditors in the

---

[1] Further most of these cases have been successfully reorganized with Secured Lenders paid in full. Is it also noteworthy in a pandemic that numerous developers and RE owners have had similar filings, especially in the hospitality / hotel sector. The property made the subject of these proceedings is planned to be developed by the Debtor as a hotel adjust to other high end hotel properties in the Turtle Creek Blvd. area in Dallas, Texas.

22

Debtor's schedules. For these reasons and others demonstrating and other set out below the Court should deny the motion to dismiss.

**B. <u>Relief from Stay.</u>**

5. In the alternative, HNGH asks the Court for relief from the automatic stay under 11 U.S.C. section 362(d)(1) and (2), based again on an alleged bad faith filing as well as a pre-petition forbearance agreement, which HNGH incorrectly argues constitutes a waiver of the stay. It does not. The forbearance agreement purports to prevent the Debtor from objecting to relief from stay, but case law places many contingencies on whether such an agreement is enforceable, one of which being that it is a pre-petition agreement that may not be enforceable post-petition, and another that the Court must still conduct a hearing at which HNGH must prove its case, which it cannot do. For instance, HNGH alleges there is no equity in the real property securing its claim, (the amount of which Debtor disputes), based on mere speculation as to the amount equity in the Property and the inconsistent argument that default interest is accruing post-petition, which cannot happen unless there is value above the debt. Nonetheless, any purported waiver was nullified when HNGH breached the forbearance agreement by recording the deed in lieu of foreclosure prior to an event of default as described therein. Furthermore, HNGH merely speculates that "Debtor undoubtedly acknowledges that the developed office building is a gross underutilization of the Property" which Debtor disputes. Using a "tax appraised value" is not a relevant or reliable basis for determining fair market value of a Property and in turn is not relevant or reliable to make any determination of Debtor's equity in the Property and thus, Debtor disputes any inference that the "tax appraised value" is determinative of the fair market value of the Property or Debtor's equity. Additionally, HNGH's conclusion that "costs of a sale process, accruing default interest, and

accruing costs and expense of enforcement" will eliminate "any equity that the Debtor may have possessed in the Property" is merely speculative and disputed by Debtor.

6. Debtor disputes the contention that it "cannot reasonably reorganize" especially as the impact of the COVID-19 pandemic continues to lessen including its impact on the hospitality industry and any supply chain issues. HNGH further asserts "Debtor has had more than a full year during which to sell the Property or refinance HNGH's debt" which is disputed especially because HNGH acquired the debt less than a year ago. Debtor further disputes the contention that it is no closer to development that it was in 2019. Debtor disputes the contention that its obligations have "increased by more than $13 million." HNGH also points out that the Debtor's problems have been caused by the COVID-19 pandemic, which the Debtor acknowledges has been a major factor but is out of the Debtor's control and a temporary aberration, i.e., exactly the kind of problem a Chapter 11 reorganization is intended to solve. There is no "cause" to lift the stay under Section 362, especially so early in a SARE case in which a plan must be filed within 90 days after filing. There is very significant equity in the property and it is vital for an effective reorganization. Contrary to HNGH's assertion, Debtor is not insolvent nor will it be insolvent, and Debtor can get a deal done that will satisfy any debts owed to HNGH and which will benefit Debtor's creditors. For these reasons, the motion for relief from stay should be denied.

## III. ADMISSIONS AND DENIALS.

7. Regarding paragraph 7 of the Motion, the Debtor admits only that it signed t and delivered certain loan documents entitled Secured Promissory Note for the benefit of 29999 Turtle Creek LLC ("Original Lender") dated as of September 16, 2019 which was executed and notarized that same day ("Original Note") and Deed of Trust, Security Agreement and Fixture Filing ("Original Deed of Trust") (collectively, "Loan Documents") that were each executed, notarized,

and delivered on the original closing date of September 16, 2019. However, the Original Lender delayed the closing of the transaction through no fault of Debtor until ultimately Original Lender closed on September 20, 2019 ("Final Closing Date"). Prior to the Final Closing Date, Debtor re-executed the signature page to the same Original Note on September 17, 2021 which was notarized on that same date, and Debtor re-executed the signature page to the Original Deed of Trust on September 18, 2021which was notarized on that same date. Thereafter, Original Lender further delayed closing until the Final Closing Date during which time or shortly thereafter Lender made certain revisions to the Original Note without knowledge or consent of Debtor or guarantor which were generally described in a written notice sent by Debtor to the Original Lender and its counsel on May 4, 2020 soon after Debtor discovered such revisions. Additionally, the Original Lender revised the Original Deed of Trust to at least revise the effective date if not other revisions which have not yet been identified by Debtor. The Debtor does <u>not</u> admit that HNGH is the current owner or holder of the Note[3] and Deed of Trust[4] and points out that HNGH did not attach any document to the Motion establishing this alleged fact and did not state the date of any alleged assignment from the original lender. The Debtor admits that the Forbearance Agreement[5] contains a recital that the Note is "currently owned and held" by HNGH but denies that this establishes that HNGH is, in fact, the current owner and holder, and notes that the only "evidence" HNGH offers for this allegation is the reference in this paragraph to the recital in the Forbearance Agreement.

[3] As defined in HNGH's Motion but which does not necessarily mean the Original Note and any use of "Note" is not intended to mean the Original Note or waive any assertion herein that the Original Note is not the same as the Note.

[4] As defined in HNGH's Motion but which does not necessarily mean the Original Deed of Trust and any use of "Deed of Trust" is not intended to mean the Original Deed of Trust or waive any assertion herein that the Original Deed of Trust is not the same as the Deed of Trust.

[5] As used herein, "Forbearance Agreement" includes any amendments.

Case 21-31954-hdh11 Doc 34 Filed 11/26/21 Entered 11/26/21 10:49:27 Page 6 of 20

The Debtor further notes that the Forbearance Agreement contains no recitals or agreements that HNGH is the owner and holder of the Deed of Trust.

8. Regarding paragraph 8 of the Motion, the Debtor admits that the Note matured and the Debtor did not default to the extent specifically recited in the Forbearance Agreement and otherwise denies any other assertions regarding defaults or number of defaults which Debtor disputed at the time such defaults were asserted by the Original Lender.

9. Regarding paragraph 9 of the Motion, Debtor denies the assertion of "many defaults" and the characterization of certain payments but the Debtor admits that it executed the Forbearance Agreement and made the referenced $100,000.00 payments..

10. Regarding paragraph 10 of the Motion, the Debtor admits to the extent the Forbearance Agreement supports such terms but the balance stated therein also includes other costs and fees including certain legal fees. Debtor denies the characterization of HNGH allowing Debtor to exercise an extension option as HNGH was required to honor such extension and had no right to refuse. Debtor submits that the Forbearance Agreement as amended is the best evidence of its own terms.

11. Regarding paragraph 11 of the Motion, the Debtor submits that the Forbearance Agreement is the best evidence of its own terms. The Debtor denies that HNGH was entitled to the rights and remedies asserted. Debtor admits that it had not paid the amount . There is a clear dispute between what time the payment was due under the Forbearance Agreement upon filing of its petition which occurred on October 29, 2021 and further whether this deadline had been extended by the parties prior to any asserted default or recording of the deed by HNGH and denies that it owed $45,939,456 on the Petition Date. October 29, 2021. The

12. Regarding paragraph 12 of the Motion, the Debtor denies the assertion of "Barton's long history contesting stay motions" and that there is no equity in the Property. The Debtor has insufficient information to admit or deny the remainder of paragraph 12 but submits that the alleged verbal bids or offers for HNGH 's claim and any old appraisals are not indicators of the current value of the Property and are, therefore, irrelevant. Debtor denies that COVID-19 reduced the value of the Property despite any impact of COVID-19 as all commercial property values in this market have substantially increased since Debtor's acquisition of the Property and HNGH is simply guessing about any increased costs as it has no objective basis or evidence to support such an assertion.

13. Regarding paragraph 13 of the Motion, the Debtor admits that it executed a deed in lieu of foreclosure pursuant to the Forbearance Agreement and that said Agreement is the best evidence of its own terms but denies HNGH's criteria for the escrow agent to release the Deed

14. Debtor denies what the parties' "anticipation" was under the Forbearance Agreement or that it was an "alternative to a bankruptcy proceeding." Paragraph 14 of the Motion is argument that does not require an admission or denial.

15. Regarding paragraph 15 of the Motion, the Debtor denies any concept of a "last chance" or any relation to any "Bankruptcy Covenants" or that Debtor waived any bankruptcy rights. Furthermore, HNGH did not provide an "aggregate of 13 months forbearance" which is a longer period than HNGH has owned the Loan. Otherwise Debtor submits that the Forbearance Agreement is the best evidence of its own terms.

16. Regarding paragraph 16 of the Motion, Debtor reasserts its response to paragraph 15 and otherwise. the Debtor submits that the Forbearance Agreement is the best evidence of its own terms.

17. Regarding paragraph 17 of the Motion, the Debtor denies that it supports relief from the automatic stay and submits that the Forbearance Agreement is the best evidence of its own terms. Debtor denies the conclusions drawn by HNGH, assertions of any frequent participation in bankruptcy cases, or Barton's awareness or knowledge of any implications as asserted. Otherwise, the remainder of paragraph 17 is argument that does not require an admission or denial.

18. Paragraph 18 of the Motion is argument that does not require an admission or denial.

19. Regarding paragraph 19 of the Motion, the Debtor submits that the Forbearance Agreement is the best evidence of its own terms.

20. Regarding paragraph 20 of the Motion, the Debtor submits that the Forbearance Agreement is the best evidence of its own terms and Debtor denies that it cannot argue "that they did not intend to waive the automatic stay as to HN, or that they were unaware of its includes in teh Forbearance Agreement" The Debtor does not agree that the stay waiver constitutes cause for relief from the automatic stay and submits that HNGH must prove its case for such relief independent of the stay waiver. The Debtor further submits that, if Paragraph 20 is meant to be a reference to section 14(d) of the Forbearance Agreement, the section is so poorly written and ambiguous that it is unintelligible and of no force or effect.

21. Debtor denies the events occurred as asserted or that it did not have real "purported options." Debtor denies that there was any attempt to negotiate an alternative business proposal by HNGH. Otherwise, Paragraph 21 of the Motion is argument that does not require an admission or denial.

22. Paragraph 22 of the Motion, the Debtor admits that it had not paid the amount due under the Forbearance Agreement upon the filing of its Petition but denies that it "defaulted" or

that maturity had occurred at the time of the filing of its Petition HNGH asserts that it upon the alleged default that it immediately sought to enforce its rights and remedies by recording the Deed" which Debtor denies and which the current evidence disputes. HNGH may have sought to record the Deed prior to the filing of the Petition but in actuality, it failed to effectuate any recording of the Deed in accordance with the rules of Dallas County prior to the filing of Debtor's bankruptcy petition. Debtor points out that the only document offered by HNGH to prove this assertion is an email between two non-parties to this case that is inadmissible hearsay and does not include any evidence of filing other than the internal notes of a purported title company employee and which further conflicts with an email that had been previously sent by counsel for HNGH. The Dallas County Clerk's records indicate that the Deed in Lieu was recorded post-petition, which was a violation of the automatic stay. Debtor denies that this case was filed in bad faith.

23. Debtor denies the characterization of the Debtor entity and related business and any ownership structure of any related entities. Debtor further disputes that "Mr. Barton and his "development entities have been involved in no fewer than sixteen bankruptcy proceedings. Although certain related entities have been involved certain bankruptcy proceedings most of which have been resolved, many of those were a single involuntary case that was filed as a retaliation tactic in bad faith and which petitioners were unable to even prove they had standing to assert their claims which were dismissed. Furthermore any other bankruptcy proceedings were the result of the cascade effect that COVID-19 had on the hospitality industry and availability of any construction financing as a whole, but nonetheless, upon resolution of all other bankruptcy proceedings which are not currently pending, all creditors were paid in full. Otherwise, Paragraph 23 of the Motion is argument (which is not even relevant to this case) that does not require an admission or denial.

24. Debtor denies the characterization of Mr. Barton and his entities or their alleged practices and HNGH's assertions are pure conjecture. Paragraph 24 of the Motion is argument that does not require an admission or denial.

25. Regarding paragraph 25 of the Motion, the Debtor admits that Dallas Real Estate Investors, LLC filed a Chapter 11 case before Judge Morris. The Debtor's filings and Judge Morris' orders in that case are the best evidence of their contents. The unproven allegations contained in the referenced lawsuits are contested by the Debtor and have no bearing on this Motion and are irrelevant and inserted only in attempt to cause undue prejudice against Debtor. However, HNGH even acknowledges the material and valid dispute of whether Palisades TC is either a "senior secured lender or equity interest holder." Events occurring in a different bankruptcy case are not cause for relief from stay or dismissal in this case.

26. Regarding paragraph 26 of the Motion, the Debtor admits that 2999TC LP, LLC filed a Chapter 11 case before Judge Mullin. The unproven allegations contained in the referenced lawsuits are contested by the Debtor and Debtor has asserted its own counterclaims including fraud and breach of the settlement agreement by Mr. Hodges as agreed to therein and otherwise such allegations have no bearing on this Motion and are irrelevant and inserted only in attempt to cause undue prejudice against Debtor. Events occurring in a different bankruptcy case are not cause for relief from stay or dismissal in this case.

27. Paragraph 27 of the Motion the Debtor is argument that does not require an admission or denial.

28. Regarding paragraph 28 of the Motion, the Debtor admits that AVG West, LLC filed a Chapter 11 case before Judge Mullin. That case is entirely unrelated to the case at hand. HNGH 's inclusion of this irrelevant information in the Motion is an improper attempt to influence

this Court with matters that are inappropriate for consideration. Events occurring in a different bankruptcy case are not cause for relief from stay or dismissal in this case. However, the Debtor notes HNGH 's admission in paragraph 28 that the AVG West case resulted in a confirmed plan of reorganization based on new financing obtained by the debtor that results in the creditors being paid in full.

29. Regarding paragraph 29 of the Motion, the Debtor admits that BM318, LLC filed a Chapter 11 case before Judge Mullin. That case is entirely unrelated to the case at hand. HNGH 's inclusion of this irrelevant information in the Motion is another improper attempt to influence this Court with matters that are inappropriate for consideration. Events occurring in a different bankruptcy case are not cause for relief from stay or dismissal in this case. However, the Debtor notes HNGH 's admission in paragraph 29 that the BM318 case was resolved by an agreed sale transaction.

30. Regarding paragraph 30 of the Motion, the Debtor admits that JMR100, LLC filed a Chapter 11 case before Judge Morris. That case is entirely unrelated to the case at hand. HNGH 's inclusion of this irrelevant information in the Motion is an improper attempt to influence this Court with matters that are inappropriate for consideration. Events occurring in a different bankruptcy case are not cause for relief from stay or dismissal in this case. However, JMR100 sued the lender for its failure to properly credit material amounts which lender had withheld from funding, and the Debtor notes HNGH 's admission in paragraph 30 that the JMR100 case was resolved by an agreement with the secured lender.

31. Regarding paragraph 31 of the Motion, the Debtor admits that LDG001, LLC filed a Chapter 11 case before Judge Mullin. That case is entirely unrelated to the case at hand but was part of the same events as the one involving JMR100 which had the same lender. HNGH 's

inclusion of this irrelevant information in the Motion is an improper attempt to influence this Court with matters that are inappropriate for consideration. Events occurring in a different bankruptcy case are not cause for relief from stay or dismissal in this case. However, the Debtor notes HNGH 's admission in paragraph 30 that the LDG001 case was resolved by an agreement with the secured lender under the same agreement as JMR100.

32. Regarding paragraph 32 of the Motion, the Debtor admits that Mansions Apartment Homes at Marine Creek, LLC filed a Chapter 11 case before Judge Morris. That case is entirely unrelated to the case at hand. HNGH 's inclusion of this irrelevant information in the Motion is an improper attempt to influence this Court with matters that are inappropriate for consideration. Nonetheless, that case resulted from a default of a lender under a loan commitment and related agreements who had agreed to fund acquisition and development costs (with such loan being backed by HUD) but who failed to close the loan through no fault of the borrower. Events occurring in a different bankruptcy case are not cause for relief from stay or dismissal in this case.

33. Paragraph 33 of the Motion also concerns the Mansions Apartment Homes at Marine Creek, LLC case, discussed in the preceding paragraph herein.

34. Paragraph 34 of the Motion also concerns the Mansions Apartment Homes at Marine Creek, LLC case, discussed in paragraph 32 above. Debtor further denies the assertions therein and notes that the recording of the deed was a closing condition required by the lender and HUD to occur on the closing date but which was prematurely recorded **by the escrow** agent prior to funding in anticipation of closing after which lender failed to fund and close as previously described. Thus, such deed had to be rescinded. Given that D4MC was to acquire a single parcel from Mansions for development and thus was involved with the same property, the assertion that

the Mansions was also known as D4MC was simply an unintentional error caused by support staff who assisted with completing the paperwork that was not caught before filing.

35. Paragraph 35 of the Motion also concerns the Mansions Apartment Homes at Marine Creek, LLC case, discussed in paragraph 32 above but disputes the statements in such section. The claims related to D4MC's bankruptcy have been successfully resolved.

36. Paragraph 36 of the Motion concerns a series of involuntary bankruptcy cases that are entirely unrelated to this case. HNGH 's inclusion of this irrelevant information in the Motion is an improper attempt to influence this Court with matters that are inappropriate for consideration. Events occurring in a different bankruptcy case are not cause for relief from stay or dismissal in this case. However, the Debtor notes that these cases were dismissed because the alleged petitioning creditors were unable entitled to prove thatthe relief they even had standing to bring their claims as asserted. were seeking. The "procedural morass" to which HNGH refers was caused not by the debtors but by the petitioning creditors inability to satisfy the requirements for filing involuntary petitions and which Debtor asserted were brought in bad faith by a single bad actor who essentially represented and/or controlled such petitioning creditors in an effort to extract millions of dollars of unearned claims from such Wall entities. The Debtor strongly denies HNGH 's allegations in paragraph 36 that it is involved in a pattern of bad faith and unfair dealing and such allegations defamatory lacking any support.

37. Paragraph 37 concerns allegations against Timothy Barton, not the Debtor. As such, they are irrelevant to the Motion and an improper attempt to influence this Court with matters that are inappropriate for consideration and amount to nothing more defamatory statements especially against Mr. Barton which, along with numerous other defamatory statements made by HNGH pushes the boundaries if not exceeds the boundaries granted by the litigation privilege

regarding defamation in litigation proceedings because such false statements are unrelated to these proceedings especially those concerning Mr. Barton.

38. Paragraph 38 again concerns Timothy Barton including defamatory statements made by HNGH against him, as well as the case of 2999TC LP, LLC, which are addressed in paragraphs 26 and 37 above.

39. The Debtor denies that HNGH is entitled to the relief requested in paragraph 39 of the Motion.

## IV. ARGUMENT AND AUTHORITIES.

### A. <u>DISMISSAL</u>

#### i. The Debtor Filed this Bankruptcy Case in Good Faith.

40. HNGH alleges that "cause" exists under 11 U.S.C. Section 1112(b)(1) because the Debtor filed this case in bad faith. HNGH 's argument relies on dated case law that has been effectively mooted in the case of SARE cases with the enactment of section 362(d)(3) in 1994. With the enactment of that provision, Congress addressed perceived concerns involving Chapter 11 cases filed by single-asset real estate debtors.[6] In so doing, Congress created protections favoring secured creditors by imposing a tight time frame for any SARE debtor to either commence adequate protection payments or to propose a possibly confirmable reorganization plan, absent either of which the automatic stay would be lifted.[7]

41. HNGH 's reliance on bad-faith SARE cases is largely limited to opinions issued before the enactment of section 362(d)(3). Although section 362(d)(3) did not expressly eliminate

---

[6] *See* 3 Collier on Bankruptcy ¶ 362.07[5][b] at 362-122 (Resnick & Summer eds, 16 ed.); *see also In re RYYZ, LLC, 490 B.R. 29, (Bankr. E.D.N.Y. 2013).*

[7] *See RYYZ, LLC*, 490 B.R. at 34 (citations omitted); *In re Alvion Props.*, 538 B.R. 527, 530 (Bankr. S.D. Ill. 2015) (citations omitted).

the court-created criteria under which SARE cases were determined to be filed in good faith, Congress intended that the provision would define the rights of both debtors and secured creditors in SARE cases. Thus, as noted by the bankruptcy court in *RYYZ*:

> Section 362(d)(3)'s specific, albeit non-exclusive, criteria for relief from the automatic bankruptcy stay ought to counsel against knee-jerk motions at the outset of the case that merely parrot the elements of bad faith, or other grounds for relief, just because the case involves single asset real estate. Its parameters often dictate how a case proceeds, allowing the debtors to focus their efforts on formulating and filing a meaningful plan and/or negotiating a compromise.[8]

42. The principal SARE 5th Circuit case relied upon by Lender, *Little Creek*, involved real property holdings that, based on the evidenced presented, were "underwater."[9] In *Little Creek*, the evidence adduced in the bankruptcy proceeding below reflected that the debtor's real property holding had a value of $775,000, compared to secured debt in excess of $1,400,000.[10] Regarding that disparity, the Fifth Circuit famously commented that "there is no hope of rehabilitation, except according to the debtor's 'terminable euphoria.'"[11]

43. Here, the Debtor contends that the Property has a value of $58,500,000.00, ( or more based on current values in the area), compared to the Lender's calculation of the present amount of secured debt at approximately $46 million. This debt amount is disputed. As the Fifth Circuit itself noted in *Humble Place*, a SARE case may be filed in good faith if the debtor has equity in the property.[12] The Property has significant equity, and as the Debtor's principal asset, it is necessary for confirmation of a plan of reorganization. Consequently, the Debtor should be permitted the time necessary to file a plan and proceed toward confirmation. Mr. Barton has proven

---

[8] *Id.* at 35 (emphasis added).

[9] *See In re Little Creek Dev. Co.*, 779 F.2d 1068 (5th Cir. 1986).

[10] *See Little Creek, 779 F.2d at 1070.*

[11] *See* id. at 1073.

[12] *See In re Humble Place Joint Venture*, 936 F.2d 814, 818 (5th Cir. 1991).

he can present and confirm plans in single asset real estate cases.

44. HNGH goes to great lengths to list other affiliated bankruptcy cases involving single asset real estate debtors and once again seeks to defame Mr. Barton. Those other cases are simply that—other cases—each with their own specific facts. Furthermore, in several instances those cases resulted in successful re-financings, sales or other agreements with the secured lenders where creditors were paid in full. Not one of the cases cited by HNGH relied on other related bankruptcy cases in finding a bad faith filing. All the factors considered by those courts relied solely on the conduct of the debtor before the court, not that of other debtors in other cases.

45. Section 1112(b)(1) allows for dismissal only if "cause" exists. The "best interest of creditors" language referred to by HNGH is not independent of "cause" but merely a means for choosing whether to dismiss or convert a case once cause is found.[13] As discussed above, there is no "cause" for dismissal as required by 11 U.S.C. Section 1112(b)(1).

46. HNGH also cites section 1112(b)(4)(a), which defines "cause" as a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation". But there is no continuing loss to the estate in this case. The Property is currently undeveloped, and therefore is not deteriorating. The best HNGH can do is point out that administrative charges such as professional fees will be owed by the estate at some point, but those charges will be meaningful only if the Debtor successfully confirms a plan, at which point HNGH 's claim will be satisfied.

**ii. <u>Dismissal Of the Case Is Not in The Best Interest of the Debtor or Creditors.</u>**

[13] Section 1112(b) provides: "Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate."

Case 21-31954-sdh11 Doc 34 Filed 11/26/21 Entered 11/26/21 14:29:27 Page 17 of 20

47. HNGH also seeks dismissal pursuant to 11 U.S.C. Section 305(a). Section 305(a) allows a court to dismiss a case if "the interests of creditors and the debtor would be better served by such dismissal". Here, HNGH is the only creditor seeking dismissal. The Debtor Schedule F indicates the presence of significant unsecured creditors in this case, only one of which is an insider (HR Sterling, LLC, in the amount of $28,800.00). These creditors would be irreparably damaged if the case is dismissed and the Debtor loses the Property, its most significant asset. On the other hand, if the Debtor can successfully resolve this case with a refinance, sale, equity contributions or development of the Property into an income-producing property, these unsecured creditors, as well as HNGH , will be paid in full under the Debtor's intended plan of reorganization. The Debtor will file its plan and show the means to accomplish it by the time of the hearing on the Motion. At this early stage of the case there is no reason to deny the Debtor the 90-day period under 11 U.S.C. 362(d)(3) to file a confirmable plan.

**B. <u>Stay Relief</u>**

**i. Section 362(d)(1)**

48. HNGH seeks relief from the automatic stay under 11 U.S.C. Section 362(d)(1) for "cause" based on an alleged lack of adequate protection and a purported prepetition waiver of enforcement of the stay which Debtor disputes and denies.

49. Adequate protection of HNGH 's secured interest in the Property is provided by the substantial equity in the Property, both "as is" and as it will be upon development for its intended purpose as a luxury hotel and condominium property. HNGH scheduled the undeveloped land value of the Property as $58,500,000.00, approximately $12,500,000.00 over HNGH 's calculation of its claim amount.

50. The "stay waiver" to which HNGH refers is not a waiver at all, nor could it be. If

this Response to the Motion is a breach of that contract, then it is a breach which the Debtor is duty bound as a fiduciary for the unsecured creditors to commit because there is significant equity in the Property which can be monetized under a plan of reorganization to pay those creditors. Furthermore Further, no so-called waiver of the automatic stay is self-executing. Courts both within and outside the Fifth Circuit have firmly established that the bankruptcy court must protect the interests of all creditors by putting a secured creditor to its proof under 11 U.S.C. Section 362, regardless of any alleged pre-petition waiver of the stay. HNGH itself cites the case of *In re Lopez-Granadino*, No. 08-30707-H3-13, 2008 Bankr. LEXIS 686 (Bankr. S.D. Tex. 2008), which held:

> Courts have taken three basic approaches in addressing the enforceability of prepetition waivers of the automatic stay: uphold the stay waiver in broad terms; reject the stay waiver as against public policy; and make a determination on a case-by-case basis. The trend is to treat these prepetition waivers as neither per se invalid or per se enforceable, and to enforce them in specific factual circumstances that, on balance, override the bankruptcy policies behind the automatic stay. *In re Powers,* 170 B.R. 480 (Bankr. D. Mass. 1994). The single most important factor in the enforcement of the waiver is the prospect of the reorganization of the debtor. *In re Darrell Creek Assocs.,* L.P., 187 B.R. 908 (Bankr. D.S.C. 1995); *Farm Credit of Cent. Fla., ACA v. Polk,* 160 B.R. 870 (M.D. Fla. 1993).
>
> The enforcement of a prepetition waiver of the automatic stay is not self-executing but is subject to the approval of the bankruptcy court. Thus, even if enforceable, the waiver does not enable the secured creditor to enforce its lien without first obtaining stay relief from the bankruptcy court. Although the Fifth Circuit Court of Appeals has not specifically addressed the issue of enforcement of prepetition waivers, it has held that a creditor must seek relief from the automatic stay prior to a unilateral seizure of property that was arguably not property of the estate. *See In re Chesnut,* 422 F.3d 298 (5th Cir. 2005); *In re Darrell Creek Assocs., L.P., supra.; Farm Credit, supra.*

*In re Lopez-Granadino* at 2008 Bankr. LEXIS 686 at *5. Another illuminating case is *In re Desai*, 282 B.R. 527 (Bankr. M.D. Ga. 2002):

> Although prepetition agreements waiving the protection afforded by the automatic stay are enforceable, such waivers are not per se enforceable, nor are they self-executing. See e.g., In re Sky Group, 108 B.R. at 86. The court further finds that in deciding whether relief from stay should be granted based on such waivers, the following factors should be

> considered: (1) the sophistication of the party making the waiver; (2) the consideration for the waiver, including the creditor's risk and the length of time the waiver covers; (3) whether other parties are affected including unsecured creditors and junior lienholders, and; (4) the feasibility of the debtor's plan. See *Shady Grove*, 216 B. R. at 390 (quoting from *In re Merridale Gardens Ltd. P'ship,* 1995 Bankr. LEXIS 2156, No. 95-1-3091 (Bankr. D. Md. October 19, 1995) aff'd, 1996 U.S. Dist. LEXIS 22042, No. S-95-3334 (D. Md. Feb. 28, 1996).

*In re Desai,* 282 B.R. at 532. *See also, In re Triple A & R Capital Inv., Inc.*, 519 B.R. 581 (Bankr. D.P.R. 2014) ("It is important to note that the courts are in agreement that a prepetition waiver of the automatic stay, even if enforceable, does not enable the secured creditor to enforce its lien without first obtaining stay relief from the bankruptcy court.")

**ii. Section 362(d)(2)**

51. HNGH also seeks relief from the automatic stay under 11 U.S.C. Section 362(d)(2). To prevail, HNGH must prove that the Debtor has no equity in the Property and that it is not necessary for an effective reorganization. The only proof of the value of the Property mentioned by HNGH is a real estate broker's opinion of value, and an appraisal of indeterminate age (although it must be at least 19-20 months old, as HNGH admits it is dated prior to the COVID-19 pandemic). HNGH did not provide copies of these alleged documents, but neither has much probative value, if any. In contrast, the Debtor will show substantial equity in the Property at the time of the hearing on the Motions. Given this equity, the necessity of the Property for an effective reorganization cannot be questioned. It is essentially the Debtor's only asset and is the only means by which the Debtor can reorganize, whether by refinancing, a sale or development as a high-end hotel and residence project.

52. In this case, HNGH cannot carry its burden to obtain relief from stay. As set out above, there is no "cause" for such relief under Section 362 (d)(1), and there is ample equity in the

Property to support a plan of reorganization. Due to such equity and because the Property, as the Debtor's primary asset, is essential for the success of a plan, neither is there a basis for stay relief under Section 362(d)(2).

WHEREFORE, PREMISES CONSIDERED, the Debtor requests the Court to enter an order denying the Motion and granting such further relief as may be just.

Dated: November 26, 2021.

Respectfully submitted,

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: 972-503-4033
Facsimile: 972-503-4034
Email: joyce@joycelindauer.com
*Counsel for the Debtor*

**CERTIFICATE OF SERVICE**

I certify that on November 26, 2020, I caused a copy of the foregoing document to be served via the Court's ECF system and by email to the persons receiving notice via ECF and first-class mail to the persons on the Debtor's mailing matrix in this case.

/s/ *Joyce W. Lindauer*
Joyce W. Lindauer