John J. Kane (TX Bar No. 24066794)
R. Hale Neilson (TX Bar No. 24116820)
**KANE RUSSELL COLEMAN LOGAN PC**
Bank of America Plaza
901 Main Street, Suite 5200
Dallas, Texas 75202
Tel.: (214) 777-4200
Fax: (214) 777-4299

***Counsel for HNGH Turtle Creek, LLC***

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 21-31954-HDH-11** |
| | § | |
| **2999TC ACQUISITIONS, LLC,** | § | **CHAPTER 11** |
| | § | |
| **DEBTOR.** | § | |
| | § | |

# HNGH TURTLE CREEK, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS DEBTOR'S BANKRUPTCY CASE OR, IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY

HNGH Turtle Creek, LLC ("**HN**") files this *Reply* (the "**Reply**") to the Debtor's *Response* (the "**Response**") [Dkt. No. 34] to HN's *Motion to Dismiss Debtor's Bankruptcy Case or, in the Alternative, for Relief from the Automatic Stay, with Incorporated Brief in Support* (the "**Motion**"), seeking dismissal of the above-captioned bankruptcy case filed by 2999 TC Acquisitions, LLC (the "**Debtor**"), or in the alternative, for relief from the automatic stay for cause under section 362(d)(1) and (d)(2) of the Bankruptcy Code, and in support of the Motion, respectfully states as follows:

## SUMMARY

1. The Debtor's behavior in this bankruptcy case has, to date, underscored the Debtor and Barton's bad faith, and the Debtor's use of the court system as a means of causing chaos, delay, and unnecessary costs and expenses. The Debtor's behavior has also proven what HN is trying to


**EXHIBIT "4"**

highlight for this Court: The Debtor's agreements, admissions, and promises are meaningless if not to the Debtor's immediate benefit. Any promise of performance by the Debtor would unfairly shift all risk to HN, a party who has already provided the Debtor more than a year of additional time from maturity to solve its problems.

## **REPLY**

### A. SECTION 362(D)(3) AND LITTLE CREEK

#### *(i) 362(d)(3) Does Not Preclude Dismissal for Bad Faith Filing*

2. In its Response, the Debtor argues that its compliance with section 362(d)(3) should preclude dismissal under *Little Creek*, and relief from stay under sections 362(d)(1) and (d)(2). RESPONSE, ¶ 4. The Debtor is mistaken. Section 362(d)(3) is intended to hold single asset real estate debtor's to a *minimum threshold* of performance which, if not met, shall result in relief from stay upon request. 11 U.S.C. § 362(d)(3); *In re LDN Corp.*, 191 B.R. 320, 327 (Bankr. E.D. Va. 1996) (relief mandatory when SARE debtor fails to strictly comply with requirements). Congress added that provision of the bankruptcy code to "target abusive filings by Chapter 11 debtors with little or no cash flow and no means to fund a reorganization or to make adequate protection payments." *In re Alvion Properties, Inc.*, 538 B.R. 527, 536 (Bankr. S.D. Ill. 2015). It is, therefore, an alternative means of relief available to a secured creditor, not a replacement remedy or a statute precluding dismissal of a single asset real estate case for bad faith. Courts certainly have not stopped dismissing single asset real estate cases for bad faith filings since 362(d)(3) was included in the Bankruptcy Code. *See, e.g., In re SR Real Estate Holdings, LLC*, 506 B.R. 121, 126 (Bankr. S.D. Cal. 2014) (dismissing case after analysis of *Little Creek* factors evidence bad faith); and *In re Sterling Bluff Investors, LLC*, 515 B.R. 902, 916-17, 922 (Bankr. S.D. Ga. 2014) (analyzing *Little Creek* factors and 362(d)(3) and dismissing case for bad faith filing).

#### *(ii) Sterling Bluff Investors – Dismissal For Similar Bad Faith Facts Despite 362(d)(3) Stay Consideration*

3. In *Sterling Bluff Investors*, the court analyzed whether a single asset real estate debtor's

case should be dismissed as a bad faith filing, and whether stay relief was appropriate under various provisions, including 362(d)(3). *Sterling Bluff Investors*, 515 B.R. at 916-17, 922. The court rightfully recognized that a single asset real estate debtor's filing is not per se subject to dismissal as a bad faith filing, but that a court may still dismiss a single asset real estate case for bad faith. *Id.* at 916-917.

4. Dismissal remains appropriate when a debtor files with "intent to abuse the judicial process and the purposes of the reorganization provisions." *Id.* In *Sterling Bluff Investors*, evidence of such intent required an analysis of factors similar to those in *Little Creek*, which the court weighed against potentially mitigating factors. *Id.* Those mitigating factors included, among others, whether the debtor had substantially implemented a real estate development plan before the bankruptcy filing, whether the debtor intended to extend the time for repayment of debt beyond the original term, and whether an unforeseen financial distress caused a default that led to the debtor's filing. *Id.* at 918.

5. After performing its detailed factual analysis, the court in *Sterling Bluff Investors* determined that the debtor had in fact filed its petition in bad faith. *Id.* at 917. The court made clear that the mere filing of a petition to avoid foreclosure or the enforcement of some similar remedy is not typically evidence of bad faith. *Id.* ("normally, the Court would give little weight to this fact for purposes of assessing good faith…."). The court however, noted that the debtor's strategic use of (i) defaults, (ii) protracted negotiations, and (iii) the court system to preclude, hinder, or delay the secured creditor's legitimate efforts to enforce its rights was evidence of bad faith warranting dismissal. *Id.* The existence of section 362(d)(3), and even the debtor's timely submission of a plan of reorganization, did not preclude dismissal. *Id.* at 922-23.

6. This case is similar to *Sterling Bluff Investors* in that Barton and the Debtor have used defaults, litigation, and other courthouse machinations to force negotiations and preclude HN from exercising its legitimate rights and remedies under applicable loan documents. The Debtor's Note matured on October 1, 2020. More than a full year and *three* court proceedings later, the Debtor

appears no closer to paying off its secured lender.

## B. GAMES IN COURT - CONSISTENT DISREGARD FOR CONTRACT TERMS

### *(i) Claims and Causes of Action – Ignoring Dismissals with Prejudice and Contractual Releases*

7. In this case the Debtor, like that in *Sterling Court Investors*, has abused court processes to buy itself time and to frustrate HN's efforts to exercise its legitimate remedies. As detailed in Part 3 of its Statement of Financial Affairs (the "**SOFA**") [Dkt. No. 30], the Debtor and Barton were previously engaged in litigation against HN and Vipin Nambiar, personally, in an effort to halt foreclosure proceedings through the assertion of what HN contends were frivolous claims. When Barton and the Debtor's suit in Judge Moye's 14th Judicial District Court failed (DC-20-05862), the Debtor and Barton eventually dismissed the case without prejudice. Nearly immediately after, the Debtor and Barton re-filed substantially the same lawsuit in federal court before Judge Scholer and Magistrate Judge Rutherford in the Northern District of Texas (20-CV-3229-S-BT) (the "**Federal Suit**") on October 22, 2020. The Debtor and Barton's complaint in the Federal Suit included federal-question trade secret claims, which Judge Scholer dismissed with prejudice [Fed. Suit Dkt. No. 67]. With no further grounds for federal court jurisdiction, and Judge Scholer's refusal to extend supplemental jurisdiction, Barton and the Debtor were essentially forced back to state court where they had little prior success. Shortly thereafter, they agreed to dismiss all claims against HN and Mr. Nambiar with prejudice.

8. While HN contends that the suits exclusively involved frivolous or specious claims, they were costly. HN incurred hundreds of thousands of dollars in costs and expenses defending the suits. To halt the accrual of litigation expenses and in a good faith attempt to resolve the parties' disputes, HN engaged Barton and the Debtor in negotiations, which resulted in the Forbearance Agreement.

9. Recital G of the Forbearance Agreement expressly states that Barton and the Debtor

"have dismissed with prejudice the [Federal Suit] only against the defendants, HNGH Turtle Creek, LLC, HN Green Hollow Capital Partners, LLC, Vipin Nambiar, and James G. Glasgow…." FORBEARANCE AGREEMENT, Recital G. In Section 11 of the Forbearance Agreement, Barton and the Debtor expressly released HN, Vipin Nambiar, James Glasgow, and each of their respective parties as described therein. *Id.* at § 11(a)(ii). Those expansive releases encompassed all claims asserted in prior litigation, and all possible claims or causes of action arising prior to the March 1, 2021 Forbearance Agreement date. *Id.* The Debtor and Barton even expressly acknowledged that neither HN nor any of its affiliates, agents, or representatives was in default with respect to any of its obligations under any of the Loan Documents, and that the Debtor and Barton possessed "no claim against [HN]…." *Id.* at § 11(a)(i).

10. In its Statement of Financial Affairs, the Debtor explains that the Federal Suit was "Dismissed upon agreement of the parties with prejudice on January 10, 2021." SOFA, ¶ 7.1. The Debtor even appears to acknowledge that the Debtor has no valid claims against HN, Vipin Nambiar, or any of the other prior defendants. The Debtor's Schedules ("**Schedules**") [Dkt. No. 29] do not identify ***any*** cause of action or potential claim or lawsuit of value as an asset of the Debtor's estate. *See* SCHEDULES, Part 11. As this Court is aware, Mr. Barton executed the Schedules under penalty of perjury on November 19, 2021.

11. Astoundingly, on November 11, 2021, the Debtor had already filed adversary proceeding number 21-03085 (the "**Adversary Proceeding**") against HN, HN Green Hollow Capital Partners, LLC, and Vipin Nambiar alleging, among other claims, fraud by non-disclosure and fraudulent inducement stemming entirely from purported wrongdoings from 2019 up until the execution of the Forbearance Agreement on March 1, 2021 (the "**Fraud Claims**"). The Debtor and Barton appear to have conveniently forgotten that they dismissed the Fraud Claims with prejudice in prior litigation, or released and waived them in the Forbearance Agreement.

12. In any event, the claims are preposterous. Even if isolated to the Forbearance Agreement, the Debtor's fraudulent inducement claim alleges, in essence, that the Debtor was induced into executing the Forbearance Agreement and delivering the Deed in Lieu into escrow by promises that HN and Vipin Nambiar would act in good faith. *See* COMPLAINT, ¶¶ 56-57 [Adv. Proc. Dkt. 1]. The Debtor appears to ignore that it had 8 months after executing the Forbearance Agreement during which to perform and utterly failed to do so. Now, according to the Debtor, HN's effort to enforce that actual terms and conditions of the Forbearance Agreement warrant punitive damages.

13. The Debtor has a very obvious playbook: when facing a lender's legitimate efforts to enforce rights and remedies, assert wild claims against the lender to cause delay, costs, and expenses and, hopefully, to leverage negotiations. This Court should not reward the Debtor for its bad faith litigation tactics.

***(ii) The Contractual Stay Waiver – The Debtor Argues It Cannot Possibly Be Bound to its Own Agreements***

14. In its Motion, HN sets forth why the Debtor's contractual agreement to waive the automatic stay as to HN is enforceable. MOTION, ¶¶ 16-19, 54-61. HN will not belabor its legal arguments, but will address statements made in the Debtor's Response that evidence the Debtor's bad faith filing. First, in section 18 of the Forbearance Agreement, the Debtor and Barton agree that they jointly drafted the Forbearance Agreement. FORBEARANCE AGREEMENT, ¶ 18. In section 14(d) of the Forbearance Agreement, Barton and the Debtor expressly acknowledged and agreed that they provided the contractual stay waiver provisions found in section 14(a) of the Forbearance Agreement as a material inducement to get HN to enter into the Forbearance Agreement. *Id.* at ¶ 14(d). The provisions of section 14(a) of the Forbearance Agreement make clear that the Debtor and Barton consent to HN's request for relief from the automatic stay. *Id.* at ¶ 14(a).

15. In its Response, the Debtor totally disregards its promises and denies that it must consent to HN's request for stay relief. RESPONSE, ¶ 20. The Debtor even states that it should be

able to argue that it was unaware of the inclusion of the stay waiver language in section 14 of the Forbearance Agreement. *Id.* The Debtor goes so far as to argue that it is "duty bound" to object to HN's request for stay relief. *Id.* at ¶ 50. Duty bound to totally disregard its prior contractual agreement. As this Court might imagine, HN is not surprised that this is the position the Debtor would take.

16. The Debtor takes a similar approach in paragraph 20 of its Response. Instead of acknowledging that the Debtor provided the stay waiver as a material inducement to HN, as expressly written in section 14(d) of the Forbearance Agreement, the Debtor claims that the section is unenforceable. Specifically, the Debtor argues that section 14(d) for the Forbearance Agreement "is so poorly written and ambiguous that it is unintelligible and of no force or effect." *Id.* at ¶ 20. As noted above, the Debtor and Barton were co-drafters of the Forbearance Agreement. The Debtor's attempt to play dumb in order to eviscerate adverse provisions of its own Forbearance Agreement is yet more evidence of its bad faith.

***(iii) The Debtor Argues its Own Admissions are Not Evidence of Truth***

17. As the Motion approaches its December 9, 2021 hearing date, HN notes for the Court that the Debtor appears intent on disregarding more of its own admissions in order to bog down the resolution of the Debtor and HN's disputes. For instance, the Debtor and Barton both admit in the Forbearance Agreement that HN is the owner and holder of the Note. FORBEARANCE AGREEMENT, Recital A. Debtor made partial interest payments under the Note to HN effective through October 29, 2021. Now, to cause unnecessary delays by contesting what should be stipulated facts, the Debtor states the following in its Response:

> The Debtor does <u>not</u> admit that HNGH is the current owner or holder of the Note and Deed of Trust and points out that HNGH did not attach any document to the Motion establishing this alleged fact…
>
> The Debtor admits that the Forbearance Agreement contains a recital that the Note is "currently owned and held" by HNGH but denies that this establishes that HNGH is,

> in fact, the current owner and holder, and notes that the only "evidence" HNGH offers for this allegation is the reference in this paragraph to the recital in the Forbearance Agreement.

RESPONSE, ¶ 7. In other words, the Debtor admits admitting that HN is the owner and holder of the Note—in a document co-drafted by the Debtor and Barton—but denies that the admission is truthful or of any evidentiary value. The Debtor's position is consistent with HN's experiences to date; the Debtor will deny the truth of its own statements if it believes doing so is advantageous.

## C. NO STORY IS STRAIGHT – ASSETS & LIABILITIES

### *(i) Largest Unsecured Creditors*

18. While the Debtor purports to have material unsecured creditors in this case, HN is pursuing discovery to test the Debtor's assertions. Moreover, a smattering of unsecured professional fee creditors pales in comparison to the nearly $46 million owed by the Debtor to HN as of the Petition Date. Importantly, however, it appears that Barton and the Debtor are unclear about to whom the Debtor owes money. On November 1, 2021, the Debtor listed Palisades Capital Realty Advisors and Moss Construction as claimants possessing more than $9 million of claims against the Debtor's estate. *See* 20 LARGEST UNSECURED CREDITORS LIST [Dkt. No. 7]. Two days after HN served discovery on the Debtor seeking information related to those claims, the Debtor filed an amended 20 Largest Unsecured Creditors List (the "**Amended List**") on which the three prior largest creditors were conspicuously absent. *See* AMENDED LIST [Dkt. No. 31].

19. Mr. Barton, the sole employee of the Debtor, executed both lists under penalty of perjury. While HN understands that mistakes can occur at the outset of a case, HN would expect the Debtor to be more accurate in its Schedules and Statement of Financial Affairs, given the Debtor's request for additional time during which to prepare them. However, as detailed herein, the Debtor's Schedules and SOFA include material inconsistencies—related to litigation claims and otherwise—that call into question just what penalty of perjury means to this Debtor.

***(ii) The Value of the Property***

20. HN is aware that the value of the Property is a factor that this Court will likely weigh heavily when adjudicating the Motion. As HN forecast, the Debtor is in fact alleging that there is not only equity in the Property, but that the Property is worth a preposterously large sum of money at sale. Specifically, the Debtor asserts that the property is worth $58,500,000, which would make it perhaps the most valuable piece of land its size on a price per square foot basis in the history of Dallas, Texas. RESPONSE, ¶¶ 43, 49. The Debtor provides no basis for its valuation.

21. Perhaps unsurprisingly at this point, the Debtor contradicts its own valuation of the Property already issued under penalty of perjury. In Part 2 of its SOFA, the Debtor notes that the Property was transferred to HN immediately preceding the Petition Date as a result of the filing of the Deed in Lieu in favor of HN. *See* SOFA, ¶¶ 5-5.1. When asked to provide the "Value of property" transferred, Mr. Barton, under penalty of perjury and as President of the Debtor, noted that the Property was worth "**$51,000,000.00**." *Id.* at ¶ 5.1 (emphasis added). While HN will show at trial that the Property is worth at sale less than even HN's nearly $46 million pre-petition claim, at least the $51,000,000 valuation provided in the Debtor's SOFA is somewhat consistent with prior representations made by the Debtor to this Court. On November 11, 2021, the Debtor pled that the Property "had an approximate value of **$50 million** or more." COMPLAINT, ¶ 29 (emphasis added).

22. The Debtor's transition from a $51 million valuation to a $58.5 million valuation is extreme and suggests more than a simple mistake by the Debtor. HN surmises that the Debtor represented to the Court a considerably higher valuation after assessing whether the Debtor would possess an equity cushion at the end of an appropriately marketed sale process, assuming that HN's claim totaled $45,939,456 as of the Petition Date. If the Debtor possessed equity in the Property, HN would be entitled to collect default interest post-petition. 11 U.S.C. § 506(b). HN's default interest rate per diem totals $30,626.30. If the Property was marketed for 120 days post-petition, the Debtor

would owe HN: (i) $45,939,456; plus (ii) $3,675,156.44 of post-petition default interest, totaling $49,614,612.40. If the Property sold for $51,000,000, the Debtor would owe an additional $2,550,000 to brokers and counsel, assuming 5% costs of sale.

23. As this Court can see, if the Debtor argued that the Property is worth $51,000,000 in its pleadings, and HN successfully proves its claim as of the Petition Date and the applicable default rate under the Note, then the Debtor does not have, or will not have, any equity in the Property. HN guesses that the Debtor attempted to remedy that situation by arguing—without reference to any supporting evidence—that the Property was simply worth a whole lot more.

### D. MATERIAL NON-DISCLOSURE: THE DEBTOR'S EFFORTS TO SELL, REFINANCE, OR DEVELOP THE PROPERTY DURING THE POST-MATURITY PERIOD

24. In *Sterling Bluff Investors*, the court weighed the efforts made by the debtor to pay off its lender in full prior to bankruptcy when determining whether to dismiss the case for bad faith. *Sterling Bluff Investors*, 515 B.R. at 916-17. The court noted that the debtor's failure to make capital calls or to liquidate its other assets to pay the lender during the months after default indicated bad faith. *Id.* Here, the Debtor had more than one full year ***after*** maturity to pay off the Note, but did not. The Debtor had 8 months under the Forbearance Agreement to pay off the Note, but did not. In discovery related to the Motion, HN asked the Debtor the following and received the below response:

> INTERROGATORY NO. 6: Describe with specificity all efforts taken by the Debtor and/or Barton to sell, develop, or otherwise monetize the Property in a manner sufficient to pay HNGH Turtle Creek, LLC in full at any time between October 1, 2020 and the Petition Date.
>
> ANSWER: Debtor objects to this interrogatory because it is overly broad, not properly limited to a relevant time period, unduly burdensome, not relevant to the Matters before the Court, and is not reasonably calculated to lead [sic] the discovery of any admissible evidence as related to the Matters before the Court. Subject to the foregoing objection, Debtor states that it timely made all payments as agreed.

As this Court can see, when asked by HN to describe what efforts it took to make good under the Note during the 13 months ***after maturity***, the Debtor either could not or would not provide any detail

or evidence of its efforts. Baffled by Debtor's refusal to answer, undersigned counsel contacted Debtor's counsel and requested a thorough response to the interrogatory. That request was met with silence. While HN does not intend this Reply to serve as a vehicle for resolving a discovery dispute, this Court should take the Debtor's silence as evidence of bad faith, and that it did very little to ensure it paid its lender in full during the 13 months following maturity.

**E. THE DEBTOR IS ADMINISTRATIVELY INSOLVENT**

25. As further evidence that the Debtor's filing was a hopeless delay tactic, the Debtor is already administratively insolvent. As a result, the Debtor is incapable of paying taxes, upkeep, and other ordinary expenses associated with the upkeep of real property and improvements. The Debtor cannot even pay its bankruptcy attorney's fees. As illustrated in the Debtor's Schedules, the Debtor has, at most, $299.82 in cash and in its checking account. SCHEDULES, § 1 ¶ 5. It has no other money. *Id.* In her *Disclosure of Compensation of Attorney for Debtor* ("**Comp Disclosure**") [Dkt. No. 35], Mrs. Lindauer notes that the Debtor owes her $10,738 for additional legal services. COMP DISCLOSURE, ¶ 1. Mrs. Lindauer notes that, per her agreement, "The source of compensation to be paid to me is: Debtor." *Id.* at ¶ 3. By the Debtor's own admission, lacks funds with which to pay Mrs. Lindauer's fees, which are bound to increase. To survive post-petition, the Debtor will at some point be forced to acquire post-petition debt or raise equity capital. Given the Debtor's current condition, and the lack of equity in its Property, the Debtor's chances of doing so are exceedingly poor. Dismissal is, therefore, in the best interest of creditors.

**WHEREFORE**, HN requests that the Court enter an order dismissing the Debtor's bankruptcy case pursuant to section 1112 of the Bankruptcy Code or, alternatively, enter an order granting HN relief from the automatic stay so that it may effectuate its remedies under the Forbearance Agreement, Note, Loan Documents, and applicable law without further delay and interference by Barton, the Debtor, or any Barton-affiliated entity.

DATED: December 1, 2021

Respectfully submitted,

**KANE RUSSELL COLEMAN LOGAN PC**

By: */s/ John J. Kane*
John J. Kane (TX Bar No. 24066794)
R. Hale Neilson (TX Bar No. 24116820)
Bank of America Plaza
901 Main Street, Suite 5200
Dallas, Texas 75202
Tel.: (214) 777-4200
Fax: (214) 777-4299
E-mail: jkane@krcl.com
E-mail: kwoodard@krcl.com
E-mail: hneilson@krcl.com

***Counsel to HNGH Turtle Creek, LLC***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 1, 2021, a true and correct copy of the foregoing document was filed with the Court and served (i) via the Court's electronic case filing system (ECF) upon all parties receiving such electronic service in this proceeding, and (ii) via e-mail on the parties listed below.

Joyce W. Lindauer
JOYCE W. LINDAUER ATTORNEY, PLLC
1412 Main Street, Suite 500
Dallas, TX 75202
E-mail: joyce@joycelindauer.com

United States Trustee
1100 Commerce Street
Room 976
Dallas, TX 75202
E-mail: ustpregion06.da.ecf@usdoj.gov

*/s/ John J. Kane*
John J. Kane