**File a response/objection :**

| | | |
|---|---|---|
| Filed: 10/29/2021 | | Closed: |
| Reopen: | | Dismissed: |
| | | Dismissed(jdb): |
| Converted: | | Discharged: |
| | | Discharged(jdb): |

21-31954-hdh11 2999TC Acquisitions, LLC

| | | |
|---|---|---|
| Type: bk | Chapter: 11 v | Office: 3 (Dallas) |
| Assets: y | Judge: hdh | Case Flag: REFORM, DsclsDue |

Summary History Parties Filers Docket Sheet Deadlines/Hearings Status Pending Motions Creditors Claims Register

**U.S. Bankruptcy Court**

**Northern District of Texas**

Notice of Electronic Filing

The following transaction was received from Joyce W. Lindauer entered on 11/11/2021 at 5:52 PM CST and filed on 11/11/2021

**Case Name:** 2999TC Acquisitions, LLC
**Case Number:** 21-31954-hdh11
**Document Number:** 22

**Docket Text:**
Reply to (related document(s): [19] Objection filed by Creditor HNGH Turtle Creek, LLC) filed by Debtor 2999TC Acquisitions, LLC. (Lindauer, Joyce)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**Reply.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1017686615 [Date=11/11/2021] [FileNumber=47251895-0] [8de8ed505f6f118d9ab1f5a8df26ea551d209552b522329f0a51221573db9e32d3c83b08ff873781634529ddf23caf274ad195d4691a3b1b2770a5811bd15cab]]

**21-31954-hdh11 Notice will be electronically mailed to:**

John J. Kane on behalf of Creditor HNGH Turtle Creek, LLC
jkane@krcl.com, ecf@krcl.com;jkane@ecf.courtdrive.com

Sherrel K. Knighton on behalf of Creditor Dallas County
Sherrel.Knighton@lgbs.com, Dallas.Bankruptcy@lgbs.com;Sean.French@lgbs.com;Dora.Casiano-Perez@lgbs.com;Olivia.Salvatierra@lgbs.com

Joyce W. Lindauer on behalf of Debtor 2999TC Acquisitions, LLC
joyce@joycelindauer.com, dian@joycelindauer.com;deann@joycelindauer.com;12113@notices.nextchapterbk.com

Steven C. Metzger on behalf of Interested Party JMJ Development LLC
smetzger@pmklaw.com

Steven C. Metzger on behalf of Interested Party Tim Barton
smetzger@pmklaw.com

United States Trustee
ustpregion06.da.ecf@usdoj.gov

**21-31954-hdh11 Notice will not be electronically mailed to:**

**EXHIBIT "7"**

Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, TX 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Proposed Attorneys for Debtor

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **2999TC ACQUISITIONS, LLC,** | § | **CASE NO. 21-31954-hdh** |
| | § | |
| **Debtor.** | § | **Chapter 11** |

**DEBTOR'S REPLY TO OBJECTION TO EXPEDITED MOTION TO ENFORCE AUTOMATIC STAY AND FOR SANCTIONS PURSUANT TO 11 U.S.C. SECTION 362**

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now 2999TC Acquisitions, LLC, debtor herein ("**Debtor**") and files this Reply to the Objection to Debtor's Expedited Motion to Enforce Automatic Stay and for Sanctions Pursuant to 11 U.S.C. Section 362 (Doc. No. 19, the "**Objection**") filed by HNGH Turtle Creek, LLC ("**HGNH**"), and would show the Court as follows:

## I. SUMMARY OF RESPONSE

1. The Objection is based on HNGH's allegation that a provision in the promissory note executed by the Debtor required any payments on the note to be made prior to 1:00 p.m. New York time (the "Payment Deadline"). Even assuming this were true (which the Debtor does not concede, based in part on HGNH's repeated waivers of this supposed Payment Deadline), HGNH's fraudulent conduct in the days prior to the Payment Deadline and on the day of the Deadline require the Court to overrule the Objection and enforce the automatic stay as requested in Debtor's Expedited Motion to Enforce Automatic Stay and for Sanctions Pursuant to 11 U.S.C. Section 362

(Doc. No. 14). Specifically, HGNH and its principal, Vipin Nambiar ("**Nambiar**"), fraudulently induced the Debtor to refrain from filing its bankruptcy case until after the Payment Deadline had passed so they could file a deed in lieu of foreclosure on the Debtor's real property (a document that had been held in escrow pursuant to a prior forbearance agreement) in the Dallas County deed records before the bankruptcy petition was filed. Furthermore, the deed in lieu was not transmitted for e-filing until 4:40 p.m. on October 29, 2021, just prior to the 5:48 p.m. filing of the bankruptcy petition and *after* the Dallas County 3:00 p.m. deadline for recordation on the same day. This resulted in the actual recordation of the deed days after the filing of the petition, which is also a violation of the automatic stay.

## II. FACTS

2. On September 19, 2019, Debtor acquired 2.47 acres of land located at 2999 Turtle Creek, Dallas, Texas (the "**Land**" or the "**Property**"), for a purchase price of $43,049,926, with a total after closing costs of $46,410,625, and, shortly thereafter, publicly announced a plan to develop the Land into a five-star Mandarin Oriental Hotel ("**Mandarin**") and branded residential project (the "**Project**"). As part of the closing on the acquisition of the Land, Debtor executed a Deed of Trust, Security Agreement and Fixture Filing (the "**Deed of Trust**") for the benefit of 2999 Turtle Creek, LLC (the "**Lender**"), as well as a secured Promissory Note in the original stated principal amount of $32,500,000 for a one-year term (subject to certain possible extensions) in favor of Lender (the "**Loan**"). The Loan is secured by the Land, valued at the closing, based upon a broker's opinion to the Lender, at approximately $50,000,000. At closing, Debtor contributed $17.5 million in equity and has subsequently contributed an additional $3,000,000 in equity toward the Project.

3. Both prior to and after the closing on the Loan and purchase of the Land, Debtor, through its manager and president, Timothy Barton ("**Barton**"), sought investments, in the form of both equity and debt, in the development and construction of the Project. Barton, as the manager of Debtor, had been working to acquire the Land since April 2018. Barton successfully obtained all zoning permits prior to closing of the purchase of the Land, and, shortly thereafter, Debtor entered into a series of management agreements with Mandarin. During August 2019, Nambiar had apparently raised, through one or more entities, approximately $42.5 million in an apparent attempt to acquire the Land in the event Debtor did not close on its purchase.

4. Unknown to Debtor and Barton at the time, Nambiar and others purchased a participation in the Loan from Lender during December 2019, and Nambiar (and others, including affiliated entities) formed HNGH Turtle Creek, LLC to be the entity that would officially be the "junior participant" in the Loan. However, apparently, Nambiar still wanted to learn more about the Project himself before finalization of the purchase of the participation interest in the Loan, as his ultimate goal was gaining ownership of the Loan and the Project.

5. In mid-January 2020, Nambiar met with Barton purportedly for the purpose of discussing a potential investment by Nambiar in the development of the Project, at which time Barton confidentially shared financial projections, capital requirements, plans and other proprietary information with Nambiar. Shortly after the meeting between Nambiar and Barton, Debtor received notice from the Lender that, on January 24, 2020, HNGH had acquired a "junior participation interest" in the Loan and Deed of Trust under the terms of a participation agreement between the Lender and HNGH. In the notice, Lender expressly informed Debtor that it "shall continue to coordinate directly with Lender in accordance with the Loan Documents with respect to the servicing and administration of the Loan."

6. At the time of the January 2020 meeting with Nambiar (unbeknownst to Barton and Debtor), Nambiar already had formed HNGH in December 2019 which, on information and belief, was part of a scheme to acquire an interest in the Project and ultimately replace Debtor and Barton with another real estate developer and competitor. Nambiar is a principal, owner, or otherwise exercises control of HNGH. On information and belief, since some period in mid to late 2019, Nambiar and others have been devising a plan to overtake the Project from Debtor and Barton after they became aware of an agreement to develop the Project; however, at no time during a January 2020 meeting did Nambiar disclose his true interest and plans regarding the Project.

7. Nambiar and HNGH effectively developed a long-term scheme to lure potential investors away from Debtor and Barton, take control of the Project and obtain copies of Debtor' building and development plans for the Project. In furtherance of such scheme:

(a) Nambiar contacted Aju Hotels and Minkowitz and met with one or both of them at the Virgin Hotel on or around March 4, 2020, at which time Nambiar represented to them he "owned" the Loan on the Project; immediately thereafter, both investors backed out of a prior commitment to Debtor to the Project.

(b) Upon information and belief, in March 2020, Nambiar engaged or coordinated with a builder named William Hutchinson, who sent requests to the construction company retained by Debtor for the development of the Project to request copies of current building plans and development plans for the Project. Those plans included demolition plans of the existing structures, along with other confidential documents. Rather than contact Debtor or Barton directly to request information about the Project, Hutchinson (a competitor) attempted to convince the Project's construction company to release confidential information to Hutchinson directly by claiming he had an

interest in moving into the existing building located on the Land. On information and belief, Nambiar and Hutchinson and HNGH had been working collaboratively for some time to obtain confidential information about the Project and lure potential investors away from the Project.

(c) In April 2020, instead of the Lender replying to Debtor' request for certain matters, Debtor received a letter from HNGH's counsel on April 6, 2020, claiming that HNGH was exercising certain rights under the Participation Agreement (to which Debtor was not a party nor had any knowledge about) and that HNGH was making a protective advance in excess of $345,000. Debtor was surprised by HNGH's letter because HNGH did not have the right to make such demands, as it was not a direct party to the Loan, and Debtor never consented to HNGH's participation.

(d) On April 9, 2020, HNGH sent a letter to Debtor, claiming to be the "senior participant," that included a proposed "pre-negotiation" agreement between HNGH and Debtor [the Lender itself was not included in the document] that required Debtor to unilaterally waive certain rights and agree to onerous terms, including terms under the unseen Participation Agreement, just to have a discussion. Debtor declined to execute such document.

8. On April 20, 2020, based on the actions set forth above, Debtor instituted an action against HNGH and Nambiar in State District Court in Dallas County, Texas, as Cause No. DC-20-05864 (the "**State Court Case**"), asserting multiple causes of action, including tortious interference with an existing contract, tortious interference with prospective business relations, misappropriation of confidential information, misappropriation of trade secrets, fraud and conspiracy. During the course of the State Court Case, the Loan matured under the terms of the

Note. The State Court Case was nonsuited without prejudice, and, thereafter, on October 22, 2020, Debtor, along with Barton, instituted an action against Lender, HNGH, Nambiar and other related parties in the United States District Court for the Northern District of Texas (Dallas Division), which included many of the same causes of action and added certain additional claims from the State Court Case.

9. On March 1, 2021, Debtor and Barton, as Guarantor, and HNGH executed a "Forbearance and Payoff Agreement" (the "**Forbearance Agreement**"), which, as amended, clarified certain matters. The Loan was modified to mature July 31, 2021, with Debtor having the opportunity to pay monthly payments of $100,000, under which Debtor could extend the Maturity Date by 90 days (calculated to be October 29, 2021). Included in the requirements was that Debtor would execute and deliver a special warranty deed (the "**Deed**") conveying the Land to HNGH to be held in escrow by Lender's agent, "Richard Icklan," on behalf of Old Republic Title Company, as Escrow Agent, at his office in Hoboken, New Jersey, under a separate escrow agreement in lieu of foreclosure and if either (i) the Loan as modified was not "paid in full on or before" the extended maturity date of October 29, 2021 or (ii) after ten days following the occurrence of a Forbearance Default and written notice thereof to Debtor, Lender would have the option to elect to record the Deed in the property records.

10. Prior to October 21, 2021, Barton, on behalf of Debtor, and Nambiar began discussing possible extensions of the arrangement as well as an agreement to market and list the Real Property for sale with a real estate broker. On October 27, 2021, Barton and Nambiar arranged via text to meet in person at the W Hotel, during which time they further discussed extension arrangements, including potential terms under which the Real Property would be marketed for sale over a 90-day period. Nambiar included his general counsel in the meeting "so he can direct

lawyers" in preparation of documents. During the meeting, Nambiar stated his attorneys would draft and send to Barton extension documents. Barton advised Nambiar at that time that Debtor would be filing bankruptcy on Friday, October 29, if there was no extension arrangement in place. Nambiar was unconcerned and told Barton that HNGH was prepared to file a motion to lift the automatic stay if that happened, but **Nambiar also told Barton that Debtor had a 10-day cure period**, so it was not urgent to execute any extension agreement in order to further extend the maturity date of the Loan. During that October 27, 2021 meeting, Nambiar also strongly encouraged Barton to simply allow Nambiar to record the Deed and otherwise foreclose on the Real Property, upon which they could "joint venture" together to develop the Real Property without the threat of any other claims, which Barton declined to even discuss.

11. On October 28, 2021, Barton had one of his employees email a meeting request to Nambiar to have a call on the morning of October 29 to further discuss extension arrangements; Nambiar did not respond.

12. At 10:11 a.m. on October 29, 2021, Barton emailed Nambiar to have a follow-up call at 10:30 a.m. Nambiar texted back, saying he was on a "Zoom presentation until 1:30" and asked to call Barton then. At 10:57 a.m., Barton sent a follow-up text, asking for the draft of the extension arrangement documents that HNGH's attorneys were supposedly preparing.

13. After Barton received no response and was unable to get a further update from Nambiar about the extension arrangements, Barton had counsel prepare an amendment to the existing documentation to propose extending the Maturity Date to November 8, 2021. The extension document was emailed to HNGH and their counsel at 11:52 a.m. on October 29, 2021; after not receiving any response, Debtor' counsel called and spoke with counsel for HNGH at 3:22 p.m. to inquire as to the status and whether such counsel was aware that the parties had been

discussing an extension and whether such counsel was working on extension documents. HNGH's counsel stated that, although he had been in contact with Nambiar, he had not been instructed to work on any extension documents. At 4:17 p.m., counsel for Debtor again spoke to counsel for HNGH, at which time HNGH's counsel had no further update, and Debtor' counsel specifically informed HNGH's counsel that Debtor would be filing shortly for Chapter 11 bankruptcy.

14. After Nambiar failed to call at 1:30 p.m., Barton texted Nambiar, expressing concerns, and Barton finally texted Nambiar at approximately 5:57 p.m. that the voluntary Chapter 11 Bankruptcy petition of Debtor had been filed. Nambiar responded at 6:41 p.m., advising "Ok. Let's talk Monday" and never mentioned any default or election to record a Deed. At 6:09 p.m. on October 29, 2021, shortly before Nambiar's response, Barton emailed Nambiar and others a copy of the filed Bankruptcy Petition.

15. Unbeknownst to Debtor, Barton or their counsel, HNGH and Nambiar and their counsel were actually working behind the scenes to simply stall Barton so he would not file the bankruptcy petition for Debtor before HNGH was permitted to declare a default and direct the Escrow Agent to record the Deed. HNGH had claimed that the Note itself required payment by 12:30 (which Debtor disputes is applicable).

16. HNGH's counsel ultimately sent a copy of the recorded Deed, which was stamped as filed and recorded on Monday, November 1, 2021, at 1:40 p.m. – well after the voluntary bankruptcy petition of Debtor had been filed. In response, HNGH's bankruptcy counsel has asserted that the Deed had been sent to be e-recorded at 1:30 on October 29, 2021, but it was not actually stamped as recorded by Dallas County until the file stamped date and time of November 1, 2021 at 1:40 p.m. However, the certification from Dallas County printed on the recorded deed

certifies that the deed was "filed in the file number sequence on the date/time printed hereon [November 1, 2021 at 1:40] and was duly recorded."

17. Counsel for HNGH later produced an email from Mindy Coover, who is not the Escrow Agent but rather claims to be a Vice President at Old Republic National Title Insurance Company in Dallas, Texas, who claimed to have sent the Deed to be e-recorded allegedly at 4:18 p.m. CST on October 29, 2021, although, according to Dallas County's instructions regarding e Recording, the county requires any filings to be e Recorded prior to 3 p.m. in order to be recorded on the same day. Thus, such e-recording of the Deed occurred well after the Chapter 11 bankruptcy petition of Debtor had been filed.

## III. ARGUMENT

18. The above actions by HGNH and Nambiar constitute fraud and fraudulent inducement. Among other omissions, HGNH and Nambiar failed to disclose to the Debtor that they had devised a fraudulent scheme to acquire the Land without paying for it and that their "negotiations" with the Debtor were a mere pretense. HGNH and Nambiar never intended to extend the Payment Deadline and actively sought to dupe the Debtor and Barton into thinking they did so intend, enabling them to file the Deed once the Payment Deadline passed and before the bankruptcy petition was filed. HGNH and Nambiar's omissions and misrepresentations were false, material and made with the intent that the Debtor and Barton would rely upon them. The Debtor relied on these omissions and misrepresentations in refraining from filing the petition until after the Payment Deadline, thus enabling HGNH to transmit the Deed to the county clerk in an attempt to fraudulently transfer the Land before the petition was filed. The Debtor requests the Court to enforce the automatic stay, alternatively to enter an injunction or other order under its

authority pursuant to 11 U.S.C. section 105(a), to require HGNH to rescind the Deed and restore ownership of the Land to Debtor for the benefit of its estate, creditors and other parties-in-interest.

19. HGNH's failure to e-file the Deed until after the Dallas County Clerk's 3:00 p.m. deadline for same-day recording, thereby ensuring it would not be recorded until three days after the Debtor's filing of its petition herein, also is a violation of the automatic stay. Without question the filing and recording of the deed constitute an "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" prohibited by 11 U.S.C. section 362(a)(3). This section prohibits such acts by "all entities" pursuant to section 362(a), not just by HGNH but also the County Clerk at HGNH's behest. The Debtor requests the Court to enter an order enforcing the automatic stay and directing HGNH to rescind the filing and recording of the Deed immediately and imposing such other sanctions as the Court may deem appropriate.

WHEREFORE, PREMISES CONSIDERED, the Debtor again requests the Court, pursuant to its Expedited Motion to Enforce Automatic Stay and for Sanctions Pursuant to 11 U.S.C. Section 362, to enter an order 1) finding HGNH in violation of the automatic stay, 2) requiring HGNH to take whatever actions may be necessary to rescind the Deed and cure any effects it may have on the Debtor or its estate, and 3) requiring HGNH to compensate the Debtor for its actual attorney fees in an amount to be determined at the hearing, and any other actual costs the Debtor may incur in ensuring that the Deed is properly rescinded.

Dated: November 11, 2021.

Respectfully submitted,

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, TX 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Proposed Attorneys for Debtor

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 11, 2021, a true and correct copy of the foregoing document was served via email pursuant to the Court's ECF system upon the parties receiving electronic notice in this case listed below.

John J. Kane on behalf of Creditor HNGH Turtle Creek, LLC
jkane@krcl.com, ecf@krcl.com;jkane@ecf.courtdrive.com

Sherrel K. Knighton on behalf of Creditor Dallas County
Sherrel.Knighton@lgbs.com,
Dallas.Bankruptcy@lgbs.com;Sean.French@lgbs.com;Dora.Casiano-Perez@lgbs.com;Olivia.Salvatierra@lgbs.com

Joyce W. Lindauer on behalf of Debtor 2999TC Acquisitions, LLC
joyce@joycelindauer.com,
dian@joycelindauer.com;deann@joycelindauer.com;12113@notices.nextchapterbk.com

Steven C. Metzger on behalf of Interested Party JMJ Development LLC
smetzger@pmklaw.com

Steven C. Metzger on behalf of Interested Party Tim Barton
smetzger@pmklaw.com

United States Trustee
ustpregion06.da.ecf@usdoj.gov

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer