# FORBEARANCE AND PAYOFF AGREEMENT

This FORBEARANCE AND PAYOFF AGREEMENT (this "**Agreement**"), made effective as of this 1st day of March, 2021 (the "**Effective Date**"), is executed by and among **2999TC ACQUISITIONS, LLC**, a Delaware limited liability company f/k/a MO 2999TC, LLC ("**Borrower**"), **TIMOTHY LYNCH BARTON**, an individual (the "**Guarantor**" and together with Borrower, the "**JMJ Parties**"), and **HNGH TURTLE CREEK, LLC**, a Delaware limited liability company ("**Lender**"). Borrower, Guarantor, and Lender are collectively referred to as the "Parties" with each being a "Party."

## RECITALS

A. On or about September 20, 2019, 2999 Turtle Creek, LLC, a Delaware limited liability company (the "**Senior Participant**") made a loan to Borrower in the original principal amount of $32,500,000.00 (the "**Loan**") evidenced by, among other things, that certain Secured Promissory Note, dated September 20, 2019, made by Borrower in the amount of $32,500,000.00, which Note is currently owned and held by Lender, (as amended from time to time, the "**Note**"), which Loan is guaranteed by the Guarantor pursuant to that certain Guaranty, dated September 20, 2019, by and between the Guarantor and Senior Participant, which Guaranty is currently owned and held by Lender (the "**Guaranty**").

B. The Loan is secured by a security interest in that certain real property owned by Borrower, (the "**Property**") as described in that certain Deed of Trust, Security Agreement and Fixture Filing dated September 20, 2019, recorded in the real property records of Dallas County, Texas (the "**Deed of Trust**," and, together with the Note, the Guaranty and all other documents evidencing or executed in connection with the Loan, as the same have been amended and modified, collectively, the "**Loan Documents**").

C. Borrower is in default under the Loan Documents by its failure to make the following payments (collectively, the "**Specified Defaults**"): (i) failure to pay the real estate taxes in connection with the Property due on or about February 1, 2020; (ii) failure to replenish the interest reserve in the amount of $1,376,916.67 ; (iii) failure to pay a portion of the monthly interest payment due on June 1, 2020 in the amount of $11,194.45; (iv) failure to pay monthly interest payments due on July 1, August 1, September 1, and October 1; (v) failure to pay the principal amount of $32,500,000.00 as of October 1, 2020, and (vi) failure to pay property taxes totaling $337,827.55 for the Property which were owed and due to be paid by January 31, 2021

D. On or about August 28, 2020, Lender's predecessor-in-interest filed a lawsuit against Guarantor for breach of the Guaranty and the Specified Defaults, among other things, styled as *2999 Turtle Creek, LLC (Plaintiff) and HNGH Turtle Creek, LLC (Intervenor-Plaintiff) v. Timothy Lynch Barton (Defendant)*, Cause No. DC-20-12133, pending in the 192nd District Court, Dallas County, Texas ("**HNGH Lawsuit**").

E. On or about January 5, 2021, Lender agreed to delay foreclosure on the Property for one month in exchange for a $100,000.00 payment made by Borrower to Lender followed by an additional payment of $100,00.00 on or about February 2, 2021. (collectively, "**Delay Payments**").

F. Borrower has requested Lender's forbearance from the exercise of remedies under the Loan Documents as a result of the Specified Defaults, which forbearance Lender is willing to grant based on Borrower's and the Guarantor's acknowledgement of the Specified Defaults identified herein, full and complete releases against Lender and Senior Participant (and their respective agents, representatives, and affiliates), and agreement to the terms and conditions set forth herein.

G. The JMJ Parties have dismissed with prejudice the lawsuit styled 2999TC Acquisitions LLC f/k/a MO 2999TC, LLC et al v. 2999 Turtle Creek LLC et al., Case No. 3:20-CV-3229 only against

**EXHIBIT "16"**

the defendants, HNGH Turtle Creek, LLC, HN Green Hollow Capital Partners, LLC, Vipin Nambiar, and James G. Glasgow, pending in the United States District Court for the Northern District of Texas Dallas Division with the lawsuit remaining pending against all remaining defendants.

NOW, THEREFORE, for and in consideration of the sum of $10.00 in hand paid to Lender by Borrower before the execution, sealing and delivery hereof, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Lender and the JMJ Parties hereby agree as follows:

1. Incorporation of Recitals; Defined Terms; Additional Loan Document; Inducement to Lender. The foregoing recitals are incorporated herein as a substantive, contractual part of this Agreement. Capitalized terms used in this Agreement and not otherwise defined herein shall have the meanings ascribed thereto in the Note or, if not defined in the Note, as defined in the other Loan Documents; additionally, the words "**including**" and "**includes**," and words of similar import, shall be deemed to be followed by the phrase "**without limitation**," and the words "**hereof**" and "**hereunder**," and words of similar import, shall be deemed to refer to this Agreement as a whole and not to the specific section or provision where such word appears, except where the same is used in a definition to be incorporated into another Loan Document. Furthermore, from and after the date hereof, any reference in the Loan Documents to any Loan Document modified by this Agreement shall be deemed to refer to such Loan Document as modified by this Agreement, and this Agreement shall be an additional Loan Document as such term is used herein and in the other Loan Documents. Each of the acknowledgments, representations, warranties, covenants and agreements by Borrower and/or Guarantor contained in this Agreement is a material part of the consideration received by Lender and is a material inducement to Lender for the execution and delivery by Lender of this Agreement and any related documents.

2. Loan Modification.

a) Loan Amount. Lender and the JMJ Parties hereby acknowledge and agree that as of December 31, 2020, the new principal balance of the Loan is $40,073,171.00 (the "**Modified Loan**"), provided that so long as no uncured Forbearance Default has occurred, the Modified Loan shall be $39,748,171.00 (including the existing legal fees equal to $925,000).

b) Term. The Modified Loan shall be due and payable on or before July 31, 2021 (the "**Initial Maturity Date**"), unless extended pursuant to Section 2(c) below.

c) Extension Option. At any time before the Initial Maturity Date, the JMJ Parties shall have the option to extend the Initial Maturity Date for a period of ninety (90) days (the "**Extended Maturity Date**") so long as the JMJ Parties have deposited the amount of $784,074 ("**Extension Deposit**") (in addition to the amount deposited under Section 2(d) of this Agreement) into an escrow account with a bank satisfactory to Lender in its sole discretion (the "**Escrow Account**"), to be applied by Lender to make monthly interest payments. The JMJ Parties hereby agree that the delivery of the Extension Deposit shall be deemed a ratification of the existing representations, covenants, and warranties of the JMJ Parties made herein and affirmation that such representations, covenants, and warranties remain true and correct as of the date the Extension Deposit is made. Upon the occurrence and continuance of an uncured Event of Default under the Loan Documents which occurs after the Effective Date of this Agreement or an uncured Forbearance Default under this Agreement, Lender may apply any amount in the Escrow Account to offset interest payments due under the Note.

d) Interest. The Modified Loan shall bear interest at a rate equal to eight percent (8.0%) per annum (the "**Interest Rate**"). Notwithstanding the foregoing, the aggregate amount of

interest payments due on or before the Initial Maturity Date shall not exceed $1,444,422.00 ("**Interest Reserve**") less all paid Partial Interest Payments made under section 2(e), and shall be paid into the Escrow Account on or before the last Partial Interest Payment is due.

e) Payments. Beginning on March 1, 2021 and on the first day of each calendar month thereafter through and including July 1, 2021, Borrower shall pay to Lender equal monthly installments of $100,000.00 ("**Partial Interest Payment**" which include each Delay Payments). Lender shall apply the Delay Payments and each Partial Interest Payment towards the accrued interest on the Modified Loan. The JMJ Parties agree that failure to make any timely Partial Interest Payment shall constitute a Forbearance Default under this Forbearance Agreement.

3. Forbearance.

a) Remedies. Subject to the terms of this Agreement and provided no Forbearance Default (as hereinafter defined) occurs, Lender hereby agrees to forbear from exercising its remedies under the Loan Documents based solely on Borrower's Specified Defaults (the "**Deferred Rights,**" and the forbearance from such Deferred Rights by Lender pursuant to the terms and conditions of this Agreement being herein referred to as the "**Forbearance Covenant**").

b) Notwithstanding the foregoing, the Forbearance Covenant shall not constitute, and shall not be deemed to constitute, a waiver of any default or Event of Default under the Loan Documents or a waiver of any of Lender's other rights and remedies except as specifically set forth with respect to the Deferred Rights. The JMJ Parties expressly acknowledge and agree that from and after the occurrence of a Forbearance Default, Lender's Forbearance Covenant shall terminate automatically without further act or action by Lender, and Lender shall be entitled to exercise any and all rights and remedies available under the Loan Documents and this Agreement, at law, in equity, or otherwise and including, without limitation, the Deferred Rights.

4. Guaranty. The Guarantor hereby acknowledges and agrees that the Guaranty is in full force and effect as of the Effective Date and will continue to be in full force and effect with respect to the obligations described therein. Any and all claims against and all obligations and liabilities of the Guarantor including all related parties under the Guaranty shall be released and satisfied in full upon the following events provided such are not contested by Guarantor and Borrower: (i) the selling or acquisition of the Property by Lender (including by its trustee or representatives) upon Lender's election to foreclose instead of recording the deed as permitted under section 9 (Deed in Lieu); (ii) the recording of the deed held in escrow as permitted below in section 9 (Deed in Lieu); (iii) the payment of the Payoff Amount prior to expiration or termination of this Agreement or otherwise as accepted by Lender in its discretion, or (iv) the closing of the Loan Purchase or sale of the Loan to any party referred to Lender by the JMJ Parties on terms agreed to by Lender (collectively, (i) - (iv) are each a "**Payoff Event**").

5. Security Interests. The JMJ Parties hereby acknowledge and agree that the security interests granted in the Deed of Trust are valid and in force and effect and that no grounds exist by or on behalf of the JMJ Parties to challenge such security interests.

6. Release of Deed. So long as the Modified Loan is paid in full by the Initial Maturity Date or if applicable, the Extended Maturity Date, then, then in addition to the releases and other obligations specified herein, Lender shall (i) cause the Escrow Agent to release the Deed held in escrow by the Escrow Agent to the Borrower and the Deed shall be null and void upon the receipt of such payment and (ii) the Deed of Trust and any other security instrument shall be released by Lender. By no later than March 5, 2021, Borrower shall pay to Lender's counsel the sum of $35,000 to pay for all attorneys' fees and expenses incurred by Lender in connection with this Agreement and the LOI negotiations related to this Agreement.

7. Forbearance Default; Remedies upon a Forbearance Default.

a) For purposes of this Agreement, a **"Forbearance Default"** shall mean the occurrence of any of the following which is not cured within ten (10) days after such default: (i) failure to timely remit any Partial Interest Payment or fund the Interest Reserve, (ii) contesting a Payoff Event, (iii) Borrower's failure to pay the 2020 Property taxes totaling $337,827.55 on or before May 31, 2021, (iii) the material breach, violation or default by Borrower or Guarantor of any representation or warranty made by Borrower or Guarantor under this Agreement, (iv) Borrower's failure to pay the attorneys' fees and expenses of $35,000 no later than March 5, 2021, (v) Borrower or Guarantor's refusal or material delay in cooperating with Section 8 of this Agreement, or (vi) any Event of Default under the Loan Documents which occurs after the Effective Date of this Agreement as described by written notice to the JMJ Parties to the extent required under the Loan Documents.

b) Upon the occurrence of any Forbearance Default, Lender may, in Lender's sole and absolute discretion declare the principal of and interest accrued but unpaid under the Note, and all other amounts due and payable to the Lender hereunder or in connection herewith, to be forthwith due and payable, whereupon the same shall become due and payable without any presentment, acceleration, demand, protest, notice of protest, notice of intent to accelerate, notice of acceleration or notice of any kind, all of which are hereby waived, and Lender may apply the balance of the Escrow Account against the balance of the Loan.

8. Abatement. Lender shall temporarily cease pursuing or continuing to pursue any actions or remedies under the HNGH Lawsuit during the term of this Agreement for so long as no uncured Forbearance Default exists. Lender and the JMJ Parties shall jointly file an agreed motion and order executed by all parties in the HNGH Lawsuit within five (5) business days following the Effective Date as necessary to abate the HNGH Lawsuit and shall reasonably follow up with the court to timely obtain the executed order abating the lawsuit. Notwithstanding the foregoing, Lender may reinstate the HNGH Lawsuit upon the occurrence of a Forbearance Default. Lender shall dismiss the HNGH Lawsuit with prejudice upon an uncontested Payoff Event.

9. Deed in Lieu.

a) Simultaneous herewith, the JMJ Parties shall deliver as collateral an executed special warranty deed (the **"Deed"**) in the form attached hereto as Exhibit A and made a part hereof and any other documents necessary to transfer title of the Property to Lender upon a Transfer Event, to be held by an independent escrow agent (**"Agent"**) agreed to by the Parties in escrow subject to the escrow agreement (**"Escrow Agreement"**) attached hereto as Exhibit "B" to be negotiated and entered into by the Parties and the Agent on or before March 5, 2021. Prior to execution of the Escrow Agreement by the Agent, upon the Effective Date of this Agreement, the JMJ Parties' counsel, Vance McMurry, ("McMurry") shall agree to act as the temporary escrow agent, shall execute the Escrow Agreement, and shall hold the deed in escrow subject to the terms of the Escrow Agreement until the appointment of the Agent and execution of the Escrow Agreement by the Agent upon which (i) McMurry shall deliver the deed to the Agent, (ii) the Escrow Agreement executed by McMurry shall terminate or be assigned to the Agent, and (iii) McMurry shall automatically be released from any claims, liabilities, and obligations under the Escrow Agreement. If (i) the Modified Loan is not paid in full on or before the Initial Maturity Date or, if applicable, the Extended Maturity Date, or (ii) a Forbearance Default otherwise occurs and is continuing (a **"Transfer Event"**), Lender shall have the right to elect in Lender's sole discretion to record the Deed in the real property records of Dallas County, Texas to effect the transfer of the Property to Lender.

b) Upon the occurrence of a Transfer Event, and Lender's election to exercise of its right to transfer the Property, Borrower agrees to convey, assign and transfer to Lender, or Lender's designee, all of Borrower's right, title and interest in and to the Property, free and clear of all liens, other than the Deed of Trust and items that are validly recorded of record as of the date hereof.

c) The recording of the Deed as described in this section 9 or any other Payoff Event shall operate as full accord and satisfaction of all of Lender's claims against Borrower and Guarantor and their related parties upon which Borrower and Guarantor shall be fully released from all obligations and liabilities related to the Loan, the Loan Documents, and this Agreement.

d) The release of Borrower and Guarantor and satisfaction of liabilities, obligations, and claims as described in this section 9 and under a Payoff Event is contingent upon Borrower and Guarantor not contesting Lender's exercising of its available remedies as described in this Agreement including but not limited to the filing any lawsuit against the Lender or its related parties as related to this Agreement or the Loan Documents or breach of the Bankruptcy Covenants defined in this Agreement.

10. No Defenses. As of the Effective Date, the JMJ Parties acknowledge, agree, represent and warrant: (a) that the JMJ Parties have no defense, offset, or counterclaim to any of Borrower's and Guarantor' obligations under the each of the Loan Documents to which it is a party; (b) that to the extent that any such defenses, claims, or offsets of Borrower or Guarantor do or might exist as of the Effective Date, each and all are hereby waived and released in consideration of Lender's execution of this Agreement; (c) that this Agreement and each of the Loan Documents to which the JMJ Parties, as applicable, are a party are valid, binding and enforceable obligations against Borrower and Guarantor in accordance with their terms; and (d) that unless and until Borrower has fully performed under this Agreement nothing in this Agreement shall be, or shall be deemed to be, a cure or waiver of any default or Event of Default under the Loan Documents. The provisions of this Section 10 shall survive the termination of this Agreement and/or the satisfaction of the Loan and performance by Borrower under this Agreement.

11. Indemnification and Release.

a) The JMJ Parties acknowledge and agree that:

i. Lender (including its affiliates, agents, and representatives) is not in default with respect to any of its obligations under any of the Loan Documents and the JMJ Parties currently possess no claim against Lender including, but not limited to, damages, setoff, estoppel, waiver, cancellation of instruments, rescission or excuse of performance under any of the Loan Documents by virtue of Lender's actions.

ii. As a material inducement to Lender to enter into this Agreement and to grant the additional concessions to the JMJ Parties reflected herein, all in accordance with and subject to the terms and conditions of this Agreement, and all of which are to the direct advantage and benefit of the JMJ Parties, on behalf of themselves and their officers, directors, shareholders, predecessors, successors, assigns and agents and Borrower, on behalf of itself and its officers, directors, shareholders, successors, assigns and agents, hereby irrevocably and unconditionally, jointly and severally, release and forever discharge Lender, Vipin Nambiar, James Glasgow, William Hutcheson, Wick Phillips Gould & Martin, LLP, and each of their respective beneficiaries, trustees, owners, predecessors, successors, assigns, agents, officers, employees, contractors, servicers, representatives, attorneys, and affiliates, and all persons acting by, through, under, or in concert with any of the aforesaid persons or entities (collectively, **"Lender Releasees"**), or any of them,

from any and all liabilities, damages, losses, claims, demands, costs, expenses, defenses, set-offs, rights of recoupment, judgments, executions, causes of action, suits, debts, dues, sums of money, claims for attorneys' fees or costs, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, torts, omissions, representations, breaches of contract or of obligations to perform, and any type of conduct or misconduct, whether negligent, intentional or otherwise, whether in law or in equity, whether matured or unmatured, whether known or unknown, whether liquidated or unliquidated, whether contingent or non-contingent which either Borrower or either Guarantor now has or hereafter can, shall or may have by reason of any matter, cause or thing, from the beginning of the world to and including the date of this Agreement, including specifically, but without limitation, matters arising out of, in connection with or relating to (A) this Agreement, (B) any obligations under the Loan Documents, (C) the Loan Documents or the indebtedness evidenced thereby, including, the administration or funding thereof, and (D) any other relationship, agreement or transaction between Borrower or either Guarantor and Lender or any of its subsidiaries, affiliates and servicers; and does hereby covenant and agree never to institute or cause to be instituted or continue prosecution of, and shall indemnify Lender Releasees and defend and hold them harmless from any and all claims, losses, causes of action, costs and expenses of every kind or character incurred by or asserted against Lender Releasees in any suit or other form of action or proceeding of any kind or nature whatsoever against Lender or any of the other Lender Releasees , by reason of or in connection with any of the foregoing matters, claims or causes of action. Borrower and each Guarantor further agrees and acknowledges that it may hereafter discover facts different from, or in addition to, those which it now knows or believes to be true with respect to the claims released pursuant to this Section 11 and agrees that the foregoing release shall be and remain effective in all respects notwithstanding such different or additional facts or the discovery thereof. The foregoing release is intended to be and is, a full, complete and general release in favor of the Lender Releasees with respect to all claims, demands, actions, causes of action and other matters described therein, including specifically, without limitation, any claims, demands or causes of action based upon allegations of breach of fiduciary duty, breach of any alleged duty of fair dealing in good faith, economic coercion, usury or any other theory, cause of action, occurrence, matter or thing which might result in liability upon the Lender Releasees arising or occurring on or before the Effective Date. The JMJ Parties further acknowledge and agree that the foregoing general release is in consideration for the agreements of Lender contained in this Agreement and that neither Borrower nor either Guarantor will receive any further consideration for such releases.

b) All Parties including their related parties agree that:

i. The waivers, estoppels and releases in favor of all Releasees contained in this Agreement shall not be construed as an admission of any wrongdoing, liability or culpability on the part of any Party or any of the other Releasees or as an admission by any Party or any of the other Releasees of the existence of any claims any of the other Parties or Releasees. To the extent that any such claims exist, they are of a speculative nature so as to be incapable of objective valuation and, to the extent that any such claims may exist and may have value, such value would constitute primarily "**nuisance**" value or "**leverage**" value in adversarial proceedings

between Borrower and/or either Guarantor and Lender. In any event, the value to of a Party of the covenants and agreements on the part of any other Party contained in this Agreement substantially and materially exceeds any and all value of any kind or nature whatsoever of any claims or other liabilities waived or released by the other Party(ies) hereunder.

c) The provisions of this Section 11 shall survive the termination of this Agreement and/or the satisfaction of the Loan.

12. Representations and Warranties.

a) The JMJ Parties hereby represent and warrant that

i. Borrower has not made an assignment for the benefit of creditors.

ii. To the knowledge of the JMJ Parties, no Default or Event of Default exists under the Loan Documents except the Specified Defaults.

b) All Parties hereby represent and warrant that:

i. Each Party entity is duly organized, validly existing and in good standing under the laws of the state of its formation, and is qualified to do business and in good standing under the laws of any state required to accomplish the business of such Party. The Parties are authorized under applicable law to execute, deliver and perform this Agreement and all documents, instruments and agreements executed in connection herewith, and neither the execution and delivery of this Agreement or any such documents, instruments and agreements nor the fulfillment of or compliance with any of their respective terms and conditions and causing delivery thereof to Lender will conflict with or result in a breach of the terms, conditions or provisions of or constitute a violation or default under any contract, agreement, applicable law, regulation, judgment, writ, order or decree to which it is subject. Each legal entity appearing in a Party's signature block hereto is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization and has the power and authority and the legal right to execute and deliver this Agreement, on behalf of Borrower, and has taken all necessary action to authorize its execution and delivery of this Agreement.

c) The Parties have reviewed this Agreement with independent legal advisors of their choosing as to the advisability of making the agreements, waivers, and releases provided for herein, and with respect to the advisability of executing this Agreement, and with respect to the meaning and operation of every waiver contained herein.

d) No Party nor any of their related Releasees has made any statement or representation to any of the other Parties regarding any fact relied upon in entering into this Agreement (including, without limitation, with respect to any tax ramifications), and the other Parties acknowledge and agree that they have not relied upon any statement, representation or promise of any other party or of any officer, agent, employee, representative, or attorney for the other Party or any of their related Releasees, in executing this Agreement, or in making the agreements, amendments and releases provided for herein.

e) The Parties have made such investigation of the facts pertaining to this Agreement and of all the matters pertaining hereto as such party deemed necessary.

f) In entering into this Agreement and the agreements and releases provided for herein, each Party hereby assumes the risk of any mistake of fact or law, and if any Party should subsequently discover that any fact relied upon by them in entering into and performing their obligations under this Agreement was untrue, or that their understanding of the facts or of the law was incorrect, such party shall not be entitled to any relief in connection therewith, including, without limiting the generality of the foregoing, any alleged right or claim to set aside or rescind this Agreement or the waivers or releases contained or referenced herein or the transactions contemplated herein, and further, each Party acknowledge and agree that this Agreement is intended to be and is final and binding upon such Party regardless of any claims, mistake of fact or law, or of any other circumstance whatsoever.

g) No representation, warranty or statement of a Party in this Agreement contains any statement, representation or warranty which is incorrect, misleading or incomplete in any material respect and that each of the covenants, agreements, representations and warranties of the Parties made in this Agreement shall be continuing and shall be true and correct as of the Effective Date, shall survive the termination of this Agreement and shall survive a Payoff Event and/or the exercise by Lender of any or all of its rights and remedies under the Loan Documents or at law or in equity.

h) The provisions of this Section 12 shall survive the termination of this Agreement and/or a Payoff Event.

13. Notices. Any notices or other communications required or permitted hereunder shall be in writing, sent by overnight delivery service, and addressed as follows with a copy sent by email:

If to Borrower:

MO 2999TC, LLC
13901 Midway Road, Suite 102-243
Dallas, Texas 75244
Attn: Timothy L. Barton
Email: tbarton@jmjdevelopment.com

If to the Guarantor:

Timothy L. Barton
13901 Midway Road, Suite 102-243
Dallas, Texas 75244
Email: tbarton@jmjdevelopment.com

with a copy to:

Vance McMurry
McMurry Law, PLLC
508 W. Lookout, Suite 14-74
Richardson, Texas 75080
Email: vance@mcmurrylegal.com

If to Lender:

HNGH Turtle Creek, LLC
c/o HN Green Hollow Capital Partners, LLC
300 Park Avenue, 2nd Floor
New York, New York 10022
Attn: James Glasgow & Vipin Nambiar
Email: jglasgow@greenhollowcapital.com & vnambiar@hncapitalpartners.com

with a copy to:

Wick Phillips Gould & Martin, LLP
3131 McKinney Ave., Suite 500

Dallas, Texas 75204
Attn: Rusty O'Kane
Phone: 214-740-4039
Email: rusty.okane@wickphillips.com

Each of the foregoing shall be entitled to specify a different address by giving written notice of the aforesaid to the others. Legal counsel for a party may give notice on behalf of such party.

14. Bankruptcy Covenants.

a) In the event of the filing of any petition for bankruptcy relief filed by or against Borrower or Guarantor, subject to the approval of a court of competent jurisdiction, Borrower and Guarantor consent to the entry of an order granting Lender relief from the automatic stay of Section 362 of the Bankruptcy Code and shall not assert or request any other party to assert that the automatic stay provided by Section 362 of the Bankruptcy Code shall operate or be interpreted to stay, interdict, condition, reduce or inhibit the ability of Lender to enforce any rights it has under the Loan Documents or any other rights Lender has against any Borrower or against any property owned by any Borrower.

b) The JMJ Parties shall not seek or request any other party to seek a supplemental stay or any other relief, whether injunctive or otherwise, pursuant to Section 105 of the Bankruptcy Code or any other provision of the Bankruptcy Code, to stay, interdict, condition, reduce or inhibit the ability of Lender to enforce any rights they have under the Loan Documents or any other rights Lender has against Borrower or Guarantor.

c) If the incurring of any debt or the payments of money or transfers of property made to Lender by or on behalf of Borrower pursuant to this Agreement shall subsequently be declared to be "**void**" or "**voidable**" within the meaning of any state or federal law relating to creditors' rights, including, without limitation, fraudulent conveyances, a preference, or otherwise voidable or recoverable, in whole or in part, for any reason under the federal Bankruptcy Code or any other federal or state law (individually, a "**Voidable Transfer**"), and Lender is required to repay or restore any such Voidable Transfer or the amount or any portion thereof, or upon the advice of its counsel is advised to do so, then as to any such Voidable Transfer or the amount repaid or restored (including all reasonable costs, expenses and attorneys' fees of Lender related thereto), the indebtedness to Lender, or portion thereof, paid or deemed satisfied by such Voidable Transfer or such amount shall automatically be revived, reinstated and restored to the extent that such indebtedness to Lender, or portion thereof, existed immediately prior to such Voidable Transfer, and such indebtedness to Lender, or portion thereof, shall exist as though such Voidable Transfer had never been made.

d) The JMJ Parties further acknowledge and agree that Lender, as a material inducement to enter into this Agreement, has specifically bargained for the concessions set forth in this Section 14 and that this Agreement may be deemed conclusive evidence as to such negotiated ongoing intention of the JMJ Parties and that it is intending to remain the primary element in determining if cause exists for granting such concessions.

15. Future Negotiations.

a) The JMJ Parties hereby acknowledges and agrees that: (i) while Lender has no obligation whatsoever to discuss, negotiate or agree to any restructuring of the Loan, or to modify or amend the Loan Documents, Lender has agreed to the Forbearance Covenant subject to the express terms and conditions of this Agreement and based upon the covenants, agreements,

acknowledgments, warranties and representations set forth in this Agreement; (ii) Lender has no obligation whatsoever to discuss, negotiate or agree to any future restructuring of the Loan, or any future modification or amendment of the Loan Documents or to further forbear from exercising its rights and remedies under the Loan Documents; (iii) if there are any future discussions among Lender and Borrower concerning any such restructuring of the Loan, modification or amendment of the Loan Documents, of further forbearance, then no restructuring, modification, amendment, compromise, settlement, agreement, forbearance agreement or understanding with respect to the Loan, the Loan Documents or any aspect thereof shall constitute a legally binding agreement or contract or have any force or effect whatsoever unless and until reduced to writing and signed by authorized representatives of Borrower, each Guarantor and Lender; and (iv) Borrower shall not assert or claim in any legal proceedings or otherwise that any such agreement exists except in accordance with the terms of this Section 15.

16. WAIVER OF JURY TRIAL. THE JMJ PARTIES AND LENDER HEREBY WAIVE ANY RIGHT TO TRIAL BY JURY ON ANY CLAIM, DEMAND, ACTION, CAUSE OF ACTION OR PROCEEDING ARISING UNDER OR WITH RESPECT TO THIS AGREEMENT, OR IN ANY WAY CONNECTED WITH OR RELATED TO THE DEALINGS OF THE PARTIES WITH RESPECT TO THIS AGREEMENT, AND IRRESPECTIVE OF WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.

17. Miscellaneous. All Parties: (a) waive any claim contesting the existence and the adequacy of the consideration given with respect to this Agreement; and (b) agree, acknowledge, represents and warrant that the Loan Documents (as modified by this Agreement) shall remain in full force and effect, that all the terms and provisions of the Loan Documents are hereby ratified and affirmed. This Agreement shall be governed by and interpreted and construed in accordance with the laws of the State of Texas, without giving effect to any choice or conflict of law provision or rule that would cause the application of laws of any jurisdiction other than those of the state of Texas. Venue for any legal suit, action or proceeding brought under this Agreement shall be in the state or federal courts of Dallas County, Texas. The Parties hereto specifically agree that time is of the essence of this Agreement and that this Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, and successors of the Parties hereto, but nothing contained in this Agreement shall be construed as a consent by Lender to any assignment by Borrower or Guarantor. The Parties acknowledge that there are no other agreements or representations, either oral or written, express or implied, not embodied in this Agreement or the Loan Documents, and that the Loan Documents and this Agreement, together, represent a complete integration of all prior and contemporaneous agreements and understandings of the parties hereto. The Parties acknowledge, agree, represent, and warrant: (a) that the Parties have thoroughly read and reviewed the terms and provisions of this Agreement and are familiar with the same; (b) that the terms and provisions contained herein are clearly understood by the Parties and have been fully and unconditionally consented to by the Parties; (c) that the Parties have had the full benefit and advice of counsel and accountants of their own selection in regard to understanding the terms, meaning and effect of this Agreement (including, without limitation, any tax ramifications); (d) that this Agreement has been entered into by the Parties freely, voluntarily, with full knowledge, and without duress; and (e) that in the event of any ambiguity and/or dispute regarding interpretation of this Agreement the interpretation of this Agreement shall not be resolved by any rule of interpretation providing for interpretation against the party who causes the uncertainty to exist or against the draftsman. The terms and provisions of this Agreement may be modified or amended only by a writing executed by Borrower, Guarantor and Lender. No waiver or termination of this Agreement shall be binding unless executed in writing by the Party who, pursuant to the terms of this Agreement, has the right to waive any rights, conditions, or obligations hereunder, or has the right to terminate this Agreement. The headings contained in this Agreement have been inserted for convenience only and in no way define or limit the interpretation of this Agreement. It is understood and agreed that this Agreement may be executed in several counterparts, each of which shall, for all purposes, be deemed an original and all of such

counterparts, when taken together, shall constitute one and the same Agreement, even though all of the parties hereto may not have executed the same counterpart of this Agreement. Counterparts of this Agreement delivered by .pdf or other electronic means shall be deemed to be original counterparts for the purpose of this Agreement. Borrower further agrees, acknowledges, represents and warrants that this Agreement, any transactions contemplated herein or any rights or actions granted pursuant hereto shall not be deemed to make Lender a mortgagee-in- possession, and Borrower hereby waives any such claim. If any provision of this Agreement is held to be invalid or unenforceable, the remaining provisions hereof shall remain in full force and effect to the maximum extent permitted by applicable law. No other person or party shall have any rights whatsoever hereunder or shall be deemed a third-party beneficiary hereof, except for the Releasees. Whenever required by the context of this Agreement, the singular shall include the plural and the masculine shall include the feminine or neuter, as the case may be, and vice versa. All covenants, obligations, agreements, representations, warranties, and waivers of the Parties shall survive the termination of this Agreement or a Payoff Event. The Parties hereby acknowledges and agree that but for the agreement by the Parties to each and every provision in this Agreement, as applicable, the other Parties would not have entered into this Agreement.

18. Joint Drafting of Agreement. The language used in this Agreement is chosen jointly by the Parties to express their mutual intent and no rule of construction will be applied against any Party, including any rule of draftsmanship. The Parties hereby expressly agree that any uncertainty or ambiguity existing herein shall not be interpreted against any of them, except as expressly limited by this Section, and that all of the applicable rules of interpretation of contract shall govern the interpretation of any uncertainty or ambiguity.

19. Severability. If any provision or any part of any provision of this Forbearance Agreement shall for any reason be held to be invalid, unenforceable, or contrary to public policy or any law, then the remainder of this Agreement shall not be affected thereby.

20. Recitals/Exhibits. The recitals and exhibits to this Agreement constitute an integral part of this Agreement and are incorporated herein by reference with the same force and effect as if fully set forth herein as agreements of the parties hereto.

21. Counterparts. This Agreement may be signed by the Parties in counterparts, and each signed counterpart shall become part of the final Forbearance Agreement and shall have the same force and effect thereof. A copy of any signature on a signature page shall be as valid and binding as an original signature.

[END OF DOCUMENT; SIGNATURE PAGES FOLLOW]

**BORROWER:**

2999TC ACQUISITIONS, LLC,
a Delaware limited liability company
formerly known as MO 2999TC, LLC

By: ______________________
Name: Timothy Barton
Title: President

**GUARANTOR:**

______________________
TIMOTHY LYNCH BARTON

**LENDER:**

HNGH TURTLE CREEK, LLC,
a Delaware limited liability company

By: HN Green Hollow Capital Partners LLC,
its authorized signatory

By: ______________________
Name: James Glasgow
Title: Manager

# EXHIBIT A

Form of Deed
**SPECIAL WARRANTY DEED**

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF DALLAS | § | |

THAT 2999TC Acquisitions, LLC f/k/a MO 2999TC, LLC, a Delaware limited liability company ("Grantor"), whose mailing address is 13901 Midway Rd., Suite 102-243, Dallas, TX 75244 for and in consideration of the sum of TEN AND NO/ 100 DOLLARS ($10.00) and other good and valuable consideration paid in cash to Grantor by the Grantee herein named, has GRANTED, BARGAINED, SOLD and CONVEYED, and by these presents does GRANT, BARGAIN, SELL and CONVEY unto HNGH Turtle Creek, LLC, a Texas limited liability company ("Grantee"), whose mailing address is________________________________________________, that certain real property situated in the County of Dallas, Texas, more particularly described on Exhibit A attached hereto and made a part hereof for all purposes, together with all improvements located thereon (the "Property").

This conveyance is made and accepted subject to the restriction, running with the Property, and binding upon Grantee and its successors and assigns, that the Property may only be used for hotel and residential condominium purposes.

TO HAVE AND TO HOLD the Property, free, clear and discharged of and from all former grants, charges, taxes, judgments, mortgages and other liens of whatsoever nature, except for the restriction above and encumbrances and matters of title as recorded in the real property records of Dallas County, Texas which are incorporated herein by reference, together with all and singular the rights and appurtenances thereto and in any wise belonging unto the said Grantee, its legal representatives and successors, forever; and Grantor does hereby bind itself, its legal representatives and successors, to Warrant and Forever Defend all and singular the Property unto the said Grantee, its legal representatives and successors, against every person whomsoever lawfully claiming or to claim the same or any part thereof, by, through or under Grantor, but not otherwise.

For the same consideration, but without representation, recourse or warranty, Grantor hereby GRANTS, BARGAINS, SELLS and CONVEYS, to Grantee, (i) any and all rights, titles, powers, privileges, easements, licenses, rights-of-way and interests appurtenant to the Property, (ii) all rights, titles, powers, privileges, licenses, easements, rights-of-way and interests, if any, of Grantor, either at law or in equity, in possession or in expectancy, in and to any real estate lying in the streets, highways, roads, alleys, rights-of-way or sidewalks, open or proposed, in front of, above, over, under, through or adjoining the Property and in and to any strips or gores of real estate adjoining the Property, and (iii) all rights, titles, power, privileges, interest, licenses, easements and rights-of-way appurtenant or incident to any of the foregoing.

*[Signature Page to Follow]*

IN WITNESS WHEREOF, Grantor has executed this Special Warranty Deed on the 1st day of March 2021.

2999TC ACQUISITIONS, LLC,
a Delaware limited liability company
formerly known as MO 2999TC, LLC

By: ______________________
Name: Timothy Barton
Title: President

STATE OF TEXAS

COUNTY OF Dallas

BEFORE ME, the undersigned Notary Public, on this day personally appeared Timothy Barton, known to me to be the person and officer whose name is subscribed to the foregoing instrument on behalf of 2999TC Acquisitions, LLC, and acknowledged to me that he executed the same for the purposes and consideration therein expressed, as the act and deed of said limited liability company and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the 1st day of March 2021.

ASHLEY A. MINES
My Notary ID # 130551641
Expires February 23, 2024

Notary Public in and for the State of Texas
My Commission Expires: 2/23/2024

WHEN RECORDED RETURN TO:

______________________
______________________
______________________

# EXHIBIT A

***PROPERTY***

BEING a tract of land situated in the James A. Sylvester Survey Abstract No. 1383, and the John Grisby Survey, Abstract No. 495, City of Dallas Block No. A/1031, Texas and being all of Lot 4, Block A/1031, of TURTLE CREEK OFFICE ADDITION, an Addition to the City of Dallas, Texas, according to the plat thereof recorded in Volume 2003162, Page 48, Deed Records, Dallas County, Texas.

**EXHIBIT B**

Escrow Agreement

[See attached.]