**THIS ADVISORY AND CONSULTING AGREEMENT** (this **"Agreement"**) is made as of this 7th day of August 2020. by and between **2999 TC Acquisitions, LLC**, its parent companies, related entities, successors, affiliates, and assigns herein individually and collectively referred to as **("Sponsor")**, and **JPA Fund, LLC ("Advisor")**. Sponsor and Advisor are referred to herein individually as a "Party" and collectively as the "Parties."

**WHEREAS**, Sponsor is developing a Mandarin Oriental hotel and private residences in Dallas, Texas (the "Project").

**WHEREAS,** Sponsor has a $32,500,000 senior A&D loan secured by the property from Madison Realty Capital that is in default and in foreclosure proceedings.

**WHEREAS,** Madison Realty Capital will consider a sale of the loan to a third party at a price of approximately $37,000,000, which includes the amount of outstanding principal due, unpaid and accrued nominal interest, any default interest, late fees, legal costs, servicing costs, and court costs and fees.

**WHEREAS,** Sponsor is seeking a capital source to provide Sponsor debt of $37,000,000 to repay the Loan or to acquire the Loan from Madison Realty Capital and restructure the Loan with Sponsor.

**WHEREAS,** Sponsor is also seeking additional capital of $10,000,000 required to fund project predevelopment costs through December 31, 2020.

**WHEREAS**, Advisor is a private equity and debt fund and, together with its affiliates and capital partners, has extensive experience providing equity and debt to mixed use real estate development projects similar in size and nature to that of Sponsor.

**WHEREAS,** Sponsor desires to engage Advisor to provide the $47,000,000 of capital required by Sponsor to complete project predevelopment under the terms and conditions as more fully described and set forth herein (the "Services").

**WHEREAS,** with this Agreement, Sponsor is engaging Advisor on a non-exclusive basis to provide the $47,000,000 of capital required by Sponsor to complete project predevelopment for the term hereof. Sponsor and Advisor herein agree that Advisor will provide such Services to Sponsor, and that Sponsor shall pay Advisor for the Services provided under the terms and conditions set forth in this Agreement.

**NOW, THEREFORE**, in consideration of the mutual agreements and covenants contained herein, and for other good and valuable consideration, the amount and sufficiency of which is hereby mutually acknowledged, the Parties, intending to be legally bound, agree as follows.



**EXHIBIT "20"**

pursuant to its Registered and Exclusive Capital Sources set forth in Appendix A of this Agreement ("Registered Capital Sources") during the term of this Agreement and for a period of Two years following the termination date of this Agreement ("Exclusivity Period"). During the term of this Agreement and the Exclusivity Period, Sponsor shall work exclusively with Advisor with any Registered Capital Sources listed in Appendix A. During the term of this Agreement and the Exclusivity Period, if one or more of the Advisor's Registered Capital Sources closes a transaction with Sponsor then Advisor shall be paid Success Fees by Sponsor on such transaction(s) in accordance with the provisions and compensation structure outlined in Paragraph 4, below ("Financing Success Fee.")

**2. Term.** This Agreement shall become effective August 7, 2020 (the "Effective Date") and shall remain in effect, subject to the terms and conditions of Paragraph 3 below and unless mutually extended in writing shall automatically terminate on August 6, 2021 (the "Termination Date"). The provisions in this Agreement for the Registered Capital Sources outlined in Exhibit A and the Financing Success Fee shall remain operative and in full force and effect during the term of this Agreement and the Exclusivity Period.

**3. Consulting Fee.** For Services to be rendered by Advisor, Sponsor acknowledges and agrees to pay a Consulting Fee of Twenty-Five Thousand Dollars ($25,000) to Advisor upon the execution and effective date of this Agreement. Consulting Fee will be paid by Sponsor to Advisor via a bank wire funds transfer in accordance with the banking and wire transfer instructions provided by Advisor to Sponsor as set forth and described

**4. Financing Success Fees.** Exclusive of the Advisor Consulting Fee as set forth and described above, Advisor shall be paid by Sponsor a Financing Success Fee for any senior debt, mezzanine debt or equity provided Sponsor by any Registered Capital Source of Advisor as set forth in Exhibit A to this Agreement or as may be added to Exhibit A from time to time. The Advisor will be paid a Senior Debt Financing Success Fee of one percent (1.00%) of the total amount of any senior debt provided to Sponsor by a Registered Capital of Advisor. Advisor will be paid a Mezzanine Debt Financing Success Fee of one and three quarters percent (1.75%) of the total amount of any mezzanine debt provided to Sponsor by a Registered Capital Source of Advisor. Advisor will be paid an Equity Financing Success Fee of two- and one-half percent (2.50%) of the total amount of any equity provided to Sponsor by a Registered Capital Source of Advisor,

**5. Consulting Fee Earned.** Sponsor expressly acknowledges and agrees that Advisor Consulting Fee is deemed to be fully earned in the performance of the Services and is payable as set forth herein without any expectation of reimbursement or repayment from Advisor and is expressly not conditioned upon any successful closing of any equity or debt with Sponsor from any Registered Capital Source as presented in Exhibit A of this Agreement as currently constituted or as may be added to Exhibit A from time to time.

Sponsor and shall include but not be limited to, normal and customary travel expenses including but not limited to commercial airfare, ground transportation, lodging, and meals and entertainment; meeting and conference expenses; document creation and reproduction costs, if and when necessary; overnight package delivery; and, courier services. Advisor may submit expense reports to Sponsor at any time for reimbursement but in no event less frequently than monthly, and no later than ten (10) days after the end of each calendar month. Advisor shall be reimbursed by Sponsor for expenses incurred by Advisor within thirty (30) days of receipt and approval of any expense report by Sponsor, provided, however, such reimbursement shall be subject to Sponsor's receipt of Advisor's invoices with copies of receipts attached documenting reimbursable expenses. Sponsor will pay the reimbursed expenses through a bank wire funds transfer using Advisor's bank information and wire instructions provided to Sponsor by Advisor in Exhibit B.

7. **Payment of Fees.** Advisor will be paid all Financing Success Fees in connection with any equity or debt provided to Sponsor, immediately upon the receipt of such funds by Sponsor or at the closing of any transaction where payment of any Financing Success Fee(s) is then deemed earned and shall be due and payable by Sponsor as part of any such closing transaction. in Exhibit B of this Agreement. All Financing Success Fees will be paid by Sponsor to Advisor via a bank wire funds transfer in accordance with the banking and wire transfer instructions provided by Advisor to Sponsor as set forth and described

8. **Survival.** The terms and conditions set forth in "Exhibit A – List of Capital Sources Registered by Advisor" shall survive and remain in full force and effect for a period of two years following the Termination Date of this Agreement. If at any time during the two years following the Termination Date one or more of the Advisor's Registered Capital Sources closes any transaction and makes funds available to Sponsor, Sponsor acknowledges and agrees to pay Advisor a Financing Success Fee by Sponsor on any and all such transaction(s) in accordance with the provisions, percentages, dollar amounts and structure outlined above in Paragraph 4, "Financing Success Fees." In the event that a Registered Capital Source provides capital to Sponsor then the terms and conditions set forth in "Exhibit A – List of Capital Sources Registered by Advisor" shall survive and remain in full force and effect for a period of two years following the closing date of the financing.

9. **Non-Circumvention.** During the term of this Agreement, and for a period of two years following the date of termination of the Agreement, Sponsor agrees not to pursue any transaction with any Registered Capital Source currently listed on or to be added to Exhibit A other than through Advisor, unless on closing of such financing transaction, Sponsor pays or causes to be paid to Advisor all fees and consideration in the amounts and percentages provided for in this Agreement. Sponsor acknowledges and agrees that any breach or attempted breach of this Agreement could or would cause irreparable harm to Advisor for which recovery of damages would be inadequate. Accordingly, Advisor, as the damaged party, will therefore be entitled to obtain timely injunctive relief to protect its rights in addition to all remedies available at law or in equity.

10. **Confidentiality and Non-Disclosure.** Advisor acknowledges and agrees that the business plans

conditions of this Agreement and all other information provided by Advisor including, but not limited to, the identities of any Registered Capital Source is and shall remain confidential (the "Advisor Confidential Information"). Advisor and Sponsor mutually agree, represent, and warrant to one another that they will agree to the following:

a) Maintain the confidentiality of Sponsor and Advisor Confidential Information to ensure that such confidentiality is maintained by each of their individual and collective associates, employees, advisors, subsidiaries, affiliates, and representatives; and,

b) Except as required by law, the Parties will not disclose or allow disclosures of the Confidential Information except for the sole purpose described in Paragraph (a) above, and then only to shareholders, members, partners, advisors, attorneys having client privilege, subsidiaries, affiliates, and representatives and to such other persons on a need to know basis, whom Sponsor and/or Advisor agree in writing may be the recipient of such disclosures; and,

c) Sponsor herein acknowledges and agrees to maintain the confidentiality of Advisor's Confidential Information including but not limited to the Registered Capital Sources as presented herein and shall only disclose Advisor's Confidential Information to Sponsor senior executives, attorneys having client privilege and select Sponsor staff on an absolute need to know basis and will not under any circumstance disclose or allow the disclosure of such to any competitor of Advisor or to any person or entity acting in any such capacity or as may be construed to be a Sponsor broker.

**11. No Representations, Warranties, or Guarantees.** Sponsor herein expressly acknowledges and agrees that no representation, warranty, or guarantee has been referenced, referred to, offered, or made regarding the successful outcome of Advisor's work on behalf of Sponsor. Advisor's work on behalf of Sponsor is on a best effort's basis. Advisor cannot, and has not made any representation, warranty, or guarantee that Advisor will be successful in providing any equity or debt commitments or funding on behalf of Sponsor. Any comments or conversation that may take place regarding the outcome of these or other matters governed by this Agreement are by their very nature a speculative process and Advisor can only provide estimates and opinions given what information is made available to Advisor.

**12. Mutual Indemnification.** Sponsor agrees to indemnify and hold harmless Advisor, its officers, directors, members, managers, working partners, employees, and agents or assignees, from and against any and all claims, demands, causes of action, losses, liabilities, damages, costs, and expenses, including reasonable attorney's fees, arising out of a breach by Sponsor of its obligations under this Agreement, except to the extent attributable to the gross negligence or willful misconduct of Advisor. Advisor agrees to indemnify and hold harmless Sponsor, its officers, directors, employees and agents or assignees, from and against any and all claims, demands, causes of action, losses, liabilities, damages, costs, and expenses, including reasonable attorney's fees, arising out of Advisor's breach of its obligations under this Agreement attributable to the gross negligence or willful misconduct of Advisor, or attributable to any intentional misrepresentations which it makes relating to Sponsor contained in any information which it provides to any Registered Capital Source.

13. **Notices.** Any notice or other communication pursuant to this Agreement shall be in writing and shall be deemed to have been fully given upon receipted courier delivery to the following addresses or such other addresses as the Parties may provide in writing from time to time:

**If to Advisor:**
Christopher A. E. Green
JPA Fund, LLC
1230 Peachtree Street NE
Suite 1900
Atlanta, GA 30309
(404) 664-2598
cgreen@jpafundllc.com

**If to Sponsor:**
Tim Barton
2999 TC Acquisitions, LLC
1755 Wittington Place
Suite 340
Dallas, TX 75234
(972) 385-9934
tbarton@jmjdevelopment.com

14. **Miscellaneous:**

a) This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, executors, subsidiaries, successors, and assigns.

b) This Agreement may be assigned and/or transferred in part or parcel by Advisor upon written authorization from Sponsor, and such written authorization shall not be unreasonably withheld.

c) This Agreement is not assignable or transferable by Sponsor without the express written authorization and consent of Advisor, and such written authorization shall not be unreasonably withheld.

d) This Agreement contains the entire Agreement between the Parties and shall not be modified or terminated except by written amendment duly acknowledged and executed by the Parties.

e) This Agreement shall supersede any and all other agreements between the Parties implied, written, or verbal.

f) This Agreement shall not be construed or interpreted to preclude, limit or prevent Advisor from providing similar services for its own account or to any other individual or entity before, concurrent with or after the Term of this Agreement.

g) Sponsor herein acknowledges and agrees to allow Advisor to earn fees for the placement of equity or debt. Advisor shall disclose all such fees to Sponsor, if requested by Sponsor in writing during the Term of this Agreement and for a period of three (3) years from the date of any termination of this Agreement.

h) This Agreement is declared to have been made under the laws of the State of Delaware and all matters governed by this Agreement shall be construed in accordance with the laws and statutes of the State of Delaware by the appropriate court of jurisdiction.

i) The prevailing party in any litigation required to enforce any provision of this Agreement shall be awarded its reasonable attorney's fees and costs incident to any action that may be taken at law or in equity.

j) In the event that any portion of this Agreement is found to be invalid or not binding for any reason, the invalid or non-binding clause shall have no effect on any remaining portion of the Agreement and all remaining portions shall remain in full effect without respect to the non-binding or invalid clause.

k) The waiver by either Party of the breach of any provision of this Agreement by the other Party shall not operate or be construed as a waiver of any subsequent breach.

l) This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, all of which together shall constitute one and the same instrument. For purposes hereof, a scanned and electronically transmitted, dated digital portable document format (pdf) file copy of this entire Agreement, including but not limited to all Exhibits and partially or fully executed signature pages hereto, shall be deemed to be one and the same and an original.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date first written above and each acknowledges and agrees that this Agreement shall become effective as of the Effective Date as set forth and described herein.

**ADVISOR**

By: [signature]
Christopher A. E. Green
Managing Member

**SPONSOR**

By: [signature]
Name: Timothy Barton
Title: President

**EXHIBIT A**

**LIST OF CAPITAL SOURCES REGISTERED BY ADVISOR**

As constituted below and as added to from time to time is the list of Registered Capital Sources introduced to Sponsor by Advisor during the Term of this Agreement. All of the parties listed below or as added from time to time shall be registered as exclusive Registered Capital Sou of Advisor. For any and all of these exclusive Registered Capital Sources, which shall include the subsidiaries and affiliates, Sponsor shall in no way circumvent or interfere with Advisor with any business dealings involving these exclusive Registered Capital Sources. In the event that one or more of these Registered Capital Sources provides capital for the Subject Project and/or for benefi Sponsor, then Advisor shall be paid all fees due Advisor by Sponsor as defined in and set forth in Agreement.

| **Registered Capital Source** | **Contact** |
| --- | --- |

*Registered Capital Sources to be disclosed upon full execution by the Parties*

## EXHIBIT B

## JPA FUND LLC
## BANK INFORMATION AND WIRE TRANSFER INSTRUCTIONS

[redacted]