John J. Kane (TX Bar No. 24066794)
R. Hale Neilson (TX Bar No. 24116820)
**KANE RUSSELL COLEMAN LOGAN PC**
Bank of America Plaza
901 Main Street, Suite 5200
Dallas, Texas 75202
Tel.: (214) 777-4200
Fax: (214) 777-4299

***Counsel for HNGH Turtle Creek, LLC***

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 21-31954-HDH-11** |
| | § | |
| **2999TC ACQUISITIONS, LLC,** | § | **CHAPTER 11** |
| | § | |
| **DEBTOR.** | § | |
| | § | |

# HNGH TURTLE CREEK, LLC'S OBJECTIONS AND RESPONSES TO 2999TC ACQUISTIONS, LLC'S FIRST REQUESTS FOR PRODUCTION AND INTERROGATORIES TO HNGH TURTLE CREEK LLC

TO: 2999TC Acquisitions, LLC, by and through its counsel of record, Joyce W. Lindauer, 1412 Main Street, Dallas, Texas 75202.

Pursuant to Fed. R. Civ. P. 33, 34, and 36, incorporated into this contested matter by Fed. R. Bankr. P. 9014(c), 7033, and 7034, HNGH Turtle Creek, LLC ("**HNGH**"), by and through its undersigned counsel, herby serves the following *Objections and Responses* (the "**Responses**") to 2999TC Acquisitions, LLC's (the "**Debtor**") *First Requests for Production and Interrogatories to HNGH Turtle Creek LLC* (the "**Requests**") in accordance with applicable rules or orders of the court in the above styled proceeding.



**EXHIBIT "30"**

DATED: November 23, 2021

Respectfully submitted,

**KANE RUSSELL COLEMAN LOGAN PC**

By: */s/ John J. Kane*
John J. Kane (TX Bar No. 24066794)
R. Hale Neilson (TX Bar No. 24116820)
Bank of America Plaza
901 Main Street, Suite 5200
Dallas, Texas 75202
Tel.: (214) 777-4200
Fax: (214) 777-4299
E-mail: jkane@krcl.com
E-mail: hneilson@krcl.com

***Counsel to HNGH Turtle Creek, LLC***

**CERTIFICATE OF SERVICE**

I do hereby certify that I have on this 23rd day of November, 2021, served a copy of the foregoing, by e-mailing the same in accordance with the Federal Rules of Civil Procedure, as applied by the Federal Rules of Bankruptcy Procedure, upon counsel of record as follows:

Joyce W. Lindauer
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, TX 75202
Tel: (972) 503-4033
Fax : (972) 503-4034
Email: joyce@joycelindauer.com

*/s/ John J. Kane*
John J. Kane

## I.
## GENERAL OBJECTIONS

The following general objections apply to all document requests set forth in the Debtor's Requests.

1. HNGH objects to all Requests to the extent they call for material protected by the attorney-client or attorney work product privilege, or were prepared in anticipation of litigation.

2. HNGH objects to the Debtor's instructions because they are overbroad and require production of documents from a temporal scope that grossly exceeds the scope relevant to the Contested Matters, as that term is defined in the *Stipulation and Agreed Scheduling Order with Respect to (I) HNGH Turtle Creek, LLC's Motion to Dismiss and (II) Motion for Relief from Stay, and (III) Debtor's Motion for Sanctions and (IV) Motion to Enforce Automatic Stay* (the "**Agreed Scheduling Order**"). If HNGH produces documents outside of a temporal scope identified in any of its objections to the Debtor's Requests, it does not waive its objection and reserves all rights to enforce its objection in any discovery hearing or otherwise.

3. HNGH objects to the Debtor's instructions to the extent that they seek documents already in the Debtor's possession, or documents that are readily accessible to the Debtor on court dockets.

4. HNGH objects to the Debtor's instructions to the extent that require production of documents related to claims and causes of action dismissed with prejudice and released by Barton and the Debtor in prior legal proceedings and contractual agreements. Debtor's Requests must be related to the Contested Matters.

5. HNGH objects to the Debtor's definition of "Related Entity" because it is so overly broad as to lose all meaning and unnecessarily expands to the scope of discovery to individuals and entities with little to no relationship to the Contested Matters.

## II.

## RESPONSES AND OBJECTIONS TO REQUESTS FOR PRODUCTION

REQUEST NO. 1: Please produce all documents and/or communications to or from the Dallas County Clerk in reference to the Deed in Lieu.

> *RESPONSE: Creditor objects to this request because the temporal scope of the request is unduly burdensome and includes a time period not relevant to any of the Contested Matters. Creditor will produce all relevant documents and communications from September 1, 2021 – November 2, 2021 in its custody and control responsive to this request.*

REQUEST NO. 2: Please produce all documents/and or communications evidencing any attempt to rescind the Deed in Lieu.

> *RESPONSE: Creditor objects to this request because the temporal scope of the request is unduly burdensome and includes a time period not relevant to any of the Contested Matters. Creditor will produce all relevant documents and communications in its custody or control responsive to this request for the time period from October 29, 2021 through November 2, 2021.*

REQUEST NO. 3: Please produce all documents/and or communications related to any requested, proposed, or estimated valuation of the Property, such as an opinion of value or appraisal, including as developed.

> *RESPONSE: Creditor will produce all relevant documents and communications in its custody or control responsive to this request.*

REQUEST NO. 4: Please produce all documents and/or communications related to any solicitation, offer, or agreement to or from any Person interested in acquiring or investing in all or any part of the Property or entering into any partnership or joint venture related to the Property including its development.

> *RESPONSE: Creditor objects to this request because the temporal scope of the request is unduly burdensome and includes a time period not relevant to the Contested Matters. Creditor will produce all relevant documents and communications in its custody or control responsive to this request for the time period from March 1, 2021 through October 29, 2021.*

REQUEST NO. 5: Please produce all documents and/or communications related to any solicitation, offer, or agreement to or from any Person interested in acquiring or investing in all or any part of your secured claim, Note, or Loan Documents.

> *RESPONSE: Creditor objects to this request because the temporal scope of the request is unduly burdensome and includes a time period not relevant to the Contested Matters. Creditor will produce all relevant documents and communications in its custody or control responsive to this request for the time period from March 1, 2021 through October 29, 2021.*

REQUEST NO. 6: Please produce copies of all contracts, agreements, loans, etc. between you and Debtor implicating or involving the Property.

*RESPONSE:* *Creditor objects to this request because it is unduly burdensome and seeks documents already in the Debtor's possession, custody, and control. Subject to the foregoing objection, Creditor will produce all relevant documents in its custody or control responsive to this request.*

REQUEST NO. 7: Please produce all documents and other financial instruments in your custody, control or possession relating to such contracts, agreements, and/or loans purportedly evidencing any secured or unsecured debts owed to you by Debtor which may include but is not limited to promissory notes, security agreements, guaranty statements, financing statements, fixture filings, deeds in lieu of foreclosure, forbearance agreements and/or extensions, etc.

*RESPONSE:* *Creditor objects to this request because it is unduly burdensome and seeks documents already in the Debtor's possession, custody, and control. Subject to the foregoing objection, Creditor will produce all relevant documents in its custody or control responsive to this request.*

REQUEST NO. 8: Please produce all documents and/or communications between you and any party evidencing any "verbal offer" to Debtor for acquisition of the Property.

*RESPONSE:* *Creditor objects to this request as unduly burdensome to the extent it seeks documents already in the Debtor's possession, custody, and control, such as communications between Creditor and the Debtor, or communications between "any party" and the Debtor evidencing a "verbal offer" for the Property. Subject to the foregoing objection, Creditor will produce all relevant documents in its custody or control responsive to this request.*

REQUEST NO. 9: Please produce all documents and/or communications between you and any party evidencing that no development work has occurred in relation to the Property.

*RESPONSE:* *Creditor will produce all relevant documents and communications in its custody or control responsive to this request.*

REQUEST NO. 10: Please produce an accounting of all payments tendered on the promissory note referenced in the Motion to Dismiss Case as well as an accounting of all allegedly accrued and unpaid interest and "other obligations" under the Forbearance Agreement.

*RESPONSE:* *Creditor objects to this request because the temporal scope of the request is unduly burdensome and includes a time period not relevant to the Contested Matters. The Note principal balance was restated in the Forbearance Agreement effective December 31, 2020, and the amount stipulated to by the Debtor and Barton at that time. Creditor will produce an accounting responsive to this request for the period of time from December 31, 2020 through October 29, 2021.*

REQUEST NO. 11: Please produce all documents and/or communications evidencing any study performed or commissioned by you investigating the effects of COVID 19 on the hotel and hospitality industry, increased costs of development due to "supply chain pressures," and their impact on the value of the Property.

*RESPONSE:* *Creditor objects to this request because the phrase "evidencing any study performed or commissioned by you investigating the effects of COVID 19" is vague. Creditor is unclear precisely what*

*Debtor is requesting. Creditor will not produce documents responsive to this request, but suggests Debtor perform internet searches for articles addressing the slower than expected rebound in the hospitality industry post-Covid 19. Similarly, articles addressing the effects of supply chain issues on the pace of new hotel development are also abundant and readily available online. As neither are studies "performed or commissioned by you" but performed or commissioned by other third-parties, they will not be produced.*

REQUEST NO. 12: Please produce all documents purportedly evidencing Debtor's lack of authority to file for bankruptcy relief.

*RESPONSE: Creditor objects to this request because it is harassing. Creditor requested, in its Request for Production No. 20, that Debtor "produce all documents evidencing your authority to file for bankruptcy relief, including applicable company agreements and necessary authorizations." Creditor awaits Debtor's production of documents and will hold Debtor to its burden of proof. If Debtor's production evidences Debtor's lack of authority, such documents will already be in the custody and control of the Debtor, and so no further production is required.*

REQUEST NO. 13: Please produce documents and/or communications that evidence any relationship, other than common entity ownership, management, membership, agency, or employment, between the instant bankruptcy proceedings and any other bankruptcy proceeding before any court filed by said common owner, manager, or member.

*RESPONSE: Creditor objects to this request because documents responsive to it are readily available to Debtor. The Debtor's own bankruptcy petition identifies six affiliate bankruptcy filings. Those entities' petitions identify even more affiliate filings. As referenced in exhibits to the Motion to Dismiss, some of those cases include litigation involving allegations related to the Debtor and the Property. Similarly, in the bankruptcy case of 2999TC, LP, that debtor filed plans of reorganization that hinge—in their entirety—on the Debtor's successful sale or development of the Property. All such pleadings are equally accessible to the Debtor, whose counsel of record is actively involved in substantially all of the cases referenced in the Motion to Dismiss.*

REQUEST NO. 14: Please produce documents and/or communications that evidence any impermissibility of any bankruptcy filed by any owner, manager, member, agent, and/or employee affiliated with Debtor on behalf of any corporate entity.

*RESPONSE: Creditor objects to this request because it seeks irrelevant information. A debtor may be permitted to file for bankruptcy relief, and the filing may still be in bad faith and grounds for dismissal or relief from stay.*

REQUEST NO. 15: Please produce documents and/or communications that evidence the purported non-existence of any of the potential purchasers and refinancing lenders referenced by Debtor prior to the October 29, 2021 Forbearance Agreement Maturity Date.

*RESPONSE: Creditor objects to this request because the temporal scope of the request is unduly burdensome and includes a time period not relevant to the Contested Matters. Creditor further objects to this request because it fails to identify parameters that would render a response relevant. For instance, the existence of a potential purchaser interested in acquiring the Property for $10 million would render Creditor incapable of producing documents "evidenc[ing] the purported non-existence of any potential purchaser…prior*

*to the October 29, 2021 Forbearance Agreement Maturity Date". While Creditor assumes there were such potential "low ball" purchasers interested in acquiring the Property, the Debtor presented no purchaser or refinancing lender ready, willing, and able to close a sale or refinance transaction <u>prior to</u> the Forbearance Agreement Maturity Date. Subject to the foregoing objection, Creditor will produce responsive documents and/or communications relevant to this request for the time period from March 1, 2021 through October 29, 2021.*

<u>REQUEST NO. 16:</u> Please produce documents and/or communications that evidence any form of "misrepresentation" of the persons or entities appearing on the Debtor's List of 20 Largest Unsecured Creditors.

*<u>RESPONSE:</u> Creditor objects to this request to the extent it seeks documents already in the custody or control of the Debtor, or that are readily available to the Debtor on a public court docket. Creditor directs Debtor to compare Debtor's List of 20 Largest Unsecured Creditors [Dkt. No. 7] and its amended Debtor's List of 20 Largest Unsecured Creditors [Dkt. No. 31]. Though both were filed under penalty of perjury and executed by Mr. Barton as Debtor's President, the debts and creditors included on each are materially different and confirm that, at the time it filed its Motion to Dismiss, Creditor was correct that certain purported creditors were not, in fact, unsecured creditors of the Debtor.*

<u>REQUEST NO. 17:</u> Please produce documents and/or communications evidencing that "Debtor had zero intentions of complying" with any agreement between the Debtor and Respondent.

*<u>RESPONSE:</u> Creditor objects to this request because it is overly broad and fails to identify to what "agreement between the Debtor and Respondent" it relates. Further, Creditor objects to this request because the temporal scope of the request is unduly burdensome and includes a time period not relevant to the Contested Matters. Finally, Creditor objects to this request because it seeks documents already in the Debtor's possession, or that are readily available to the Debtor on a public court document. Subject to the foregoing objections, Creditor will produce all relevant documents and communications in its custody or control that evidence Debtor's pre-meditated disregard for its obligations under the Forbearance Agreement.*

<u>REQUEST NO. 18:</u> Please produce all Documents including any proposed, final, or executed agreements and communications related to any sale or acquisition of the Property, your or our Related Person's acquisition of the Property, you or your Related Person acquiring control of the Property, any sale or acquisition of an interest in the Property, lease of the Property, development the Property, management of the Property, operation of the Property, investment in the Property, investment in any Related Party that owns or will own the Property, financing (debt or equity) related to the Property or its development, marketing the Property, and any fund or investment vehicle related to the Property.

*<u>RESPONSE:</u> Creditor objects to this request to the extent it seeks information related to any claims or causes of action previously asserted by the Debtor and/or Mr. Barton against Creditor, which were dismissed with prejudice or contractually waived and released. Subject to the foregoing objection, Creditor will produce all relevant documents in its custody or control responsive to this request for the time period from March 1, 2021 through October 29, 2021.*

REQUEST NO. 19. Any and all draft, revised, and final Documents including any proposed, final, or executed agreements sent to, produced by, or received from any agent, broker, finder, consultant, or other Person related to Request No 18 including the marketing of the Property or listing of the Property for sale.

> *RESPONSE: Creditor objects to this request to the extent it seeks information related to any claims or causes of action previously asserted by the Debtor and/or Mr. Barton against Creditor, which were dismissed with prejudice or contractually waived and released. Subject to the foregoing objection, Creditor will produce all relevant documents in its custody or control responsive to this request for the time period from March 1, 2021 through October 29, 2021.*

REQUEST NO. 20. Any and all communications with any agent, broker, finder, consultant, or other Person related to Request No 18 or Request No. 19.

> *RESPONSE: Creditor objects to this request to the extent it seeks information related to any claims or causes of action previously asserted by the Debtor and/or Mr. Barton against Creditor, which were dismissed with prejudice or contractually waived and released. Subject to the foregoing objection, Creditor will produce all relevant documents in its custody or control responsive to this request for the time period from March 1, 2021 through October 29, 2021.*

REQUEST NO. 21. Any and all communications sent to, received from, or copying the Escrow Agent (including as received by, sent to, or copy any Related Party or counsel of HNGH) including but not limited to any notices of default related to the Property, the Forbearance Agreement, the Escrow Agreement, or the Deed including any default of the Forbearance Agreement.

> *RESPONSE: Creditor objects to this request because the temporal scope of the request is unduly burdensome and includes a time period not relevant to the Contested Matters. Creditor will produce all relevant documents in its custody or control responsive to this request for the time period from August 1, 2021 through October 29, 2021.*

REQUEST NO. 22. Any and all documents including any agreements between HNGH (including its Related Parties and counsel) and the Escrow Agent or its Related Parties as related to the Property, the Forbearance Agreement, the Escrow Agreement, or Deed.

> *RESPONSE: Creditor objects to this request because the temporal scope of the request is unduly burdensome and includes a time period not relevant to the Contested Matters. Creditor will produce all relevant documents and communications in its custody or control responsive to this request for the time period from August 1, 2021 through October 29, 2021.*

REQUEST NO. 23. Any and all Documents and communications with any Person including transmissions, delivery, filings, and recordings, along with all confirmation of the foregoing related to the filing, delivery, transmission, and/or recording (including whether recorded electronically, in person, or by any other means) of the Deed sent to or received from the Dallas County Clerk or

recorded or filed in the deed / real property records of Dallas County, Texas including as sent from the Escrow Agent and from or to any Person working for, with, or on behalf of Dallas County.

> *RESPONSE:* *Creditor objects to this request because the temporal scope of the request is unduly burdensome and includes a time period not relevant to the Contested Matters. Creditor will produce all relevant documents and communications in its custody or control responsive to this request for the time period from August 1, 2021 through October 29, 2021.*

REQUEST NO. 24_. Copies of any tracking numbers, delivery confirmations, return receipts, delivery or receipt confirmations for any email, receipts, stamped envelops, or other Documents showing any sending date, deposit date, receipt date, delivery confirmation, or receipt confirmation related Request No 22 and Request No. 23

> *RESPONSE:* *Creditor will produce all relevant documents in its custody or control responsive to this request.*

REQUEST NO.25 Any and all draft, revised, or final Documents received from or sent to the Escrow Agent including sent or received from any Related Party including counsel of HNGH related to the Property, the Forbearance Agreement, the Escrow Agreement, or the Deed.

> *RESPONSE:* *Creditor objects to this request because the temporal scope of the request is unduly burdensome and includes a time period not relevant to the Contested Matters. Creditor will produce all relevant documents and communications in its custody or control responsive to this request for the time period from August 1, 2021 through October 29, 2021.*

REQUEST NO. 26. Any and all Documents and communications with any Person related to the filing or recording of the Deed including any requests, notices, or descriptions of any process related to the recording or filing of the Deed.

> *RESPONSE:* *Creditor objects to this request because the temporal scope of the request is unduly burdensome and includes a time period not relevant to the Contested Matters. Creditor will produce all relevant documents and communications in its custody or control responsive to this request for the time period from August 1, 2021 through October 29, 2021.*

REQUEST NO.27. Any and all meeting notes taken at or related to any discussion or meeting between Vipin Nambiar and Tim Barton including the in person meeting that occurred between then including counsel for HNGH or its Related Parties on or about November 27, 2021 at the W Hotel.

> *RESPONSE:* *Creditor objects to this request to the extent it seeks information about a meeting to take place in the future. Creditor will produce all relevant documents in its custody or control responsive to this request with the assumption that Debtor intended to request information related to a meeting that took place on or about October 27, 2021 at the W Hotel.*

REQUEST NO. 28. Any and all communications by, between, or copying HNGH or its Related Parties and any Person regarding any valuation or appraisal of the Property.

*RESPONSE: Creditor objects to this request because it is redundant.*

REQUEST NO. 29. Any and all communications by, between, or copying HNGH or its Related Parties and any Person regarding any financial (including costs, expenses, income, revenue, and returns) projections, pro forma, budget, or estimates related to the Property including the holding, management, sale or lease of the Property including if developed).

*RESPONSE: Creditor will produce all relevant documents in its custody or control responsive to this request.*

REQUEST NO. 30 Any and all communications by, between, or copying HNGH or its Related Parties related to the Mandarin Oriental Hotel Group.

*RESPONSE: Creditor objects to this request because it is overly broad in temporal scope. Creditor will produce all relevant documents in its custody or control responsive to this request for the time period from March 1, 2021 through October 29, 2021.*

REQUEST NO. 31. Any and all communications by, between, or copying HNGH or its Related Parties related to branding the Property.

*RESPONSE; Creditor objects to this request because it is overly broad in temporal scope. Creditor will produce all relevant documents in its custody or control responsive to this request for the time period from March 1, 2021 through October 29, 2021.*

REQUEST NO. 32. Any and all Documents in HNGH or its Related Person's possession or control related to the Mandarin Oriental Hotel Group.

*RESPONSE: Creditor objects to this request because it is overly broad in temporal scope and is not specifically related to the Property. Creditor will produce all relevant documents in its custody or control responsive to this request for the time period from March 1, 2021 through October 29, 2021.*

REQUEST NO. 33. Any and all Documents in HNGH or its Related Person's possession or control related to the branding of the Property under any name excluding the Mandarin Oriental Hotel Group.

*RESPONSE: Creditor objects to this request because it is redundant. Creditor's response to Request 31 will inherently satisfy this request.*

REQUEST NO.34. Any and all communications by, between, or copying HNGH or its Related Parties related and Documents in HNGH or its Related Person's possession or control which discuss, identify, involve, or relate to John Dowdall, Pam Kirby, Palisades TC LLC, Aju Hotels, Minkowitz Development, or any Related Person of the foregoing.

*RESPONSE: Creditor objects to this request because it is overly broad in temporal scope. Creditor objects to this request to the extent it seeks information related to claims against Creditor that have been dismissed*

*with prejudice or contractually waived and released. Subject to the foregoing objections, Creditor will produce all relevant documents in its custody or control responsive to this request for the time period from March 1, 2021 through October 29, 2021.*

REQUEST NO. 35. Any and all Documents in HNGH or its Related Parties' control regarding any financial (including costs, expenses, income, revenue, and returns) projections or estimates related to the Property including as is or as may be developed, sold, held, or leased.

*RESPONSE: Creditor objects to this request because it is redundant. To the extent it is not, Creditor will produce all relevant documents in its custody or control responsive to this request.*

REQUEST NO. 36. Any and all communications from, to, or copying HNGH or its Related Parties (including internal communications) related to any time of day any payment was due to be received as related to the Loan or Forbearance Agreement including but not limited to communications with Debtor or its Related Parties and communications with any other Person.

*RESPONSE: Creditor will produce all relevant documents in its custody or control responsive to this request.*

REQUEST NO. 37. Any communications and Documents related to the Loan Purchase Agreement.

*RESPONSE: Creditor objects to this request because it exclusively seeks documents that are not relevant to the Contested Matters.*

REQUEST NO. 38. Any communications, Documents, and Written Agreements with Madison related to the Property.

*RESPONSE*: *Creditor objects to this request because it exclusively seeks documents that are not relevant to the Contested Matters.*

REQUEST NO. 39. Any communications which specifically identifies or discusses the time of day any payment is or was due under the Forbearance Agreement.

*RESPONSE*: *Creditor will produce all relevant documents in its custody or control responsive to this request.*

REQUEST NO. 40. Any communications which specifically identifies or discusses the time of day any payment is or was due under the Loan.

*RESPONSE*: *Creditor will produce all relevant documents in its custody or control responsive to this request.*

REQUEST NO. 41. Any Document which specifically identifies or discusses the time of day any payment is or was due under the Forbearance Agreement.

*RESPONSE*: *Creditor will produce all relevant documents in its custody or control responsive to this request.*

REQUEST NO 42. Any communications which discusses or identifies any cure period related to the Forbearance Agreement or Loan or any right of the Debtor to cure any default including a payment default related to the Forbearance Agreement or Loan.

> *RESPONSE*: *Creditor will produce all relevant documents in its custody or control responsive to this request.*

REQUEST NO. 43. Any and all communications with Madison including each of their Related Parties related to the investment in or purchase of all or any part of the Loan by HNGH from Madison including each of their Related Parties.

> *RESPONSE*: *Creditor objects to this request because it exclusively seeks documents not relevant to the Contested Matters.*

REQUEST NO. 44. Any and all draft, revised, or final Documents related to the investment in or purchase of all or any part of the Loan by HNGH from Madison.

> *RESPONSE:* *Creditor objects to this request because it exclusively seeks documents not relevant to the Contested Matters.*

## III.
## RESPONSES AND OBJECTIONS TO INTERROGATORIES

INTERROGATORY NO. 1: Identify with specificity the manner of calculation of all monies alleged to be due and owing to Creditor including all principal, interest, fees, penalties, etc. accrued both pre- and post-petition.

> *ANSWER: Please refer to paragraphs 10 and 11 of the Motion to Dismiss, along with the Note and Forbearance Agreement, which set forth the manner of calculation of all monies due and owing to Creditor including all principal, interest, fees, penalties, etc. accrued pre-petition, with the exception of attorneys' fees, costs, and expenses associated with Creditor's efforts to collect amounts due and owing from Debtor, which have not yet been finally calculated. As indicated in the above Responses, Creditor will provide Debtor an accounting of amounts due and owing as of the Petition Date.*
>
> *As detailed in the Forbearance Agreement, failure to timely pay at maturity is not a default subject to any cure period, and so Creditor was entitled to begin accruing default interest—and in fact began accruing default interest at the Note default rate—immediately upon Debtor's failure to timely pay all amounts due and owing under the Note at 1:00 p.m. (New York time) on October 29, 2021. Creditor had no obligation to provide Debtor with a Notice of Default or any similar notice before accruing default interest, as Debtor expressly waived its right to such notice in paragraph 5 of the Note.*
>
> *Post-petition, Creditor shall be entitled to collect default interest at the Note default rate and all fees, costs, and expenses incurred, up to the value of its collateral, enforcing its claim against the Debtor. If Creditor is undersecured by the Property, Creditor shall be entitled to accrue interest, costs, and expenses in accordance with the Note, Forbearance Agreement, and applicable bankruptcy law.*
>
> *If, however, the Deed-in-Lieu is deemed appropriately recorded and Creditor's claim satisfied, then Creditor's claim against the Debtor shall be reduced or satisfied in accordance with the express terms and conditions of the Forbearance Agreement, Escrow Agreement, and Note.*

INTERROGATORY NO. 2: Describe with specificity the Creditor's actions involving solicitation for purchase of its secured claim, Note, and Loan Documents, whether initiated by Creditor or a third-party entity.

> *ANSWER:* ***THIS ANSWER CONTAINS CONFIDENTIAL INFORMATION NOT SUBJECT TO DISCLOSURE TO THIRD PARTIES. THE CONTENTS OF THIS RESPONSE ARE PROVIDED ONLY AS REQUIRED BY APPLICABLE LAW.***
>
> *In February and March, 2020, Barton sought entry into what became the Forbearance Agreement in order to avoid foreclosure. As an inducement to Creditor's entry into the Forbearance Agreement, Barton*

*introduced Creditor to a potential investor or purchaser of the Note named Carlos Montoya, Managing Member of Tall Ship DTC LLC, a Wyoming limited liability company ("Tall Ship") which holds itself out as a "Private Debt Issuance Platform and Financial Transaction Intermediary based in Chicago, Illinois." Barton claimed Tall Ship had conducted all diligence, was a large family office, and had an arrangement with the Debtor to help facilitate a payoff for the Creditor through a note purchase transaction. Creditor worked in good faith per Barton's request, and signed a Loan Purchase Offer in March, 2021 pursuant to which Tall Ship had an exclusive 7 day period to conduct due diligence and negotiate definitive documents with Creditor to acquire the Note for $38.5 million. The Loan Purchase Offer contemplated a closing 2 days after the 7 day diligence period. Creditor devoted considerable time and resources to fully negotiate a definitive Loan Purchase Agreement with Tall Ship, which included a potential "Borrower and Guarantor Release". After exchanging drafts of the definitive documents, Montoya and Barton represented that the terms of the documents were acceptable. The price remained $38.5 million. Creditor delivered executed copies of the applicable documents and requested countersigned copies so that the parties could proceed to closing. Tall Ship failed to perform and never executed the agreements. Creditor was left with the impression that Tall Ship's offer was not credible after all, and that Barton and Montoya corroborated to delay Creditor's execution of its rights and remedies under the Note.*

*In October, 2021, Creditor was approached by James Dondero of NexPoint Bank, a real estate investor with a reputation for capable execution. Creditor executed a confidentiality agreement with NexPoint on October 14, 2021 to perform diligence related to the purchase of Creditor's Note. After conducting due diligence, NexPoint verbally offered Creditor $36 million to acquire the Note. Creditor communicated that $36 million was an inadequate offer, and negotiations ceased.*

*On October 30, 2021, Creditor received a phone call from Mehrdad Moayedi, the founder of Centurion American, a large real estate developer in Dallas, who verbally offered Creditor $36 million to acquire the Note. It is important to note that Mr. Moayedi recently acquired 2505 Turtle Creek, a competing development site for a reported price of $325 per square foot, which would imply a value of approximately $35 million for the Property. Mr. Moayedi's offer was a cash offer, with no litigation contingencies. Mr. Moayedi previously discussed acquiring the Note from Creditor, but never previously made an offer.*

*From time to time other third parties inquired about buying Creditor's Note. With the exception of the offers detailed above, those inquiries were not credible, were made in casual conversation, or were not otherwise pursued by the casually inquiring party.*

*As evidenced by the Tall Ship exchange, Creditor did engage in good faith efforts to sell the Note. In so doing, Creditor desired to mitigate its risks associated with the Note given Barton's litigious behavior and reputation for using bankruptcy as a means of delaying lenders from exercising their rights and remedies.*

INTERROGATORY NO. 3: Identify any party allegedly making an offer for purchase of Creditor's secured claim, Note, and Loan Documents, the amount of said offer, the disposition of said offer, and the reason for acceptance or rejection of said offer.

*ANSWER: See Response to Interrogatory No. 2.*

INTERROGATORY NO. 4: Describe with specificity all efforts taken to value the Property to include, but not be limited by, any conduct of or commission of any appraisal or valuation study or report.

*ANSWER*: ***THIS ANSWER CONTAINS CONFIDENTIAL INFORMATION NOT SUBJECT TO DISCLOSURE TO THIRD PARTIES. THE CONTENTS OF THIS RESPONSE ARE PROVIDED ONLY AS REQUIRED BY APPLICABLE LAW.***

*Prior to Creditor's ownership of the Note, Madison Realty Capital commissioned Cushman & Wakefield to prepare an appraisal of the Property. Cushman & Wakefield of Texas, Inc. determined in a report dated August 22, 2019, that the Property was worth approximately $44 million assuming a 6 month marketing and sale process.*

*In November 2020, in response to frivolous litigation asserted by Debtor and Barton against Creditor, Vipin Nambiar, and others, Creditor ordered broker opinions of value (each a "BOV") from Newmark, JLL, and Goodwin Advisors, all reputable brokerage firms with seasoned professionals in the Dallas market. Those BOV's included median Property values between $27 million to $32.3 million. BOV's typically reflect current market conditions and market liquidity.*

*In October, 2021, anticipating Barton's failure to refinance the Note and failure to close a sale of the Property in time to pay Creditor in full on October 29, 2021, Creditor requested an opinion of value from Newmark, a reputable broker with significant coverage of Dallas commercial real estate. Newmark issued an opinion with a range of values for the Property from approximately $33.4 million to approximately $37.5 million, with a median value of $35.4 million.*

*In November, 2021, due to Barton's failure to timely refinance the Note and failure to lcose a sale of the Property in time to pay Creditor in full on the October 29, 2021 maturity date, Creditor requested a BOV from JLL, a reputable global brokerage firm with a team among the most significant brokers of real estate in the Property's immediate vicinity. JLL issued a BOV with a range of values for the Property between approximately $39.3 million to approximately $43 million, with a rational value of approximately $41.4 million.*

*As evidenced from appraisals and BOVs from before and after the COVID-19 crisis, the Property's value likely ranges from $37 million to $43 million. Even at the high end of the valuation range, the Property value is insufficient to satisfy Creditor's claim.*

INTERROGATORY NO. 5: Identify each Person who provided answers to these interrogatories and specify which interrogatory answer was provided by which person.

*ANSWER: The interrogatories were prepared by Vipin Nambiar with assistance from counsel.*