# LIMITED LIABILITY COMPANY AGREEMENT
# OF
# MO 2999TC, LLC

This Limited Liability Company Agreement (together with the schedules attached hereto, this "Agreement") of MO 2999TC, LLC (the "Company"), is entered into by MO 2999TC MZ, LLC, a Delaware limited liability company, as the sole equity member (the "Member"), and Steven P. Zimmer, as the Independent Manager (as defined on Schedule A hereto). Capitalized terms used and not otherwise defined herein have the meanings set forth on Schedule A hereto.

The Member, by execution of this Agreement, hereby forms the Company as a limited liability company pursuant to and in accordance with the Delaware Limited Liability Company Act (6 Del. C. § 18-101 et seq.), as amended from time to time (the "Act"), and this Agreement, and the Member and the Independent Manager hereby agree as follows:

Section 1. Name.

The name of the limited liability company formed hereby is MO 2999TC, LLC.

Section 2. Principal Business Office.

The principal business office of the Company shall be located at 1755 Wittington Place, Suite 340, Dallas, Texas 75234 or such other location as may hereafter be determined by the Member.

Section 3. Registered Office.

The address of the registered office of the Company in the State of Delaware is c/o Incorp Services, Inc., 919 North Market Street, Suite 950, Wilmington, Delaware 19801.

Section 4. Registered Agent.

The name and address of the registered agent of the Company for service of process on the Company in the State of Delaware are Incorp Services, Inc., 919 North Market Street, Suite 950, Wilmington, Delaware 19801

Section 5. Members.

(a) The mailing address of the Member is set forth on Schedule B attached hereto. The Member was admitted to the Company as a member of the Company upon its execution of a counterpart signature page to this Agreement.

(b) Subject to Section 9(d), the Member may act by written consent.



EXHIBIT 25

Blumberg No. 5119

Section 6. Certificates.

Vance McMurry of McMurry Law, PLLC is hereby designated as an "authorized person" within the meaning of the Act, and has executed, delivered and filed the Certificate of Formation of the Company with the Secretary of State of the State of Delaware. Upon the filing of the Certificate of Formation with the Secretary of State of the State of Delaware, his powers as an "authorized person" ceased, and the Member thereupon became the designated "authorized person" and shall continue as the designated "authorized person" within the meaning of the Act. The Member or an Officer shall execute, deliver and file any other certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in Texas and in any other jurisdiction in which the Company may wish to conduct business.

The existence of the Company as a separate legal entity shall continue until cancellation of the Certificate of Formation as provided in the Act.

Section 7. Purpose.

(a) The sole purpose of the Company is limited to the following:

(i) to acquire the real property located at 29999 Turtle Creek Blvd., Dallas, Dallas County, Texas which includes approximately 2.4 acres and a 37,000 square foot building (which will be demolished) ("Property") and to take such action necessary to construct, develop, operate, manage, market, and sell (in whole or in part) a mixed use project including a luxury hotel and residences (collectively, "Project") including by engaging certain development and other companies to develop the Project and a luxury hotel company to manage all or part of the Project upon completion;

(ii) to obtain any and all necessary debt and equity financing in furtherance of the purpose above and execute any necessary agreements and deliver all necessary documents for the acquisition of the Property including a loan in the principal amount of $32,500,000.00 for the acquisition of the Property ("Loan") from 2999 Turtle Creek 1 LLC, a Delaware limited liability company ("Lender"), including its related entities; and

(iii) to engage in any lawful act or activity and to exercise any powers permitted to limited liability companies organized under the laws of the State of Delaware that are related or incidental to and necessary, convenient or advisable for the accomplishment of the above-mentioned purposes.

(b) The Company is hereby authorized to execute, deliver and perform, and the Member or any Officer on behalf of the Company is hereby authorized to execute and deliver, the Basic Documents, and all documents, agreements, certificates, or financing statements contemplated thereby or related thereto, all without any further act, vote or approval of any other Person notwithstanding any other provision of this Agreement, the Act or applicable law, rule or regulation. The foregoing authorization shall not be deemed a restriction on the powers of the Member or any Officer to enter into other agreements on behalf of the Company.

(c) The Property shall be a "single asset real estate" as defined in, and pursuant to, Section 101(51B) of the United States Bankruptcy Code.

Section 8. Covenants and Restrictions.

(a) Single Purpose Entity Provisions

1. Company does not own and will not own any asset or property other than (i) the Property and (ii) incidental personal property necessary for the ownership, management or operation of the Property.

2. Company does not engage and will not engage in any business other than the ownership, management and operation of the Property and Company will conduct and operate its business as presently conducted and operated.

3. Company is not a party to and will not enter into or be a party to any contract or agreement with any affiliate of Company, any constituent party of Company or any affiliate of any constituent party, except in the ordinary course of business and on terms and conditions that are disclosed to Lender in advance and that are intrinsically fair, commercially reasonable and substantially similar to those that would be available on an arms-length basis with third parties other than any such party.

4. Company will not incur any indebtedness other than (i) the Loan and (ii) unsecured trade payables and operational debt not evidenced by a note and in an aggregate amount not exceeding one percent (1%) of the original principal amount of the Loan at any one time; provided that any indebtedness incurred pursuant to sub-clause (ii) shall be (x) not more than sixty (60) days past due and (y) incurred in the ordinary course of business. No indebtedness other than the Loan may be secured (subordinate or pari passu) by the Property.

5. Company will not make any loans or advances to any individual, sole proprietorship, partnership, limited liability partnership, joint venture, trust, unincorporated organization, association, corporation, limited liability company, institution, entity, party or government (whether territorial, national, federal, state, county, city, municipal or otherwise, including, without limitation, any instrumentality, division, agency, body or department thereof) (including any affiliate or constituent party) (a "**Person**"), and shall not acquire obligations or securities of its affiliates.

6. Company is and will remain solvent and Company shall pay its debts and liabilities (including, as applicable, shared personnel and overhead expenses) from its assets as the same shall become due.

7. Company will do all things necessary to observe organizational formalities and preserve its existence, and Company will not (i) terminate or fail to comply with the provisions of its organizational documents, or (ii) unless Lender has consented, amend, modify or otherwise change this Agreement or other organizational documents.

8. Company will maintain all of its accounts, books, records, financial statements and bank accounts separate from those of its affiliates and any other Person. Company's assets have not been and will not be listed as assets on the financial statement of any other Person; provided, however, that Company's assets may be included in a consolidated financial statement of its affiliates if (i) appropriate notation shall be made on such consolidated financial statements to indicate the separateness of Company and such affiliates and to indicate that Company's assets and credit are not available to satisfy the debts and other obligations of such affiliates or any other Person, and (ii) such assets shall be listed on Company's own separate balance sheet. Company shall and will file its own tax returns (to the extent Company is required to file any such tax returns) and will not file a consolidated federal income tax return with any other Person. Company has maintained and shall maintain its books, records, resolutions and agreements as official records.

9. Company will be and at all times will hold itself out to the public as, a legal entity separate and distinct from any other entity (including any affiliate of Company or any constituent party of Company), has corrected and shall correct any known misunderstanding regarding its status as a separate entity, has conducted and shall conduct business in its own name, has not identified and shall not identify itself or any of its affiliates as a division or part of the other, and has maintained and shall maintain and utilize separate stationery, invoices and checks bearing its own name.

10. Company will maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations.

11. Neither Company nor any constituent party will seek or effect the liquidation, dissolution (to the fullest extent permitted by law), winding up, consolidation or merger, in whole or in part, of Company.

12. Company has not commingled and will not commingle the funds and other assets of Company with those of any affiliate or constituent party or any other Person, and has held and will hold all of its assets in its own name.

13. Company will maintain its assets in such a manner that it will not be costly or difficult to segregate, ascertain or identify its individual assets from those of any affiliate or constituent party or any other Person.

14. Company shall not assume or guarantee or become obligated for the debts of any other Person and has not held itself out to be responsible for or have its credit available to satisfy the debts or obligations of any other Person, and Company will not assume or guarantee or become obligated for the debts of any other Person and does not and will not hold itself out to be responsible for or have its credit available to satisfy the debts or obligations of any other Person.

15. Company hereby covenants and agrees that it will comply with or cause the compliance with, (i) all the representations, warranties and covenants contained within the Loan Documents, and (ii) all the organizational documents of Company.

16. Company will not permit any affiliate or constituent party independent access to its bank accounts.

17. Company shall pay the salaries of its own employees (if any) from its own funds and shall and shall maintain a sufficient number of employees (if any) in light of its contemplated business operations.

18. Company shall compensate each of its consultants and agents from its funds for services provided to it and pay from its own assets all obligations of any kind incurred.

19. Company will not, without the unanimous consent of all of its members or managers/managing members, take any action that might reasonably be expected to cause Company to become insolvent.

20. Company will allocate fairly and reasonably any shared expenses, including shared office space.

21. Notwithstanding any provision in this Agreement except in connection with the Loan or any prior mortgage financing that shall been fully paid and discharged in full prior to the date hereof, Company will not pledge its assets for the benefit of any other Person.

22. Company either (i) will have no obligation to indemnify its officers, directors, managers, members, shareholders or partners, as the case may be, or (ii) if it incurs any such obligation, such obligation will be fully subordinated to the Loan and will not constitute a claim against Company if cash flow in excess of the amount required to pay the Loan is insufficient to pay such obligation.

23. Company will consider the interests of Company's creditors in connection with all limited liability company actions.

24. Except as provided in the Loan Documents, Company will not have any of its obligations guaranteed by any affiliate.

25. The Company shall not be divided into more than one (1) entity.

26. At all times there shall be (and Company shall at all times cause there to be) at least one (1) duly appointed manager or member of the board of managers (each, an "**Independent Manager**") of Company:

(i) who shall be a natural person who is provided by a nationally

recognized professional service company;

(ii) who shall have at least three (3) years prior employment experience as an independent manager; and

(iii) who shall not have been at the time of such individual's appointment or at any time while serving as an Independent Manager, and shall not have ever been (A) a stockholder, member, director or manager (other than as an Independent Manager), officer, employee, partner, attorney or counsel of Company or any affiliate of Company or any direct or indirect equity holder of any of them, (B) a creditor, customer, supplier, service provider or other Person who derives any of its purchases or revenues from its activities with Company or any affiliate of Company, (C) a member of the immediate family of any such stockholder, member, director, manager, officer, employee, partner, attorney, counsel, creditor, customer, supplier, service provider or other Person, (D) a Person who is otherwise affiliated with Company or any affiliate of Company or any direct or indirect equity holder of any of them or any such stockholder, member, director, manager, officer, employee, partner, attorney, counsel, creditor, customer, supplier, service provider or other Person, or (E) a Person controlling, controlled by or under common control with any of (A), (B), (C) or (D) above.

As used in this subsection (26), "nationally recognized professional service company" includes Corporation Services Company, CT Corporation, National Registered Agents, Inc., Stewart Management Company, Wilmington Trust Company and Lord Securities Corporation or, if none of those companies is then providing professional Independent Manager, another nationally-recognized company reasonably approved by Lender, in each case that is not an affiliate of Company and that provides professional Independent Manager and other corporate services in the ordinary course of business. As used in this subsection (z), the term "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management, policies or activities of a Person, whether through ownership of voting securities, by contract or otherwise and the term "controlled" and "controlling" shall have a correlative meaning.

27. As long as any portion of the Loan remains outstanding:

(i) the directors or managers of Company shall not take any action which, under Company's certificate of formation or this Agreement, requires the unanimous affirmative vote of Company's directors or managers unless at the time of such action there are at least one (1) Independent Manager then serving in such capacity and each Independent Manager has participated in such vote;

(ii) no resignation or removal of an Independent Manager, and no appointment of a successor Independent Manager, shall be effective until such successor shall have executed a counterpart to this Agreement; provided, however, that no Independent Manager shall resign or be removed, and no

successor Independent Manager shall be appointed unless Company provides Lender with at least five (5) business days prior written notice of any such proposed resignation or removal and the identity of any such successor Independent Manager, together with a certification that such successor satisfies the requirements for an Independent Manager set forth herein;

(iii) in the event of a vacancy in the position of Independent Manager, the member of Company shall, subject to the preceding clause (ii), appoint a successor Independent Manager as soon as practicable;

(iv) to the fullest extent permitted by law and notwithstanding any duty existing at law or equity, the Independent Manager shall consider only the interests of the Company, including Lender and its other creditors, in acting or otherwise voting on the matters referred to in Section 8(a)(27)(vii)(D) or Section 9(d)(iii) of this Agreement;

(v) except for duties to Company as set forth in the immediately preceding clause (iv) (including duties to the member(s) of Company and Company's creditors solely to the extent of their respective economic interests in Company but excluding (A) all other interests of the member(s) of Company, (B) the interests of other affiliates of Company, and (C) the interests of any group of affiliates of which Company is a part), the Independent Manager shall not have any fiduciary duties to the member(s) of Company or any other Person bound by Company's operating agreement; provided, however, the foregoing shall not eliminate the implied contractual covenant of good faith and fair dealing;

(vi) in exercising their rights and performing their duties under this Agreement, each Independent Manager shall have a fiduciary duty of loyalty and care similar to that of a director of a business corporation organized under the General Corporation Law of the State of Delaware; and

(vii) Company will not:

(A) dissolve (to the fullest extent permitted by law), merge, liquidate or consolidate, except as provided in clause (27)(viii) below;

(B) except in connection with a sale or other transfer permitted under the Loan Documents, sell all or substantially all of its assets;

(C) amend this Agreement or any other organizational documents with respect to the matters set forth in this section 8 (Covenants and Restrictions), without the consent of Lender and without the affirmative vote of its Independent Manager; or

(D) without the affirmative vote of its Independent Manager and of

all other directors or managers of Company, take any Material Action with respect to itself or to any other entity in which it has a direct or indirect legal or beneficial ownership interest.

(viii) Company shall be dissolved, and its affairs shall be wound up, only upon the first to occur of the following: (A) the termination of the legal existence of the last remaining member of Company or the occurrence of any other event which terminates the continued membership of the last remaining member of Company in Company unless the Company is continued without dissolution in a manner permitted by this Agreement or the Act, or (B) the entry of a decree of judicial dissolution under Section 18-802 of the Act;

(ix) upon the occurrence of any event that causes the last remaining member of Company or the sole member of Company (in each case, the "**Final Member**") to cease to be a member of Company (other than upon continuation of the Company without dissolution upon (A) an assignment by Final Member of all of its Limited Liability Company Interests in Company and the admission of the transferee, if permitted pursuant to this Agreement and the Loan Documents, or (B) the resignation of Final Member and the admission of an additional member of Company, if permitted pursuant to this Agreement and the Loan Documents), to the fullest extent permitted by law, the personal representative of such last remaining member shall be authorized to, and shall, within ninety (90) days after the occurrence of the event that terminated the continued membership of such member in Company, agree in writing (1) to continue the existence of Company and (2) to the admission of the personal representative or its nominee or designee, as the case may be, as a substitute member of Company, effective as of the occurrence of the event that terminated the continued membership of such member in Company;

(x) the bankruptcy of Final Member or a special member of Company shall not cause Final Member or such special member, respectively, to cease to be a member of Company and upon the occurrence of such an event, the business of Company shall continue without dissolution;

(xi) in the event of the dissolution of Company, Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of Company in an orderly manner), and the assets of Company shall be applied in the manner, and in the order of priority, set forth in Section 18-804 of the Act; and

(xii) to the fullest extent permitted by law, each of Final Member and the special members of Company shall irrevocably waive any right or power that they might have to cause Company or any of its assets to be partitioned, to cause the appointment of a receiver for all or any portion of

the assets of Company, to compel any sale of all or any portion of the assets of Company pursuant to any applicable law or to file a complaint or to institute any proceeding at law or in equity to cause the dissolution, liquidation, winding up or termination of Company.

28. Upon the occurrence of any event that causes the Member to cease to be a member of the Company (other than upon continuation of the Company without dissolution upon (i) an assignment by the Member of all of its limited liability company interest in the Company and the admission of the transferee pursuant to Section 21 (Assignments) and Section 23 (Admission of Additional Members) or (ii) the resignation of the Member and the admission of an additional member of the Company pursuant to Section 22 (Resignation) (a "**Member Cessation Event**"), the person executing this Agreement as the Independent Manager pursuant to Section 8(a)(26) shall, without any action of any Person and simultaneously with the Member Cessation Event, automatically be admitted to the Company as a Special Member and shall continue the Company without dissolution. It is the intent of these provisions that the Company never have more than one (1) Special Member. No Special Member may resign from the Company or transfer its rights as Special Member unless (A) a successor Special Member has been admitted to the Company as Special Member by executing a counterpart to this Agreement, and (B) such successor has also accepted its appointment as Independent Manager pursuant to Section 8(a)(26); provided, however, the Special Member shall automatically cease to be a member of the Company upon the admission to the Company of a substitute Member. Special Member shall be a member of the Company that has no interest in the profits, losses and capital of the Company and has no right to receive any distributions of Company assets. Pursuant to Section 18-301 of the Act, a Special Member shall not be required to make any capital contributions to the Company and shall not receive a limited liability company interest in the Company. A Special Member, in its capacity as Special Member, may not bind the Company. Except as required by any mandatory provision of the Act, a Special Member, in its capacity as Special Member, shall have no right to vote on, approve or otherwise consent to any action by, or matter relating to, the Company, including, without limitation, the merger, consolidation or conversion of the Company. In order to implement the admission to the Company of a Special Member, each person acting as an Independent Manager pursuant to Section 8(a)(26) shall execute a counterpart to this Agreement. Prior to its admission to the Company as Special Member, each person executing this Agreement as an Independent Manager pursuant to Section 8(a)(26) shall not be a member of the Company.

(b) Restrictions

1. To the extent the Limited Liability Company Interest in the Company is represented by a certificate, the certificate shall contain the following legend: "THE TRANSFER OF THIS CERTIFICATE AND THE LIMITED LIABILITY COMPANY INTERESTS REPRESENTED HEREBY IS RESTRICTED AS DESCRIBED IN THE

OPERATING AGREEMENT OF THE COMPANY, AS THE SAME MAY BE AMENDED OR AMENDED AND RESTATED FROM TIME TO TIME." Each such Certificate shall be denominated in terms of the percentage of Limited Liability Company Interests in the Company evidenced by such Certificate and shall be signed by the member(s) on behalf of the Company.

2. THE TRANSFER OF THE LIMITED LIABILITY COMPANY INTERESTS IN THE COMPANY DESCRIBED IN THIS AGREEMENT ARE RESTRICTED AS PROVIDED HEREIN.

3. To the fullest extent permitted by applicable law, without any further act, vote or approval of any member, person, entity or officer the Company may issue a new Certificate in place of any Certificate previously issued if the holder of the Limited Liability Company Interests in the Company represented by such Certificate, as reflected on the books and records of the Company:

(i) makes proof by affidavit, in form and substance satisfactory to the Company, that such previously issued Certificate has been lost, stolen or destroyed;

(ii) requests the issuance of a new Certificate before the Company has notice that such previously issued Certificate has been acquired by a purchaser for value in good faith and without notice of an adverse claim;

(iii) if requested by the Company, delivers to the Company a bond, in form and substance satisfactory to the Company, with such surety or sureties as the Company may direct, to indemnify the Company against any claim that may be made on account of the alleged loss, destruction or theft of the previously issued Certificate; and

(iv) satisfies any other reasonable requirements imposed by the Company.

4. To the fullest extent permitted by applicable law, upon a member's transfer or assignment, in whole or in part, of its Limited Liability Company Interests in the Company represented by a Certificate, the transferee of such Limited Liability Company Interests in the Company shall deliver the Certificate or Certificates representing such Limited Liability Company Interests to the Company for cancellation (executed by such transferee on the reverse side thereof), and the Company shall thereupon issue a new Certificate to such transferee for the percentage of Limited Liability Company Interests in the Company so transferred or assigned and, if applicable, cause to be issued to the transferring or assigning member a new Certificate for that percentage of Limited Liability Company Interests in the Company that were represented by the canceled Certificate and that are not so transferred or assigned.

(c) <u>Additional Provisions</u>

1. The Company shall not, without the prior written consent of the Lender, issue, and shall not permit the issuance of any additional Limited Liability Company Interests in the Company other than its initial issuance of Limited Liability Company Interests issued on or prior to the date of this Agreement.

2. For so long as the Loan is outstanding, MO 2999TC MZ, LLC, a Delaware limited liability company shall be the sole member of the Company, unless Lender enforces its rights under the Ownership Interests Pledge and Security Agreement of even date herewith (the "Pledge Agreement") executed in connection with the Loan and Lender or a third-party nominee of Lender becomes the member, manager or managing member in connection therewith.

3. The manager(s)/managing member(s) as of the date hereof shall remain as manager(s)/managing member(s) of the Company and may not resign or appoint a successor manager(s)/managing member(s) for Company, without prior written consent from Lender, in addition to observing all other resignation requirements of this Agreement.

4. The member(s) and the manager(s)/managing member(s) shall not, and cause the Company to not, amend, alter, change or repeal any Section or Schedule of this Agreement if such change would adversely impact (i) any of the Lender's collateral, or (ii) Lender's ability to enforce its remedies under the Loan Documents or (iii) amend any of the terms in this Agreement.

5. Notwithstanding anything to the contrary set forth in this Agreement, the Company may not take any action which breaches or violates the provisions of this Section 8 unless, with respect to each such act(s), the Independent Manager consents to such action(s) in writing, and further provided that the failure to obtain the Independent Manager consent shall, to the fullest extent permitted by law, cause such act to be void ab initio and shall be deemed ultra vires.

6. Notwithstanding anything to the contrary set forth in this Agreement, no provision of this Agreement shall restrict or otherwise impede Lender from enforcing or realizing upon rights and remedies under the Pledge Agreement. The Company consents to all such rights and remedies. Upon Lender, its nominee or any third party becoming the owner of the Limited Liability Company Interests of the Company, the Independent Manager shall be deemed terminated.

7. Notwithstanding any other provision contained herein to the contrary, each member of the Company shall be permitted to pledge and to transfer to the Lender the Limited Liability Company Interests.

Section 9. Management.

(a) Subject to Section 9(d), the business and affairs of the Company shall be managed by or under the direction of the Member. Subject to Section 8(a)(26), the Member may determine at any time in its sole and absolute discretion the number of Independent Managers so

long as there is at least one Independent Manager at all times. The initial number of Independent Managers shall be one. The initial Independent Manager designated by the Member is The initial Independent Manager designated by the Member is Steven P. Zimmer as further described in the Designation of Independent Manager Agreement entered into by and between the Company and CT Corporation Staffing, Inc.

(b) Powers. Subject to Section 9(d), the Member and the Officers shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes defined herein, including all powers, statutory or otherwise, conferred upon limited liability companies formed pursuant to the Act. Subject to Sections 7 and 9, the Member has the authority to bind the Company.

(c) Member as Agent. To the extent of its powers set forth in this Agreement and subject to Section 9(d), the Member is an agent of the Company for the purpose of the Company's business, and the actions of the Member taken in accordance with such powers set forth in this Agreement shall bind the Company.

(d) Limitations on the Company's Activities.

(i) This Section 9(d) is being adopted in order to comply with certain provisions required in order to qualify the Company as a "special purpose" entity.

(ii) The Member shall not, so long as any Obligation is outstanding, amend, alter, change or repeal the definition of "Independent Manager" or Sections 7, 8, 9, 16, 20, 21, 22, 23, 24, 25, 26 or 31 or Schedule A of this Agreement without the unanimous written consent of the Independent Managers. Subject to this Section 9(d), the Member reserves the right to amend, alter, change or repeal any provisions contained in this Agreement in accordance with Section 31.

(iii) Notwithstanding any other provision of this Agreement and any provision of law that otherwise so empowers the Company, the Member or any Officer or any other Person, so long as any Obligation is outstanding, neither the Member nor any Officer nor any other Person shall be authorized or empowered, nor shall they permit the Company, without the prior unanimous written consent of the Member and all Independent Managers, to take any Material Action, provided, however, that, so long as any Obligation is outstanding, the Member may not authorize the taking of any Material Action, unless there is at least one Independent Manager then serving in such capacity.

(e) Notwithstanding the foregoing, Timothy Barton is authorized in his individual capacity to apply for an employer identification number ("EIN") online with the Internal Revenue Services as a "member" (as such online service is no longer set up for members who are entities to apply for an EIN) which shall not be deemed to mean in his capacity as an officer

of the Company and shall not be interpreted as creating or issuing any membership interest to Timothy Barton; admitting Timothy Barton as a member in his individual capacity; or imposing any rights, duties, or obligations on Timothy Barton in his individual capacity as a result of such application.

Section 10. Intentionally Omitted.

Section 11. Officers.

The Member may, from time to time as it deems advisable, appoint officers of the Company (the "Officers") and assign in writing titles (including, without limitation, President, Vice President, Secretary, and Treasurer) to any such person. Unless the Member decides otherwise, if the title is one commonly used for officers of a business corporation formed under the Delaware General Corporation Law, the assignment of such title shall constitute the delegation to such person of the authorities and duties that are normally associated with that office. Any delegation pursuant to this Section 11 may be revoked at any time by the Member.

The initial officers are Timothy Barton as President and Saskya Zuniga as Treasurer. In addition to the authorities and duties normally associated with such offices as described above, the Member non-exclusively delegates to the President all of the powers of the Member under section 9 subject to the restrictions defined herein including in section 9(d). Both the President and the Treasurer are authorized to open, manage, and close any and all Company accounts with any bank or financial institution and to be a signatory on such accounts. Either such officer may sign any related instrument or account document as necessary as related to such accounts and as such, dual signatures of both officers are not required.

Section 12. Limited Liability.

Except as otherwise expressly provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be the debts, obligations and liabilities solely of the Company, and neither the Member nor the Special Members nor any Independent Manager shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member, Special Member or Independent Manager of the Company.

Section 13. Capital Contributions.

The Member has contributed to the Company property of an agreed value as listed on Schedule B attached hereto. In accordance with Section 8(a)(28), the Special Members shall not be required to make any capital contributions to the Company.

Section 14. Additional Contributions.

The Member is not required to make any additional capital contribution to the Company. However, the Member may make additional capital contributions to the Company at any time in its sole discretion. To the extent that the Member makes an additional capital contribution to the Company, the Member shall revise Schedule B of this Agreement. The provisions of this

Agreement, including this Section 14, are intended to benefit the Member and the Special Members and, to the fullest extent permitted by law, shall not be construed as conferring any benefit upon any creditor of the Company (other than a Covered Person) (and no such creditor of the Company shall be a third-party beneficiary of this Agreement) and the Member and the Special Members shall not have any duty or obligation to any creditor of the Company to make any contribution to the Company or to issue any call for capital pursuant to this Agreement.

Section 15. Allocation of Profits and Losses.

The Company's profits and losses shall be allocated to the Member.

Section 16. Distributions.

Distributions shall be made to the Member at the times and in the aggregate amounts determined by the Member. Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not be required to make a distribution to the Member on account of its interest in the Company if such distribution would violate the Act or any other applicable law or any Basic Document.

Section 17. Books and Records.

The Member shall keep or cause to be kept complete and accurate books of account and records with respect to the Company's business. The Member and its duly authorized representatives shall have the right to examine the Company books, records and documents during normal business hours. The Company's books of account shall be kept using the method of accounting determined by the Member. The Company's independent auditor, if any, shall be an independent public accounting firm selected by the Member.

Section 18. Intentionally Omitted.

Section 19. Other Business.

Notwithstanding any duty otherwise existing at law or in equity, the Member, the Special Members and any Independent Manager and any Affiliate of the Member or the Special Members or the Independent Managers may engage in or possess an interest in other business ventures (unconnected with the Company) of every kind and description, independently or with others. The Company shall not have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

Section 20. Exculpation and Indemnification.

(a) To the fullest extent permitted by applicable law, neither the Member nor the Special Members nor any Independent Manager nor any Officer nor any officer, director, employee, agent or Affiliate of the foregoing (collectively, the "Covered Persons") shall be liable to the Company or any other Person who is a party to or is otherwise bound by this Agreement for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably

believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that a Covered Person shall be liable for any such loss, damage or claim incurred by reason of such Covered Person's gross negligence or willful misconduct.

(b) To the fullest extent permitted by applicable law, a Covered Person shall be entitled to indemnification from the Company for any loss, damage or claim incurred by such Covered Person by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that no Covered Person shall be entitled to be indemnified in respect of any loss, damage or claim incurred by such Covered Person by reason of such Covered Person's gross negligence or willful misconduct with respect to such acts or omissions; provided, however, that any indemnity under this Section 20 by the Company shall be provided out of and to the extent of Company assets only, and the Member and the Special Members shall not have personal liability on account thereof; and provided further, that so long as any Obligation is outstanding, no indemnity payment from funds of the Company (as distinct from funds from other sources, such as insurance) of any indemnity under this Section 20 shall be payable from amounts allocable to any other Person pursuant to the Basic Documents.

(c) To the fullest extent permitted by applicable law, expenses (including reasonable legal fees) incurred by a Covered Person defending any claim, demand, action, suit or proceeding shall, from time to time, be advanced by the Company prior to the final disposition of such claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Covered Person to repay such amount if it shall be determined that the Covered Person is not entitled to be indemnified as authorized in this Section 20.

(d) A Covered Person shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports or statements presented to the Company by any Person as to matters the Covered Person reasonably believes are within such other Person's professional or expert competence and who has been selected with reasonable care by or on behalf of the Company, including information, opinions, reports or statements as to the value and amount of the assets, liabilities, or any other facts pertinent to the existence and amount of assets from which distributions to the Member might properly be paid.

(e) The provisions of this Agreement, to the extent that they restrict or eliminate the duties and liabilities of a Covered Person to the Company or its members otherwise existing at law or in equity, are agreed by the parties hereto to replace such other duties and liabilities of such Covered Person.

(f) The foregoing provisions of this Section 20 shall survive any termination of this Agreement.

Section 21. Assignments.

The Member may assign in whole or in part its limited liability company interest in the Company. Subject to Section 23, the transferee shall be admitted to the Company as a member

of the Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement, which instrument may be a counterpart signature page to this Agreement. If the Member transfers all of its limited liability company interest in the Company pursuant to this Section 21, such admission shall be deemed effective immediately prior to the transfer and, immediately following such admission, the transferor Member shall cease to be a member of the Company. Notwithstanding anything in this Agreement to the contrary, any successor to the Member by merger or consolidation in compliance with the Basic Documents shall, without further act, be the Member hereunder, and such merger or consolidation shall not constitute an assignment for purposes of this Agreement and the Company shall continue without dissolution.

Section 22. Resignation.

So long as any Obligation is outstanding, the Member may not resign, except as permitted under the Basic Documents and if the Rating Agency Condition is satisfied. If the Member is permitted to resign pursuant to this Section 22, an additional member of the Company shall be admitted to the Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement, which instrument may be a counterpart signature page to this Agreement. Such admission shall be deemed effective immediately prior to the resignation and, immediately following such admission, the resigning Member shall cease to be a member of the Company.

Section 23. Admission of Additional Members.

One or more additional Members of the Company may be admitted to the Company with the written consent of the Member; provided, however, that, notwithstanding the foregoing, so long as any Obligation remains outstanding, no additional Member may be admitted to the Company unless the Rating Agency Condition is satisfied.

Section 24. Dissolution.

(a) Notwithstanding any other provision of this Agreement, the Bankruptcy or dissolution of the Member or a Special Member shall not cause the Member or Special Member, respectively, to cease to be a member of the Company and upon the occurrence of such an event, the Company shall continue without dissolution.

(b) Notwithstanding any other provision of this Agreement, each of the Member and the Special Members waives any right it might have to agree in writing to dissolve the Company upon the Bankruptcy of the Member or a Special Member or the occurrence of an event that causes the Member or a Special Member to cease to be a member of the Company.

(c) The Company shall terminate when (i) all of the assets of the Company, after payment of or due provision for all debts, liabilities and obligations of the Company shall have been distributed to the Member in the manner provided for in this Agreement and (ii) the Certificate of Formation shall have been canceled in the manner required by the Act.

Section 25. Waiver of Partition; Nature of Interest.

Except as otherwise expressly provided in this Agreement, to the fullest extent permitted by law, each of the Member and the Independent Managers hereby irrevocably waives any right or power that such Person might have to institute any proceeding at law or in equity to cause the dissolution, liquidation, winding up or termination of the Company. The Member shall not have any interest in any specific assets of the Company, and the Member shall not have the status of a creditor with respect to any distribution pursuant to Section 16 hereof. The interest of the Member in the Company is personal property.

Section 26. Benefits of Agreement; No Third-Party Rights.

None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditor of the Company or by any creditor of the Member or a Special Member. Nothing in this Agreement shall be deemed to create any right in any Person (other than Covered Persons) not a party hereto, and this Agreement shall not be construed in any respect to be a contract in whole or in part for the benefit of any third Person (other than Covered Persons).

Section 27. Severability of Provisions.

Each provision of this Agreement shall be considered severable and if for any reason any provision or provisions herein are determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of this Agreement which are valid, enforceable and legal.

Section 28. Entire Agreement.

This Agreement constitutes the entire agreement of the parties with respect to the subject matter hereof.

Section 29. Binding Agreement.

Notwithstanding any other provision of this Agreement, the Member agrees that this Agreement, including, without limitation, Sections 7, 8, 9, 18, 20, 21, 22, 23, 24, 26, 29 and 31, constitutes a legal, valid and binding agreement of the Member, and is enforceable against the Member by the Independent Managers, in accordance with its terms.

Section 30. Governing Law.

This Agreement shall be governed by and construed under the laws of the State of Delaware (without regard to conflict of laws principles), all rights and remedies being governed by said laws.

Section 31. Amendments.

Subject to Section 9(d), this Agreement may be modified, altered, supplemented or amended pursuant to a written agreement executed and delivered by the Member.

Notwithstanding anything to the contrary in this Agreement, so long as any Obligation is outstanding, this Agreement may not be modified, altered, supplemented or amended unless the Rating Agency Condition is satisfied except: (i) to cure any ambiguity or (ii) to correct or supplement any provision in a manner consistent with the intent of this Agreement and the other Basic Documents.

Section 32. Counterparts.

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original of this Agreement and all of which together shall constitute one and the same instrument.

Section 33. Notices.

Any notices required to be delivered hereunder shall be in writing and personally delivered, mailed or sent by telecopy, electronic mail or other similar form of rapid transmission, and shall be deemed to have been duly given upon receipt (a) in the case of the Company, to the Company at its address in Section 2, (b) in the case of the Member, to the Member at its address as listed on Schedule B attached hereto and (c) in the case of either of the foregoing, at such other address as may be designated by written notice to the other party.

Section 34. Effectiveness.

Pursuant to Section 18-201(d) of the Act, this Agreement shall be effective as of the time of the filing of the Certificate of Formation with the Office of the Delaware Secretary of State on July 31, 2019.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, have duly executed this Limited Liability Company Agreement as of the 9th day of September, 2019.

MEMBER

By: MO 2999TC MZ, LLC
a Delaware limited liability company
Its: Sole Member

By: Five Star TC, LLC
a Delaware limited liability company
Its: Sole Member

By: Five Star MM, LLC
a Delaware limited liability company
Its: Managing Member

By:
Name: Timothy Barton
Its: President

INDEPENDENT MANAGER/SPECIAL MEMBER:

Name: Steven P. Zimmer

# SCHEDULE A

## Definitions

A. Definitions

When used in this Agreement, the following terms not otherwise defined herein have the following meanings:

"Act" has the meaning set forth in the preamble to this Agreement.

"Affiliate" means, with respect to any Person, any other Person directly or indirectly Controlling or Controlled by or under direct or indirect common Control with such Person.

"Agreement" means this Limited Liability Company Agreement of the Company, together with the schedules attached hereto, as amended, restated or supplemented or otherwise modified from time to time.

"Bankruptcy" means, with respect to any Person, if such Person (i) makes an assignment for the benefit of creditors, (ii) files a voluntary petition in bankruptcy, (iii) is adjudged a bankrupt or insolvent, or has entered against it an order for relief, in any bankruptcy or insolvency proceedings, (iv) files a petition or answer seeking for itself any reorganization, arrangement, composition, readjustment, liquidation or similar relief under any statute, law or regulation, (v) files an answer or other pleading admitting or failing to contest the material allegations of a petition filed against it in any proceeding of this nature, (vi) seeks, consents to or acquiesces in the appointment of a trustee, receiver or liquidator of the Person or of all or any substantial part of its properties, or (vii) if 120 days after the commencement of any proceeding against the Person seeking reorganization, arrangement, composition, readjustment, liquidation or similar relief under any statute, law or regulation, if the proceeding has not been dismissed, or if within 90 days after the appointment without such Person's consent or acquiescence of a trustee, receiver or liquidator of such Person or of all or any substantial part of its properties, the appointment is not vacated or stayed, or within 90 days after the expiration of any such stay, the appointment is not vacated. The foregoing definition of "Bankruptcy" is intended to replace and shall supersede and replace the definition of "Bankruptcy" set forth in Sections 18-101(1) and 18-304 of the Act.

"Basic Documents" means this Agreement, the Loan Documents and all other all documents and certificates contemplated thereby or delivered to Lender in connection the Loan.

"Certificate of Formation" means the Certificate of Formation of the Company filed with the Secretary of State of the State of Delaware on July 31, 2019, as amended or amended and restated from time to time.

"Company" means MO 2999TC, LLC, a Delaware limited liability company.

"Control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ownership of voting securities or general partnership or managing member interests, by contract or otherwise. "Controlling" and "Controlled" shall have correlative meanings. Without limiting the generality of the foregoing, a Person shall be deemed to Control any other Person in which it owns, directly or indirectly, a majority of the ownership interests.

"Covered Persons" has the meaning set forth in Section 20(a).

"Independent Manager" has the meaning set forth in Section 8(a)(26).

"Loan" has the meaning set forth in Section 7(a)(ii).

"Loan Agreement" means that certain Loan Agreement, dated on or about the date hereof, between the Company and the Lender, in connection with the Loan.

"Loan Documents" has the meaning set forth in the Loan Agreement

"Lender" means 2999 Turtle Creek 1 LLC, a Delaware limited liability company.

"Material Action" means to institute proceedings to have the Company be adjudicated bankrupt or insolvent, or consent to the institution of bankruptcy or insolvency proceedings against the Company or file a petition seeking, or consent to, reorganization or relief with respect to the Company under any applicable federal or state law relating to bankruptcy, or consent to the appointment of a receiver, liquidator, assignee, trustee, sequestrator (or other similar official) of the Company or a substantial part of its property, or make any assignment for the benefit of creditors of the Company, or admit in writing the Company's inability to pay its debts generally as they become due, or take action in furtherance of any such action, or, to the fullest extent permitted by law, dissolve or liquidate the Company.

"Member" means MO 2999TC MZ, as the initial member of the Company, and includes any Person admitted as an additional member of the Company or a substitute member of the Company pursuant to the provisions of this Agreement, each in its capacity as a member of the Company; provided, however, the term "Member" shall not include the Special Members.

"Obligation" shall mean the indebtedness, liabilities and obligations of the Company under or in connection with the Basic Documents or any related document in effect as of any date of determination.

"Officer" means an officer of the Company as described in Section 11.

"Person" has the meaning set forth in Section 8(a)(5).

"Property" has the meaning set forth in Section 7(a)(i).

"Rating Agency" has the meaning assigned to that term in the Basic Documents.

"Rating Agency Condition" means (i) with respect to any action taken at any time before the loan evidenced and secured by the Basic Documents has been sold or assigned to a securitization trust, that the lender thereunder has consented in writing to such action, and (ii) with respect to any action taken at any time after such loan has been sold or assigned to a securitization trust, that each Rating Agency shall have been given ten days prior notice thereof and that each of the Rating Agencies shall have notified the Company in writing that such action will not result in a reduction or withdrawal of the then current rating by such Rating Agency of any of securities issued by such securitization trust.

"Special Member" means, upon such person's admission to the Company as a member of the Company pursuant to Section 8(a)(28), a person acting as Independent Manager, in such person's capacity as a member of the Company. A Special Member shall only have the rights and duties expressly set forth in this Agreement.

B. Rules of Construction

Definitions in this Agreement apply equally to both the singular and plural forms of the defined terms. The words "include" and "including" shall be deemed to be followed by the phrase "without limitation." The terms "herein," "hereof" and "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular Section, paragraph or subdivision. The Section titles appear as a matter of convenience only and shall not affect the interpretation of this Agreement. All Section, paragraph, clause, Exhibit or Schedule references not attributed to a particular document shall be references to such parts of this Agreement.

SCHEDULE B

Member

| Name | Mailing Address | Agreed Value of Capital Contribution | Limited Liability Company Interest |
|---|---|---|---|
| MO 2999TC MZ, LLC | 1755 Wittington Place, Ste. 340 Dallas, Texas 75234 | $10.00 | 100% |