Joyce W. Lindauer
State Bar No. 21555700
Kerry S. Alleyne
State Bar No. 24066090
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR DEBTOR

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **2999TC LP, LLC,** | § | **CASE NO. 20-43204-mxm-11** |
| | § | |
| **DEBTOR.** | § | **CHAPTER 11** |

# THIRD AMENDED DISCLOSURE STATEMENT FOR DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION DATED July 19, 2021

## TABLE OF CONTENTS

ARTICLE I – INTRODUCTION ....3

ARTICLE II - REPRESENTATIONS ....9

ARTICLE III - FINANCIAL PICTURE OF THE DEBTOR ....11

ARTICLE IV - ANALYSIS AND VALUATION OF PROPERTY ....14

ARTICLE V- SUMMARY OF THE PLAN OF REORGANIZATION ....16

ARTICLE VI – MEANS FOR IMPLEMENTATION OF PLAN ....19

ARTICLE VII – TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ....19

ARTICLE VIII – FEASIBILITY OF PLAN ....20

ARTICLE IX – EFFECT OF CONFIRMATION ....21

ARTICLE X – ALTERNATIVES TO DEBTOR'S PLAN ....21

ARTICLE XI - RISKS TO CREDITORS UNDER CREDITOR'S PLAN ....22

ARTICLE XII - TAX CONSEQUENCES TO THE DEBTOR ....22

ARTICLE XIII - PENDING LITIGATION ....25

ARTICLE XIV - SUMMARY OF SIGNIFICANT ORDERS ENTERED DURING THE CASE ....25

EXHIBITS:

Plan of Reorganization ....Exhibit A

# ARTICLE I
# INTRODUCTION

**Identity of the Debtor**

**1.01** Debtor filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. Section 101, et seq. ("Code") on October 16, 2020, in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, initiating the above-styled and referenced bankruptcy proceeding. The Debtor is operating its business as Debtor-in-Possession pursuant to Sections 1107 and 1108 of the Code.

**Capitalized words in this Disclosure Statement shall have the meanings ascribed to them in the Debtor's Plan of Reorganization.**

**Purpose of This Disclosure; Source of Information**

**1.02** The Debtor submits this Disclosure Statement ("Disclosure Statement" or "Disclosure") pursuant to Section 1125 of the Code to all known Claimants of Debtor for the purpose of disclosing that information which the Court has determined is material, important, and necessary for Creditors of, and the Members of, Debtor in order to arrive at an intelligent, reasonably informed decision in exercising the right to vote for acceptance or rejection of the Debtor's Plan. A copy of the Plan is attached hereto as **Exhibit "A"** and incorporated herein by this reference. The Plan sets forth in detail the repayment arrangement between the Reorganized Debtor and its creditors. This Disclosure Statement describes the operations of the Reorganized Debtor contemplated under the Plan.

The source of information for this Disclosure Statement is the Debtor's records and all filings in this case.

**Explanation of Chapter 11**

**1.03** Chapter 11 is the principal reorganization chapter of the Code. Pursuant to Chapter 11, a debtor is authorized to reorganize its business for its own benefit and that of its creditors and equity interest holders. Formulation of a plan of reorganization is the principal purpose of a Chapter 11 reorganization case. A plan of reorganization sets forth the means for satisfying claims against and interests in the debtor. After a plan of reorganization has been filed, it must be accepted by holders of claims against, or interests in, the debtor. Section 1125 of the Code requires full disclosure before solicitation of acceptances of a plan of reorganization. This Disclosure Statement is presented to Claimants to satisfy the requirements of Section 1125 of the Code.

**Explanation of the Process of Confirmation**

**1.04** Even if all Classes of Claims accept the plan, its confirmation may be refused by the Court. Section 1129 of the Code sets forth the requirements for confirmation and, among other things, requires that a plan of reorganization be in the best interests of Claimants. It generally requires that the value to be distributed to Claimants and Equity Interest Holders may not be less than such parties would receive if the debtor were liquidated under Chapter 7 of the Code.

**1.05** Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (2) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. Chapter 11 of the Code does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court. The plan, however, must be accepted by: (i) at least the holder of one (1) class of claims by a majority in number and two-thirds (2/3) in amount of those claims of such class actually voting; or (ii) at least the holders of one (1) class of allowed interests by two-thirds (2/3) in amount of the allowed interests of such class actually voting.

**1.06** The Court may confirm the plan even though less than all of the classes of claims and interests accept it. The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code.

**1.07** Confirmation makes the plan binding upon the Debtor and all claimants, equity interest holders and other parties-in-interest, regardless of whether they have accepted the plan.

**Voting Procedures**

**1.08** **Unimpaired Class**. Administrative Claimants are not impaired under the Plan.

**1.09** **Impaired Classes**. The Class 1, 2, 3, 4 and 5 Claimants and Equity Interest Holders are impaired as defined by Section 1124 of the Code. The Debtor is seeking the acceptance of the Plan by all Classes. Each holder of an Allowed Claim in Classes 1, 2, 3, 4 and 5 may vote on the Plan by completing, dating and signing the ballot sent to each holder and filing the ballot as set forth below. One ballot will be sent to each Claimant or Equity Interest Holder eligible to vote on the Plan. Class 2 and Class 4 Claimants are deemed to have rejected the Plan and shall not receive ballots. For all Classes, the ballot must be returned to the Debtor's attorney, Joyce Lindauer, Attorney at Law, 1412 Main St., Suite 500, Dallas, Texas 75202. In order to be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

**1.10** **Acceptances**. Ballots that are signed and returned but fail to indicate either an acceptance or rejection will not be counted.

**Best Interests of Creditors Test**

**1.11** Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the

estate's interest in the property that secures such claims. In order for the Plan to be confirmed, the Court must determine that the Plan is in the best interests of the Debtor's creditors. Accordingly, the proposed plan must provide the Debtor's creditors with more than they would receive in a Chapter 7 liquidation. Since **the Plan proposes to pay all allowed claims in full**, the Debtor believes that the creditors are receiving more than they would receive in a Chapter 7 liquidation. Accordingly, the Debtor believes that the Plan satisfies the requirements of Section 1129(a)(7).

**Definition of Impairment**

**1.12** As set forth in section 1124 of the Bankruptcy Code, a class of claims or equity interests is impaired under a plan of reorganization unless, with respect to each claim or equity interest of such class, the plan:

> leaves unaltered the legal, equitable, and contractual rights of the holder of such claim or equity interest; or
>
> notwithstanding any contractual provision or applicable law that entitles the holder of a claim or equity interest to demand or receive accelerated payment of such claim or equity interest after the occurrence of a default:
>
> cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; reinstates the maturity of such claim or interest as it existed before such default; compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance on such contractual provision or such applicable law; and does not otherwise alter the legal, equitable or contractual rights to which such claim or interest entitles the holder of such claim or interest.

**Classification and Treatment of Claims and Interests**

**1.13** The Plan classifies Claims separately in accordance with the Bankruptcy Code and provides different treatment for different classes of Claims.

**1.14** Only holders of Allowed Claims are entitled to receive distributions under the Plan. Allowed Claims are Claims that are not in dispute or have been litigated to a Final Order, are not contingent, are liquidated in amount, and are not subject to objection or estimation. Initial distributions or other transfers of Cash or other consideration specified in the Plan otherwise available to the holders of Allowed Claims will be made on the Effective Date, or (b) the date on which such Claim becomes an Allowed Claim), as otherwise provided in the Plan, or as may be ordered by the Bankruptcy Court.

**1.15** In accordance with the Plan, unless otherwise provided in the Plan or the Confirmation Order, the treatment of any Claim under the Plan will be in full satisfaction, settlement, release, and discharge of and in exchange for each and every Claim.

**Requirements for Confirmation of the Plan**

**1.16** At the confirmation hearing, the Bankruptcy Court must determine whether the Bankruptcy Code's requirements for confirmation of the Plan have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. As set forth in section 1129 of the Bankruptcy Code, these requirements are as follows:

> The plan complies with the applicable provisions of the Bankruptcy Code.
>
> The proponents of the plan comply with the applicable provisions of the Bankruptcy Code.
>
> The plan has been proposed in good faith and not by any means forbidden by law.
>
> Any payment made or promised by the Debtor, by the plan proponents, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in, or in connection with, the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of the Bankruptcy Court as reasonable.
>
> The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the Debtor, an affiliate of the Debtor participating in a joint plan with the Debtor, or a successor to the Debtor under the plan; and (B) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized Debtor, and the nature of any compensation for such insider.
>
> Any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the Debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval.
>
> With respect to each impaired class of claims or interests:
>
> (i) each holder of a claim or interest of such class has (A) accepted the plan or (B) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated on such date under chapter 7 of the Bankruptcy Code on such date; or (ii) if section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, the holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.
>
> With respect to each class of claims or interests:

(i) such class has accepted the plan; or

(ii) such class is not impaired under the plan.

Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that:

(i) with respect to a claim of a kind specified in section 507(a)(1) or 507(a)(2) of the Bankruptcy Code, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

(ii) with respect to a class of claims of a kind specified in section 507(a)(3), 507(a)(4), 507(a)(5) or 507(a)(6) of the Bankruptcy Code, each holder of a claim of such class will receive: (i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim; and

(iii) with respect to a claim of a kind specified in section 507(a)(7) of the Bankruptcy Code, the holder of a claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

If a class of claims is impaired under the plan, at least one class of claims that is impaired has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim of such class.

Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

All fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the hearing on confirmation of the plan, have been paid or the plan provides for the payments of all such fees on the effective date of the plan.

The plan provides for the continuation after its effective date of payment of all retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114, at any time prior to confirmation of the plan, for the duration of the period the Debtor has obligated itself to provide such benefits.

The Debtor believes that the Plan satisfies all the statutory requirements of chapter 11 of the Bankruptcy Code, that the Debtor has complied with or will have complied with all the requirements of chapter 11, and that the Plan is proposed in good faith.

At the Confirmation Hearing, the Bankruptcy Court will determine whether holders of Allowed Claims or Allowed Equity Interests would receive greater distributions under the Plan than they would receive in a liquidation under chapter 7.

The Debtor believes that the feasibility requirement for confirmation of the Plan is satisfied by the fact that its contributions to the Debtor and the future operating revenues will be sufficient to satisfy the obligations under the Plan in addition to supporting sustainable growth of the enterprise. These facts and others demonstrating the confirmability of the Plan will be shown at the Confirmation Hearing.

**Cramdown**

**1.17** The bankruptcy court may confirm a plan of reorganization even though fewer than all the classes of impaired claims and interests accept it. For a plan of reorganization to be confirmed despite its rejection by a class of impaired claims or interests, the proponents of the plan must show, among other things, that the plan does not "discriminate unfairly" and that the plan is "fair and equitable" with respect to each impaired class of claims or interests that has not accepted the plan.

**1.18** "Fair and equitable" has different meanings with respect to the treatment of secured and unsecured claims. As set forth in section 1129(b)(2) of the Bankruptcy Code, those meanings are as follows:

With respect to a class of secured claims, the plan provides:

(a)(i) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the Debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(ii) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(b) for the sale, subject to section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (a) and (b) of this subparagraph; or

(c) the realization by such holders of the "indubitable equivalent" of such claims.

With respect to a class of unsecured claims, the plan provides(a) that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(b) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115 subject to the requirements that a) the value, as of effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or (b) the value of property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

With respect to a class of interests, the plan provides:

(a) that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled or the value of such interest; or

(b) that the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

**1.19** In the event that one or more classes of impaired Claims reject the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable with respect to, and does not discriminate unfairly against, any rejecting impaired class of Claims. The absolute priority rule requires that prior to the Debtor retaining or receiving any non-exempt property the senior classes of claims must be paid in full or vote to accept the Plan.

The Debtor believes the Plan does not discriminate unfairly against, and is fair and equitable with respect to, each impaired class of Claims.

## ARTICLE II
## REPRESENTATIONS

**2.01** This Disclosure Statement is provided pursuant to Section 1125 of the Code to all the Debtor's known Creditors and other parties in interest in connection with the solicitation of acceptance of its Plan of reorganization, as amended or modified. The purpose of this Disclosure Statement is to provide such information as will enable a hypothetical, reasonable investor, typical of the holders of Claims, to make an informed judgment in exercising its rights either to accept or reject the Plan.

**2.02** The information contained in this Disclosure Statement has been derived from information submitted by the Debtor, unless specifically stated to be from other sources.

**2.03** No representations concerning the Debtor are authorized by the Debtor other than those set forth in this Disclosure Statement. The Debtor recommends that any representation or inducement made to secure your acceptance or rejection of the Plan which is not contained in this Disclosure Statement should not be relied upon by you in reaching your decision on how to vote on the Plan. Any representation or inducement made to you not contained herein should be reported to the attorneys for the Debtor who shall deliver such information to the Court for such action as may be appropriate.

**2.04** ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE OR UPON THE MERITS OF THE PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.

**2.05** THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE APPROVAL BY THE COURT OF THIS DISCLOSURE DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

**2.06** THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.

**2.07** THE DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THE STATEMENTS CONTAINED IN THIS DISCLOSURE ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.

## ARTICLE III
## FINANCIAL PICTURE OF THE DEBTOR

### Financial History and Background of the Debtor

**3.01** The Debtor owns a membership interest and a $4,000,000.00 capital account in 2999TC JMJ MGR, LLC, which is part of a group of entities collectively owning a 2.5-acre tract of real property located at 2999 Turtle Creek Boulevard in Dallas, Texas (the "Property"), to be developed into a luxury hotel and condominiums. The Debtor will fund the Plan from the proceeds of a redemption of its capital account by 2999TC JMJ MGR, LLC. This redemption will occur approximately six to nine months after the Effective Date of the Plan through a refinance of the Property and recapitalization of all entities holding direct or indirect interests in the Property, including 2999TC JMJ MGR, LLC. In other words, the property owners, spearheaded by 2999TC JMJ MGR, LLC will obtain a construction loan to refinance the existing debt on the Property and complete the construction project. From the proceeds of the construction loan, the Debtor will receive $4,000,000 on account of its capital interest in 2999TC JMJ MGR, LLC and will use this money to make the payments under the Plan. **The Plan will pay all Allowed Claimants except for the Hodges Group, 100% of their Claims, with interest.** The Plan will pay the Hodges Group $4,000,000.00 with interest as set forth in Article V of the Plan. This equates to approximately 78% of the Proofs of Claim amount of $5,090,369.52 filed by the Hodges Group on March 11, 2021. The Hodges Group withdrew their proofs of claims on July 30, 2021.

2999TC LP along with the members in 2999TC JMJ MGR, LLC collectively own all of the beneficial membership interests in 2999TC JMJ MGR, LLC subject to a 0.1% membership interest owned by 2999TC MM, LLC as the managing member. The Debtor's interest is 19.75%. These entities have no relationship to the Debtor except that they are joint owners in 2999TC JMJ MGR, LLC which effectively owns the Property. Redemption of the membership interest by the Debtor will occur six months to nine months after the Effective Date to allow time for the refinance transaction to close. This time period is required because the property owners will need to finalize construction drawings and term sheets before closing on a construction loan to complete development of the land. The Plan is dependent on the property owners obtaining a construction loan to refinance the debt on the Property. The Debtor believes the property owners are primed to be able to refinance within 6 - 9 months after the Effective Date due to the reopening of the economy brought on by the COVID-19 vaccine and the resumption of lending activity at favorable rates by lenders. In the very unlikely event, the property owners are unable to refinance the debt on the Property or recapitalize, the Debtor will be in default under the Plan.

**3.02** Prior to the filing of this case the Debtor was engaged in litigation in the case of *L. Allen Hodges III, as Independent Executor of the Estate of Leland A. Hodges Jr., Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. v. 2999TC LP, LLC, JMJ Development, LLC, and Tim Barton*, Cause No. 141-316567-20 in the 141st Judicial District Court of Tarrant County, Texas (the "Lawsuit"). The Lawsuit was removed to the Bankruptcy Court by the Debtor upon the filing of this Bankruptcy Case. Subsequently, the plaintiffs in the Lawsuit (hereinafter referred to as the "Hodges Group") dismissed their claims against the Debtor and on November 16, 2020, the Bankruptcy Court entered an Order abstaining from and remanding the Lawsuit back to the state court for further determination and allowing the Hodges Group to dismiss

their claims against the Debtor. The Debtor appealed the order remanding the Lawsuit and dismissing the Hodges Group's claims against the Debtor on the basis that the bankruptcy court and not the state court should determine the Debtor's counterclaim against the Hodges Group. The Debtor alleges that the Hodges Group only dismissed their claims against the Debtor so the bankruptcy court would no longer have jurisdiction over the Debtor's counterclaims and the other defendants in the underlying litigation. The Hodges Group dispute these allegations and maintain that the dismissal of the claims occurred in order to avoid involvement in the Debtor's bankruptcy case as potential distributions to unsecured creditors appears minimal.

The appeal went before the District Court for the Northern District of Texas, Fort Worth Division, Case No. 4:20-cv-01256-P (the "District Court Appeal"). On April 12, 2021, the District Court affirmed the Bankruptcy Court's Orders and on April 23, 2021, the Debtor appealed the portion of the District Court's Order that affirmed the dismissal of the claims against the Debtor to the United States Courts of Appeal for the Fifth Circuit, in case number 21-10409 (the "Fifth Circuit Appeal"). The Hodges Group filed a motion to dismiss the Fifth Circuit Appeal on jurisdictional grounds and the Fifth Circuit dismissed the appeal on July 6, 2021.

On May 21, 2021, the Bankruptcy Court certified its remand order to the state court and the Hodges Group has resumed litigating their claims in the state court. Shortly after this Court certified the remand, the Debtor nonsuited its counterclaims in the state court to prevent litigating these matters in multiple forums. The Debtor disputes liability on the notes because they were modified after execution and delivery without the consent of the Debtor, and the Debtor contends that such modification of the notes without consent would likely invalidate the notes. The Debtor is therefore disputing the liability and the amounts claimed under the Notes as a result of the modifications without consent. The Debtor believes it is a necessary party in the state court matter and that continued litigation in the state court violates the automatic stay. The Debtor filed a motion with the Bankruptcy Court to determine the applicability of the automatic stay to the Lawsuit and the Bankruptcy Court denied the Motion.

The Hodges Group consists of the largest claims in this Case, although the Debtor disputes the validity of these claims in full. Despite dismissing their claim in the Lawsuit against the Debtor in their effort to remand the Lawsuit back to the state court, Tejas Group, Ltd.; LAH III Family Specific Interest, Ltd. and Blackfoot Interest, Ltd. filed their proof of claim for $3,740,184.76, the amount it seeks under the Lawsuit, on March 11, 2021, and the Estate of Leland A. Hodges, Jr. filed a claim for $1,350,184.76. The Debtor contends that dismissal of their claims and subsequent filing of a proof of claim are conflicting and evidence bad faith of the Hodges Group. The Hodges Group maintained that they would dismiss their claims against the Debtor since the Fifth Circuit dismissed the appeal. The Hodges Group withdrew their proofs of claims on July 30, 2021.

The Debtor contends that the Bankruptcy Court should decide the claims that were filed in this Court but the withdrawal of the proofs of claims moots the objection to the proofs of claims.

The Debtor will pay the Hodges Group as set forth in Class 2 of the Plan which is $4,000,000.00 with interest which equates to approximately 78% of the amount listed in the proofs of claims that were filed by the Hodges Group prior to being withdrawn.

**3.03** In the Schedules of Assets and Liabilities filed in the bankruptcy case, the Debtor lists assets with an aggregate value of $4,000,100.00 as of the Petition Date. This amount consists of the aforementioned membership interest in 2999TC JMJ MGR, LLC, valued at $4,000,000.00, and $100 cash on hand.

**3.04** In the Schedules of Assets and Liabilities, the Debtor lists aggregate liabilities in the amount of $4,295,000.00 as of the Petition Date. The Claims of the Hodges Group are collectively the largest claim in this bankruptcy case, subject to the disputes raised in the litigation described above. The Hodges Group filed Proofs of Claim totaling $5,090,369.52 although these claims are disputed and have been withdrawn. For a complete listing and explanation of the Debtor's liabilities as of the Petition Date, parties should refer to the Schedules of Assets and Liabilities and any amendments thereto filed in this bankruptcy case.

**Current Operations**

**3.05** The Debtor's current operations are reflected in its monthly operating reports filed with the Court. The Debtor has no real operations at this time.

The Debtor has no current operations except that it is an investor and owner in the entity which owns real property and is developing a mixed-use condominium and hotel project in Dallas, Dallas County, Texas as further described herein.

**Funding of the Plan and Management of the Debtor**

**3.06** The Debtor will fund the Plan from the proceeds of a redemption of its $4,000,000.00 capital account by 2999TC JMJ MGR, LLC. This redemption will occur approximately six to nine months after the Effective Date of the Plan through a refinance of the Property by the property owners and recapitalization of all entities holding direct or indirect interests in the Property, including 2999TC JMJ MGR, LLC.

Information regarding the details of the redemption of the membership interest and the entities which own the Property is set forth in Section 3.01.

**3.07** Future management of the Debtor shall consist of the Debtor's president Tim Barton and his staff.

**Source of Information for Disclosure Statement**

**3.08** The source of information for this Disclosure Statement is the Debtor and its records, as well as the filings in this case.

## ARTICLE IV
## ANALYSIS AND VALUATION OF PROPERTY

**4.01** **Investments**

As of the Petition Date, the Debtor owned the aforementioned membership interest in 2999TC JMJ MGR, LLC, with a capital account valued at $4,000,000.00. The $4,000,000 value of the membership interest in the capital account of 2999TC JMJ MGR, LLC, is the Debtor's opinion of value based on the initial contribution of $4,000,000.00 to the capital account and the appreciated value of the land. The current value of the land is around $50M. The Debtor's interest in the membership interests in 2999TC JMJ MGR is 19.75% based on the proportion of its $4M capital contribution to the total $20.25M capital contribution.

The Debtor estimates that the value of the membership interest in 2999TC JMJ MGR, LLC in a forced liquidation sale, such as a sheriff's sale under Texas law, would yield net proceeds of approximately one-half (1/2) of the market value as scheduled by the Debtor based on the current state of the economy due to the effects of COVID-19. While these are the Debtor's opinion of value, the Debtor believes these estimates are accurate because of the Debtor's and its president's experience in developing land.

**4.02 Cash**

As of the Petition Date, the Debtor held cash on hand in the amount $100.00.

**4.03 Liquidation Analysis**

Liabilities shown below are as scheduled by the Debtor, unless the Claimant has filed a proof of claim stating a different amount.

The Debtor estimates that the value of the membership interest in 2999TC JMJ MGR, LLC in a forced liquidation sale, such as a sheriff's sale under Texas law, would yield net proceeds of approximately one-half (1/2) of the market value as scheduled by the Debtor.

As set forth in Section 4.01 of the Disclosure Statement as modified, while these are the Debtor's opinion of value, the Debtor believes these estimates of value are accurate because of the Debtor's and its president's experience in developing land.

**Liabilities**

| | | |
|---|---|---|
| Administrative Expenses and UST Fees | | $10,000[1] |
| Priority Tax Claims | | $0.0 |
| Class 1 | Unsecured Priority Claims | $0.0 |
| Class 2 | Claims of Hodges Group | $5,090,369.52[2] |
| Class 3 | General Unsecured Claims | $12,055.00 |
| Class 4 | Insider Claims | $190,000.00 |

1 Debtor's estimate.

2 These claims are disputed by the Debtor and have been withdrawn. The Hodges Group consists of L. Allen Hodges III, as Independent Executor of the Estate of Leland A. Hodges Jr., Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd.

| | | |
|---|---|---|
| Class 5 | Equity Interests | |
| | **Total Liabilities** | **$** 5,302,424.52 |

**<u>Assets</u>**

| | |
|---|---|
| Membership Interest in 2999TC JMJ MGR, LLC | $ 2,000,000.00[3] |
| Cash | $100.00 |
| Total Assets | $ 2,000,100.00 |
| **TOTAL ASSETS LESS TOTAL LIABILITIES** | **-$ 3,302,324.52** |

***NOTE:***

- **In a liquidation the Hodges Group would receive approximately 47% return on the amounts previously set forth in the Proofs of Claims, and General Unsecured Claimants would receive nothing.**

This Plan pays 100% to Allowed Claims, with interest and pays the Hodges Group $4,000,0000.00 with interest at the rate of 5%which equates to 78% of the amount listed in the proofs of claims that were filed by the Hodges Group prior to being withdrawn.

3 Debtor's estimate of the value of the membership interest in a forced sale (1/2 of market value).

# ARTICLE V
## SUMMARY OF THE PLAN OF REORGANIZATION

**A. CLASSIFICATION OF CLAIMS.** Under the Plan, the Debtor designates the following Classes of Claims and Interests pursuant to Bankruptcy Code Section 1123.

| **CLASSIFICATION OF CLAIMS** |
|---|
| Class 1: Priority Unsecured Claims other than Priority Tax Claims |
| Class 2: Claims of L. Allen Hodges III, as Independent Executor of the Estate of Leland A. Hodges Jr., Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. |
| Class 3: General Unsecured Claims |
| Class 4: Insider Claims |
| Class 5: Equity Interests |

**B. TREATMENT OF CLAIMS**

***NON-CLASSIFIED CLAIMS.*** The following Claims are not classified, pursuant to Bankruptcy Code Section 1123:

**Treatment of Administrative Claims**. Each holder of an Administrative Claim other than Professional Fee Administrative Claims shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Administrative Claim, (i) Cash equal to the unpaid portion of such Allowed Administrative Claim or (ii) such other treatment as to which the Debtor and such holder shall have agreed upon in writing; provided, however, that Allowed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Bankruptcy Case shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto. On or before the Effective Date, the Debtor or Reorganized Debtor shall pay or have paid in full all Allowed Administrative Claims. All Allowed Administrative Claims shall be paid by the Reorganized Debtor when they are due until the Bankruptcy Case is closed pursuant to a final decree, order of dismissal, or order of conversion. Until entry of such an order, the Reorganized Debtor shall file with the Bankruptcy Court and serve upon the United States Trustee a quarterly financial report. Any administrative ad valorem tax claims shall be paid pursuant to otherwise applicable state law. Besides the Office of the United States Trustee, Debtor has not scheduled, nor have any creditors filed claims in this Class. The US Trustee fees are not expected to exceed $1,625.00 quarterly until the case closes based on the expected quarterly distributions of the Debtor.

**Treatment of Professional Fee Administrative Claims.** All persons who are awarded compensation or reimbursement of expenses by the Bankruptcy Court in accordance with sections 330 or 331 of the Bankruptcy Code or entitled to the priorities established pursuant to sections 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code, shall be

paid in full, in Cash, the amounts allowed by the Bankruptcy Court on the later of the Effective Date or the date on which the order allowing such Claim becomes a Final Order, or upon such other terms as may be mutually agreed upon between such holder of an Allowed Professional Fee Claim and the Reorganized Debtor. Professional fees are not expected to exceed the retainer by more than $25,000.00.

**Treatment of Priority Tax Claims.** Priority Tax Claims shall be paid in full over sixty (60) months from the Effective Date at an interest rate of 5% per annum. Payments shall commence on the first day of the month following the Effective Date and continue on the first day of each month thereafter until paid in full. The Debtor believes no priority tax claims exist. Should any claims exist in this class, then to the extent allowed, the source of the funds used to pay any potential allowed unsecured priority claims on the first day of the third calendar month following the Effective Date is from contributions to the Debtor by Tim Barton.

**Title 28 U.S.C. Section 1930 Fees.** The Reorganized Debtor shall pay all post-Confirmation fees assessed by the Office of the United States Trustee until this Case is closed by the Court or the Reorganized Debtor is otherwise released from such obligations by the Court.

***CLASSIFIED CLAIMS.*** The following Claims are classified pursuant to Bankruptcy Code Section 1123, and are treated as follows:

**Class 1: Allowed Unsecured Priority Claims Other Than Priority Tax Claims**

Class 1 Claims shall consist of Unsecured Priority Claims other than Priority Tax Claims. The Debtor does not believe any such Claims exist. To the extent such Claims do exist, they shall be paid in full, with interest at the rate of 5% per annum, in six (6) equal monthly installments. Payments shall commence on the first (1st) day of the third (3rd) calendar month following the Effective Date and continue on the first day of each month thereafter until paid in full. Interest shall begin to accrue on the Effective Date. This Class is Impaired by the Plan and the holders of these Claims are entitled to vote to accept or reject the Plan.

**Class 2: Allowed Claims of L. Allen Hodges III, as Independent Executor of the Estate of Leland A. Hodges Jr., Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. (the "Hodges Group")**

Class 2 shall consist of the Allowed Claims of each member of the Hodges Group. The Hodges Group filed proofs of claim against the Debtor for an unsecured amount of $5,302,424.52 which were withdrawn on July 30, 2021. The Debtor disputes the validity of the Class 2 Claims, and objections to the Class 2 Claims are pending. The withdrawal of the claims moots the objection to the proof of claims.

The Debtor proposes to pay the Hodges Group claims owed by the Debtor, the amount of $4,000,000.000 over two years in equal monthly installments commencing on

the first day of the first month after the Effective Date and continuing the first day of each succeeding month with a final lump sum payment of the full remaining balance due two years from the anniversary of the Effective Date. Interest at the rate of 5% per annum shall begin to accrue on the Effective Date. The monthly payments will be calculated based on an amortization schedule of 5% interest per annum over a 30-year period equating to $21,472.86 monthly.

If the Reorganized Debtor fails to make any payment as set out above, that failure shall be an event of default. If the Reorganized Debtor fails to cure a monetary event of default within ten (10) days after receipt of written notice of default from this Claimant, then the Claimant may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies the Claimant may have under its loan documents or state law without application of the automatic stay; and/or (c) seek such relief as may be appropriate in the Court.

This Claim is Impaired and the holder of this Claim is entitled to vote to accept or reject the Plan.

**Class 3: Allowed General Unsecured Claims**

Class 3 shall consist of Allowed Unsecured Claims other than the Claims in Classes 2 and 4. Class 3 Claims shall be paid in full, over five years in equal monthly installments commencing on the first day of the month following the Effective Date and continuing on the first day of each succeeding month with a final lump sum payment of the full remaining balance due within 60 months from the first payment. Interest at the rate of 1% per annum shall begin to accrue on the Effective Date. This Class is Impaired and any holder of a Claim in this Class is entitled to vote to accept or reject the Plan.

**Class 4: Allowed Insider Claims**

Class 4 shall consist of the Allowed Claims of Insiders of the Debtor. Class 4 Claims shall be paid in full without interest, but only after all other Claimants in the Case have been paid in full as set out above. Class 4 Claimants are Impaired and are deemed to have rejected the Plan, but their claims will not be counted for or against Confirmation.

**Class 5 - Equity Interests**

All Equity Interests in the Debtor shall be retained.

## C. Creditor's Position on Plan

The Hodges Group believes the Debtor's Plan improperly classifies unsecured creditor claims in Class 2 and Class 3. The Hodges Parties believe that both their disputed claims and the general unsecured creditors should be placed within the same class, as these claims share common

priority rights against the Debtor and are held by third party claimants. The Hodges Group allege that the Debtor has improperly gerrymandered the classes of creditors to obtain plan confirmation.

The Debtor disagrees and states that it has properly classified general unsecured creditors pursuant to 11 U.S.C. § 1122 in that the Debtor's general unsecured creditors in Class 3 are business debts that are dissimilar to the Hodges Parties alleged claims in Class 2, in that the Class 3 Claims are known, undisputed, and have not been withdrawn by these creditors. Further, the Debtor proposes to pay the Hodges at a greater interest rate over a shorter period than the Class 3 Claims.

The Hodges Group alleges that the Debtor's Plan violates the Absolute Priority Rule and the Best Interest of Creditors' Test. Debtor disagrees as the Plan proposes to pay all creditors apart from the Hodges Group, 100% of their Allowed Claim with interest. The Hodges Group Claims will be treated as set forth in Class 2 and paid in the amount of $4,000,000.00 with interest which equates to approximately 78% of the amount listed in the proofs of claims that were filed by the Hodges Group prior to being withdrawn.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF PLAN

**6.01** **Implementation of Plan.** This Plan will be implemented, pursuant to § 1123(a)(5) of the Code, by the commencement of payments as called for above.

The Debtor owns a membership interest and a $4,000,000.00 capital account in 2999TC JMJ MGR, LLC, which is part of a group of entities collectively owning a 2.5-acre tract of real property located at 2999 Turtle Creek Boulevard in Dallas, Texas (the "Property"), to be developed into a luxury hotel and condominiums. The Debtor will fund the Plan from the proceeds of a redemption of its capital account by 2999TC JMJ MGR, LLC.

This redemption will occur approximately six - nine months after the Effective Date of the Plan through a refinance of the debt on the Property and recapitalization of all entities holding direct or indirect interests in the Property, including 2999TC JMJ MGR, LLC. **The Plan will pay all Allowed Claimants except for the Hodges Group, 100% of their Claims, with interest.** The Plan will pay the Hodges Group $4,000,000.00 with interest as set forth in Article V of the Plan. This equates to approximately 78% of the amount listed in the proofs of claims that were filed by the Hodges Group prior to being withdrawn.

Information regarding the details of the redemption of the membership interest and the entities which own the Property is set forth in Section 3.01.

## ARTICLE VII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.01** **Rejection of Executory Contracts and Unexpired Leases.** All of the Debtor's unexpired leases of real property and executory contracts are hereby deemed rejected as of the Effective Date of the Plan unless specifically assumed by separate motion and order prior to the

Confirmation Date or as part of Confirmation of a Plan in this case.

**7.02** **Reservation of Rights**. The Debtor shall have the right to assume or reject, pursuant to Bankruptcy Code Section 365, prior to the Confirmation Date, any executory contract or unexpired lease of real property (to the extent permitted under the Bankruptcy Code) and to the terms of this Plan.

**7.03** **Bar Date for Claims Based on Rejection**. If the rejection of an executory contract or an unexpired lease results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Reorganized Debtor or its properties or agents, successors, or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtor, by the earlier of (a) the end of the month following the period in which the Effective Date occurs or (b) such other deadline as the Court may set for asserting a Claim for such damages. Any Rejection Claim arising from the rejection of an unexpired lease or executory contract shall be treated as a General Unsecured Claim; *provided, however*, that any Rejection Claim based upon the rejection of an unexpired lease of real property either prior to the Confirmation Date or upon the entry of the Confirmation Order shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. Nothing contained herein shall be deemed an admission that such rejection gives rise to or results in a Claim or shall be deemed a waiver of any objections to such Claim if asserted.

## ARTICLE VIII
## FEASIBILITY OF PLAN

**8.01** The Debtor asserts that its Plan is feasible. The funds necessary to fund the Plan will come from the proceeds of a redemption of its $4,000,000.00 capital account by 2999TC JMJ MGR, LLC. This redemption will occur approximately six to nine months after the Effective Date of the Plan through a refinance of the debt on the Property and recapitalization of all entities holding direct or indirect interests in the Property, including 2999TC JMJ MGR, LLC. All causes of action shall remain fully vested in the Reorganized Debtor. The failure to identify a claim or cause of action is not specifically a waiver of such claim or cause of action. To the extent of any recovery on claims and causes of action that belong to the Reorganized Debtor as disclosed herein, if any, such funds will be contributed by the Reorganized Debtor (less costs and expenses associated with any litigation) to pay the Class 3 creditors with allowed claims.

The causes of action that belong to the Debtor, that are currently known by the Debtor are its counterclaims against the Hodges Parties that were the subject of the adversary proceeding that has been remanded to State Court. Although the Debtor voluntarily non-suited its claims against the Hodges Group after the case was remanded to the State Court, the causes of actions remain to be pursued by the Debtor.

### Procedure for Filing Proofs of Claims and Proofs of Interests

**8.02** All proofs of claims and proofs of interests must be filed by those Claimants and Equity Interest Holders who have not filed such instruments on or before the Bar Date fixed by the Court.

**8.03** If Claimants have already filed a proof of claim with the Court or are listed in the Debtor's Schedules as holding non-contingent, liquidated and undisputed claims, a proof of claim need not be filed. The schedules and amendments thereto are on file with the Court and are open for inspection during regular Court hours. If the equity security interest of an Equity Interest Holder is properly reflected in the book and records of the Debtor, a proof of interest need not be filed.

## ARTICLE IX
## EFECT OF CONFIRMATION

**9.01** Discharge and Release of Debtor. Pursuant to Bankruptcy Code Section 1141(d), confirmation of the Plan does discharge the Debtor.

**9.02** Legal Binding Effect. The provisions of the Plan, pursuant to the Bankruptcy Code Section 1141 shall bind the Debtor and all Creditors, whether or not they accept the Plan. The distributions provided for Claimants shall not be subject to any Claim by another creditor or interest holder by reason of any assertion of a contractual right of subordination.

**9.03** Discharge. Confirmation of the Plan shall result in the inability to commence or continue any judicial, administrative, or other action or proceeding on account of any Pre-Petition Date Claims against the Debtor or Reorganized Debtor. Except as provided in the Plan, from and after the Confirmation Date, all holders of Claims against the Debtor are restrained and enjoined by the Confirmation of the Plan: (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtor or Reorganized Debtor, or its property; (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Assets or the Debtor or Reorganized Debtor on account of such Claims; (c) from creating, perfecting, or enforcing any encumbrance of any kind against the Assets, or the Debtor or Reorganized Debtor on account of such Claims; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor or Reorganized Debtor on account of such Claims; and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan on account of such Claims; provided, however, that each holder of a Contested Claim may continue to prosecute its proof of Claim in the Bankruptcy Court and all holders of Claims shall be entitled to enforce its rights under the Plan and any agreements executed or delivered pursuant to or in connection with the Plan. Creditors shall not pursue claims against non-debtor third parties at the same time as their claims are being paid through the Plan.

## ARTICLE X
## ALTERNATIVES TO DEBTOR'S PLAN

**10.01** If this Plan is not confirmed, the Debtor's bankruptcy case may be converted to a case under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets of the Debtor for distribution to its Creditors in accordance with the priorities of the Code. It is also possible that the Debtor's case may be dismissed if this Plan is not confirmed.

The Hodges Group alleges there is insufficient disclosure of any releases of the Debtor, insiders, and/or related parties. The Debtor believes it has sufficiently disclosed that the Debtor will be discharged at confirmation and that Creditors shall not pursue claims against non-debtor third parties at the same time as their claims are being paid through the Plan.

## ARTICLE XI
## RISKS TO CREDITORS UNDER THE PLAN

**11.01** Claimants should be aware that there are a number of substantial risks involved in consummation of the Plan.

- The Debtor's plan provides for the development of land and the developing a mixed-use condominium and hotel project in Dallas, Dallas County, Texas as further described herein. 2999TC LP, LLC is a related entity to the project owner, through common ownership and/or control who used certain proceeds received from 2999TC LP, LLC towards the acquisition of property in Dallas, Texas upon which the project owner plans to develop a mixed-use luxury hotel and residences project.

The risks to creditors under the Plan all center around the fact that the property owners will need to obtain and close on a construction loan to refinance the debt on the Property, recapitalize and redeem a portion of the Debtor's $4M capital interest. In the very unlikely event that the property owners are unable to refinance the debt on the Property or recapitalize, due to such things as another recession, resurgence of the pandemic or unforeseen factors, then the Debtor will be in default under the Plan. The Debtor does not believe there are any other substantial risks involved in consummation of the Plan outside of closing on funding.

## ARTICLE XII
## TAX CONSEQUENCES TO THE DEBTOR

**12.01**THE DEBTOR IS ADVISED THERE ARE NO TAX CONSEQUENCES RELATED TO THE REDEMPTION. TO ENSURE COMPLIANCE WITH U.S. TREASURY DEPARTMENT CIRCULAR 230, HOLDERS OF CLAIMS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF UNITED STATES FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED OR RELIED UPON, AND CANNOT BE USED OR RELIED UPON, BY HOLDERS OF CLAIMS OR INTERESTS OR ANY OTHER PERSONS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON HOLDERS OF CLAIMS OR ANY OTHER PERSONS UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS INCLUDED HEREIN IN CONNECTION WITH THE PROMOTION OR MARKETING (WITHIN THE MEANING OF U.S. TREASURY DEPARTMENT CIRCULAR 230) OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS AND INTERESTS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISER.

A. Introduction

The following discussion summarizes certain material U.S. federal income tax consequences of the Plan to the Debtor and holders of Claims and Interests. The summary is provided for general informational purposes only and is based on the United States Internal Revenue Code of 1986, as amended (the "Tax Code"), the treasury regulations promulgated thereunder, judicial authority and current administrative rulings and practice, all as in effect as of the date hereof (except as otherwise noted below with regard to the American Recovery and Reinvestment Act of 2009), and all of which are subject to change, possibly with retroactive effect. Changes in any of these authorities or in their interpretation could cause the United States federal income tax consequences of the Plan to differ materially from the consequences described below. The United States federal income tax consequences of the Plan are complex and in important respects uncertain. No ruling has been requested from the Internal Revenue Service (the "Service"); no opinion has been requested from Debtors' or The Debtor's counsel concerning any tax consequence of the Plan; and no tax opinion is given by this Disclosure Statement.

The following discussion does not address all aspects of federal income taxation that may be relevant to a particular holder of a Claim or Interest in light of its particular facts and circumstances or to particular types of holders of Claims subject to special treatment under the Tax Code. For example, the discussion does not address issues of concern to broker-dealers or other dealers in securities, or foreign (non-U.S.) persons, nor does it address any aspects of state, local, or foreign (non-U.S.) taxation, or the taxation of holders of Interests in a Debtor. In addition, a substantial amount of time may elapse between the Confirmation Date and the receipt of a final distribution under the Plan. Events subsequent to the date of this Disclosure Statement, such as the enactment of additional tax legislation, court decisions or administrative changes, could affect the federal income tax consequences of the Plan and the transactions contemplated hereunder.

**THE DISCUSSION THAT FOLLOWS IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND PROFESSIONAL TAX ADVICE BASED ON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR INTEREST. EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT WITH ITS TAX ADVISORS REGARDING THE FEDERAL, STATE, LOCAL AND NON-U.S. TAX CONSEQUENCES OF THE PLAN.**

B. Certain Definitions

Except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined herein or in the Plan shall have the respective meanings assigned to them in this Article.

"***COD***" shall mean cancellation of indebtedness income.
"***NOL***" shall mean net operating loss.

C. Certain Material Federal Income Tax Consequences to the Debtor

Cancellation of a debtor's debt is generally taxable income to the Debtor. COD is the amount by which the indebtedness of a debtor discharged exceeds any consideration given in exchange therefore. Cancellation of a debt may not necessarily be COD, however. To the extent that a debtor

is insolvent, or if a Debtor is in bankruptcy, as is the case here, the Tax Code permits the debtor to exclude the COD from its gross income. The statutory exclusion for COD in a title 11 case generally excludes COD from gross income if the discharge is granted by a court to a debtor under its jurisdiction in a title 11 case, as is sought herein.

The price for the bankruptcy COD exclusion (as well as the insolvency exclusion) is reduction of the debtor's tax attributes to the extent of the COD income, generally in the following order: NOLs for the year of the discharge and NOL carryovers from prior years; general business tax credit carryovers; minimum tax credit available as of the beginning of the year following the year of discharge; net capital loss for the year of discharge and capital loss carryovers from prior years; basis of the debtor's assets; passive activity loss and credit carryovers from the year of discharge; and foreign tax credit carryovers to or from the year of discharge. The reduction of attributes does not occur until after the end of the debtor's tax year in which the COD occurred, so they are available to the debtor in determining the amount of its income, loss and tax liability for the year of discharge.

As a result of the implementation of the Plan, the Debtor may have COD and potential attribute reduction. Because any reduction in tax attributes does not effectively occur until the first day of the taxable year following the taxable year in which the COD is incurred, any resulting COD, on its own, should not impair the ability of the Debtor to use their tax attributes (to the extent otherwise available) to reduce their tax liability, if any, otherwise resulting from the implementation of the Plan.

Under section 382 of the Tax Code, if a corporation undergoes an "ownership shift," the amount of its Pre-Change Losses that may be utilized to offset future taxable income generally is subject to an annual limitation. The Plan calls for an ownership change and as such any current owner of the Debtor should consult his own tax adviser concerning the effect of the Plan.

The United States federal income tax consequences of payment of Allowed Claims pursuant to the Plan will depend on, among other things, the consideration received, or deemed to have been received, by the holder of the Allowed Claim, whether such holder reports income on the accrual or cash method, whether such holder receives distributions under the Plan in more than one taxable year, whether such holder's Claim is allowed or disputed at the Effective Date, whether such holder has taken a bad debt deduction or worthless security deduction with respect to its Claim.

In general, a holder of a Claim should recognize gain or loss equal to the amount realized under the Plan in respect of its Claim less the amount of such holder's basis in its Claim. Any gain or loss recognized in the exchange may be long-term or short-term capital gain or loss or ordinary income or loss, depending upon the nature of the Claim and the holder, the length of time the holder held the Claim and whether the Claim was acquired at a market discount. If the holder realizes a capital loss, its deduction of the loss may be subject to limitations under the Tax Code. The holder's aggregate tax basis for any property received under the Plan generally will equal the amount realized. The amount realized by a holder generally will equal the sum of the cash and the fair market value of any other property received (or deemed received) by the holder under the Plan on the Effective Date and/or any subsequent distribution date, less the amount (if any) allocable to Claims for interest. All holders of Allowed Claims are urged to consult their tax advisors. A

holder of a Claim constituting an installment obligation for tax purposes may be required to recognize currently any gain remaining with respect to the obligation if, pursuant to the Plan, the obligation is considered to be satisfied at other than its face value, distributed, transmitted, sold or otherwise disposed of within the meaning of Section 453B of the Tax Code.

If the creditors give up all or a portion of their debt in return for stock the Company would change the debt to equity on its books and the Creditor would own their stock with a cost basis equal to the amount of debt given up to purchase it.

D. Importance of Obtaining Professional Tax Assistance

The proposed redemption of the membership interests in the capital account is the same price of the issuance of $4M and the Debtor does not believe there will be an tax consequence to the Debtor from redeeming the membership interest.

The foregoing discussion is intended only as a summary of certain U.S. federal income tax consequences of the Plan, and is not a substitute for careful tax planning with a tax professional. The above discussion is for general information purposes only and is not tax advice. The tax consequences are in many cases uncertain and may vary depending on a holder's individual circumstances.

HOLDERS OF CLAIMS ARE URGED TO CONSULT WITH THEIR TAX ADVISORS ABOUT THE FEDERAL, STATE, LOCAL AND NON-U.S. TAX CONSEQUENCES OF THE PLAN.

## ARTICLE XIII
## PENDING LITIGATION

**13.01** As of the date of the filing of this Disclosure Statement the significant matters pending are as follows:

- Objection to Claim of Tejas Group, Ltd., LAH III Family Specific Interest, Ltd. and Blackfoot Interest, Ltd., Objection to Claim of The Estate of Leland A. Hodges, Jr. The withdrawal of these claims moots this proceeding.

## ARTICLE XIV
## SUMMARY OF SIGNIFICANT ORDERS ENTERED DURING THE CASE

**14.01** As of the date of the filing of this Disclosure Statement the significant orders in this case deal with the remand, abstention and dismissal as set forth above. The dismissal order was on appealed to the Fifth Circuit but on July 6, 2021, the Fifth Circuit dismissed the appeal for lack of jurisdiction.

Respectfully Submitted By:

*/s/ Joyce W. Lindauer*

Joyce W. Lindauer
Texas State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, TX 75202
Telephone: (972) 503-4033
joyce@joycelindauer.com

**ATTORNEYS FOR THE DEBTOR**

*/s/Timothy Barton*

President of the Debtor as
Proponent of the Plan

Joyce W. Lindauer
State Bar No. 21555700
Kerry S. Alleyne
State Bar No. 24066090
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR DEBTOR

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **2999TC LP, LLC,** | § | **CASE NO. 20-43204-mxm-11** |
| | § | |
| **DEBTOR.** | § | **CHAPTER 11** |

**DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION**
**DATED JULY 19, 2021**

**TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:**

COMES NOW 2999TC LP, LLC ("Debtor"), the Debtor in the above-styled and numbered case, and files this its Third Amended Plan of Reorganization (the "Plan"). The Debtor owns a membership interest and capital account in 2999TC JMJ MGR LLC, which is part of a group of entities owning a 2.5-acre tract of real property in Dallas, Texas to be developed into a luxury hotel and condominiums. Periodic financial reports will be filed with the Court, as required by the Bankruptcy Code, covering the profitability, projections of cash receipts and disbursements for a reasonable period. These reports shall be available on the Court's PACER site using the Debtor's name and/or case number as referenced above or can be also obtained from Debtor's counsel by written request.



EXHIBIT "A"
PG 27

EXHIBIT 50

# TABLE OF CONTENTS

ARTICLE I - DEFINITIONS AND USE OF TERMS ..... 3

ARTICLE II - CONCEPT OF THE PLAN ..... 6

ARTICLE III - GENERAL TERMS AND CONDITIONS ..... 7

ARTICLE IV - DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS ..... 8

ARTICLE V- PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS ..... 8

ARTICLE VI - MEANS FOR IMPLEMENTATION OF PLAN ..... 10

ARTICLE VII - TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..... 11

ARTICLE VIII - ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS ..... 11

ARTICLE IX - EFFECT OF CONFIRMATION ..... 12

ARTICLE X - MISCELLANEOUS PROVISIONS ..... 13

ARTICLE XI - MODIFICATION OF THE PLAN ..... 15

ARTICLE XII - RETENTION OF JURISDICTION ..... 15

# ARTICLE I
## DEFINITIONS AND USE OF TERMS

**Defined Terms**. Unless the context otherwise requires, capitalized terms shall have the meanings set forth in this section 1.01.

"**Administrative Expense Claim**" means an administrative expense or claim described in Bankruptcy Code § 503 and entitled to administrative priority pursuant to Bankruptcy Code § 507(a)(1), including, but not limited to, Fee Claims.

"**Allowed Amount**" means the amount of any Allowed Claim.

"**Allowed Claim**" means a Claim against the Debtor allowable under the Bankruptcy Code to the extent that: (i) a Proof of Claim or request for payment was timely filed, or, with leave of the Bankruptcy Court, late filed, and as to which no objection has been timely filed with the Bankruptcy Court, or, if filed, is allowed by a Final Order, unless otherwise provided in this Plan; (ii) the Claim is scheduled and not listed as disputed, contingent, or unliquidated, and no objection has been timely filed or, if filed, is allowed by a Final Order; or (iii) with respect to an Administrative Expense Claim or Fee Claim, the Administrative Expense Claim or Fee Claim has been approved by a Final Order upon notice and application to the Bankruptcy Court.

"**Assets**" means property of the Estate.

"**Avoidance Actions**" means any and all rights, claims, and causes of action which a trustee, Debtor, or other appropriate party in interest would be able to assert on behalf of the Estate under applicable state statutes or the avoidance provisions of chapter 5 of the Bankruptcy Code, including actions under one or more of the provisions of Bankruptcy Code §§ 506, 542-551, and 553.

"**Bankruptcy Case**" or "**Case**" means this bankruptcy case: Case No. 20-43204-mxm-11, styled as 2999TC LP, LLC, pending before the Bankruptcy Court.

"**Bankruptcy Code**" or "**Code**" means the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, as amended.

"**Bankruptcy Court**" or "**Court**" means the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, or other such court that may have jurisdiction with respect to the reorganization of the Debtor pursuant to Chapter 11 of the Bankruptcy Code.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as amended, and "**Bankruptcy Rule**" refers to a specific rule therein.

"**Bar Date**" means March 11, 2021, the deadline established by the Bankruptcy Court pursuant to Bankruptcy Rule 3003(c)(3), after which any Proof of Claim may not be timely filed, except Claims held by governmental agencies.

"**Business Day**" shall mean any day that is not a Saturday, Sunday, or one of the legal holidays listed in Bankruptcy Rule 9006(a).

"**Claim**" shall have the meaning set forth in Bankruptcy Code § 101(5).

"**Claimant**" or "**Creditor**" means the holder of a Claim or interest in Assets.

"**Class**" means any class into which Claims are classified pursuant to the Plan. Each subclass of a class shall be treated as a separate class.

**"Collateral"** means the real or personal property securing a Secured Claim.

"**Confirmation**" means the Bankruptcy Court's entry of the Confirmation Order.

"**Confirmation Date**" means the date on which the Order confirming this Plan is entered.

"**Confirmation Hearing**" means the hearing or hearings held before the Bankruptcy Court in which the Debtors will seek Confirmation of this Plan.

"**Confirmation Order**" means the Order confirming this Plan.

"**Contested**" when used with respect to a Claim, means a Claim against the Debtor: (i) that is listed in the Debtor's Schedules of Assets and Liabilities as disputed, contingent, or unliquidated; (ii) that is listed in the Debtor's Schedules of Assets and Liabilities as undisputed, liquidated, and not contingent and as to which a Proof of Claim has been filed with the Bankruptcy Court, to the extent the Proof of Claim amount exceeds the scheduled amount; (iii) that is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (iv) as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

"**Debtor**" means 2999TC LP, LLC, the Debtor herein. Where the context so requires, "**Debtor**" shall also include the Reorganized Debtor.

"**Disputed**" with respect to a Claim means either: (i) a Claim which has been objected to by the Debtor; or (ii) a Claim that is listed on the Debtor's bankruptcy schedules as "disputed, contingent or unliquidated" and for which such Creditor or Interest holder has not filed a Proof of Claim.

"**Effective Date**" means the thirtieth (30th) day after the Confirmation Date.

"**Estate**" means the bankruptcy estate of the Debtor in this Case.

"**Fee Claim**" means a Claim under Bankruptcy Code §§ 330 or 503 for allowance of compensation and reimbursement of expenses to professionals in this Bankruptcy Case.

"**Fee Application**" means an application filed with the Bankruptcy Court for allowance of a Fee Claim.

"**Final Order**" means an Order as to which any appeal that has been taken has not been stayed following the expiration of the time for appeal or has been resolved, or as to which the time for appeal has expired.

"**Impaired**" means the treatment of an Allowed Claim or Interest pursuant to the Plan unless, with respect to such Claim or Interest, either: (i) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest; (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after occurrence of a default, the Debtor (A) cures any default that occurred before or after the commencement of the Chapter 11 Case on the Petition Date, other than default of the kind specified in § 365(b)(2) of the Bankruptcy Code; (B) reinstates the maturity of such Claim or Interest as such maturity existed before such default; (C) compensates the holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (D) does not otherwise alter the legal, equitable or contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest; or (iii) the Plan provides that on the Effective Date, the holder of such Claim or Interest receives, on account of such Claim or Interest, cash equal to the Allowed Amount of such Claim or Interest.

"**Insider**" has the meaning provided by § 101(31) of the Bankruptcy Code.

"**Interest**" means any equity or ownership interest in the Debtor.

"**Lien**" means any charge against or interest in property to secure payment of debt or performance of an obligation and includes a judicial lien, security interest, and deed of trust, mortgage and property tax lien.

"**Order**" means an Order of the Bankruptcy Court.

"**Petition Date**" means October 16, 2020, the date on which the Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code.

"**Plan**" means this *Chapter 11 Plan of Reorganization*, including any amendments, modifications or corrections made thereto pursuant to the Bankruptcy Code.

"**Priority Tax Claim**" means a Claim entitled to priority pursuant to Bankruptcy Code § 507(a)(8).

**"Priority Wage Claim"** means a Claim entitled to priority pursuant to Bankruptcy Code § 507(a)(4).

**"Priority Unsecured Claim"** means an Unsecured Claim entitled to priority under Bankruptcy Code § 507(a), except Priority Tax Claims and Priority Wage Claims.

"**Proof of Claim**" means a written statement setting forth a Creditor's Claim filed in this Case and conforming substantially to the appropriate official form.

**"Reorganized Debtor"** means the Debtor as it exists after Confirmation of the Plan.

"**Schedules and Statements**" means the Debtor's bankruptcy schedules A/B, D-H and the Statement of Financial Affairs.

"**Secured Claim**" means a Claim that is secured within the meaning of Bankruptcy Code § 506(a). Should the value of the Collateral securing a Secured Claim be less than the amount of the claim, the claim will be bifurcated into a Secured Claim equal to the value of the Collateral and a general unsecured claim for the remainder, pursuant to Bankruptcy Code § 506(d).

"**Unsecured Claim**" means any Claim that is not a Secured Claim or an Administrative Expense Claim and that is not entitled to priority treatment under Bankruptcy Code § 507.

## ARTICLE II
## CONCEPT OF THE PLAN

**2.01** The Plan is a plan of reorganization. The Debtor shall continue its business after the Confirmation Date. The Debtor owns a membership interest and a $4,000,000.00 capital account in 2999TC JMJ MGR, LLC, which is part of a group of entities collectively owning a 2.5-acre tract of real property located at 2999 Turtle Creek Boulevard in Dallas, Texas (the "Property"), to be developed into a luxury hotel and condominiums. The Debtor will fund the Plan from the proceeds of a redemption of its capital account by 2999TC JMJ MGR, LLC. This redemption will occur approximately six to nine months after the Effective Date of the Plan through a refinance of the debt on the Property and recapitalization of all entities holding direct or indirect interests in the Property, including 2999TC JMJ MGR, LLC. **The Plan will pay all Allowed Claimants except for the Hodges Group, 100% of their Claims, with interest**. The Plan will pay the Hodges Group $4,000,000.00 with interest as further set forth in Article V of the Plan. This equates to 78% of the amount set forth in the Proofs of Claim filed by the Hodges Group on March 11, 2021. The Hodges Group withdrew their proofs of claims on July 30, 2021.

**2.02** Prior to the filing of this case the Debtor was engaged in litigation in the case of *L. Allen Hodges III, as Independent Executor of the Estate of Leland A. Hodges Jr., Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. v. 2999TC LP, LLC, JMJ Development, LLC, and Tim Barton*, Cause No. 141-316567-20 in the 141st Judicial District Court of Tarrant County, Texas (the "Lawsuit"). The Lawsuit was removed to the Bankruptcy Court by the Debtor upon the filing of this Bankruptcy Case. Subsequently, the plaintiffs in the Lawsuit (hereinafter referred to as the "Hodges Group") dismissed their claims against the Debtor and the Bankruptcy Court remanded the Lawsuit back to the state court for further determination. The Debtor appealed the Court's order remanding the Lawsuit and dismissing the Hodges Group's claims. The United States District Court for the Northern District of Texas, Fort Worth Division affirmed the bankruptcy court's order, and the Debtor appealed the portion of the order pertaining to the dismissal of the claims against the Debtor to the Fifth Circuit Court of Appeals. On July 6, 2021, the Fifth Circuit dismissed the appeal on jurisdictional grounds. Additional information on

the procedural history of the appeal is set forth in the Third Amended Disclosure Statement accompanying this Plan. The Hodges Group consists of the largest Claims in this Case, although the Debtor disputes the validity of these Claims in full, and the Debtor's objection to the Hodges Group Claims which are pending adjudication by the Court, have now been mooted by the withdrawal of the claims.

## ARTICLE III
## GENERAL TERMS AND CONDITIONS

**3.01** **Treatment of Claims**. This Plan is intended to resolve all Claims against the Debtor and/or property of the Debtor of whatever character, whether contingent or liquidated, or whether allowed by the Bankruptcy Court pursuant to Bankruptcy Code Section 502(a). However, only Allowed Claims will receive payments under the Plan. The Plan is designed to ensure that Claimants shall receive at least as much pursuant to this Plan as they would receive in a liquidation pursuant to Chapter 7 of the Bankruptcy Code.

**3.02** **Time for Filing Claims**. The holder of any Administrative Claim other than (i) a Fee Claim, (ii) a liability incurred and paid in the ordinary course of business by the Debtor, or (iii) an Allowed Administrative Claim, must file with the Bankruptcy Court and serve on the Debtor and its respective counsel, notice of such Administrative Claim within thirty (30) days after the Effective Date. At a minimum, such notice must identify (i) the name of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim. Failure to file this notice timely and properly shall result in the Administrative Claim being forever barred and discharged.

Each Person asserting an Administrative Expense that is a Fee Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court, and serve on the Debtor's counsel and the U. S. Trustee, a Fee Application within sixty (60) days after the Effective Date.

A person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

Liabilities incurred from the Petition Date through the Effective Date in the ordinary course of business shall be paid in the ordinary course of business by the Debtor.

**3.03** **Modification to the Plan**. In accordance with Bankruptcy Rule 3019, to the extent applicable, this Plan may be modified or amended upon application of the Debtor, or corrected prior to the Confirmation Date, provided that notice and an opportunity for hearing have been given to any affected party. The Plan may be modified at any time after Confirmation and before the Effective Date, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code, the circumstances warrant such modification and Debtor consents thereto in writing.

## ARTICLE IV
## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

The Debtor designates the following Classes of Claims and Interests pursuant to Bankruptcy Code Section 1123.

| CLASSIFICATION OF CLAIMS |
|---|
| Class 1: Priority Unsecured Claims other than Priority Tax Claims |
| Class 2 – Claims of L. Allen Hodges III, as Independent Executor of the Estate of Leland A. Hodges Jr., Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. |
| Class 3: General Unsecured Claims |
| Class 4: Insider Claims |
| Class 5: Equity Interests |

## ARTICLE V

## PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS

***A. NON-CLASSIFIED CLAIMS.*** The following Claims are not classified, pursuant to Bankruptcy Code Section 1123:

**Treatment of Administrative Claims**. Each holder of an Administrative Claim other than Professional Fee Administrative Claims shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Administrative Claim, (i) Cash equal to the unpaid portion of such Allowed Administrative Claim or (ii) such other treatment as to which the Debtor and such holder shall have agreed upon in writing; provided, however, that Allowed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Bankruptcy Case shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto. On or before the Effective Date, the Debtor or Reorganized Debtor shall pay or have paid in full all Allowed Administrative Claims. All Allowed Administrative Claims shall be paid by the Reorganized Debtor when they are due until the Bankruptcy Case is closed pursuant to a final decree, order of dismissal, or order of conversion. Until entry of such an order, the Reorganized Debtor shall file with the Bankruptcy Court and serve upon the United States Trustee a quarterly financial report. Any administrative ad valorem tax claims shall be paid pursuant to otherwise applicable state law.

**Treatment of Professional Fee Administrative Claims.** All persons who are awarded compensation or reimbursement of expenses by the Bankruptcy Court in accordance with sections 330 or 331 of the Bankruptcy Code or entitled to the priorities established pursuant to sections 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code, shall be paid in full, in Cash, the amounts allowed by the Bankruptcy Court on the later of the Effective Date or the date on which the order allowing such Claim becomes a Final Order, or upon such other terms as may be mutually agreed upon between

such holder of an Allowed Professional Fee Claim and the Reorganized Debtor.

**Treatment of Priority Tax Claims.** Priority Tax Claims shall be paid in full over sixty (60) months from the Effective Date at an interest rate of 5% per annum. Payments shall commence on the first day of the month following the Effective Date and continue on the first day of each month thereafter until paid in full.

**Title 28 U.S.C. Section 1930 Fees.** The Reorganized Debtor shall pay all post-Confirmation fees assessed by the Office of the United States Trustee until this Case is closed by the Court or the Reorganized Debtor is otherwise released from such obligations by the Court.

***B. CLASSIFIED CLAIMS.*** The following Claims are classified pursuant to Bankruptcy Code Section 1123, and are treated as follows:

**Class 1: Allowed Unsecured Priority Claims Other Than Priority Tax Claims**

Class 1 Claims shall consist of Unsecured Priority Claims other than Priority Tax Claims. The Debtor does not believe any such Claims exist. To the extent such Claims do exist, they shall be paid in full, with interest at the rate of 5% per annum, in six (6) equal monthly installments. Payments shall commence on the first (1st) day of the third (3rd) calendar month following the Effective Date and continue on the first day of each month thereafter until paid in full. Interest shall begin to accrue on the Effective Date. This Class is Impaired by the Plan and the holders of these Claims are entitled to vote to accept or reject the Plan.

**Class 2: Allowed Claims of L. Allen Hodges III, as Independent Executor of the Estate of Leland A. Hodges Jr., Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. (the "Hodges Group")**

Class 2 shall consist of the Allowed Claims of each member of the Hodges Group. The Hodges Group filed proofs of claim against the Debtor for an unsecured amount of $5,302,424.52 which were withdrawn on July 30, 2021. The Debtor disputed the validity of the Class 2 Claims and objected to the Class 2 Claims. The withdrawal of the claims moots the objection to the proof of claims.

The Debtor proposes to pay the Hodges Group claims owed by the Debtor, the amount of $4,000,000.000 over two years in equal monthly installments commencing on the first day of the first month after the Effective Date and continuing the first day of each succeeding month with a final lump sum payment of the full remaining balance due two years from the anniversary of the Effective Date. Interest at the rate of 5% per annum shall begin to accrue on the Effective Date. The monthly payments will be calculated based on an amortization schedule of 5% interest per annum over a 30-year period equating to $21,472.86 monthly.

If the Reorganized Debtor fails to make any payment as set out above, that failure shall be an event of default. If the Reorganized Debtor fails to cure a monetary event of default within ten (10) days after receipt of written notice of default from this Claimant, then the Claimant may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies the Claimant may have under its loan documents or state law without application of the automatic stay; and/or (c) seek such relief as may be appropriate in the Court.

This Claim is Impaired and the holder of this Claim is entitled to vote to accept or reject the Plan.

**Class 3: Allowed General Unsecured Claims**

Class 3 shall consist of Allowed Unsecured Claims other than the Claims in Classes 2 and 4. Class 3 Claims shall be paid in full, over five years in equal monthly installments commencing on the first day of the month following the Effective Date and continuing on the first day of each succeeding month with a final lump sum payment of the full remaining balance due within 60 months from the first payment. Interest at the rate of 1% per annum shall begin to accrue on the Effective Date. This Class is Impaired, and any holder of a Claim in this Class is entitled to vote to accept or reject the Plan.

**Class 4: Allowed Insider Claims**

Class 4 shall consist of the Allowed Claims of Insiders of the Debtor. Class 4 Claims shall be paid in full without interest, but only after all other Claimants in the Case have been paid in full as set out above. Class 4 Claimants are Impaired and are deemed to have rejected the Plan, but their claims will not be counted for or against Confirmation.

**Class 5 - Equity Interests**

All Equity Interests in the Debtor shall be retained.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF PLAN

**6.01 Implementation of Plan**. This Plan will be implemented, pursuant to Section 1123(a)(5) of the Code, by the commencement of payments as called for above.

Upon the Effective Date, all property of the Debtor and its Estate shall vest in the Reorganized Debtor.

## ARTICLE VII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.01 Rejection of Executory Contracts and Unexpired Leases**. All executory contracts and unexpired leases not assumed by the Debtor as of the Confirmation Date shall be deemed as rejected by this Plan.

**7.02 Reservation of Rights**. The Debtor shall have the right to assume or reject, pursuant to Bankruptcy Code Section 365, prior to the Confirmation Date, any executory contract or unexpired lease of real property (to the extent permitted under the Bankruptcy Code).

**7.03 Bar Date for Claims Based on Rejection**. If the rejection of an executory contract or an unexpired lease results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Plan Proponent or their properties or agents, successors, or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Reorganized Debtor, by the earlier of (a) the end of the month following the period in which the Effective Date occurs or (b) such other deadline as the Court may set for asserting a Claim for such damages. Any Rejection Claim arising from the rejection of an unexpired lease or executory contract shall be treated as a General Unsecured Claim; *provided, however*, that any Rejection Claim based upon the rejection of an unexpired lease of real property either prior to the Confirmation Date or upon the entry of the Confirmation Order shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. Nothing contained herein shall be deemed an admission that such rejection gives rise to or results in a Claim or shall be deemed a waiver of any objections to such Claim if asserted.

## ARTICLE VIII
## ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS

**8.01 The Debtor's Causes of Action**. Except as otherwise released pursuant to the Plan, all Claims recoverable under Section 550 of the Bankruptcy Code, all Claims against third parties on account of an indebtedness, and all other Claims of any kind or character whatsoever owed to or in favor of the Debtor or Reorganized Debtor or the Estate to the extent not specifically compromised and released pursuant to this Plan or any agreement referred to and incorporated herein, are hereby preserved and retained for enforcement by the Reorganized Debtor for the benefit of the Creditors subsequent to the Effective Date. This Plan shall not estop the Debtor or Reorganized Debtor from asserting any claim or cause of action whether disclosed or not.

Prior to the filing of this case the Debtor was engaged in litigation in the case of *L. Allen Hodges III, as Independent Executor of the Estate of Leland A. Hodges Jr., Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. v. 2999TC LP, LLC, JMJ Development, LLC, and Tim Barton*, Cause No. 141-316567-20 in the 141st Judicial District Court of Tarrant County, Texas (the "Lawsuit"). The Lawsuit was removed to the Bankruptcy Court by the Debtor upon the filing of this Bankruptcy Case then remanded by the Bankruptcy Court back to the state court. The Debtor appealed the Court's order remanding the Lawsuit.

The United States District Court for the Northern District of Texas, Fort Worth Division affirmed the bankruptcy court's orders and the Debtor appealed the portion of the order pertaining to the dismissal of the claims against the Debtor to the Fifth Circuit Court of Appeals. The Fifth Circuit dismissed the appeal on July 6, 2021, on jurisdictional grounds. The Hodges Group withdrew their Claims on July 30, 2021.

The causes of action that belong to the Debtor, that are currently known by the Debtor are its counterclaims against the Hodges Group that were the subject of the adversary proceeding that has been remanded to State Court. Although the Debtor voluntarily non-suited its claims against the Hodges Group after the case was remanded to the State Court, the causes of actions remain to be pursued by the Debtor.

**8.02 Objections to Claims.** Any party authorized by the Bankruptcy Code may object to the allowance of Pre-Petition Date Claims at any time prior to sixty (60) days after the Effective Date and, as to Rejection Claims, at any time prior to sixty (60) days after the filing of any such Rejection Claim. Any proof of Claim filed after the Court sets bar dates shall be of no force and effect and shall be deemed disallowed. All Contested Claims shall be litigated to Final Order; *provided, however,* that the Debtor or Reorganized Debtor may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court. Notwithstanding the foregoing, a person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

No distributions under this Plan shall be made to the holder of a Claim that is in dispute, unless and until such Claim becomes an Allowed Claim. If a Claim is disputed in whole or in part because the Debtor or Reorganized Debtor asserts a right of offset against such Claim or recoupment against the holder of such Claim, then, if and to the extent the Claim giving rise to the offset or recoupment is sustained by Final Order, the Claim in dispute shall be reduced or eliminated and, if applicable, the holder of such Claim shall be required to pay the amount of such offset or recoupment, less the amount of its Allowed Claim. In addition, any party authorized by the Bankruptcy Code, at any time, may request that the Court estimate any contingent, disputed or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code, regardless of any prior objections.

## ARTICLE IX
## EFFECT OF CONFIRMATION

**9.01 Discharge and Release of Debtor**. Pursuant to Bankruptcy Code Section 1141(d), confirmation of this Plan does discharge the Debtor.

**9.02 Legal Binding Effect**. The provisions of this Plan, pursuant to the Bankruptcy Code Section 1141 shall bind the Debtor and all Creditors, whether or not they accept this Plan. The distributions provided for Claimants shall not be subject to any Claim by another creditor or interest holder by reason of any assertion of a contractual right of subordination.

**9.03 Discharge**. Confirmation of the Plan shall result in the inability to commence or

continue any judicial, administrative, or other action or proceeding on account of any Pre-Petition Date Claims against the Debtor or Reorganized Debtor.

Except as provided in the Plan, from and after the Confirmation Date, all holders of Claims against the Debtor are restrained and enjoined by the Confirmation of the Plan: (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtor or Reorganized Debtor, or its property; (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Assets or the Debtor or Reorganized Debtor on account of such Claims; (c) from creating, perfecting, or enforcing any encumbrance of any kind against the Assets, or the Debtor or Reorganized Debtor on account of such Claims; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor or Reorganized Debtor on account of such Claims; and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan on account of such Claims; provided, however, that each holder of a Contested Claim may continue to prosecute its proof of Claim in the Bankruptcy Court and all holders of Claims shall be entitled to enforce its rights under the Plan and any agreements executed or delivered pursuant to or in connection with the Plan. Creditors shall not pursue claims against non-debtor third parties at the same time as their claims are being paid through the Plan.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

**10.01** **Request for Relief Under Bankruptcy Code Section 1129**. In the event any Impaired Class shall fail to accept this Plan in accordance with Bankruptcy Code Section 1129(a), the Plan Proponent reserves the right to, and does hereby request the Bankruptcy Court to confirm the Plan in accordance with Bankruptcy Code Section 1129(b).

**10.02** **Revocation**. The Plan Proponent reserves the right to revoke and withdraw this Plan at any time prior to the Confirmation Date.

**10.03** **Effect of Withdrawal or Revocation**. If the Plan Proponent revokes or withdraws this Plan prior to the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.

**10.04** **Due Authorization by Creditors**. Each and every Claimant who elects to participate in the distributions provided herein warrants that it is authorized to accept in consideration of its Claim against the Debtor the distributions provided in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

**10.05** **Entire Agreement**. This Plan, as described herein, the Confirmation Order, and all other documents and instruments to effectuate this Plan provided for herein, constitute the entire agreement and understanding among the parties hereto relating to the subject matter hereof and supersedes all prior discussions and documents.

**10.06** **Section 1146 Exemption.** Pursuant to Section 1146 of the Bankruptcy Code, the issuance, transfer or exchange or any security under this Plan or the making or delivery of any instrument or transfer pursuant to, in implementation of or as contemplated by this Plan or the transfer of any property pursuant to this Plan shall not be taxed under any federal, state or local law imposing a stamp, transfer or similar tax or fee.

**10.07** **Provisions Governing Distributions.** All payments and distributions under the Plan shall be made by the Reorganized Debtor as indicated. Any payments or distributions to be made by the Plan Proponent pursuant to the Plan shall be made as soon as reasonably practicable after the Effective Date, except as otherwise provided for in the Plan, or as may be ordered by the Bankruptcy Court. Any payment or distribution by the Reorganized Debtor pursuant to the Plan, to the extent delivered by the United States Mail, shall be deemed made when deposited into the United States Mail.

Payments of Cash to be made by the Reorganized Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth on the proofs of Claim or proofs of interest filed by such holders (or at the last known addresses of such holders if no proof of Claim or proof of interest is filed). All Claims for undeliverable distributions shall be made on or before the second anniversary of the Effective Date. After such date, all unclaimed property shall remain the property of the Reorganized Debtor and the Claim of any other holder with respect to such unclaimed property shall be discharged and forever barred.

Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of delivery thereof. Requests for reissuance of any check shall be made directly to the Plan Proponent by the holder of the Allowed Claim to whom such check originally was issued. Any claim in respect of such a voided check within ninety (90) days after the date of delivery of such check. After such date, all Claims in respect of void checks shall be discharged and forever barred, and the amount of such checks shall become Unclaimed Property and returned to the Reorganized Debtor.

No interest shall be paid on any Claim unless, and only to the extent that, the Plan specifically provides otherwise.

**10.08** **Governing Law.** Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the internal laws of the State of Arkansas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

**10.09** **Default**. Unless otherwise stated in this Plan, if the Reorganized Debtor fails to satisfy any of the obligations under this Plan and such default is not cured within 30 business days of the date of transmission of notice of the default to the Reorganized Debtor, then the defaulted party may pursue all of its remedies outside of the Bankruptcy Court, including, but not limited to, foreclosure on its lien(s) on property. For purposes of this provision, notice shall be provided to the Reorganized Debtor, c/o Joyce Lindauer, Esq. via facsimile at (972) 503-4034 and email at joyce@joycelindauer.com.

## ARTICLE XI
## MODIFICATION OF THE PLAN

**11.01** The Debtor may propose amendments to or modifications of this Plan at any time prior to Confirmation, upon notice to all parties-in-interest. After Confirmation, the Reorganized Debtor may, with approval of the Court and so long as it does not materially or adversely affect the interest of creditors, modify to remedy any defect or omission or reconcile any inconsistencies in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of this Plan.

## ARTICLE XII
## RETENTION OF JURISDICTION

Notwithstanding confirmation of the Plan or the Effective Date having occurred, the Court will retain jurisdiction for the following purposes:

**12.01** **Allowance of Claims**. To hear and determine the allowability of all Claims upon objections to such Claims.

**12.02** **Executory Contracts and Unexpired Leases Proceedings**. To act with respect to proceedings regarding the assumption of any executory contract or unexpired lease of the Debtor pursuant to Section 365 and 1123 of the Code and Article VII of the Plan.

**12.03** **Plan Interpretation**. To resolve controversies and disputes regarding the interpretation of the Plan.

**12.04** **Plan Implementation**. To implement and enforce the provisions of the Plan and enter orders in aid of confirmation and implementation of the Plan.

**12.05** **Plan Modification**. To modify the Plan pursuant to Section 1127 of the Code and applicable Bankruptcy Rules.

**12.06** **Adjudication of Controversies**. To adjudicate such contested matters and adversary proceedings as may be pending or subsequently initiated in the Court against the Debtor.

**12.07** **Injunctive Relief**. To issue any injunction or other relief as appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunctions or other

relief issued under the Plan or in the Confirmation Order.

**12.08** **Interpleader Action**. To entertain interpleader actions concerning assets to be distributed or other assets of the Estate.

**12.09** **Correct Minor Defects**. To correct any defect, cure any omission or reconcile any inconsistency or ambiguity in the Plan, the Confirmation Order or any document executed or to be executed in connection therewith, as may be necessary to carry out the purposes and intent of the Plan, provided that the rights of any holder or an Allowed Claim are not materially and adversely affected thereby.

**12.10** **Authorization of Fees and Expenses**. To review and authorize payment of professional fees incurred prior to the Effective Date.

**12.11** **Post-Confirmation Orders Regarding Confirmation**. To enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified, or vacated.

**12.12** **Final Decree**. To enter a final decree closing the Case pursuant to Bankruptcy Rule 3022.

Respectfully Submitted,

*/s/ Joyce W. Lindauer*

Joyce W. Lindauer
Texas State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, TX 75202
Telephone: (972) 503-4033
joyce@joycelindauer.com

**ATTORNEYS FOR THE DEBTOR**

*/s/Timothy Barton*

President of the Debtor as
Proponent of the Plan