IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT
IN AND FOR POLK COUNTY, FLORIDA

GSM OF POLK COUNTY, LLC, a Florida limited liability company,
Plaintiff,

vs. Case No.: ______________

JMJ ACQUISITIONS, LLC, a Texas limited liability company; POLK COUNTY, a political subdivision of the State of Florida (Code Enforcement Unit); and JOHN DOE AND JANE DOE AND ALL OTHER PERSONS IN POSSESSION OF THE SUBJECT REAL PROPERTY,
Defendants.
______________________________/

## COMPLAINT

Plaintiff, GSM OF POLK COUNTY, LLC, a Florida limited liability company, by and through its undersigned attorney, sues Defendants, JMJ ACQUISITIONS, LLC, a Texas limited liability company; POLK COUNTY, a political subdivision of the State of Florida (Code Enforcement Unit); and JOHN DOE AND JANE DOE AND ALL OTHER PERSONS IN POSSESSION OF THE SUBJECT REAL PROPERTY, and alleges:

1) This is an action to re-establish a lost note and to foreclose a Real Estate Mortgage, Assignment, and Security Agreement on commercial real property located in Polk County,

Florida described as follows (the "Property"):

**Lot 2, 42nd Street Warehouse Center, according to the map or plat thereof recorded in Plat Book 151, Page 22, Public Records of Polk County, Florida.**

2) Plaintiff, GSM of Polk County, LLC, is a Florida limited liability company (hereafter referred to as "Plaintiff").

3) Defendant, JMJ Acquisitions, LLC is a Texas limited liability company (hereafter referred to as "JMJ"), whose business activities conducted in the State of Florida have given rise to this cause of action.

4) Venue is proper in Polk County, Florida because the real property that is the subject of this action is located in Polk County, Florida.

5) On July 13, 2018, JMJ executed and delivered a Promissory Note and a Real Estate Mortgage, Assignment, and Security Agreement Mortgage (hereafter referred to as "Mortgage"), securing the payment of the obligation recited therein to Plaintiff. The Mortgage was recorded in Official Records Book 10553, Pages 0041-0061, of the public records of Polk County, Florida and mortgaged the property described in the Mortgage then owned by and in possession of the Mortgagor. A copy of the Promissory Note is attached hereto as Plaintiff's Exhibit "A" and the Mortgage is attached hereto as Exhibit "B."

6) Plaintiff is not in possession of the original note but is entitled to enforce it.

7) Plaintiff cannot reasonably obtain possession of the Promissory Note because it was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of JMJ or an unknown person.

8) When loss of possession occurred, Plaintiff was entitled to enforce the Promissory Note under applicable law because Plaintiff is the payee on the Promissory Note.

9) Plaintiff has not endorsed, assigned, hypothecated or otherwise deposed of the Promissory Note nor has it been lawfully seized.

10) The copy attached to the complaint is a substantial copy of the lost Promissory Note.

11) Plaintiff and JMJ are the only persons known to Plaintiff who are interested for or against the reestablishment.

12) The property is now owned by JMJ who holds possession of the Property.

13) JMJ defaulted on the Promissory Note and the Mortgage by failing to pay the full payment due on July 13, 2019, as required under the Promissory Note and the Mortgage.

14) Additionally, the Promissory Note and Mortgage matured on July 13, 2019.

15) Plaintiff has provided JMJ with notice of the default and

demanded payment of the full amount due under the Promissory Note. Despite demand, JMJ has failed to tender payment. Plaintiff's letter demanding payment in full is attached hereto as Exhibit "C".

16) Plaintiff declares the full amount payable under the Promissory Note and the Mortgage to be due.

17) JMJ owes Plaintiff $1,175,652.00 that is due on principal on the Promissory Note and the Mortgage, interest at the rate of at a rate of four and one half percent (4.5%) per annum from July 13, 2018 until July 13, 2019, interest at the default rate of eighteen percent (18%) per annum from July 13, 2019, late charges of five percent (5%) of the principal and interest, past due real estate taxes, and title search expenses for ascertaining necessary parties to this action.

18) POLK COUNTY, a political subdivision of the State of Florida (Code Enforcement Unit), may claim some right, title or interest in and to the above described property to be foreclosed on by virtue of an CLAIM OF LIEN FOR ASSESSMENT recorded in Official Records Book 11021, page 2230-2231, a copy being attached hereto as Exhibit "D", public records of Polk County, Florida. Any right, title or interest POLK COUNTY, a political subdivision of the State of Florida (Code Enforcement Unit), may have in or to the said property is subordinate, junior and inferior to that of Plaintiff.

19) JOHN DOE AND JANE DOE AND ALL OTHER PERSONS IN POSSESSION OF SUBJECT REAL PROPERTY, whose names are uncertain, may claim some

right, title or interest in and to the above described property to be foreclosed on by virtue of their possession and some unrecorded interest in the property. Any right, title or interest JOHN DOE AND JANE DOE AND ALL OTHER PERSONS IN POSSESSION OF SUBJECT REAL PROPERTY may have in or to the said property is subordinate, junior and inferior to that of Plaintiff.

20) Plaintiff may be entitled, required, or obligated to advance future sums pursuant to the Promissory Note and the Mortgage to protect its interest and JMJ is obligated to repay said sums pursuant to the Promissory Note and the Mortgage.

21) In the event Plaintiff is the successful bidder at the judicial sale to be held herein, if any, and the Defendants in possession of said premises to the Plaintiff upon due issuance of the Certificate of Title, the Plaintiff requests the Court to authorize the Clerk of the Circuit Court to issue a writ of possession of the property to place Plaintiff in possession of the premises pursuant to Rule 1.580, Florida Rules of Civil Procedure.

22) Plaintiff is obligated to pay its attorneys a reasonable fee for their services and is entitled to same pursuant to the terms of the Promissory Note and the Mortgage.

WHEREFORE, Plaintiff, demands judgment re-establishing the Promissory Note, determining the amount and nature of adequate protection to be required by sections 673.3091(2) and 702.11, Florida Statues, foreclosing the Mortgage, for costs, and

reasonable attorney fees, and if the proceeds of the sale are insufficient to pay Plaintiff's claim, a deficiency judgment, and for other such relief as this court deems just and proper.

## VERIFICATION

Under penalty of perjury, I declare that I have read the foregoing, and the facts alleged therein are true and correct to the best of my knowledge and belief.

Executed on January 21, 2020.

**GSM OF POLK COUNTY, LLC, a Florida limited liability company**

By: Stephen D. Savoy, Mgr.
As its: Manager

HARDIN & BALL, P.A.

**Benjamin W. Hardin, Jr., Esquire**
Florida Bar No. 0500763
**Julie Landrigan Ball, Esquire**
Florida Bar No.: 0768731
**Mattie Hardin Tondreault, Esquire**
Florida Bar No.: 118242
Post Office Box 3604
Lakeland, Florida 33802-3604
Telephone: (863) 688-5200
Facsimile: (863) 686-0777
Primary Email: service@hardinpalaw.com
Attorney for Plaintiff

# PROMISSORY NOTE

$1,175,652 Polk County, Florida

Date: July 13, 2018

FOR VALUE RECEIVED, the undersigned, JMJ ACQUISITIONS, LLC, a Texas limited liability company, whose mailing address is 1755 Wittington Place, Suite 340, Dallas, Texas 75234 (hereinafter called "Maker"), which is qualified and authorized to do business in the State of Florida, promise to pay to the order of GSM of POLK COUNTY, LLC (together with any subsequent holder of this Note, hereinafter called "Holder"), at its office at 1242 Freedom Way, Castle Rock, CO 80109, or at another place as Holder may from time to time designate, the principal sum of ONE MILLION ONE HUNDRED SEVENTY FIVE THOUSAND SIX HUNDRED FIFTY TWO DOLLARS AND NO/100 CENTS ($1,175,652.00), with interest on it from the date of this Note, at an interest rate of FOUR AND ONE HALF per cent (4.5%) per annum until paid in full.

<u>1. Payments.</u>

The foregoing interest and principal will be payable as follows:

Notwithstanding anything to the contrary in this Note or any other agreement between Maker and Holder, the entire principal balance of this Note, together with accrued and unpaid interest, will be due to be paid in full on the 13th day of July, 2019 ("Maturity Date").

<u>2. Late Charge.</u>

In the event any payment under this Note is not made within 10 days after the date when due (without regard to grace periods), a late charge of $0.05 for each $1.00 overdue will become immediately due and payable to Holder. The foregoing late charge is provided to compensate Holder for its expense in collecting and administering delinquent payments and is not to be construed as interest.

<u>3. Default Interest.</u>

After the maturity or due date of this Note, through acceleration or otherwise, interest will accrue on the principal balance remaining unpaid at the highest rate of interest allowed by law.



EXHIBIT
tabbies
"A"

4. Application of Payments.

All payments hereunder will first be credited to lawful charges, then to accrued interest, and the remainder to principal.

5. Prepayment.

This Note may be prepaid in whole or part at any time without penalty.

6. Calculation of Interest.

All interest on this Note will be computed on the basis of the actual number of days elapsed in a 365-day year.

7. Collateral.

The indebtedness evidenced by this Note is secured by:

A first mortgage on certain property and improvements thereon, located in Polk County, Florida, under a Real Estate Mortgage, Assignment and Security Agreement dated the date hereof from Maker in favor of Holder ("Mortgage"), including all proceeds thereof and rights in connection therewith (which property, together with additions and substitutions, is called the "Collateral"). Holder will have the rights with respect to the Collateral as is authorized by law. The parties expressly agree that if the Collateral or a portion thereof is real estate, all of the covenants, conditions, and agreements contained in the Mortgage are hereby made a part of this Note.

Maker agrees as follows:

Additions to, releases, reductions, or exchanges of or substitutions for the Collateral, payments on account of this loan or increases of the same, or other loans made partially or wholly upon the Collateral, may from time to time be made without affecting the provisions of this Note or the liabilities of any party to this Note.

8. Default.

Maker will be in default under this Note on: (a) nonpayment of any interest or principal under this Note when due; or (b) the occurrence of any other default or event of default under the Mortgage, or any other document evidencing, governing or securing this Note.

9. Remedies.

Upon the occurrence and continuance, if applicable, of any default under this Note and following written notice to Maker from Holder and failure to cure non- monetary defaults within thirty (30) days and, if payment has not been made after ten (10) days from the date due, failure to cure monetary defaults within ten (10) days from Holder's notice thereof, Holder may at its option and without notice or demand: (1) declare the entire unpaid principal and accrued interest accelerated and due and payable at once; and (2) avail itself of any and all remedies available at law or in equity, including any remedies available under this Note, the Mortgage, any other document evidencing, governing or securing this Note. The remedies of Holder under this Note or in any other document given to evidence, govern or secure this Note, or at law or in equity, will be cumulative and concurrent and may be pursued singly, successively, or together in Holder's discretion. This is a non-recourse note that means the only remedy is a foreclosure process.

10. Assignability by Holder.

Holder may, at any time whether or not this Note is due, pledge or transfer this Note and its interest in the Collateral, and pledgee or transferee will for all purposes stand in the place of Holder under this Note and have all the rights of Holder under this Note, provided that such pledgees or transferees agree to be bound by all of the duties and obligations of Holder. Any such assignment by Holder to any pledgee or transferee will only be effective and binding on Maker if such assignment is made in writing, signed by Holder and the pledgee or transferee and a fully executed copy of the assignment is provided to Maker.

11. Usury Savings.

In no event will Holder be entitled to unearned or unaccrued interest or other charges or rebates, except as may be authorized by law; nor will Holder be entitled or receive at any time any charges not allowed or permitted by law, or any interest in excess of the highest lawful rate. Any payments of interest in excess of the highest lawful rate will be credited by Holder on interest accrued or principal or both; except that Maker will have an option to demand refund as to any interest or charges in excess of the highest lawful rate.

12. Waivers of Presentment, Demand, Protest, and 2nd Notices.

No delay or omission on the part of Holder in exercising any right under this Note will operate as a waiver of that right, or of any other rights under this Note. Presentment, demand, protest, notice of dishonor, and all other notices are waived by Maker. Maker promises and agrees to pay all costs of collection and reasonable attorneys' fees, including reasonable attorneys' fees of any suit, out of court, in trial, on appeal, in bankruptcy proceedings or otherwise, incurred or paid by Holder in enforcing this Note or preserving any

right or interest of Holder under this Note. Any notice to Maker will be sufficiently served for all purposes if placed in the mail, postage prepaid, addressed to, or left on the premises at, the corporate offices of Maker.

13. Modification of this Note.

No extension, modification or renewal of this Note shall be effective unless agreed to by both parties in writing.

14. Venue; Jurisdiction.

Maker hereby agrees and consents that any litigation brought against Maker in connection with this Note will be brought in Polk County, Florida, and Maker, to the extent permissible by law, consents to the jurisdiction of the court of that County.

15. Waiver of Jury Trial.

MAKER AND HOLDER (BY ITS ACCEPTANCE OF THIS NOTE) AGREE AS FOLLOWS: (1) EACH OF THEM KNOWINGLY, VOLUNTARILY, INTENTIONALLY, AND IRREVOCABLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LAWSUIT, PROCEEDING, COUNTERCLAIM, OR OTHER LITIGATION (AN "ACTION") BASED ON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH, THIS NOTE OR ANY RELATED DOCUMENTS, INSTRUMENTS, OR AGREEMENTS THAT EVIDENCE, GOVERN OR SECURE THIS NOTE (WHETHER ORAL OR WRITTEN AND WHETHER EXPRESS OR IMPLIED AS A RESULT OF A COURSE OF DEALING, A COURSE OF CONDUCT, A STATEMENT, OR OTHER ACTION OF EITHER PARTY); (2) NEITHER OF THEM MAY SEEK A TRIAL BY JURY IN ANY SUCH ACTION; (3) NEITHER OF THEM WILL SEEK TO CONSOLIDATE AN ACTION (IN WHICH A JURY TRIAL HAS BEEN WAIVED) WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED; AND (4) NEITHER OF THEM HAS IN ANY WAY AGREED WITH OR REPRESENTED TO THE OTHER OF THEM THAT THE PROVISIONS OF THIS SECTION WILL NOT BE FULLY ENFORCED IN ALL INSTANCES.

JMJ ACQUISITIONS, LLC,
a Texas limited liability company

By: Tim Barton
Its: President

INSTR # 2018153162
BK 10553 Pgs 0041-0061 PG(s)21
07/18/2018 02:56:35 PM
STACY M. BUTTERFIELD,
CLERK OF COURT POLK COUNTY
RECORDING FEES 180.00
MTG DOC 4,114.95
INTANGIBLE 2,351.30

When Recorded, return to:
GSM of Polk County, LLC
1242 Freedom Way
Castle Rock, CO 80109
[redacted]

This document Prepared by
Stephen Savoy
GSM of Polk County, LLC
1242 Freedom Way
Castle Rock, CO 80109
970-209-6962

**REAL ESTATE MORTGAGE,
ASSIGNMENT, AND SECURITY
AGREEMENT
(The "Mortgage")**

| | |
|---|---|
| **Date:** | July 13, 2018 |
| **Borrower:** | JMJ Acquisitions, LLC<br>a Texas limited liability company<br>1755 Wittington Plc Ste 340<br>Dallas, Texas 751234 |
| **Lender:** | GSM of Polk County, LLC<br>1242 Freedom Way<br>Castle Rock, CO 80109 |
| **Amount of Loan Secured hereby:** | **$1,175,652.00** |

"Land" (description of real estate): That certain land described in **Exhibit "A"** attached hereto and incorporated herein by reference located in **Polk County, Florida**, together with all land subsequently described and included by written modification referencing this Mortgage.

1. MORTGAGE. In consideration of Ten Dollars ($10.00) and other valuable consideration received by Borrower, the receipt and sufficiency of which are hereby acknowledged, Borrower hereby grants, bargains, sells, assigns, transfers, conveys and mortgages to Lender, its successors and assigns, to its own proper use and benefit forever, subject to the terms and conditions of this Mortgage, the real estate described above as the Land, together with:

(a) Appurtenances. The benefit of all tenements, hereditaments, easements and other rights of any nature whatsoever, if any, appurtenant to the Land or the Improvements, or

EXHIBIT
"B"

both, the benefit of all rights-of-way, strips and gores of land, streets, alleys, passages, drainage rights, sanitary sewer and potable water rights, storm water drainage rights, rights of ingress and egress to the Land and all adjoining property and any improvements of Borrower now or hereafter located on any of such real property interests, all trees, timber, shrubbery, fixtures, sod and crops now or hereafter located on the Land, water rights and powers, oil, gas, mineral and riparian and littoral rights, whether now existing or

hereafter arising, together with the reversion or reversions, remainder or remainders, rents, issues, incomes and profits of any of the foregoing (the "Appurtenances").

(b) Improvements. (i) All the buildings, structures, and improvements of every nature whatsoever now or hereafter situated on this Land, and (ii) all fixtures, machinery, appliances, equipment, furniture, and personal property of every nature whatsoever now or hereafter owned by Mortgagor and located in or on, or attached to, and used or intended to be used in connection with or with the operation of, this Land, buildings, structures, or other improvements, or in connection with any construction being conducted or that may be conducted thereon, and all extensions, additions, improvements, betterments, renewals, substitutions, and replacements to any of the foregoing, and all of the right, title, and interest of Mortgagor in and to any personal property or fixtures, which, to the fullest extent permitted by law, will be conclusively deemed fixtures and a part of the real property encumbered by this Agreement (collectively called the "Improvements"); provided, however, that the Improvements shall specifically exclude any of the foregoing described Improvements that may owned by or constitute the property of any person or entity other than Borrower.

(c) Tangible Property. All of Borrower's right, title and interest, if any, in and to all fixtures, equipment and tangible personal property of any nature whatsoever that is now or hereafter attached or affixed to the Land, the Appurtenances, or the Improvements. The foregoing includes: all goods and inventory, all heating, air conditioning, lighting, incinerating and power equipment; all engines, compressors, pipes, pumps, tanks, motors, conduits, wiring, and switchboards; all plumbing, lifting, cleaning, fire prevention, fire extinguishing, refrigerating, ventilating, and communications and public address apparatus; all stoves, ovens, ranges, disposal units, dishwashers, water heaters, exhaust systems, refrigerators, cabinets, and partitions; all rugs, draperies and carpets; all laundry equipment; all building materials; and all additions, accessions, renewals, replacements and substitutions of any or all of the foregoing. The property interests encumbered and described by this paragraph are called the "Tangible Property" in this Mortgage; provided, however, that the Tangible Property shall specifically exclude any of the foregoing described Tangible Property that may owned by or constitute the property of any person or entity other than Borrower. Tangible Property shall also include all trees, timber, shrubbery, fixtures, sod and crops severed from the Land.

The Land, Appurtenances, Improvements and Tangible Property are collectively referred to as the "Mortgaged Property" in this Mortgage. The portion of the property encumbered by this Mortgage that from time to time consists of intangible personal property, except for the Rents, is called the "Intangible Property" in this Mortgage. The Mortgaged Property, Rents, Intangible Property and any other property interests encumbered hereby are hereinafter referred to collectively as the "Collateral". Wherever used in this Mortgage, the use of the terms, "Mortgaged Property," "Rents", "Intangible Property", and "Collateral" means and



Stacy M. Butterfield POLK
CFN# 2018153162 OR BK 10553 PG 42 Pgs 0041-0061 07/18/2018 02:56:35 PM

includes all or any portion thereof applicable to the context.

Notwithstanding the grant of Borrower's interest in the Rents and Contract Rights above, so long as no Default shall exist hereunder or under any of the other Loan Documents, Borrower shall have a license to collect and receive all incomes arising from the operation, ownership, and maintenance of the Mortgaged Property, Rents and Contract Rights, but not more than one (1) month prior to accrual.

2. SECURITY AGREEMENT. To the extent any of the Collateral encumbered by this Mortgage from time to time constitutes personal property subject to the provisions of the Uniform Commercial Code, this Mortgage constitutes a "Security Agreement" for all purposes under the Uniform Commercial Code. Without limitation, Lender, at its election, upon the occurrence of a Default under this Mortgage, will have all rights, powers, privileges and remedies from time to time available to a secured party under the provisions of the Uniform Commercial Code with respect to the Collateral. The names and addresses of debtor and secured party are as shown for Borrower and Lender, respectively, on page
1. hereof. The remedies for any violation of the covenants, terms, and conditions of the security agreement herein contained shall be (i) as prescribed herein, or (ii) as prescribed by general law, or (iii) as prescribed by the specific statutory provisions now or hereafter enacted and specified in the Uniform Commercial Code, all at Lender's sole election. Borrower and Lender agree that the filing of financing statement(s) in the records normally having to do with personal property shall never be construed as in anywise derogating from or impairing this declaration and hereby stated intention of Borrower and Lender that everything used in connection with the production of income from the Collateral or adapted for use therein or which is described or reflected in this Mortgage, is, and at all times and for all purposes and in all proceedings both legal or equitable shall be, regarded as part of the real estate irrespective of whether (i) any such item is physically attached to the Improvements, (ii) serial numbers are used for the better identification of certain items capable of being thus identified in a recital contained herein, or (iii) any such item is referred to or reflected in any financing statement(s) so filed at any time. Similarly, the mention in any financing statement of the rights in, or the proceeds of, any fire, hazard or liability insurance policy, or any award in eminent domain proceedings for a taking or for loss of value, or Borrower's interest as lessor in any present or future lease, or rights to income growing out of the use of the Mortgaged Property, whether pursuant to a lease or otherwise, shall not be construed as altering any of Lender's rights as determined by this Mortgage, or otherwise available at law or in equity, or impugning the priority of this Mortgage or the Loan Documents, or both, but such mention in any financing statement is declared to be for Lender's protection if, as, and when any court holds that notice of Lender's priority of interest, to be effective against a particular class of persons, including the federal government and any subdivisions or entities of the federal government, must be perfected in the manner required by the Uniform Commercial Code.

Borrower covenants and agrees that Borrower will furnish Lender with notice of any change in name, identity, organizational structure, mailing address, residence, or principal place of business thirty (30) days prior to the effective date of any such change. Borrower will promptly execute or authorize any financing statements or other instruments deemed necessary by Lender to prevent any filed financing statement from becoming misleading or losing its perfected status or to reinstate any lapsed financing statement.



Stacy M. Butterfield POLK
CFN# 2018153162 OR BK 10553 PG 43 Pgs 0041-0061 07/18/2018 02:56:35 PM

3. AFTER-ACQUIRED PROPERTY. Without the necessity of any further act of Borrower or Lender, the lien of and security interest created by this Mortgage automatically will extend to and include (i) any and all renewals, replacements, substitutions, accessions, proceeds, products, additions or after- acquired property for or to the Collateral, and (ii) any and all monies, proceeds and other property that from time to time, either by delivery to Borrower or by any instrument (including this Mortgage) may be subjected to such lien and security interest by Borrower or by anyone on behalf of Borrower, or with the consent of Borrower, or which otherwise may come into the possession or otherwise be subjected to the control of Lender or Borrower pursuant to this Mortgage or the other Loan Documents.

4. DEBT. Borrower is justly indebted to Lender in the principal amount indicated above (or so much as may be advanced to Borrower by Lender from time to time), as evidenced by that certain Promissory Note of even date in the amount of **$1,175,652.00** (the "Note") made by Borrower, payable to the order of Lender, which Note, together with any and all renewals, replacements, extensions, modifications, substitutions, future advances, and any and all other certificates or evidence of indebtedness evidenced by the Note are herein called the "Note".

Borrower's obligations described below are secured, among other things, by the Collateral described in this Mortgage, which term includes any and all amendments, extensions, renewals, replacements, substitutions, modifications and consolidations of this Mortgage, and may also from time to time be secured by other collateral described in written documents. The Mortgage and such other documents as may exist on the date hereof or may exist hereafter are referred to as the "Security Documents," which term, includes any and all financing statements, letters of credit, assignments, agreements, supplements, and riders made and delivered in connection with the Note and this Mortgage, and any and all amendments, modifications, extensions, renewals, replacements, substitutions and consolidations thereof or thereto. The Security Documents, the Note and the Environmental Indemnity Agreement between Borrower and Lender and any other document executed by Borrower that is intended to evidence, govern or secure the Loan are referred to collectively as the "Loan Documents". The Loan Documents shall always be taken and read together as constituting part of one transaction. All sums disbursed pursuant to the terms of the Note shall be secured by this Mortgage with the same priority as if advanced on the date hereof.

The obligations of Borrower secured by the Security Documents arising pursuant to the Loan Documents are as follows and are called the "Debt" in this Mortgage and the other Loan Documents:

(a) Note. Borrower's payment of all sums due from time to time as evidenced by the Note; and

(b) Loan Documents. Borrower's payment or performance of all obligations imposed upon Borrower by the Loan Documents; and



Stacy M. Butterfield POLK
CFN# 2018153162 OR BK 10553 PG 44 Pgs 0041-0061 07/18/2018 02:56:35 PM

(c) Advances. All sums advanced by Lender to or for the benefit of Borrower in the manner provided in the Loan Documents, or for the protection of the security of the Collateral, including, without limitation, all sums advanced pursuant to this Mortgage, including advances for repairs, maintenance, insurance, taxes, or assessments; and

(d) Costs. All costs, expenses, losses, damages and other charges sustained or incurred by Lender because of: (i) Borrower's default in payment or performance, as the case may be, of any provision contained in the Loan Documents; (ii) defense of actions instituted by Borrower or a third party against Lender arising out of or related to the Loan, or in the realizing upon, protecting, perfecting, defending, or (iii) actions brought or defended by Lender enforcing Lender's security interest in the Collateral. All of these costs and expenses include reasonable attorneys' fees, paralegals' fees, or legal assistants' fees, whether incurred with respect to collection, litigation, arbitration, bankruptcy proceedings, interpretation, dispute, negotiation, trial, appeal, defense of actions instituted by a third party against Lender, or enforcement of any judgment based on the Loan Documents, whether or not suit is brought to collect such amounts or to enforce such rights or, if brought, is prosecuted to judgment.

(e) This paragraph is intentionally deleted.

(f) Miscellaneous Expenses. All costs and expenses incurred by Lender in connection with the Loan, whether prior to or at closing or during the term thereof, including, without limitation, title insurance search fees, premiums and endorsement fees, hazard and other insurance required by the Loan Documents, pre-closing and post-closing appraisals, appraisal reports or opinions of value, surveys, ad valorem and personal property taxes, documentary stamp taxes and intangible taxes, attorneys' fees, environmental surveys or assessments, and recording charges.

(g) Indemnities. All costs, expenses, and amounts arising under or pursuant to any indemnity contained within the Loan Documents or in any separate agreement executed by Borrower in favor of Lender including, without limitation, the Environmental Indemnity Agreement (the "Indemnity").

5. TITLE WARRANTIES. Subject to the Permitted Encumbrances (as hereinafter defined), Borrower covenants with Lender that: (i) JMJ Acquisitions, LLC is indefeasibly seized of the Land and Improvements thereon in fee simple, has good and marketable title to the Collateral and has full power, lawful right and authority to convey the same in fee simple and to grant Lender a perfected first lien security interest in the Collateral, (ii) the Collateral is free and clear of all liens, encumbrances, restrictions, and security interests of any nature except for those permitted encumbrances which Lender has previously approved, as set out in **Exhibit "B"** of the title insurance policy and endorsements insuring this Mortgage, which are referred to as "Permitted Encumbrances" in this Mortgage.

6. LIENS. Borrower will not create or permit to be created, or to remain, and will promptly discharge at Borrower's expense any and all liens or encumbrances upon, or security interests in, the Collateral, or any combination thereof, whether consensual, common law, statutory, voluntary, involuntary, or arising by operation of law, except Permitted Encumbrances. Notwithstanding the foregoing, and except for any construction liens, Borrower may contest the



Stacy M. Butterfield POLK
CFN# 2018153162 OR BK 10553 PG 45 Pgs 0041-0061 07/18/2018 02:56:35 PM

amount, validity and enforceability of any involuntary or nonconsensual lien, encumbrance or security interest, including those arising by operation of law, in the manner provided in paragraph 8 below. If any construction lien is filed against the Mortgaged Property, Borrower agrees to discharge or otherwise remove such lien by bond or otherwise, within thirty (30) days of imposition of same, but may thereafter contest the amount or validity of such lien as provided in paragraph 8 below.

7. TAXES AND OTHER IMPOSITIONS. Borrower will pay or cause to be paid, when due (i) all property taxes, assessments, water, sewer, utility and other rents, rates and charges, including all excises, taxes, levies, license fees, permit fees, impact fees, connection fees, and other fees and charges, whether general or special, ordinary or extraordinary, foreseen or unforeseen, that may be assessed, levied or imposed upon the Collateral, or otherwise arising with respect to the occupancy, use, possession or disposition thereof, whether or not the failure to pay the same might result in the creation of a lien upon the Collateral, or any combination thereof; (ii) all franchise, excise and other taxes, fees and charges assessed, levied or imposed with respect to Borrower's right to do business in the State of Florida and the political subdivisions thereof; (iii) all taxes and fees (except for Lender's state and federal income taxes) that may be levied by the United States of America or any state or political subdivision thereof, upon Lender or Borrower in connection with or upon the Loan Documents, or the Debt or its payment, or collection, or any combination thereof (including all documentary stamp taxes and intangible taxes plus any penalties and interest charged for the late payment of any such taxes); and (iv) all lawful claims and demands of contractors, subcontractors, mechanics, laborers, materialmen and other lienors which, if unpaid, might result in the creation of a lien upon the Collateral. The sums payable under this paragraph are called "Impositions". Nothing contained in this paragraph will require the payment of any Imposition so long as the amount, validity or enforceability thereof is contested by appropriate proceedings as provided in paragraph 8 below. With respect to state and local real and tangible personal property taxes, however, Borrower will pay same and will furnish Lender with copies of the receipts for each such payment without demand at least thirty (30) days prior to the date each of such taxes will become delinquent, and any contest of the same must be by a suit or other proceeding for a refund. With respect to all other Impositions, Borrower will furnish Lender with proof of such payment upon demand. If any payment required to be made by Borrower by this paragraph is prohibited by law, with the result that Lender becomes liable for its payment, then the Debt will immediately become due and payable, at Lender's option.

8. CONTESTS. Borrower may contest, by any and all appropriate administrative, trial or appellate proceedings, or any combination thereof, and in Lender's name, if required by law, the amount, validity, enforceability or application of any Imposition that Borrower is required to pay or perform to any person or entity other than Lender by any provision of this Mortgage or the other Loan Documents if and only for so long as: (i) Borrower notifies Lender in writing of its intent to contest the Imposition; (ii) such contest suspends the collection or enforcement of the item(s) contested; (iii) no part of the Collateral will be subject to loss, sale or forfeiture before final determination of any such contest; (iv) neither Borrower nor Lender will be subject to any criminal liability; (v) Borrower furnishes such security as may be required by law in connection with each such contest; (vi) the value, usefulness and marketability of the Collateral will not be adversely impaired by any such contest; (vii) Borrower otherwise continues to pay and perform, as the case may be, the Debt and Borrower's obligations under this Mortgage; (viii) Borrower otherwise is not in default under any provision of the Loan Documents; (ix) each such



Stacy M. Butterfield POLK
CFN# 2018153162 OR BK 10553 PG 46 Pgs 0041-0061 07/18/2018 02:56:35 PM

contest is continuously prosecuted diligently to final determination; (x) Borrower pays or causes to be paid, and defends, indemnifies and holds Lender harmless of and from any and all losses, judgments, decrees and costs (including all reasonable attorneys' fees) incurred in connection with each such contest; (xi) Borrower, promptly following final determination of each such contest, fully pays and discharges all amounts that may be levied, assessed, charged, imposed or otherwise determined to be payable, together with all penalties, fines, interests, costs and expenses, and otherwise complies with such final determination, at Borrower's sole cost and expense; (xii) Borrower furnishes Lender with such security as Lender reasonably may require to assure Borrower's compliance with all of the foregoing requirements, and (xiii) such liens are not filed against the Mortgaged Property pursuant to Chapter 713, Florida Statutes, in which event such liens must be discharged or transferred to bond pursuant to paragraph 6 above before Borrower contests such liens. So long as Borrower complies with the foregoing and Lender is promptly reimbursed for all costs and expenses incurred, Lender will cooperate with Borrower in connection with any such contest.

9. INSURANCE. Until the Debt shall have been discharged by Borrower, Borrower shall maintain, at Borrower's cost and expense, the following insurance coverages in full force and effect at all times:

(a) Hazard Insurance. Unless otherwise waived by Lender, Borrower shall keep the Tangible Property and Improvements which now or hereafter may constitute part of the Mortgaged Property insured at all times against loss or damage by fire and other hazards included within the term "all risk" or "extended coverage" and against such other hazards as Lender may require in the full insurable value thereof (or such lesser amount as Lender may authorize in writing), with an insurer satisfactory to Lender. Such policy shall include a Replacement Cost Endorsement and a Sinkhole Endorsement, if deemed necessary by Lender.

(b) Liability Insurance. Borrower will obtain and keep in full force a "Broad Form Comprehensive General Liability" insurance coverage for both Borrower and any contractor performing services to the Mortgaged Property in the minimum coverage amount of One Million Dollars ($1,000,000.00) per occurrence.

(c) Other Insurance. Worker's compensation insurance and other insurance coverages are not required by the Lender.

The policy or policies of insurance shall (i) be from companies and in coverage amounts acceptable to Lender, (ii) contain a standard mortgagee clause in favor of Lender naming Lender as a mortgagee and including a Lender's loss payee clause in such policy, as applicable (iii) not be terminable or modified without thirty (30) days' prior written notice to Lender, and (iv) be evidenced by original policies or certified copies of policies deposited with Lender, as Lender may elect, to be held by Lender until the Debt shall have been fully paid and discharged. Borrower shall furnish Lender satisfactory evidence of payment of all premiums required and similar evidence of renewal or replacement coverage not later than thirty (30) days prior to the date any coverage will expire.

Each insurance policy or endorsement required herein shall be written by an insurer having a rating not less than "A-X" Best's Rating according to the most current edition of Best's Key Rating Guide as determined at the time of the initial policy and at all times during



Stacy M. Butterfield POLK
CFN# 2018153162 OR BK 10553 PG 47 Pgs 0041-0061 07/18/2018 02:56:35 PM

the term hereof. All policies shall indicate that notices related to such insurance shall be sent to Lender at:

GSM of Polk County LLC
1242 Freedom Way
Castle Rock, CO 80109

If any loss occurs with respect to the Mortgaged Property, Lender is hereby appointed attorney-in-fact for Borrower to make proof of loss if Borrower fails to make the same punctually, and to give a receipt for any proceeds collected under such policies. Borrower will promptly give written notice to Lender of any loss or damage to the Mortgaged Property, and will not adjust or settle any such loss without Lender's prior written consent, which consent shall not be unreasonably withheld or delayed. Upon any Default by Borrower under this Mortgage, all right, title and interest of Borrower in and to all such insurance policies then in force, including any and all unearned premiums and existing claims, will inure to Lender, which, at its option, and as attorney-in-fact for Borrower, may then make, settle and give binding acquittances for claims under all such policies, and may assign and transfer such policies or cancel or surrender them, applying any unearned premium in such manner as Lender may elect. The foregoing appointment of Lender as attorney-in-fact for Borrower is coupled with an interest, and is irrevocable, until such time as this Mortgage is satisfied of record. Notwithstanding the occurrence of any casualty or the availability of any insurance proceeds, Borrower will pay the Debt in the manner required by the Loan Documents.

10. CONDEMNATION. If all or any part of the Collateral, or any interest therein or right accruing thereto, is taken as a result of, or in lieu or in anticipation of, the exercise of the right of condemnation or eminent domain, or by reason of the temporary requisition of the use or occupancy of the Mortgaged Property, in any event by any government or quasi-governmental authority, civil or military, or any other party entitled to exercise such powers by law, general or special, or is devalued or otherwise adversely affected by any of the foregoing actions, all proceeds payable with respect to any such action are assigned to Lender and shall be paid to Lender. Lender shall be under no obligation to question the amount of any such award or compensation and may accept the same in the amount in which the same shall be paid. The proceeds of any award or compensation so received shall, at the option of Lender, either be applied to the payment of the Debt or be paid over to the Borrower for the restoration of the Improvement. Borrower, immediately upon obtaining knowledge of the institution or threatened institution, of any proceedings for the Mortgaged Property, or any part thereof, by condemnation or eminent domain, will notify Lender of the pending of such proceedings. Lender shall have the right to intervene and participate in any proceedings for and in connection with any taking referred to in this section. Borrower shall not enter into any agreement for the taking of the Mortgaged Property or any part thereof with any person or persons authorized to acquire the same by condemnation or eminent domain, unless Lender shall have consented thereto in writing. Any of the foregoing actions are sometimes called a "condemnation" or "taking" in this Mortgage and the other Loan Documents. Such proceeds include, without limitation, severance damages, damages arising from the change of grade of any street or the access thereto, the taking of air rights and damages caused by noise, pollutants and other emissions. Notwithstanding any such taking or other injury or decrease in value, or the availability of any proceeds for any of the foregoing, Borrower shall continue to pay the Debt in the manner required by the Loan Documents. Lender's rights under this paragraph

will survive the foreclosure or other enforcement of this Mortgage, and Lender will have the right to receive and retain all proceeds to the extent of any deficiency which exists upon such foreclosure or other enforcement, together with legal interest thereon, and to the extent of the reasonable counsel fees, costs and disbursements incurred by Lender in connection with the collection of such proceeds. Such right shall exist whether or not a deficiency judgment shall have been sought or recovered or denied upon the Note. The remaining balance of such proceeds, if any, will inure to the benefit of the party entitled thereto by applicable law.

11. APPLICATION OF INSURANCE PROCEEDS AND AWARDS. Borrower will promptly give Lender written notice of any damage to or destruction of the Mortgaged Property or any part thereof, generally describing the nature and extent of such damage or destruction and the Borrower's best estimate of the cost of restoring the Mortgaged Property. Lender shall be entitled to all insurance proceeds payable on account of such damage or destruction and the Borrower hereby irrevocably assigns, transfers and sets over to Lender all rights of the Borrower to any such proceeds or payments and irrevocably authorizes and empowers Lender, at its option and in its sole and absolute discretion, in the name of the Borrower or otherwise, to file and prosecute what would otherwise be the Borrower's claim for any such proceeds or payment and to collect, receipt for and retain the same for disposition in accordance with this Section. Lender may, at its sole option, apply all amounts recovered under any insurance policy required to be maintained by the Borrower hereunder in any one or more of the following ways: (a) to the payment of the reasonable costs and expenses incurred by Lender in obtaining such insurance proceeds, including the fees and expenses of attorneys and insurance and other experts and consultants, the costs of litigation, arbitration, mediation, investigations and other judicial, administrative or other proceedings and all other out-of-pocket expenses; (b) to the payment of any of the Debt other than indebtedness with respect to the Note at the time outstanding; (c) to the payment of the principal of the Note and any interest accrued and unpaid thereon, without regard to whether any portion or all of such amounts shall be matured or unmatured, together with interest at the default interest rate on any overdue principal and (to the extent permitted by applicable law) interest; and, in case such amount shall be insufficient to pay in full all such amounts, then such amounts shall be applied, first, to the payment of all amounts of interest accrued on the Note and unpaid, without preference or priority of any payment of interest over any other payment of interest or of any other Note, and, second, to the payment of all amounts of principal at the time outstanding, without preference or priority of any installment or amount of principal over any other installment or amount of principal or of any Note over any other Note, but otherwise in such manner and order as Lender shall in its sole discretion determine; (d) to fulfill any of the other covenants contained herein as Lender may determine; (e) release to the Borrower for application to the cost of restoring the Mortgaged Property; or (f) release to the Borrower. In the event of a foreclosure of this Mortgage, the purchaser of the Mortgaged Property shall succeed to all the rights of the Borrower, including any right to unearned premiums, in and to all policies of insurance assigned and delivered to Lender.

12. MAINTENANCE, REPAIRS, AND RECONSTRUCTION.

(a) Maintenance and Repairs. Borrower, at its sole cost, shall make all repairs, renewals, replacements, servicing and reconstruction that are commercially reasonable to maintain the Mortgaged Property in good order, condition and repair. Immediately following the occurrence of any casualty or other loss, Borrower promptly will undertake all restoration required or desirable and will pursue it diligently to completion. Borrower shall (i) not strip, waste, remove or demolish any portion of the Mortgaged Property, nor suffer or permit any such action; (ii) promptly comply with all laws, governmental regulations and public or private restrictions or easements, or both, of any kind affecting the Mortgaged Property or requiring any alterations or improvements to be made thereon, and (iii) not commit, suffer or permit any act upon the Mortgaged Property in violation of any law, subject to Borrower's right to contest the same in good faith to conclusion, as provided in paragraph 8 of this Mortgage. If any public agency or authority requires or commences any proceedings for the demolition or removal, or both, of any improvements or portions thereof comprising the Mortgaged Property due to non-compliance with health, safety, fire or building codes, then, unless Borrower undertakes to contest such action in the manner provided in paragraph 8 above and pursues such contest to a successful conclusion, such action will constitute a Default under this Mortgage. Borrower will not, without Lender's prior written consent, which shall not be unreasonably withheld or delayed, (i) make any material alterations, additions or improvements of or to the Mortgaged Property; (ii) make any material change in the general nature of the use or occupancy of the Mortgaged Property; (iii) institute or join or acquiesce in any action to change the existing zoning or land use classification of the Mortgaged Property, or (iv) grant easements or licenses affecting the use or operation of the Mortgaged Property. Lender and any persons authorized by Lender may enter the Mortgaged Property at all reasonable times without prior notice for inspections or for any other lawful purpose. If Borrower fails to comply with the requirements of this paragraph, then Lender, without waiving the option to foreclose, may take some or all measures Lender reasonably deems necessary or desirable for the maintenance, repair, preservation or protection of the Mortgaged Property, and any expenses reasonably incurred by Lender in so doing shall become part of the Debt secured hereby, and shall, at the option of Lender, become immediately due and payable, and shall bear interest at the Default Rate specified in the Note. Lender shall have no obligation to care for or maintain the Mortgaged Property, or, having taken some measures therefor, to continue same or take other measures.

13. ADVANCES. If Borrower defaults in the observance or performance of any of the provisions of the Loan Documents, including but not limited to obtaining and maintaining insurance pursuant to paragraph 9, paying Impositions pursuant to paragraph 7, and maintaining the Mortgaged Property pursuant to paragraph 12, then Lender, without waiving or otherwise impairing any other of its rights or remedies, at its sole option and without obligation to do so, and without demand upon Borrower, may make any such payment or take such action as Lender deems necessary or appropriate to correct such Default, or to protect the security of the Collateral encumbered by the Loan Documents. All payments so made, together with all costs and expenses so incurred, will be added to the principal amount due under the Note and thereafter will bear interest at the rate then payable as provided for in the Note, and will be secured by the lien and security interest granted by the Security Documents. For the foregoing purposes, Lender is authorized to (a) enter upon the Mortgaged Property; (b) appear in and defend any action or



Stacy M. Butterfield POLK
CFN# 2018153162 OR BK 10553 PG 50 Pgs 0041-0061 07/18/2018 02:56:35 PM

proceeding purporting to affect the security of this Mortgage or the rights or powers of Lender hereunder; (c) pay, purchase, contest or compromise any encumbrance, charge or lien that in the reasonable judgment of Lender appears to adversely affect the Collateral; and (d) take whatever action Lender, in its discretion, deems necessary or appropriate in exercising any such powers. Notwithstanding the foregoing, Borrower immediately, upon Lender's demand, will pay all sums so expended by Lender with interest as stated above.

14. BOOKS AND RECORDS. Borrower, at all times, will keep proper books of record and account in which full, true and correct entries will be made of its transactions with respect to the Collateral in accordance with generally accepted accounting principles, consistently applied, and which will properly and correctly reflect all items of income and expense in connection with the operation of the Collateral, regardless of whether such income or expense is realized by Borrower or any other person or entity whatsoever. In the event of a Default that remains uncured for the any applicable notice and cure period, Lender will have the right from time to time during normal business hours to examine all such books, records and accounts at Borrower's office or at the office of such other person as maintains them, and to make such copies or extracts as Lender may desire, at Borrower's expense.

15. This paragraph intentionally deleted.

16. This paragraph intentionally deleted.

17. This paragraph intentionally deleted.

18. TAXATION OF MORTGAGE. In the event of the passage after the date of this Mortgage of any federal, state or local law deducting from the value of real property for the purpose of ad valorem taxation any lien thereon or changing in any way the laws for the taxation of mortgages or debts secured by mortgages for federal, state or local purposes, or the manner of the collection of any such taxes, and imposing a tax, either directly or indirectly, on any or all of the Loan Documents, Lender shall have the right to declare the Debt due on a date to be specified by not less than sixty (60) days' written notice given to Borrower by Lender; provided, however, that such election shall be ineffective if Borrower is permitted by law to pay the whole of such tax in addition to all other payments required hereunder, and if Borrower, prior to such specified date, does pay such tax and agrees to pay any such tax (excluding, however, all taxes on the income of Lender) when thereafter levied or assessed, and such agreement shall constitute a modification of this Mortgage.

19. ASSIGNMENT OF RENTS, LEASES, PROFITS AND CONTRACT RIGHTS. Pursuant to paragraph 1 of this Mortgage, Borrower has irrevocably assigned and set over unto Lender all right, title, and interest of Borrower in and to the Rents and Contract Rights (including all leases and sales contracts now or hereafter existing relating to the Mortgaged Property) as security for the Debt, together with the right to collect and enforce the same; provided, however, so long as there shall be no Default under the Loan Documents, Borrower has been granted a license to collect and receive all Rents assigned hereunder in accordance with paragraph 1. Neither these assignments nor Lender's enforcement of the provisions of these assignments (including the receipt of the Rents) will operate to subordinate the lien of this Mortgage to any of the rights of any lessee or purchaser under any lease or sales contract of the Mortgaged Property, or to subject



Stacy M. Butterfield POLK
CFN# 2018153162 OR BK 10553 PG 51 Pgs 0041-0061 07/18/2018 02:56:35 PM

2020CA-000383-0000-00 Received in Polk 01/30/2020 05:09 PM

Lender to any liability to any such lessee or purchaser for the performance of any obligations of Borrower under any such lease or sales contract unless and until Lender agrees to such subordination or assumes such liability by an appropriate written instrument. All right, title and interest of each such lessee or purchaser in and to the Mortgaged Property, whether arising by virtue of any such lease, contract or otherwise, at all times will be and remain subject, subordinate and inferior to the lien of this Mortgage and all rights, remedies, powers and privileges of Lender arising under or by virtue of any of the Loan Documents. The assignments of Rents and Contract Rights (including leases) contained in this Mortgage are intended to provide Lender with all the rights and remedies of mortgagees pursuant to Section 697.07, Florida Statutes, as may be amended from time to time. However, in no event shall this reference diminish, alter, impair, or affect any other rights and remedies of Lender. Notwithstanding the foregoing, if Borrower shall have executed an Assignment of Rents constituting one of the Loan Documents, such Assignment of Rents is hereby incorporated herein by reference and shall control if in conflict with the provisions of this Mortgage.

20. DEFAULT. The occurrence of any of the following (time being of the essence as to this Mortgage and all of its provisions) constitutes a "Default" by Borrower under this Mortgage and, at the option of Lender, under the other Loan Documents:

(a) Scheduled Payment. Borrower's failure to make any other payment required by this Note or the other Loan Documents when due.

(b) Monetary Default. Borrower's failure to make any other payment required by this Mortgage or the other Loan Documents when due.

(c) Other. Borrower's failure to perform any other obligation imposed upon Borrower by this Mortgage or the other Loan Documents within 30 days after the date when performance is due.

(d) Bankruptcy. Borrower, or any general partner of Borrower or any guarantor of the Debt (i) files a voluntary petition in bankruptcy or a petition or answer seeking or acquiescing in any reorganization or for an arrangement, composition, readjustment, liquidation, dissolution, or similar relief for itself pursuant to the United States Bankruptcy Code or any similar law or regulation, federal or state relating to any relief for debtors, now or hereafter in effect; or (ii) makes an assignment for the benefit of creditors or admits in writing its inability to pay or fails to pay its debts as they become due; or (iii) suspends payment of its obligations or takes any action in furtherance of the foregoing; or (iv) consents to or acquiesces in the appointment of a receiver, trustee, custodian, conservator, liquidator or other similar official of Borrower, a general partner of Borrower, or any guarantor, for all or any part of the Collateral or other assets of such party, or either; or (v) has filed against it an involuntary petition, arrangement, composition, readjustment, liquidation, dissolution, or an answer proposing an adjudication of it as a bankrupt or insolvent, or is subject to a reorganization pursuant to the United States Bankruptcy Code, an action seeking to appoint a trustee, receiver, custodian, or conservator or liquidator, or any similar law, federal or state, now or hereafter in effect, and such action is approved by any court of competent jurisdiction and the order approving the same shall not be vacated or stayed within sixty (60) days from entry; or (vi) consents to the filing of any such petition or answer, or shall fail to deny the material allegations of the same in a timely manner.



Stacy M. Butterfield POLK
CFN# 2018153162 OR BK 10553 PG 52 Pgs 0041-0061 07/18/2018 02:56:35 PM

(f) Judgments. (1) A final judgment, other than a final judgment in connection with any condemnation, and including any judgment or other final determination of any contest permitted by paragraph 8 of this Mortgage, is entered against Borrower that (i) adversely affects the value, use or operation of the Collateral, or (ii) adversely affects, or reasonably may adversely affect, the validity, enforceability or priority of the lien or security interest created by this Mortgage or the other Loan Documents, or both; or (2) execution or other final process issues thereon with respect to the Collateral; and (3) Borrower does not discharge the same or provide for its discharge in accordance with its terms, or procure a stay of execution thereon, in any event within thirty (30) days from entry, or Borrower shall not, within such period or such longer period during which execution on such judgment shall have been stayed, appeal therefrom or from the order, decree or process upon or pursuant to which such judgment shall have been entered, and cause its execution to be stayed during such appeal, or if on appeal such order, decree or process shall be affirmed and Borrower shall not discharge such judgment or provide for its discharge in accordance with its terms within sixty (60) days after the entry of such order or decree or affirmance, or if any stay of execution on appeal is released or otherwise discharged.

(g) Liens. Any federal, state or local tax lien or any claim of lien for labor or materials or any other lien or encumbrance of any nature whatsoever is recorded against Borrower or the Mortgaged Property and is not removed by payment or transferred to substitute security in the manner provided by law, within thirty (30) days after it is recorded in accordance with applicable law, or is not contested by Borrower in the manner permitted by paragraph 8 above.

(h) Leases. Borrower's default in the performance of its obligations as lessor under any lease of all or any portion of the Mortgaged Property, which default could result, in Lender's judgment, in the termination of said lease.

(i) Other Notes or Mortgages. Borrower's default in the performance or payment of Borrower's obligations under any other note, or under any other mortgage encumbering all or any part of the Mortgaged Property, if the other mortgage is permitted by Lender, whether such other note or mortgage is held by Lender or by any other party.

(j) Borrower Default Under Loan Documents. Borrower's default in the payment or performance of any of Borrower's obligations under any of the Loan Documents, including this Mortgage and any riders thereto.

(k) Borrower's Continued Existence. Borrower shall cease to exist or to be qualified to do or transact business in the State in which the Mortgaged Property is located or be dissolved or shall be a party to a merger or consolidation other than a merger or consolidation where Borrower is the surviving entity), or shall sell all or substantially all of its assets.

(l) Ownership Interest in Borrower: If, without the prior written consent of Lender, any ownership interests of Borrower are issued, sold, transferred, conveyed, assigned, mortgaged, pledged, or otherwise disposed of, whether voluntarily or by operation of law, and whether with or without consideration, or any agreement for any of the foregoing is entered into.

(m) Transfer of Property or Ownership. Any sale, conveyance, transfer,

assignment, or other disposition of all or any part of the Collateral or any ownership interest in Borrower or any guarantor in violation of paragraph 29 below.

(n) Default Under Indemnity. Borrower or any guarantor shall default under any obligation imposed upon Borrower by any indemnity whether contained within any of the Loan Documents, the Environmental Indemnity Agreement, or otherwise.

21. REMEDIES. Upon the occurrence and continuance, if applicable, of any Default, and following written notice to Borrower from Lender and failure to cure non-monetary defaults within thirty (30) days and, if payment has not been made after ten (10) days from the date due, failure to cure monetary defaults within ten (10) days from Lender's notice thereof, Lender may exercise any one or more of the following rights and remedies, in addition to all other rights and remedies otherwise available at law or in equity:

(a) Other Documents. To pursue any right or remedy provided by the loan Documents.

(b) Acceleration. To declare the entire unpaid amount of the Debt together with all accrued and unpaid interest thereon immediately due and payable with interest to be due thereon at the Default Rate set forth in the Note.

(c) Foreclosure. To foreclose the lien of this Mortgage and obtain possession of the Collateral, by any lawful procedure.

(d) Code Rights. To exercise any right or remedy available to Lender as a secured party under the Uniform Commercial Code as adopted by the State of Florida, as it from time to time is in force and effect, with respect to any portion of the Collateral then constituting property subject to the provisions of such Code; or Lender, at its option, may elect to treat the Collateral as real property, or an interest therein, for remedial purposes.

(e) Receiver. To apply, on ex parte motion, to any court of competent jurisdiction for the appointment of a receiver to take charge of, manage, preserve, protect, complete construction of, rent, and operate the Mortgaged Property and any of Borrower's business or businesses situated thereon, or any combination thereof; to collect the Rents; to make all necessary and needed repairs; to pay all taxes, assessments, insurance premiums and all other costs incurred in connection with the Mortgaged Property; and, after payment of the expenses of the receivership, including reasonable attorneys' fees and other costs and expenses related to the enforcement of the Security Documents, and after compensation to the receiver for any of the services described herein or pursuant hereto, to apply all net proceeds derived therefrom in reduction of the Debt or in such other manner as the court shall direct. The appointment of such receiver shall be a matter of strict right to Lender, regardless of the adequacy of the security or of the solvency of any party obligated for payment of the Debt. All expenses, fees and compensation incurred pursuant to any such receivership shall be secured by the lien of this Mortgage until paid. The receiver, personally or through agents, may exclude Borrower wholly from the Mortgaged Property and have, hold, use, operate, manage and control the Mortgaged Property and may, in the name of Borrower, exercise all of Borrower's rights and powers to maintain, construct, operate, restore, insure and keep insured the Mortgaged Property in such manner as such receiver



Stacy M. Butterfield POLK
CFN# 2018153162 OR BK 10553 PG 54 Pgs 0041-0061 07/18/2018 02:56:35 PM

2020CA-000383-0000-00 Received in Polk 01/30/2020 05:09 PM

deems appropriate.

(f) Set-Offs. To set-off against any accounts, deposits, certificates of deposit of Borrower, and any endorsers, sureties, guarantors, and all others who are, or who may become liable for the payment of the Debt now or hereafter in the possession of Lender. Borrower and such other parties authorize and empower Lender, in its sole discretion, at any time after the occurrence of a Default hereunder, or under the other Loan Documents, to appropriate and, in such order as Lender may elect, apply any such money, deposits, or property to the payment of the Debt.

(g) Rents. After Lender shall have given written notice to Borrower, to collect all rents, issues, profits, revenues, income, proceeds, or other benefits from the Collateral, or to pursue any remedy available under Chapter 697.07, Florida Statutes, as amended, supplemented, or superseded from time to time.

(h) Other Security. To proceed to realize upon any and all other security for the Debt in such order as Lender may elect; no such action, suit, proceeding, judgment, levy, execution or other process will constitute an election of remedies by Lender or will in any manner alter, diminish or impair the lien and security interest created by this Mortgage or any other Security Documents unless and until the Debt is paid in full.

(i) Advances. To advance such monies and take such other action as is authorized by paragraphs 13 and 23 herein.

(j) Judgment. Any judgment against Borrower shall bear interest at the Default Rate (as defined in the Note).

22. WAIVER OF CERTAIN RIGHTS. Borrower will not claim, take or insist upon any benefit or advantage of any present or future stay, extension, redemption or moratorium law that may affect Borrower's obligations hereunder, or any law providing for the valuation or appraisal of the Mortgaged Property or any portion thereof prior to any sale or sales that may be made under or by virtue of this Mortgage. Borrower, for itself and all who may claim under Borrower, waives, to the extent that it lawfully may, all rights to have the Mortgaged Property and any other security for the Debt marshalled upon any foreclosure or otherwise.

23. FURTHER ASSURANCES. Borrower, from time to time, will execute, acknowledge, subscribe and deliver to or at the direction of Lender such documents and further assurances as Lender may reasonably require for the purpose of evidencing, perfecting or confirming the lien and security interest created by this Mortgage, or the security intended to be afforded by the Loan Documents, or both. Without limitation of the foregoing, Borrower will defend, indemnify and hold Lender harmless with respect to any suit or proceeding in which the validity, enforceability or priority of the lien or security interest, or both, is endangered or contested, directly or indirectly, and will provide Lender with such security for the defense of any such suit or proceeding as Lender reasonably may require. If Borrower fails to undertake the defense of any such claim in a timely manner, or fails to furnish Lender with reasonable security for such defense, or, in Lender's sole but reasonable determination, fails to prosecute such defense with due diligence, then Lender is authorized to take, at the expense of Borrower, all necessary and proper action in defense of any such claim, including the retention of legal counsel, the prosecution or defense of litigation and the compromise or discharge of claims, including payment of all costs



Stacy M. Butterfield POLK
CFN# 2018153162 OR BK 10553 PG 55 Pgs 0041-0061 07/18/2018 02:56:35 PM

and reasonable attorneys' fees. All costs, expenses and losses, if any, so incurred by Lender, including reasonable attorneys' fees, regardless of whether suit is brought and, if suit is brought, for all administrative, trial and appellate proceedings, if any, will constitute advances by Lender as provided in paragraph 13.

24. CUMULATIVE RIGHTS AND NON-WAIVER. No right or remedy conferred upon or reserved to Lender by this Mortgage or in any of the other Loan Documents is intended to be exclusive of any other right or remedy; and each and every right and remedy is cumulative and in addition to any other right or remedy otherwise available. Every right, power, privilege and remedy granted Lender by this Mortgage or any of the other Loan Documents, or both, or otherwise available at law or in equity may be exercised by Lender from time to time as often as Lender deems expedient until the Debt is paid in full. Lender's failure to insist at any time upon the strict observance or performance by Borrower of any of the provisions of this Mortgage or in any of the other Loan Documents, or to exercise any right or remedy provided for in this Mortgage or in any of the other Loan Documents, will not impair any such right or remedy or be construed as a waiver or relinquishment thereof for the future. Receipt by Lender of any payment required to be made pursuant to any of the Loan Documents with knowledge of the breach of any provision of any of the Loan Documents will not constitute a waiver of such breach. In addition to all other remedies provided in this Mortgage, Lender will be entitled, to the extent permitted by applicable law, to injunctive relief in the case of a violation or attempted or threatened violation of any of the provisions of the Loan Documents or to a decree ordering performance of any of the provisions of any of the foregoing.

25. JUDGMENT. Lender may seek and recover a judgment for all amounts due and payable in accordance with the Note or under this Mortgage either before, after or during the pendency of any other proceedings or action to obtain relief under or with respect to any of the Loan Documents. Lender's right to seek and recover any such judgment will not be affected by obtaining any other such relief. Lender will continue to be entitled to enforce payment of, and to seek and recover a judgment for, any portion of the Debt remaining due and payable after the application of any proceeds of any sale of the Collateral pursuant to law. Neither the lien nor security interest of this Mortgage, nor any rights or remedies of Lender hereunder or under any of the Loan Documents, will be impaired in any way by the recovery of any judgment by Lender against Borrower or any guarantor of the Debt, or by the levy of an execution under such judgment upon any portion of the Collateral, until the Debt is paid in full. Any such judgment against Borrower shall bear interest at the Default Rate (as defined in the Note).

26. INDEMNIFICATION. Borrower has read and does hereby approve the legal description of the Land which is the subject of this Mortgage as set forth on the first page of this Mortgage or in Exhibit "A" attached hereto, and hereby indemnifies Lender, its successors or assigns, and their attorneys with respect to any liability which might arise as a consequence of Section 697.10, Florida Statutes, or any successors or amendments thereto.

27. RELEASES AND EXTENSIONS BY LENDER. Lender, from time to time, without notice to any person and without affecting the liability of Borrower or of any guarantor or of any other person (other than any person expressly released by Lender in writing) for the payment of any of the Debt, and without affecting the priority or extent of the lien and security interest of this Mortgage (except as to property specifically released by Lender in writing), may do any or all



Stacy M. Butterfield POLK
CFN# 2018153162 OR BK 10553 PG 56 Pgs 0041-0061 07/18/2018 02:56:35 PM

2020CA-000383-0000-00 Received in Polk 01/30/2020 05:09 PM

of the following: (i) release in whole or in part any person liable for payment of any or all of the Debt, or (ii) extend the time or otherwise alter the terms of payment of the Debt, in whole or in part, or (iii) accept additional or substitute security of any kind, or (iv) release or otherwise deal with all or any portion of the Collateral.

28. NOTICES. Any notice or demand that must or may be given or made in connection with this Mortgage must be in writing and, unless receipt is expressly required, will be deemed given, delivered or made, as the case may be, when delivered by personal delivery or when mailed by Express Mail, by overnight delivery service of a nationally-recognized company, or by certified or registered mail, return receipt requested, in any event, with sufficient postage affixed, and addressed to the parties at the addresses written on the first page of this Mortgage or on the signature pages of this Mortgage. Such addresses may be changed by notice pursuant to this paragraph. Notice of change of address is effective only upon receipt. All of the persons executing this Mortgage as Borrower severally agree that a single notice to Borrower in the manner provided in this paragraph will be effective to bind each such person for all purposes.

29. TRANSFERS. Borrower may not sell, convey, assign, transfer or otherwise dispose of any interest in all or any portion of the Mortgaged Property, or any ownership interest in Borrower or any guarantor, without Lender's prior written consent, which consent may be withheld in Lender's reasonable discretion. Whether such transfer is voluntary or involuntary, or by operation of law, any such transfer will be void as to Lender, and constitute an immediate Default under this Mortgage, without notice, in the sole discretion of Lender. Lender's consent to any transfer, sale, or conveyance hereunder shall not be deemed a consent to any subsequent transfer, sale, or conveyance for which Lender's prior written approval has not been obtained.

30. REPLACEMENT OF NOTE. Upon receipt of evidence reasonably satisfactory to Borrower of the loss, theft, destruction or mutilation of the Note, or any amendment or modification thereto, including without limitation any renewal note or additional note, and in the case of any such loss, theft, or destruction, upon delivery of an indemnity agreement, reasonably satisfactory to Borrower or, in the case of any such mutilation, upon surrender of such mutilated note or notes, Borrower will execute and deliver, in lieu thereof, a replacement promissory note, identical in form and substance to the Note and dated as of the date of the Note and upon such execution and delivery all references in any of the Loan Documents to the Note shall be deemed to refer to the replacement promissory note.

31. FUTURE ADVANCES. This mortgage is given to secure not only the existing Debt, but also such future advances, whether such advances are obligatory or are to be made at the option of Lender, or otherwise, as are made within twenty (20) years from the date hereof, to the same extent as if such future advances were made on the date of the execution of this Mortgage. The total amount of Debt that may be so secured may decrease or increase from time to time, but the maximum possible principal debt so secured at one time shall not exceed the amount stated above, plus interest thereon, and any disbursements made for the payment of taxes, levies or insurance on the Mortgaged Property, with interest on such disbursements at the rate then in effect pursuant to the terms of the Note.

32. GENERAL. The provisions of this Mortgage inure to the benefit of Lender and its successors and assigns, and bind all persons executing this Mortgage as Borrower and their

respective heirs, legal representatives, successors and assigns, jointly and severally, and all persons now or hereafter claiming any right, title and interest in and to any of the property, real, personal or mixed, tangible or intangible, now or hereafter existing or any substitutions or replacements thereof and described in this Mortgage as the Collateral. Time is of the essence to this Mortgage and each of its provisions. The provisions of this Mortgage are to be interpreted, construed, applied and enforced in accordance with the laws of the State of Florida, regardless of where this Mortgage is executed, delivered or breached, or where any payment or other performance required by this Mortgage is made, where any action or other proceeding involving this Mortgage is instituted, or whether the laws of the State of Florida otherwise would apply the laws of another jurisdiction; the foregoing choice of law provisions will apply to the Loan Documents. The provisions of the Loan Documents are severable at Lender's option so that if any provision is declared by a court of competent jurisdiction to be invalid or unenforceable, no other provision will be affected by such invalidity or unenforceability, but will remain in force and effect according to its original terms, if Lender so elects. Wherever used in this Mortgage or the other Loan Documents, or both, and unless expressly provided otherwise: (i) use of the singular includes the plural, and vice versa; (ii) use of one gender includes all genders; (iii) use of the term "include" or "including" is always without limitation; (iv) use of the words, "should," "must" and "will" has the same legal effect as the use of the word "shall"; (v) the term "day" means a banking day which shall be a day on which banks are open for the transaction of business, excluding any national holidays, and any performance which would otherwise be required on a day other than a banking day shall be timely performed in such instance, if performed on the next succeeding banking day; (vi) any definition herein incorporating one or more documents or items shall refer to such items "singularly and collectively", and (vii) "person" means any natural person or artificial entity having legal capacity. Paragraph headings and subheadings are for indexing purposes only and are not to be used to interpret, construe, apply or enforce the provisions of this Mortgage. Borrower and Lender intend the provisions of this Mortgage and the other Loan Documents to be interpreted, construed, applied and enforced so as to avoid inconsistencies or conflicting results; but if any such inconsistency or conflict necessarily occurs, Borrower and Lender intend that the provisions of the Loan Documents control unless otherwise provided therein. This Mortgage may be amended only by a written instrument executed by Borrower and Lender with the same formalities as this Mortgage.

33. <u>SATISFACTION.</u> The lien and security interest provided by the Loan Documents will continue unimpaired and in full force and effect unless and until the Debt is paid in full, whereupon such lien and security interest will be without further force or effect.

34. <u>BORROWER AS TENANT HOLDING OVER.</u> In the event of a foreclosure sale of the Mortgaged Property, Borrower shall be deemed a tenant holding over and shall forthwith deliver possession to Lender or any purchaser or purchasers at such sale or be summarily dispossessed according to provisions of the law of the State of Florida applicable to tenants holding over.

35. <u>TIME OF THE ESSENCE.</u> Time is of the essence with respect to each and every covenant, agreement, and obligation of Borrower under this Mortgage and the other Loan Documents, and any and all other instruments now or hereafter evidencing, securing or otherwise relating to the Loan.



Stacy M. Butterfield POLK
CFN# 2018153162 OR BK 10553 PG 58 Pgs 0041-0061 07/18/2018 02:56:35 PM

36. ORAL MODIFICATION INEFFECTIVE. No term of this Mortgage or any other of the Loan Documents, or such documents, may be waived, changed, modified, discharged, or terminated except by an instrument in writing signed by the party against which enforcement of the waiver, change, modification, discharge, or termination is sought.

37. HAZARDOUS SUBSTANCES. Borrower hereby affirms and incorporates by reference herein the representations, warranties, terms, conditions, and indemnities contained in that certain Environmental Indemnity Agreement of even date herewith.

38. WAIVER OF JURY TRAIL. AS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN EVIDENCED HEREBY, LENDER AND BORROWER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS MORTGAGE, THE LOAN EVIDENCED HEREBY, ALL LOAN DOCUMENTS AND AGREEMENTS EXECUTED OR CONTEMPLATED TO BE EXECUTED IN CONNECTION THEREWITH, AND ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]



Stacy M. Butterfield POLK
CFN# 2018153162 OR BK 10553 PG 59 Pgs 0041-0061 07/18/2018 02:56:35 PM

IN WITNESS WHEREOF, Borrower has executed and delivered this Mortgage as of the date stated above.

**"BORROWER"**

Signed, sealed, and delivered
In the presence of:

Mark Mann, Witness
Print or type your name here

Saskya Bedoya, Witness
Print or type your name here

JMJ Acquisitions, LLC, a Texas limited liability company

By: ________________
Tim Barton
Its: President

STATE OF ~~FLORIDA~~ Texas,
COUNTY OF Dallas.

The foregoing instrument was acknowledged before me this 13 day of July, 2018, by Tim Barton, as President of JMJ Acquisitions, LLC, a Texas limited liability company, on behalf of the company.

SASKYA BEDOYA
Notary ID #128322475
My Commission Expires
July 21, 2022

________________
Signature of person taking acknowledgment

Saskya Bedoya
(Typed, printed or stamped name of acknowledger) [*Complete if Notary*]
Notary Public, State of Florida at Large
Serial
Number:
My Commission Expires:

[Attached to Real Estate Mortgage, Assignment and Security Agreement]

**Exhibit "A"**

PARCEL:

***Lot 2, 42nd Street Warehouse Center, according to the map or plat thereof recorded in Plat Book 151, Page 22, Public Records of Polk County, Florida.***

Parcel #: 252824-353603-000020



Stacy M. Butterfield POLK
CFN# 2018153162 OR BK 10553 PG 61 Pgs 0041-0061 07/18/2018 02:56:35 PM

*LAW OFFICES OF*

# Hardin & Ball, P.A.

**Benjamin W. Hardin, Jr., Esquire**
*bwhardin@hardinpalaw.com*
**Julie Landrigan Ball, Esquire**
*jball@hardinpalaw.com*
**Daniel A. Fox, Esquire**
*daniel@hardinpalaw.com*

**Mattie Hardin Tondreault, Esquire**
*mattie@hardinpalaw.com*
**Rachel L. Goldizen, FRP (Paralegal)**
*rachgold@hardinpalaw.com*

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

November 21, 2019

Mr. Tim Barton, President
JMJ Acquisitions, LLC,
a Texas Limited Liability Company
1755 Wittington Plc Ste 340
Dallas, Texas 751234

Re: Default on Promissory Note and Mortgage to GSM of Polk County, LLC

Dear Mr. Barton,

This office represents GSM of Polk County, LLC (GSM). JMJ Acquisitions, LLC (JMJ) is in default on the above described promissory note and mortgage for failure to pay the entire balance on July 13, 2019, the maturity date. At this time there is past due and owing from JMJ to GSM the following:

| | |
|---|---|
| Principal- | $1,175,652.00 |
| Interest at 4.5% through 7/13/19- | 52,904.34 |
| Late charge- | 61,427.82 |
| Interest at default rate through 11/20/19-<br>(Per diem $579.77) | 75,370.10 |
| Attorney Fees- | 1,000.00 |
| | |
| Total as of 11/20/19- | $1,366,354.26 |

**Website:** www.hardin-law.com

**Physical Address:** *1905 Bartow Road, Lakeland, Florida 33801*
**Mailing Address:** *Post Office Box 3604, Lakeland, Florida 33802-3604*

**Telephone:** (863) 688-5200
**Facsimile:** (863) 686-0777

EXHIBIT
"C"

Please accept this letter as my client's demand that you pay the above amount, plus the per diem for additional days, within 10 days. Should you fail to do so, I have been instructed to file foreclosure proceedings seeking the above amount, additional interest at the default rate, and additional reasonable attorney fees and costs incurred in the foreclosure.

All questions or correspondence must be though me. You should give this matter your prompt attention to avoid litigation.

Sincerely,

Benjamin W. Hardin, Jr.

BWHj/rg
cc: -Regular U.S. Mail
-Email: TBarton@jmjdevelopment.net
-Client

**POLK COUNTY, FLORIDA**

INSTR # 2019229125
BK 11021 Pgs 2230-2231 PG(s)2
RECORDED 10/29/2019 12:53:31 PM
STACY M. BUTTERFIELD, CLERK OF COURT
POLK COUNTY
RECORDING FEES $18.50
RECORDED BY Jesscast

**POLK COUNTY,**

**Petitioner,**

**vs.**

**JMJ ACQUISITIONS LLC,**

**Respondent(s)./** **Complaint No. CNU-2019-822**
**CE LN**

## CLAIM OF LIEN FOR ASSESSMENT

**Property Owner(s): JMJ ACQUISITIONS LLC**

**NOTICE IS HEREBY GIVEN** that pursuant to Polk County Ordinance 08-047, that the Polk County Code Enforcement Unit had the below reference violation corrected and that pursuant to Section 9 of Polk County Ordinance 08-047, the owners of the property has failed to pay the cost of abating the violation as required by the Ordinance.

**Violation(s) abated: OVERGROWTH**

- ☐ **Ordinance 08-047 6(a): Open Storage**
- ☐ **Ordinance 08-047 6(b): Accumulation of junk and debris**
- ☐ **Ordinance 08-047 6(c): Organic Debris**
- ☑ **Ordinance 08-047 6(d): Overgrown lots**
- ☐ **Ordinance 08-047 6(e): Storage of distressed or abandoned vehicle**
- ☐ **Ordinance 08-047 6(f): Pool without barrier**
- ☐ **Ordinance 08-047 6(g): Infestation**
- ☐ **Ordinance 08-047 6(h): Vacant structure open to the public**
- ☐ **Ordinance 08-047 6(i): Building numbering**

R - CODE ENFORCEMENT OFFICE BOX

**Date of abatement: 8/1/2019**

**Cost of abatement:..............................$4740.00**

**Operating and administrative fee:.........$167.40**

**Total amount of Assessment Lien:....... $4907.40**

**Rate of interest payable on the lien: 5.35% per annum**
***NOTICE: Rate of interest begins on date of abatement.**

**Legal description of lot where nuisance was abated: 0 42ND ST NW, WINTER HAVEN, Parcel ID: 242825-353603-000020. Legal description of lot where nuisance was abated: 42ND STREET WAREHOUSE CENTER PB 151 PG 22-24 LOT 2**

EXHIBIT
tabbles
"D"

**Instruction regarding payment and removal of the lien:**
Please submit payment along with a copy of this Notice of Assessment to the Polk County Code Enforcement Unit at the following address: Polk County, Code Enforcement Unit, 330 West Church Street (33830), P.O. Box 9005, Drawer CS03, Bartow, Florida, 33831-9005. Please reference the case number with your payment. Once a payment is received, a satisfaction of the assessment shall be recorded in the public records of Polk County, Florida.

**Complaint No. CNU-2019-822**

**NOTICE:**
**Pursuant to Polk County Ordinance 08-047(9), this lien is assessed against the property described herein and shall be a first lien, equal to a lien for nonpayment of property taxes and may be collected pursuant to §197.3632, Florida Statute .**

**DATED** this 23rd day of October 2019.

Autumn Fenton
Director Code Enforcement Division
Polk County Public Safety
Drawer CS03, P.O. Box 9005
Bartow, Florida 33831-9005

STATE OF FLORIDA
COUNTY OF POLK

The foregoing instrument was acknowledged before me 23rd day of October 2019, by Autumn Fenton, Polk County Code Enforcement Director, who is personally known to me and who did not take an oath.

By ____________
Notary Public
My Commission Expires:

RHONDA CULPEPPER
Notary Public, State of Florida
My comm. expires June 13, 2021
Commission Number GG114703

CERTIFICATION OF COPY/CERTIFICATE OF SERVICE

I, Rhonda Culpepper Fiscal Specialist for the Polk County Code Enforcement Unit of Polk County, do hereby certify that the foregoing is a true and correct copy of the Claim of Lien for Assessment signed by the Polk County Code Enforcement Director on the 23rd day of October 2019, and that a true and correct copy of the foregoing has been furnished by U.S. Mail to JMJ ACQUISITIONS LLC at 1755 WITTINGTON PL STE 340, DALLAS, TX, 75234-1930, this 23rd day of October 2019.

By ____________

*Equal Opportunity Employer*

Filing # 108226300 E-Filed 06/01/2020 05:51:34 PM

**GSM OF POLK COUNTY, LLC, a Florida limited liability company,**

**Plaintiff,**

**vs.**

**JMJ ACQUISITIONS, LLC, a Texas limited liability company; POLK COUNTY, a political subdivision of the State of Florida (Code Enforcement Unit); and JOHN DOE and JANE DOE and ALL OTHER PERSONS IN POSSESSION OF THE SUBJECT REAL PROPERTY,**

**Defendants.**
**_____________________________________/**

**IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT IN AND FOR POLK COUNTY, FLORIDA**

**CASE NO. 2020-CA-0383**

**COMES NOW,** Defendant JMJ Acquisitions, LLC (hereinafter "Defendant") by and through the undersigned attorney, and files this Answer and Affirmative Defenses to Plaintiff's Complaint and states:

**ANSWER**

1. Without sufficient knowledge to admit or deny the allegation, therefore denied.
2. Without sufficient knowledge to admit or deny the allegation, therefore denied.
3. Denied, and strict proof thereof demanded.
4. Without sufficient knowledge to admit or deny the allegation, therefore denied.
5. Denied, and strict proof thereof demanded.
6. Without sufficient knowledge to admit or deny the allegation, therefore denied.
7. Without sufficient knowledge to admit or deny the allegation, therefore denied.
8. Without sufficient knowledge to admit or deny the allegation, therefore denied.
9. Without sufficient knowledge to admit or deny the allegation, therefore denied.
10. Denied, and strict proof thereof demanded.

11. Without sufficient knowledge to admit or deny the allegation, therefore denied.
12. Denied, and strict proof thereof demanded.
13. Denied, and strict proof thereof demanded.
14. Without sufficient knowledge to admit or deny the allegation, therefore denied.
15. Denied, and strict proof thereof demanded.
16. Without sufficient knowledge to admit or deny the allegation, therefore denied.
17. Without sufficient knowledge to admit or deny the allegation, therefore denied.
18. Without sufficient knowledge to admit or deny the allegation, therefore denied.
19. Without sufficient knowledge to admit or deny the allegation, therefore denied.
20. Without sufficient knowledge to admit or deny the allegation, therefore denied.
21. Without sufficient knowledge to admit or deny the allegation, therefore denied.
22. Without sufficient knowledge to admit or deny the allegation, therefore denied.

Any averment or claim that is not specifically answered otherwise herein is expressly denied.

**ATTORNEY'S FEES**

Defendant hereby gives notice that it intends to seek recovery of attorney's fees against Plaintiff under any applicable statute and/or contract.

**AFFIRMATIVE DEFENSES**

1. To the extent that Plaintiff asserts that there is an express contract, the action is barred by the applicable statute of limitations.

2. The alleged debt and Plaintiff's means of collecting it are and have been unconscionable and materially unfair to the party of lesser bargaining power and therefore, unenforceable in the interests of equity. Further, Defendant should be entitled to a refund

for sums paid in excess of the benefit received.

3. Plaintiff has failed to mitigate damages, if any, in this case.

4. Plaintiff failed to provide Notice of Default and Notice of Acceleration as required.

5. Defendant asserts that Plaintiff comes to court with unclean hands and is prohibited by reason thereof from obtaining the equitable relief of foreclosure from this court. The Plaintiff's unclean hands result from the intentional failure to comply with material terms of the mortgage and note. As a matter of equity, this Court should refuse to foreclose this mortgage because acceleration of the note would be inequitable, unjust, and the circumstances of this case would render acceleration unconscionable. This court should refuse the acceleration and deny foreclosure because Plaintiff has waived the right to acceleration or is estopped from doing so because of its conduct.

6. Defendant hereby claims and reserves any right or interest it may have in or to any surplus proceeds that may result from the Plaintiff's foreclosure of the subject property.

7. Defendant claims Plaintiff's non-compliance with the conditions precedent to foreclosure imposed on the Plaintiff.

8. Plaintiff is not in possession of the original note as required by law.

9. The purported note at issue in this cause is not a negotiable instrument under Florida law.

Defendant reserves the right to amend these Affirmative Defenses.

**WHEREFORE,** Defendant respectfully requests that the Court deny the relief sought by Plaintiff and enter judgment for Defendant including reasonable attorney's fees and costs to which Defendant is entitled pursuant to § 57.105 Fla. Stat., any and all applicable sections and applicable contract provisions and any other relief the Court deems just and necessary.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished in the manner designated to the following persons on this __1__ day of June, 2020:

Benjamin W. Hardin, Jr.
P.O. Box 3604
Lakeland, FL 33802
service@hardinpalaw.com
Counsel for Plaintiff

Bruce J. Fatz and Stephani A. Sock
0 42nd Street Northwest
Winter Haven, FL 33881
Defendants

**Law Office of Alex McClure**

/s/ Alex McClure
**Alex McClure, Esq.** FBN 0046366
255 Primera Boulevard, Suite 160
Lake Mary, Florida 32746
eservice@amcclurelaw.com
Telephone: (407)984-5270/ (800)437-2019
Facsimile: (407)984-5270