Tall Ship DTC LLC
1244 N. Stone St., Suite 3
Chicago, Illinois 60610
(312) 498-2364

# LOAN PURCHASE OFFER

March 12, 2021

Mr. Vipin Nambiar
Managing Principal
HNGH Turtle Creek, LLC
1807 Ross Ave, Ste 440
Dallas, TX 75201

**Re:** Indebtedness (the "Indebtedness" and/or the "Loan") evidenced by that certain Secured Promissory Note (the "Note"), executed by MO 2999TC, LLC, a Delaware limited liability company ("Borrower"), dated September 20, 2019 in the original principal amount of $32,500,000.00 payable to the order of 2999 Turtle Creek LLC, a Delaware limited liability company ("Senior Participant"), said Note being secured by, among other things, that certain Deed of Trust, Security Agreement and Fixture Filing (the "Deed of Trust," together with the Note and any and all other documents and agreements entered into in connection therewith, (the "Loan Documents"), dated of even date with the Note executed by Borrower to Michael B. Massey, Trustee, for the benefit of Senior Participant, filed in the Real Property Records of Dallas County, Texas, granting a first priority security interest in that certain real property identified therein (the "Property"), guaranteed by that certain Guaranty, dated as of September 20, 2019, by and between Timothy Lynch Barton, an individual ("Guarantor") and Senior Participant (the "Guaranty"), Loan Documents having been sold by Senior Participant to HNGH Turtle Creek, LLC, a Delaware limited liability company ("Lender," together with Borrower and Guarantor, each, a "Party," and collectively, the "Parties").

Dear Vipin,

On behalf of Tall Ship DTC LLC (the "Purchaser") and its members and affiliates, we hereby submit this Offer to Purchase ("Offer" or "Offer Letter") to HNGH Turtle Creek, LLC (the "Seller" or "Lender") setting forth an outline of the terms and conditions relating to Purchaser's



EXHIBIT
B

proposed acquisition of the Loan referenced above (the "Loan") subject to the terms and conditions set forth below. With the exception of "1.5 Seven (7) Day Exclusive Negotiation Period," "1.6 Standstill," "9.5 No Assignment," "9.7 Governing Law," "9.11 Confidentiality," and "9.13 Execution by Seller." which shall be binding terms, all other terms and conditions in this Offer shall be non-binding.

**RECITALS**

A. Seller owns or will own at the time of Closing (defined below), one hundred percent (100 %) of the Loan that is described on Exhibit A attached hereto (the "Loan"), secured by the real property described on Exhibit B attached hereto (the "Property"), and evidenced by a promissory note (the "Note"). Seller also owns, or will own at the time of Closing, one-hundred percent (100%) of (i) all documents and instruments evidencing, modifying, governing, securing, insuring, or guaranteeing the indebtedness evidenced by the Note (the Note and related documents, collectively, the "Loan Documents") and (ii) liens, assignments, security interests, collateral rights and remedies, evidenced, created, granted and/or perfected by the Loan Documents (collectively, the "Liens").

B. Purchaser wants to purchase from Seller, the Loan, including the Loan Documents and the Liens, subject to the terms and conditions in this Offer.

**AGREEMENT**

For good and valuable consideration, the receipt and sufficiency of which are acknowledged, Seller offers to purchase the Loan under the following terms and conditions.

**ARTICLE 1.**
**PURCHASE AND SALE OF THE LOAN**

**1.1 Offer to Purchase the Loan.** Subject to the terms and conditions of this Offer Letter, Purchaser offers to purchase from Seller, the Loan, including, without limitation, the Loan Documents and the Liens.

**1.2 Purchase Price.** The purchase price of the Loan shall be **THIRTY-EIGHT MILLION FIVE HUNDRED THOUSAND DOLLARS ($38,500,000),** which shall include all accrued and unpaid interest, fees, penalties and legal expenses associated with the Loan, adjusted pursuant to the terms of this Offer Letter (the "Purchase Price").

**1.3 Residual Payment.** Purchaser agrees to pay Seller One Million Three Hundred Thirty-Five Thousand Dollars ($1,335,000), plus 6.00% annual interest from the Construction Loan Financing Success Fees paid by Purchaser at the closing(s) of the Construction Loan for the Project.

**1.4 Forbearance Agreement.** The Purchaser is in possession of a forbearance agreement executed by the Borrower, which will be provided to Seller upon Seller's execution of this Offer Letter.

**1.5 Seven (7) Day Exclusive Negotiation Period.** Upon execution of this Offer Letter by Seller, Seller will grant Purchaser a Seven (7) Day Exclusivity Period to negotiate and execute the binding and definitive Loan Purchase Agreement with Seller. During this period, Seller will neither advance nor initiate any foreclosure proceedings.

**1.6 Standstill.** During the Seven (7) Day Exclusive Negotiation Period or until the execution of a binding and definitive Loan Purchase Agreement, Seller shall not directly, or indirectly, take (nor shall Seller permit its partners, board members, employees, investment bankers, attorneys, accountants, brokers or other agents or affiliates, to take) any action to encourage, solicit, initiate or otherwise facilitate the submission by a third party of or negotiate or enter into any agreement with a third party with respect to, a proposal to acquire, directly or indirectly, the Loan, and Seller shall immediately terminate any current negotiations and contracts.

**1.7 Loan Purchase Agreement.** The Loan Purchase Agreement, once duly executed by both parties, will be the binding and definitive document in the purchase of the Loan. On the date that this Offer Letter is duly executed, Seller will provide Purchaser with (i) a description of the Loan to be included as Exhibit A in the Loan Purchase Agreement; and, (ii) a description of the real property securing the Loan to be included as Exhibit B in the Loan Purchase Agreement. Purchaser shall have three (3) calendar days to provide Seller with a draft of the Loan Purchase Agreement ("Draft Agreement"). Seller will have two (2) calendar days to revise the Draft Loan Purchase Agreement and provide a revised Loan Purchase Agreement ("Revised Agreement") to Purchaser. The parties will have two (2) calendar days to negotiate and execute the definitive and binding Loan Purchase Agreement.

**1.8 Due Diligence Period.**

a. On the date that the Loan Purchase Agreement is duly executed, Seller will deliver to Purchaser (i) the promissory note (the "Note") evidencing the Loan; (ii) all documents and instruments evidencing, modifying, governing, securing, insuring, or guaranteeing the indebtedness evidenced by the Note (the Note and related documents, collectively, the "Loan Documents"); and, (iii) liens, assignments, security interests, collateral rights and remedies, evidenced, created, granted and/or perfected by the Loan Documents (collectively, the "Liens"). Purchaser shall have a due diligence period of seven (7) days beginning on the date the Loan Documents and the Liens by Purchaser are received by Purchaser. Purchaser will complete all due diligence on the Loan and Loan Documents it deems necessary or desirable.

b. Nothing in the Loan Purchase Agreement will authorize inspection of the Property by Purchaser except as permitted under the terms of the Loan Documents. Once the Loan Purchase Agreement is fully executed and upon Purchaser's request, Seller will contact the Borrower at the Property to secure a time for Purchaser's access to the Property to conduct inspections as permitted under the Loan Documents. Seller may have a representative present at the time of any such inspection. Purchaser shall indemnify and hold Seller harmless from damage to property or personal injury resulting from Purchaser's negligence and arising as a result of any inspection performed by Purchaser. The foregoing indemnity shall survive Closing or earlier termination of the Loan Purchase Agreement.

c. Purchaser shall pay for any inspection fee, appraisal fee, engineering fee or other due diligence cost incurred by Purchaser in connection with this inspection.

d. If, as a result of the investigation by Purchaser during the Due Diligence Period, Purchaser desires to proceed with the purchase of the Loan, Purchaser shall notify Seller in writing no later than the last day of the Due Diligence Period, that Purchaser desires to proceed with the transaction. Alternatively, if Purchaser fails to notify Seller in writing on or before the last day of the Due Diligence Period that Purchaser desires to proceed with the transaction, the Loan Purchase Agreement shall terminate and the rights and liabilities of the parties under the Loan Purchase Agreement shall terminate, except for any obligations which are specified to survive the termination of the Loan Purchase Agreement.

## ARTICLE 2.
## CONDITIONS TO CLOSING

**2.1 Conditions to Purchaser's Obligations.** Purchaser's obligation to purchase the Loan shall be subject to fulfillment of each of the following conditions by the Closing Date:

a. The representations and warranties of Seller in the Loan Purchase Agreement shall be true and correct in all material respects on the Closing Date;

b. Purchaser shall have received all documents Seller is required to deliver pursuant to the Loan Purchase Agreement; and,

c. By the Closing Date, either Seller shall have materially performed all of its other obligations, or Purchaser shall have waived these obligations.

**2.2 Conditions to Seller's Obligations.** Seller's obligation to sell the Loan to Purchaser shall be subject to fulfillment of each of the following conditions by the Closing Date:

a. The representations and warranties of Purchaser in the Loan Purchase Agreement shall be true and correct in all material respects on the Closing Date; and,

b. By the Closing Date, either Purchaser shall have materially performed all of its other obligations, or Seller shall have waived these obligations.

## ARTICLE 3.
## CLOSING

**3.1 Closing.** Closing of the transaction contemplated by this Offer Letter and the Loan Purchase Agreement (the "Closing") shall occur no later than the date (the "Closing Date") that is two (2) days after Purchaser has completed its due diligence and notified Seller in writing of its intent to proceed to Closing.

**3.2 Payment Prorations and Other Adjustments.** All rents, taxes, and other payments to which Seller has a right under the Loan shall be prorated as of 11:59 PM on the day before the Closing Date, with Seller receiving amounts attributable to the period before the Closing Date and Purchaser receiving amounts attributable to the period after the Closing Date. Payments delinquent as of the Closing Date shall not be prorated at Closing but shall be prorated between Purchaser and Seller only when received by Purchaser. Delinquent amounts due to Seller shall be promptly (no later than five (5) business days after receipt by Purchaser) delivered to Seller. Payments received by Seller on and after Closing but owed to Purchaser under the Loan Purchase Agreement shall be promptly (no later than five (5) business days after receipt by Seller) delivered to Purchaser, prorated as above provided.

**3.3 Purchaser's Closing Requirements.** At Closing, Seller shall deliver to Purchaser:

a. the original Note, endorsed to Purchaser (to be delivered into escrow);

b. an assignment of the Loan ("Assignment of Loan");

c. UCC Financing Statements prepared by Purchaser (the "Financing Statements");

d. a certificate executed by Seller certifying the outstanding principal balance of the Loan as of the Closing Date ("Seller's Loan Balance");

e. originals of all Loan Documents, to the extent Seller has originals in its files, with copies to be provided for any Loan Document for which an original is not available;

f. a closing statement executed by both parties;

g. notices described in Section 3.7 below; and,

h. other documents and instruments (executed by Seller if applicable) necessary to assign and transfer the Loan, the Loan Documents and the Liens.

**3.4 Seller's Closing Requirements.** At Closing, Purchaser shall deliver to Seller:

a. the Purchase Price in immediately available funds pursuant to wiring instructions provided by Seller to Purchaser;

b. a closing statement executed by both parties; and,

c. other documents and instruments (executed by Purchaser if applicable) necessary and customary to consummate the purchase of the Loan.

**3.5 Recording and Recordation Fees.** Purchaser shall pay all Closing costs, including, among others, transfer taxes, filing costs, and recording fees. Purchaser shall be responsible for filing and recording the Assignment of Loan and Financing Statements.

**3.6 Delivery of Loan Files.** Purchaser shall take delivery of Seller's Loan files relating to the Loan (the "Loan Files") on the Closing Date at the place designated by Purchaser. Seller, however, may retain copies of the Loan Files.

**3.7 Notices.** Seller shall prepare and execute, in a form acceptable to Seller and Purchaser, notice of the transfer to be sent to Borrower and any Guarantors or other Obligors (collectively, "Obligors"). Copies of these notices, to be sent to Obligors promptly after Closing, shall be delivered to Purchaser at Closing.

## ARTICLE 4.
## REPRESENTATIONS AND WARRANTIES BY SELLER

Seller represents and warrants to Purchaser as follows:

**4.1** Seller is a corporation, duly organized and in good standing, and qualified to own the Loan.

**4.2** Execution, delivery and performance of this Offer Letter and the Loan Purchase Agreement are within Seller's corporate power, have been duly authorized, and are not in

contravention of law or the terms of Seller's Loan of incorporation, by-laws, or other organizational documents, or any material indenture, agreement or undertaking to which Seller is a party.

**4.3** The Loan Purchase Agreement constitutes a legal, valid and binding obligation of Seller, enforceable according to its terms, except as such enforceability may be limited by (i) bankruptcy, insolvency, and creditors' rights limitations and laws generally; and, (ii) general equitable principles.

**4.4**. Seller has not waived, impaired, altered, or released in writing any Loan Document.

**4.5** Seller makes no other representations or warranties, express or implied. Purchaser is purchasing the Loan based upon its own investigations as to value, collectability, nature, quality and condition of the Note, the Loan Documents, and the collateral securing the Note. These representations and warranties shall survive Closing for a period of twelve (12) months (the "Survival Period"). Any notice of breach must be delivered in writing to Seller before the end of the Survival Period.

**ARTICLE 5.**
**REPRESENTATIONS AND WARRANTIES BY PURCHASER**

Purchaser represents and warrants to Seller as follows:

**5.1** Purchaser is duly organized, validly existing and in good standing under the laws of the state of its formation.

**5.2** Execution, delivery, and performance of this Offer Letter and the Loan Purchase Agreement are within Purchaser's organizational power, have been duly authorized, and are not in contravention of law or the terms of Purchaser's certificate of organization, by-laws, or other organizational documentation, or any material indenture, agreement, or undertaking to which Purchaser is a party.

**5.3** This Offer Letter constitutes a legal, valid, and binding obligation of Purchaser, enforceable in accordance with its terms, except as such enforceability may be limited by (i) bankruptcy, insolvency, or creditors' rights limitations and laws generally; and, (ii) general equitable principles.

**5.4** Purchaser has substantial experience and sophistication in making and/or investing in commercial real estate and loans like the Loan; it has made and will continue to make its own investigation of all matters relating to the Loan and Loan Documents, including, without

limitation, the nature and value of the Property and the solvency and creditworthiness of the Borrower and any Guarantor. Purchaser is not relying and will not rely upon any representation, warranty, or advice by Seller in entering into this Offer Letter, the Loan Purchase Agreement and purchasing the Loan.

5.5 Purchaser will review with counsel each of the Loan Documents, which are being sold "AS IS."

## ARTICLE 6.
## SERVICING

**6.1 Servicing of Loan before Closing.** While this Offer Letter and the Loan Purchase Agreement are in effect, Seller will not, without prior written consent of Purchaser (i) consent to the release of any collateral securing the Loan or the release of any Obligor; (ii) consent to the compromise or settlement (other than a full pay-off) of any claim regarding the Loan; (iii) consent to a foreclosure of the Loan; or, (iv) consent to an encumbrance of, or modify, the Loan.

**6.2 Servicing of Loan after Closing.** The Loan shall be sold, assigned and transferred to Purchaser on a servicing released basis.

## ARTICLE 7.
## DEFAULTS AND REMEDIES

**7.1 Purchaser's Default.** Purchaser's (i) failure to perform a material obligation; or, (ii) breach of a material representation and warranty under the Offer Letter or Loan Purchase Agreement, shall constitute a default. Upon default, Seller may, as its sole remedy, terminate the Offer Letter or Loan Purchase Agreement by written notice to Purchaser. Neither party shall have any further rights or obligations under the Offer Letter or Loan Purchase Agreement, except for rights and obligations expressly surviving termination.

**7.2 Seller's Default.** Seller's (i) failure to perform any material obligation; or, (ii) breach of any material representation or warranty under the Offer Letter or Loan Purchase Agreement, shall constitute a default. Upon default, Purchaser may enforce specific performance of the Offer Letter or Loan Purchase Agreement. Neither party shall have any further rights or obligations under the Offer Letter nor the Loan Purchase Agreement, except for rights and obligations expressly surviving termination.

## ARTICLE 8.
## RELEASE AND IDEMNIFICATION

**8.1 Release.** Upon Closing, Purchaser will obtain in writing from Borrower and

Guarantor, on behalf of themselves and their respective agents, successors, assigns, affiliates, members, managers, and legal representatives, an agreement to fully release and forever discharge with prejudice HNGH Turtle Creek, LLC, Vipin Nambiar, James Glasgow, and William Hutchinson, as well as their respective predecessors, successors, assigns, subsidiaries, affiliates, partners, insurers, estates, agents, servants, employees, receivers, administrators, shareholders, managers, members, officers, directors, attorneys, and legal representatives (each, a "Releasee") from any and all claims, actions, causes of action, appeals, controversies, suits, rights, obligations, damages, losses, charges, debts, liabilities, judgments, and demands whatsoever, whether foreseen or unforeseen, known or unknown, pled or unpled, disclosed or undisclosed, matured or unmatured, in law, equity, or otherwise, that Borrower and Guarantor has or had that relate in any way to the Lawsuit or previously non-suited state court lawsuit and appeal, of any type or character, contract, or tort. Borrower and Guarantor specifically agree to release any claim for fraud or fraudulent inducement related to the Lawsuit and the Loan Documents. If further action is needed after Closing to carry out the purposes of the Loan Purchase Agreement, both Purchaser and Seller will cooperate with the other party's reasonable request. If further action is needed after Closing to carry out the purposes of the Loan Purchase Agreement, both Purchaser and Seller will cooperate with the other party's reasonable request.

**8.2 Indemnity.** The Purchaser shall indemnify and hold harmless the Seller, HNGH Turtle Creek, LLC, Vipin Nambiar, James Glasgow, and William Hutchinson, as well as their respective predecessors, successors, assigns, subsidiaries, affiliates, partners, insurers, estates, agents, servants, employees, receivers, administrators, shareholders, managers, members, officers, directors, attorneys, and legal representatives from any and all claims, actions, causes of action, appeals, controversies, suits, rights, obligations, damages, losses, charges, debts, liabilities, judgments, and demands whatsoever, whether foreseen or unforeseen, known or unknown, pled or unpled, disclosed or undisclosed, matured or unmatured, in law, equity, or otherwise, that Borrower and Guarantor has or had that relate in any way to the Lawsuit or previously non-suited state court lawsuit and appeal, of any type or character, contract, or tort. Purchaser agrees to indemnify and hold harmless the Seller against any claim for fraud or fraudulent inducement related to the Lawsuit and the Loan Documents.

## ARTICLE 9.
## MISCELLANEOUS

**9.1 Further Actions.** If further action is needed after Closing to carry out the purposes of the Agreement, both Purchaser and Seller will cooperate with the other party's reasonable request.

**9.2 Notices.** Notices and other communications pursuant to this Offer Letter shall be in writing, effective upon personal delivery; telecopy transmission (if delivery is confirmed); email transmission (if delivery is confirmed); or, overnight delivery (if delivery is confirmed). Notices

shall be addressed to the applicable party at the following addresses:

If to Seller: ______________________________

______________________________

______________________________

With a copy to: ______________________________

______________________________

______________________________

If to Purchaser: At Purchaser Notice Address set forth on Purchaser signature page to this Offer Letter.

**9.3 Amendment and Modification.** This Offer Letter may be amended, modified, or supplemented by written agreement executed by all parties.

**9.4 Consents.** If this Offer Letter requires or permits consent by any party, consent shall be given in writing.

**9.5 No Assignment.** This Offer Letter shall be binding upon and inure to the benefit of the parties and may not be assigned, except that Seller may assign this Offer Letter to an affiliate of Seller.

**9.6 Brokers.** In connection with the contemplated sale, neither Seller nor Purchaser has engaged a broker or other person or entity to whom fees, commissions, or similar compensation could be due or payable. Purchaser and Seller shall each indemnify and hold the other harmless from all claims for commissions, fees, or other compensation asserted in connection with the contemplated sale. The provisions of this Section shall survive Closing or termination of the Loan Purchase Agreement.

**9.7 Governing Law.** This Offer Letter shall be governed by the laws of the State of Illinois.

**9.8 Counterparts.** This Offer Letter may be executed in two or more identical counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

**9.9 Entire Agreement.** This Offer Letter including the exhibits, reflects the entire agreement and understanding of the parties and incorporates prior discussions and agreements.

**9.10 Time is of the Essence.** Time is of the essence in execution and performance of this Offer Letter.

**9.11 Confidentiality.** Seller and Purchaser shall treat all information related to this Offer Letter as confidential, and neither party shall disclose terms or conditions of the transaction without express written consent of the other. However, Purchaser and Seller may discuss information pertaining to this Offer Letter, the Loan, or evaluation materials concerning the Loan or the Property (a) if required by law or court order; and, (b) as necessary with the party's officers, directors, employees, attorneys, and accountants.

**9.12 Saturday, Sunday, or Legal Holiday.** If any date for performance of obligations or delivery of documents or notices should be other than a business day, compliance shall be acceptable on the next following business day.

**9.13 Execution by Seller.** In the event this Offer Letter is not signed by Seller by March 16, 2021 at 5:00 p.m. Central Time, this Offer Letter shall become null and void.

(Signatures on Following Page)

IN WITNESS THEREOF, each of the parties has caused the Agreement to be executed.

**SELLER**: HNGH TURTLE CREEK, LLC,

By: ______________________________

Name: Vipin Nambiar

Title: Managing Member

**PURCHASER**: TALL SHIP DTC LLC

By: Carlos X. Montoya

Name: Carlos X. Montoya

Title: Managing Member

Tall Ship Management LLC
1244 N. Stone St., Suite 3
Chicago, Illinois | 60610
(312) 498-2364

# EXHIBIT A

## DESCRIPTION OF THE LOAN

# EXHIBIT B

## DESCRIPTION OF THE PROPERTY