*Execution Version*

# LOAN PURCHASE AGREEMENT

THIS LOAN PURCHASE AGREEMENT ("**Agreement**") is executed this 13th day of April 2021 (the "**Effective Date**") between **HNGH TURTLE CREEK, LLC**, a Delaware limited liability company ("**Seller**"), and **TALL SHIP DTC LLC,** a Wyoming limited liability company ("**Purchaser**").

## RECITALS

A. On or about September 20, 2019, 2999 Turtle Creek, LLC, a Delaware limited liability company (the "**Original Lender**") made a loan to 2999TC Acquisitions, LLC f/k/a MO 2999TC, LLC ("**Borrower**") in the original principal amount of $32,500,000.00 evidenced by, among other things, that certain Secured Promissory Note, dated September 20, 2019, made by Borrower in favor of the Original Lender in the amount of $32,500,000.00, which Note is currently owned and held by Seller, (as amended from time to time, the "**Note**"), which loan is guaranteed by Timothy Barton ("**Guarantor**") pursuant to that certain Guaranty, dated September 20, 2019, by and between the Guarantor and the Original Lender, which Guaranty is currently owned and held by Seller (the "**Guaranty**").

B. The Loan is secured by a security interest in that certain real property owned by Borrower located at 2999 Turtle Creek, Dallas, Dallas County, Texas ("**Property**") as described in that certain Deed of Trust, Security Agreement, and Fixture Filing dated September 20, 2019 recorded as document number 201900253450 in the real property records of Dallas County, Texas (the "**Deed of Trust**" and, together with the Note, the Guaranty and all other documents evidencing or executed in connection with the Loan, as the same have been amended and modified, collectively, the "**Loan Documents**").

C. Seller acquired from Original Lender the Note and all of Original Lender's rights, claims, and interests in and related to the Loan Documents.

D. Seller borrowed certain funds from Happy State Bank ("**HSB**") used for the acquisition of the Note and Loan Documents from Original Lender and collaterally assigned the Deed of Trust to HSB (collectively, "**Underlying Loan**").

E. Seller entered into a Forbearance Agreement with Borrower on March 1, 2021(the "**Forbearance Agreement**") to forbear pursuing certain remedies related to certain Specified Defaults as defined therein which included placing of the warranty deed in escrow to be delivered to Seller upon a default of the Forbearance Agreement in accordance with the Forbearance Agreement and related Escrow Agreement.

F. Borrower referred Purchaser to Seller for the purpose of consummating the transaction described herein.

G. Seller and Purchaser executed a non-binding (except as otherwise set forth therein) Loan Purchase Offer letter ("**Offer Letter**") on March 12, 2021 which the applicable terms of the purchase are incorporated herein, as negotiated by the parties hereto.

H. Purchaser desires to purchase the Note and all of Seller's rights, interests, and claims in and related to the Loan Documents, which includes the Forbearance Agreement and

EXHIBIT
tabbies
E

Escrow Agreement, (collectively, the "**Loan**") from Seller, together with all of Seller's rights, title and interests in and to and under all documents and instruments executed or delivered by Borrower, or otherwise evidencing, securing or pertaining in any respect to the Loan Documents on the terms and subject to the conditions set forth herein.

**AGREEMENT:**

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Purchaser hereby agree as follows:

1. Sale and Purchase. Seller agrees to sell, convey, and assign to Purchaser, and Purchaser agrees to purchase and accept from Seller, for the Purchase Price (as hereinafter defined), on the terms and conditions set forth in this Agreement, the Note, the Loan and all of the rights, title and interests of Seller in and to and under the Loan Documents as listed as part of Exhibit B.

2. Purchase Price; Earnest Money.

   (a) The purchase price ("**Purchase Price**") to be paid by Purchaser to Seller for the Loan including all accrued and unpaid interest, fees, penalties, costs, legal fees, paid taxes, and any other rights and claims related to the Loan is **THIRTY-NINE MILLION EIGHT HUNDRED THOUSAND AND 00/100 DOLLARS ($39,800,000.00)** which Purchase Price shall be delivered by Purchaser to Guaranty National Title Company, 123 Madison Street, Suite 1000 Chicago, IL Attn: Ms. Lisa Vogel ("**Escrow Agent**") in immediately available funds by wire transfer or delivery of other immediately available funds at the Closing, as hereinafter defined, for delivery to Seller upon the consummation of the Closing.

   (b) Simultaneous herewith, Purchaser shall pay to Escrow Agent the sum of **ONE HUNDRED THOUSAND AND 00/100 DOLLARS ($100,000.00)** (the "**Earnest Money**") by check drawn upon immediately available good funds or by wire transfer of immediately available funds in accordance with the wiring instructions set forth below.

   (c) From the Effective Date until Closing, any payments of principal with respect to the Loan due or received by Seller shall be credited to Purchaser against the Purchase Price at the Closing. Notwithstanding the preceding sentence, in the event the Closing does not occur, the payments received by Seller under the Loan from and after the Effective Date shall remain the property of Seller. All rents, taxes, and other payments to which Seller has a right under the Loan shall be prorated as of 11:59 PM on the day before the Closing Date, with Seller receiving amounts attributable to the period before the Closing Date and Purchaser receiving amounts attributable to the period after the Closing Date. Payments delinquent as of the Closing Date shall not be prorated at Closing but shall be prorated between Purchaser and Seller only when received by Purchaser. Delinquent amounts due to Seller shall be promptly (no later than five (5) business days after receipt by Purchaser) delivered to Seller. Payments received by Seller on and after Closing but owed to Purchaser under the Loan Purchase Agreement shall be promptly (no later than five (5)

business days after receipt by Seller) delivered to Purchaser, prorated as above provided.

(d) In addition to all other amounts under this Agreement, Seller acknowledges the receipt and adequacy of **$100.00** (the "**Independent Contract Consideration**"), which amount Seller and Purchaser hereby acknowledge and agree has been bargained for and agreed to as independent consideration for Seller's execution and delivery of this Agreement. The Independent Contract Consideration is in addition to and independent of any other consideration or payment provided for in this Agreement and will not be refunded in any event.

3. Items to be Provided by Seller. Unless otherwise provided, within five (5) Business Days after the date hereof, Seller shall provide for Purchaser for review the following:

(a) True, correct and complete copies of the Loan Documents including the Forbearance Agreement; and

(b) All documents as described and required under the Offer Letter, and those which have otherwise not been provided (the "**Evaluation Material**") pertaining to the Loan and/or the Property in Seller's possession, custody or control shall be provided to Purchaser including, but not limited to: (i) the Loan Documents, and (ii) any confidential valuations prepared by Seller and any property valuation for the Property prepared by independent third parties.

4. Inspections

(a) Purchaser shall have a due diligence period of seven days beginning on the date the Evaluation Material is received by Purchaser (the "**Inspection Period**"). If Purchaser, in its sole and absolute discretion, is not satisfied with the results of its inspections during the Inspection Period for any reason whatsoever, Purchaser, as Purchaser's sole and exclusive remedy, shall have the right to terminate this Agreement by giving written notice of termination to Escrow Agent and Seller on or before the expiration of the Inspection Period. Upon such termination, neither party hereto shall have any further rights or obligations hereunder, except for those obligations which expressly survive termination of this Agreement (the "**Survival Obligations**") and Escrow Agent shall immediately disburse the Earnest Money to Purchaser (without any required notice to or consent of any person or party) and notify Seller of the termination of this Agreement. Except as otherwise provided herein, if Purchaser does not elect to terminate this Agreement during the Inspection Period by notice in writing to Seller prior to the expiration of the Inspection Period, Purchaser shall be deemed to have waived its right to terminate this Agreement pursuant to this Section 4.

5. Termination, Default and Remedies.

(a) If Purchaser fails to perform a material obligation which is not cured following ten (10) days written notice or refuses to close the purchase of the Loan pursuant to this Agreement at the Closing for any reason, other than termination of this Agreement by

Purchaser pursuant to a right to so terminate expressly set forth in this Agreement, then, such event shall constitute a default by Purchaser hereunder and Seller may terminate this Agreement and retain the Earnest Money by giving written notice to Purchaser prior to or at the Closing, whereupon neither party hereto shall have any further right or obligation hereunder, except for those obligations which expressly survive termination of this Agreement, and Escrow Agent shall disburse to Seller any and all Earnest Money including any interest earned in its possession. In addition to receipt of the Earnest Money, Seller shall not be entitled to consequential, punitive or special damages from Purchaser due to Purchaser's default hereunder.

(b) If Seller fails to perform any material obligation in this Agreement which is not cured following ten (10) days written notice or fails or refuses to close the sale of the Loan pursuant to this Agreement at the Closing, or if Seller fails to perform any of Seller's other obligations hereunder, when required, either prior to or at the Closing, for any reason other than the termination of this Agreement by Seller pursuant to a right to terminate expressly set forth in this Agreement or Purchaser's failure to perform Purchaser's obligations under this Agreement, then Purchaser shall have the right, as Purchaser's sole and exclusive remedies, to either (i) terminate this Agreement by giving written notice thereof to Seller prior to or at the Closing or (ii) seek and enforce specific performance of this Agreement, and/or damages, if any, occasioned by Seller's default. If Purchaser elects to terminate this Agreement under subsection (i) above, upon such termination neither party hereto shall have any further right or obligation hereunder, other than the Survival Obligations, and Escrow Agent shall deliver the Earnest Money to Purchaser. Purchaser shall not be entitled to receive consequential, punitive and speculative damages.

6. <u>Closing</u>.

(a) The closing (**"Closing"**) of the sale of the Loan by Seller to Purchaser shall occur at the offices of the Escrow Agent or any other mutually acceptable location including remotely, on the date that is thirty (30) days following the Effective Date of this Agreement or such earlier date as Purchaser shall request upon two (2) Business Days' prior notice to Seller (the **"Closing Date"**).

(b) At the Closing, all of the following shall occur, all of which shall be deemed concurrent conditions precedent:

(i) Seller, at Seller's sole cost and expense, shall deliver or cause to be delivered to Escrow Agent the following:

(A) The original executed Note, together with any allonges or prior endorsements thereto, which shall be endorsed "Pay to the order of Purchaser, without recourse or warranty, except for the express representations and warranties made by the undersigned in that certain Loan Purchase Agreement dated as of April 13, 2021, by and between the undersigned and Purchaser";

(B) An Assignment of Loan, Note, Deed of Trust, and any other liens (the "**Assignment**") for the Loan Documents and related rights and liens in the form of <u>Exhibit B</u> attached hereto with all blanks appropriately completed;

(C) A certificate executed by Seller certifying the outstanding principal balance of the Loan as of the Closing Date (**"Seller's Loan Balance"**);

(D) An executed notice, in a form reasonably acceptable to Seller and Purchaser, of the transfer to be sent to Borrower and any Guarantors or other Obligors (collectively, "Obligors") to be delivered to Purchaser at Closing with copies of these notices, to be sent to Obligors promptly after Closing by Purchaser;

(E) One or more UCC-3 Assignment of Financing Statement forms (the "**UCC-3**") evidencing the assignment to Purchaser of all Seller's rights, title and interests in and to any security interests in personal property and fixtures created by the Loan Documents and held by Seller which are in effect on the Closing Date;

(F) The originals, to the extent available, and otherwise true and correct copies, of the other Loan Documents, including any original mortgagee title policy;

(G) An executed settlement statement ("**Closing Statement**") prepared by the Escrow Agent, setting forth the Purchase Price, closing expenses and any adjustments and prorations called for by this Agreement;

(H) The Deed which is being held in escrow under the terms of the Forbearance Agreement between Borrower and Seller and such Deed shall be deemed void and of no force and effect;

(I) An executed release, in recordable format, of all underlying loan obligations of Seller to HSB including release of all collateral assignments of the Deed of Trust and any other Loan Documents; and

(J) Take commercially reasonable efforts to enter into an agreed order dismissing the litigation 2999 Turtle Creek, LLC (Plaintiff) and HNGH Turtle Creek, LLC (Intervenor-Plaintiff) v. Timothy Lynch Barton (Defendant), Cause No. DC-20-12133, pending in the 192nd District Court, Dallas County, Texas with prejudice to be filed with the court at closing with Seller to reasonably ensure such order is signed and entered into the record.

(ii) Purchaser, at Purchaser's sole cost and expense, shall deliver or cause to be delivered to Escrow Agent the following:

(A) The Purchase Price, less the amount of the Earnest Money held by Escrow Agent, and less the amount of any credit accruing to Purchaser

pursuant to Section 2(c);

(B) Separate releases from Borrower and Guarantor of Seller and Happy State Bank; and

(C) The executed Closing Statement.

(iii) At the Closing the Escrow Agent, upon receipt of all items to be delivered to Escrow Agent in accordance with Section 6(b)(i) and 6(b)(ii) above, shall simultaneously (i) deliver to Seller the Purchase Price, and one fully executed counterpart of the Assignment described in Section 6(b)(i)(B) above; (ii) deliver to Purchaser the Note endorsed by Seller, a counterpart of the Assignment executed and acknowledged by Seller, the UCC-3 and any original Loan Documents and (iii) deliver any endorsement to the mortgagee title policy requested by Purchaser and which is available under applicable title insurance rules and regulations (upon Purchaser's payment for same).

(iv) Seller and Purchaser shall each pay one-half of the escrow fee charged by the Escrow Agent. Seller and Purchaser shall pay their respective attorneys' fees for the negotiation and drafting of this Agreement and the documents described in Section 6(b)(i) and 6(b)(ii). Purchaser shall pay the cost of all recording fees, and Purchaser shall pay for the cost of any title insurance coverage or endorsements that Purchaser elects to obtain, along with any transfer tax, mortgage tax or document stamp taxes incurred in connection with this transaction.

7. Conditions Precedent to Performance by Purchaser.

(a) Purchaser's obligations under this Agreement shall be contingent and specifically conditioned upon the following:

(i) Seller shall have, in all material respects, delivered, performed, observed, and complied with all of the items, instruments, documents, covenants, agreements, and conditions required by this Agreement to be delivered, performed, observed, and complied with by Seller prior to or as of the Closing;

(ii) The representations made by Seller in Section 9 of this Agreement shall be true and correct in all material respects as though made at and as of the Closing Date, except as otherwise contemplated by this Agreement or consented to in writing by the Purchaser (it being understood that representations that speak as of a specified date shall continue to speak as of the date so specified);

(iii) Following any inspection made by Purchaser of the Property, there shall have occurred no material adverse change in the physical condition of the Property; and

(iv) The Loan has not been modified or amended after the Effective Date unless prior written consent was obtained from Purchaser.

(b) In the event that any of the conditions described in Section 7(a) hereof have not been satisfied at or prior to the Closing following ten (10) days written notice, Purchaser shall have the option, in addition to any other remedies available herein, at any time at or before the Closing, to either (i) extend the Closing day to day for up to thirty (30) days to allow time sufficient for such condition to be satisfied, or (ii) terminate this Agreement by written notice to Seller, whereupon the Earnest Money shall be retained by Seller and neither party hereto shall have any further right or obligation hereunder, other than the Survival Obligations and Purchaser's right to pursue the remedy provided in Section 5(b) hereof, if applicable, or (iii) waive such condition and close the purchase of the Loan in accordance with the terms hereof.

8. Conditions Precedent to Performance by Seller.

(a) Seller's obligations under this Agreement shall be contingent and specifically conditioned upon the following:

(i) Purchaser shall have, in all material respects, delivered, performed, observed, and complied with all of the items, instruments, documents, covenants, agreements, and conditions required by this Agreement to be delivered, performed, observed, and complied with by Purchaser prior to or as of the Closing;

(ii) The representations and warranties made by Purchaser in Section 11 in this Agreement shall be true and correct in all material respects on the date hereof and as though made at and as of the Closing Date, except as otherwise contemplated by this Agreement or consented to in writing by the Seller (it being understood that representations and warranties that speak as of a specified date shall continue to speak as of the date so specified); and

(iii) Non-refundable payment of the Earnest Money.

(b) In the event that any of the conditions described in Section 8(a) hereof have not been satisfied by the Closing Date, Seller shall have the option following ten (10) days written notice during which time such condition has not been satisfied, as Seller's sole and exclusive remedies, to (i) pursue its remedy as provided in Section 5(a) hereof, (ii) extend the Closing day to day for up to thirty (30) days in order for Purchaser to satisfy any such Condition, or (iii) waive such condition and close the sale of the Loan in accordance with the terms hereof.

9. Release of Borrower; Representations of Seller.

(a) The performance by Purchaser in the Closing of this Agreement shall be deemed as Borrower's (including Guarantor and related parties) full accord and satisfaction of their obligations to Seller under Forbearance Agreement and as such, Seller shall release the Deed as required thereunder.

(b) At Closing of this Agreement and for the benefit of Borrower, Guarantor and their related parties, Seller (including Vipin Nambiar and James Glasgow) along with their related parties, officers, directors, members, predecessors, successors, assigns and agents hereby irrevocably and unconditionally, jointly and severally, release and forever discharge Borrower and Guarantor of their respective beneficiaries, trustees, owners, predecessors, successors, assigns, agents, officers, employees, contractors, servicers, representatives, attorneys, and affiliates, and all persons acting by, though, under, or in concert with any of the aforesaid persons or entities, or any of them (collectively, **"Borrower Releasees"**), from any and all liabilities, damages, losses, claims, demands, costs, expenses, defenses, set-offs, rights of recoupment, judgments, executions, causes of action, suits, debts, dues, sums of money, claims for attorneys' fees or costs, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, torts, omissions, representations, breaches of contract or of obligations to perform, and any type of conduct or misconduct, whether negligent, intentional or otherwise, whether in law or in equity, whether matured or unmatured, whether known or unknown, whether liquidated or unliquidated, whether contingent or non-contingent which Seller now has or hereafter can, shall or may have by reason of any matter, cause or thing; provided, that, the Borrower Releasees shall not be released or discharged from any liabilities, damages, losses, claims, demands, costs, expenses, defenses, set-offs, rights of recoupment, judgments, executions, causes of action, suits, debts, dues, sums of money, claims for attorneys' fees or costs, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, torts, omissions, representations, breaches of contract or of obligations to perform, and any type of conduct or misconduct, whether negligent, intentional or otherwise, whether in law or in equity, whether matured or unmatured, whether known or unknown, whether liquidated or unliquidated, whether contingent or non-contingent which Seller now has or hereafter can, shall or may have by reason of any matter, cause or thing related to Borrower or Guarantor's role in Seller entering into this Agreement. Upon Closing, such releases are intended to be and are, a full, complete and general release in favor of the Borrower Releasees with respect to all claims, demands, actions, causes of action and other matters described therein, including specifically, without limitation, any claims, demands or causes of action based upon allegations of breach of fiduciary duty, breach of any alleged duty of fair dealing in good faith, economic coercion, usury or any other theory, cause of action, occurrence, matter or thing which might result in liability upon the Borrower Releasees arising or occurring on or before the Effective Date; *provided*, however, that if Purchaser brings any claim, suit or proceeding against Seller for any reason relating to this Agreement of the transactions contemplated hereunder, such releases in favor of the Borrower Releasees shall be void *ab initio*, and Seller may bring separate suit or file any counterclaim at such time. Further, notwithstanding the foregoing, nothing herein shall be deemed a release of the Borrower and Guarantor under the Note, Deed of Trust, and Loan Documents as assigned and conveyed to Purchaser upon Closing of this Agreement.

(c) Seller hereby represents and warrants to Purchaser that:

(i) Existence and Good Standing. Seller is a duly formed and validly existing

limited liability company under the laws of the State of Delaware and is in good standing under the laws of the State of Delaware.

(ii) Seller Authority. Seller has all requisite power and authority to execute, deliver, and perform all of its obligations under this Agreement and all instruments and other documents executed and delivered by Seller in connection herewith.

(iii) Manager Authority. Managers or officers of Seller including Vipin Nambiar and James Glasgow, along with their related parties, have the requisite power and authority to execute, deliver, and perform all of the obligations of the Seller under this Agreement and all instruments and other documents executed and delivered by Seller in connection herewith.

(iv) Due Authorization. The execution, delivery and performance of this Agreement and all instruments and other documents to be executed and delivered by Seller in connection herewith have been duly authorized by all necessary action on the part of Seller and do not and will not (A) require any consent or approval of its shareholders, members and/or partners, whichever is applicable, that has not been obtained, or (B) violate any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award presently in effect having applicability to Seller or any provision of Seller's organization documents.

(v) Binding Obligation. This Agreement constitutes a legal, valid and binding obligation of Seller enforceable against Seller in accordance with its terms, except as limited by bankruptcy, insolvency, reorganization, moratorium and other similar laws of general applicability relating to or affecting the enforcement of creditors' rights and general equitable principles which may limit the availability of equitable remedies.

(vi) Bankruptcy. Seller has not filed and is not planning to file any petition seeking or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any law relating to bankruptcy or insolvency, nor has any such petition been filed against Seller. No general assignment of Seller's property has been made for the benefit of creditors, and no receiver, master, liquidator or trustee has been appointed for Seller or any of its properties.

(vii) Non-Foreign Person. Seller is not a "foreign person" within the meaning of Sections 1445 and 7701 the Internal Revenue Code of 1986, as amended.

(viii) Owner of Loan. The Seller has good title to and is the sole owner and holder in due course of the Note and the Loan, free and clear of any liens, claims, encumbrances, or other charges whatsoever including but not limited to those of the Original Lender, except for those held by HSB. The Loan and the Loan Documents are not subject to any prior assignment, conveyance, transfer, or

participation or agreement to assign, convey, transfer, or participate, in whole or in part, except as granted to HSB.

(ix) Balance and Status of Loan. The outstanding unpaid principal balance of the Loan is as stated in the Seller's Loan Balance. Except as related to the Forbearance Agreement, the Note and the Deed of Trust have not been modified or amended, except pursuant to the documents and instruments, if any, set forth on Exhibit B to the Assignment, and all of the Loan Documents are described on Exhibit B to the Assignment. As of the Effective Date, the Borrower failed to make the payment due under the Forbearance Agreement on April 1, 2021 and a twelve (12) day grace period was extended (such grace period does not imply that any further grace periods will be given).

(x) No Modification. Except by written instrument or other written documentation listed on Exhibit B to the Assignment, neither the Seller nor, to the best of Seller's knowledge, any prior holder of the Loan has modified the Note or any of the other Loan Documents or satisfied, canceled, or subordinated the Note or any of the other Loan Documents in whole or in part or released all or any material portion of the Property from the lien of the Deed of Trust or executed any instrument of release, cancellation, or satisfaction. The Note and Deed of Trust and any documents modifying their terms included in the Review file are true and correct copies of the documents they purport to be and have not been superseded, amended, modified, canceled, or otherwise changed except as disclosed in the Review File.

(d) The representations of Seller set forth in this Agreement shall be deemed to be made both as of the Effective Date (except as stated otherwise above) and as of the Closing Date of this Agreement except to the extent that Seller otherwise notifies Purchaser in writing at or prior to Closing and notice of the revision to such representation is agreed to by Purchaser and shall survive the Closing of this Agreement.

10. DISCLAIMER OF REPRESENTATIONS OR WARRANTIES BY SELLER. EXCEPT FOR THOSE REPRESENTATIONS AND WARRANTIES SPECIFICALLY MADE BY SELLER IN THIS AGREEMENT OR IN ANY DOCUMENTS EXECUTED BY SELLER PURSUANT HERETO, THE LOAN AND THE LOAN DOCUMENTS ARE PURCHASED AND SOLD **"AS IS", "WHERE IS", AND WITH ALL FAULTS, AND WITHOUT RECOURSE AND WITHOUT ANY REPRESENTATION OR WARRANTY, WHETHER EXPRESS, IMPLIED OR OTHERWISE**, INCLUDING, WITHOUT ANY LIMITATION ANY REPRESENTATION THAT THE COLLATERAL DESCRIBED IN THE LOAN DOCUMENTS MAY BE REALIZED UPON OR ADEQUATELY SECURES THE LOAN. THIS SECTION 10 SHALL SURVIVE THE CLOSING.

11. Release of Seller; Indemnity; and Representations of Purchaser.

(a) [Reserved].

(b) The Purchaser shall indemnify and hold harmless the Seller, HNGH Turtle Creek, LLC, Vipin Nambiar, James Glasgow, as well as their respective predecessors, successors, assigns, subsidiaries, affiliates, partners, insurers, estates, agents, servants, employees, receivers, administrators, shareholders, managers, members, officers, directors, attorneys, and legal representatives from any and all claims, actions, causes of action, appeals, controversies, suits, rights, obligations, damages, losses, charges, debts, liabilities, judgments, and demands whatsoever, whether foreseen or unforeseen, known or unknown, pled or unpled, disclosed or undisclosed, matured or unmatured, in law, equity, or otherwise, that Borrower and Guarantor has or had or may have in the future that relate in any way to the Lawsuit or the Loan Documents, including those arising under the transactions contemplated by this Agreement, or any previously non-suited state court lawsuit and appeal, of any type or character, contract, or tort. Purchaser agrees to indemnify and hold harmless the Seller against any claim for fraud or fraudulent inducement related to the Lawsuit and the Loan Documents. In the event that Seller is joined as a party to any suit, claim or proceeding relating to the Loan, Purchaser shall assume the defense of such suit, claim or proceeding on behalf of Seller with counsel approved by Seller (such approval not be unreasonably withheld) and the fees and expenses of such counsel shall be at the expense of Purchaser.

(c) Purchaser hereby represents and warrants to Seller that:

(i) Existence and Good Standing. Purchaser is a duly formed and validly existing under the laws of the State of Wyoming and is in good standing under the laws of the State of Wyoming.

(ii) Authority. Purchaser has all requisite power and authority to execute, deliver, and perform all of its obligations under this Agreement and all instruments and other documents executed and delivered by Purchaser in connection herewith.

(iii) Due Authorization. The execution, delivery and performance of this Agreement and all instruments and other documents to be executed and delivered by Purchaser in connection herewith have been duly authorized by all necessary action on the part of Purchaser and do not and will not (A) require any consent or approval of its shareholders and/or partners, whichever is applicable, that has not been obtained, or (B) violate any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award presently in effect having applicability to Purchaser or any provision of Purchaser's organization documents.

(iv) Binding Obligation. This Agreement constitutes a legal, valid and binding obligation of Purchaser enforceable against Purchaser in accordance with its terms, except as limited by bankruptcy, insolvency, reorganization, moratorium and other similar laws of general applicability relating to or affecting the enforcement of creditors' rights and general equitable principles which may limit the availability of equitable remedies.

(v) [Reserved.]

(vi) Informed Decision. Purchaser has substantial experience and sophistication in making and/or investing in commercial real estate and loans like the Loan; it has made and will continue to make its own investigation of all matters relating to the Loan and Loan Documents, including, without limitation, the nature and value of the Property and the solvency and creditworthiness of the Borrower and any Guarantor. Purchaser is not relying and will not rely upon any representation, warranty, or advice by Seller in entering into this Offer Letter, the Loan Purchase Agreement and purchasing the Loan. As such, Purchaser is purchasing the Loan based upon its own investigations as to value, collectability, nature, quality and condition of the Note, the Loan Documents, and the collateral securing the Note.

(vii) [Reserved.]

(viii) Compliance with Terms. Purchaser agrees to abide by and be bound by all of the terms and conditions of the Note and the other Loan Documents.

(ix) Advice of Counsel. Purchaser has consulted extensively with, and has been represented by, legal counsel and accountants of its own choice in connection with the meaning, interpretation, negotiation, drafting and effect of this Agreement. Prior to Closing, Purchaser shall review with legal counsel each of the Loan Documents. Purchaser is fully satisfied with its legal counsel and accountants and the advice which it has received from each of them as to the contents and legal effect of this Agreement and the Loan Documents.

(d) The representations of Purchaser set forth in this Agreement shall be deemed to be made both as of the Effective Date (except as stated otherwise above) and as of the Closing Date of this Agreement except to the extent that Purchaser otherwise notifies Seller in writing at or prior to Closing and notice of the revision to such representation is agreed to by Seller. The representations of Purchaser set forth in this Agreement shall terminate upon Closing.

12. Brokers. Neither Seller nor Purchaser has had any dealings with respect to the Loan, the Loan Documents or the transactions contemplated hereby with any mortgage or real estate advisor, broker, investment advisory firm or salesman or any other person or corporation, whether known or unknown to any of the parties hereto (each a "**Broker**"), and each party agrees to pay any and all commissions, fees or other compensation which may become due and payable to any such Broker as a result of its actions. Each party hereby indemnifies the other party against, and agrees to hold the other party harmless from, any and all liability and claims to pay commissions, fees or other compensation which may at any time be asserted against such party founded in whole or in part upon (a) a claim that the aforesaid representation and warranty of the indemnifying party is untrue, (b) a claim that a Broker is owed any such commissions, fees or other compensation due to the acts of indemnifying party, or (c) a claim by any Broker that alleges it dealt with the indemnifying party in connection with the Loan and the

Loan Documents, in each case together with any and all losses, damages, costs and expenses (including, without limitation, reasonable attorneys' fees, costs of depositions and other discovery, court costs and disbursements) relating to such claims or arising therefrom or incurred by Seller or Purchaser, as the case may be, in connection with the enforcement of this indemnification provision. The provisions of this Section 12 shall survive the Closing and any termination of this Agreement.

13. Notices. Any notice or other communications required or permitted under or given in connection with this Agreement shall be in writing and shall be addressed as follows:

If to Seller:

HNGH Turtle Creek, LLC
c/o HN Green Hollow Capital Partners LLC
600 5th Ave., 2nd fl.
NY, NY 10020
Attention: Jim Glasgow

With a copy to:
Wick Phillips LLP
3131 McKinney Ave., Suite 500
Dallas, TX 75204
Attention: Isaac J. Brown

If to Purchaser:

Carlos X. Montoya
Managing Member
Tall Ship Management LLC
1244 N. Stone St., Suite 3
Chicago, Illinois 60610
(312) 498-2364

Any such notice or other communication shall be deemed given upon the occurrence of any of the following: (a) the first Business Day following the day sent by United States express mail, postage prepaid, return receipt requested; (b) on the first Business Day following the day sent by an overnight carrier service that operates on a nationwide basis; (c) on the third Business Day following the day sent by United States certified mail, postage prepaid, return receipt requested; or (d) on the date delivered by hand to the address above for which a signed receipt is given, whether or not actually received by the person to whom directed. From time to time either party may designate another address within the continental United States for purposes of this Agreement by giving the other party not less than ten (10) days advance written notice of such change of address in accordance with the provisions of this Section. Facsimile numbers are given for convenience only and delivery by facsimile or similar

transmission shall not constitute notice hereunder.

14. Waiver. Any term, condition or provision of this Agreement may be waived in writing at any time by the party which is entitled to the benefits thereof.

15. Governing Law. The terms and provisions hereof shall be governed by, and construed in accordance with, the substantive laws of the State of Illinois, without regard to conflict of law principles.

16. Binding Agreement. This Agreement shall be binding upon the heirs, executors, administrators, personal representatives, successors and assigns of the parties hereto.

17. Construction. Whenever the context hereof so requires, reference to the singular shall include the plural and the plural shall include the singular; words denoting gender shall be construed to mean the masculine, feminine or neuter, as appropriate; and specific enumeration shall not exclude the general but shall be construed as cumulative of the general recitation. The headings contained in this Agreement are inserted for convenience only and shall not affect the meaning or interpretation of this Agreement or any provision hereof.

18. Severability. If any clause or provision of this Agreement is held to be illegal, invalid or unenforceable under any law applicable to the terms hereof, then the remainder of this Agreement shall not be affected thereby, and in lieu of each such clause or provision of this Agreement that is illegal, invalid or unenforceable, such clause or provision shall be judicially construed and interpreted to be as similar in substance and content to such illegal, invalid or unenforceable clause or provision, as the context thereof would reasonably suggest, so as to thereafter be legal, valid and enforceable.

19. Counterparts. To facilitate execution, this Agreement may be executed in as many counterparts as may be convenient or required. It shall not be necessary that the signature and acknowledgment of, or on behalf of, each party, or that the signature and acknowledgment of all persons required to bind any party, appear on each counterpart. All counterparts shall collectively constitute a single instrument. It shall not be necessary in making proof of this Agreement to produce or account for more than a single counterpart containing the respective signatures and acknowledgments of each of the parties hereto.

20. NO ORAL AGREEMENTS. THIS AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES WITH RESPECT TO THE TRANSACTION CONTEMPLATED HEREIN, SUPERSEDES ANY AND ALL PRIOR DISCUSSIONS AND AGREEMENTS (WRITTEN OR ORAL) INCLUDING THE OFFER LETTER BETWEEN SELLER AND PURCHASER WITH RESPECT TO THE TRANSACTION CONTEMPLATED HEREIN AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. NOTWITHSTANDING THE FOREGOING, ANY SEPARATE CONFIDENTIALITY OR NONDISCLOSURE AGREEMENT EXECPUTED BY THE PARTIES SHALL CONTINUE TO BE BINDING AND ENFORCED INDEPENDENTLY OF THIS AGREEMENT AND WHERE IN CONFLICT THE TERMS WHICH PROVIDE THE

GREATEST PROTECTION OF CONFDIENTIALITY AND RELATED REMEDIES SHALL CONTROL.

21. Time of the Essence. Time is of the essence in the execution and performance of this Agreement and of each provision hereof.

22. Attorneys' Fees. If either party shall default in the performance of any of the terms and conditions of this Agreement, the non-defaulting party shall be entitled to recover all costs, charges, and expenses of enforcing this Agreement in connection with such default including reasonable attorneys' fees, paralegal fees, and costs, including, but not limited to, attorneys' and paralegal fees incurred in any trial or appellate proceedings.

23. Rule of Construction. The parties acknowledge that each party and its counsel has reviewed this Agreement, and the parties hereby agree that normal rules of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement or any amendments or exhibits hereto.

24. Saturday, Sunday or Legal Holiday. If any date set forth in this Agreement for the performance of any obligation by Purchaser or Seller or for the delivery of any document or notice should be on other than a Business Day, the compliance with such obligation or delivery shall be deemed acceptable on the next following Business Day. For purposes of this Agreement, the term "**Business Day**" shall mean any day on which banks in Dallas, Texas are required to be open for business.

25. Further Assurances. Seller will, whenever and as often as shall be reasonably requested to do so by Purchaser, and Purchaser will, whenever and as often as shall be reasonably requested so to do by Seller, execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, any and all conveyances, assignments and all other instruments and documents as may be reasonably necessary to complete the transaction herein contemplated and to carry out the intent and purposes of this Agreement.

26. Amendments. This Agreement shall not be amended except by a writing signed on behalf of the party to be charged with such amendment.

27. Exhibits. Each exhibit referred to in this Agreement is attached hereto and each such exhibit is hereby incorporated by reference and made a part hereof as if fully set forth herein.

28. Assignment. Purchaser may, with notice to Seller, assign its rights and obligations hereunder to any affiliated person or party of Purchaser without Seller's consent, provided that such assignee shall not be Borrower, Guarantor, or any party affiliated with or otherwise related to either. Purchaser may not assign its right and obligations hereunder to any non-affiliated person or party of Purchaser without Seller's prior consent. As used herein, an "affiliate" shall mean any entity controlled by, under common control with, or that controls Purchaser. Such assignment shall require the assignee thereof, to assume the obligations or the Purchaser hereunder, as if such assignee was an original signatory hereto. Such assignment shall relieve the Purchaser named herein from the obligations and liabilities of the "Purchaser" hereunder.

29. Confidentiality. The terms of this Agreement and any and all related discussions, disclosures, transfers contemplated in this Agreement, including, without limitation, the Purchase Price and all other financial terms, shall remain confidential and shall not be disclosed by either party hereto without the written consent of the other except as otherwise required by law or regulation and except as may be disclosed by the need to file the Assignment of record. This confidentiality section shall survive closing and termination of this Agreement.

30. Recitals. The Recitals are incorporated herein and made part of the terms of this binding agreement.

31. **SUPPLEMENTAL PROVISIONS RESPECTING ESCROW AGENT AND ESCROWED FUNDS:**

(a) Receipt of Escrowed Funds. Escrow Agent agrees to hold and disburse the same in strict accordance with the provisions of hereof.

(b) Escrow of Funds. All sums received by Escrow Agent from **Seller and Purchaser**, together with accrued interest thereon, any additions thereto made pursuant to this Agreement of any such sums now or hereafter made are herein referred to collectively as the "Escrowed Funds." Escrow Agent shall hold the Escrowed Funds to be disbursed only in accordance with the terms of this Agreement. The Escrowed Funds shall be held and identified separate and apart from other funds or accounts of Escrow Agent, **Purchaser or Seller.**

(c) Agent's Fees and Expenses. In consideration of the services to be performed by Escrow Agent hereunder, Escrow Agent shall be paid a fee of $_____________, which fee shall be payable **half by Seller and half by Purchaser** upon Closing. In no event shall such Escrow Agent's fee be paid out of the Escrowed Funds.

(d) ADDITIONAL ESCROW AGENT PROVISIONS:

(i) ESCROW AGENT (at times "**Agent**") shall be liable only to hold the Escrowed Funds received herewith and to deliver same to persons or entities named herein in accordance with the provisions of this Agreement and any amendments hereto, it being expressly understood that by acceptance hereof Agent is acting in the capacity of a depository only and shall not be liable or responsible to anyone for any damages, losses, or expenses, unless same shall be caused by its gross negligence or willful act. Agent shall not be bound, except as provided herein, in any way by any other contract or agreement between Seller and Purchaser whether it has knowledge of any such contract or agreement or of its terms or conditions. ESCROW AGENT is not a party to or bound by any agreement which may be deposited under, evidenced by, or which arises out of the foregoing instructions.

(ii) ESCROW AGENT acts hereunder as a depository only and is not responsible or liable in any manner whatever for the sufficiency, correctness, genuineness or validity of any instrument deposited with it hereunder, or with respect to the form or execution of same; or the identity, authority, or rights of any person executing or depositing the same. Funds in escrow shall not be assignable in whole or in part by any party and

shall not be pledged, mortgaged, or hypothecated.

(iii) The parties hereto further agree that ESCROW AGENT assumes no liability for and is expressly released from any claim or claims whatsoever in connection with the receiving, retaining and delivering of the above papers and funds except to account for payment and/or delivery made thereon. Deposit by ESCROW AGENT of the instruments and funds (less its charges and expenses incurred herein) comprising this escrow in Court, shall relieve ESCROW AGENT of all further responsibility and liability, and ESCROW AGENT is hereby expressly authorized to disregard in its sole discretion any and all notices or warnings given by any of the parties hereto, or by any other person or corporation, but the said ESCROW AGENT is hereby expressly authorized to regard and to comply with and obey any and all Orders, Judgments or Decrees entered or issued by any Court with or without jurisdiction, and in case ESCROW AGENT obeys or complies with any such Order, Judgment or Decree of any Court it shall not be liable to any of the parties hereto or to any other person, firm or corporation by reason of such compliance, notwithstanding any such Order, Judgment or Decree be entered without jurisdiction or be subsequently reversed, modified, annulled, set aside or vacated. In case of any suit or proceeding regarding this escrow to which ESCROW AGENT is or may be at any time a party, it shall have a lien on the contents hereof for any and all cost, attorneys' fees, whether such attorneys shall be regularly retained or specially employed and other expenses which it may have incurred or become liable for on account thereof, and it shall be entitled to reimburse itself therefore out of said deposit, and the undersigned jointly and severally agree to indemnify and hold harmless ESCROW AGENT from all loss, costs or damages incurred, including but not limited to attorneys' fees, by reason of this Agreement or the subject matter hereof or any cause of action which may be filed in connection therewith and to pay ESCROW AGENT, upon demand all such costs, fees and expenses so incurred.

(iv) ESCROW AGENT shall not be liable for any error of judgment or for any act done or step taken or omitted by it in good faith, or for any mistake of fact or law, or for anything which it may do or refrain from doing in connection herewith, except its own gross negligence or willful misconduct, and ESCROW AGENT shall have no duties to anyone except those signing this instrument.

(v) ESCROW AGENT may consult with legal counsel in the event of any dispute or questions as to the construction of the foregoing instructions, or ESCROW AGENT'S duties hereunder, and ESCROW AGENT shall incur no liability and shall be fully protected in acting in accordance with the opinion and instructions or such counsel.

(vi) ESCROW AGENT assumes no liability and the parties hereto consent and agree that ESCROW AGENT shall have no liability for any defalcation, insolvency, receivership or conservatorship of the Depository Institution.

(vii) Nor shall ESCROW AGENT have any liability due to any of the parties other than ESCROW AGENT filing for Bankruptcy or the consequences or effect of such a Bankruptcy on the funds and/or documents deposited hereunder.

(e) Modification and Termination. These supplemental provisions regarding Escrow Agent and funds shall not be modified, revoked, released, or terminated, except upon the mutual written consent of Seller, Purchaser and Agent. Nothing in this subparagraph shall be

construed as requiring the agreement of any other party in order for Purchaser to terminate this Agreement to the extent permitted in this Loan Purchase Agreement.

(f) Resignation of Agent. Should, at any time, any attempt be made to modify this Agreement in a manner that would increase the duties and responsibilities of Agent, Agent may resign by notifying the parties hereto, in writing, by certified mail to their respective addresses set forth below which resignation shall be effective upon the earlier of (i) the acceptance by a successor as escrow agent as shall be appointed by such parties; or (ii) fifteen (15) days following the date upon which notice was mailed.

(g) Disagreement. Should any controversy arise between the parties with respect to this Agreement or with respect to the right to receive any portion of the Escrowed Funds (other than with respect to the Purchaser's timely termination of this Agreement pursuant to an express right to do so, as provided in this Agreement, in which case the Agent shall refund the Escrowed Funds to Purchaser), Agent shall have the right to institute a bill of interpleader in any court of competent jurisdiction to determine the rights of the parties, or Agent may refuse to take any action to deliver or dispose of the Escrowed Funds until it has been served with a judgment properly instructing Agent as to the disposition of such Escrowed Funds. Agent may act upon and dispose of the Escrowed Funds, as provided in any such judgment, even though it is a party to the suit. Should a bill of interpleader be instituted or Agent become involved in litigation in any manner whatsoever on account of this Agreement, the parties hereto agree that the non-prevailing party (either Purchaser or Seller, as determined by the court) shall pay Agent's reasonable attorneys' fees incurred and any other reasonable disbursements, expenses, losses, costs, and damages in connection with or arising from such litigation. Agent shall have no obligation to take any legal action in connection with this Agreement or towards its enforcement, or to appear in, prosecute, or defend any action or legal proceeding which would or might involve it in any cost, expense, loss, or liability, unless security and indemnity shall be furnished.

**SIGNATURE(S) ON FOLLOWING PAGE(S)**

This Loan Purchase Agreement EXECUTED as of (although not necessarily on) the date first above written.

**SELLER**

HNGH TURTLE CREEK, LLC,
a Delaware limited liability company

By: HN Green Hollow Capital Partners LLC,
its authorized signatory

By: ______________________
Name: Vipin Nambiar
Title: Co-Manager

**PURCHASER**

TALL SHIP DTC LLC

By: ______________________

Name: Carlos X. Montoya

Title: Managing Member

Tall Ship Management LLC
1244 N. Stone St., Suite 3
Chicago, Illinois | 60610
(312) 498-2364

The Escrow Agent acknowledges its receipt of a counterpart of this Agreement executed by Seller and Purchaser on ____________________, 2021. Escrow Agent hereby agrees to be bound by the terms of this Agreement with respect to the section "SUPPLEMENTAL PROVISIONS RESPECTING ESCROW AGENT AND ESCROWED FUNDS" and the retention and disposition of the Earnest Money and the other funds and instruments deposited with Escrow Agent pursuant to this Agreement.

**ESCROW AGENT:**

______________________________
a ____________________________

By: __________________________
Printed name: ____________________
Title: _________________________

Attachment(s):

| | |
|---|---|
| Exhibit A | Legal Description of Property |
| Exhibit B | Assignment of Note and Liens |

**EXHIBIT A**

**Legal Description of the Property**

BEING a tract of land situated in the James A. Sylvester Survey Abstract No. 1383, and the John Grisby Survey, Abstract No. 495, City of Dallas Block No. A/1031, Texas and being all of Lot 4 Block A/1031, of TURTLE CREEK OFFICE ADDITION, an Addition to the City of Dallas, Texas, according to the plat thereof recorded in Volume 2003162, Page 48, Deed Records, Dallas County, Texas

**EXHIBIT B**
**Assignment of Note and Liens**

**ASSIGNMENT OF NOTE AND LIENS**

STATE OF TEXAS §
§ KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF__________ §

THAT **HNGH TURTLE CREEK, LLC**, a Delaware limited liability company ("**Assignor**"), the legal and equitable owner and holder of that certain Secured Promissory Note dated as of September 20, 2019, payable by 2999TC Acquisitions, LLC f/k/a MO 2999TC, LLC, as Maker and Borrower, in the stated principal amount of Thirty-Two Million Five Hundred Thousand and 00/100 Dollars to the order of HNGH Turtle Creek, LLC, a Delaware limited liability company, as Lender, executed by Tim Barton as President of the Maker and payable to the order of Assignor (as may have been amended, the "**Note**"), which Note is secured by a security interest in that certain real property owned by Borrower located at 2999 Turtle Creek, Dallas, Dallas County, Texas ("**Property**") as described in that certain Deed of Trust, Security Agreement, and Fixture Filing dated September 20, 2019 recorded as document number 201900253450 in the real property records of Dallas County, Texas (as may have been amended, the "**Deed of Trust**"), which Deed of Trust covers certain real property located in Dallas, Dallas County, Texas as more particularly described in Exhibit A attached hereto, for a good and valuable consideration paid to Assignor by **TALL SHIP DTC LLC, a Wyoming limited liability company** ("**Assignee**"), the receipt and sufficiency of which are hereby acknowledged, has ENDORSED, SOLD, TRANSFERRED, ASSIGNED, GRANTED, CONVEYED and DELIVERED, and by these presents does hereby ENDORSE, SELL, TRANSFER, ASSIGN, GRANT, CONVEY and DELIVER unto Assignee, all of the following:

1. the Note and all indebtedness now or hereafter evidenced thereby (the "**Debt**");

2. the Deed of Trust and all of the rights, benefits, privileges, liens, security interests, and assignments owned, held, accruing, and to accrue to, and for the benefit of the Assignor thereunder, and any vendor's lien securing the Debt; and

3. all other documents evidencing and/or securing any part of the Debt (the Note, Deed of Trust and such other documents are herein collectively called the "**Loan Documents**"), including but not limited to those loan documents listed on Exhibit B hereto; and

4. all other liens, security interests, lien priority agreements, guaranties, collateral assignments, covenants, agreements, rights, benefits, and privileges in anywise belonging or to accrue to the benefit of Assignor, in respect of the Note and

the other Loan Documents, and any of the Debt now or hereafter evidenced thereby or any security for them (all of the foregoing, together with all liens, security interests, assignments and other rights and interests evidenced by the Deed of Trust, are herein collectively called the "**Liens**").

TO HAVE AND TO HOLD, the Note, Loan Documents, Debt and Liens unto Assignee, its successors and assigns, forever.

This Assignment is executed by Assignor without recourse and without warranty or representation, express or implied, except Assignor does expressly warrant and represent to Assignee that:

(i) Assignor is the owner and holder of the Note and Deed of Trust and the other Loan Documents and all of the Liens evidenced or created by the Loan Documents and any superior title existing under and by virtue of the Loan Documents, and except for the transfer to Assignee evidenced hereby, Assignor has not transferred title to any of the Loan Documents or any Liens and any superior title evidenced by any of the Loan Documents or otherwise securing the payment of the Note;

(ii) Assignor has full right, power and authority to transfer all of its right, title and interest in and to the Loan Documents and all of the Liens and any superior title existing under and by virtue of the Loan Documents to Assignee, free of any encumbrances and claims of any person claiming by, through or under Assignor;

(iii) to the extent the Loan Documents have been expressly amended or modified, Assignor has provided copies of such amendments and modifications to Assignee;

(iv) except for the transfer to Assignee evidenced hereby, Assignor has not executed any transfer, assignment, pledge, release, discharge or subordination relating to any of the Loan Documents or any of the Liens and any superior title existing under the Loan Documents or otherwise securing the payment of the Note;

(v) The outstanding principal balance of the Note as of the date hereof is $________________, with interest paid to and including__________; and

(vi) Assignor has not accelerated the maturity of the Debt represented by the Note, and to the knowledge of Assignor, no default exists under the Loan Documents that would permit such acceleration under the terms and provisions of the Note or any of the Loan Documents, other than the following event(s) of default: listed in the Forbearance Agreement as "Specified Defaults": (i) failure to pay the real estate taxes in connection with the Property due on or about February 1, 2020; (ii) failure to replenish the interest reserve in the amount of $1,376,916.67 ; (iii) failure to pay a portion of the monthly interest payment due on June 1, 2020 in the amount of $11,194.45; (iv) failure to pay monthly interest payments due on July 1, August 1, September 1, and October 1;

and (v) failure to pay the principal amount of $32,500,000.00 as of October 1, 2020.

(vii) Assignor hereby confirms, restates and reiterates specifically for the Debt and Liens transferred hereby all of the representations, warranties and covenants made by Assignor contained in that certain Loan Purchase Agreement, dated September ___, 2021, by and between Assignor and Assignee, as if such representations, covenants and warranties had been made in this Assignment of Note and Liens as of the date hereof.

This Assignment of Note and Liens shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

**SIGNATURE(S) ON FOLLOWING PAGE(S)**

IN WITNESS WHEREOF, Assignor has caused these presents to be on the ____ day of ___________, 2021.

**SELLER/ ASSIGNOR:**

**HNGH TURTLE CREEK, LLC**
a Delaware limited liability company

By: ______________________________
Printed name: _____________________
Title: _____________________________

**ACKNOWLEDGEMENT OF ASSIGNOR**

THE STATE OF ___________ §

COUNTY OF ____________ §

This instrument was acknowledged before me on the ____ day of ______________________, 201__, by ________________________________, in his/her capacity as the ______________________ of **HNGH TURTLE CREEK, LLC, a Delaware limited liability company**, for and on behalf of said Company.

__________________________________________
Notary Public – State of _____

My commission expires:______________________

**Exhibit A to**

**Assignment of Note and Liens**

(Legal description of the Property)

BEING a tract of land situated in the James A. Sylvester Survey Abstract No. 1383, and the John Grisby Survey, Abstract No. 495, City of Dallas Block No. A/1031, Texas and being all of Lot 4 Block A/1031, of TURTLE CREEK OFFICE ADDITION, an Addition to the City of Dallas, Texas, according to the plat thereof recorded in Volume 2003162, Page 48, Deed Records, Dallas County, Texas

**Exhibit B to**
**Assignment of Note and Liens**

**List of Loan Documents**

Assignment of Leases and Rents dated September 20, 2019 recorded as document number 201900253451 in the real property records of Dallas County, Texas

Deed of Trust, Security Agreement, and Fixture Filing dated September 20, 2019 recorded as document number 201900253450 in the real property records of Dallas County, Texas

Secured Promissory Note executed by Borrower dated September 20, 2019.

Affidavit of Property Management executed September 16, 2019 by Borrower.

Affidavit of Title and Other Borrower Representations executed September 16, 2019 by Borrower.

Certification of MO 2999TC, LLC executed September 16, 2019 by Borrower.

Certification of Rent Roll executed September 16, 2019 by Borrower.

Environmental Indemnity Agreement executed September 16, 2019 by Borrower and Timothy Lynch Barton.

Guaranty of Completion executed September 16, 2019 by Timothy Lynch Barton.

Guaranty executed September 16, 2019 by Timothy Lynch Barton.

Designation of Independent Manager Agreement executed September 16, 2019 by Borrower and CT Corporation Staffing, Inc.

Designation of Independent Manager Agreement executed September 16, 2019 by MO 2999TC MZ, LLC and CT Corporation Staffing, Inc.

Prepaid Interest Agreement executed September 16, 2019 by Borrower.

Statement of Undertaking executed September 16, 2019 by Borrower and Timothy Lynch Barton.

Undertaking executed September 16, 2019 by Borrower