Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEY FOR DEBTOR

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **2999TC ACQUISITIONS, LLC,** | § | **CASE NO. 21-31954-HDH** |
| | § | **CHAPTER 11** |
| **Debtor.** | § | |

**2999TC ACQUISITIONS, LLC'S EMERGENCY MOTION TO EXTEND TIME FOR PAYMENT OF AMOUNTS DUE AND OWING TO HNGH TURTLE CREEK, LLC**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

NOW COMES 2999TC Acquisitions, LLC, by and through its undersigned counsel, and files this its Emergency *Motion to Extend Time for Payment of Amounts Due and Owing to HNGH Turtle Creek, LLC* and hereby states as follows:

1. On December 10, 2021, this Court entered the *Agreed Order Regarding Motion to Lift Stay (Doc. 10), Motion to Dismiss (Doc. 9), Motion for Sanctions (Doc. 15) and Motion to Enforce Stay (Doc. 14)* [Docket No. 64]. That Order established critical deadlines in this case as follows.

a. The automatic stay shall remain in full force and effect as to HNGH through 5:00 p.m. central time, March 15, 2022 (the "Payoff Deadline").

b. If the Debtor pays HNGH the Payoff Amount within the Payoff Period (the "Payoff Event"), then simultaneously with the Payoff Event, the Deed-in-Lieu filing, which was submitted for filing pre-petition but recorded on November 1, 2021, shall be deemed rescinded and avoided, and the Debtor shall retain all title to the Property.

c. Simultaneously with the occurrence of the Payoff Event, HNGH shall have and possess a $2,000,000 Allowed Claim against the Debtor and the Debtor's estate, which Debtor shall be obligated to satisfy in full within 12 months of the Payoff Event from the first proceeds of any sale of the Debtor's assets, from a construction loan, or any equity raised in excess of the New Equity Threshold as set forth on Exhibit A to this Order, which exhibit is filed under seal, and not from debt raised by the Debtor to exclusively satisfy or make the required Consideration Payments herein, the payment of taxes, and other costs and expenses of administration of this case (the "Allowed Claim").

d. Debtor shall pay or cause to be paid to HNGH $100,000 per month, commencing on the Petition Date through March, 2022, such that the Debtor shall owe to HNGH a total of $500,000, the payment of which shall be applied to reduce the Payoff Amount (the "Consideration Payments"). The Debtor shall owe HNGH the Consideration Payments as follows: $100,000 payable not later than December 14, 2021; plus $100,000 on December 31, 2021, and $100,000 on January 14, 2022, $100,000 on February 1, 2022, and $100,000 on March 1, 2022.

e. Debtor's failure to timely make any Consideration Payment, failure to pay ad valorem taxes and any related penalties and interest by no later than February 28, 2022, or failure to timely satisfy the Payoff Amount (each a "Default") shall result in the stay provided by 11 U.S.C. Section 362(a) automatically terminating as to HNGH, and HNGH shall have no obligation to provide Debtor with notice of any Default.

f. The Adversary Proceeding and all deadlines related thereto shall be abated through the Payoff Deadline, and that this Order and the agreement of the Parties shall otherwise resolve the Adversary Proceeding in the event of a Default or a Payoff Event.

2. On or about March 14, 2022, Debtor entered into an agreement with Tall Ship Texas Partners, LLC ("Tall Sheet") for their acquisition and development of a property located at 2999 Turtle Creek Boulevard, Dallas, Texas. That Agreement requires payment of the amount set forth in the aforementioned Agreed Order. A copy of the term sheet relating to said agreement is attached hereto as **Exhibit "1."**

3. Tall Ships counsel just sent the following email today regarding needed funds:

> All – I have just spoke to Mr. K and to clarify, my client has confirmed will provide proof of funds in the amount of $3,500,000 tomorrow, but will not fund that money to anyone until we have a binding agreement signed by all parties (Debtor and HGNH and Tall Ships) and – at least with regards to the Debtor, approved by the Court – pursuant to which my client has an irrevocable right to purchase the property.

Please send drafts of any such documents.

Thanks,
Michelle Moore Smith mmsmith@jw.com
(512) 236-2017 (o)

4. The deadline for payment of amounts due and owing to HNGH is March 15, 2022. However, Debtor requires an additional ten (10) days to enter into a binding agreement signed by all parties that would allow for the payment of $3,500,000.00. This would enable the Debtor to obtain an extension of the payoff deadline until May 30, 2022 to payoff HNGH and complete the transaction with Tall Ships under Rule 9019.

WHEREFORE, PREMISES CONSIDERED, Debtor respectfully requests, for the reasons stated herein, that the Court enter an Order granting this *Motion to Extend Time for Payment of Amounts Due and Owing to HNGH Turtle Creek, LLC,* and for such other and further relief to which the Debtor may show itself justly entitled.

Dated: March 14, 2022.

Respectfully submitted,

*/s/ Joyce W. Lindauer*

Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Email: joyce@joycelindauer.com
ATTORNEY FOR DEBTOR

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 14, 2022, a true and correct copy of the foregoing document was served pursuant to the Court's ECF system upon the parties receiving electronic notice in this case.

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer

March 14, 2022, Confidential

**TALL SHIP DTC LLC**

**MANDARIN ORIENTAL HOTEL AND PRIVATE RESIDENCES DEVELOPMENT**

**DALLAS, TEXAS**

**ACQUISITION AND DEVELOPMENT OF**
**2999 TURTLE CREEK**

**TERM SHEET**

The following "Term Sheet" outlines the non-binding terms and conditions of the acquisition and development by Tall Ship DTC LLC ("Investor") of a property located at 2999 Turtle Creek Boulevard in Dallas, Texas from 2999 TC Acquisitions LLC ("Legacy Owner"). The proposed terms and conditions described below do not define all of the terms and conditions of this proposed Investment and the complete set of detailed terms and conditions will be outlined in the forthcoming binding and definitive legal documents describing the Investment.

| | |
|---|---|
| Project: | Mandarin Oriental Hotel and Private Residences Dallas |
| Project Address: | 2999 Turtle Creek Blvd., Dallas, Texas 75219 |
| Tax Parcel No. | Tax Parcel No.: 00-10310-00A-004-0000 |
| Project Site | Lender currently holds record title to the 2.47-acre property, which consists of approximately ±107,424 square feet of land and improvements inclusive of a two-story Class A office building and parking garage as required by applicable code. |
| Entitlements | The Project site is fully approved and entitled. It has 320 ft height restriction and a permitted density of a 5.25:1 floor area ratio that equates to 563,976 of developable square feet. All entitlements and other due diligence materials related to the Project Site are currently held by Legacy Sponsor. |
| Development Program | A 27-story single tower with a total of 563,976 square feet containing a five-star Mandarin Oriental Hotel and Privates Residences that includes 176 ultra-luxury hotel rooms, 85 ultra-luxury private residences, full-service food and beverage operations, luxury spa, fitness area, |





**EXHIBIT "1"**

| | |
|---|---|
| | recreational facilities with separate guest and resident pools and amenity decks and a parking garage. |
| Legacy Owner | 2999 TC Acquisitions LLC |
| Legacy Sponsor | 2999 TC Acquisitions MZ LLC |
| New Owner | Tall Ship Texas Partners LLC |
| Total Development Cost | |
| Project Debt-to-Equity Ratio | The capital structure of the New Owner will have a debt-to-equity ratio of 65% debt and 35% equity. |
| Capital Structure | Senior Loan<br>Preferred Equity B<br>Preferred Equity A<br>Total Capital |
| Hotel Brand and Management | The hotel flag and brand will be the Mandarin Oriental Hotel.<br>The Mandarin Oriental Hotel Group will manage the Hotel under a third-party hotel management agreement, which is now executed and in-place. |
| Legacy Developer | 2999 Southbury LLC |
| Investor | The Investor will be Tall Ship DTC LLC a special-purpose, bankruptcy-remote, limited liability company formed exclusively for the purpose of providing the Investment to the New Owner. |
| Land Loan and Lender | HNGH Turtle Creek, LLC is the lender ("Lender") on the $32,500,000 Land Loan. The Land Loan is in forbearance and the Lender is the major secured creditor in a Chapter 11 bankruptcy. The total amount due on the Loan, including penalty interest, legal costs and an exit fee is estimated to be $43,500,000. |
| Preferred Equity A | Preferred Equity A investment |
| Use of Proceeds | The use of proceeds of the' investment is as follows.<br>• Purchase existing Land Loan<br>• Repay Legacy Sponsor invested equity<br>• Fund remaining predevelopment costs |
| Preferred Equity B | Preferred Equity B of lieu of a mezzanine loan. |
| Lender and Land Loan Negotiations and Legal Documentation | On the effective date of this term sheet, the Investor will begin working with Lender of the Land Loan to negotiate the terms of a purchase of the Property. Based on the outcome of this negotiation with the Lender, the Investor will develop a binding and definitive legal agreement to effect |

| | |
|---|---|
| | the transaction among the Lender, Investor, Legacy Sponsor, Legacy Owner, and Tim Barton. Further details below. |
| Bankruptcy Court Settlement | As a condition precedent to this transaction, Investor, Legacy Sponsor, Tim Barton, and Lender shall all enter into a single Settlement Agreement, which such Settlement Agreement under Federal Rule of Bankruptcy Court Procedure 9019 shall be subject to Bankruptcy Court approval pursuant to a final, non-appealable judgment and shall provide that:<br>• Investor shall pay Lender $________ [*amount set forth in the Agreed Order of the Bankruptcy Court dated December 10, 2021*]<br>• The Deed-in-Lieu previously filed by Lender shall be deemed to be a valid, unavoidable pre-petition transfer, the validity, priority, extent, and effectiveness shall be stipulated and agreed to by the Debtor and Tim Barton, and Debtor shall withdraw any and all objections thereto<br>• All debt obligations with the Land Loan shall be extinguished, released and/or otherwise terminated<br>• Lender shall transfer the Property to Investor<br>• Debtor transfers all entitlement and development rights and any previously developed plans/studies/Due Diligence Materials to Investor<br>• Debtor shall assign any contracts, agreement, etc. related to the Project to the extent Investor elects to assume (including the Mandarin Agreements). Debtor retains liability for obligations under those agreement prior to Closing Date; Investor assumes liability going forward<br>• Investor shall pay to the Debtor's estate, for payment of a distribution on allowed creditors' claims pursuant to the priorities of Title 11 of the United States Code<br>• All parties shall mutually waive and release any and all claims, causes of action, etc. against each other arising out of the Property, prior transactions, or this transaction |
| Proof of Funds Letter | Following mutual execution of this Term Sheet, Investor shall provide customary proof of funds letter. |
| Post-Acquisition Developer | After the acquisition of the Property, Tall Ship Development TX LLC ("TSDT") will replace the Legacy Developer and become the Developer of the project. TSDT will provide or subcontract all the required services to develop the Project. Any and all project decisions will require the approval of the Investor and will not be unreasonably withheld if it conforms and is consistent with the approved Project Plan and Development Budget. |
| Development Consultant | The Legacy Developer will not become an owner in TSDT; however, the Legacy Developer will be retained to assist on the Project and will be hired as a development consultant by TSDT ("Development Consultant")<br>TSDT and the Development Consultant will execute a long-term |

| | |
|---|---|
| | development services consulting agreement that can only be terminated for cause as a result of a default by Development Consultant. The Development Consultant will be compensated through a sharing of the Project Development Fees and Developer Promote with TSDT. |
| Loan Repayments | The Investor will reimburse the Legacy Sponsor any loan payments it paid to Lender during December 2021 – March 2022, up to a maximum of $500,000, and any additional amounts paid to Lender through Closing. Reimbursements made at Closing. |
| | |
| Investment Funding | At closing, Investor will provide the $43,500,000 of funds to purchase the Loan from the Lender and |
| Investor Project Ownership | Based on the Investor's preferred equity investment of |
| Priority of Cash Flow Distributions to Equity: | The priority of any equity cash flow distributions to the Investor will be as follows.<br><br>i) First, to repay any and all accumulated and accrued Preferred Equity Returns associated with the Investor Equity.<br><br>ii) Second, to repay the outstanding amount of any Preferred Equity invested by the Investor.<br><br>iii) |
| Developer Incentive Profit Sharing Program | As an incentive to the Developer to maximize the equity returns to the Investor, the Developer will receive a portion of the profits of the Investor based on the Investor receiving the following total annual equity returns on its invested equity:<br><br>i)<br><br>ii) |

| | |
|---|---|
| | |
| Origination Fee: | |
| Sponsor Equity | |
| Development Agreement | The Development Agreement shall be reviewed and approved by the Investor. |
| Developer Fee | The Developer shall receive in tota' Development Fee based on total hard and soft costs excluding land and financing costs.<br><br>The Developer shall split the Developmen Tall Ship Development Texa gacy Developer, who will serve as a Development Consultant on the Project after the acquisition of the Property. |
| Condominium Unit | As compensation for past development work, the Legacy Sponsor shall receive a condominium unit in shell condition in the Hotel. The condominium unit will only be used for commercial purposes. |
| General Contractor | The General Contractor may be Moss Construction. |
| GMP Contract | New Owner shall enter into a General Contractor Agreement with the General Contractor approved by the Investor. The General Contractor Agreement will be a maximum price contract for the total direct hard construction costs as defined in the approved Development and Construction Budget. |
| Completion Guaranty | The General Contractor shall provide a completion guaranty for the lien-free completion of the Project and its improvements in accordance with the approved plans, specifications, and budgeted and approved hard costs. Once the GMP is approved with accompanying GMP Bonding provided by an A rated or better investment-grade insurance company. |
| Contractor Surety | The General Contractor and all Subcontractors shall be bonded and obtain surety bonds from an A-rated insurance company. The Investor shall approve the insurance company providing the surety bonds and the form and substance of the surety bonds. |
| Development Budget | The Development Budget including soft costs, hard costs, financing costs and appropriate contingencies for soft costs, hard costs, financing costs and a general total budget contingency equal to a percentage of total development budget shall be approved by the Investor and Sponsor. |

| | |
|---|---|
| Development and Construction Documents | The Investor shall review and approve all other development-related agreements, including the Development Agreement, the GMP Contract and other general contractor agreements, architect agreements, construction management agreements, major subcontractor agreements and any other similar agreements prepared and to be utilized in connection with the development and construction of the Project. |
| | |
| Due Diligence Information | The Investment shall be predicated upon the Investor's satisfaction and approval of the Due Diligence Information. |
| Legal Documentation | The Parties will use their best efforts to draft, review, complete and execute any and all binding and definitive legal agreements required to affect an Investment in the Project and establish and record the Investor's corresponding Equity Ownership in the Investment. The "Legal Documentation Period" is expected to require a minimum of thirty (30) days. |
| Investment Documents | The Investment shall be consummated by all or a subset of the following documents and such other documents that may be required to give effect to the Investment in the Project (collectively the "Investment Documents"):<br><br>i) Investment Term Sheet;<br><br>ii) Rule 9019 Settlement Agreement;<br><br>iii) Special Warranty Deed from Lender to New Owner;<br><br>iv) Project plan and Development Budget approved by Sponsor and Investor.<br><br>v)<br><br>vi) |
| Representations and Warranties | Sponsor will provide the standard and customary representations and warranties for an equity investment of this size and nature including, but not limited to, the following:<br><br>i) Sponsor shall disclose to the Investor any existing or threatened litigation against the Sponsor, its subsidiaries, or affiliates. |



31672879v.7

| | |
|---|---|
| | ii) While the Investor is conducting its Due Diligence, Sponsor shall not enter into negotiations or make any agreements with any other party on behalf of the Sponsor outside of the normal course of business;<br><br>iii) While the Investor is conducting its Due Diligence, Sponsor shall not enter into any negotiations or make any agreement that may result in a material change to the business or financial condition of the Sponsor;<br><br>iv) Sponsor shall disclose to the Investor any material changes regarding the business, including any changes to applicable laws or regulations, or the financial condition of the Sponsor that may occur between the date hereof and the Closing Date;<br><br>v) Sponsor shall provide to the Investor full, true, and plain disclosure of all material information relating to the Sponsor and the potential Property acquisitions, whether or not specifically requested by the Investor and,<br><br>vi) Sponsor shall execute and deliver all such further documents as may, in the reasonable opinion of the Investor, be necessary or desirable in order to give full effect to the Investor's investment. |
| Expenses | Both the Investor and Legacy Owner will be responsible for their respective expenses associated with the negotiation, due diligence, legal documentation and closing of the proposed Investment. |
| Terms Non-Binding and Not Final: | The Term Sheet provides the non-binding terms and conditions associated with the Investment. Such proposed terms and conditions reflect Investor's current perception of market conditions and the current state of Investor's due diligence of the Legacy Sponsor, the principals of the Legacy Sponsor, and the Project in its entirety.<br><br>The Parties will develop and execute binding and definitive legal documents describing in detail the terms and condition outlined in this Term Sheet.<br><br>The terms and conditions described above do not define all of the terms and conditions of this Investment and the complete set of detailed terms and conditions will be outlined in the forthcoming binding and definitive legal documents describing the Investment.<br><br>The terms and conditions outlined in this Term Sheet are contingent on Investor and its capital partners completing to its satisfaction all financial, business, and legal due diligence with respect to the Sponsor, the principals of the Sponsor, the Project in its entirety and the approval and continued commitment of the Mandarin Oriental Hotel Group. |
| Confidentiality and Nondisclosure | The Parties mutually agree to keep confidential and not disclose any information which is given by one Party (the "Disclosing Party") to the other Party (the "Receiving Party") during the course of these |

| | |
|---|---|
| | investment discussions. This information shall be used solely during these investment discussions between the Investor and the Sponsor and shall be treated confidentially by the Receiving Party for so long as it remains non-public information. Except as contemplated herein or as otherwise required by law or by applicable regulators or by judicial or regulatory process, the Receiving Party shall not disclose such information to a third party without the consent of the Disclosing Party (which consent shall not be unreasonably withheld) and the execution of a confidentiality agreement between the Receiving Party and such third party. Except as required by applicable law or legal process or pursuant to any legal, regulatory, or self-regulatory body requests for information or documents, the Parties and any of their respective affiliates and principals agree to maintain the confidentiality of the terms and conditions of this Term Sheet. |
| Governing Law | This Term Sheet shall be governed by and construed in accordance with the laws of the State of Texas. The courts located in City of Dallas in Dallas County shall be the exclusive venue for the resolution of all disputes between the Parties and such Parties accept the jurisdiction of such courts. |
| Dispute | IN THE EVENT OF LITIGATION OR BINDING ARBITRATION RELATED TO THIS TERM SHEET, THE PREVAILING PARTY SHALL BE ENTITLED TO RECOVER COSTS AND REASONABLE ATTORNEY FEES. ADDITIONALLY, INVESTOR AND SPONSOR HEREBY KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS TERM SHEET, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR INVESTOR IN OFFERING THIS TERM SHEET. |
| No Broker: | There are no claims for brokerage commissions or finder's fees or similar compensation in connection with the transactions contemplated by this Term Sheet based on any arrangement made by or on behalf of the Sponsor or the Investor. |
| No Prior Agreements | The Term Sheet summarizes all agreements and understandings of the Parties concerning the matters set forth herein. There are no other verbal or written agreements understandings between Investor and the Legacy Sponsor concerning the Term Sheet or any other matters herein. |
| No Assignment | This Term Sheet shall not be assignable by the either Party without the prior consent of the other, which consent may be withheld by Investor in its sole discretion. |

| | |
|---|---|
| Survival | The sections of "Confidentiality", "No Prior Agreements", "Governing Law", "No Assignment" and "Expiration" of this Term Sheet shall remain in full force and effect, notwithstanding any subsequent termination of this Term Sheet. |
| Term Sheet Form and Effective Transmission | This Term Sheet may be executed in counterparts, which shall be an original, and all of which, when taken together, shall constitute one agreement. Delivery of an executed signature page of this Term Sheet by facsimile or electronic transmission shall be as effective as delivery of a manually executed counterpart hereof. |
| Execution and Expiration Date: | This Term Sheet must be executed no later than March 15, 2022, otherwise this Term Sheet terms and conditions herein will expire on March 15, 2022, at 5:00 p.m. Central Standard Time. |

This Term Sheet may be withdrawn at any time, for any reason whatsoever, prior to the Expiration Date and Time, without any penalty, costs or claims against the Investor.

Please indicate your acceptance of this Term Sheet by signing in the space provided on the following page and returning an executed original of the Term Sheet to the undersigned.

Sincerely,

INVESTOR:

By: ____________________

Name (Printed): Christopher A. E. Green

Its: Managing Member

Agreed and accepted this 14 day of March 2022.

LEGACY SPONSOR:

By: ____________________

Name (Printed): Timothy Barton

Its: President



31672879v.7

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **2999TC ACQUISITIONS, LLC,** | § | **CASE NO. 21-31954-hdh** |
| | § | |
| **Debtor.** | § | **Chapter 11** |

**ORDER GRANTING 2999TC ACQUISITIONS, LLC'S EMERGENCY MOTION TO EXTEND TIME FOR PAYMENT OF AMOUNTS DUE AND OWING TO HNGH TURTLE CREEK, LLC**

CAME ON FOR CONSIDERATION BY THE COURT *2999TC Acquisitions, LLC's Emergency Motion to Extend Time for Payment of Amounts Due and Owing to HNGH Turtle Creek, LLC* and ("Emergency Motion" and "HNGH," respectively) filed by the Debtor in the above-styled and numbered case ("Debtor"), and the Court, having been apprised of the agreement between the Debtor and Tall Ship Texas Partners, LLC ("Tall Ship") concerning Tall Ship's acquisition and development of certain property owned by Debtor finds good cause to GRANT said Emergency Motion ; it is therefore,

ORDERED, ADJUDGED AND DECREED that the deadline for payment of amounts due and owing to HNGH that was established in the *Agreed Order Regarding Motion to Lift Stay (Doc. 10), Motion to Dismiss (Doc. 9), Motion for Sanctions (Doc. 15) and Motion to Enforce Stay (Doc. 14)* [Docket No. 64] shall be, and hereby is, extended by ten (10) days to March 25, 2022

# # # END OF ORDER # # #

Submitted by:
Joyce W. Lindauer
State Bar No. 21555700
1412 Main Street, Suite 500
Dallas, TX 75202
Telephone: (972) 503-4033
Attorneys for Debtor