# COMMITMENT FOR TITLE INSURANCE T-7

## ISSUED BY

## *TITLE RESOURCES GUARANTY COMPANY*

## SCHEDULE A

Effective Date: **May 15, 2022, 08:00 am** GF No. **2201814-VVJA**

Commitment No. ______________________, issued **May 18, 2022, 08:00 am**

1. The policy or policies to be issued are:

   a. OWNER'S POLICY OF TITLE INSURANCE (Form T-1)
   (Not applicable for improved one-to-four family residential real estate)
   Policy Amount:
   PROPOSED INSURED:

   b. TEXAS RESIDENTIAL OWNER'S POLICY OF TITLE INSURANCE
   ONE-TO-FOUR FAMILY RESIDENCES (Form T-1R)
   Policy Amount:
   PROPOSED INSURED:

   c. LOAN POLICY OF TITLE INSURANCE (Form T-2)
   Policy Amount:
   PROPOSED INSURED: **TBD**
   Proposed Borrower: **TCC 2022, LLC**

   d. TEXAS SHORT FORM RESIDENTIAL LOAN POLICY OF TITLE INSURANCE (Form T-2R)
   Policy Amount:
   PROPOSED INSURED:
   Proposed Borrower:

   e. LOAN TITLE POLICY BINDER ON INTERIM CONSTRUCTION LOAN (Form T-13)
   Binder Amount:
   PROPOSED INSURED:
   Proposed Borrower:

   f. OTHER
   Policy Amount:
   PROPOSED INSURED:

2. The interest in the land covered by this Commitment is: **Fee Simple**

3. Record title to the land on the Effective Date appears to be vested in:

   **2999TC ACQUISITIONS, LLC F/K/A MO 2999TC, LLC, a Delaware limited liability company, as their interest may appear**
   **HNGH TURTLE CREEK, LLC, a Texas limited liability company, as their interest may appear**

   **By virtue of Special Warranty Deed filed 09/23/2019, recorded in cc# 201900253499, Real Property Records, Dallas County, Texas.**
   **Special Warranty Deed filed 11/01/2021, recorded in cc# 202100327172, Real Property Records, Dallas County, Texas**

4. Legal description of land:
   **SEE ATTACHED EXHIBIT "A"**

**EXHIBIT "A"**

**Being a tract of land situated in the James A. Sylvester Abstract No. 1383, and the John Grisby Survey, Abstract No. 495, City of Dallas Block No. A/1031, Texas and being all of Lot 4, Block A/1031, of TURTLE CREEK OFFICE ADDITION, an addition to the City of Dallas, Texas, according to the plat thereof recorded in Volume 2003162, Page 48, Plat Records, Dallas County, Texas.**

## COMMITMENT FOR TITLE INSURANCE T-7

## ISSUED BY

## *TITLE RESOURCES GUARANTY COMPANY*

## SCHEDULE B

## EXCEPTIONS FROM COVERAGE

In addition to the Exclusions and Conditions and Stipulations, your Policy will not cover loss, costs, attorney's fees, and expenses resulting from:

1. The following restrictive covenants of record itemized below (We must either insert specific recording data or delete this exception):

   **ITEM 1 OF SCHEDULE B IS HEREBY DELETED IN ITS ENTIRETY.**

2. Any discrepancies, conflicts, or shortages in area or boundary lines, or any encroachments or protrusions, or any overlapping of improvements. **Company has approved the current land title survey and upon request, and payment of any promulgated premium, this item will be amended in the policy(ies) to be issued to read: 'shortages in area'.**

3. Homestead or community property or survivorship rights, if any of any spouse of any insured. (Applies to the Owner's Policy only.)

4. Any titles or rights asserted by anyone, including, but not limited to, persons, the public, corporations, governments or other entities,

   a. to tidelands, or lands comprising the shores or beds of navigable or perennial rivers and streams, lakes, bays, gulfs or oceans, or
   b. to lands beyond the line of the harbor or bulkhead lines as established or changed by any government, or
   c. to filled-in lands, or artificial islands, or
   d. to statutory water rights, including riparian rights, or
   e. to the area extending from the line of mean low tide to the line of vegetation, or the rights of access to that area or easement along and across that area.

   (Applies to the Owner's Policy only.)

5. Standby fees, taxes and assessments by any taxing authority for the year **2022**, and subsequent years; and subsequent taxes and assessments by any taxing authority for prior years due to change in land usage or ownership, but not those taxes or assessments for prior years because of an exemption granted to a previous owner of the property under Section 11.13, Texas Tax Code, or because of improvements not assessed for a previous tax year. (If Texas Short Form Residential Loan Policy of Title Insurance (T-2R) is issued, that policy will substitute "which become due and payable subsequent to Date of Policy" in lieu of "for the year _____ and subsequent years.")

6. The terms and conditions of the documents creating your interest in the land.

7. Materials furnished or labor performed in connection with planned construction before signing and delivering the lien document described in Schedule A, if the land is part of the homestead of the owner. (Applies to the Loan Title Policy Binder on Interim Construction Loan only, and may be deleted if satisfactory evidence is furnished to us before a binder is issued.)

8. Liens and leases that affect the title to the land, but that are subordinate to the lien of the insured mortgage. (Applies to Loan Policy (T-2) only.)

9. The Exceptions from Coverage and Express Insurance in Schedule B of the Texas Short Form Residential Loan Policy of Title Insurance (T-2R). (Applies to Texas Short Form Residential Loan Policy of Title Insurance (T-2R) only.) Separate exceptions 1 through 8 of this Schedule B do not apply to the Texas Short Form Residential Loan Policy of Title Insurance (T-2R).

10. The following matters and all terms of the documents creating or offering evidence of the matters (We must insert matters or delete this exception.):

**a. All leases, grants, exceptions or reservations of coal, lignite, oil, gas and other minerals, together with all rights, privileges, and immunities relating thereto, appearing in the Public Records whether listed in Schedule B or not. There may be leases, grants, exceptions or reservations of mineral interest that are not listed.**

**b. Rights of parties in possession (Owner's Policy Only).**

**c. Rights of tenants in possession, as tenants only, pursuant to written but unrecorded leases in effect at Date of Policy, which leases do not contain any rights of purchase or rights of first refusal.**

**d. The following easements and/or building lines affecting the subject property as shown on Plat recorded in Volume 2003162, Page 48, Map Records, Dallas County, Texas, and as shown on survey dated June 12, 2019 and revised August 8, 2019, prepared by Kyle Coleman Harris, RPLS No. 6266:**

**Corner clip, ten feet by ten feet (10' x 10') near southeast corner;**

**Eight foot (8') street easement along Northeast portion of the property line;**

**Three foot (3') street easement along western most property line; and**

**Fifteen foot (15') utility along southern property line.**

**e. Easement executed by Williams & Wagner Investments, Inc., a corporation, to the City of Dallas, dated October 12, 1953, filed October 23, 1953, recorded in Volume 3936, Page 472, Deed Records, Dallas County, Texas, and as shown on Plat recorded in Volume 2003162, Page 48, Map Records, Dallas County, Texas, and as shown on survey dated June 12, 2019 and revised August 8, 2019, prepared by Kyle Coleman Harris, RPLS No. 6266.**

**f. Easement executed by Williams & Wagner Investments, Inc., a corporation, to the City of Dallas, a municipal corporation, dated August 15, 1960, filed September 21, 1960, recorded in Volume 5413, Page 660, Deed Records, Dallas County, Texas, and as shown on Plat recorded in Volume 2003162, Page 48, Map Records, Dallas County, Texas, and as shown on survey dated June 12, 2019 and revised August 8, 2019, prepared by Kyle Coleman Harris, RPLS No. 6266.**

**g. Terms, conditions and provisions of that certain Easement by and between George H. Marsh and Ben H. Powell, Jr., Trustees of the Neill Trust and Williams & Wagner Investments, Inc., a Texas corporation, dated October 27, 1960, filed November 1, 1960, recorded in Volume 5450, Page 72, Deed Records, Dallas County, Texas, and as shown on Plat recorded in Volume 2003162, Page 48, Map Records, Dallas County, Texas, and as shown on survey dated June 12, 2019 and revised August 8, 2019, prepared by Kyle Coleman Harris, RPLS No. 6266.**

**h. No liability is assumed by reason of the following as shown on survey dated June 12, 2019 and revised August 8, 2019, prepared by Kyle Coleman Harris, RPLS No. 6266.:**

**Location of transformer pads, power equipment and electric boxes on property.**

**Location of storm sewer drains, irrigation control valve and cleanout on property.**

**Location of light standard and flood lights on property.**

**Location of concrete and metal fence within easement.**

**Concrete wall off property.**

**Location of gas meter, electric switch and electric meter on property.**

**Location of water meter and hand hole on property.**

**COMMITMENT FOR TITLE INSURANCE T-7**

**ISSUED BY**

***TITLE RESOURCES GUARANTY COMPANY***

## SCHEDULE C

Your Policy will not cover loss, costs, attorneys' fees, and expenses resulting from the following requirements that will appear as Exceptions in Schedule B of the Policy, unless you dispose of these matters to our satisfaction, before the date the Policy is issued:

1. Documents creating your title or interest must be approved by us and must be signed, notarized and filed for record.

2. Satisfactory evidence must be provided that:

    a. no person occupying the land claims any interest in that land against the persons named in paragraph 3 of Schedule A,

    b. all standby fees, taxes, assessments and charges against the property have been paid,

    c. all improvements or repairs to the property are completed and accepted by the owner, and that all contractors, sub-contractors, laborers and suppliers have been fully paid, and that no mechanic's, laborer's or materialmen's liens have attached to the property,

    d. there is legal right of access to and from the land,

    e. (on a Loan Policy only) restrictions have not been and will not be violated that affect the validity and priority of the insured mortgage.

3. You must pay the seller or borrower the agreed amount for your property or interest.

4. Any defect, lien or other matter that may affect title to the land or interest insured, that arises or is filed after the effective date of this Commitment.

5. **Deed of Trust dated September 20, 2019, filed September 23, 2019, recorded under Instrument No. 201900253450, of the Official Public Records of Dallas County, Texas, executed by MO 2999TC, LLC to Michael B. Massey, Trustee(s), securing the payment of one note of even date therewith in the principal sum of $32,500,000.00, payable to 2999 Turtle Creek, LLC, a Delaware limited liability company; and subject to all of the terms, conditions, and provisions contained in said Deed of Trust.**

    **Assignment of Leases and Rents by instrument dated September 20, 2019, filed September 23, 2019, recorded underInstrument No. 201900253451, of the Official Public Records of Dallas County, Texas.**

    **Notice of Collateral Assignment of Deed of Trust and Loan Documents to Axos Bank by instrument dated December 31, 2019, filed January 3, 2020, recorded under Instrument No. 202000001928, of the Official Public Records of Dallas County, Texas.**

    **Assignment of Deed of Trust and Assignment of Leases and Rents to HNGH Turtle Creek, LLC by instrument dated December 7, 2020, filed December 8, 2020, recorded under Instrument No. 202000341904, of the Official Public Records of Dallas County, Texas.**

    **Collateral Transfer of Note and Lien to Happy State Bank, by instrument dated December 4, 2020, filed December 8, 2020, recorded under Instrument No. 202000341906, of the Official Public Records of Dallas County, Texas.**

    **Appointment of Substitute Trustee by instrument dated June 30, 2020, filed July 6, 2020, recorded**

**underInstrument No. 202000168289, of the Official Public Records of Dallas County, Texas.**

**Appointment of Substitute Trustee by instrument dated August 2, 2020, filed August 10, 2020, recorded underInstrument No. 202000206704, of the Official Public Records of Dallas County, Texas.**

**Notice of Foreclosure Sale by instrument dated August 6, 2020, filed August 10, 2020, recorded under Instrument No. 202000206703, of the Official Public Records of Dallas County, Texas.**

**6. UCC Financing Statement executed by MO 2999TC, LLC, as Debtor to 2999 Turtle Creek, LLC, as Secured Party, filed September 23, 2019, recorded inInstrument No. 201900253452, of the Official Public Records of Dallas County, Texas. Amendments filed December 8, 2020 in Instrument Nos. 202000341907 and 202000341908, Official Public Records, Dallas County, Texas.**

**7. Lis Pendens filed for record November 5, 2021, recorded in Instrument No. 202100333511, of the Official Public Records of Dallas County, Texas. Company requires a release of the Lis Pendens and dismissal with prejudice of the law suit styled 2999TC Acquisitions, LLC and HNGH Turtle Creek, LLC. RELEASED AT CLOSING PER CONFIRMATION OF THE CHAPTER 11 PLAN CAN BE RELEASED.**

**8. Intentionally Deleted.**

**9. Bankruptcy proceedings were filed in Bankruptcy Court, on October 29, 2021, in Cause No. 21-31954-hdh11, by 2999TC Acquisitions, LLC. We must be furnished with a certified copy of any action of the Bankruptcy court exempting the herein described property from claims of creditors, as well as any other action affecting validity of priority of liens cited herein. (Prior Owner) WILL REQUIRE COMPLIANCE WITH THE CHAPTER 11 PLAN CONFIRMED ON MAY 18, 2022.**

**10. This order was submitted without the name of a LENDER, prior to closing, furnish the name of the LENDER to the title plant for OFAC examination and possible additional requirements.**

**11. The Company requires the following evidence of authority for the HNGH Turtle Creek, LLC, limited liability company which is a party to the subject transaction:**

**a. Current Certificate of Existence from the Secretary of State,**
**b. Current Certificate of Good Standing from the State Comptroller,**
**c. Resolution of the Members authorizing the present transaction and those parties executing instruments on behalf of the limited liability company,**
**d. Copy of the Articles of Organization and any amendments thereto, and**
**e. Copy of the Regulations adopted by the members of the limited liability company and any amendments thereto.**

**12. The Company will amend item 2 on Schedule "B" (known as the "Survey Exception") to delete all language except for "shortages in area", subject to satisfaction of the following requirements: (i) receipt of survey acceptable to the Company; and (ii) payment of all expenses in connection with the survey; and (iii) payment of the additional promulgated premium if this coverage is requested on an owner policy; and (iv) the inclusion of additional exceptions, and/or the addition of promulgated express insurance language, on Schedule "B" as deemed necessary by the Company following its review of the survey.**

**13. The Texas Title Insurance Information portion of the Commitment for Title Insurance advises you that your Policy will insure you against loss because of non-excepted discrepancies or conflicts in boundary lines, encroachments or protrusions, or overlapping of improvements if you pay an additional fifteen percent (15%) premium of the Basic Rate for your Owner Policy for the coverage, and we provided with a satisfactory survey, pursuant to Procedural Rule P2.**

**Your Owner Policy of Title Insurance will contain this coverage and you will be charged the additional fifteen percent (15%) premium unless on or before the date of closing you advise the company in writing that you reject this coverage.**

**If you do not get this insurance, you will have to hire your own attorney and surveyor, if necessary, and you will not be protected under your Owner Policy against any encroachments, such as buildings over easements, buildings over setback lines, buildings over property lines, or location of fences.**

**14. The title insurance policy being issued to you contains an arbitration provision. It allows you or the Company to require arbitration if the amount of insurance is $2,000,000.00 or less. If you want to retain your right to sue the Company in case of a dispute over a claim, you must request deletion of the arbitration provision before the policy is issued. If you are the purchaser or lender in the transaction and request deletion of the arbitration provision, please advise us so prior to closing by executing the Addendum to this Commitment and returning it to us, or inform us in your closing instructions.**

**15. Procedural Rule P-27, as provided for by Article 9.39 of the Texas Insurance Code, requires that "Good Funds" be received and deposited before a Title Agent may disburse from its trust fund account.**

**16. If a Mortgagee Policy of Title Insurance (T-2) is to be issued insuring a lien which does not secure a home equity lien or reverse mortgage, the loan secured by the insured lien must represent funds advanced to refinance a prior existing lien or liens against the homestead described by any subsection under Subsections (a)(1)-(a)(5) of Section 50, Article XVI, Texas Constitution. Additionally, the amount of the loan secured by the insured lien must be limited to the present unpaid balance of the prior existing lien(s), interest accrued thereon, and reasonable costs necessary to refinance such lien(s) as approved by the underwriting guidelines of the Company.**

**17. Article 9.39A of the Texas Insurance Code requires certified checks, cashier's checks, cash or wire transfers for all transactions that involve the payment of $1,500.00 or more. Title Company must require compliance with Article 9.39A (Procedural Rule 27)**

**18. NOTE: The following note is for informational purposes only:**

**The following deed(s) affecting the subject property were recorded within the 24 month period prior to the effective date of this commitment:**

**Special Warranty Deed dated October 29, 2021, from 2999TC Acquisitions, LLC f/k/a MO 2999TC, LLC a Delaware limited liability company to HNGH Turtle Creek, LLC, a Texas limited liability company, filed November 1, 2021, recorded in Instrument No. 202100327172, Official Public Records, Dallas County, Texas.**

Countersigned
**Silver Star Title LLC dba Sendera Title**

By ____________________________

# SCHEDULE D

GF No. **2201814-VVJA** Effective Date: **May 15, 2022, 08:00 am**

Pursuant to the requirements of Rule P-21, Basic Manual of Rules, Rates and Forms for the writing of Title Insurance in the State of Texas, the following disclosures are made:

1. The following individuals are directors and/or officers, as indicated, of the Title Insurance Company issuing this Commitment

**Title Resources Guaranty Company**

The issuing Title Insurance Company, **Title Resources Guaranty Company**, is a corporation whose shareholders owning or controlling, directly or indirectly, 10% or more of said corporation, directors, and officers are listed below:

**Shareholders**:
Title Resource Group LLC.

**Directors**:
Donald J. Casey; Michael P. Gozdan; Sriram Someshwara; J. Scott McCall; Thomas N. Rispoli; Donald W. Evans, Jr.; Marilyn J. Wasser

**Officers**:
J. Scott McCall-President/CEO, E. Paul McNutt, Jr-EVP, Michael P. Gozdan- Secretary,
Charlotte C. Simonelli -Treasurer

2. The following disclosures are made by the Title Insurance Agent issuing this commitment:

Silver Star Title, LLC dba Sendera Title
4161 McKinney Ave., Suite 401
Dallas, Texas 75204

(a) A listing of each shareholder, owner, partner or other person having, owning or controlling one percent (1%) or more of the Title Insurance Agent that will receive a portion of the premium are as follows:

Charles S. Brown - 70%
CBII, LLC, a Texas limited liability company - 30%
(Charles S. Brown owns all of the membership interest in CBII, LLC)

(b) A listing of each shareholder, owner, partner, or other person having, owning or controlling 10 percent (10%) or more of an entity that has, owns or controls one percent (1%) or more of the Title Insurance Agent that will receive a portion of the premium.

c) If the Agent is a corporation: (i) the name of each director of the Title Insurance Agent, and (ii) the names of the President, the Executive or Senior Vice-President, the Secretary and the Treasurer of the Title Insurance Agent.

(d) The name of any person who is not a full-time employee of the Title Insurance Agent and who receives any portion of the title insurance premium for services performed on behalf of the Title Insurance Agent in connection with the issuance of a title insurance form; and, the amount of premium that any such person shall receive.

(e) For purposes of this paragraph 2, "having, owning or controlling" includes the right to receipt of a percentage of net income, gross income, or cash flow of the Agent or entity in the percentage stated in subparagraphs (a) or (b).

Charles S. Brown - Chief Executive Officer
Jeanie Acord - Senior Vice President

Kristy Stiles - Vice President

3. You are entitled to receive advance disclosure of settlement charges in connection with the proposed transaction to which this commitment relates. Upon your request, such disclosure will be made to you. Additionally, the name of any person, firm or corporation receiving a portion of the premium from the settlement of this transaction will be disclosed on the closing or settlement statement.

You are further advised that the estimated title premium* is:

| | |
|---|---|
| Owner's Policy | ______________ |
| Loan Policy | ______________ |
| Endorsement Charges | ______________ |
| Other | ______________ |
| Total | |

Of this total amount: 15% will be paid to the policy issuing Title Insurance Company: 85% will be retained by the issuing Title Insurance Agent; and the remainder of the estimated premium will be paid to other parties as follows:

| Amount | To Whom | For Services |
|---|---|---|

" *The estimated premium is based upon information furnished to us as of the date of this Commitment for Title Insurance. Final determination of the amount of the premium will be made at closing in accordance with the Rules and Regulations adopted by the Commissioner of Insurance."

## COMMITMENT FOR TITLE INSURANCE (Form T-7)

## TEXAS TITLE INSURANCE INFORMATION

Title insurance insures you against loss resulting from certain risks to your title.

The commitment for Title Insurance is the title insurance company's promise to issue the title insurance policy. The commitment is a legal document. You should review it carefully to completely understand it before your closing date.

El seguro de título le asegura en relación a pérdidas resultantes de ciertos riesgos que pueden afectar el título de su propiedad.

El Compromiso para Seguro de Titulo es la promesa de la compañía aseguradora de títulos de emitir la póliza de seguro de título. El Compromiso es un documento legal. Usted debe leerlo cuidadosamente y entenderlo completamente antes de la fecha para finalizar su transacción.

Your Commitment of Title insurance is a legal contract between you and us. The Commitment is not an opinion or report of your title. It is a contract to issue you a policy subject to the Commitment's terms and requirements.

Before issuing a Commitment for Title Insurance (the Commitment) or a Title Insurance Policy (the Policy), the Title Insurance Company (the Company) determines whether the title is insurable. This determination has already been made. Part of that determination involves the Company's decision to insure the title except for certain risks that will not be covered by the Policy. Some of these risks are listed in Schedule B of the attached Commitment as Exceptions. Other risks are stated in the Policy as Exclusions. These risks will not be covered by the Policy. The Policy is not an abstract of title nor does a Company have an obligation to determine the ownership of any mineral interest.

- **MINERALS AND MINERAL RIGHTS** may not be covered by the Policy. The Company may be unwilling to insure title unless there is an exclusion or an exception as to Minerals and Mineral Rights in the Policy. Optional endorsements insuring certain risks involving minerals, and the use of improvements (excluding lawns, shrubbery and trees) and permanent buildings may be available for purchase. If the title insurer issues the title policy with an exclusion or exception to the minerals and mineral rights, neither this Policy, nor the optional endorsements, ensure that the purchaser has title to the mineral rights related to the surface estate.

Another part of the determination involves whether the promise to insure is conditioned upon certain requirements being met. Schedule C of the Commitment lists these requirements that must be satisfied or the Company will refuse to cover them. You may want to discuss any matters shown in Schedules B and C of the Commitment with an attorney. These matters will affect your title and your use of the land.

When your policy is issued, the coverage will be limited by the Policy's Exceptions, Exclusions and Conditions, defined below.

- **EXCEPTIONS** are title risks that a Policy generally covers but does not cover in a particular instance. Exceptions are shown on Schedule B or discussed in Schedule C of the Commitment. They can also be added if you do not comply with the Conditions section of the Commitment. When the Policy is issued, all Exceptions will be on Schedule B of the Policy.

- **EXCLUSIONS** are title risks that a Policy generally does not cover. Exclusions are contained in the Policy but not shown or discussed in the Commitment.

- **CONDITIONS** are additional provisions that qualify or limit your coverage. Conditions include your responsibilities and those of the Company. They are contained in the Policy but not shown or discussed in the Commitment. The Policy Conditions are not the same as the Commitment Conditions.

You can get a copy of the policy form approved by the Texas Department of Insurance by calling the Title Insurance Company at (800) 526-8018 or by calling the title insurance agent that issued the Commitment. The Texas Department of Insurance may revise the policy form from time to time.

You can also get a brochure that explains the policy from the Texas Department of Insurance by calling 1-800-252-3439.

Before the Policy is issued, you may request changes in the policy. Some of the changes to consider are:

- Request amendment of the "area and boundary" exception (Schedule B, paragraph 2). To get this amendment, you must furnish a survey and comply with other requirements of the Company. On the Owner's Policy, you must pay an additional premium for the amendment. If the survey is acceptable to the Company and if the Company's other requirements are met, your Policy will insure you against loss because of discrepancies or conflicts in boundary lines, encroachments or protrusions, or overlapping of improvements. The Company may then decide not to insure against specific boundary or survey problems by making special exceptions in the Policy. Whether or not you request amendment of the "area and boundary" exception, you should determine whether you want to purchase and review a survey if a survey is not being provided to you.

- Allow the Company to add an exception to "rights of parties in possession." If you refuse this exception, the Company or the title insurance agent may inspect the property. The Company may except to and not insure you against the rights of specific persons, such as renters, adverse owners or easement holders who occupy the land. The Company may charge you for the inspection. If you want to make your own inspection, you must sign a Waiver of Inspection form and allow the Company to add this exception to your Policy.

The entire premium for a Policy must be paid when the Policy is issued. You will not owe any additional premiums unless you want to increase your coverage at a later date and the Company agrees to add an Increased Value Endorsement.

## DELETION OF ARBITRATION PROVISION

(Not applicable to the Texas Residential Owner's Policy)

ARBITRATION is a common form of alternative dispute resolution. It can be a quicker and cheaper means to settle a dispute with your Title Insurance Company. However, if you agree to arbitrate, you give up your right to take the Title Insurance Company to court and your rights to discovery of evidence may be limited in the arbitration process. In addition, you cannot usually appeal an arbitrator's award.

**Your policy contains an arbitration provision (shown below). It allows you or the Company to require arbitration if the amount of insurance is $2,000,000 or less. If you want to retain your right to sue the Company in case of a dispute over a claim, you must request deletion of the arbitration provision before the policy is issued. You can do this by signing this form and returning it to the Company at or before the closing of your real estate transaction or by writing to the Company.**

The arbitration provision in the Policy is as follows:

> "Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured, unless the Insured is an individual person (as distinguished from an Entity). All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction."

________________________________ ________________________________

SIGNATURE DATE

***TITLE RESOURCES GUARANTY COMPANY***

| Premium Amount<br><br>1 | Rate Rules<br><br>2 | Property Type<br>3 | County Code<br>4 | Liability at Reissue Rate<br>5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|
| **$130,850.50** | **3000<br>0886** | **40** | **113** | | | | |