When Recorded, Return To:
Happy State Bank
Attn: Austin Nash
16633 North Dallas Parkway, Suite 350
Addison, Texas 75001

Loan No. 4000017910

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

---

## COLLATERAL TRANSFER OF NOTE AND LIEN

This Collateral Transfer of Note and Lien (this "Agreement") is dated as of December 4, 2020 (the "Effective Date"), by and between HNGH TURTLE CREEK, LLC, a Delaware limited liability company ("Grantor"), located at 2999 Turtle Creek Blvd., Dallas, Texas 75219, and HAPPY STATE BANK, a Texas banking association ("Secured Party"), located at One Hanover Park, 16633 North Dallas Parkway, Suite 350, Addison, Texas 75001.

### RECITALS

A. WHEREAS, Grantor has executed a Letter Loan Agreement, Promissory Note and other related documents dated as of the Effective Date, and as may be modified, renewed and extended (collectively, the "Loan Documents") to secure a loan ("Loan");

B. WHEREAS, Secured Party requires that, as a condition of the Loan, Grantor execute this Agreement, pledging certain Note(s) and Lien(s) as collateral for the Loan, as further described below.

### AGREEMENT

All of Grantor's interest in the Collateral Note and the Collateral Note Security (as defined below, including accessions) will be deemed collateral for the Loan ("Collateral"), as is further described in Sections 1 and 2 below:

1. Collateral Note. A Secured Promissory Note in the stated principal amount of $32,500,000.00, executed by MO 2999TC, LLC, a Delaware limited liability company ("Collateral Note Maker"), dated September 20, 2019. The current principal balance on the Collateral Note is $32,500,000.00.

2. Collateral Note Security. Deed of Trust, Security Agreement and Fixture Filing dated September 20, 2019 from Borrower in favor of the trustee identified therein and now in favor of Grantor and recorded as Document No. 201900253450 in the Official Public Records of Dallas County, Texas (the "Deed of Trust") which Deed of Trust created liens on, among other property, the real property situated in Dallas County, Texas and described as follows:

   BEING a tract of land situated in the James A. Sylvester Survey Abstract No. 1383, and the John Grisby Survey, Abstract No. 495, City of Dallas Block No. A/1031, Texas and being all of Lot 4, Block A/1031, of TURTLE CREEK OFFICE ADDITION, an Addition to the City of Dallas, Texas, according to the plat thereof recorded in Volume 2003162, Page 48, Deed Records, Dallas County, Texas.

   and commonly known as 2999 Turtle Creek Blvd., Dallas, Texas 75219; and Assignment of Leases and Rents dated September 20, 2019 executed by Collateral Note Maker now in favor of Grantor and recorded as Document No. 201900253451 in the Official Public Records of Dallas County, Texas.

3. Description of the Loan. Grantor has executed and delivered to Secured Party a Promissory Note, dated December 4, 2020 in the maximum stated principal amount stated therein, and as may be modified, renewed and extended.

4. Security Interest. Grantor grants to Secured Party a security interest in the Collateral and all its proceeds to secure the Loan and all renewals and extensions of the Loan. This security interest also secures all other present and future debts and liabilities of Grantor to Secured Party, including future advances.

5. Representations Warranties and Agreement of Grantor.

   **A. Grantor represents and warrants the following:**

---

i. Grantor owns the Collateral and has the authority to grant this security interest, free from any setoff, claim, restriction, security interest or encumbrance except liens for taxes not yet due and the lien that shall be released as of the Effective Date held by Axos Bank, as previously disclosed to the Secured Party.

ii. All information about Grantor's financial condition is or will be accurate when provided to Secured Party.

iii. Except as has been previously disclosed to Secured Party by Grantor, the Collateral Note has not been modified and is not in default.

iv. To the best knowledge of Grantor, there are no defenses or offsets to payment of the Collateral Note.

v. The lien of the Collateral Note Security is a first lien.

vi. The Collateral represents the valid, legally enforceable obligation of the Collateral Note Maker.

**B. Grantor agrees to:**

i. Defend the Collateral against all claims adverse to Secured Party's interest and keep the Collateral free from liens, security interests, and other claims.

ii. Pay all of Secured Party's expenses incurred to obtain, preserve, perfect, defend, and enforce this Agreement or the Collateral and to collect or enforce the Loan, provided that Secured Party will take reasonable steps to consult with Grantor in the incurrence of such enforcement costs. These expenses will bear interest from the date of advance at the highest rate allowed by law and are payable on demand at the place where the Loan is payable. These expenses and interest will become part of the Loan and will be secured by this Agreement.

iii. Sign any documents that Secured Party considers necessary to obtain, maintain, and perfect this security interest.

iv. Notify Secured Party immediately of any material change in the Collateral; change in Grantor's name, address, or location; change in any warranty or representation in this Agreement; change that may affect this security interest; and any event of default.

v. Maintain accurate records of the Collateral; furnish Secured Party any requested information related to the Collateral; and allow Secured Party to inspect and copy all records relating to the Collateral.

vi. Perform all obligations required under the Collateral Note Security.

vii. Preserve the liability of all obligors on the Collateral and preserve the priority of all security for the Collateral.

viii. On Secured Party's demand, deposit all payments received as proceeds of the Collateral in a special bank account designated by Secured Party, who alone will have power of withdrawal.

**C. Grantor agrees not to:**

i. Renew, extend or modify the Collateral Note or grant releases of any part of the property securing the Collateral Note except as otherwise consented to by the Secured Party.

ii. Modify any terms in the Collateral Note Security.

**D. Default and Remedies**

i. Defaults are:

a. failing to timely pay or perform any obligations under the Loan or Loan Documents, or any covenant, or liability in any written agreement between Grantor and Secured Party;

b. making any false warranty, covenant or representation in this Agreement to Secured Party;

c. having a receiver appointed for Grantor or any of the Collateral;

d. assigning the Collateral for the benefit of creditors;

e. to the extent permitted by law, having bankruptcy or insolvency proceedings commenced against or by any of the following parties: Grantor; any partnership of which Grantor is a general partner; or any maker, drawer, acceptor, endorser, guarantor, surety, accommodation party, or other person liable on or for any part of the Loan;

f. the dissolution of any of the following parties: Grantor; any partnership of which Grantor is a general partner; or any maker, drawer, acceptor, endorser, guarantor, surety, accommodation party, or other person liable on or for any part of the Loan.

ii. Secured Party may at any time:

a. take control of any proceeds of the Collateral;

b. release any Collateral in Secured Party's possession to any Grantor, temporarily or otherwise;

c. take control of proceeds of insurance on the Collateral Note Security and reduce any part of the Loan accordingly or permit Grantor to use such funds to repair or replace damaged or destroyed Collateral covered by insurance;

d. demand, collect, convert, redeem, settle, compromise, receipt for, realize on, sue for, and adjust the Collateral either in Secured Party's, Grantor's name, as Secured Party desires; or

e. exercise all other rights available to an owner of such Collateral.

iii. During the existence of any event of default, Secured Party may:

a. declare the unpaid principal and earned interest of the Loan immediately due in whole or part;

b. enforce the Loan; and

c. exercise any rights and remedies granted by law or this Agreement.

iv. Foreclosure of this security interest by suit does not limit Secured Party's remedies, including the right to sell the Collateral under the terms of this Agreement. Secured Party may exercise all remedies at the same or different times, and no remedy is a defense to any other. Secured Party's rights and remedies include all those granted by law or otherwise, in addition to those specified in this Agreement.

v. If the Collateral is sold after default, recitals in the bill of sale or transfer will be prima facie evidence of their truth and all prerequisites to the sale specified by this Agreement and by law will be presumed satisfied.

**E. Collateral Note/Enforcement of Power of Sale**

i. Grantor has endorsed and delivered the Collateral Note to Secured Party. Secured Party is the holder of the Collateral Note. Secured Party recognizes that Grantor has commenced foreclosure proceedings under the terms of the Collateral Note and Grantor hereby has Secured Party's express consent to continue such proceedings. On Grantor's foreclosure under the terms of the Collateral Note, Grantor will grant to Secured Party a first priority lien on the real property securing the Collateral Note. Notwithstanding the foregoing, if Grantor sells the property securing the Collateral Note on foreclosure for a cash price, the proceeds will be applied to the outstanding balance of the Loan, including all interest and fees, and will not become and/or remain the property of Grantor, but are by this Agreement irrevocably assigned and conveyed by Grantor to the Secured Party up to the outstanding balance of the Loan, including all interest and fees, together with accrued but unpaid interest and Secured Party's reasonable costs and expenses. Grantor shall only sell the real property securing the Collateral Note to a third party if the outstanding balance of the Loan, including all interest and fees, will be paid in full either from the proceeds of the sale or from a combination of the proceeds of the sale and Grantor's out-of-pocket funds.

ii. Grantor shall take commercially reasonable steps to keep Secured Party informed of all foreclosure actions taken by Grantor. Upon a foreclosure that does not result in a sale to a third party for a cash price, Grantor must provide a mortgagee's title insurance policy with only such exceptions as Secured Party approves and agrees to execute such additional security documents as Secured Party may require for the Loan.

iii. Grantor assigns, transfers, and conveys to Secured Party all amounts due on the Collateral Note. Collateral Note maker is directed to make payments on the Collateral Note in accordance with the Collateral Note payments provision above.

iv. Grantor indemnifies Secured Party from all claims made against or incurred by Secured Party from any action in connection with the Collateral Note or the Collateral Note Security documents.

**F. General**

i. This security interest will neither affect nor be affected by any other security for any of the Loan. Neither extensions of the Loan nor releases of any of the Collateral will affect the priority or validity of this security interest as to any third person.

ii. This Agreement binds, benefits, and may be enforced by the successors in interest of the parties, except as otherwise provided. Assignment of any part of the Loan and Secured Party's delivery of any part of the Collateral will fully discharge Secured Party from responsibility for that part of the Collateral.

iii. Secured Party's delay in exercising, partial exercise of, or failure to exercise any of its remedies or rights does not waive Secured Party's rights to subsequently exercise those remedies or rights. Secured Party's waiver of any default does not waive any further default by Grantor. Secured Party's waiver of any right in this Agreement or of any default is binding only if it is in writing. Secured Party may remedy any default without waiving it.

iv. This Agreement may be amended only by an instrument in writing signed by Secured Party and Grantor.

v. The unenforceability of any provision of this Agreement will not affect the enforceability or validity of any other provision.

vi. **This Agreement will be construed according to Texas law. This Agreement is to be performed in Tarrant County, Texas.**

vii. Interest on the Loan secured by this Agreement will not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be credited on the principal of the Loan or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess will be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the Loan or, if the principal of the Loan has been paid, refunded. This provision overrides any conflicting provisions in this and all other instruments concerning the Loan.

viii. When the context requires, singular nouns and pronouns include the plural.

Executed as of the Effective Date.

**GRANTOR:**

HNGH TURTLE CREEK, LLC,
a Delaware limited liability company

By: HN Capital Partners, L.L.C.,
a Delaware limited liability company,
its Manager

By: ______________________
Vipin Nambiar, Managing Member

THE STATE OF TEXAS §
§
COUNTY OF DALLAS §

The foregoing instrument was acknowledged before me on December 3, 2020 by Vipin Nambiar, Managing Member of HN Capital Partners, L.L.C., a Delaware limited liability company, Manager of HNGH Turtle Creek, LLC, a Delaware limited liability company, on behalf of said limited liability companies.

GREG GARZA
Notary Public
STATE OF TEXAS
ID#130864929
My Comm. Exp. Oct. 17, 2024

______________________
Notary Public, State of Texas

**SECURED PARTY:**

HAPPY STATE BANK,
a Texas banking association

By: ______________________
Julie Blakeley, Branch President

THE STATE OF TEXAS §
§
COUNTY OF Collin §

The foregoing instrument was acknowledged before me on December 2, 2020 by Julie Blakeley, Branch President of Happy State Bank, a Texas banking association.

______________________
Notary Public, State of Texas

LaTrece Miller
Notary Public, State of Texas
Notary ID #12567495-6
My Commission Expires 04-06-2024

**Dallas County**
**John F. Warren**
**Dallas County Clerk**

**Instrument Number:** 202000341906

eRecording - Real Property

Recorded On: December 08, 2020 11:12 AM

Number of Pages: 6

**" Examined and Charged as Follows: "**

Total Recording: $42.00

*********** THIS PAGE IS PART OF THE INSTRUMENT ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY because of color or race is invalid and unenforceable under federal law.

**File Information:**

| | |
|---|---|
| Document Number: | 202000341906 |
| Receipt Number: | 20201208000305 |
| Recorded Date/Time: | December 08, 2020 11:12 AM |
| User: | Hilga R |
| Station: | CC17 |

**Record and Return To:**

CSC Global

**STATE OF TEXAS**
**COUNTY OF DALLAS**

**I hereby certify that this Instrument was** FILED **In the File Number sequence on the date/time printed hereon, and was duly** RECORDED **in the Official Records of Dallas County, Texas.**

John F. Warren
Dallas County Clerk
Dallas County, TX