*Execution Version*

**ASSIGNMENT AND ASSUMPTION**
**OF ASSIGNED RIGHTS AND OBLIGATIONS**

This Assignment and Assumption of Assigned Rights and Obligations (this "*Assignment*") dated as of December 7, 2020 (the "*Effective Date*"), is entered into by and between, **2999 TURTLE CREEK LLC**, a Delaware limited liability company, having a principal place of business at 520 Madison Avenue, Suite 3501, New York, New York 10022 (the "*Assignor*"), and **HNGH TURTLE CREEK, LLC**, a Delaware limited liability company, having a principal place of business at 600 5th Avenue, 2nd Floor, New York, New York 10020 ("*Assignee*").

RECITALS

WHEREAS, on September 20, 2019 (the "*Loan Closing*") Assignor made a mortgage loan in the original principal sum of $32,500,000.00 (the "*Loan*") to MO 2999TC, LLC (the "*Borrower*") with respect to that certain real property known as 2999 Turtle Creek, Dallas, Texas 75219 (the "*Property*"); and

WHEREAS, Assignor and Assignee are parties to that certain Participation Agreement dated as of January 24, 2020 (the "*Participation Agreement*"), as amended by that certain First Amendment to Participation Agreement dated as of February 4, 2020, by and between Assignor and Assignee; and

WHEREAS, Assignee desires to purchase from Assignor, and Assignor desires to sell to Assignee, the Loan and those certain loan documents described in Schedule 1 hereto (collectively, the "*Loan Documents*") for the purchase price equal to the sum of: (i) the unpaid principal balance of the Loan; plus (ii) accrued interest at the non-default rate provided for in the Loan Documents, for a total amount of $25,784,016.54 (hereinafter, the "*Purchase Price*"), as set forth on Schedule 2 hereto;

WHEREAS, Assignor previously pledged its interest in the Loan and the Loan Documents to Axos Bank (the "*Axos Lien*") pursuant to that certain Loan and Security Agreement dated as of December 31, 2019 between Assignor and Axos Bank (together with any and all documents, instruments and agreements entered into in connection therewith, the "*Axos Loan Documents*"), and

NOW, THEREFORE, in exchange for the Purchase Price and other good and valuable consideration, Assignor hereby agrees to sell to Assignee, and Assignee hereby agrees to purchase from Assignor, all of Assignor's right, title, and interest in and to the Loan and the Loan Documents pursuant to the following terms, conditions and provisions:

1. Closing. The closing of this transaction (the "*Closing*") shall take place on or before December 7, 2020 (the "*Closing Date*"), TIME IS OF THE ESSENCE.

2. Assigned Rights and Obligations. As of the Closing Date, Assignor hereby transfers, assigns and conveys all of the Assignor's right, title, interest and obligations in, to and under the Loan and the Loan Documents set forth on Schedule 1 annexed hereto, including, without limitation, all of Assignor's rights to principal, interest, fees, costs and expenses payable thereunder after Closing and all of Assignor's other rights and claims thereunder (collectively, the "*Assigned Rights and Obligations*").

3. Sale "As-Is". This sale and assignment is made on an "AS-IS," WHERE-IS" BASIS, "WITH ALL FAULTS" AND WITHOUT REPRESENTATIONS, EXPRESS OR IMPLIED, OF ANY TYPE, KIND, CHARACTER OR NATURE (INCLUDING, WITHOUT LIMITATION,

MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE), EXCEPT THE LIMITED AND EXPRESS REPRESENTATIONS OF ASSIGNOR SET FORTH HEREIN, AND WITHOUT RECOURSE OF ANY NATURE TO SELLER.

4. Disclaimed Representations. Without in any way limiting the generality of the foregoing, with respect to the Assigned Rights and Obligations, the Property, the Loan Documents and the Loan, except as explicitly set forth in Section 5, below, Assignor hereby disclaims and disavows:

a. any express or implied representation or warranty of "Merchantability";
b. any express or implied representation or warranty of "Fitness for a Particular Purpose";
c. any express or implied representation or warranty regarding collectability of the Loan;
d. any express or implied representation or warranty regarding environmental condition of the Property;
e. any express or implied representation or warranty regarding lien priority or perfection status of any collateral for the Loan; and
f. any express or implied representation or warranty regarding the validity or the enforceability of any of the Loan Documents against any Loan obligor or any other person except Assignor.

5. Assignor's Representations. Assignor hereby represents and warrants that:

a. Intentionally Omitted;

b. As of the Effective Date, Assignor is the sole owner and holder of the Loan and the Loan Documents, subject only to the rights of Assignee set forth in the Participation Agreement, with the sole right and authority to transfer the Loan and the Loan Documents;

c. The Loan Documents listed on Schedule 1, each in the form previously provided to Assignee, represent all agreements and documents entered into between Assignor, Borrower and any guarantor or grantor related to the Loan;

d. No Loan Document secures any debt or obligation other than the Loan;

f. As of the Closing Date, the Loan and the Loan Documents will not be pledged, transferred, or promised to any third party and have not been so pledged, transferred, or promised except for the Axos Lien;

g. As of the Closing Date, upon delivery of any amounts due to Axos Bank, there are no additional steps that need to be taken or authority that needs to be granted to release the Axos Lien; and

h. Assignor has not entered into any agreements with any third party related to the Loan or the Loan Documents except the Participation Agreement, the Loan with Axos Bank or as otherwise previously disclosed to Assignee.

Notwithstanding the foregoing, Assignor shall incur no liability to Assignee for a breach of the representations and warranties set forth in this Section 5 from and after the date that is one hundred and eighty (180) days from the Effective Date.

6. Assumption of Loan Obligations. Assignee hereby assumes any and all of the Assignor's liabilities, duties and obligations under the Assigned Rights and Obligations, the Loan Documents, the Loan

and the Property, but not including any of the Assignor's liabilities, duties and obligations under the Axos Loan Documents.

7. Release.

a. Assignee hereby releases and forever discharges Assignor, its agents, principals, servants, directors, officers, employees, servicers, attorneys, successors, assigns and affiliates (all such persons being collectively referred to as the *"Assignor Related Persons"*), of and from any and all causes of action, claims, demands and remedies of whatsoever kind and nature that Assignee has or may in the future have against Assignor or any Assignor Related Persons, and in any manner on account of, arising out of or related to the Loan purchased and the rights assigned hereunder except for (i) claims or causes of action arising by reason of Assignor's breach of this Assignment, and (ii) any liability arising out of Section 9 of this Assignment (the *"Assignor Released Matters"*). It is the intention of Assignee that the foregoing general release shall be effective as a bar to all actions, causes of action, suits, claims or demands of every kind, nature or character whatsoever, known or unknown, suspected or unsuspected, fixed or contingent, arising out of or in connection with the Assignor Released Matters. The foregoing general release shall survive Closing or termination of this Assignment.

b. Assignor hereby releases and forever discharges Assignee, its agents, principals, servants, directors, officers, employees, servicers, attorneys, successors, assigns and affiliates (all such persons being collectively referred to as the *"Assignee Related Persons"*), of and from any and all causes of action, claims, demands and remedies of whatsoever kind and nature that Assignor has or may in the future have against Assignee or any Assignee Related Persons, and in any manner on account of, arising out of or related to the Loan purchased and the rights assigned hereunder except for (i) claims or causes of action arising by reason of Assignee's breach of this Assignment, and (ii) any liability arising out of Section 8 of this Assignment (the *"Assignee Released Matters"*). It is the intention of Assignor that the foregoing general release shall be effective as a bar to all actions, causes of action, suits, claims or demands of every kind, nature or character whatsoever, known or unknown, suspected or unsuspected, fixed or contingent, arising out of or in connection with the Assignee Released Matters. The foregoing general release shall survive Closing or termination of this Assignment.

8. Indemnification of Assignor. Assignee hereby agrees to indemnify and hold harmless Assignor and its directors, officers, agents, attorneys and employees (collectively, the "*Assignor Parties*") from and against (a) any and all claims, demands, actions and causes of action that are asserted against the Assignor Parties by any person or entity (other than Assignor) if the claim, demand, action or cause of action directly or indirectly relates to the acts and/or omissions of Assignee or any officer, director or shareholder of Assignee; (b) any administrative or investigative proceeding by any governmental authority directly or indirectly related to a claim, demand, action or cause of action described in clause (a) above; (c) any acts or omissions taken by Assignee related to the Loan and the Loan Documents after the Effective Date, (d) any and all liabilities, losses, costs and expenses (including attorneys' fees, any disbursements and other professional services) that the Assignor Parties suffer or incur as a result of the assertion of any of the foregoing. The Assignor Parties are authorized to employ counsel of their own choosing in enforcing their rights hereunder and in defending against any claim, demand, action, cause of action or administrative or investigative

proceeding covered by this section. All amounts covered under this indemnity shall be due and payable to the Assignor Parties from Assignee immediately upon demand by the Assignor Parties. Any obligation or liability of Assignee to the Assignor Parties under this section shall survive the Closing and the expiration or termination of this Assignment and the repayment of the Loan. Upon delivery by Assignor to Assignee of evidence satisfactory to Assignee in its reasonable discretion that the Axos Lien has been released and the Axos Loan Documents terminated, all prior indemnity agreements by and between the parties and/or their affiliates, including, without limitation, that certain Indemnification Agreement dated as of January 24, 2020 by and between Madison Realty Capital Debt Fund IV LP and Assignee (the "Fund Indemnity"), are hereby merged with and into, and are expressly superseded by, this section, except for any express indemnification provisions in the Participation Agreement. Notwithstanding anything to the contrary, the Fund Indemnity is terminated.

9. Indemnification of Assignee. Assignor hereby agrees to indemnify and hold harmless Assignee and its directors, officers, agents, attorneys and employees (collectively, the "*Assignee Parties*") from and against (a) any and all claims, demands, actions and causes of action that are asserted against the Assignee Parties by any person or entity (other than Assignee) if the claim, demand, action or cause of action directly or indirectly relates to the acts and/or omissions of Assignor or any officer, director or shareholder of Assignor, or relates to the Axos Loan Documents or the Axos Lien; (b) any administrative or investigative proceeding by any governmental authority directly or indirectly related to a claim, demand, action or cause of action described in clause (a) above; and (c) any and all liabilities, losses, costs and expenses (including attorneys' fees, any disbursements and other professional services) that the Assignee Parties suffer or incur as a result of the assertion of any of the foregoing. The Assignee Parties are authorized to employ counsel of their own choosing in enforcing their rights hereunder and in defending against any claim, demand, action, cause of action or administrative or investigative proceeding covered by this section. All amounts covered under this indemnity shall be due and payable to the Assignee Parties from Assignor immediately upon demand by the Assignee Parties. Any obligation or liability of Assignor to the Assignee Parties under this section shall survive the Closing and the expiration or termination of this Assignment and the repayment of the Loan. Upon delivery by Assignor to Assignee of evidence satisfactory to Assignee in its reasonable discretion that the Axos Lien has been released and the Axos Loan Documents terminated, all prior indemnity agreements by and between the parties and/or their affiliates, including, without limitation, that certain Indemnification Agreement dated as of January 24, 2020 by and between Madison Realty Capital Debt Fund IV LP and Assignee, are hereby merged with and into, and are expressly superseded by, this section, except for any express indemnification provisions in the Participation Agreement. Notwithstanding anything to the contrary, the Fund Indemnity is terminated.

10 Assignee's Closing Obligations. On or before the Closing Date, Assignee shall deliver by wire transfer to Assignor, and Assignor shall receive, in cleared funds, the Purchase Price less a credit equal to the principal amount of the GHCP Participation Interest, as defined in the Participation Agreement.

11. Assignor's Closing Obligations. On or before the Closing Date, Assignor shall deliver to Assignee, and Assignee shall receive, the following:

a. The Loan Documents;

b. The original Note described in Schedule 1 hereto;
c. An allonge, indorsing the Note to pay to the order of Assignee;
d. An assignment of the Deed of Trust and Assignment of Leases and Rents described in Schedule 1 hereto in favor of Assignee;
e. Evidence satisfactory to Assignee that Assignor has taken all necessary steps and has full authority to release the Axos Lien in its entirety; and
f. UCC-3 amendments, assigning the UCC-1 financing statements described in Schedule 1 hereto to Assignee.

12. Participation Termination. Upon Closing, the Participation Agreement, as amended, shall be deemed terminated in its entirety, and neither party shall have any further obligations, duties or liabilities thereunder, provided that this shall not serve to invalidate or terminate the indemnification obligations set forth in Section 14 of the Participation Agreement.

13. Entire Agreement. This Assignment constitutes the parties' entire agreement with respect to the transaction contemplated herein.

14. Counterparts. This Assignment may be executed in counterparts, all of which taken together shall constitute this Assignment. A scanned or electronic copy of signatures shall be deemed originals for all purposes.

15. Governing Law. This Assignment and the rights and obligations of the parties hereto shall be construed in accordance with and be governed by the laws of the State of New York.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

[SIGNATURE PAGE(S) TO FOLLOW]

IN WITNESS WHEREOF, the parties hereto have executed this Assignment as of the date first above written.

**ASSIGNOR:**

**2999 TURTLE CREEK LLC**

By: ______________________
Name: Joshua Zegen
Title: Authorized Signatory

**ASSIGNEE:**

**HNGH TURTLE CREEK, LLC**

By: ______________________
Name:
Title:

IN WITNESS WHEREOF, the parties hereto have executed this Assignment as of the date first above written.

**ASSIGNOR**:

**2999 TURTLE CREEK LLC**

By: ___________________________
Name:
Title:

**ASSIGNEE**:

**HNGH TURTLE CREEK, LLC**,
a Delaware limited liability company

By: HN Capital Partners, L.L.C.,
a Delaware limited liability company,
its Manager

By:______________________________
Vipin Nambiar, Managing Member

## SCHEDULE 1

## LIST OF LOAN DOCUMENTS

1. Secured Promissory Note
2. Deed of Trust, Security Agreement and Fixture Filing
3. Assignment of Leases and Rents
4. Guaranty
5. Prepaid Interest Agreement
6. Environmental Indemnity Agreement
7. UCC-1 Financing Statement (Dallas County 201900253452)
8. UCC-1 Financing Statement (DE – DE 20196596105)
9. Statement of Undertaking
10. Affidavit of Title and Other Borrower Representations
11. Affidavit of Property Management
12. Certification of Organization
13. Certification of Rent Roll
14. Designation of Agent
15. Designation of Independent Manager Agreement
16. Consent
17. Opinion Letter of Jones Day (NY and TX)
18. Opinion Letter of Richards Layton & Finger (DE – Borrower)
19. Opinion Letter (Voluntary Bankruptcy Petition - Borrower)
20. Opinion Letter of Richards Layton & Finger (DE –MO 2999TC MZ, LLC)
21. Opinion Letter (Voluntary Bankruptcy Petition – MO 29999TC MZ, LLC)
22. W-9 (Borrower)
23. W-9 (Tim)
24. Patriot Act Disclosure
25. Loan Settlement Statement

**SCHEDULE 2**

**PURCHASE PRICE**

The Purchase Price under this Assignment shall be $25,784,016.54.

The below is included as an informational note only and shall not have a substantive effect on this Assignment or its interpretation.

| | |
|---|---|
| **A-Note Payoff (paid to Assignor)** | |
| Original Loan Balance | $25,500,000 |
| Outstanding Interest | $284,016.54 |
| **Payoff Amount** | **$25,784,016.54** |
| | |
| **GHCP Participation Payoff (roll-over equity)** | |
| Original Loan Balance | $7,000,000 |
| Tax Advance | $345,908 |
| Outstanding Nominal Interest | $654,028 |
| Default Interest | $3,256,861 |
| Default Int. on Tax Advance | $56,729 |
| Advances on Senior Loan | $1,195,100 |
| **Payoff Amount** | **$12,508,626** |