**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>2999TC ACQUISITIONS, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 21-31954-hdh |

## DECLARATION OF TIMOTHY BARTON

1. "My name is Timothy Barton. I am over the age of 18 years, of sound mind, and am competent and otherwise qualified to make this Declaration. I have personal knowledge of the matters stated herein and they are all true and correct.

2. I am the president of 2999TC Acquisitions, LLC, the debtor in the above-referenced case (the "Debtor"). During the case I have acted as the Debtor's primary decision maker and manager of operations.

3. Debtor sought to resolve its disputes with HNGH Turtle Creek, LLC ("HNGH"), Vipin Nambiar and HN Green Hollow Capital Partners, LLC pursuant to that certain Agreed Order [Doc. 64] Regarding Motion to Lift Stay [Doc. 10], Motion to Dismiss [Doc. 9], Motion for Sanctions [Doc. 15] and Motion to Enforce Stay [Doc. 14], signed by the Court December 10, 2021 (the "**Agreed Order**", constituting a "**Contracted Settlement Agreement**", and as such, and at times herein so called).

4. HNGH has failed to do all that it needs to do to satisfy its obligations under the Contractual Settlement Agreement and Agreed Order thus frustrating the Debtor's ability to perform thereunder.

**EXHIBIT "D10"**

5. HNGH's required performance is spelled out in detail in the letter sent by the Debtor's counsel to HNGH's counsel on May 30, 2022 attached hereto as **Exhibit "1"** and incorporated herein by this reference as if set forth in full for all purposes.

6. In addition, I believe that HNGH, together with its control person(s), understood to be members of one of the most prominent and powerful families in the State of Texas, and certainly the Dallas business community, have sought to and indeed interfered with the Debtor's actual and prospective contractual relations with one or more third party debt and/or equity sources, with the intent and effect of frustrating and otherwise precluding the Debtor's ability to perform thereunder; as more fully set forth herein below.

7. Despite the potential contractual breaches and interference that the Debtor contends exist, it has arranged both contractual (and prospective contractual) commitments for the necessary debt and or equity funds to source the Payoff Amount; provided that (a) HNGH delivers to the title company as escrow agent a rescission deed in form and substance so that Debtor may in turn deliver good and marketable title to the real property located at 2999 Turtle Creek Blvd. located in the City of Dallas, Texas (the "Property"), for review and approval by their respective real estate counsel prior to funding, and (b) HNGH additionally delivers to the title company as escrow agent other items customarily requested and required in commercial real estate transactions such as this in Dallas County, Texas, including but not limited to a Bills Paid Affidavit, requested and required to satisfy the title insurer and the debt and or equity sources that there have been no intervening liens or potential "gap" lien claimants, and/or (c) HNGH agrees to reasonably extend (or the Court order such an extension of) the Payoff Deadline to allow for time to resolve the above, and for one particular lender, namely First Guaranty Bank (whose loan committee has approved to make a loan to substantially fund the Payoff Amount) to complete its requested third party review of status of

title (*in light of the previously recorded Deed-In-Lieu recording by HNGH that is a subject of this proceeding*).

8. When recently requested for such a rescission of the Deed-In-Lieu instrument, that is the subject hereof, HNGH, by and through counsel, finally agreed to provide a form of deed that is at least somewhat more consistent with the terms of the Agreed Order, and applicable state law. However, HNGH, has to date refused to extend the Payoff Date to provide the time now needed to complete review of the revised form, additional time made necessary in part by (i) HNGH's failure to make the required deliveries in advance, (ii) HNGH's potential breach of the Agreed Order, and (iii) HNGH's potential interference.

9. Attached as **Exhibit "2"** is a copy of the Term Sheet as approved by First Guaranty Bank. The loan officer of First Guaranty Bank recently had a discussion with HNGH, by and through counsel, in which such loan officer confirmed his bank's commitment to make the loan, and its need for additional time to complete its third party review of title (which based on Exhibit "1" is a mess, due in part to the filing of the contested Deed-In-Lieu) to which HNGH responded, that it would only allow additional time if the Court were to order such. HNGH's counsel also told the bank officer that the Debtor and its representatives were bad actors which did not help facilitate the closing of the deal or the obtaining of a loan.

10. Exhibit "1" describes the additional items to be delivered by HNGH to the title company as escrow agent as customarily requested and required in commercial real estate transactions such as this in Dallas County, Texas (the "HNGH Deliverables"), including but not limited to the above referenced Bills Paid Affidavit, as well as other instruments typically required by the title insurer in order to satisfy the title insurer that all Schedule C Requirements are satisfied, as a condition precedent to the issuance of clear and marketable title to the purchaser, and further

to confirm the requisite authority of the parties executing the instrument(s) in satisfaction of the Requirements, and the closing documents generally. In response thereto, HNGH, by and through counsel, has requested that such Deliverables be limited to those it believes are necessary to close this transaction. The parties agreed to work together to facilitate a payoff to HNGH through the vehicle of a new loan.

11. HNGH's prior failure to deliver a rescission of the Deed-In-Lieu in conformity with the Agreed Order has caused the desired Closing to be delayed.

12. HNGH's failure to deliver any one or more of the HNGH Deliverables to the title company as escrow agent as customarily requested and required in commercial real estate transactions such as this in Dallas County, Texas, has caused the desired Closing to be delayed.

13. HNGH's failure to deliver a release of a certain Collateral Transfer of Note and Lien by HNGH to Happy State Bank, in form reasonably requested by Debtor, has caused and is continuing to cause the desired Closing to be delayed.

14. Furthermore, as part of an earlier attempt to resolve the disputes herein, HNGH agreed to dismiss a pending state court action brought against me as one of the principals of the Debtor. To date that dismissal has not yet been filed by HNGH, in contravention of such earlier agreement, and moreover, with the evident intent and effect of further delaying or precluding the Debtor from sourcing the Payoff Amount and performing its obligations under the Agreed Order, as the mere pendency of such suit constitutes a cloud over me and my ability to source the anticipated debt and or equity funds; which failure by HNGH has caused the desired Closing to be delayed.

15. I and the Debtor believe that HNGH has on one or more occasions made false and otherwise actionable statements to third parties, which with whom Debtor had actual and

prospective contractual relations so as to source the necessary third party debt and/or equity, with the intent and/or effect of frustrating and otherwise precluding Debtor's ability to perform, including lender(s) who are now or were at one time committed to advance a substantial amount of debt and/or equity funds in order to effectuate the Payoff Event respecting the Property, and investor(s) who are now or were at one time committed to advance a substantial portion of the equity necessary to effectuate the Payoff Event respecting the Property.

16. Those statements have at times included that the Debtor and associated principals have made false statements to them, are not trustworthy, cannot and will not perform their contractual obligations, are not credit-worthy, will fail with respect to the Property, that such person should not do business with the Debtor and related persons, but rather simply wait until HNGH and related persons have taken title to the Property and then, instead do business with HNGH respecting the Property, and other statements each of which made with the intent to interfere with such recipient's actual and or prospective contractual relations with Debtor, and each with the intent and/or effect of frustrating and otherwise precluding Debtor's ability to perform, and each without legal excuse or justification.

17. But for such statements, the Debtor would be in a position to more fully perform its obligations under the Agreed Order. More particularly, the Debtor has or had an actual contractual relationship and/or a reasonable probability that i\t would have entered into a business relationship, which was interfered with by unlawful acts by HNGH such that prevented the relationship from occurring; and the Debtor has suffered actual harm or damages as a result of HNGH's conduct.

I declare under penalty of perjury that the statements contained herein are within my personal knowledge and are true and correct."

Timothy Barton

**JOYCE W. LINDAUER ATTORNEY, PLLC**
Attorney & Mediator
1412 Main Street, Suite 500
Dallas, Texas 75202
Email: joyce@joycelindauer.com

Telephone No. (972) 503-4033
Facsimile No. (972) 503-4034

May 30, 2022

Via Email
To John Kane

**Re: File 2201814-VVJA 2999 Turtle Creek Blvd, Dallas, TX Closing Documents**

John, please confirm the following matters to ensure that title to the Property is clear, and particularly, not encumbered by any of the filings by the lender parties, and as such must be delivered or caused to be delivered by your client, HNGH (and in some instances, possibly third parties):

**1.0 <u>THE RECISSION OF DEED (fka SWD)</u>**

1.1 Rescission of Deed

1.2 In connection with the above, a standard form Bills Paid and Parties in Possession Affidavit of HNGH.

**2.0 <u>THE DEED OF TRUST</u>**

2.1 Release of the Deed of Trust, by HNGH;

a. Deed of Trust, Security Agreement and Fixture Filing dated as of September 20, 2019, by MO 2999TC, LLC in favor of Michael B. Massey, as Trustee for the benefit of 2999 Turtle Creek LLC, recorded in the Office of the County Clerk for the County of Dallas, State of Texas, on September 23, 2019 as Instrument No. 201900253450 as assigned to HNGH Turtle Creek, LLC by 2999 Turtle Creek LLC under the Assignment of Deed of Trust and Assignment of Leases and Rents recorded on December 8, 2020 under instrument number 202000341904.

2.2 Related to the immediately above, a Release of the prior collateral assignment of the Note and Deed of Trust and all Loan Documents fbo of Axos, to be signed by Axos, and other confirmation that Axos has no legal or equitable interest in the Note and Deed of Trust or other Loan Documents that were collaterally assigned (including Assignment of Leases and Rents);



**EXHIBIT "1"**

2.3 Release of the prior collateral assignment of the Note, Deed of Trust, and Assignment of Leases and Rents (3 documents) fbo of Happy State Bank, to be signed by Happy State Bank, and other confirmation that Happy State Bank has no legal or equitable interest in the Note and Deed of Trust;

2.4 Release of Assignment of Leases and Rents dated as of September 20, 2019, by MO 2999TC, LUC for the benefit of 2999 Turtle Creek LLC, recorded in the Office of the County Clerk for the County of Dallas, State of Texas, on September 23, 2019 as Instrument No. 201900253451 as assigned to HNGH Turtle Creek, LLC by 2999 Turtle Creek LLC under the Assignment of Deed of Trust and Assignment of Leases and Rents recorded on December 8, 2020 under instrument number 202000341904.

2.5 Release of prepaid interest agreement to Madison (and release by HNGH if it was assigned).

3.0 **UCC FILING(S)**

3.1 Release of the UCC, by HNGH (county and state)

3.2 Related to the immediately above, a Release of the prior assignment of the UCC fbo of Axos, to be signed by Axos, and other confirmation that Axos has no legal or equitable interest in the UCC filing;

3.3 Termination of Loan participation agreement, executed by each of the parties thereto, and or other confirmation that the Loan participation agreement has been terminated, and is no longer of any force or effect

3.4 Release of whatever agreement Axos signed to permit the participation agreement (See excerpt from an email during negotiations between Madison and HNGH at the end)

3.5 Release of the prior collateral assignment of the UCC fbo of Happy State Bank, to be signed by Happy State Bank, and other confirmation that Happy State Bank has no legal or equitable interest in the UCC filing;

4.0 **NOTE**

4.1 The original Note, marked paid in full; delivered to title company to make sure original is provided. .

5.0 **AUTHORITY OF LENDER ENTITIES**

5.1 In connection with the above, Secretary or other Officer Certificate of HNGH, including copies of the governing documents of HNGH, and including consent resolutions of the director and or managers, and the consent of the shareholders and or members, to the execution and delivery of each of the above referenced closing documents,

5.2 Ratification of all prior acts and Consent of HN Green Hollow Capital Partners executed by Jim Glasgow who is the manager – he is the one that executed the participation agreement, so anything related to that agreement needs to especially come from him in addition to HN Capital Partners, LLC.

5.3 In connection with the above, Secretary or other Officer Certificate of Axos, including copies of the governing documents of Axos, and including consent resolutions of the director and or managers, and the consent of the shareholders and or members, to the execution and delivery of the Axos documents;

5.4 In connection with the above, Secretary or other Officer Certificate of Happy State Bank, including copies of the governing documents of Happy State Bank, and including consent resolutions of the director and or managers, and the consent of the shareholders and or members, to the execution and delivery of each of the above referenced closing documents executed by HSB; together with confirmation, together with confirmation that Happy State Bank (a) is and remains the holder of the collateral assignment from HNGH and that Happy State Bank has not further sold or encumbered the collateral itself, which they apparently had the right to do under the Collateral Assignment), and (b) authorized and consented to and or ratified HNGH's execution and delivery of the Order, as well as the Rescission of Deed.

5.5 Everything executed by HNGH should be executed by HN Green Hollow as the sole member or otherwise consented to by sole member and not just executed by Vipin

5.6 Need assurance Madison assigned the guaranties to HNGH as they asserted.

5.7 Also, HNGH was intervenor in the guaranty case so Madison is still a party - both will have to dismiss w prejudice.

5.8 Check if Madison assigned all the loan docs to HNGH not just the recorded documents.

5.9 Look at the collateral assignment to HSB to be sure HNGH even had the authority to do what they did including agreeing to the BK order.

## 6.0 LITIGATION AND MATTERS

6.1 Dismissal of the Guaranty litigation, with prejudice provided to the Guarantor

## 7.0 GENERALLY

7.1 Sequencing Agreement, and or Joint Closing Instructions, respecting the effect and timing each of the above instruments, to be signed by HNGH, Debtor (Seller), and purchaser, either directly or by and through counsel.

7.2 If any potential lenders/investors on our side are exposed or names are released, John Kane to sign agreement that neither he nor HNGH have communicated with them.

John, please specifically confirm which of the above items have already been delivered to the Title Company (and provide me with copies of such please for review), and when the balance of the items will be delivered, in advance of the closing.

Thank you.

Joyce Lindauer

Cc: Client

FIRST GUARANTY BANK Member FDIC

HOME OF FANATICAL BANKING

# COMMITMENT LETTER

TO: Enoch Investments, LLC
c/o Randy Marx, Esq
The Marx Firm, LLC
2999 Turtle Creek Blvd.
Dallas, Texas 75219
randy@themarxfirm.com.

The foregoing Commitment represents the representation of First Guaranty Bank that it has committed to lend on the following terms:

| | |
|---|---|
| Borrower: | Enoch Investments LLC |
| Guarantors: | The TLB 2012 Irrevocable Trust Dated March 16, 2012; Timothy Lynch Barton; Maximilien Enoch Barton; D4FR LLC; D4DDS LLC; D4IN LLC; D4OP LLC |
| Purpose: | Loan to Purchase 2.473 Acres of Land and Office Building located at 2999 Turtle Creek Blvd, Dallas, TX 75219 |
| Loan Amount: | $33,840,000 |
| Collateral: | Perfected First Lien on approx. 2.473 acres of land and improvements at 2999 Turtle Creek Blvd, Dallas, TX 75219 |

**Terms for Commercial Real Estate Loan:**

| | |
|---|---|
| Rate: | Variable Rate using Wall Street Journal Prime Rate Currently at 4.00% + 1% Margin and the rate is floating daily; Floor Rate of 5% |
| Amortization: | 6 months IO followed by 240 Months P&I amortized |
| Repayment term: | 6 Months Interest Only Payments. 240 Months Principal and Interest Payments after initial Interest Only Period. Monthly Escrow of Taxes and Insurance |
| Fees: | 1% Origination Cash at closing; 2% Origination Fee if financed; $350 Document Fee |
| Prepayment: | 3% Prepayment Penalty |



EXHIBIT "2"

**Closing Checklist:**

| | |
|---|---|
| Pre Closing: | Verification of Funds used for Equity Injection |
| | Satisfactory receipt of documentation showing that any outstanding liens and d judgements reported on background check for Timothy Barton have been cleared/released |
| | Signed and Dated Personal Financial Statement for Guarantor(s) |
| | Attorney Review of Borrower Ownership Structure, including authority, Trust powers, Trustee Duties, and Relationship to the Borrowing Entity |
| | Full Title Exam on Building and Land; Third Party Attorney Review of Transaction |
| Recurring Covenants: | Quarterly Company Prepared Financial Statements for Enoch Investments LLC to be provided to FGB |
| | Audited Annual Financial Statements for Enoch Investments LLC to be provided to FGB |
| Estimated Closing Date: | The estimated date of closing is 10 (ten) business days from the Acknowledgement Date of this Commitment, subject to any additional time identified in order to obtain good title, insurance, legal review, or other common and ordinary needs identified by First Guaranty Bank to complete closing. |

[[[[REST OF THIS PAGE INTENTIONALLY BLANK]]]]

## *SIGNATURE PAGE*

**FIRST GUARANTY BANK**

BY: /s/ Jordan Montgomery Lewis___

Its: _Texas Area President_________

_Jordan Montgomery Lewis__________

BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS COMMITMENT. BORROWER ACCEPTS AND AGREES TO THE TERMS OF THE COMMITMENT AS OF ____5/27/22____________________.

**BORROWER**: Enoch Investments LLC

By: ________________________ (Signature)

Its: ________________________ (Title)

________________________ (Printed Name)

Date: ________________________