**Fill in this information to identify the case:**

Debtor 1: 2999TC Acquisitions, LLC

Debtor 2 (Spouse, if filing): ______

United States Bankruptcy Court for the: Northern District of Texas

Case number: 21-31954-HDH-11

Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1: Identify the Claim

**1. Who is the current creditor?**

HNGH Turtle Creek, LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor ______

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? ______

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Name: John J. Kane, Kane Russell Coleman Logan P | Name: |
| Number Street: 901 Main Street, Suite 5200 | Number Street: |
| City: Dallas State: TX ZIP Code: 75202 | City: State: ZIP Code: |
| Contact phone: 214-777-4200 | Contact phone: |
| Contact email: jkane@krcl.com | Contact email: |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) ______ Filed on ______ MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? ______



**EXHIBIT "D17"**

**Part 2: Give Information About the Claim as of the Date the Case Was Filed**

**6. Do you have any number you use to identify the debtor?**

☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

**7. How much is the claim?**

$ 45,939,456.00. **Does this amount include interest or other charges?**

☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

See Attached Summary

**9. Is all or part of the claim secured?**

☐ No
☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☑ Other. Describe: 2999 Turtle Creek

**Basis for perfection:** Deed of Trust

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $________

**Amount of the claim that is secured:** $ 45,939,456.00

**Amount of the claim that is unsecured:** $ 0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $________

**Annual Interest Rate** (when case was filed) 24.00 %

☑ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $________

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: ________

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $________ |
| ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $________ |
| ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $________ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $________ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $________ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $________ |

* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date 03/08/2022
MM / DD / YYYY

Signature

**Print the name of the person who is completing and signing this claim:**

Name: Nate Christensen
First name / Middle name / Last name

Title: Managing Director and General Counsel

Company: HNGH Turtle Creek, LLC
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: 1807 Ross Ave Ste 440
Number Street

Dallas TX 75201
City State ZIP Code

Contact phone 214.978.6572 Email nchristensen@hncapitalpartners.com

## SUMMARY OF PROOF OF CLAIM

Debtor(s): 2999TC Acquisitions, LLC (the "**Debtor**")

Case Info: 21-31954-HDH-11

Creditor: HNGH Turtle Creek, LLC ("HN")

---

### A. HNGH Turtle Creek, LLC's Proof of Claim

1. HN files this Proof of Claim as a contingent claim. On October 29, 2021, following a maturity default by the Debtor and prior to the commencement of the Debtor's bankruptcy case, HN filed a Special Warranty Deed (the "**Deed in Lieu**") with the Dallas County Clerk to be recorded in the Dallas County Real Property Records. The Deed in Lieu was not recorded until November 1, 2021. The Debtor has commenced an adversary proceeding seeking to avoid the Deed in Lieu and to retake possession of the real property subject to the Deed in Lieu. If avoided, HN shall reinstate its Loan Documents and retain a properly perfected secured claim against the Debtor's estate in accordance with the terms and conditions of the Loan Documents referenced below.

2. HN's Claim is evidenced by that certain Affidavit of Nate Christensen and the supporting documents attached thereto.

### B. Reservation of Rights

By filing this Proof of Claim HN expressly and specifically reserves any and all of its rights to, among other things, file an amended proof of claim to seek and include additional attorneys' fees and interest that have accrued after the Petition Date as part of HN's Proof of Claim. HN further reserves the right to amend its Proof of Claim for any reason and file additional proofs of claim against the Debtor, including, without limitation, administrative expense claims under 11 U.S.C. § 503. If the Debtor or any other party objects to this Proof of Claim, HN reserves the right to produce additional documents and facts as necessary to support its claim.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 21-31954-HDH-11 |
| | § | |
| 2999TC ACQUISITIONS, LLC, | § | CHAPTER 11 |
| | § | |
| DEBTOR. | § | |
| | § | |

## AFFIDAVIT OF NATE CHRISTENSEN

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

BEFORE ME, the undersigned Notary Public, on this day personally appeared Nate Christensen, who, being by me duly sworn upon his oath, declares as follows:

1. My name is Nate Christensen. I am a resident of the State of Texas.

2. I am over twenty-one (21) years of age and have never been convicted of any felony or other crime involving moral turpitude. I am of sound mind and fully competent to make this affidavit. All of the facts contained in this affidavit are within my personal knowledge and are true and correct.

3. I am an authorized representative of and custodian of records for HNGH Turtle Creek, LLC ("HNGH"). I have been personally involved in HNGH's dealings with MO 2999 TC, LLC and 2999 Turtle Creek LLC, including but not limited to the dealings evidenced by the documents referenced below.

4. On or about September 20, 2019, MO 2999 TC, LLC (as maker) executed a Secured Promissory Note (the "Note") payable to 2999 Turtle Creek LLC (as payee). A true and correct copy of the Note is attached hereto as "**Exhibit 1**."

5. On or about September 20, 2019, MO 2999TC, LLC executed a Deed of Trust, Security Agreement and Fixture Filing ("Deed of Trust") in favor of Michael B. Massey, as Trustee for the benefit of 2999 Turtle Creek, LLC, which was recorded in the Office of the County Clerk for the County of Dallas, State of Texas, on September 23, 2019, as Instrument No. 201900253450. A true and correct copy of the Deed of Trust is attached hereto as "**Exhibit 2**."

6. On or about January 24, 2020, HNGH entered into a Participation Agreement with 2999 Turtle Creek LLC, pursuant to which HNGH acquired a participating interest in the Note. A true and correct copy of the Participation Agreement is attached hereto as "**Exhibit 3**."

7. On or about February 4, 2020, HNGH and 2999 Turtle Creek LLC entered into a First Amendment to Participation Agreement. A true and correct copy of the First Amendment to Participation Agreement is attached hereto as "**Exhibit 4**."

8. On or about December 7, 2020, HNGH acquired all of 2999 Turtle Creek LLC's interest in the Note, as well all related liens and security interests. A true and correct copy of an Allonge to the Note dated December 7, 2020, directing payment to HNGH is attached hereto as "**Exhibit 5**". A true and correct copy of an Assignment and Assumption of Assigned Rights and Obligations between 2999 Turtle Creek LLC and HNGH dated December 7, 2020, and recorded in the Office of the County Clerk for the County of Dallas, State of Texas, on December 8, 2020 as Instrument No. 202000341904, is attached hereto as "**Exhibit 6**".

9. HNGH is now the owner and holder of the Note, Deed of Trust and all related liens and security interests.

10. The documents attached hereto as Exhibit 1 – 6 are business records of HNGH. HNGH made and kept these records in the regular course of business, and it was in the regular course of business for a person with knowledge of the act, event, condition, or opinion recorded, to make the records or to transmit information thereof to be included in such records, and the records

were made at or near the time or reasonable soon thereafter of the act, event condition, or opinion recorded. The records attached are exact duplicates of the originals.

**Further affiant sayeth not.**

Nate Christensen

SUBSCRIBED AND SWORN TO BEFORE ME on this the 1st day of December, 2021.

WILLIAM C. KEISER
Notary Public, State of Texas
Comm. Expires 11-10-2024
Notary ID 132775558

Notary Public, State of Texas

Notary Public In and For the State of Texas

Print name: Will Keiser

My Commission expires: 11/10/2024

# <u>EXHIBIT 1</u>

# SECURED PROMISSORY NOTE

$32,500,000.00 Dated: As of September 20, 2019
New York, New York

**SECURED PROMISSORY NOTE** (hereinafter, this "**Note**") made as of the 20th day of September, 2019, by **MO 2999TC, LLC**, a Delaware limited liability company having an address at 13901 Midway Road, Suite 102-243, Dallas, Texas 75244 (the "**Maker**"), for the benefit of **2999 Turtle Creek LLC**, a Delaware limited liability company, its successors and/or assigns, as their interests may appear (hereinafter, the "**Payee**"), having offices at 520 Madison Avenue, Suite 3501, New York, NY 10022.

**FOR VALUE RECEIVED**, Maker promises to pay to the order of Payee, at 520 Madison Avenue, Suite 3501, New York, NY 10022, or at such other place as Payee may designate to Maker in writing from time to time, the principal sum of THIRTY-TWO MILLION FIVE HUNDRED THOUSAND AND 00/100 DOLLARS ($32,500,000.00), together with interest thereon at the Interest Rate (as defined below) (or the Default Rate, as defined below, if applicable), calculated in accordance with the terms and conditions set forth in this Note, from and including the date of this Note to the date this Note is paid in full, as follows:

A. On the date hereof (the "**Closing Date**"), interest on the principal sum of this Note from (and including) the Closing Date to September 30, 2019 at the Interest Rate.

B. Thereafter, interest only at the Interest Rate on the outstanding Principal Balance (as defined below) shall be due monthly and shall be paid monthly in arrears, commencing on November 1, 2019, and monthly thereafter on the first (1st) day of each month (the "**Payment Date**") until the Maturity Date (as defined below) (each such monthly payment, a "**Monthly Payment**").

C. Thereafter, on the Maturity Date, the entire outstanding principal balance of this Note, together with all accrued and unpaid interest through the Maturity Date at the Interest Rate, and all other sums payable to the holder of this Note (whether pursuant to this Note or the Deed of Trust or Other Security Documents (as such terms are hereinafter defined)) shall become due and payable.

1. For the purposes of this Note, these terms shall be defined as follows:

   a. The term "**Alternative Rate**" shall mean, in the event LIBOR is no longer available or charging of interest that is calculated based upon LIBOR would violate applicable law or regulation, then in Payee's sole discretion, the Alternative Rate shall be used instead of the Libor Based Rate, which shall mean either the Prime Based Rate (as hereinafter defined) or ARRC Based Rate, as hereinafter defined, in Payee's sole discretion as to whether Prime Based Rate or ARRC Based Rate shall be used.

   b. The term "**ARRC Based Rate**" shall mean the sum of (i) Ten and 00/100 Percent

(10.00%) per annum plus (ii) the ARRC Rate (as hereinafter defined).

c. The term "**ARRC Rate**" shall mean such replacement of LIBOR as may be approved by the Alternative Reference Rates Committee (ARRC) (or comparable organization) and approved and/or published by the Federal Reserve; provided, however, in no event shall the ARRC Rate be less than 2.3017%.

d. The term "**Business Day**" shall mean a weekday, Monday through Friday, except a legal holiday or a day on which banking institutions in New York, New York are authorized by law to be closed.

e. The term "**Debt**" shall mean all principal, interest and other sums of any nature whatsoever, which may or shall become due to Payee in accordance with the provisions of this Note, the Deed of Trust or Other Security Documents.

f. The term "**Deed of Trust**" shall mean that certain Deed of Trust, Security Agreement and Fixture Filing dated as of the date hereof, in the principal amount of $32,500,000.00, encumbering premises located at 2999 Turtle Creek, Dallas, Texas 75219 (the "**Property**").

g. The term "**Interest Period**" shall mean, initially, the period commencing on (and including) the Closing Date and ending on (and including) the last day of the calendar month in which the Closing Date occurs. Thereafter, each Interest Period shall commence on (and include) the first day of each calendar month immediately following the last day of the previous Interest Period and end on (and include) the last day of such calendar month.

h. The term "**Interest Rate**" as used in this Note shall mean interest at the annual rate equal to the greater of (i) Ten and 00/100 Percent (10.00%) per annum plus LIBOR (collectively, the "**LIBOR Based Rate**") (or the Alternative Rate, as applicable), and (ii) Twelve and 40/100 Percent (12.40%) per annum (the "**Fixed Base Rate**"), adjusted for each Interest Period based upon the greater of the LIBOR Based Rate (or the Alternative Rate, as applicable) and the Fixed Base Rate at 11:00 a.m. (E.S.T.) two (2) Business Days prior to the Reset Date (as defined below) applicable to such Interest Period (or the date hereof with respect to the first Interest Period hereunder), which Interest Rate shall be applicable from the date of this Note to the Maturity Date, except as otherwise expressly provided herein.

i. The term "**LIBOR**" shall mean the London Interbank Offered Rate (as defined below) for U.S. dollar deposits being delivered in the London interbank eurodollar market of one (1) month maturity (One Month LIBOR) as reported in the Money Rates Section of the Wall Street Journal (or such other commercially available source providing quotations of such London Interbank Offered Rate as may be designated by Payee from time to time) as of 11:00 a.m., E.S.T., on a Business Day (or if not so reported, then as determined by Payee from another recognized source of interbank quotation), rounded up to the nearest one-eighth of one percent (1/8%). A certificate made by an officer of Payee stating the LIBOR in effect on any given

day, for the purposes hereof, shall be conclusive evidence of the LIBOR in effect on such day. The LIBOR is a base reference rate of interest adopted by Payee as a general benchmark from which Payee determines the floating interest rates chargeable on various loans to borrowers with varying degrees of creditworthiness, and Maker acknowledges and agrees that Payee has made no representations whatsoever that the LIBOR is the interest rate actually offered by Payee to borrowers of any particular creditworthiness. For the avoidance of doubt, LIBOR shall never be less than [Two and Four-Tenths Percent (2.40%)].

j. The term "**Loan Documents**" shall mean this Note, the Deed of Trust and all and any of the documents now or hereafter executed by Maker and/or others and by or in favor of Payee, which evidences, secures or guarantees all or any portion of the payments due under this Note or otherwise is executed and/or delivered in connection with this Note, the Deed of Trust, guarantees and agreements.

k. The term "**London Interbank Offered Rate**" shall mean the London interbank offered rate administered by ICE Benchmark Administration Limited (or any other Person which takes over the administration of such rate).

l. The term "**Maturity Date**" shall mean the earlier of (i) October 1, 2020, as the same may be extended pursuan to the terms hereof, or (ii) such sooner date, by acceleration or otherwise, as may be applicable pursuant to the terms hereof, at which time the entire Debt shall become due and payable. For the avoidance of doubt, upon Maker exercising its option to extend the Maturity Date to the First Extended Term Maturity Date or the Second Extended Term Maturity Date, as applicable, pursuant to Section 7 below, all references to Maturity Date in the Loan Documents shall be deemed to mean the First Extended Term Maturity Date or the Second Extended Term Maturity Date, as applicable.

m. The term "**Other Security Documents**" shall mean any of the documents other than this Note or the Deed of Trust, now or hereafter executed by the Maker or others, and by or in favor of Payee, which wholly or partially secure or guarantee payment of this Note, or which otherwise pertain to the loan evidenced by this Note (the "**Loan**").

n. The term "**Person**" shall mean an individual, a corporation, a partnership, a limited liability company, an association, a trust or any other entity or organization, including a government or political subdivision or an agency or instrumentality thereof.

o. The term "**Prime Based Rate**" shall mean the sum of (i) Seven and 15/100 Percent (7.40%) per annum plus (ii) the Prime Rate (as hereinafter defined).

p. The term "**Prime Rate**" shall mean the annual rate of interest which is the highest prime lending rate of interest most recently in effect (as published in the Money Rates Section in The Wall Street Journal or if The Wall Street Journal fails to publish such rate, such other publication as Payee shall designate in its sole

discretion). A certificate made by an officer of Payee stating the Prime Rate in effect on any given day, for the purposes hereof, shall be conclusive evidence of the Prime Rate in effect on such day. The Prime Rate is a base reference rate of interest adopted by Payee as a general benchmark from which Payee determines the floating interest rates chargeable on various loans to borrowers with varying degrees of creditworthiness and Maker acknowledges and agrees that Payee has made no representations whatsoever that the Prime Rate is the interest rate actually offered by Payee to borrowers of any particular creditworthiness. In the event that the concept of the Prime Rate shall no longer exist, then the Prime Rate shall be deemed to be the Prime Rate as last reported in The Wall Street Journal.

q. The term **"Principal Balance"** shall mean the outstanding principal balance of this Note from time to time.

r. The term **"Reset Date"** shall mean the first day of each Interest Period.

2. Any capitalized terms used herein but not defined shall have the meanings ascribed to them in the Loan Documents or Other Security Documents.

3. Interest shall be computed on the basis of a year of 360 days and actual days elapsed.

4. The failure to make any payment required under this Note or the occurrence of any Event of Default (as such term is defined in the Loan Documents) shall constitute an Event of Default under this Note.

5. Upon the occurrence of an Event of Default: (a) interest shall accrue hereunder at the Default Rate commencing upon the occurrence of the Event of Default through the earlier of the dater (i) such Event of Default is cured as provided for herein, in the Loan Documents, or as otherwise permitted by Lender in Lender's sole discretion, and so long as no other Events of Default shall then exist, (ii) the payment of all amounts due to Lender under the Loan, (or (iii) the entry of a Judgment of Foreclosure and Sale, (b) Payee may, at its option, without any written notice given to the Maker (such notice being expressly waived), DECLARE AND DEMAND this Note and the Debt immediately due and payable and (c) Payee may pursue all rights and remedies available hereunder or under Deed of Trust and the Other Security Documents. Payee's rights, remedies and powers, as provided in this Note or the other Loan Documents are cumulative and concurrent, and may be pursued singly, successively or together against Maker, any Guarantor of the indebtedness evidenced hereby or against any collateral granted or pledged by Maker under any of the Loan Documents or any other collateral security given at any time to secure the payment hereof, all at the sole discretion of Payee. Additionally, Payee may resort to every other right or remedy available at law or in equity without first exhausting the rights and remedies contained herein, all in Payee's sole discretion. Failure of Payee, for any period of time or on more than one occasion, to DECLARE AND DEMAND this Note and the Debt immediately due and payable shall not constitute a waiver of the right to exercise the same at any time from and after any Event of Default.

6. A payment shall not be deemed to have been made on any day unless such payment has been received by Payee, at the required place of payment, in U.S. dollars by no later than 1:00 p.m.

(New York time) on such day. Whenever any payment to Payee hereunder would otherwise be due (except by reason of acceleration) on a day that is not a Business Day, such payment shall instead be due on the next succeeding Business Day. If any installment of principal, interest or other sums due hereunder or under the Deed of Trust or any Other Security Document are not paid on the date on which same are due, such payment shall be deemed late and the Maker shall pay to the Payee a late charge of ten percent (10.00%) of such unpaid installment as a late payment charge, such late charge to be immediately due and payable without demand by the Payee. Notwithstanding anything to the contrary, Monthly Payments shall be paid first from the Interest Reserve (as hereinafter defined) and all payments due under this Note, the Deed of Trust and the Loan Documents shall be made by means of wire transfer to the order of Payee, as directed by Payee, and Payee shall have the absolute right to reject any payment not made by wire transfer. In addition, Maker shall pay to Payee the sum of $1,000.00 for any payment which is returned for any reason by Maker's bank unpaid.

7. Subject to Payee's due diligence review and completion of a credit check, satisfactory to Payee in its sole discretion, and provided that: (i) this Note, the Deed of Trust and the Other Security Documents are in full force and effect and there exists no Event of Default at the time of the giving of Maker's notice to extend, (ii) Maker has made all Monthly Payments in accordance with the terms and conditions hereof, (iii) there have been no prior defaults under the Loan Documents, and (iv) Maker establishes with and funds to Payee an interest reserve (or, if one is established simultaneously herewith, then replenishes such interest reserve) for the payment of all interest to become due at the applicable Interest Rate during the applicable Extended Term, as calculated by Payee, including, without limitation, execution of all documentation reasonably required by Payee to establish such interest reserve, if applicable, then Maker shall have the option, upon providing written notice to Payee (in the manner provided in the Deed of Trust) to extend the term of this Note for two (2) consecutive periods of six (6) months each (each an "**Extended Term**", with the applicable extended maturity dates being known as the "**First Extended Term Maturity Date**" and the "**Second Extended Term Maturity Date**", if and as applicable). Maker's notice of its intention to extend the term of this Note shall not be effective unless, with respect to each Extended Term, such notice is delivered along with payment in an amount equal to One Percent (1.00%) of the sum of $32,500,000.00, regardless of the amount advanced to Maker (the "**Extension Fee**"). Maker's notice must be received by Payee no earlier than one hundred twenty (120) days prior to the initial Maturity Date (or the First Extended Term Maturity Date, if and as applicable) and no later than thirty (30) days prior to the Maturity Date (or the First Extended Term Maturity Date, if and as applicable), ***time being of the essence with respect thereto***. Any extension of the term as set forth herein shall be on the same terms and conditions of this Note, the Deed of Trust and the Other Security Documents, except as otherwise provided in this Note, the Deed of Trust and the Other Security Documents.

8. If Maker does not properly exercise the extension option extending the term of this Note until the First Extended Term Maturity Date (and the Second Extended Term Maturity Date, if and as applicable), in accordance herewith, and Maker does not otherwise pay the Debt to Payee on or before the Maturity Date (or the First Extended Term Maturity Date, if and as applicable), then Payee may elect, at its sole discretion, to extend the term of this Note until the First Extended Term Maturity Date (or the Second Extended Term Maturity Date, if and as applicable) (each, a "**Payee's Option to Extend**") by delivering written notice thereof to Maker (in the manner provided in the

Deed of Trust). If Payee elects to exercise a Payee's Option to Extend in accordance herewith, an extension fee in the amount of One and 50/100 Percent (1.50%) of the sum of $32,500,000.00, regardless of the amount actually advanced to Maker (the "**Deferred Extension Fee**") shall be earned as of the date Payee exercises each such option, but payment of a Deferred Extension Fee shall be deferred until the earlier of the (i) the First Extended Term Maturity Date (or the Second Extended Term Maturity Date, if and as applicable); (ii) the date upon which this Note is prepaid in full; or (iii) the occurrence of an Event of Default under the Loan Documents.

9. As additional consideration to Payee for the making of the Loan, Maker shall remit to Payee, due, owing and earned on the earlier of (a) the Maturity Date (subject to extension as contained herein), (b) the date of the acceleration of the Principal Balance in accordance with the Loan Documents, or (c) the date upon which this Note is prepaid in full (or in part, with such proportionate share of the Exit Fee being paid in connection therewith), **TIME BEING OF THE ESSENCE**, in addition to the entire Principal Balance then remaining unpaid, all accrued and unpaid interest, any Prepayment Premium due and owing and all others sums due and owing under the Loan Documents, the sum equal to **$325,000.00** (the "**Exit Fee**"). The Exit Fee is to be paid in accordance with the terms hereof in addition to, and separate from, any other fee, cost or sum due hereunder or under the Deed of Trust or Loan Documents, including the Prepayment Premium. Payment of the Exit Fee is an absolute obligation of the Maker, and the Exit Fee shall be paid regardless of whether the Maturity Date is as stated herein, or earlier due to acceleration of the Principal Balance by Payee in accordance with the terms hereof and regardless of the amount actually advanced under the Loan Documents; provided, however, if the Exit Fee constitutes interest under applicable law, the amount of the Exit Fee will be automatically reduced to an amount that, when added to all other amounts due hereunder and under the other Loan Documents that constitute interest under applicable law, will not exceed the maximum amount of interest that may be contracted for, charged or received with respect to the Loan under applicable law for the actual period of time such loan is outstanding. Notwithstanding the foregoing, the Exit Fee shall be waived in the event Payee makes a construction or other loan to Maker secured by the Property to replace the Loan, which construction or other loan Payee may provide in its sole and absolute discretion on terms and conditions satisfactory to Payee.

Amounts paid pursuant to the Exit Fee and the Prepayment Premium shall and are intended to be exclusive of each other, and payment of the Exit Fee and the Prepayment Premium shall not act as an offset or reduction of the other.

10. (a) Provided that Maker shall pay to Payee (in addition to the Exit Fee and such other amounts coming due under the Loan through the date of such prepayment) a prepayment premium in an amount equal to twelve (12) Monthly Payments with respect to the initial term (excluding short term interest paid for the partial month of September, 2019) which would have been due and payable to Payee absent prepayment of the obligations hereunder (with the Interest Rate used to calculate the Prepayment Premium (as defined below) being that on the date of the Prepayment Notice (as defined below), if the Interest Rate is variable hereunder), less any Monthly Payments of interest actually paid in full by Maker and received by Payee, such that Payee shall have received not less than twelve (12) full Monthly Payments hereunder (based upon the principal sum of $32,500,000, regardless of the amount actually advanced to Maker) (the "**Initial Term Prepayment Premium**"), then Maker shall have the right to prepay the Principal Balance in whole

only, along with interest, additional interest, and any other sums due under this Note, the Deed of Trust or the Other Security Documents upon prior irrevocable written notice sent by Maker (an "**Initial Term Prepayment Notice**"), setting forth the intended prepayment date ("**Initial Term Prepayment Date**"), which Initial Term Prepayment Notice must be received by Payee not more than sixty (60) days prior to the Initial Term Prepayment Date and not less than thirty (30) days prior to the Initial Term Prepayment Date and on the Initial Term Prepayment Date, Maker shall make prepayment as herein above provided, failure of which to timely prepay shall result in a $1,000 prepayment cancellation fee to compensate Payee for expenses associated with Maker's failure to comply with its request and is not a penalty. Notwithstanding anything to the contrary contained herein, unless prepayment is tendered on the first day of a calendar month and unless Maker has tendered the Monthly Payment for the month in which the prepayment of the Debt occurs, Maker shall along with the prepayment of the Debt pay the entire Monthly Payment due for the month in which the Initial Term Prepayment Date occurs (which amount shall constitute additional consideration for the prepayment).

(b) Notwithstanding anything to the contrary contained herein, if Maker elects to exercise its option to extend the term of this Note in accordance herewith (or if Payee exercises Payee's Option to Extend), simultaneously with any prepayment of the Debt during the Extended Term, in addition to the Initial Term Prepayment Premium, Maker shall also pay to Payee an additional prepayment premium in an amount equal to six (6) Monthly Payments (based upon the principal sum of $32,500,000, regardless of the amount actually advanced to Maker) which would have been due and payable to Payee during and on account of the Extended Term, absent prepayment of the obligations hereunder (with the Interest Rate used to calculate the Extended Term Prepayment Premium being that on the date of the Extended Term Prepayment Notice, if the Interest Rate is variable hereunder), less any Monthly Payments of interest actually paid in full by Maker and received by Payee during and on account of the Extended Term, such that Payee shall have received not less than six (6) full Monthly Payments hereunder (based upon the principal sum of $32,500,000, regardless of the amount actually advanced to Maker) during and on account of the Extended Term (the "**Extended Term Prepayment Premium**" and together with the Initial Term Prepayment Premium, hereinafter referred to, collectively, as the "**Prepayment Premium**"), then Maker shall have the right to prepay the Principal Balance in whole only, along with interest, additional interest, and any other sums due under this Note, the Deed of Trust or the Other Security Documents upon prior irrevocable written notice sent by Maker (an "**Extended Term Prepayment Notice**" and together with the Initial Term Prepayment Notice, hereinafter referred to, collectively, as the "**Prepayment Notice**"), setting forth the intended prepayment date ("**Extended Term Prepayment Date**" and together with the Initial Term Prepayment Date, hereinafter referred to, collectively, as the "**Prepayment Date**"), which Extended Term Prepayment Notice must be received by Payee not more than sixty (60) days prior to the Extended Term Prepayment Date and not less than thirty (30) days prior to the Extended Term Prepayment Date and on the Extended Term Prepayment Date, Maker shall make prepayment as herein above provided, failure of which to timely prepay shall result in a $1,000 prepayment cancellation fee to compensate Payee for expenses associated with Maker's failure to comply with its request and is not a penalty

**(C) SUCH PREPAYMENT PREMIUM SHALL BE PAID WHETHER THE PREPAYMENT IS VOLUNTARY OR INVOLUNTARY, INCLUDING ANY**

**PREPAYMENT AFFECTED BY THE ACCELERATION PROVISIONS CONTAINED IN THE NOTE OR THE OTHER LOAN DOCUMENTS. UPON ACCELERATION, THE PREPAYMENT PREMIUM SHALL BE CALCULATED BASED UPON THE AMOUNT OF THE PREPAYMENT DUE ON THE DATE OF SUCH ACCELERATION; PROVIDED, HOWEVER, IF SUCH PREPAYMENT PREMIUM CONSTITUTES INTEREST UNDER APPLICABLE LAW, THE AMOUNT OF SUCH PREPAYMENT PREMIUM WILL BE REDUCED TO AN AMOUNT WHICH, WHEN ADDED TO ALL OTHER AMOUNTS WHICH CONSTITUTE INTEREST UNDER APPLICABLE LAW, WILL NOT EXCEED THE MAXIMUM AMOUNT OF INTEREST WHICH MAY BE CONTRACTED FOR, CHARGED OR RECEIVED WITH RESPECT TO THE LOAN EVIDENCED HEREBY UNDER APPLICABLE LAW FOR THE ACTUAL PERIOD OF TIME THE LOAN IS OUTSTANDING.**

11. Intentionally omitted.

12. Separate and in addition to all other payment obligations of Maker contained herein, Maker shall be required to pay a yearly servicing fee equal to ten (10) basis points per annum on the maximum Principal Balance of this Note (whether advanced or yet to be advanced) payable in monthly installments (the "**Servicing Fee**"). The Servicing Fee shall increase to twenty-five (25) basis points after the occurrence of an Event of Default. The Maker acknowledges and agrees that a Servicing Fee shall be due on the date hereof (which shall prepay the first yearly Servicing Fee), and the obligation to pay the Servicing Fee shall be secured by the Deed of Trust.

13. Maker acknowledges that this Note and Maker's obligations under this Note are and shall at all times continue to be absolute and unconditional in all respects. This Note, the Deed of Trust and the Other Security Documents set forth the entire agreement and understanding of Payee and Maker.

14. Maker agrees to pay all costs and expenses of collection incurred by Payee, in addition to principal and interest (including, without limitation, reasonable attorneys' fees and disbursements), and including all costs and expenses incurred in connection with the pursuit by Payee of any of its rights or remedies hereunder or under the Deed of Trust and/or the Other Security Documents or the protection of or realization of collateral or in connection with any of Payee's collection efforts, whether or not any action or proceeding on this Note, on the Deed of Trust and/or the Other Security Documents or any foreclosure proceeding is filed, all such costs and expenses being payable on demand, together with interest at the Default Rate thereon and being secured by the Deed of Trust and the Other Security Documents.

15. The indebtedness herein evidenced by this Note is secured by the Deed of Trust and the Other Security Documents.

16. THIS NOTE HAS BEEN EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF NEW YORK AND, EXCEPT AS OTHERWISE PROVIDED IN HEREIN, THIS NOTE, THE DEED OF TRUST AND EACH OF THE OTHER SECURITY DOCUMENTS SHALL IN ALL RESPECTS BE GOVERNED, CONSTRUED, APPLIED AND ENFORCED IN ACCORDANCE WITH THE INTERNAL

LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW (OTHER THAN SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW).

NOTWITHSTANDING THE FOREGOING CHOICE OF LAW:

(i) THE PROCEDURES GOVERNING THE ENFORCEMENT BY PAYEE OF ITS FORECLOSURE AND OTHER REMEDIES AGAINST MAKER UNDER THE DEED OF TRUST AND UNDER THE OTHER SECURITY DOCUMENTS WITH RESPECT TO THE PREMISES (AS SUCH TERM IS DEFINED IN THE DEED OF TRUST) OR OTHER ASSETS SITUATED IN THE STATE OF TEXAS, INCLUDING BY WAY OF ILLUSTRATION, BUT NOT IN LIMITATION, ACTIONS FOR FORECLOSURE, FOR INJUNCTIVE RELIEF OR FOR THE APPOINTMENT OF A RECEIVER SHALL BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS;

(ii) PAYEE SHALL COMPLY WITH APPLICABLE LAW IN THE STATE OF TEXAS TO THE EXTENT REQUIRED BY THE LAW OF SUCH JURISDICTION IN CONNECTION WITH THE FORECLOSURE OF THE SECURITY INTERESTS AND LIENS CREATED UNDER THE DEED OF TRUST AND THE OTHER SECURITY DOCUMENTS WITH RESPECT TO THE PREMISES OR OTHER ASSETS SITUATED IN THE STATE OF TEXAS;

(iii) PROVISIONS OF FEDERAL LAW AND THE LAW OF THE STATE OF TEXAS SHALL APPLY IN DEFINING THE TERMS HAZARDOUS SUBSTANCES AND ENVIRONMENTAL LAWS (AS SUCH TERMS ARE DEFINED IN THE OTHER SECURITY DOCUMENTS) APPLICABLE TO THE PREMISES; AND

(iv) THE PERFECTION AND PRIORITY OF THIS NOTE SHALL BE GOVERNEED BY THE LAWS OF THE STATE OF TEXAS.

NOTHING CONTAINED HEREIN OR ANY OTHER PROVISIONS OF THE DEED OF TRUST OR OTHER SECURITY DOCUMENTS SHALL BE CONSTRUED TO PROVIDE THAT THE SUBSTANTIVE LAWS OF THE STATE OF TEXAS SHALL APPLY TO ANY PARTIES, RIGHTS AND OBLIGATIONS UNDER THIS NOTE, THE DEED OF TRUST OR THE OTHER SECURITY DOCUMENTS, WHICH, EXCEPT AS EXPRESSLY PROVIDED IN CLAUSES (i), (ii) AND (iii) ABOVE, ARE AND SHALL CONTINUE TO BE GOVERNED BY THE SUBSTANTIVE LAW OF THE STATE OF TEXAS, EXCEPT AS SET FORTH IN CLAUSES (i), (ii) AND (iii) ABOVE. IN ADDITION, THE FACT THAT PORTIONS OF THIS NOTE, THE DEED OF TRUST AND THE OTHER SECURITY DOCUMENTS MAY INCLUDE PROVISIONS DRAFTED TO CONFORM TO THE LAW OF THE STATE OF TEXAS IT IS NOT INTENDED, NOR SHALL IT BE DEEMED, IN ANY WAY, TO DEROGATE THE PARTIES' CHOICE OF LAW AS SET FORTH OR REFERRED TO IN THIS NOTE, THE DEED OF TRUST OR IN THE OTHER SECURITY DOCUMENTS. THE PARTIES FURTHER AGREE THAT THE PAYEE MAY ENFORCE ITS RIGHTS UNDER THIS NOTE, THE DEED OF TRUST AND THE OTHER SECURITY DOCUMENTS INCLUDING, BUT NOT LIMITED TO, ITS RIGHTS TO SUE THE MAKER OR TO COLLECT ANY OUTSTANDING INDEBTEDNESS IN ACCORDANCE WITH

APPLICABLE LAW.

17. Maker does hereby agree that upon the occurrence of an Event of Default, which includes, without limitation, the failure of Maker to pay the Debt in full on the Maturity Date, Payee shall be entitled to receive and Maker shall pay interest on the entire Debt at the rate of twenty-four percent (24%) per annum or at the maximum rate of interest which Maker may by law pay, whichever is lower (the "**Default Rate**"), to be computed from the occurrence of the Event of Default until the actual receipt and collection of the Debt, including all periods prior to or subsequent to the entry of a Judgment of Foreclosure and Sale. This charge shall be added to the Debt, and shall be deemed secured by the Deed of Trust. This clause, however, shall not be construed as an agreement or privilege to extend the date of the payment of the Debt, nor as a waiver of any other right or remedy accruing to Payee by reason of the occurrence of any Event of Default.

18. This Note is subject to the express condition that at no time shall Maker be obligated or required to pay interest on the Principal Balance at a rate which could subject Payee to either civil or criminal liability as a result of being in excess of the maximum rate which Maker is permitted by law to contract or agree to pay. For the purposes of calculating the actual amount of interest paid and or payable, in respect of laws pertaining to usury or such other laws, all sums paid or agreed to be paid to Payee for the use, forbearance or detention of the indebtedness evidenced hereby shall, to the extent permitted by applicable law, be amortized, allocated and spread from the date of disbursement of the proceeds thereof until payment in full of the Loan obligations, so that the actual rate of interest on account thereof is uniform throughout the term hereof. If, by the terms of this Note, Maker is at any time required or obligated to pay interest on the Principal Balance at a rate in excess of such maximum rate, the rate of interest under this Note shall be deemed to be immediately reduced to such maximum rate, and interest payable hereunder shall be computed at such maximum rate and the portion of all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of the Principal Balance.

19. In the event LIBOR is no longer available or charging of interest that is calculated based upon LIBOR would violated applicable law or regulation, then in Payee's sole discretion, the Alternative Rate shall replace the LIBOR Based Rate, which Alternative Rate shall mean either the Prime Based Rate or the ARRC Based Rate (in Payee's sole discretion as to whether the Prime Based Rate or the ARRC Based Rate shall be used.

20. No delay on the part of Payee in exercising any right or remedy under this Note, the Deed of Trust or the Other Security Documents or failure to exercise the same shall operate as a waiver in whole or in part of any such right or remedy. No notice to or demand on Maker shall be deemed to be a waiver of the obligation of Maker or of the right of Payee to take further action without further notice or demand as provided in this Note, the Deed of Trust and the Other Security Documents.

21. Each of Payee's rights and remedies under this Note shall be in addition to all of its other rights and remedies under the Deed of Trust, Other Security Documents and applicable law.

22. **TIME IS OF THE ESSENCE** with regard to Maker's performance of all the terms,

covenants and conditions of this Note.

23. Any provision of this Note, the Deed of Trust or the Other Security Documents that is prohibited or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof or affecting the validity or enforceability of such provision.

24. All of the provisions of this Note shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

25. Maker hereby warrants, represents and covenants that no funds disbursed hereunder shall be used for personal family or household purposes.

26. Maker (and the undersigned representative of Maker, if any) represents that Maker has full power, authority and legal right to execute and deliver this Note and that the Debt hereunder constitutes a valid and binding obligation of Maker.

27. All notices to be given under this Note shall be given in the same manner as provided in the Deed of Trust.

28. This Note, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Maker or Payee, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

29. Without limiting any other provisions of the Deed of Trust or the Loan Documents, Maker, for itself and all endorsers, guarantors and sureties of this Note, and their heirs, legal representatives, successors and assigns, hereby waives valuation, appraisement, presentment for payment, demand, notice of nonpayment, notice of dishonor, protest of any dishonor, notice of protest and protest of this Note, lack of diligence, delays in collection or enforcement of this Note, notice of the intention to accelerate, the benefit of all applicable law affording any right or redemption or cure and all other notices in connection with the delivery, acceptance, performance, default or enforcement of the payment of this Note, except as expressly provided herein or in the Deed of Trust or any of the Other Security Documents, and in connection with any suit, action or proceeding brought by Payee on this Note, any and every right it may have to (a) a trial by jury, (b) interpose any counterclaim therein (other than a counterclaim which can only be asserted in a suit, action or proceeding brought by Payee on this Note and cannot be maintained in a separate action), and (c) have the same consolidated with any other or separate suit, action or proceeding, and agrees that their respective liability shall be unconditional and without regard to the liability of any other party and shall not be in any manner affected by any indulgence, extension of time, renewal, waiver or modification granted or consented to by Payee. Maker, for itself and all endorsers, guarantors and sureties of this Note, and their heirs, legal representatives, successors and assigns, hereby consents to every extension of time, renewal, waiver or modification that may be granted by Payee with respect to the payment or other provisions of this Note, and to the release of any makers, endorsers, guarantors or sureties, and their heirs, legal representatives, successors and assigns, and of any collateral given to secure the payment hereof, or any part hereof, with or without substitution, and agrees that additional makers, endorsers, guarantors or sureties and their

heirs, legal representatives, successors and assigns, may become parties hereto without notice to Maker or to any endorser, guarantor or surety and without affecting the liability of any of them.

30. FOR ANY CLAIM, ACTION, OR DISPUTE ARISING UNDER, OR TO INTERPRET OR APPLY, THIS NOTE OR ANY OTHER SECURITY DOCUMENT, OR TO RESOLVE ANY DISPUTE ARISING UNDER THE FOREGOING OR THE RELATIONSHIP BETWEEN THE PARTIES, MAKER IRREVOCABLY SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK AND THE UNITED STATES DISTRICT COURT LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK CITY, NEW YORK, AND APPELLATE COURTS FROM ANY OF SUCH COURTS. MAKER IRREVOCABLY WAIVES ANY OBJECTION THAT IT MAY HAVE AT ANY TIME TO VENUE OF ANY SUCH SUIT, ACTION, OR PROCEEDING BROUGHT IN ANY SUCH COURT, INCLUDING ANY CLAIM THAT ANY SUCH SUIT, ACTION, OR PROCEEDING SO BROUGHT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. NOTHING IN THE DEED OF TRUST OR OTHER SECURITY DOCUMENTS SHALL BE DEEMED TO PRECLUDE PAYEE FROM BRINGING ANY SUIT, ACTION, OR PROCEEDING RELATING TO ANY OTHER SECURITY DOCUMENT OR THE DEBT IN ANY OTHER JURISDICTION WHERE PAYEE COULD OTHERWISE PROPERLY BRING SUCH SUIT, ACTION, OR PROCEEDING. MAKER FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO MAKER AT THE ADDRESS SET FORTH ON PAGE 1 HEREOF, AND CONSENTS AND AGREES THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHALL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).

31. To the extent applicable, in an action commenced in the Commercial Division, New York State Supreme Court, the parties hereby agree, subject to the requirements for a case to be heard in the Commercial Division, to apply the Court's accelerated adjudication procedures set forth in Rule 9 of the Rules of Practice for the Commercial Division, in connection with any dispute, claim or controversy arising out of or relating to this Note or any of the Loan Documents, or the breach, termination, enforcement or validity thereof.

32. The parties intend that each of the Makers (if more than one) shall be fully liable, jointly and severally, for all of the Debt. Nonetheless, in case a court finds that any Maker is not such a primary obligor with respect to all or any part of such obligations, the Makers expressly waive the benefit of any and all defenses and discharges available to a guarantor, surety, endorser or accommodation party dependent on an obligor's character as such. Without limiting the generality of the foregoing, the liability of the Makers hereunder shall not be affected or impaired in any way by any of the following acts or things (which the Payee is hereby expressly authorized to do, omit or suffer from time to time without notice to or consent of anyone): (a) any acceptance of collateral security, guarantors, accommodation parties or sureties for any or all indebtedness arising under this Note, the Deed of Trust or the Other Security Documents; (b) any extension or renewal of any such indebtedness (whether or not for longer than the original period) or any modification of the interest rate, maturity or other terms of any such indebtedness; (c) any waiver or indulgence

granted to either Maker, and any delay or lack of diligence in the enforcement of the indebtedness arising under this Note, the Deed of Trust or the Other Security Documents; (d) any full or partial release of, compromise or settlement with, or agreement not to sue, either Maker or any guarantor or other person liable on any such indebtedness; (e) any release, surrender, cancellation or other discharge of any indebtedness arising under this Note, the Deed of Trust or the Other Security Documents, or the acceptance of any instrument in renewal or substitution for any instrument evidencing any such indebtedness; (f) any failure to obtain collateral security (including rights of setoff) for any indebtedness arising under this Note, the Deed of Trust or the Other Security Documents, or to see to the proper or sufficient creation and perfection thereof, or to establish the priority thereof, or to preserve, protect, insure, care for, exercise or enforce any collateral security for any such indebtedness; (g) any modification, alteration, substitution, exchange, surrender, cancellation, termination, release or other change, impairment, limitation, loss or discharge of any collateral security for any such indebtedness; (h) any assignment, sale, pledge or other transfer of any of the indebtedness arising under this Note, the Deed of Trust or the Other Security Documents; or (i) any manner, order or method of application of any payments or credits on any indebtedness arising under this Note, the Deed of Trust or the Other Security Documents. Each Maker also hereby waives any right of contribution, subrogation, indemnification or other right arising as a result of any payment made toward the Debt of the other Maker.

33. Each of the Makers (if more than one) hereby waives, for the benefit of the Payee: (a) any right the Payee, as a condition of payment or performance by either Maker, to (i) proceed against the other Maker or any other person or entity, (ii) proceed against or exhaust any collateral for the Debt held from the other Maker or any other person or entity, (iii) proceed against or have resort to any balance of any deposit account, securities account, or credit on the books of the Payee in favor of the other Maker or any other person or entity, or (iv) pursue any other remedy in the power of the Payee whatsoever; (b) any defense arising by reason of the incapacity, lack of authority or any disability or other defense of the other Maker, including any defense based on or arising out of the lack of validity or the unenforceability of the Debt or any agreement or instrument relating thereto or by reason of the cessation of the liability of the other Maker from any cause other than payment in full of the Debt; (c) any defense based upon any statute or rule of law which provides that the obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal; (d) any defense based upon the Payee's errors or omissions in the administration of the Debt; (e) (i) any principles or provisions of law, statutory or otherwise, which are or might be in conflict with the terms hereof and any legal or equitable discharge of its obligations hereunder, (ii) the benefit of any statute of limitations affecting its liability hereunder or the enforcement hereof, (iii) any rights to set-offs, recoupments and counterclaims, and (iv) promptness, diligence and any requirement that the Payee protect, secure, perfect or insure any security interest or lien or any property subject thereto; (f) notices, demands, presentments, protests, notices of protest, notices of dishonor and notices of any action or inaction, including acceptance hereof, notices of default thereunder or under this Note, the Deed of Trust or the Other Security Documents, any agreement or instrument related thereto, notices of any renewal, extension or modification of the Debt or any agreement related thereto, notices of any extension of credit to the other Maker and notices of any matters referred to in any guaranty securing this Note and any right to consent to any thereof; and (g) any defenses or benefits that may be derived from or afforded by law which limit the liability of or exonerate sureties, or which may conflict with the terms hereof.

34. Maker hereby represents that each of the respective properties which make up the Property, based on appraisals thereof, are sufficient to secure the Debt. By virtue of the respective contributions of each of the properties (if more than one) which constitute the Property (as defined in the Deed of Trust) to the lien of the Deed of Trust as security for this Note, Maker hereby represents that is solvent as of the date hereof. Notwithstanding anything to the contrary in this Note, Payee's recourse with respect to Maker's obligations under this Note shall be limited to Maker's interest in the Property (as defined in the Deed of Trust), as cross-collateralized pursuant to the Loan Documents, and the remedies set forth therein. Maker further consents that in a foreclosure proceeding, Payee will be entitled to a consolidated judgment of foreclosure for the entire Debt, as cross-collateralized against the Property. Nothing in this paragraph shall be construed so as to limit the obligations of (a) the Guarantor (as defined in the Deed of Trust) under any guarantees and/or indemnities executed in connection with this Note, including without limitation, (i) the Environmental Indemnity dated as of the date of this Note made by Maker and Guarantor, collectively as the Indemnitors, in favor of Payee (the "**Environmental Indemnity Agreement**"), (ii) that certain Guaranty, and (iii) that certain Guaranty of Completion, each executed by Guarantor in favor of Payee as of the date hereof, or (b) Maker under any guarantees and/or indemnities executed in connection with this Note, including without limitation, the Environmental Indemnity Agreement.

35. On the date hereof, Maker has funded to Payee an interest reserve (the "**Interest Reserve**") for the payment of all interest that that shall become due and owing at the Interest Rate for the first four (4) months of the term of the Loan. Upon each of the third (3rd) and seventh (7th) month anniversary of the closing of the Loan, Maker shall be required to replenish the Interest Reserve so that the amounts held in the Interest Reserve shall be equal to all interest that shall become due and owing for the succeeding four (4) months of the term of the Loan. Failure to fund such Interest Reserve as and when required pursuant to this Section shall constitute an immediate Event of Default under the Loan Documents.

**[Remainder of Page Intentionally Left Blank]**

**IN WITNESS WHEREOF**, Maker has duly executed this Note the day and year first above written.

**MO 2999TC, LLC,**
a Delaware limited liability company

By: ______________________
Name: Timothy Lynch Barton
Title: Authorized Signatory

STATE OF TEXAS )
: ss.:
COUNTY OF Dallas )

On the 17 day of September, in the year 2019, before me, the undersigned, a Notary public in and for said State, personally appeared TIMOTHY LYNCH BARTON, Authorized Signatory of MO 2999TC, LLC, a Delaware limited liability company, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument, and that such individual did make such appearance before the undersigned in the City of DALLAS, State of Texas.

______________________
Notary Public

NOTARY PUBLIC STATE OF TEXAS
Bella D Khusal
My Commission Expires
09/24/2022
ID No. 131734480

# ADDENDUM TO NOTE
(Texas)

The term "**maximum rate**" shall mean the highest lawful rate of interest applicable to this Note (the "**Maximum Rate**"). In determining the Maximum Rate, due regard shall be given to all payments, fees, charges, deposits, balances and agreements which may constitute interest or be deducted from principal when calculating interest. If Chapter 303 of the Finance Code, Vernon's Texas Civil Statutes, is deemed (by any court of competent jurisdiction) to be applicable to this Note, and applicable state or federal law does not permit a higher interest rate, the "weekly ceiling" (as defined in Chapter 303 of the Finance Code, Vernon's Texas Civil Statutes) shall be the interest rate ceiling applicable to this Note and shall be the basis for determining the Maximum Rate. If applicable state or federal law allows a higher interest rate or federal law preempts the state law limiting the rate of interest, then the foregoing interest rate ceiling shall not be applicable to this Note. If the Maximum Rate is increased by statute or other governmental action subsequent to the date of this Note, then the new Maximum Rate shall be applicable to this Note from the effective date thereof, unless otherwise prohibited by applicable law.

Interest on the unpaid principal balance of this Note shall be computed on the basis set forth in Article 1 of this Note (the "**Stated Rate**"), but in no event shall the Stated Rate be greater than the Maximum Rate described immediately above.

It is expressly stipulated and agreed to be the intent of the undersigned and holder hereof (together with its successors and assigns, the "**Noteholder**") at all times to comply with applicable law governing the Maximum Rate or amount of interest payable on or in connection with this Note and the Loan (or applicable United States federal law to the extent that it permits the Noteholder to contract for, charge, take, reserve or receive a greater amount of interest than under any such applicable State law). If the applicable law is ever judicially interpreted so as to render usurious any amount called for under this Note or under the Deed of Trust or any other Loan Document, or contracted for, charged, taken, reserved or received with respect to the Loan, or if acceleration of the maturity of this Note or if any prepayment by the undersigned results in the undersigned having paid any interest in excess of that permitted by law, then it is the undersigned's and the Note holder's express intent that all excess amounts theretofore collected by the Noteholder be credited on the principal balance of this Note without any prepayment premium (or, if this Note has been or would thereby be paid in full, refunded to the undersigned), and the provisions of this Note, the Deed of Trust and the other Loan Documents immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new documents, so as to comply with applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder and thereunder. The right to accelerate maturity of this Note does not include the right to accelerate any interest which has not otherwise accrued on the date of such acceleration, and the Noteholder does not intend to collect any unearned interest in the event of acceleration. All sums paid or owed to be paid to the Noteholder for the use, forbearance or detention of the indebtedness evidence hereby shall, to the extent permitted by applicable law be amortized, prorated, allocated and spread throughout the full term of such indebtedness until payment in full so that the rate or amount of interest on account of such indebtedness does not exceed the Maximum Rate. Notwithstanding any provisions contained in this Note, the Deed of Trust or in any of the other Loan Documents that permit the compounding

of interest (including, without limitation, any provision by which any accrued interest is added to the principal amount of this Note), if and to the extent the laws of the State of Texas are deemed to apply to the aforesaid provisions (by any court of competent jurisdiction), the total amount of interest that the undersigned is obligated to pay and the Noteholder is entitled to receive with respect to this Note shall not exceed the amount calculated on a simple (i.e., non-compounded) interest basis at the Maximum Rate on principal amounts actually advanced to or for the account of the undersigned, including all current and prior advances and any advances made pursuant to the Security Instrument or other Loan Documents (such as for the payment of taxes, insurance premiums, repairs and other expenses or costs).

THE UNDERSIGNED AND ALL OTHER MAKERS, SIGNERS, SURETIES, GUARANTORS AND ENDORSERS OF THIS NOTE WAIVE DEMAND, PRESENTMENT, NOTICE OF DISHONOR, NOTICE OF INTENT TO DEMAND OR ACCELERATE PAYMENT HEREOF, DILIGENCE IN THE COLLECTING, GRACE, NOTICE AND PROTEST AND AGREE TO ONE OR MORE EXTENSIONS FOR ANY PERIOD OR PERIODS OF TIME AND PARTIAL PAYMENTS, BEFORE OR AFTER MATURITY, WITHOUT PREJUDICE TO THE HOLDER HEREOF. IF COLLECTION PROCEDURES ARE EVER COMMENCED, BY ANY MEANS, INCLUDING LEGAL PROCEEDINGS OR THROUGH A PROBATE OR BANKRUPTCY COURT, OR IF THIS NOTE IS PLACED IN THE HANDS OF ANY ATTORNEY FOR COLLECTION AFTER DEFAULT OR MATURITY, THE UNDERSIGNED AGREES TO PAY ALL COSTS OF COLLECTION OR ATTEMPTED COLLECTION, INCLUDING REASONABLE ATTORNEY'S FEES ACTUALLY INCURRED.

**[NO FURTHER TEXT ON THIS PAGE]**

**MO 2999TC, LLC,**
a Delaware limited liability company

By: ____________________
Name: Timothy Lynch Barton
Title: Authorized Signatory

STATE OF TEXAS )
: ss.:
COUNTY OF Dallas )

On the 17 day of September, in the year 2019, before me, the undersigned, a Notary public in and for said State, personally appeared TIMOTHY LYNCH BARTON, Authorized Signatory of MO 2999TC, LLC, a Delaware limited liability company, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument, and that such individual did make such appearance before the undersigned in the City of Dallas, State of Texas.

____________________
Notary Public

NOTARY PUBLIC STATE OF TEXAS
Bella D Khusal
My Commission Expires 09/24/2022
ID No. 131734480

# EXHIBIT 2

ELECTRONICALLY RECORDED 201900253450
09/23/2019 10:57:56 AM DT 1/60

INSTRUMENT COVERS GOODS THAT ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY DESCRIBED HEREIN AND IS TO BE FILED FOR RECORD IN THE RECORDS WHERE MORTGAGES AND DEEDS OF TRUST ON REAL ESTATE ARE RECORDED. ADDITIONALLY, THIS INSTRUMENT SHOULD BE APPROPRIATELY INDEXED, NOT ONLY AS A MORTGAGE OR DEED OF TRUST, BUT ALSO AS A FINANCING STATEMENT COVERING GOODS THAT ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY DESCRIBED HEREIN. THE MAILING ADDRESSES OF THE BORROWER (AS DEBTOR) AND BENEFICIARY (AS SECURED PARTY) ARE SET FORTH IN THIS INSTRUMENT.

PREPARED BY AND UPON
RECORDATION RETURN TO:
Kriss & Feuerstein LLP
360 Lexington Avenue, Suite 1200
New York, New York 10017
Attention: Jerold C. Feuerstein, Esq.

PL48-22266

**MO 2999TC, LLC**, as grantor
(Borrower)

to

**MICHAEL B. MASSEY**, as grantee
(Trustee)

for the benefit of

**2999 TURTLE CREEK LLC**, as grantee
(Beneficiary)

---

# DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING

---

| | |
|---|---|
| Dated: | As of September 20, 2019 |
| Location: | 2999 Turtle Creek<br>Dallas, Texas 75219 |
| County: | Dallas |
| Tax Parcel No.: | 00-10310-00A-004-0000 |

# DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

**THE STATE OF TEXAS** §
§
**COUNTY OF DALLAS** §

**THIS DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING** (hereinafter referred to as this "**Deed of Trust**") made as of the 20th day of September, 2019, by **MO 2999TC, LLC**, a Delaware limited liability company having an address at 13901 Midway Road, Suite 102-243, Dallas, Texas 75244 (the "**Borrower**"), to **MICHAEL B. MASSEY**, having an address at c/o Craddock Massey LLP, 1400 Post Oak Blvd., Suite 950, Houston, Texas 77056, as trustee (together with its successors and permitted assigns, "**Trustee**"), for the benefit of **2999 TURTLE CREEK LLC**, a Delaware limited liability company, its successors and/or assigns, as their interests may appear, having offices at 520 Madison Avenue, Suite 3501, New York, NY 10022 (hereinafter, the "**Beneficiary**").

**WITNESSETH:**

**WHEREAS**, Borrower is the fee owner of the real property consisting of approximately 2,473 acres located at 2999 Turtle Creek Boulevard, Dallas, Texas, as further described in Schedule A attached hereto (hereinafter, collectively, the "**Premises**");

**WHEREAS**, Borrower is the maker of that certain Secured Promissory Note of even date herewith in favor of Beneficiary, as same now exists or may hereinafter be amended, modified, supplemented, extended, renewed, restated or replaced (hereinafter, the "**Note**") in the principal sum of THIRTY-TWO MILLION FIVE HUNDRED THOUSAND AND 00/100 DOLLARS ($32,500,000.00), together with interest (said principal sum, interest and all other sums which may or shall become due under the Note or under this Deed of Trust, being hereinafter, collectively, the "**Debt**");

**NOW, THEREFORE**, in consideration of TEN AND NO/100 DOLLARS ($10.00) cash in hand paid by Trustee, whose address for notice is c/o Craddock Massey LLP, 1400 Post Oak Blvd., Suite 950, Houston, Texas 77056, the receipt of which payment is hereby acknowledged and confessed, and of the debt and trust hereinafter mentioned, has Granted, Bargained, Sold and Conveyed, and by these presents does Grant, Bargain, Sell and Convey unto Trustee, and unto the successor or substitute Trustee hereinafter provided, the following property, rights, interests, and estates now owned, or hereafter acquired by Borrower (collectively, the "**Property**") situated in the State of Texas, to-wit:

(a) the Premises;

(b) all buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located on the Premises (hereinafter, collectively, the "**Improvements**");

(c) all easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights, and development rights, as well as any and all inclusionary air rights, certificates, floor area compensation rights, and/or density bonuses which may have been or may otherwise be created by, through or in connection with the Premises and/or any portion of the Property in accordance with any inclusionary housing or other program regulated by the applicable local, city and/or state or any other applicable municipal or governmental authority, all rights to oil, gas, minerals, coal and other substances of any kind or character, to the extent Borrower has such rights, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the Premises and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road, highway, alley or avenue, opened, vacated or proposed, in front of or adjoining the Premises, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtsey and rights of curtsey, property, possession, claim and demand whatsoever, both at law and in equity, of Borrower of, in and to the Premises and the Improvements and every part and parcel thereof, with the appurtenances thereto;

(d) subject to the second (2nd) paragraph of Section 9 hereof, all machinery, furniture, furnishings, equipment, computer software and hardware, fixtures (including, without limitation, all heating, air conditioning, plumbing, lighting, communications and elevator fixtures) and other property of every kind and nature, whether tangible or intangible, whatsoever owned by Borrower, or in which Borrower has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Premises and the Improvements and all building equipment, materials and supplies of any nature whatsoever owned by Borrower, or in which Borrower has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, or usable in connection with the present or future operation, enjoyment and occupancy of the Premises and the Improvements (hereinafter collectively referred to as the "**Equipment**"), including any leases of any of the foregoing, any deposits existing at any time in connection with any of the foregoing, and the proceeds of any sale or transfer of the foregoing, and the right, title and interest of Borrower in and to any of the Equipment that may be subject to any "security interests", as defined in the Uniform Commercial Code, as adopted and enacted by the

State or States where any of the Property is located (the "**UCC**");

(e) all awards or payments, including interest thereon, that may heretofore and hereafter be made with respect to the Premises and the Improvements, whether from the exercise of the right of eminent domain or condemnation (including, without limitation, any transfer made in lieu of or in anticipation of the exercise of said rights), or for a change of grade, or for any other injury to or decrease in the value of the Premises and the Improvements;

(f) all leases and other agreements or arrangements heretofore or hereafter entered into affecting the use, enjoyment or occupancy of, or the conduct of any activity upon or in, the Premises and the Improvements, including any extensions, renewals, modifications or amendments thereof (hereinafter collectively referred to as the "**Leases**") and all rents, rent equivalents, moneys payable as damages or in lieu of rent or rent equivalents, royalties (including, without limitation, and all rents, revenues, bonus money, royalties, rights, and benefits accruing to Borrower under all present and future oil, gas and mineral leases on any parts of the land (to the extent Borrower has such rights) and the Improvements), income, fees, receivables, receipts, revenues, deposits (including, without limitation, security, utility and other deposits), accounts, cash, issues, profits, charges for services rendered, and other payment and consideration of whatever form or nature received by or paid to or for the account of or benefit of Borrower or its agents or employees from any and all sources arising from or attributable to the Premises and the Improvements (hereinafter collectively referred to as the "**Rents**") together with all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt;

(g) all proceeds of and any unearned premiums on any insurance policies covering the Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property;

(h) the right, in the name and on behalf of Borrower, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Beneficiary in the Property; all accounts, escrows, documents, instruments, investment property, chattel paper, claims, deposits and general intangibles, as the foregoing terms are defined in the UCC, and all franchises, trade names, trademarks, symbols, service marks, books, records, plans, specifications, designs, drawings, permits, consents, licenses, management agreements, contract rights (including, without limitation, any contract with any architect or engineer or with any other provider of goods or services for or in connection with any construction, repair, or other work upon the Property), approvals, actions, refunds of real estate taxes and assessments (and any other governmental impositions related to the Property), and

causes of action that now or hereafter relate to, are derived from or are used in connection with the Property, or the use, operation, maintenance, occupancy or enjoyment thereof or the conduct of any business or activities thereon (hereinafter collectively referred to as the "**Intangibles**");

(i) all contracts, permits, development rights, plans, specifications, blueprints, and tax abatements; and

(j) all proceeds, products, offspring, rents and profits from any of the foregoing, including, without limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution, or replacement of any of the foregoing.

TO HAVE AND TO HOLD the above granted and described Property unto and to the use and benefit of Trustee and its successors and assigns, forever;

IN TRUST, WITH POWER OF SALE, to secure payment to Beneficiary of the Debt at the time and in the manner provided for its payment in the Note and in this Deed of Trust.

PROVIDED, HOWEVER, these presents are upon the express condition that, if Borrower shall indefeasibly pay to Beneficiary the Debt in full at the time and in the manner provided in the Note and this Deed of Trust and shall abide by and comply with each and every covenant and condition set forth herein, in the Note and in the other Loan Documents (as hereinafter defined) in a timely manner, these presents and the estate hereby granted shall cease, terminate and be void; provided, however, that Borrower's obligation to indemnify and hold harmless Beneficiary and Trustee pursuant to the provisions hereof shall survive any such payment or release.

AND Borrower represents and warrants to and covenants and agrees with Beneficiary as follows:

SECTION 1. **Payment of Debt and Incorporation of Covenants, Conditions and Agreements.**

Borrower will pay the Debt at the time and in the manner provided in the Note and in this Deed of Trust. All the covenants, conditions and agreements contained in (a) the Note and (b) all and any of the documents other than the Note or this Deed of Trust now or hereafter executed by Borrower and/or others and by or in favor of Beneficiary, which wholly or partially secure or guaranty payment of the Note (collectively, the "**Other Security Documents**", and together with the Note and this Deed of Trust, collectively, the "**Loan Documents**"), are hereby made a part of this Deed of Trust to the same extent and with the same force as if fully set forth herein.

As part of the Debt, Borrower shall pay all fees, costs and expenses due and payable by Beneficiary to any third parties in connection with the Loan as described in the Loan Documents (as hereinafter defined). In addition to the foregoing, on the first annual anniversary of the date of this Deed of Trust, and on each annual anniversary thereafter while the Debt is outstanding, Borrower shall pay to Beneficiary an appraisal fee in the amount of up to Two Thousand Five

Hundred and 00/100 Dollars ($2,500.00) to cover the actual expenses incurred for the cost of an appraisal.

Notwithstanding anything to the contrary contained herein or in the Other Security Documents, all payments due under the Note, this Deed of Trust and the Other Security Documents shall be made by means of wire transfer to the order of Beneficiary, as directed by Beneficiary, and Beneficiary shall have the absolute right to reject any payment not made by wire transfer.

SECTION 2. **Application of Payments.**

Unless applicable law provides otherwise, all payments received by Beneficiary from Borrower under the Note or this Deed of Trust shall be applied by Beneficiary in the following order of priority: (i) amounts payable to Beneficiary by Borrower under Section 6 hereof; (ii) late charges payable under the Note; (iii) interest payable on the Note; (iv) all applicable prepayment premiums, (v) principal of the Note; (vi) interest payable on advances made pursuant to Section 24 hereof; (vii) principal of advances made pursuant to Section 24 hereof; and (viii) any other sums secured by this Deed of Trust in such order as Beneficiary, at Beneficiary's option, may determine; provided, however, that Beneficiary may, at Beneficiary option, apply any sums payable pursuant to Section 24 hereof prior to interest on and principal of the Note, but such application shall not otherwise affect the order of priority of application specified in this Section 2.

SECTION 3. **Warranty of Title.**

Borrower warrants that Borrower has good title to the Property and has the full power, authority and right to execute, deliver and perform its obligations under this Deed of Trust and to encumber, give, grant, bargain, sell, alienate, enfeoff, convey, confirm, pledge, assign and hypothecate the same and that Borrower possesses an unencumbered fee estate in the Premises and the Improvements and that it owns the Property free and clear of all liens, encumbrances and charges whatsoever except for those exceptions shown in the title insurance policy insuring the lien of this Deed of Trust, and that this Deed of Trust is and will remain a valid and enforceable first (1st) lien on and security interest in the Property, subject only to said exceptions. Borrower shall forever warrant, defend and preserve such title and the validity and priority of the lien of this Deed of Trust and shall forever warrant and defend the same to Beneficiary against the claims of all persons whomsoever.

SECTION 4. **Insurance.**

(a) Borrower will keep the Property insured against loss or damage by fire, flood (if in flood hazard area) and such other hazards, risks and matters, including, without limitation, business interruption, rental loss, builder's risk, terrorism, public liability, and boiler damage and liability, as Beneficiary may from time to time require in amounts required by Beneficiary, and shall pay the premiums for such insurance (collectively, the "**Insurance Premiums**") as the same become due and payable. All policies of insurance (collectively, the "**Policies**") shall be issued by insurers acceptable to Beneficiary and shall contain all applicable standard Texas non-contribution clauses naming Beneficiary as the person to which all payments made by such insurance company shall be paid. Borrower will assign and deliver the Policies to Beneficiary. Not later than thirty

(30) days prior to the expiration date of each of the Policies, Borrower will deliver evidence satisfactory to Beneficiary of the renewal of each of the Policies. Prior to or on the date hereof, Borrower shall deliver evidence satisfactory to Beneficiary that Borrower has paid for the Insurance Premiums covering the period commencing on the date hereof up to and including the Maturity Date, as such term is defined in the Note. All Policies shall be issued by companies approved by Beneficiary and licensed to do business in the state where the Property is located, with a claims paying ability rating of "BBB" or better by Standard & Poor's Ratings Services, a division of McGraw-Hill Companies, Inc. and a rating of "A:IX" or better in the current Best's Insurance Reports.

(b) In the event of loss, Borrower shall give immediate written notice to the insurance carrier and to Beneficiary. Borrower hereby authorizes and empowers Beneficiary as attorney-in-fact, coupled with an interest, for Borrower to make proof of loss, to adjust and compromise any claim under insurance policies, to appear in and prosecute any action arising from such insurance policies, to collect and receive insurance proceeds, and to deduct therefrom Beneficiary 's expenses incurred in the collection of such proceeds (said insurance proceeds, after such deduction of expenses, being hereinafter the "**Net Proceeds**"); provided, however, that nothing contained in this subsection (b) shall require Beneficiary to incur any expense or take any action hereunder. Borrower further authorizes Beneficiary, at Beneficiary's option, either (i) to hold the Net Proceeds for the account of Borrower to be used to reimburse Borrower for the cost of reconstruction or repair of the Property (hereinafter, the "**Restoration**") or (ii) to apply the Net Proceeds to the payment of the sums secured by this Deed of Trust, whether or not then due, in such priority and proportions as Beneficiary in its discretion shall deem proper, but any such repayment shall not be deemed voluntary prepayment for which a prepayment premium is due.

(c) If the Net Proceeds are applied to the payment of the sums secured by this Deed of Trust, any such application of proceeds to principal shall neither, extend or postpone the due dates of the monthly installments to be made pursuant to the Note, nor shall such application change the amounts of such installments. If the Property is sold pursuant to Section 22 hereof or if Beneficiary acquires title to the Property, Beneficiary shall have all of the right, title and interest of Borrower in and to any insurance policies and unearned premiums thereon and in and to the proceeds resulting from any damage to the Property prior to such sale or acquisition.

(d) The excess, if any, of the Net Proceeds remaining after payment of the entire Debt as provided herein shall be paid to Borrower.

(e) Anything in this Section to the contrary notwithstanding in the event of a casualty resulting in damage to the Property, if Beneficiary in its sole discretion makes the Net Proceeds available for Restoration, same shall be made available in accordance with the terms and provisions set forth below and provided that:

(i) Borrower delivers to Beneficiary an opinion of an architect designated by Borrower and reasonably satisfactory to Beneficiary (the "**Supervising Architect**"), together with such other documentation as Beneficiary may reasonably request, evidencing to the satisfaction of Beneficiary that the Restoration of the Property may be completed so as to constitute an architecturally whole and economically feasible building at least equal in value and condition to

the Property immediately prior to the casualty;

(ii) no Event of Default has occurred and is continuing hereunder and no default has otherwise occurred under the terms of this Deed of Trust, the Note, or any of the Other Security Documents which remains uncured beyond the applicable notice and/or grace period;

(iii) in the event the Net Proceeds are not sufficient in Beneficiary's reasonable opinion to pay in full the Restoration (hereinafter referred to as the "**Work**"), Borrower shall deposit with Beneficiary sufficient funds, if necessary in the reasonable opinion of Beneficiary, such that together with the Net Proceeds, sufficient funds shall be readily available for the Restoration of the Property as nearly as practicable to its value and condition immediately prior to such casualty;

(iv) Borrower delivers to Beneficiary complete plans and specifications (the "**Work Plans and Specs**") for the work to be performed in connection with the Restoration prepared and sealed by an architect reasonably satisfactory to Beneficiary with evidence satisfactory to Beneficiary of the approval of the Work Plans and Specs by all governmental authorities whose approval is required;

(v) Borrower delivers to Beneficiary, in the event that the Work Plans and Specs are prepared by an architect other than the Supervising Architect, written approval of the Work Plans and Specs by the Supervising Architect;

(vi) Borrower delivers to Beneficiary a signed estimate approved in writing by the Supervising Architect, bearing the Supervising Architect's seal, stating the entire cost of completing the Work; and

(vii) Borrower delivers to Beneficiary true copies certified by Borrower, or by the Supervising Architect or Borrower's general contractor or, if available, the governmental agency having jurisdiction thereof, of all permits and approvals required by law in connection with the commencement and conduct the Work.

(f) If the Net Proceeds are made available for the Restoration of the Property pursuant to the terms of paragraph (e) above, the costs, if any, to Beneficiary of recovering or paying out such Net Proceeds (including reasonable attorneys' fees and disbursements and reasonable costs incurred by Beneficiary in having the Work inspected and the Work Plans and Specs reviewed by the Supervising Architect) shall be promptly paid to Beneficiary on demand. In the event that the terms and conditions of paragraph (e) above have been satisfied in full, then the Net Proceeds shall be disbursed by Beneficiary as the Work progresses in accordance with customary construction loan advance procedures.

(g) Upon occurrence of an Event of Default under this Deed of Trust, or upon the failure by Borrower promptly to commence or diligently to continue the Work, Beneficiary may apply all or any portion of the Net Proceeds to the payment of the sums secured by this Deed of Trust, whether or not then due, in such priority and proportions as Beneficiary in its discretion shall deem proper.

(h) If at any time the Net Proceeds which are to be applied to the Restoration of the Property will be insufficient, in the reasonable judgment of Beneficiary, to pay the entire unpaid cost of the Restoration, Borrower shall pay the deficiency, or make provision satisfactory to Beneficiary for the payment thereof, prior to receiving any part of the Net Proceeds. Any balance of the Net Proceeds not required for the Restoration, upon completion of the Work and the reimbursement of Borrower in full of the payment of the Work shall, at Beneficiary's option, (i) be retained by Beneficiary and applied to the sums secured by this Deed of Trust, whether or not then due without premium or penalty, or (ii) be returned to Borrower.

(i) COLLATERAL PROTECTION INSURANCE NOTICE UNDER SECTION 307.052 OF THE TEXAS FINANCE CODE: (A) BORROWER IS REQUIRED TO (1) KEEP THE PROPERTY INSURED AGAINST DAMAGE AS PROVIDED HEREIN; (2) PURCHASE THE INSURANCE FROM AN INSURER THAT IS AUTHORIZED TO DO BUSINESS IN THE STATE OF TEXAS OR AN ELIGIBLE SURPLUS LINES INSURER; AND (3) NAME BENEFICIARY AS THE PERSON TO BE PAID UNDER THE POLICY IN THE EVENT OF A LOSS; (B) BORROWER MUST, IF REQUIRED BY BENEFICIARY, DELIVER TO BENEFICIARY A COPY OF THE POLICY AND PROOF OF THE PAYMENT OF PREMIUMS; AND (C) IF BORROWER FAILS TO MEET ANY REQUIREMENT LISTED IN CLAUSE (A) OR (B) OF THIS SECTION 4, BENEFICIARY MAY OBTAIN COLLATERAL PROTECTION INSURANCE ON BEHALF OF BORROWER AT BORROWER'S EXPENSE.

SECTION 5. **Payment of Taxes, etc.**

Borrower shall pay all taxes, assessments, water rates, frontage charges and sewer rents, now or hereafter levied or assessed or imposed against the Property or any part thereof (collectively, the "**Taxes**") and all ground rents, maintenance charges, other governmental impositions and other charges, including, without limitation, vault charges and license fees for the use of vaults, chutes and similar areas adjoining the Premises, now or hereafter levied or assessed or imposed against the Property or any part thereof (collectively, the "**Other Charges**") as same become due and payable. Borrower will deliver to Beneficiary, promptly upon Beneficiary's request, evidence satisfactory to Beneficiary that the Taxes and Other Charges have been so paid or are not then delinquent. Borrower shall not suffer and shall promptly cause to be paid and discharged any lien or charge whatsoever which may be or become a lien or charge against the Property, and shall promptly pay for all utility services provided to the Property. Borrower shall furnish to Beneficiary receipts for the payment of the Taxes, Other Charges and said utility services prior to the date the same shall become delinquent.

SECTION 6. **Escrow Fund.**

Borrower shall pay to Beneficiary, on the first day of each calendar month for the term of this Deed of Trust, an amount equal to (a) one-twelfth (1/12) of the amount which would be sufficient to pay the Taxes and the Other Charges which are payable, or estimated by Beneficiary to be payable, during the next ensuing twelve (12) months, and (b) at the option of Beneficiary, one-twelfth (1/12) of the amount which would be sufficient to pay the Insurance Premiums due for the renewal of the coverage afforded by the Policies upon the expiration thereof (said amounts in (a) and (b) above hereinafter collectively called the "**Escrow Fund**"). The Escrow Fund, together with the payments of interest or principal or both which are due pursuant

to the provisions of the Note, shall be added together and shall be paid as an aggregate sum by Borrower to Beneficiary. Borrower hereby pledges to Beneficiary any and all monies now or hereafter deposited in the Escrow Fund as additional security for the payment of the Debt. Beneficiary will apply the Escrow Fund to payments of Taxes, Other Charges and Insurance Premiums required to be made by Borrower pursuant to Sections 4 and 5 hereof. If the amount of the Escrow Fund shall exceed the amounts due for Taxes and Insurance Premiums pursuant to Sections 4 and 5 hereof, Beneficiary shall, in its discretion, return any excess to Borrower or credit such excess against future payments to be made to the Escrow Fund. In allocating such excess, Beneficiary may deal with the person shown on the records of Beneficiary to be the owner of the Property. If the Escrow Fund is not sufficient to pay the items set forth in (a) and (b) above, Borrower shall promptly pay to Beneficiary, upon demand, an amount which Beneficiary shall estimate as sufficient to make up the deficiency. Upon the occurrence of an Event of Default (hereinafter defined) Beneficiary may apply any sums then present in the Escrow Fund to the payment of the following items in any order in its sole discretion:

(i) Taxes and Other Charges;

(ii) Insurance Premiums;

(iii) Interest (including interest at the Default Rate when applicable) on the unpaid principal balance of the Note;

(iv) Amortization of the unpaid principal balance of the Note;

(v) All other sums payable pursuant to the Note, this Deed of Trust, and the Other Security Documents, including without limitation advances made by Beneficiary pursuant to the terms of this Deed of Trust.

Until expended or applied as above provided, any amounts in the Escrow Fund shall constitute additional security for the Debt. The Escrow Fund shall not constitute a trust fund and may be commingled with other monies held by Beneficiary. No earnings or interest on the Escrow Fund shall be payable to Borrower.

Notwithstanding anything to the contrary contained herein, the Borrower and Beneficiary covenant and agree that provided the Borrower is not in default under the Note, this Deed of Trust or any of the Other Security Documents beyond the expiration of any applicable notice, grace or cure period, and provided further that Borrower furnishes Beneficiary with proof that all Taxes and Other Charges are being paid as required under this Deed of Trust, Beneficiary shall not require Borrower to make monthly installments for the payment of Taxes and Other Charges to the Escrow Fund.

SECTION 7. **Condemnation.**

(a) Borrower shall promptly notify Beneficiary of any action or proceeding relating to any condemnation or other taking, whether direct or indirect, of the Property or any part thereof, and Borrower shall appear in and prosecute any such action or proceeding unless otherwise directed by Beneficiary in writing. Borrower authorizes Beneficiary, at Beneficiary's option, as

attorney-in-fact, coupled with an interest, for Borrower, to commence, appear in and prosecute, in Beneficiary's or Borrower's name, any action or proceeding relating to any condemnation or other taking of the Property, whether direct or indirect, and to settle or compromise any claim in connection with such condemnation or other taking. The proceeds of any award, payment or claim for damages, direct or consequential, in connection with any condemnation or other taking, whether direct or indirect, of the Property or any part thereof, or for conveyances in lieu of condemnation, are hereby assigned to and shall be paid to Beneficiary.

(b) Borrower authorizes Beneficiary to apply such awards, payments, proceeds or damages, after the deduction of Beneficiary's expenses incurred in the collection of such amounts, at Beneficiary's option, either (i) to restoration or repair of the Property, or (ii) to payment of the sums secured by this Deed of Trust, whether or not then due, in the order of application set forth in Section 2 hereof, with the balance, if any, to Borrower. Borrower agrees to execute such further evidence of assignment of any awards, proceeds, damages or claims arising in connection with such condemnation or taking as Beneficiary shall require.

(c) Notwithstanding any taking by any public or quasi-public authority through eminent domain or otherwise (including but not limited to any transfer made in lieu of or in anticipation of the exercise of such taking), Borrower shall continue to pay the Debt at the time and in the manner provided for its payment in the Note and in this Deed of Trust, and the Debt shall not be reduced until any award or payment therefor shall have been actually received and applied by Beneficiary, after the deduction of expenses of collection, to the reduction or discharge of the Debt. Beneficiary shall not be limited to the interest paid on the award by the condemning authority but shall be entitled to receive out of the award interest at the rate or rates provided herein and in the Note. Beneficiary may apply any such award or payment to the reduction or discharge of the Debt whether or not then due and payable. Any reduction of the Debt pursuant to the terms of this Section 7 shall not be deemed a prepayment of the Debt and no prepayment consideration, if any, shall be due. If the Property is sold, through foreclosure or otherwise, prior to the receipt by Beneficiary of such award or payment, Beneficiary shall have the right, whether or not a deficiency judgment on the Note shall have been sought, recovered or denied, to receive said award or payment, or a portion thereof sufficient to pay the Debt.

SECTION 8. **Leases and Rents.**

(a) Borrower hereby absolutely and unconditionally assigns to Beneficiary all Leases now existing or hereafter made of all or any part of the Property, all Rents payable under such Leases, and all security deposits made by tenants in connection with such Leases. Borrower hereby grants Beneficiary all of the rights and powers possessed by Borrower prior to such assignment, and Beneficiary is hereby granted the right to modify, extend or terminate the Leases and to execute new Leases, in Beneficiary's sole discretion. Beneficiary is hereby granted and assigned by Borrower the right to enter the Property for the purpose of enforcing its interest in the Leases and the Rents, this Deed of Trust constituting a present, absolute assignment of the Leases and the Rents. Nevertheless, subject to the terms of this Section 8, Beneficiary grants to Borrower a revocable license to operate and manage the Property and to collect the Rents, provided, however, that Borrower shall not modify, extend or terminate any Leases, or execute any new Leases without first obtaining Beneficiary's prior written consent. Borrower shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Debt, for use in the payment of such

sums. Upon or at any time after an Event of Default, the license granted to Borrower herein may be revoked by Beneficiary, and Beneficiary may enter upon the Property, and collect, retain and apply the Rents toward payment of the Debt in such priority and proportions as Beneficiary in its discretion shall deem proper. In the event the Improvements are not occupied or are not subject to any Leases, nothing herein shall imply or impose any obligation for Borrower to occupy or enter into any Lease regarding the Property during the term of the Loan.

(b) All Leases shall be written on the standard form of lease which standard form of lease shall be presented to Beneficiary for approval. Upon request, Borrower shall furnish Beneficiary with executed copies of all Leases and relevant documentation required to be filed with all Federal, State and City housing authorities and agencies. No changes may be made to the Beneficiary-approved standard lease without the prior written consent of Beneficiary. In addition, all renewals of Leases and all proposed Leases shall provide for rental rates comparable to existing local market rates, which, in the case of residential Leases, shall not be in excess of the local registered rent for the apartment to which the Lease relates, and shall be arms-length transactions. All proposed Leases shall be subject to the prior approval of the Beneficiary. All Leases shall provide that they are subordinate to this Deed of Trust and that the lessee agrees to attorn to Beneficiary. Borrower (i) shall observe and perform all the obligations imposed upon the lessor under the Leases and shall not do or permit to be done anything to impair the value of the Leases as security for the Debt; (ii) shall promptly send copies to Beneficiary of all notice of default which Borrower shall send or receive thereunder; (iii) shall enforce all of the terms, covenants and conditions contained in the Leases upon the part of the lessee thereunder to be observed or performed, short of termination thereof; (iv) shall not collect any of the Rents more than one (1) month in advance; (v) shall not execute any other assignment of lessor's interest in the Leases or the Rents; (vi) shall not alter, modify or change the terms of the Leases without the prior written consent of Beneficiary, or cancel or terminate the Leases or accept a surrender thereof or convey or transfer or suffer or permit a conveyance or transfer of the Premises or of any interest therein so as to effect a merger of the estates and rights of, or a termination or diminution of the obligations of, lessees thereunder; (vii) shall not alter, modify or change the terms of any guaranty of the Leases or cancel or terminate such guaranty without the prior written consent of Beneficiary; (viii) shall not consent to any assignment of or subletting under the Leases not in accordance with their terms, without the prior written consent of Beneficiary; and (ix) shall execute and deliver at the request of Beneficiary all such further assurances, confirmations and assignments in connection with the Property as Beneficiary shall from time to time require.

(c) Borrower represents and warrants that the Borrower self-manages the Property. Borrower will not cause or permit Borrower to engage a property manager without the written consent of Beneficiary.

SECTION 9. **Maintenance of Property.**

Borrower shall cause the Property to be maintained in a good and safe condition and repair. The Improvements and the Equipment shall not be removed, demolished or altered (except for normal replacement of the Equipment) without the consent of Beneficiary. Borrower shall promptly comply with all laws, orders and ordinances affecting the Property or the use thereof. Borrower shall promptly repair, replace or rebuild any part of the Property which may be destroyed by any casualty, or become damaged, worn or dilapidated, or which may be affected by

any proceeding of the character referred to in Section 7 hereof, and Borrower shall complete and pay for any structure at any time in the process of construction or repair on the Premises. Borrower shall not initiate, join in, acquiesce in, or consent to any change in any private restrictive covenant, zoning law or other public or private restriction, limiting or defining the uses which may be made of the Property or any part thereof. If under applicable zoning provisions the use of all or any portion of the Property is or shall become a nonconforming use, Borrower will not cause or permit such nonconforming use to be discontinued or abandoned without the express written consent of Beneficiary.

SECTION 10. **Transfer or Encumbrance of the Property.**

(a) Borrower acknowledges that Beneficiary has examined and relied on the creditworthiness of Borrower and experience of Borrower in owning and operating properties such as the Property in agreeing to make the loan secured hereby, and that Beneficiary will continue to rely on Borrower's ownership of the Property as a means of maintaining the value of the Property as security for repayment of the Debt. Borrower acknowledges that Beneficiary has a valid interest in maintaining the value of the Property so as to ensure that, should Borrower default in the repayment of the Debt, Beneficiary can recover the Debt by a sale of the Property. Borrower shall not, without the prior written consent of Beneficiary, which consent may be withheld in Beneficiary's sole discretion, have the right to sell, transfer, convey, alienate, mortgage, encumber, pledge or otherwise transfer the Property or any part thereof or permit the Property or any part thereof to be sold, conveyed, alienated, mortgaged, encumbered, pledged or otherwise transferred.

(b) A sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer within the meaning of this Section 10 shall be deemed to include (i) an installment sales agreement wherein Borrower agrees to sell the Property or any part thereof for a price to be paid in installments; (ii) an agreement by Borrower leasing all or a substantial part of the Property for other than actual occupancy by a space tenant thereunder or a sale, assignment or other transfer of, or the grant of a security interest in, Borrower's right, title and interest in and to any Leases or any Rents; (iii) if Borrower, any Guarantor (hereinafter defined), or any general partner of Borrower or Guarantor is a corporation, the voluntary or involuntary sale, conveyance or transfer of such corporation's stock (or an interest in any entity directly or indirectly controlling such corporation by operation of law or otherwise) or the creation or issuance of new stock by which any of such corporation's stock shall be vested in a party or parties who are not now stockholders; (iv) if Borrower, any Guarantor or any general partner of Borrower or any Guarantor is a limited or general partnership or joint venture, the change, removal or resignation of a general partner or managing partner or the direct or indirect transfer of the partnership interest of any general partner or managing partner; (v) if Borrower, any Guarantor or any member of Borrower or any Guarantor is a limited liability company, the change, removal or resignation of a member or manager or the transfer of an interest of any member or manager (or an interest in any entity directly or indirectly controlling such limited liability company by operation of law or otherwise) or the creation or issuance of new limited liability company membership interests by which any of such corporation's membership interests shall be vested in a party or parties who are not now members and (vi) any direct or indirect pledge hypothecation, assignment, transfer or other encumbrance of any ownership interest in Borrower.

(c) Beneficiary reserves the right to condition the consent required hereunder upon a modification of the terms hereof and on assumption of this Deed of Trust as so modified by the proposed transferee, payment of a transfer fee, or such other conditions as Beneficiary shall determine in its sole discretion to be in the interest of Beneficiary. Beneficiary shall not be required to demonstrate any actual impairment of its security or any increased risk of default hereunder in order to declare the Debt immediately due and payable upon Borrower's sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Property without Beneficiary's consent. This provision shall apply to every sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Property regardless of whether voluntary or not, or whether or not Beneficiary has consented to any previous sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Property.

SECTION 11. **Estoppel Certificates.**

(a) After request by Beneficiary, Borrower, within ten (10) days, shall furnish Beneficiary or those making requests by or on behalf of or through Beneficiary with a statement, duly acknowledged and certified, setting forth (i) the amount of the original principal amount of the Note, (ii) the unpaid principal amount of the Note, (iii) the rate of interest of the Note, (iv) the date installments of interest and/or principal were last paid, (v) any offsets or defenses to the payment of the Debt, if any, and (vi) that the Note and this Deed of Trust are valid, legal and binding obligations and have not been modified or if modified, giving particulars of such modification.

(b) After request by Beneficiary, Borrower, within ten (10) days, will furnish Beneficiary with estoppel certificates from any lessees under the Leases as required by their respective Leases.

SECTION 12. **Changes in the Laws Regarding Taxation.**

If any law is enacted or adopted or amended after the date of this Deed of Trust which deducts the Debt from the value of the Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Beneficiary's interest in the Property, Borrower will pay such tax, with interest and penalties thereof, if any. In the event Beneficiary is advised by counsel chosen by it that the payment of such tax or interest and penalties by Borrower would be unlawful or taxable to Beneficiary or unenforceable or provide the basis for a defense of usury, then in any such event, Beneficiary shall have the option, by written notice of not less than ninety (90) days, to declare the Debt immediately due and payable.

SECTION 13. **No Credits on Account of the Debt.**

Borrower will not claim or demand or be entitled to any credit or credits on account of the Debt for any part of the Taxes or Other Charges assessed against the Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Property, or any part thereof, for real estate tax purposes by reason of this Deed of Trust or the Debt. In the event such claim, credit or deduction shall be required by law, Beneficiary shall have the option, by written notice of not less than ninety (90) days, to declare the Debt immediately due and payable.

SECTION 14. **Documentary Stamps.**

If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note or this Deed of Trust, or impose any other tax or charge on the same, Borrower will pay for the same, with interest and penalties thereon, if any.

SECTION 15. **Usury Laws.**

This Deed of Trust and the Note are subject to the express condition that at no time shall Borrower be obligated or required to pay interest on the Debt at a rate which could subject the holder of the Note to either civil or criminal liability as a result of being in excess of the maximum interest rate which Borrower is permitted by applicable law to contract or agree to pay. If by the terms of either this Deed of Trust or the Note, Borrower is at any time required or obligated to pay interest on the Debt at a rate in excess of such maximum rate, the rate of interest under the same shall be deemed to be immediately reduced to such maximum rate and the interest payable shall be computed at such maximum rate and all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of the principal balance of the Note.

SECTION 16. **Books and Records.**

(a) The Borrower (and Guarantors, if any) shall keep proper books, records and accounts with respect to the operation of the Property in accordance with generally accepted accounting principles and shall furnish to the Beneficiary (i) within ninety (90) days after the end of each fiscal year of Borrower and at any other time upon Beneficiary's request, financial statements for the operation of the Property, including a balance sheet, a statement of income and expenses of the Property and a statement of changes in financial position, each in reasonable detail and certified by Borrower (or a principal of Borrower if Borrower is not an individual) under penalty of perjury, to be true and complete, and, if Beneficiary shall require audited by an independent certified public accountant; (ii) within thirty (30) days following the close of each calendar quarter, quarter-annual financial statements (including a certified rent roll) in form satisfactory to the Beneficiary, which shall disclose in reasonable detail all earnings and expenses with respect to the operation of the Property certified by Borrower (or a principal of Borrower if Borrower is not an individual) under penalty of perjury, to be true and complete; (iii) together with the foregoing financial statements and at any other time upon Beneficiary's request, a rent schedule for the Property in form acceptable to Beneficiary, certified by Borrower (or a principal of Borrower if Borrower is not an individual) under penalty of perjury, to be true and complete, showing the name of each tenant, the space occupied, the Lease expiration date, the rent payable, the rent paid and any other information requested by Beneficiary; (iv) upon Beneficiary's request, financial statements for any principal of Borrower and Guarantor in the form set forth above; (v) upon Beneficiary's request, an accounting of all security deposits held in connection with any Lease of any part of the Property, including the name and identification number of the accounts in which such security deposits are held, name and address of the financial institutions in which such security deposits are held and the name of the person to contact at such financial institutions, along with any authority or release necessary for Beneficiary to obtain information regarding such

accounts directly from such financial institutions; and (vi) such other financial information as Beneficiary may request.

(b) Upon the death of any Guarantor who is an individual, Borrower shall give prompt written notice to Beneficiary (i.e., at least within thirty (30) days following his or her death), setting forth the date of death, the state and county where the deceased Guarantor's estate is being administered, and, if then known, the name(s) and address(es) of the executor(s) or administrator(s) appointed to administer the estate of such deceased Guarantor.

SECTION 17. **Performance of Other Agreements.**

Borrower shall observe and perform each and every term to be observed or performed by Borrower pursuant to the terms of any agreement or recorded instrument affecting or pertaining to the Property.

SECTION 18. **Further Acts, etc.**

Borrower will, at the cost of Borrower, and without expense to Beneficiary, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfers and assurances as Beneficiary shall, from time to time, require, for the better assuring, conveying, assigning, transferring, and confirming unto Beneficiary the property and rights hereby mortgaged, given, granted, bargained, sold, alienated, conveyed, confirmed, pledged, assigned and hypothecated or intended now or hereafter so to be, or which Borrower may be or may hereafter become bound to convey or assign to Trustee for the benefit of Beneficiary, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust. Borrower, on demand, will execute and deliver and hereby authorizes Beneficiary to execute in the name of Borrower or without the signature of Borrower to the extent Beneficiary may lawfully do so, one or more financing statements, chattel mortgages or other instruments, to evidence more effectively the security interest of Beneficiary in the Property. Borrower grants to Beneficiary an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Beneficiary at law and in equity, including without limitation such rights and remedies available to Beneficiary pursuant to this Section 18.

SECTION 19. **Recording of This Deed of Trust, etc.**

Borrower forthwith upon the execution and delivery of this Deed of Trust and thereafter, from time to time, will cause this Deed of Trust, and any security instrument creating a lien or security interest or evidencing the lien hereof upon the Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect the lien or security interest hereof upon, and the interest of Beneficiary in, the Property. Borrower will pay all filing, registration or recording fees, and all expenses (including, but not limited to, attorney's fees) incident to the preparation, execution and acknowledgement of this Deed of Trust, any deed of trust supplemental hereto, any security instrument with respect to the Property, and any instrument of further assurance, and all federal, state, county and municipal, taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this

Deed of Trust, any deed of trust supplemental hereto, any security instrument with respect to the Property or any instrument of further assurance, except where prohibited by law so to do. Borrower shall hold harmless and indemnify Beneficiary, its successors and assigns, against any liability incurred by reason of the imposition of any tax on the making and recording of this Deed of Trust.

SECTION 20. **Prepayment.**

The Debt may not be prepaid in whole or in part except in accordance with the terms and conditions contained in the Note.

SECTION 21. **Events of Default.**

The Debt shall become immediately due and payable at the option of Beneficiary upon any one or more of the following events (each being an "**Event of Default**", and, collectively, "**Events of Default**"):

(a) i if any portion of the Debt is not paid within five (5) days of when the same is due and payable (excepting the portion of the Debt due on the Maturity Date as to which Section 21(p) shall govern);

(b) if any of the Taxes or Other Charges are not paid when the same are due and payable;

(c) if the Policies are not kept in full force and effect, or if the Policies are not assigned and delivered to Beneficiary upon request;

(d) if Borrower violates or does not comply with any of the provisions of Sections 3, 7, 8, 9, 10, 11, 14, 19, 35 or 36;

(e) if any representation or warranty of Borrower, or of any person guaranteeing payment of the Debt or any portion thereof or performance by Borrower of any of the terms of this Deed of Trust (a "**Guarantor**"), made herein or in any such guaranty, or in any certificate, report, financial statement or other instrument or document furnished to Beneficiary shall have been false or misleading in any material respect when made;

(f) if Borrower or any Guarantor shall make an assignment for the benefit of creditors or if Borrower shall generally not be paying its debts as they become due;

(g) if a receiver, liquidator or trustee of Borrower or of any Guarantor shall be appointed or if Borrower or any Guarantor shall be adjudicated a bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, shall be filed by or against, consented to, or acquiesced in by, Borrower or any Guarantor or if any proceeding for the dissolution or liquidation of Borrower or of any Guarantor shall be instituted; however, if such appointment, adjudication, petition or proceeding was involuntary and not consented to by Borrower or such Guarantor, upon the same not being discharged, stayed or dismissed within thirty (30) days;

(h) if Borrower shall be in default under any other deed of trust or security agreement covering any part of the Property whether it be superior or junior in lien to this Deed of Trust;

(i) if the Property becomes subject to any mechanic's, materialman's liens or other lien other than a lien for local real estate taxes and assessments not then due and payable and such lien shall remain undischarged of record (by payment, bonding or otherwise) within ten (10) days;

(j) if Borrower fails to cure promptly any violations of laws or ordinances affecting or which may be interpreted to affect the Property;

(k) if Borrower shall be in default under any other term, covenant or condition of the Note, this Deed of Trust or the Other Security Documents;

(l) if Borrower causes the Property and/or the ownership interests in Borrower (whether direct or indirect) to be used as collateral for any additional financing not set forth hereunder;

(m) if Guarantor or any member of Borrower is arrested in connection with a felony criminal offense that results in such person pleading guilty or no contest or which results in a conviction, or the death or incapacity of any Guarantor;

(n) intentionally omitted;

(o) the actual or threatened alteration, improvement, demolition or removal of any of the Improvements without the prior consent of Beneficiary;

(p) if any portion of the Debt is not paid on the Maturity Date;

(q) if Borrower fails to maintain at least one (1) independent director as required by that certain First Amendment to the Limited Liability Company Agreement of Borrower dated as of the date hereof;

(r) if Borrower or any Guarantor shall become in default beyond any applicable grace periods, under the terms of any other loan or agreement with Beneficiary; and

(s) in the event of any materially adverse change in the financial conditions of Borrower or any Guarantor;

(t) if a default or an Event of Default shall occur under any of the Hotel Agreements (as hereinafter defined), or if Borrower shall violate any of the terms and conditions of Section 72 hereof;

(u) if a default or an Event of Default shall occur under any of the Condominium Project's Constituent Documents (as hereinafter defined), or if Borrower shall violate any of the terms and conditions of Section 73 hereof;

(v) if Borrower commences any demolition of the existing building at the Property; and

(w) Borrower consummates a transaction which would cause this Deed of Trust or Beneficiary's exercise of its under this Deed of Trust, the Note, or the other Loan Documents to constitute a nonexempt prohibited transaction under ERISA (as defined below) or result in a violation of a State statute regulating governmental plans, subjecting Beneficiary to liability for violation of ERISA, the Code, a State statute or other similar law.

SECTION 22. **Remedies of Beneficiary.**

(a) Upon the occurrence of any Event of Default, (x) Borrower will pay, from the date of that Event of Default, and until the earlier of either (i) the Event of Default is cured to the extent permitted herein, in the Note or in the sole discretion of Beneficiary and there then exist no other Events of Default and (ii) the entire Debt is paid in full, whether prior to or subsequent to the entry of a judgment of foreclosure and sale and the satisfaction of any deficiency judgment, interest on the unpaid principal balance of the Note at the rate of Twenty-Four percent (24%) per annum or at the maximum interest rate which Borrower may by law pay, whichever is lower, (the "**Default Rate**"); and (y) Trustee may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Borrower and in and to the Property by Beneficiary itself or otherwise, including, without limitation, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Beneficiary may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Beneficiary:

(i) declare the entire Debt to be immediately due and payable;

(ii) institute a proceeding or proceedings, judicial or nonjudicial, by advertisement or otherwise, for the complete foreclosure of this Deed of Trust in which case the Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner; notwithstanding the foregoing, upon default of this Deed of Trust or the Note, or other obligation secured thereby, Beneficiary shall have the right to sell the Property by power of sale hereby granted pursuant to any other authorizing nonjudicial foreclosure.

(iii) with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Deed of Trust for the portion of the Debt then due and payable, subject to the continuing lien of this Deed of Trust for the balance of the Debt not then due;

(iv) sell for cash or upon credit the Property or any part thereof and all estate, claim, demand, right, title and interest of Borrower therein and rights of redemption thereof, pursuant to the power of sale or otherwise, at one or more sales, as an entirety or in parcels, at such

time and place, upon such terms and after such notice thereof as may be required or permitted by law;

(v) institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, or in any of the Other Security Documents;

(vi) recover judgment on the Note either before, during or after any proceedings for the enforcement of this Deed of Trust;

(vii) apply (including by ex parte application) for the appointment of a trustee, receiver, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of the Borrower, any Guarantor or of any person, firm or other entity liable for the payment of the Debt;

(viii) enforce Beneficiary's interest in the Leases and Rents and enter into or upon the Property, either personally or by its agents, nominees or attorneys and dispossess Borrower and its agents and servants therefrom, and thereupon Beneficiary may (A) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Property and conduct the business thereat; (B) complete any construction on the Property in such manner and form as Beneficiary deems advisable; (C) make alterations, additions, renewals, replacements and improvements to or on the Property; (D) exercise all rights and powers of Borrower with respect to the Property, whether in the name of Borrower or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents; and (E) apply the receipts from the Property to the payment of Debt, after deducting therefrom all expenses (including, without limitation, reasonable attorneys' fees and disbursements) incurred in connection with the aforesaid operations and all amounts necessary to pay the taxes, assessments insurance and other charges in connection with the Property, as well as just and reasonable compensation for the services of Beneficiary, its counsel, agents and employees;

(ix) pursue such other rights and remedies as may be available at law or in equity or under the UCC; or

(x) exercise Beneficiary's rights under Section 24 hereof.

In the event of a sale, by foreclosure or otherwise, of less than all of the Property, this Deed of Trust shall continue as a lien on the remaining portion of the Property.

(b) The proceeds of any sale made under or by virtue of this Section 22, together with any other sums which then may be held by Beneficiary under this Deed of Trust, whether under the provisions of this Section 22 or otherwise, shall be applied by Beneficiary to the payment of the Debt in such priority and proportion as Beneficiary in its sole discretion shall deem proper.

(c) Beneficiary may adjourn from time to time any sale by it to be made under or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale or sales; and, except as otherwise provided by any applicable provision of law, Beneficiary, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

(d) Upon the completion of any sale or sales pursuant hereto in accordance with all applicable laws, Beneficiary, or an officer of any court empowered to do so, shall execute and deliver to the accepted purchaser or purchasers a good and sufficient instrument, or good and sufficient instruments, conveying, assigning and transferring all estate, right, title and interest in and to the property and rights sold. Any sale or sales made under or by virtue of this Section 22, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of Borrower in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against Borrower and against any and all persons claiming or who may claim the same, or any part thereof from, through or under Borrower.

(e) Upon any sale made under or by virtue of this Section 22, whether made under a power of sale or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Beneficiary may bid for and acquire the Property or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the Debt the net sales price after deducting therefrom the expenses of the sale and costs of the action and any other sums which Beneficiary is authorized to deduct under this Deed of Trust and the Other Security Documents.

(f) No recovery of any judgment by Beneficiary and no levy of an execution under any judgment upon the Property or upon any other property of Borrower shall affect in any manner or to any extent the lien of this Deed of Trust upon the Property or any part thereof, or any liens, rights, powers or remedies of Beneficiary hereunder, but such liens, rights, powers and remedies of Beneficiary shall continue unimpaired as before.

(g) Beneficiary may terminate or rescind any proceeding or other action brought in connection with its exercise of the remedies provided in this Section 22 at any time before the conclusion thereof, as determined in Beneficiary's sole discretion and without prejudice to Beneficiary.

(h) Beneficiary may resort to any remedies and the security given by the Note, this Deed of Trust or in any of the Other Security Documents in whole or in part, and in such portions and in such order as determined by Beneficiary's sole discretion. No such action shall in any way be considered a waiver of any rights, benefits or remedies evidenced or provided by the

Note, this Deed of Trust or in any of the Other Security Documents. The failure of Beneficiary to exercise any right, remedy or option provided in the Note, this Deed of Trust or any of the other Other Security Documents shall not be deemed a waiver of such right, remedy or option or of any covenant or obligation secured by the Note, this Deed of Trust or any of the Other Security Documents. No acceptance by Beneficiary of any payment after the occurrence of any Event of Default and no payment by Beneficiary of any obligation for which Borrower is liable hereunder shall be deemed to waive or cure any Event of Default with respect to Borrower, or Borrower's liability to pay such obligation. No sale of all or any portion of the Property, no forbearance on the part of Beneficiary, and no extension of time for the payment of the whole or any portion of the Debt or any other indulgence given by Beneficiary to Borrower, shall operate to release or in any manner affect the interest of Beneficiary in the remaining Property or the liability of Borrower to pay the Debt. No waiver by Beneficiary shall be effective unless it is in writing and then only to the extent specifically stated. All costs and expenses of Beneficiary in exercising its rights and remedies under this Section 22 (including, without limitation, reasonable attorneys' fees and disbursements to the extent permitted by law), shall be paid by Borrower immediately upon notice from Beneficiary, with interest at the Default Rate for the period after notice from Beneficiary and such costs and expenses shall constitute a portion of the Debt and shall be secured by this Deed of Trust.

(i) The interests and rights of Beneficiary under the Note, this Deed of Trust or any of the Other Security Documents shall not be impaired by any indulgence, including, without limitation, (i) any renewal, extension or modification which Beneficiary may grant with respect to any of the Debt, (ii) any surrender, compromise, release, renewal, extension, exchange or substitution which Beneficiary may grant with respect to the Property or any portion thereof; or (iii) any release or indulgence granted to any maker, endorser, Guarantor or surety of any of the Debt.

SECTION 23. **Sale of Property; Multiple Collateral.**

(a) If the Property consists of two or more distinct parcels and this Deed of Trust is foreclosed, whether pursuant to the power of sale herein granted to Beneficiary, or otherwise, the Property, or any interest therein, may, at the discretion of Beneficiary, be sold in one or more parcels or in several interests or portions and in any order or manner as the Beneficiary may elect and specify in the notice of sale.

(b) If the indebtedness secured by this Deed of Trust is also secured by one or more other security instruments on property consisting of more than one functionally separate and distinct property and an Event of Default occurs under this Deed of Trust or any such other deed of trust which is cross-defaulted with this Deed of Trust, upon a foreclosure of this Deed of Trust and such other security instruments, whether pursuant to a power of sale or otherwise, the Property, or any interest therein, and the property encumbered by such other security instruments may, at the discretion of Beneficiary, be sold in the order designated by Beneficiary in the notice of sale.

SECTION 24. **Right to Cure Defaults.**

Upon the occurrence of any Event of Default, or if Borrower fails to make any

payment or to do any act as herein provided, Beneficiary may, but without any obligation hereunder, make or do the same in such manner and to such extent as Beneficiary may deem necessary to protect the security hereof. Beneficiary is authorized to enter upon the Property for such purposes, or appear in, defend, or bring any action or proceeding to protect its interest in the Property or to foreclose the Deed of Trust or collect the Debt, and the cost and expense thereof (including reasonable attorneys' fees to the extent permitted by law), with interest, shall constitute a portion of the Debt and shall be due and payable to Beneficiary upon demand. All such costs and expenses incurred by Beneficiary in remedying such Event of Default or in appearing in, defending, or bringing any such action or proceeding shall bear interest at the Default Rate, for the period from the date that such cost or expense was incurred by Beneficiary to the date of payment to Beneficiary, as provided in Section 22 hereof. All such costs and expenses incurred by Beneficiary together with interest thereon calculated at the Default Rate shall be deemed to constitute a portion of the Debt and be secured by this Deed of Trust and the Other Security Documents and shall be immediately due and payable upon demand by Beneficiary therefor.

SECTION 25. **Late Payment Charge.**

If any portion of the Debt is not paid when due, Borrower shall pay to Beneficiary upon demand an amount equal to ten percent (10%) of such unpaid portion of the Debt, to defray the expense incurred by Beneficiary in handling and processing such delinquent payment and to compensate Beneficiary for the loss of the use of such delinquent payment, and such amount shall be secured by this Deed of Trust and the Other Security Documents.

SECTION 26. **Prepayment After Event of Default.**

If following the occurrence of any Event of Default, Borrower shall tender payment of an amount sufficient to satisfy the Debt in whole or in part at any time prior to a foreclosure sale of the Property, and if at the time of such tender prepayment of the principal balance of the Note is not permitted by the Note, Borrower shall, in addition to the entire Debt, also pay to Beneficiary a sum equal to interest which would have accrued on the principal balance of the Note at the interest rate set forth in the Note from the date of such tender to the earlier of (i) the Maturity Date as defined in the Note, or (ii) the first day of the period during which prepayment of the principal balance of the Note would have been permitted together with a prepayment consideration equal to the prepayment consideration which would have been payable as of the first day of the period during which prepayment would have been permitted. If at the time of such tender prepayment of the principal balance of the Note is permitted, such tender by Borrower shall be deemed to be a voluntary prepayment of the principal balance of the Note, and Borrower shall, in addition to the entire Debt, also pay to Beneficiary the applicable prepayment consideration specified in the Note and this Deed of Trust.

SECTION 27. **Intentionally Omitted.**

SECTION 28. **Right of Entry.**

Beneficiary and its agents shall have the right to enter and inspect the Property during business hours upon reasonable advance notice to Beneficiary.

SECTION 29. **Appointment of Receiver.**

Beneficiary, upon the occurrence of an Event of Default or in any action to foreclose this Deed of Trust or in any non-judicial foreclosure proceeding commenced pursuant to the Texas Statutes or upon the actual or threatened waste to any part of the Property, shall be entitled to the appointment of a receiver without notice and without regard to the value of the Property as security for the Debt, or the solvency or insolvency of any person liable for the payment of the Debt.

SECTION 30. **Security Agreement.**

This Deed of Trust is both a real property deed of trust and a "security agreement" within the meaning of the UCC. The Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, including the Intangibles, of Borrower in the Property. Borrower, by executing and delivering this Deed of Trust, has granted and hereby grants to Beneficiary, as security for the Debt, a security interest in the Property to the full extent that the Property may be subject to the UCC (said portion of the Property so subject to the UCC being called in this Section 30 the "**Collateral**"). If an Event of Default shall occur, Beneficiary, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the UCC, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Beneficiary may deem necessary for the care, protection and preservation of the Collateral. Upon request or demand of Beneficiary, Borrower shall at its expense assemble the Collateral and make it available to Beneficiary at a convenient place acceptable to Beneficiary. Borrower shall pay to Beneficiary on demand any and all expenses, including legal expenses and attorneys' fees, incurred or paid by Beneficiary in protecting its interest in the Collateral and in enforcing its rights hereunder with respect to the Collateral. Any notice of sale, disposition or other intended action by Beneficiary with respect to the Collateral sent to Borrower in accordance with the provisions hereof at least five (5) days prior to such action, shall constitute commercially reasonable notice to Borrower. The proceeds of any disposition of the Collateral, or any part thereof, may be applied by Beneficiary to the payment of the Debt in such priority and proportions as Beneficiary in its discretion shall deem proper.

Borrower hereby gives to Beneficiary a continuing lien on, security interest in and right of set-off against all moneys, securities and other property of Borrower and the proceeds thereof, now on deposit or now or hereafter delivered, remaining with or in transit in any manner to Beneficiary, its correspondents, participants or its agents from or for Borrower, whether for safekeeping, custody, pledge, transmission, collection or otherwise or coming into possession of Beneficiary in any way, and also, any balance of any individual deposit account and credits of Borrower with, and any and all claims of Borrower against Beneficiary, at any time existing, as collateral security for the payment of the Debt and all of the other obligations of the Borrower under this Deed of Trust, including fees, contracted with or acquired by Beneficiary, whether joint, several, absolute, contingent, secured, matured or unmatured (for the purposes of this Section 30, collectively, the "**Liabilities**"), hereby authorizing Beneficiary at any time or times, without prior notice, to apply such balances, credits or claims, or any part thereof, to the Liabilities in such amounts as it may select, whether contingent, unmatured or otherwise, and whether any collateral

security therefor is deemed adequate or not. The collateral security described herein shall be in addition to any collateral security described in any separate agreement executed in connection with this Deed of Trust.

SECTION 31. **Actions and Proceedings.**

Beneficiary has the right to appear in and defend any action or proceeding brought with respect to the Property and to bring any action or proceeding, in the name and on behalf of Borrower, which Beneficiary, in its discretion, decides should be brought to protect its interest in the Property. Beneficiary shall, at its option, be subrogated to the lien of any deed of trust or other security instrument discharged in whole or in part by the Debt, and any such subrogation rights shall constitute additional security for the payment of the Debt.

SECTION 32. **Waiver of Jury Trial and Counterclaim.**

BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, DOES HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THIS AGREEMENT OR ANY CONDUCT, ACT OR OMISSION OF BENEFICIARY, TRUSTEE OR BORROWER, OR ANY OF THEIR DIRECTORS, OFFICERS, PARTNERS, MEMBERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH BENEFICIARY OR BORROWER, IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. BORROWER HEREBY WAIVES THE RIGHT TO ASSERT A COUNTERCLAIM IN ANY ACTION OR PROCEEDING BROUGHT AGAINST IT BY BENEFICIARY AND/OR TRUSTEE.

SECTION 33. **Marshalling and Other Matters.**

Borrower hereby waives, to the extent permitted by law, the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Property or any part thereof or any interest therein. Further, Borrower hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of the Deed of Trust on behalf of Borrower, and on behalf of each and every person acquiring any interest in or title to the Property subsequent to the date of this Deed of Trust and on behalf of all persons to the extent permitted by applicable law.

SECTION 34. **Recovery of Sums Required To Be Paid.**

Beneficiary shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right of Beneficiary thereafter to bring an action of foreclosure, or any other action, for a default or defaults by Borrower existing at the time such earlier action was commenced.

SECTION 35. **Hazardous Materials.**

Borrower represents and warrants that, to the best of Borrower's knowledge, after due inquiry and investigation, (a) there are no "Hazardous Materials" (as such quoted term is hereinafter defined) on the Property, and (b) no owner or occupant nor any prior owner or occupant of the Property has received any notice or advice from any governmental agency or any source whatsoever with respect to Hazardous Materials on, from or affecting the Property. Borrower covenants that the Property shall be kept free of Hazardous Materials, and neither Borrower nor any occupant of the Property shall use, transport, store, dispose of or in any manner deal with Hazardous Materials on the Property. Borrower shall comply with and ensure compliance by all occupants of the Property with, all applicable federal, state and local laws, ordinances, rules and regulations, and shall keep the Property free and clear of any liens imposed pursuant to such laws, ordinances, rules and regulations. In the event that Borrower receives any notice or advice from any governmental agency or any source whatsoever with respect to Hazardous Materials on, from or affecting the Property, Borrower shall immediately notify Beneficiary. Borrower shall conduct and complete all investigations, studies, sampling, and testing, and all remedial actions necessary to clean up and remove all Hazardous Materials from the Property in accordance with all applicable federal, state and local laws, ordinances, rules and regulations. The term **"Hazardous Materials"** as used in this Deed of Trust shall include, without limitation, asbestos, gasoline, petroleum products, explosives, radioactive materials, polychlorinated biphenyls or related or similar materials, or any other substance or material defined as a hazardous or toxic substance or material by any federal, state or local law, ordinance, rule or regulation. The obligations and liabilities of Borrower under this Section 35 shall survive any entry of a judgment of foreclosure or the delivery of a deed in lieu of foreclosure of this Deed of Trust.

SECTION 36. **Indemnification.**

Borrower shall protect, defend, indemnify and save harmless Beneficiary and Trustee from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including without limitation reasonable attorneys' fees and expenses), imposed upon or incurred by or asserted against Beneficiary or Trustee by reason of (a) ownership of this Deed of Trust, the Property or any interest therein or receipt of any Rents; (b) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (c) any use, nonuse or condition in, on or about the Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (d) any failure on the part of Borrower to perform or comply with any of the terms of this Deed of Trust; (e) performance of any labor or services or the furnishing of any materials or other property in respect of the Property or any part thereof; (f) the failure of any person to file timely with the Internal Revenue Service an accurate Form 1099-B, Statement for Recipients of Proceeds from Real Estate, Broker and Barter Exchange Transactions, which may be required in connection with this Deed of Trust, or to supply a copy thereof in a timely fashion to the recipient of the proceeds of the transaction in connection with which this Deed of Trust is made; (g) any claim for brokerage fees or other consideration from any broker in connection with the loan secured by this Deed of Trust, except to the extent, if any, Beneficiary may have agreed pursuant to a separate agreement to compensate the broker engaged by Borrower; (h) the presence, disposal, escape, seepage, leakage, spillage, discharge, emission, release, or threatened release of any Hazardous

Materials, from, or affecting the Property or any other property; (i) any personal injury (including wrongful death) or property damage (real or personal) arising out of or related to such Hazardous Materials; (j) any lawsuit brought or threatened, settlement reached, or government order relating to such Hazardous Materials; or (k) any violation of laws, orders, regulations, requirements, or demands of government authorities, which are based upon or in any way related to such Hazardous Materials including, without limitation, the costs and expenses of any remedial action, attorney and consultant fees, investigation and laboratory fees, court costs, and litigation expenses. Any amounts payable to Beneficiary or Trustee by reason of the application of this Section 36 shall become immediately due and shall bear interest at the Default Rate from the date loss or damage is sustained by Beneficiary or Trustee until paid. The obligations of Borrower under this Section 36 shall survive any termination, satisfaction, assignment, entry of judgment of foreclosure or delivery of a deed in lieu of foreclosure of this Deed of Trust.

SECTION 37. **Notices.**

Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower, the Borrower's successors or assigns provided for in this Deed of Trust or in the Note or pursuant to the Texas Statutes in a proceeding to foreclose this Deed of Trust by power of sale shall be given in writing by sending such notice by a recognized overnight courier with postage, freight and any other charges paid, with a receipt therefor, addressed to Borrower at Borrower's address stated herein or at such other address as Borrower may designate by notice to Beneficiary as provided herein, and (b) any notice to Beneficiary shall be given in writing by sending such notice by a recognized overnight courier, with postage, freight and other charges paid, with a receipt therefor, addressed to Beneficiary at Beneficiary's address stated herein or to such other address as Beneficiary may designate by notice to Borrower as provided herein, with a copy of same given in the manner herein provided to Kriss & Feuerstein LLP, 360 Lexington Avenue, New York, New York 10017, Attn.: Jerold C. Feuerstein, Esq. Except for any notice deemed under applicable law to have been given at a different time, any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Beneficiary on the earlier of (a) the first day after such notice is mailed or deposited with a courier in a manner designated herein or (b) the day such notice is actually received.

SECTION 38. **Authority.**

(a) Borrower (and the undersigned representative of Borrower, if any) has full power, authority and legal right to execute, deliver and perform its obligations pursuant to this Deed of Trust, and to mortgage, give, grant, bargain, sell, alienate, enfeoff, convey, confirm, pledge, hypothecate and assign the Property pursuant to the terms hereof and to keep and observe all of the terms of this Deed of Trust on Borrower's part to be performed.

(b) Borrower represents and warrants that Borrower is not a "foreign person" within the meaning of 1445(f)(3) of the Internal Revenue Code of 1986, as amended and the related Treasury Department regulations, including temporary regulations.

SECTION 39. **Consent to Jurisdiction.**

FOR ANY CLAIM, ACTION, OR DISPUTE ARISING UNDER, OR TO

INTERPRET OR APPLY, THIS DEED OF TRUST, THE NOTE OR ANY OTHER SECURITY DOCUMENTS, OR TO RESOLVE ANY DISPUTE ARISING UNDER THE FOREGOING OR THE RELATIONSHIP BETWEEN THE PARTIES, BORROWER IRREVOCABLY SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK AND THE UNITED STATES DISTRICT COURT LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK CITY, NEW YORK, AND APPELLATE COURTS FROM ANY OF SUCH COURTS. BORROWER IRREVOCABLY WAIVES ANY OBJECTION THAT IT MAY HAVE AT ANY TIME TO VENUE OF ANY SUCH SUIT, ACTION, OR PROCEEDING BROUGHT IN ANY SUCH COURT, INCLUDING ANY CLAIM THAT ANY SUCH SUIT, ACTION, OR PROCEEDING SO BROUGHT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. NOTHING IN THIS DEED OF TRUST, THE NOTE OR OTHER SECURITY DOCUMENTS SHALL BE DEEMED TO PRECLUDE BENEFICIARY AND/OR TRUSTEE FROM BRINGING ANY SUIT, ACTION, OR PROCEEDING RELATING TO THIS DEED OF TRUST, THE NOTE OR OTHER SECURITY DOCUMENTS OR THE DEBT IN ANY OTHER JURISDICTION WHERE BENEFICIARY AND/OR TRUSTEE COULD OTHERWISE PROPERLY BRING SUCH SUIT, ACTION, OR PROCEEDING. BORROWER FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO BORROWER AT THE ADDRESS SET FORTH ON PAGE 1 HEREOF, AND CONSENTS AND AGREES THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHALL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).

SECTION 40. **Participation/Assignment of Interests in this Deed of Trust.**

Borrower acknowledges that Beneficiary may sell and assign participation interests or other types of interests in this Deed of Trust to one or more domestic or foreign banks, insurance companies, pension funds, trusts or other institutional lenders or other persons, parties or investors (including, but not limited to, grantor trusts, owner trusts, special purpose corporations, REMICs, real estate investment trusts or other similar or comparable investment vehicles as may be selected by Beneficiary in its sole and absolute discretion) on terms and conditions satisfactory to Beneficiary in its sole and absolute discretion. Borrower grants to Beneficiary, and shall cause each Guarantor and other person or party associated or connected with this Deed of Trust or the Collateral therefore to grant to Beneficiary the right to distribute on a confidential basis financial and other information concerning Borrower, each such Guarantor and other person or party and the property encumbered by this Deed of Trust and any other pertinent information with respect to this Deed of Trust to any party who has purchased a participation interest in this Deed of Trust who has expressed an interest in purchasing any such interest in this Deed of Trust.

On a confidential basis, Beneficiary may provide to any actual or potential purchaser, transferee, assignee, servicer, participant or investor or any rating agency, all documents and information which Beneficiary now has or may hereafter acquire relating to the Loan, Borrower, Guarantor any other party to the Loan or the Property which shall have been furnished by or on behalf of Borrower, Guarantor or any other party to the Loan, as Beneficiary in its discretion determines is desirable. Borrower shall cooperate with Beneficiary with the same,

including providing such information and documents as Beneficiary may reasonably request.

Beneficiary, without in any way limiting Beneficiary's other rights under the Loan Documents, in its sole and absolute discretion, shall have the right, at any time, with respect to all or any portion of the Loan, to modify, split and/or sever all or any portion of the Loan as hereinafter provided. Without limiting the foregoing, Beneficiary may (i) cause the Note and the Deed of Trust to be split into a first and second loan, (ii) create one or more senior and subordinate notes (i.e., an A/B or A/B/C structure), (iii) create multiple components of the Note or Notes (and allocate or reallocate the principal balance of the Loan among such components), (iv) otherwise sever the Loan into two (2) or more loans secured by mortgages and by a pledge of partnership or membership interests (directly or indirectly) in Borrower (i.e., a senior loan/mezzanine loan structure), in each such case described in clauses (i) through (iv) above, in whatever proportion and whatever priority Beneficiary determines, and (v) modify the Loan Documents with respect to the newly created Notes or components of the Note or Notes. Notwithstanding the foregoing, no such amendment described above shall (i) modify or amend any material economic term of the Loan, or (ii) materially increase the obligations, or decrease the rights, of Borrower under the Loan Documents; provided, however, in each such instance the outstanding principal balance of all the Notes evidencing the Loan (or components of such Notes) immediately after the effective date of such modification equals the outstanding principal balance of the Loan immediately prior to such modification and the weighted average of the interest rates for all such Notes (or components of such Notes) immediately after the effective date of such modification equals the interest rate of the original Note immediately prior to such modification. If requested by Beneficiary, Borrower (and Borrower's constituent members, if applicable, and Guarantors) shall execute within five (5) Business Days after such request, such documentation as Beneficiary may reasonably request to evidence and/or effectuate any such modification or severance. At Beneficiary's election, each note comprising the Loan may be subject to one or more securitizations. Beneficiary shall have the right to modify the Note and/or Notes and any components in accordance herewith, provided that such modification shall comply with the terms hereof, it shall become immediately effective.

SECTION 41. **Waiver of Notice.**

Borrower shall not be entitled to any notices of any nature whatsoever from Beneficiary and/or Trustee except with respect to matters for which this Deed of Trust specifically and expressly provides for the giving of notice by Beneficiary to Borrower and except with respect to matters for which Beneficiary is required by applicable law to give notice, and Borrower hereby expressly waives the right to receive any notice from Beneficiary with respect to any matter for which this Deed of Trust does not specifically and expressly provide for the giving of notice by Beneficiary to Borrower.

SECTION 42. **Remedies of Borrower.**

In the event that a claim or adjudication is made that Beneficiary has acted unreasonably or unreasonably delayed acting in any case where by law or under the Note, this Deed of Trust or the Other Security Documents, it has an obligation to act reasonably or promptly, Beneficiary shall not be liable for any monetary damages, and Borrower's remedies shall be limited to injunctive relief or declaratory judgment. Under no circumstances shall Beneficiary and/or any of its parents, affiliates, subsidiaries or other related parties and/or any of their

respective officers, directors, shareholders, agents, and/or employees (all of the foregoing being collectively referred to as the "Beneficiary Parties") have any personal liability in connection with the Note, this Deed of Trust and/or any of the other Security Documents or anything, matter or circumstance related thereto.

SECTION 43. **Sole Discretion of Beneficiary.**

Wherever pursuant to this Deed of Trust, Beneficiary exercises any right given to it to approve or disapprove, or any arrangement or term is to be satisfactory to Beneficiary, the decision of Beneficiary to approve or disapprove or to decide that arrangements or terms are satisfactory or not satisfactory shall be in the sole discretion of Beneficiary, and shall be final and conclusive, except as may be otherwise expressly and specifically provided herein.

SECTION 44. **Non-Waiver.**

The failure of Beneficiary and/or Trustee to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Deed of Trust. Borrower shall not be relieved of Borrower's obligations hereunder by reason of (a) the failure of Beneficiary to comply with any request of Borrower or Guarantors to take any action to foreclose this Deed of Trust or otherwise enforce any of the provisions hereof or of the Note or the Other Security Documents, (b) the release, regardless of consideration, of the whole or any part of the Property, or of any person liable for the Debt or any portion thereof, or (c) any agreement or stipulation by Beneficiary extending the time of payment or otherwise modifying or supplementing the terms of the Note, this Deed of Trust, or the Other Security Documents. Beneficiary may resort for the payment of the Debt to any other security held by Beneficiary in such order and manner as Beneficiary, in its discretion, may elect. Beneficiary may take action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Beneficiary thereafter to foreclose this Deed of Trust. The rights of Beneficiary under this Deed of Trust shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Beneficiary and/or Trustee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision. Beneficiary and Trustee shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

SECTION 45. **Security Deposits.**

If Borrower leases the Property and collects security deposits, Borrower shall establish with Beneficiary a rent security account to which shall be transferred and maintained all security deposits in connection with the Leases affecting the Property. Upon an Event of Default under this Deed of Trust, Beneficiary shall be permitted to utilize the security deposits in accordance with the applicable underlying leases.

SECTION 46. **No Oral Change.**

This Deed of Trust, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Beneficiary, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or

termination is sought.

SECTION 47. **Liability.**

If Borrower consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several. This Deed of Trust shall be binding upon and inure to the benefit of Borrower and Beneficiary and their respective successors and assigns forever.

SECTION 48. **Inapplicable Provisions.**

If any term, covenant or condition of the Note or this Deed of Trust is held to be invalid, illegal or unenforceable in any respect, the Note and this Deed of Trust shall be construed without such provision.

SECTION 49. **Headings, etc.**

The headings and captions of various Sections of this Deed of Trust are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

SECTION 50. **Duplicate Originals.**

This Deed of Trust may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be an original.

SECTION 51. **Definitions.**

Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Deed of Trust may be used interchangeably in singular or plural form and the word "**Borrower**" shall mean "**each Borrower and any subsequent owner or owners of the Property or any part thereof or any interest therein**", the word "**Beneficiary**" shall mean "**Beneficiary and any subsequent holder of the Note**", the word "**person**" shall include an individual, corporation, limited liability company, partnership, trust, unincorporated association, government, governmental authority, and any other entity, and the words "**Property**" shall include any portion of the Property and any interest therein. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

SECTION 52. **Intentionally Omitted.**

SECTION 53. **Intentionally Omitted.**

SECTION 54. **Jurisdiction; Litigation Rights.**

**THE PARTIES HAVE ELECTED TO HAVE THIS DEED OF TRUST AND THEIR RIGHTS AND OBLIGATIONS HEREUNDER CONSTRUED AND ENFORCED IN**

**ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF NEW YORK WITHOUT APPLICATION OR REGARD TO ANY CONFLICT OF LAWS OR RELATED PRINCIPALS. THE INVALIDITY, ILLEGALITY OR UNENFORCEABILITY OF ANY PROVISION OF THIS DEED OF TRUST SHALL NOT AFFECT OR IMPAIR THE VALIDITY, LEGALITY OR ENFORCEABILITY OF THE REMAINDER OF THIS DEED OF TRUST, AND TO THIS END, THE PROVISIONS OF THIS DEED OF TRUST ARE DECLARED TO BE SEVERABLE.**

(a) NOTWITHSTANDING THE FOREGOING CHOICE OF LAW:

(i) THE LAWS GOVERNING THE CREATION, PERFECTION AND MANNER AND EFFECT OF RECORDING OF LIENS AND SECURITY INTERESTS, AND THE PROCEDURES FOR ENFORCEMENT BY BENEFICIARY AND/OR TRUSTEE OF THEIR FORECLOSURE, POWER OF SALE AND OTHER REMEDIES AGAINST BORROWER UNDER THIS DEED OF TRUST, THE NOTE AND UNDER THE OTHER SECURITY DOCUMENTS WITH RESPECT TO THE PROPERTY OR OTHER ASSETS SITUATED IN THE STATE OF TEXAS, INCLUDING BY WAY OF ILLUSTRATION, BUT NOT IN LIMITATION, ACTIONS FOR FORECLOSURE, FOR INJUNCTIVE RELIEF OR FOR THE APPOINTMENT OF A RECEIVER SHALL BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS;

(ii) BENEFICIARY AND TRUSTEE SHALL COMPLY WITH APPLICABLE LAW IN THE STATE OF TEXAS TO THE EXTENT REQUIRED BY THE LAW OF SUCH JURISDICTION IN CONNECTION WITH THE FORECLOSURE AND/OR POWER OF SALE OF THE SECURITY INTERESTS AND LIENS CREATED UNDER THIS DEED OF TRUST, THE NOTE AND THE OTHER SECURITY DOCUMENTS WITH RESPECT TO THE PROPERTY OR OTHER ASSETS SITUATED IN THE STATE OF TEXAS; AND

(iii)PROVISIONS OF FEDERAL LAW AND THE LAW OF THE STATE OF TEXAS SHALL APPLY IN DEFINING THE TERMS HAZARDOUS SUBSTANCES AND ENVIRONMENTAL LAWS (AS SUCH TERMS ARE DEFINED IN THE OTHER SECURITY DOCUMENTS) APPLICABLE TO THE PROPERTY.

(iv) THE PERFECTION AND PRIORITY OF THIS DEED OF TRUST SHALL BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS.

NOTHING CONTAINED HEREIN OR ANY OTHER PROVISIONS OF THIS DEED OF TRUST, THE NOTE OR OTHER SECURITY DOCUMENTS SHALL BE CONSTRUED TO PROVIDE THAT THE SUBSTANTIVE LAWS OF THE STATE OF TEXAS SHALL APPLY TO ANY PARTIES, RIGHTS AND OBLIGATIONS UNDER THE NOTE, THIS DEED OF TRUST OR THE OTHER SECURITY DOCUMENTS, WHICH, EXCEPT AS EXPRESSLY PROVIDED IN CLAUSES (i), (ii) AND (iii) OF THIS ARTICLE, ARE AND SHALL CONTINUE TO BE

GOVERNED BY THE SUBSTANTIVE LAW OF THE STATE OF NEW YORK, EXCEPT AS SET FORTH IN CLAUSES (i), (ii) AND (iii) OF THIS ARTICLE. IN ADDITION, THE FACT THAT PORTIONS OF THE NOTE, THIS DEED OF TRUST AND THE OTHER SECURITY DOCUMENTS MAY INCLUDE PROVISIONS DRAFTED TO CONFORM TO THE LAW OF THE STATE OF TEXAS IT IS NOT INTENDED, NOR SHALL IT BE DEEMED, IN ANY WAY, TO DEROGATE THE PARTIES' CHOICE OF LAW AS SET FORTH OR REFERRED TO IN THE NOTE, THIS DEED OF TRUST OR IN THE OTHER SECURITY DOCUMENTS. THE PARTIES FURTHER AGREE THAT THE BENEFICIARY MAY ENFORCE ITS RIGHTS UNDER THE NOTE, THIS DEED OF TRUST AND THE OTHER SECURITY DOCUMENTS INCLUDING, BUT NOT LIMITED TO, ITS RIGHTS TO SUE THE BORROWER OR TO COLLECT ANY OUTSTANDING DEBT IN ACCORDANCE WITH APPLICABLE LAW.

(b) BORROWER HEREBY IRREVOCABLY CONSENTS TO THE NON-EXCLUSIVE JURISDICTION OF THE COURTS OF NEW YORK, OR THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW YORK (A " NEW YORK FORUM") OR IN BENEFICIARY'S SOLE DISCRETION, THE COURTS OF THE STATE OF TEXAS OR ANY UNITED STATES DISTRICT COURT LOCATED IN TEXAS, IN ANY AND ALL ACTIONS AND PROCEEDINGS ARISING HEREUNDER AND UNDER THE OTHER LOAN DOCUMENTS TO THE MAXIMUM EXTENT PERMITTED BY LAW AND IRREVOCABLY AGREES TO SERVICE OF PROCESS BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO THE ADDRESS OF BORROWER SET FORTH IN THE DEED OF TRUST. BORROWER WAIVES AND SHALL NOT INTERPOSE ANY OBJECTION OF FORUM NON CONVENIENS, OR TO VENUE, AND WAIVES ANY RIGHT TO SEEK TO REMOVE ANY PROCEEDING COMMENCED BY BENEFICIARY IN ANY NEW YORK FORUM (OR OTHER FORUM CHOSEN BY BENEFICIARY IN ACCORDANCE HEREWITH) TO ANY OTHER VENUE AND WAIVES ANY RIGHT TO OBJECT TO BENEFICIARY SEEKING TO REMOVE TO A NEW YORK FORUM ANY PROCEEDING COMMENCED BY BORROWER IN ANY FORUM OR VENUE OTHER THAN A NEW YORK FORUM AND BORROWER CONSENTS TO ANY AND ALL RELIEF ORDERED BY ANY SUCH NEW YORK FORUM.

(c) WAIVER OF JURY TRIAL AND COUNTERCLAIM. BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, DOES HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THIS AGREEMENT OR ANY CONDUCT, ACT OR OMISSION OF BENEFICIARY OR BORROWER, OR ANY OF THEIR DIRECTORS, OFFICERS, PARTNERS, MEMBERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH BENEFICIARY OR BORROWER, IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. BORROWER HEREBY WAIVES THE RIGHT TO ASSERT A COUNTERCLAIM IN ANY ACTION OR PROCEEDING BROUGHT AGAINST IT BY BENEFICIARY.

SECTION 55. **Joint and Several Obligation.**

Notwithstanding anything to the contrary, the representations, warranties,

covenants and/or agreements made by Borrower (should the Borrower consist of one or more individuals or entities), herein and/or in any of the other Security Documents and the liability of the Borrower hereunder or thereunder, is joint and several.

SECTION 56. **Purpose of Loan.**

The Borrower represents to Beneficiary that the loan evidenced by the Note and secured by this Deed of Trust ("**Loan**") is for business or commercial purposes only and not for personal, family, consumer or household purposes. Borrower acknowledges that Beneficiary has made the Loan to Borrower in reliance upon the above representation by Borrower. The above representation by Borrower will survive the closing and repayment of the Loan.

SECTION 57. **Felony Criminal Offense.**

The Borrower represents that no Guarantor or member of Borrower have ever been convicted of a felony criminal offense.

SECTION 58. **Patriot Act.**

Borrower will use its good faith and best efforts to comply with the Patriot Act (as defined below) and all applicable requirements of governmental authorities having jurisdiction of the Borrower and the Property, including those relating to money laundering and terrorism. The Beneficiary shall have the right to audit the Borrower's compliance with the Patriot Act and all applicable requirements of governmental authorities having jurisdiction of the Borrower and the Property, including those relating to money laundering and terrorism. In the event that the Borrower fails to comply with the Patriot Act or any such requirements of governmental authorities, then the Beneficiary may, at its option, cause the Borrower to comply therewith and any and all reasonable costs and expenses incurred by the Beneficiary in connection therewith shall be secured by this Deed of Trust and the other Loan Documents and shall be immediately due and payable. For purposes hereof, the term "**Patriot Act**" means the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT ACT) Act of 2001, as the same may be amended from time to time, and corresponding provisions of future laws.

Neither the Borrower nor any partner in the Borrower or member of such partner nor any owner of a direct or indirect interest in the Borrower (a) is listed on any Government Lists (as defined below), (b) is a person who has been determined by competent authority to be subject to the prohibitions contained in Presidential Executive Order No. 13224 (Sept. 23, 2001) or any other similar prohibitions contained in the rules and regulations of OFAC (as defined below) or in any enabling legislation or other Presidential Executive Orders in respect thereof, (c) has been previously indicted for or convicted of any felony involving a crime or crimes of moral turpitude or for any Patriot Act Offense (as defined below), or (d) is not currently under investigation by any governmental authority for alleged criminal activity. For purposes hereof, the term "**Patriot Act Offense**" means any violation of the criminal laws of the United States of America or of any of the several states, or that would be a criminal violation if committed within the jurisdiction of the United States of America or any of the several states, relating to terrorism or the laundering of monetary instruments, including any offense under (a) the criminal laws against terrorism; (b) the

criminal laws against money laundering, (c) the Bank Secrecy Act, as amended, (d) the Money Laundering Control Act of 1986, as amended, or the (e) Patriot Act. "Patriot Act Offense" also includes the crimes of conspiracy to commit, or aiding and abetting another to commit, a Patriot Act Offense. For purposes hereof, the term **"Government Lists"** means (i) the Specially Designated Nationals and Blocked Persons Lists maintained by Office of Foreign Assets Control (**"OFAC"**), (ii) any other list of terrorists, terrorist organizations or narcotics traffickers maintained pursuant to any of the Rules and Regulations of OFAC that Beneficiary notified Borrower in writing is now included in "Governmental Lists", or (iii) any similar lists maintained by the United States Department of State, the United States Department of Commerce or any other government authority or pursuant to any Executive Order of the President of the United States of America that Beneficiary notified Borrower in writing is now included in "Governmental Lists".

SECTION 59. **Entire Agreement.**

The Note, this Deed of Trust and the Other Security Documents constitute the entire understanding and agreement between Borrower and Beneficiary with respect to the transactions arising in connection with the Debt (as such term is defined in the Note) and supersede all prior written or oral understandings and agreements between Borrower and Beneficiary with respect thereto. Borrower hereby acknowledges that, except as incorporated in writing in the Note, this Deed of Trust and the Other Security Documents, there are not, and were not, and no persons are or were authorized by Beneficiary to make any representations, understandings, stipulations, agreements or promises, oral or written, with respect to the transaction which is the subject of the Note, this Deed of Trust and the Other Security Documents. The Borrower further recognizes that, in general, borrowers who experience difficulties in honoring their loan obligations, in an effort to inhibit or impede lenders from exercising the rights and remedies available to lenders pursuant to mortgages, notes, loan agreements or other instruments evidencing or affecting loan transactions, frequently present in court the argument, without merit, that some loan officer or administrator of the lender made an oral modification or made some statement that could be interpreted as an extension or modification or amendment of one or more debt instruments and that the borrower relied to its detriment upon such "oral modification of the loan document". For that reason, and in order to protect the Beneficiary from such allegations in connection with the transactions contemplated by this Deed of Trust and in the Note and Other Security Documents, the Borrower acknowledges that this Deed of Trust, the Note, the Other Security Documents, and all instruments referred to in any of them can be extended, modified or amended only in writing executed by the Beneficiary and that none of the rights and benefits of the Beneficiary can be waived permanently except in a written document executed by the Beneficiary. The Borrower further acknowledges the Borrower's understanding that no officer or administrator of the Beneficiary has the power or the authority from the Beneficiary to make an oral extension or modification or amendment of any such instrument or agreement on behalf of the Beneficiary.

SECTION 60. **Intentionally Omitted.**

SECTION 61. **Financing Right of First Refusal.**

Borrower and Guarantor hereby grant to Beneficiary a right of first refusal with respect to any refinancing of the Debt or the Property (the **"First Refusal Right"**), whereby Beneficiary shall have the right but not the obligation (unless and until it commits in writing to do

so) to provide replacement financing for the Debt on such terms as Beneficiary and Borrower may agree or on such terms as may be set forth in a bona fide executed letter of intent, term sheet or loan commitment from another lender (which must be a third party lender, unaffiliated with, and unrelated to, Borrower or Guarantor) containing all of the material terms and conditions of the proposed refinancing (the "**Other Financing Offer**"). Should Borrower or Guarantor receive any such Other Financing Offer which it or they desire to pursue, same shall immediately be delivered to Beneficiary and Beneficiary shall have the right (but not the obligation), exercisable by Beneficiary within ten (10) business days of Beneficiary's receipt of the Other Financing Offer, to provide a loan offer for a refinancing of the Property on substantially the same terms and conditions as set forth in the Other Financing Offer. Should Beneficiary choose to exercise its First Refusal Right hereunder, Beneficiary shall have the right to contact said third party lender and verify the Other Financing Offer and the facts and information on which it was based and Borrower shall provide Beneficiary such executed releases and other documents as may be necessary to cause the third party lender to provide all relevant information to Beneficiary. Beneficiary shall be deemed to have properly and effectively exercised its First Refusal Right hereunder if it issues to Borrower and Guarantor, Beneficiary's term sheet or loan offer within ten (10) business days of Beneficiary's receipt of the Other Financing Offer. If Beneficiary fails to respond within said ten (10) business day period then Beneficiary shall be deemed to have waived or chosen not to exercise its First Refusal Right as to said Other Financing Offer but said First Refusal Right shall be deemed to have survived as to (a) any other or future Other Financing Offers received by Borrower, and (b) any modification to any Other Financing Offer previously delivered to Beneficiary.

SECTION 62. **Single Asset Real Estate.**

**Borrower hereby represents and warrants that the Property constitutes "single asset real estate" as defined in, and pursuant to, Section 101(51B) of the United States Bankruptcy Code.**

SECTION 63. **Savings Clause.**

Beneficiary hereby irrevocably agrees that the obligations of each Borrower under this Deed of Trust and the Note are limited to the maximum amount that would not render each Borrower's obligations subject to avoidance under applicable fraudulent conveyance provisions of the United States Bankruptcy Code. Each Borrower hereby represents that each of the respective Properties, based on appraisals thereof, are sufficient to secure the Debt. By virtue of the respective contributions of each of the Properties to the lien of this Deed of Trust, each Borrower hereby represents that each is solvent as of the date hereof. Nothing in this Section shall be construed so as to limit the obligations of the Guarantor under their guarantee(s).

SECTION 64. **Publicity.**

**Borrower agrees that Beneficiary may issue press releases concerning its financing of the Property pursuant to the Note, this Deed of Trust and the Other Security Documents. Further, if Beneficiary is financing any construction at the Property, whether pursuant to the Note, this Deed of Trust or the Other Security Documents, Beneficiary shall**

**be entitled to maintain a sign of reasonable dimension and location at the construction site advertising and promoting such financing.**

SECTION 65. **Single Purpose Entity.**

Borrower's organizational documents shall provide that until such time that the Debt is paid in full that:

(a) Borrower has not owned, does not own and will not own any asset or property other than (i) the Property, and (ii) incidental personal property necessary for the ownership, management or operation of the Property.

(b) Borrower has not engaged, does not engage, and will not engage in any business other than the ownership, management and operation of the Property and Borrower will conduct and operate its business as presently conducted and operated.

(c) Borrower has not entered and is not a party to and will not enter into or be a party to any contract or agreement with any affiliate of Borrower, any constituent party of Borrower or any affiliate of any constituent party, except in the ordinary course of business and on terms and conditions that are disclosed to Beneficiary in advance and that are intrinsically fair, commercially reasonable and substantially similar to those that would be available on an arms-length basis with third parties other than any such party.

(d) Borrower has not incurred and will not incur any indebtedness other than (i) the Loan and (ii) unsecured trade payables and operational debt not evidenced by a note and in an aggregate amount not exceeding one percent (1%) of the original principal amount of the Loan at any one time; provided that any indebtedness incurred pursuant to sub-clause (ii) shall be (x) not more than sixty (60) days past due and (y) incurred in the ordinary course of business. No indebtedness other than the Loan may be secured (subordinate or pari passu) by the Property.

(e) Borrower has not made and will not make any loans or advances to any individual, sole proprietorship, partnership, limited liability partnership, joint venture, trust, unincorporated organization, association, corporation, limited liability company, institution, entity, party or government (whether territorial, national, federal, state, county, city, municipal or otherwise, including, without limitation, any instrumentality, division, agency, body or department thereof) (including any affiliate or constituent party) (a "**Person**"), and has not acquired and shall not acquire obligations or securities of its affiliates.

(f) Borrower is and will remain solvent and Borrower has paid and will pay its debts and liabilities (including, as applicable, shared personnel and overhead expenses) from its assets as the same shall become due.

(g) Borrower has done or caused to be done and will do all things necessary to observe organizational formalities and preserve its existence, and Borrower will not (i) terminate or fail to comply with the provisions of its organizational documents, or (ii) unless Beneficiary has consented, amend, modify or otherwise change its partnership certificate, partnership agreement, articles of incorporation and bylaws, operating agreement, trust or other organizational documents.

(h) Borrower has maintained and will maintain all of its accounts, books, records, financial statements and bank accounts separate from those of its affiliates and any other Person. Borrower's assets have not been and will not be listed as assets on the financial statement of any other Person; provided, however, that Borrower's assets may be included in a consolidated financial statement of its affiliates if (i) appropriate notation shall be made on such consolidated financial statements to indicate the separateness of Borrower and such affiliates and to indicate that Borrower's assets and credit are not available to satisfy the debts and other obligations of such affiliates or any other Person, and (ii) such assets shall be listed on Borrower's own separate balance sheet. Borrower has and will file its own tax returns (to the extent Borrower is required to file any such tax returns) and will not file a consolidated federal income tax return with any other Person. Borrower has maintained and shall maintain its books, records, resolutions and agreements as official records.

(i) Borrower has been and will be, and has held and at all times will hold itself out to the public as, a legal entity separate and distinct from any other entity (including any affiliate of Borrower or any constituent party of Borrower), has corrected and shall correct any known misunderstanding regarding its status as a separate entity, has conducted and shall conduct business in its own name, has not identified and shall not identify itself or any of its affiliates as a division or part of the other, and has maintained and shall maintain and utilize separate stationery, invoices and checks bearing its own name.

(j) Borrower has maintained and will maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations.

(k) Neither Borrower nor any constituent party has sought or will seek or effect the liquidation, dissolution, winding up, consolidation or merger, in whole or in part, of Borrower.

(l) Borrower has not commingled and will not commingle the funds and other assets of Borrower with those of any affiliate or constituent party or any other Person and has held and will hold all of its assets in its own name.

(m) Borrower has maintained and will maintain its assets in such a manner that it will not be costly or difficult to segregate, ascertain or identify its individual assets from those of any affiliate or constituent party or any other Person.

(n) Borrower has not assumed or guaranteed or become obligated for the debts of any other Person and has not held itself out to be responsible for or have its credit available to satisfy the debts or obligations of any other Person, and Borrower will not assume or guarantee or become obligated for the debts of any other Person and does not and will not hold itself out to be responsible for or have its credit available to satisfy the debts or obligations of any other Person.

(o) Borrower hereby covenants and agrees that it will comply with or cause the compliance with, (i) all the representations, warranties and covenants contained within the Loan Documents, and (ii) all the organizational documents of Borrower.

(p) Borrower has not permitted and will not permit any affiliate or constituent party independent access to its bank accounts.

(q) Borrower has paid and shall pay the salaries of its own employees (if any) from its own funds and has and shall maintain a sufficient number of employees (if any) in light of its contemplated business operations.

(r) Borrower has compensated and shall compensate each of its consultants and agents from its funds for services provided to it and pay from its own assets all obligations of any kind incurred.

(s) Borrower has not, and without the unanimous consent of all of its members or managers will not, take any action that might reasonably be expected to cause Borrower to become insolvent.

(t) Borrower has allocated and will allocate fairly and reasonably any shared expenses, including shared office space.

(u) Notwithstanding any provision of the operating agreement or any amendment thereto, except in connection with the Loan or any prior financing that has been fully paid and discharged in full prior to the date hereof, Borrower has not pledged and will not pledge its assets for the benefit of any other Person.

(v) Borrower either (i) has no, and will have no, obligation to indemnify its officers, directors, managers, members, shareholders or partners, as the case may be, or (ii) if it has any such obligation, such obligation is fully subordinated to the Loan and will not constitute a claim against Borrower if cash flow in excess of the amount required to pay the Loan is insufficient to pay such obligation.

(w) Borrower will consider the interests of Borrower's creditors in connection with all limited liability company actions.

(x) Except as provided in the Loan Documents, Borrower has not and will not have any of its obligations guaranteed by any affiliate.

SECTION 66. **ERISA.**

(a) Borrower is not an employee benefit plan (as defined in section 3(3) of the Employee Retirement Income Security Act of 1974, as the same may be amended from time to time ("ERISA")) whether or not subject to ERISA or a plan or other arrangement within the meaning of Section 4975 of Internal Revenue Code of 1986 (as amended, as it may be further amended from time to time, and any successor statutes thereto, and all applicable U.S. Department of Treasury regulations issued pursuant thereto in temporary or final form) (the "Code") (each, a "Plan") and none of the assets of Borrower constitute or will constitute, by virtue of the application of 29 C.F.R. §2510.3-101(f) as modified by section 3(42) of ERISA, assets of a Plan within the meaning of section 29 C.F.R. Section 2510.3-101, as modified by section 3(42) of ERISA, or similar law ("Plan Assets"). In addition, (a) Borrower is not a "governmental plan" within the meaning of Section 3(32) of ERISA and (b) transactions by or with Borrower are not subject to State statutes regulating investment of, and fiduciary obligations with respect to, governmental

plans similar to the provisions of Section 406 of ERISA or Section 4975 of the Code currently in effect, which prohibit or otherwise restrict the transactions contemplated by this Deed of Trust.

(b) During the term of the Loan or of any obligation or right hereunder, Borrower shall not be a Plan and none of the assets of Borrower shall constitute Plan Assets.

(c) Borrower further covenants and agrees to deliver to Beneficiary such certifications or other evidence from time to time throughout the term of the Loan, as requested by Beneficiary in its sole discretion, and represents and covenants that (i) Borrower is not and does not maintain an "employee benefit plan" as defined in Section 3(3) of ERISA, which is subject to Title I of ERISA, or a "governmental plan" within the meaning of Section 3(32) of ERISA; (ii) Borrower is not subject to State statutes regulating investments and fiduciary obligations with respect to governmental plans; and (iii) one or more of the following circumstances is true:

**(1) Equity interests in Borrower are publicly offered securities, within the meaning of 29 C.F.R. §2510.3-101(b)(2);**

**(2) Less than twenty-five percent (25%) of each outstanding class of equity interests in Borrower are held by "benefit plan investors" within the meaning of 29 C.F.R. §2510.3-101(f)(2); or**

**(3) Borrower qualifies as an "operating company" or a "real estate operating company" within the meaning of 29 C.F.R. §2510.3-101(c) or (e).**

SECTION 67. **Intentionally Omitted.**

SECTION 68. **Maximum Principal Amount Secured.**

**Notwithstanding anything to the contrary contained in this Deed of Trust, the Note or the other Loan Documents, the maximum amount of principal indebtedness secured by this Deed of Trust at the time of execution hereof or which under any contingency may become secured by this Deed of Trust at any time hereafter is up to $32,500,000.00, plus (a) taxes, charges or assessments which may be imposed by law upon the Property, (b) premiums on insurance policies covering the Property and (c) expenses incurred in upholding the lien of this Deed of Trust, including, but not limited to (1) the reasonable expenses of any litigation to prosecute or defend the rights and lien created by this Deed of Trust, (2) any amount, cost or charges to which Beneficiary becomes subrogated, upon payment, whether under recognized principles of law or equity, or under express statutory authority and (3) interest at the Default Rate or at the Interest Rate (in each case, as defined in the Note).**

SECTION 69. **Deed of Trust Provisions.**

(a) Trustee shall be under no duty to take any action hereunder except as expressly required hereunder or by law, or to perform any act which would involve Trustee in any expense or liability or to institute or defend any suit in respect hereof, unless properly indemnified to Trustee's reasonable satisfaction. Trustee, by acceptance of this Deed of Trust, covenants to perform and fulfill the trusts herein created, being liable, however, only for gross negligence or willful misconduct, and hereby waives any statutory fee and agrees to accept reasonable

compensation, in lieu thereof, for any services rendered by Trustee in accordance with the terms hereof. Trustee may resign at any time upon giving thirty (30) days' notice to Borrower and to Beneficiary. Beneficiary may remove Trustee at any time or from time to time and select a successor trustee. In the event of the death, removal, resignation, refusal to act, or inability to act of Trustee, or in its sole discretion for any reason whatsoever Beneficiary may, without notice and without specifying any reason therefor and without applying to any court, select and appoint a successor, trustee, by an instrument recorded wherever this Deed of Trust is recorded and all powers, rights, duties and authority of Trustee, as aforesaid, shall thereupon become vested in such successor. Such substitute trustee shall not be required to give bond for the faithful performance of the duties of Trustee hereunder unless required by Beneficiary. The procedure provided for in this Paragraph 69 for substitution of Trustee shall be in addition to and not in exclusion of any other provisions for substitution, by law or otherwise.

(b) Borrower shall pay all reasonable costs, fees and expenses incurred by Trustee and Trustee's agents and counsel in connection with the performance by Trustee of Trustee's duties hereunder and all such costs, fees and expenses shall be secured by this Deed of Trust.

(c) With the approval of Beneficiary, Trustee shall have the right to take any and all of the following actions: (i) to select, employ, and advise with counsel (who may be, but need not be, counsel for Beneficiary) upon any matters arising hereunder, including the preparation, execution, and interpretation of the Note, this Deed of Trust or the Other Security Documents, and shall be fully protected in relying as to legal matters on the advice of counsel, (ii) to execute any of the trusts and powers hereof and to perform any duty hereunder either directly or through Trustee's agents or attorneys, (other than the conduct of a sale of the Property, which shall be conducted by Trustee), and (iii) any and all other lawful action as Beneficiary may instruct Trustee to take to protect or enforce Beneficiary's rights hereunder. Trustee shall have the right to rely on any instrument, document, or signature authorizing or supporting an action taken or proposed to be taken by Trustee hereunder, believed by Trustee in good faith to be genuine. Trustee shall be entitled to reimbursement for actual expenses incurred by Trustee in the performance of Trustee's duties hereunder and to reasonable compensation for such of Trustee's services hereunder as shall be rendered.

(d) All moneys received by Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, but need not be segregated in any manner from any other moneys (except to the extent required by applicable law) and Trustee shall be under no liability for interest on any moneys received by Trustee hereunder.

(e) Should any deed, conveyance, or instrument of any nature be reasonably required from Borrower by any Trustee or substitute trustee to more fully and certainly vest in and confirm to the Trustee or substitute trustee such estates rights, powers, and duties, then, upon request by the Trustee or substitute trustee, any and all such deeds, conveyances and instruments shall be made, executed, acknowledged, and delivered and shall be caused to be recorded and/or filed by Borrower.

(f) Any substitute trustee appointed pursuant to any of the provisions hereof shall, without any further act, deed, or conveyance, become vested with all the estates, properties, rights, powers, and trusts of the substitute trustee's predecessor in the rights hereunder with like effect as

if originally named as Trustee herein; but nevertheless, upon the written request of Beneficiary or of the substitute trustee, the Trustee ceasing to act shall execute and deliver any instrument transferring to such substitute trustee, upon the trusts herein expressed, all the estates, properties, rights, powers, and trusts of the Trustee so ceasing to act, and shall duly assign, transfer and deliver any of the property and moneys held by such Trustee to the substitute trustee so appointed in the Trustee's place.

SECTION 70. **Representations, Warranties and Covenants Concerning Loan.**

**Borrower represents, warrants and covenants as follows:**

(a) Organization and Existence. Borrower is duly organized and validly existing as a limited liability company in good standing under the laws of the State of Delaware and in all other jurisdictions in which Borrower is transacting business. Borrower has the power and authority to execute, deliver and perform the obligations imposed on it under the Loan Documents to which it is a party and to consummate the transactions contemplated by the Loan Documents.

(b) Authorization. Borrower has taken all necessary actions for the authorization of the borrowing on account of the Loan and for the execution and delivery of the Loan Documents to which it is a party, including, without limitation, that those holders of direct or indirect interests in Borrower whose approval is required by the terms of Borrower's organizational documents have duly approved the transactions contemplated by the Loan Documents and have authorized execution and delivery thereof by the respective signatories. No other consent by any local, state or federal agency is required in connection with the execution and delivery of the Loan Documents by Borrower and Guarantor. Borrower is not a "foreign person" within the meaning of Section 1445(f)(3) of the Internal Revenue Code of 1986, as amended, and the related Treasury Department regulations, including temporary regulations.

(c) Valid Execution and Delivery. All of the Loan Documents requiring execution by Borrower have been duly and validly executed and delivered by Borrower.

(d) Enforceability. All of the Loan Documents to which Borrower is a party constitute valid, legal and binding obligations of Borrower and are fully enforceable against Borrower in accordance with their terms by Beneficiary and its successors, transferees and assigns, subject only to bankruptcy laws and general principles of equity.

(e) No Conflict/Violation of Law. The execution, delivery and performance by Borrower of the Loan Documents to which Borrower is a party will not cause or constitute a default under or conflict with the organizational documents of Borrower, any Guarantor or any member of Borrower or any Guarantor. The execution and delivery by Borrower of the Loan Documents to which Borrower is a party and the performance by Borrower of the obligations imposed on Borrower thereunder will not cause Borrower to be in default, including after due notice or lapse of time or both, under the provisions of any agreement, judgment or order to which Borrower is a party or by which Borrower is bound. The execution and delivery by Guarantor of the Loan Documents to which Guarantor is a party and the performance by Guarantor of the obligations imposed on Guarantor thereunder will not cause Guarantor to be in default, including after due

notice or lapse of time or both, under the provisions of any agreement, judgment or order to which Guarantor is a party or by which Guarantor is bound.

(f) Compliance with Applicable Laws and Regulations. All of the Improvements and the use of the Property comply in all material respects with, and shall be in compliance in all material respects with, all applicable laws, zoning health, fire and subdivision ordinances (including, without limitation, parking requirements), rules, regulations, covenants and restrictions now or hereafter affecting or otherwise relating to the ownership, construction, occupancy (as applicable), use or operation of the Property, including all applicable laws, ordinances, rules and regulations, covenants and restrictions pertaining to requirements for equal opportunity, anti-discrimination, fair housing, environmental protection, zoning and land use, and Borrower has not received any notice of any violation of any of the foregoing. To the best of Borrower's knowledge after independent investigation, all certifications, permits, licenses, authorizations and approvals, including, without limitation, certificates of completion and occupancy permits required for the legal use, occupancy and operation of the Property have been obtained and are in full force and effect and Borrower shall take all actions necessary to file, keep and maintain all such certification, permits, licenses, authorizations and approvals current and in full force and effect at all times and to obtain any other certifications, permits, licenses, authorizations and approvals that may hereafter be required for the legal use, occupancy and operation of the Property.

(g) Consents Obtained. All consents, approvals, authorizations, orders or filings with any court or governmental agency or body, if any, required for the execution, delivery and performance of the Loan Documents by Borrower have been obtained or made.

(h) No Litigation. There are no pending actions, suits or proceedings, arbitrations or governmental investigations against the Borrower, any Guarantor or the Property: (i) except as previously fully disclosed in writing by Borrower to Beneficiary on a certification delivered by Borrower to Beneficiary on the date hereof; and (ii) an adverse outcome of which would adversely affect in any material respect the value of the Property or the Borrower's performance under the Note, this Deed of Trust or the other Loan Documents or the Guarantor's performance under the Loan Documents to which the Guarantor is a party.

(i) First Lien. Upon the execution by the Borrower and the recording of this Deed of Trust, and upon the filing of UCC-1 financing statements in the State of Delaware and Dallas County, the Beneficiary will have a valid first lien on the Property and a valid security interest in the Equipment subject to no liens, charges or encumbrances other than the Permitted Exceptions.

(j) ERISA. Borrower is not a party to, subject to, or has any obligations in respect of any employee benefit plan or any multi-employee plan.

(k) No Other Obligations. The Borrower has no material financial obligation under any indenture, mortgage, deed of trust, loan agreement or other agreement or instrument to which the Borrower is a party or by which the Borrower or the Property is otherwise bound, other than unsecured obligations incurred in the ordinary course of the operation of the Property (and Borrower is not in default of any of such obligations) and other obligations under this Deed of Trust and the other Loan Documents.

(l) Fraudulent Conveyance. The Borrower has: (1) not entered into the Loan or any Loan Document with the actual intent to hinder, delay, or defraud any creditor; and (2) received reasonably equivalent value in exchange for its obligations under the Loan Documents. Giving effect to the Loan contemplated by the Loan Documents, the fair saleable value of the Borrower's assets exceed and will, immediately following the execution and delivery of the Loan Documents, exceed the Borrower's total liabilities, including, without limitation, subordinated, unliquidated, disputed or contingent liabilities. The fair saleable value of the Borrower's assets is and will, immediately following the execution and delivery of the Loan Documents, be greater than the Borrower's probable liabilities, including the maximum amount of its contingent liabilities or its debts as such debts become absolute and matured. The Borrower's assets do not and, immediately following the execution and delivery of the Loan Documents will not, constitute unreasonably small capital to carry out its business as conducted or as proposed to be conducted. The Borrower does not intend to, and does not believe that it will, incur debts and liabilities (including, without limitation, contingent liabilities and other commitments) beyond its ability to pay such debts as they mature (taking into account the timing and amounts to be payable on or in respect of obligations of the Borrower).

(m) Investment Company Act. The Borrower is not: (1) an "investment company" or a company "controlled" by an "investment company", within the meaning of the Investment Company Act of 1940, as amended or (2) subject to any other federal or state law or regulation which purports to restrict or regulate its ability to borrow money.

(n) Access/Utilities. The Property has adequate rights of access to public ways and is served by adequate water, sewer, sanitary sewer and storm drain facilities. All public utilities necessary to the continued use and enjoyment of the Property as presently used and enjoyed are located in the public right-of-way abutting the Property, and all such utilities are connected so as to serve the Property without passing over other property.

(o) Taxes Paid. Borrower has filed all federal, state, county and municipal tax returns required to have been filed by Borrower, and has paid all taxes which have become due pursuant to such returns or to any notice of assessment received by Borrower, and Borrower has no knowledge of any basis for additional assessment with respect to such taxes.

(p) Intentionally Omitted.

(q) Special Assessments. Except as disclosed in the title insurance policy insuring the lien of this Deed of Trust, there are no pending or, to the knowledge of the Borrower, proposed special or other assessments for public improvements or otherwise affecting the Property, nor, to the knowledge of the Borrower, are there any contemplated improvements to the Property that may result in such special or other assessments.

(r) Flood Zone. No buildable portion of the Property is located in a flood hazard area as defined by the Federal Insurance Administration.

(s) Seismic Exposure. The Property is not located in Zone 3 or Zone 4 of the "Seismic Zone Map of the U.S.".

(t) Misstatements of Fact. No statement of fact made in the Loan Documents

contains any untrue statement of a material fact or omits to state any material fact necessary to make statements contained herein or therein not misleading. To the best of Borrower's knowledge, there is no fact presently known to the Borrower which has not been disclosed which adversely affects, nor as far as the Borrower can foresee, might adversely affect the business, operations or condition (financial or otherwise) of the representing party.

(u) Condition of Improvements. The Property has not been damaged by fire, water, wind or other cause of loss which has not been fully restored or repaired.

(v) No Insolvency or Judgment. Neither Borrower, nor any member of Borrower, nor any Guarantor of the Loan is currently (a) the subject of or a party to any completed or pending bankruptcy, reorganization or insolvency proceeding; or (b) the subject of any judgment unsatisfied of record or docketed in any court of the state or district in which the Property is located or in any other court located in the United States.

(w) No Condemnation. No part of any property subject to this Deed of Trust has been taken in condemnation or other like proceeding nor is any proceeding pending, or to the best of Borrower's knowledge, threatened or known to be contemplated for the partial or total condemnation or taking of the Property.

(x) No Labor or Materialmen Claims. All parties furnishing labor and materials have been paid in full, and except for such liens or claims insured against by the policy of title insurance to be issued in connection with the Loan, there are no mechanics', laborers' or materialmens' liens or claims outstanding for work, labor or materials affecting the Property, whether prior to, equal with or subordinate to the lien of this Deed of Trust.

(y) No Purchase Options. No tenant, person, party, firm, corporation or other entity has an option to purchase the Property, any portion thereof or any interest therein.

(z) Property Vacant. As of the date of this Deed of Trust, the Property is vacant from all Leases, tenancies and occupancies.

(aa) Forfeiture. There has not been and shall never be committed by Borrower or any other person in occupancy of or involved with the operation or use of the Property any act or omission affording the federal government or any state or local government the right of forfeiture as against the Property or any part thereof or any monies paid in performance of Borrower's obligations under any of the Loan Documents.

(bb) Intentionally Omitted.

(cc) No Defense/Default. The Note, this Deed of Trust and the other Loan Documents are not subject to any right of rescission, offset, abatement, set-off, counterclaim or defense, including the defense of usury, nor would the operation of any of the terms of the Note, this Deed of Trust and the other Loan Documents, or the exercise of any right thereunder, render this Deed of Trust unenforceable, in whole or in part, or subject to any right of rescission, offset, abatement, set-off, counterclaim or defense, including the defense of usury. The Loan complies with or is exempt from all applicable usury laws. No default, breach, violation or event of acceleration exists under this Deed of Trust or any other Loan Documents.

(dd) No Agency, Partnership or Joint Venture: Beneficiary is not the agent or representative of Borrower, and Borrower is not the agent or representative of Beneficiary. Borrower and Beneficiary intend and agree that the relationship between them shall be solely that of creditor and debtor. Neither any provision in any of this Agreement nor any act or omission of Beneficiary or Borrower shall be construed to create a partnership or joint venture between Borrower and Beneficiary. This Agreement shall not make Beneficiary liable to materialmen, contractors, craftsmen, laborers or others for goods delivered to or services performed by them upon the Project, or for debts or claims accruing to such parties against Borrower and there is no contractual relationship, either expressed or implied, between Beneficiary and any materialmen, subcontractors, craftsmen, laborers, or any other person supplying any work, labor or materials for the Construction Work.

SECTION 71. **Texas State Provisions.**

(a) Principals of Construction. In the event of any inconsistencies between this Section 71 of this Deed of Trust and any other terms and provisions of this Deed of Trust, the terms and conditions of this Section 71 shall control and be binding.

(b) Assignment of Rents. Borrower hereby assigns to Beneficiary all of Borrower's right, title and interest in and to all current and future Leases and Rents. Nevertheless, subject to the terms of Section 22 of this Deed of Trust, Beneficiary grants to Borrower a revocable license to (i) collect, receive, use and enjoy the Rents and Borrower shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Debt, for use in the payment of such sums, and (ii) enforce the terms of the Leases until such time that a notice is sent to Borrower in writing that an Event of Default has occurred in accordance with the Texas Assignment of Rents Act, Chapter 64 of the Texas Property Code (the "**Assignment of Rents Act**").

(c) Security Agreement. The following paragraph is hereby added at the end of Section 30 hereof:

> "This Deed of Trust shall be effective as a financing statement filed as a fixture filing with respect to all fixtures included within the Property and is to be filed for record in the real property records in the Office of the County Clerk where the Property (including said fixtures) is situated. This Deed of Trust shall also be effective as a financing statement covering as-extracted minerals or the like (including oil and gas) and accounts subject to Subsection (4) of Section 9.301 of the UCC, as amended, and is to be filed for record in the real estate records of the county where the Property is situated. The mailing address of Borrower and the address of Beneficiary from which information concerning the security interest may be obtained are set forth above."

> (d) The following is added as Section 22(j) hereof:

> "(j) In the event of a foreclosure sale, whether made by the Trustee under the terms hereof, or under judgment of a court, the Personal Property and the Property may, at the option of Beneficiary, be sold as a whole."

> (e) Sale of Property. (i) Upon the occurrence of an Event of Default, it shall

thereupon be the duty of the above named Trustee, or Trustee's successor or substitute, as hereinafter provided, to enforce this trust at the request of any Beneficiary (which request shall be presumed) and to sell the Property with or without first having taken possession of the same and in whole or in part, as the Trustee, or Trustee's successor or substitute, may elect (all rights to a marshalling of assets of Borrower being expressly waived hereby) to the highest bidder for cash at public auction at the county courthouse of any County in which the Property is situated, in the area of such courthouse designated for real property foreclosure sales in accordance with applicable law (or in the absence of any such designation, in the area set forth in the notice of sale hereinafter described) on the first Tuesday of any month (or first Wednesday if the first Tuesday is January 1 or July 4) between the hours of 10:00 A.M. and 4:00 P.M. (commencing at the time stated in the hereinafter described notice of sale or not later than three hours after that time), after giving notice of the time, place and terms of sale and the Property to be sold by (i) the Trustee, or its successor or substitute, or any authorized agent of the foregoing filing a copy of the notice thereof in the office of the county clerk of each County where the Property is situated and by posting written or printed notice thereof at least twenty-one (21) days preceding the date of said sale at the county courthouse door of each County where the Property is located, and (ii) the holder of the Debt or any authorized agent of such holder, at least twenty-one (21) days preceding the date of said sale, serving written notice of such proposed sale by certified mail on each debtor obligated to pay the Debt evidenced by the Note according to the records of Beneficiary. Service of such notice to each debtor shall be completed upon deposit of the notice enclosed in a postpaid wrapper, properly addressed to each debtor at the most recent address as shown by the records of Beneficiary, in a post office or official depository under the care and custody of the United States Postal Service. The affidavit of any person having knowledge of the facts to the effect that such service was completed shall be prima facie evidence of the fact of service. After such sale, the Trustee, or its successor or substitute, shall make due conveyance with general warranty to the purchaser or purchasers and the Borrower binds itself, its heirs, assigns, executors, administrators, successors and legal representatives to warrant and forever defend the title of such purchaser or purchasers. Any abstract of title to the Property furnished in connection with the Loan shall be delivered and become the property of the purchaser at said sale. In the event a foreclosure hereunder shall be commenced by the Trustee or his substitute or successor, Beneficiary may at any time before the sale of the Property, direct the said Trustee, or its successor or substitute, to abandon the sale, and may then institute suit for the collection of the Note and the other secured indebtedness, and for the foreclosure of this Deed of Trust. It is agreed that if Beneficiary should institute a suit for the collection of the Note or any other secured indebtedness and for the foreclosure of this Deed of Trust, Beneficiary may at any time before the entry of a final judgment in said suit dismiss the same, and require the Trustee, his substitute or successor to sell the Property in accordance with the provisions of this Deed of Trust.

(ii) With respect to the Personal Property, Beneficiary is hereby irrevocably appointed the true and lawful attorney of the Borrower (coupled with an interest), in its name and stead, to make all necessary conveyances, assignments, transfers and deliveries of the Personal Property, and for that purpose Beneficiary may execute all necessary instruments of conveyance, assignment, transfer and delivery, and may substitute one or more persons with such power, Borrower hereby ratifying and confirming

all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Notwithstanding the foregoing, Borrower, if so requested by Beneficiary, shall ratify and confirm any such sale or sales by executing and delivering to Beneficiary or to such purchaser or purchasers all such instruments as may be advisable, in the judgment of Beneficiary, for such purpose, and as may be designated in such request. To the extent permitted by law, any such sale or sales made under or by virtue of this Section shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law, and in equity, of Borrower in and to the properties and rights so sold, and shall be a perpetual bar at both in law and in equity against Borrower and against any and all persons claiming or who may claim the same, or any part thereof, from, through or under Borrower. Upon any sale made under or by virtue of this Section, Trustee, or its successor or substitute, or Beneficiary may, to the extent permitted by law, bid for and acquire the Property or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the Debt secured hereby the net sales price after deducting therefrom the expenses of the sale and the cost of the auction and any other sums which Beneficiary is authorized to deduct by law or under this Deed of Trust. At any sale pursuant to this Section, whether made under power herein granted, the Texas Property Code, the UCC, or any other legal enactment, or by virtue of any judicial proceeding or any other legal right, remedy or recourse, it shall not be necessary for Beneficiary or Trustee, or its successor or substitute, to be physically present, or to have constructive possession of, the Property, and the title to and right of possession of any such property shall pass to the purchaser thereof as completely as if the same had been actually presented and delivered to the purchaser at such sale.

(iii) Upon the occurrence of an Event of Default, Beneficiary shall have the right and option to proceed with foreclosure in satisfaction of such item or items by directing the Trustee, or his successor or substitute as hereinafter provided, to proceed as if under a full foreclosure, conducting the sale as herein provided, and without declaring the whole Debt due, and provided that if sale is made because of default as hereinabove mentioned, such sale may be made subject to the unmatured part of the Note and the Debt secured hereby, and it is agreed that such sale, if so made, shall not in any manner affect any other obligations secured hereby, but as to such other obligations this Deed of Trust and the liens created hereby shall remain in full force and effect just as though no sale had been made under the provisions of this Article. It is further agreed that several sales may be made hereunder without exhausting the right of sale for any other breach of any of the obligations secured hereby, it being the purpose to provide for a foreclosure and sale of the Property for any matured portion of any of the Debt secured hereby or other items provided for herein without exhausting the power to foreclose and to sell the Property for any other part of the Debt secured hereby whether matured at the time or subsequently maturing.

(iv) The proceeds from any such sale shall be applied by the Trustee, or its successor or substitute, as follows:

FIRST, to the payment of the costs and expenses of taking possession of the Property, and of holding, managing, operating, using, leasing, repairing, improving, and selling the same, including without limitation, any one or more of the following

to the extent Beneficiary or Trustee, or its successor or substitute, deems appropriate: (1) trustee's and receiver's fees; (2) court costs; (3) attorneys', brokers', managers', accountants', and appraisers' fees and expenses; (4) cost of advertisement; and (5) the payment of any and all impositions, liens, or other rights, titles or interests equal or superior to the liens and security interests of this Deed of Trust (except those to which the Property has been or will be sold subject to and without any way implying Beneficiary's prior consent to the creation thereof);

SECOND, to the payment of all amounts, other than the principal balance of, and accrued, unpaid interest on, the Debt, which may be due to Beneficiary under the Note to which Borrower is a party, together with interest thereon as provided therein;

THIRD, to the payment of the Debt in the manner set forth in the Note; and

FOURTH, to any person legally entitled thereto.

(v) The Trustee, or its successor or substitute, hereunder shall have the right to sell the Property in whole or in part and in such parcels and order as he may determine, and the right of sale hereunder shall not be exhausted by one or more sales, but successive sales may be had until all of the Property have been legally sold. In the event any sale hereunder is not completed or is defective in the opinion of Beneficiary or the holder of any part of the Debt, such sale shall not exhaust the power of sale hereunder, and Beneficiary or such holder shall have the right to cause a subsequent sale or sales to be made by the Trustee or any successor or substitute Trustee. Likewise, Beneficiary may become the purchaser at any such sale if it is the highest bidder, and shall have the right, after paying or accounting for all costs of said sale or sales, to credit the amount of the bid upon the amount of the Debt owing, in lieu of cash payment.

(vi) It shall not be necessary for the Trustee, or its successor or substitute, to have constructively in his possession any part of the real or personal property covered by this Deed of Trust, and the title and right of possession of said property shall pass to the purchaser or purchasers at any sale hereunder as fully as if the same had been actually present and delivered. Likewise, on foreclosure of this Deed of Trust whether by power of sale herein contained or otherwise, Borrower or any person claiming any part of the Property by, through or under Borrower, shall not be entitled to a marshalling of assets or a sale in inverse order of alienation.

(vii) The recitals and statements of fact contained in any notice or in any conveyance to the purchaser or purchasers at any sale hereunder shall be prima facie evidence of the truth of such facts, and all prerequisites and requirements necessary to the validity of any such sale shall be presumed to have been performed.

(viii) Any sale under the powers granted by this Deed of Trust shall be a perpetual bar against Borrower, its heirs, successors, assigns and legal representatives.

(ix) In the event of a foreclosure under the powers granted by this Deed of Trust, Borrower, and all other persons in possession of any part of the Property shall be deemed tenants at will of the purchaser at such foreclosure sale and shall be liable for a reasonable rental for the use of the Property; and if any such tenants refuse to surrender possession of the Property upon demand, the purchaser shall be entitled to institute and maintain the statutory action of forcible entry and detainer and procure a writ of possession thereunder, and Borrower expressly waives all damages sustained by reason thereof.

(x) In the event an interest in any of the Property is foreclosed upon pursuant to a judicial or nonjudicial foreclosure sale, Borrower agrees as follows: Notwithstanding the provisions of Section 51.003, 51.004 and 51.005 of the Texas Property Code (as the same may be amended from time to time), and to the extent permitted by law, Borrower agrees that Beneficiary shall be entitled to seek a deficiency judgment from Borrower and any other party obligated on the Note equal to the difference between the amount owing on the Note and the amount for which the Property was sold pursuant to judicial or nonjudicial foreclosure sale. Borrower expressly recognizes that this section constitutes a waiver of the above-cited provisions of the Texas Property Code which would otherwise permit Borrower and other persons against whom recovery of deficiencies is sought or any guarantor independently (even absent the initiation of deficiency proceedings against them) to present competent evidence of the fair market value of the Property as of the date of the foreclosure sale and offset against any deficiency the amount by which the foreclosure sale price is determined to be less than such fair market value. Borrower further recognizes and agrees that this waiver creates an irrebuttable presumption that the foreclosure sale price is equal to the fair market value of the Property for purposes of calculating deficiencies owed by Borrower, any guarantor, and others against whom recovery of a deficiency is sought.

(xi) Alternatively, in the event the waiver provided for in the preceding paragraph is determined by a court of competent jurisdiction to be unenforceable, the following shall be the basis for the finder of fact's determination of the fair market value of the Property as of the date of the foreclosure sale in proceedings governed by Sections 51.003, 51.004 and 51.005 of the Texas Property Code (as amended from time to time): (i) the Property shall be valued in an "as is" condition as of the date of the foreclosure sale, without any assumption or expectation that the Property will be repaired or improved in any manner before a resale of the Property after foreclosure; (ii) the valuation shall be based upon an assumption that the foreclosure purchaser desires a resale of the Property for cash promptly (but no later than twelve (12) months) following the foreclosure sale; (iii) all reasonable closing costs customarily borne by the seller in commercial real estate transactions should be deducted from the gross fair market value of the Property, including, without limitation, brokerage commissions, title insurance, a survey of the Property, tax prorations, attorneys' fees, and marketing costs; (iv) the gross fair market value of the Property shall be further discounted to account for any estimated holding costs associated with maintaining the Property pending sale, including, without limitation, utilities expenses, property management fees, taxes and assessments (to the extent not accounted for in (iii) above), and other maintenance, operational and ownership

expenses; and (v) any expert opinion testimony given or considered in connection with a determination of the fair market value of the Property must be given by persons having at least five (5) years' experience in appraising property similar to the Property and who have conducted and prepared a complete written appraisal of the Property taking into consideration the factors set forth above.

(f) Homestead. The Property forms no part of any property owned, used or claimed by Borrower as a residence or business homestead and is not exempt from forced sale under the laws of the State of Texas. Borrower hereby disclaims and renounces each and every claim to the Property as a homestead.

(g) Future Indebtedness. This Deed of Trust shall also secure such future or additional indebtedness of Borrower to Beneficiary or such future or additional advances for construction, improvements, preservation, maintenance and operation of the Property and the security for payment of the Debt as may be made by Beneficiary, whether such future advances are obligatory or are to be made at Beneficiary's option, to Borrower, for any purpose.

(h) Tradenames. Borrower does not do any business with respect to the Property under any trade name.

(i) **Acknowledgement. EACH OF BORROWER (AND BY ACCEPTANCE OF THIS DEED OF TRUST, BENEFICIARY) HERETO SPECIFICALLY ACKNOWLEDGES AND AGREES (a) THAT IT HAS A DUTY TO READ THIS DEED OF TRUST AND THAT IT IS CHARGED WITH NOTICE AND KNOWLEDGE OF THE TERMS HEREOF, (b) THAT IT HAS IN FACT READ THIS DEED OF TRUST AND IS FULLY INFORMED AND HAS FULL NOTICE AND KNOWLEDGE OF THE TERMS, CONDITIONS AND EFFECTS OF THIS DEED OF TRUST (c) THAT IT HAS BEEN REPRESENTED BY LEGAL COUNSEL OF ITS CHOICE THROUGHOUT THE NEGOTIATIONS PRECEDING ITS EXECUTION OF THIS DEED OF TRUST AND HAS RECEIVED THE ADVICE OF SUCH COUNSEL IN CONNECTION WITH ENTERING INTO THIS DEED OF TRUST AND (d) THAT IT RECOGNIZES THAT CERTAIN OF THE TERMS OF THIS DEED OF TRUST PROVIDE FOR (i) CERTAIN WAIVERS AND FOR (ii) THE ASSUMPTION BY ONE PARTY OF, AND/OR RELEASE OF ANOTHER PARTY FROM, CERTAIN LIABILITIES THAT SUCH PARTY MIGHT OTHERWISE BE RESPONSIBLE FOR UNDER THE LAW. BORROWER (AND BY ACCEPTANCE OF THIS DEED OF TRUST, BENEFICIARY) FURTHER AGREES AND COVENANTS THAT IT WILL NOT CONTEST THE VALIDITY OR ENFORCEABILITY OF ANY SUCH PROVISIONS OF THIS DEED OF TRUST ON THE BASIS THAT THE PARTY HAD NO NOTICE OR KNOWLEDGE OF SUCH PROVISION OR THAT SUCH PROVISIONS ARE NOT "CONSPICUOUS."**

**NOTICE PURSUANT TO SECTION 26.02(e) OF THE TEXAS BUSINESS AND COMMERCE CODE: THE NOTE, THIS DEED OF TRUST AND THE OTHER LOAN DOCUMENTS CONSTITUTE A WRITTEN LOAN AGREEMENT (AS DEFINED IN SECTION 26.02(a)(2) OF THE TEXAS BUSINESS AND COMMERCE CODE, AS AMENDED) AND REPRESENT THE FINAL AGREEMENT AND UNDERSTANDING BETWEEN THE BENEFICIARY AND THE OTHER RESPECTIVE PARTIES HERETO**

**AND THERETO AND SUPERSEDE ALL PRIOR AGREEMENTS AND UNDERSTANDINGS BETWEEN SUCH PARTIES RELATING TO THE SUBJECT MATTER HEREOF AND THEREOF AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR CONTEMPORANEOUS OR SUBSEQUENT AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

(j) Usury Savings. It is the intent of Beneficiary and Borrower in the execution of the Note, this Deed of Trust and all other instruments now or hereafter securing the Note or executed in connection therewith or under any other written or oral agreement by Borrower in favor of Beneficiary to contract in strict compliance with applicable usury law. In furtherance thereof, Borrower (and by acceptance of this Deed of Trust, Beneficiary) stipulates and agrees that none of the terms and provisions contained in the Note, this Deed of Trust or any other instrument securing the Note or executed in connection herewith, or in any other written or oral agreement by Borrower in favor of Beneficiary, shall ever be construed to create a contract to pay for the use, forbearance or detention of money, interest at a rate in excess of the maximum interest rate permitted to be charged by applicable law; that neither Borrower nor any guarantors, endorsers or other parties now or hereafter becoming liable for payment of the Note or the other indebtedness arising under any instrument securing the Note or executed in favor therewith, or in any other written or oral agreement by Borrower in favor of Beneficiary, at a rate in excess of the maximum interest that may be lawfully charged under applicable law; and that the provisions of this subsection shall control over all other provisions of the Note, this Deed of Trust and any instruments now or hereafter securing the Note or executed in connection herewith or any other oral or written agreements which may be in apparent conflict herewith. Beneficiary expressly disavows any intention to charge or collect excessive unearned interest or finance charges in the event the maturity of the Note is accelerated. If the maturity of the Note shall be accelerated for any reason or if the principal of the Note is paid prior to the end of the term of the Note, and as a result thereof the interest received for the actual period of existence of the loan evidenced by the Note exceeds the applicable maximum lawful rate, Beneficiary shall, at its option, either refund to Borrower the amount of such excess or credit the amount of such excess against the principal balance of the Note then outstanding and thereby shall render inapplicable any and all penalties of any kind provided by applicable law as a result of such excess interest. In the event that Beneficiary shall contract for, charge or receive any amount or amounts and/or any other thing of value which are determined to constitute interest which would increase the effective interest rate on the Note or the other indebtedness secured hereby to a rate in excess of that permitted to be charged by applicable law, an amount equal to interest in excess of the lawful rate shall, upon such determination, at the option of Beneficiary, be either immediately returned to Borrower or credited against the principal balance of the Note then outstanding or the other indebtedness secured hereby, in which event any and all penalize of any kind under applicable law as a result of such excess interest shall be inapplicable.

(k) **NOTICE OF INDEMNIFICATION. BORROWER (AND BY ACCEPTANCE OF THIS DEED OF TRUST, BENEFICIARY) HEREBY ACKNOWLEDGES AND AGREES THAT THIS DEED OF TRUST CONTAINS CERTAIN INDEMNIFICATION OBLIGATIONS AND COVENANTS.**

(l) Waiver. Except as expressly otherwise provided in this Deed of Trust or the

Note, Borrower waives any and all rights of presentment, protest, notice of protest, demand, notice of dishonor, notice of nonpayment, notice of intent to accelerate, notice of acceleration and all other notices. To the full extent Borrower may do so, Borrower agrees that Borrower will not at any time insist upon, plead, claim or take the benefit or advantage of any law now or hereafter in force providing for any moratorium, appraisement, valuation, stay, extension, reinstatement or redemption, and Borrower, for Borrower, Borrower's heirs, devisees, representatives, successors and assigns, and for any and all persons ever claiming any interest in the Property, to the extent permitted by applicable law, hereby waives and releases all rights of moratorium, reinstatement, redemption, valuation, appraisement, stay of execution, notice of intention to mature or declare due the whole of the Debt, notice of election to mature or declare due the whole of the Debt and all rights to a marshalling of assets of Borrower, including the Property, or to a sale in inverse order of alienation in the event of foreclosure of the liens and/or security interest hereby created. Borrower shall not have or assert any right under any statute or rule of law pertaining to the marshalling of assets, sale in inverse order of alienation, the exemption of homestead, the administration of estates of decedents, or other matters whatever to defeat, reduce or affect the right of Beneficiary under the terms of this Deed of Trust to a sale of the Property for the collection of the Debt without any prior or different resort for collection, or the right of Beneficiary under the terms of this Deed of Trust to the payment of the Debt out of the proceeds of sale of the Property in preference to every other claimant whatever. Borrower waives any right or remedy which Borrower may have or be able to assert pursuant to Chapter 34 of the Texas Business and Commerce Code, or any other provision of Texas law, pertaining to the rights and remedies of sureties. If any law referred to in this Section and now in force, of which Borrower or Borrower's heirs, devisees, representatives, successors or assigns or any other persons claiming any interest in the Property might take advantage despite this Section, shall hereafter be repealed or cease to be in force, such law shall not thereafter be deemed to preclude the application of this Section.

(m) Sale of Property. Without limiting any other rights or remedies herein provided and provided by law at law and in equity, upon the occurrence and the continuation of an Event of Default, with respect to that portion of the Property constituting collateral subject to the Uniform Commercial Code of the State of Texas, Beneficiary may, at his option, accomplish the sale of such collateral jointly with the sale of the real property pursuant to the Texas Property Code relating to the sale of real estate, or separately by Chapter 9 of the UCC relating to the sale of collateral after default by the debtors (as said section and chapter now exist or may be hereafter amended or succeeded), or by any other present or subsequent articles of enactments relating to same. In the event of a sale of collateral pursuant to Chapter 9 of the UCC, if notice to Borrower of the intended disposition is required by law, such notice shall be decreed commercially reasonable if given to Borrower at least ten (10) calendar days prior to the date of the sale. Nothing contained in this paragraph shall be construed to limit in any way Beneficiary's right to sell the Property by private sale if any court of competent jurisdiction orders the same.

(n) Oral Agreements. THE WRITTEN LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.

(o) Indemnities. WITHOUT LIMITATION, THE INDEMNITIES CONTAINED IN THIS DEED OF TRUST SHALL APPLY TO EACH INDEMNIFIED PERSON WITH RESPECT TO MATTERS WHICH IN WHOLE OR IN PART ARE CAUSED BY OR ARISE OUT OF, OR ARE CLAIMED TO BE CAUSED BY OR ARISE OUT OF, THE NEGLIGENCE (WHETHER SOLE, COMPARATIVE OR CONTRIBUTORY) OR STRICT LIABILITY OF SUCH (AND/OR ANY OTHER) INDEMNIFIED PERSON. HOWEVER, SUCH INDEMNITIES SHALL NOT APPLY TO A PARTICULAR INDEMNIFIED PERSON TO THE EXTENT THAT THE SUBJECT OF THE INDEMNIFICATION IS CAUSED BY OR ARISES OUT OF THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THAT INDEMNIFIED PERSON.

(p) Fixtures. This Deed of Trust shall be a security agreement between Borrower, as the debtor, and Beneficiary, as the secured party, cover the Property constituting personal property or fixtures governed by the Texas Business and Commerce Code, and Borrower grants to Beneficiary a security interest in such portion of the Property. In addition to Beneficiary's other rights hereunder, Beneficiary shall have all rights of a secured party under the Texas Business and Commerce Code. Borrower shall execute and deliver to Beneficiary all financing statements that may be required by Beneficiary to establish and maintain the validity and priority of Beneficiary's security interest and Borrower shall bear all costs thereof, including all lien searches reasonably required by Beneficiary. If Beneficiary should dispose of any of the Property pursuant to the Texas Business and Commerce Code, ten (10) days written notice by Beneficiary to Borrower shall be deemed to be reasonable notice; provided, however, Beneficiary may dispose of such property in accordance with the foreclosure procedures of this Deed of Trust in lieu of proceeding under the Texas Business and Commerce Code.

(q) Texas Assignment of Rents Act. The definition of Leases shall include all "Leases" as defined or described in Chapter 64 of the Assignment of Rents Act, and the definition of Rents shall include all "Rents" as defined in the Assignment of Rents Act. Furthermore, it is the intent of the parties to comply with the requirements of the Assignment of Rents Act in connection with the assignment of Leases and Rents. Accordingly, the enforcement of rights related to the assignment of Leases and Rents shall be subject to compliance with the provisions of the Assignment of Rents Act, including without limitation, the notice requirements of Sections 64.054, 64.055(a) and 64.056 of the Texas Property Code.

SECTION 72. **Hotel Provisions.**

(a) Beneficiary and Borrower acknowledge and agree that Borrower intends to enter into certain "Hotel Agreements" (as hereinafter defined) with respect to the management of the hotel to be constructed on the Property. Borrower acknowledges and agrees that the Hotel Agreements are currently being negotiated, and that the final Hotel Agreements shall be subject to the reasonable approval of Beneficiary prior to execution thereof. As a condition to Beneficiary's approval of any such Hotel Agreements, Beneficiary shall require (i) that Hotel Manager (as hereinafter defined), Licensor (as hereinafter defined) and Offshore Manager (as hereinafter defined) enter into a subordination, non-disturbance and attornment agreement (**"Hotel SNDA"**) on Hotel Manager's standard form, with such changes thereto as may be required or requested by Beneficiary and (ii) Borrower enter into a Collateral Assignment of Hotel Agreements on Beneficiary's then standard form (the **"Hotel Collateral Assignment"**).

(b) Upon execution of the Hotel Agreements, Borrower shall pay and perform all of Borrower's obligations under the Hotel Agreements. Borrower, at its own expense, shall have the right to contest any assertion by Hotel Manager, Offshore Manager or Licensor that Borrower has failed to perform any obligation under or is otherwise in default under the Hotel Agreements, provided, that (i) there is no Event of Default which is continuing (other than that, if any, which is the subject of the contest); (ii) such proceeding shall be permitted under and be conducted in accordance with the terms of the Hotel Agreements or otherwise in accordance with Legal Requirements; (iii) neither the Hotel Agreements nor any part thereof or interest therein will be in danger of being sold, forfeited, terminated, canceled or lost; (iv) Borrower shall promptly upon final determination thereof pay any amount or perform any obligation which it was previously contesting, together with all costs, interest and penalties which may be payable in connection therewith, and (v) unless as a condition to maintaining such contest Borrower is required to or elects to pay the amount of such allegedly unsatisfied obligation, or to post a bond or make a deposit with a court or other governmental authority in the full amount of such allegedly unsatisfied obligation, Borrower shall deposit with Beneficiary cash, or other security as may be approved by Beneficiary, in an amount equal to one hundred ten percent (110%) of the contested monetary amount or the amount necessary so as to comply, as reasonably estimated by Beneficiary, to insure the payment thereof, together with all interest and penalties thereon. If Hotel Manager, Offshore Manager or Licensor sends Beneficiary a notice of Borrower's default or Hotel Manager's, Offshore Manager's or Licensor's intent to terminate any of the Hotel Agreements pursuant to the Hotel SNDA, Beneficiary shall, without prejudice to any additional remedy permitted under the Loan Documents or under applicable law, be permitted, but shall not be obligated, to cure such default or basis of termination by the payment of money or as otherwise necessary to comply with the terms, conditions and/or any obligations under the Hotel Agreements. Any payment advanced by Beneficiary under the immediately preceding sentence shall be deemed an advance under Section 24 hereof.

(c) For purposes of this Section 72, the following terms shall be defined as follows: (a) "**Hotel Agreements**" shall mean, collectively, the Hotel Management Agreement, the Technical Services Agreement (as hereinafter defined), the License Agreement (as hereinafter defined), the Offshore Management Agreement (as hereinafter defined), the Onshore Management Agreement (as hereinafter defined), and the Marketing License Agreement (as hereinafter defined); (b) "**Hotel Management Agreement**" shall mean that certain Property Management Agreement to be entered into between Borrower and Hotel Manager; (c) "**Hotel Manager**" shall mean Mandarin Oriental Management (USA) Inc.; (d) "**Technical Services Agreement**" shall mean that certain Technical Services Agreement to be entered into by and between Borrower and Hotel Manager; (e) "**License Agreement**" shall mean that certain License Agreement to be entered into by and between Borrower and Licensor (as hereinafter defined);. (f) "**Licensor**" shall mean Mandarin Oriental Hotel Company Inc.; (g) "**Offshore Management Agreement**" shall mean that certain Offshore Management Agreement to be entered into by and between Borrower and Offshore Manager (as hereinafter defined); (h) "**Offshore Manager**" shall mean Mandarin Oriental Hotel Group Limited; (i) "**Onshore Management Agreement**" shall mean that certain Onshore Management Agreement to be entered into by and between Borrower and Hotel Manager; and (j) "**Marketing License Agreement**" shall mean that certain Marketing License Agreement to be entered into by and between Borrower and Licensor.

SECTION 73. **Condominium Provisions.**

Beneficiary and Borrower acknowledge and agree that Borrower intends to convert the Property (or a portion thereof) into a condominium regime ("the **Condo Conversion**"). Borrower acknowledges and agrees that the Condominium Project's Constituent Documents (as such terms are hereinafter defined) are being prepared as of the date hereof, and that the final Constituent Documents shall be subject to the reasonable approval of Beneficiary prior to execution thereof. As a condition to Beneficiary's approval of any such Constituent Documents, Beneficiary shall require, among things, that Borrower enter into a Collateral Assignment of the Condominium Project's Constituent Documents on Beneficiary's then standard form

Upon the effectuation of the Condo Conversion, the Property shall include all units in, together with an undivided interest in the common elements of, the condominium project (the "**Condominium Project**") as well as any rights that Borrower may have, in any capacity, under the Condominium Act applicable in Texas and the Constituent Documents and as developer of the condominium regime (the "**Condominium**") in addition to Borrower's rights as owner of any of the units or the Condominium, specifically including but not limited to all rights to approve any amendments to the Constituent Documents and all rights to expand the Condominium. If the owner's association or other entity which acts for the Condominium Project (the "**Owners Association**") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

In addition to the covenants and agreements made in this Deed of Trust, Borrower and Beneficiary further covenant and agree as follows:

I. Condominium Obligations. Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "**Constituent Documents**" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

II. Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Beneficiary and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Beneficiary requires insurance, then: (i) Beneficiary waives the provision for the Periodic Payment to Beneficiary of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Beneficiary requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Beneficiary prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Beneficiary for application to the sums secured by this Deed of Trust, whether or not then due, with the excess, if any, paid to Borrower.

III. Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Beneficiary.

IV. Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Beneficiary. Such proceeds shall be applied by Beneficiary to the sums secured by the Security Instrument as set forth in this Deed of Trust.

V. Beneficiary's Prior Consent. Borrower shall not, except after notice to Beneficiary and with Beneficiary's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Beneficiary; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Beneficiary.

VI. Remedies. If Borrower does not pay condominium dues and assessments when due, then Beneficiary may pay them. Any amounts disbursed by Beneficiary under this paragraph shall become additional debt of Borrower secured by this Deed of Trust. Unless Borrower and Beneficiary agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Default Rate and shall be payable, with interest, upon notice from Beneficiary to Borrower requesting payment.

VII. Appointment of Proxy and Attorney-in-Fact. Borrower hereby irrevocably constitutes and appoints Beneficiary as Borrower's proxy and attorney-in-fact, which appointment shall be deemed coupled with an interest, for and in its behalf to perform all of the obligations of Borrower and to exercise all of the rights and powers of Borrower under the Constituent Documents without any liability therefor or thereunder. Borrower hereby instructs, grants and gives to Beneficiary full power and authority to do and perform all and every act and action whatsoever authorized, permitted, requisite or necessary to be done by Borrower under the provisions of the Constituent Documents. Borrower hereby

ratifies and confirms that Beneficiary shall have the right, but not the obligation, to perform such acts under the Constituent Documents. Notwithstanding anything in this paragraph to the contrary, the rights and powers of Borrower granted in this paragraph may not be exercised by Beneficiary prior to the occurrence of an Event of Default.

VIII. Indemnification. Borrower agrees to indemnify and hold Beneficiary harmless from and against any and all losses, cost, liabilities, or damages (including attorney's fees and disbursements) arising out of (1) the failure of Borrower to comply with any state or local law, ordinance, statute, or regulation by any governmental authority covering the Condominium; or (2) any claim of any unit owner or tenant of any unit owner as a result of any violation, breach, misrepresentation, fraud, act, or omission of any obligation of Borrower *as* set forth in the Constituent Documents.

IX. Construction of Declarant. Nothing contained herein or in the Loan Documents is intended to or shall be construed to constitute Beneficiary as the "Declarant" under the Condominium Act and/or the Constituent Documents or as owner of the Condominium, a partner or joint venturer of Borrower.

**[NO FURTHER TEXT ON THIS PAGE]**

**IN WITNESS WHEREOF**, Borrower has executed this Deed of Trust the day and year first above written.

**MO 2999TC, LLC,**
a Delaware limited liability company

By: ______________________
Name: Timothy Lynch Barton
Title: Authorized Signatory

STATE OF TEXAS )
: ss.:
COUNTY OF Dallas )

On the 18 day of September, in the year 2019, before me, the undersigned, a Notary public in and for said State, personally appeared TIMOTHY LYNCH BARTON, Authorized Signatory of MO 2999TC, LLC, a Delaware limited liability company, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument, and that such individual did make such appearance before the undersigned in the City of Dallas, State of Texas.

______________________
Notary Public

NOTARY PUBLIC STATE OF TEXAS
Bella D Khusal
My Commission Expires
09/24/2022
ID No 131734480

## SCHEDULE A

## DESCRIPTION OF PROPERTY

BEING a tract of land situated in the James A. Sylvester Survey Abstract No. 1383, and the John Grisby Survey, Abstract No. 495, City of Dallas Block No. A/1031, Texas and being all of Lot 4, Block A/1031, of TURTLE CREEK OFFICE ADDITION, an Addition to the City of Dallas, Texas, according to the plat thereof recorded in Volume 2003162, Page 48, Deed Records, Dallas County, Texas.

**Filed and Recorded**
**Official Public Records**
**John F. Warren, County Clerk**
**Dallas County, TEXAS**
**09/23/2019 10:57:56 AM**
**$262.00**
**201900253450**

# EXHIBIT 3

# PARTICIPATION AGREEMENT

This PARTICIPATION AGREEMENT ("Agreement") is made as of January 24, 2020, by and between 2999 TURTLE CREEK LLC, a Delaware limited liability company ("Madison"), and HNGH TURTLE CREEK, LLC, a Delaware limited liability company ("GHCP").

**WHEREAS**, on September 20, 2019, Madison made a loan in the original principal amount of $32,500,000.00 (the "Loan") to MO 2999TC, LLC, a Delaware limited liability company (the "Borrower"), secured by, among other things, the Borrower's interest in the real property located at 2999 Turtle Creek Boulevard, Dallas, Texas 75219 (the "Property").

**WHEREAS**, the Loan is evidenced by the following documents, each dated as of September 20, 2019 – that certain Secured Promissory Note by Borrower for the benefit of Madison (the "Note"), that certain Deed of Trust, Security Agreement and Fixture Filing by Borrower to Michael B. Massey, as trustee for the benefit of Madison (the "Deed of Trust"), and those other documents entered into in connection therewith (as set forth on Schedule I attached hereto and made a part hereof, the "Loan Documents").

**WHEREAS**, Madison desires to sell, and GHCP desires to purchase, a junior subordinate participation interest in the Loan and Loan Documents in the percentage and amount set forth on Exhibit A attached hereto and made a part hereof (the "GHCP Participation Interest"), subject to the terms and conditions set forth in this Agreement.

**WHEREAS**, simultaneous herewith, Madison is pledging and entering the Loan to Axos Bank (the "Repurchase Lender"), as security for a loan receiver (the "Axos Loan") by Madison to the Repurchase Lender (the "Loan Pledge"), as shall be evidenced by a Loan and Security Agreement (the "Repurchase Loan Agreement").

**WHEREAS**, as consideration for GHCP permitting the Loan Pledge, Madison Realty Capital Debt Fund IV LP, a Delaware limited partnership (the "Madison Fund"), shall enter into an Indemnification Agreement for the benefit of GHCP simultaneously with this Agreement (the "Indemnification Agreement"), in the form set forth as Exhibit C attached hereto.

**NOW, THEREFORE,** in consideration of the mutual covenants, agreements and provisions herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto covenant and agree as follows:

## 1. Definitions.

For purposes of this Agreement, all capitalized terms not expressly defined herein have the meanings ascribed thereto in the Note. The meanings of all capitalized terms apply equally to the singular and plural of the terms defined.

"Acquisition Fee": has the meaning provided in Section 3(a).

"Affiliate": means, with respect to any specified Person, any other Person controlling, controlled by or under common control with such specified Person. For the purposes of this definition, "control" when used with respect to any specified Person means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise, and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

"Axos Loan": has the meaning provided in the Recitals.

"Embargoed Person": means any Person that is (i) subject to trade restrictions under U.S. law, including but not limited to, the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701 et seq., The Trading with the Enemy Act, 50 U.S.C. App. 1 et seq., and any Executive Orders or regulations promulgated thereunder with the result that the investment in the Loan (whether directly or indirectly), is prohibited by law; (ii) a "blocked" person listed in the Annex to Executive Order Nos. 12947, 13099 and 13224 and all modifications thereto or thereof (the "Annex"); (iii) is listed as a Specially Designated Terrorist or as a "blocked" person on any lists maintained by the Office of Foreign Assets Control, Department of the Treasury (the "OFAC"); pursuant to the USA Patriot Act of 2001, 107 Public Law 56 (October 26, 2001) (together with all other statutes and all orders, rules and regulations of the United States government and its various executive departments, agencies and offices related to the subject matter of the Patriot Act, including Executive Order 13224 effective September 24, 2001, the "Patriot Act") or any other list of terrorists or terrorist organizations maintained pursuant to any of the rules and regulations of the OFAC issued pursuant to the Patriot Act or on any other list of terrorists or terrorist organizations maintained pursuant to the Patriot Act; (iv) a person who has been determined by competent authority to be subject to any of the prohibitions contained in the Patriot Act; or (v) owned or controlled by or now acting for or on behalf of any person named in the Annex or any other list promulgated under the Patriot Act or any other person who has been determined to be subject to the prohibitions contained in the Patriot Act.

"Event of Default": has the meaning provided in the Deed of Trust.

"GHCP": has the meaning provided in the Preamble.

"GHCP Interest Rate": LIBOR plus 15%; provided that LIBOR shall not be less than 2.4%.

"GHCP Note": has the meaning provided in Section 7(e)(iii).

"GHCP Participation Interest": has the meaning provided in the Recitals.

"Guaranty": has the meaning provided in Section 7(b)(i).

"Indemnification Agreement": has the meaning provided in the Recitals.

"Initial Maturity Date": has the meaning provided in Section 7(e)(iii).

"Loan Pledge": has the meaning provided in the Recitals.

"Losses": has the meaning provided in Section 14.

"Madison": has the meaning provided in the Preamble.

"Madison Fund": has the meaning provided in the Recitals.

"Madison Interest Rate": LIBOR plus 8.63%, provided that LIBOR shall not be less than 2.4%.

"Participants": means Madison, GHCP and the successors and assigns of each.

"Participation" or "Participation Interest": means an undivided beneficial participating interest in the Loan and the Loan Documents, equal to the percentage specified in Exhibit A to this Agreement, subject to the terms of this Agreement.

"Person": shall mean any individual, corporation, partnership, limited liability company, joint venture, association, joint stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

"Pro Rata Share": means, as of any date, the ratio (expressed as a percentage) of the Participation Interest of a Participant to all Participation Interests.

"Purchase Price": has the meaning provided in Section 2(a).

"Repurchase Lender": has the meaning provided in the Recitals.

"Repurchase Loan Agreement": has the meaning provided in the Recitals.

"Transfer": means any assignment, pledge, conveyance, sale, transfer, mortgage, encumbrance, grant of a security interest, issuance of a participation interest, or other disposition, either directly or indirectly, by operation of law or otherwise.

"Unanimous Decision": has the meaning provided in Section 6(b).

**2. Purchase of Participation Interest.**

(a) GHCP hereby purchases from Madison, and Madison hereby sells and assigns to GHCP, the GHCP Participation Interest in accordance with the schedule annexed hereto as Exhibit A, including the payments made thereon and any recoveries or distributions in connection therewith, notwithstanding the fact that the Loan Documents identify Madison as the "Lender," for the amount of Seven Million and No/100 Dollars ($7,000,000.00) (the "Purchase Price").

(b) Madison hereby retains the Madison Participation Interest, in accordance with the schedule annexed hereto as Exhibit A. The rights and obligations of the Participants hereunder shall be subject to the terms and provisions of this Agreement.

(c) Madison and GHCP intend that the purchase and sale of the GHCP Participation Interest be a sale and not a loan.

**3. Conditions Precedent.**

(a) Payment by Madison to GHCP of an acquisition fee in the amount of one percent (1%) of the Purchase Price (the "Acquisition Fee").

(b) The Madison Fund delivers to GHCP a properly executed Indemnification Agreement.

**4. Custody of Lender Documents.**

Prior to an Event of Default by Borrower, custody of the Lender Documents shall be held exclusively by either Madison or the Repurchase Lender (or, at Madison's or the Repurchase Lender's election, a servicer or a third-party custodian) for the benefit of all Participants. Upon the occurrence of an Event of Default under the Loan Documents and within two (2) days of GHCP's election to foreclose on the Property, Madison shall, or shall cause the Repurchase Lender to, provide the Loan Documents, in original form where applicable, to GHCP only to the extent necessary to enforce the Loan Documents. As a condition of Madison providing the Loan Documents in accordance with this Section 4, GHCP and its counsel will execute a bailee agreement reasonably acceptable to Madison or the Repurchase Lender and GHCP. Madison acknowledges and agrees that time is of the essence with respect to the delivery of the Loan Documents.

**5. Priority of Participation Interests; Payments.**

(a) Any amounts received by Madison as payments on the Loan from the date of this Agreement until the Maturity Date shall be distributed to the Participants one Business Day after receipt thereof (or, if received after 1:00 p.m. New York time, within two Business Days after receipt thereof), pursuant to the instructions on Exhibit B attached hereto. Madison shall not be deemed to have received any payments on the Loan until such time as it receives immediately available funds reflecting such payment.

(b) All such amounts will be applied and paid to the Participants in the following order:

i. first, to Madison in the amount of any actual, third-party costs and expenses incurred by Madison in servicing or administering the Loan or the Property including reasonable legal fees, and including any costs of enforcement and or managing the Property after a foreclosure or deed in lieu thereof;

ii. second, to Madison in the amount of any advances made by Madison and interest accrued with respect to such advances, which shall be paid to Madison with a priority in accordance to the date such advances were made;

iii. third, to Madison, an amount equal to the accrued and unpaid interest on the Madison Participation Interest at the applicable Madison Interest Rate until such time as all interest then due and payable to Madison has been paid in full, or interest at the Default Rate if GHCP fails to keep Madison current on the Loan such that Madison shall fail to continue to timely receive all accrued interest on the Loan at the Madison Interest Rate or has failed to further cure all defaults of the Borrower which are monetary in nature or result in a priority lien over the lien of the Deed of Trust;

iv. fourth, to Madison an amount equal to any payments received on account of principal, whether scheduled or extraordinary (including any payment due on the Maturity Date), on the Note, to be applied in reduction of the Madison Participation Interest, until such time as the entire Madison Participation Interest has been repaid in full;

v. fifth, to Madison, the Prepayment Premium (as such term is defined in the Loan Documents) based upon the Madison Participation Interest at the Madison Interest Rate;

vi. sixth, to Madison, the Exit Fee (as such term of defined in the Loan Documents) based upon the Madison Participation Interest with respect to the Loan; but only in the event GHCP has not elected to keep Madison current on the Loan such that Madison shall continue to timely receive all accrued interest on the Loan at the Madison Interest Rate and GHCP has not cured and is not continuing to cure all Event of Defaults of the Borrower which are susceptible to cure by GHCP;

vii. seventh, to GHCP in the amount of any actual, third-party costs and expenses incurred by GHCP in enforcing a foreclosure or deed in lieu thereof, pursuant to its rights set forth in <u>Section 7</u> hereof;

viii. eighth, to GHCP in the amount of any advances made by GHCP and interest accrued with respect to such advances, which shall be paid to GHCP with a priority in accordance to the date such advances were made

ix. ninth, to GHCP, an amount equal to the accrued and unpaid interest on the GHCP Participation Interest at the applicable GHCP Interest Rate until such time as all interest then due and payable to GHCP has been paid in full;

x. tenth, to GHCP an amount equal to any payments received on account of principal, whether scheduled or extraordinary (including any payment due on the Maturity Date), on the Note, to be applied in reduction of the GHCP Participation Interest, until such time as the entire GHCP Participation Interest has been repaid in full;

xi. eleventh, to Madison, the Exit Fee (as such term of defined in the Loan Documents) based upon the Madison Participation Interest with respect to the Loan; but only to the extent not paid pursuant to clause (vi) above, in the event GHCP has elected to keep Madison current on the Loan such that Madison shall continue to timely receive all accrued interest on the Loan at the Madison Interest Rate and GHCP has cured and is continuing to cure all Event of Defaults of the Borrower which are susceptible to cure by GHCP;

xii. twelfth, to GHCP, the Exit Fee (as such term of defined in the Loan Documents) based upon the GHCP Participation Interest with respect to the Loan;

xiii. thirteenth, to GHCP, the Prepayment Premium (as such term is defined in the Loan Documents) based upon the GHCP Participation Interest; and

xiv. fourteenth, subject to clause (iii) above, if any Default Interest or any other excess amount is paid by the Borrower, and not otherwise applied in accordance with the foregoing clauses, such amount shall be paid (i) 100% to Madison in the event GHCP has not elected to keep Madison current on the Loan such that Madison continues to timely receive all accrued interest on the Loan at the Madison Interest Rate and (ii) 100% to GHCP in the event GHCP has elected to keep Madison current on the Loan such that Madison continues to timely receive all accrued interest on the Loan at the Madison Interest Rate

(c) Notwithstanding anything to the contrary contained herein, so long as no Event of Default has occurred and is continuing, all amounts received on account of interest payments in connection with the Loan shall be distributed by Madison as and when received (or in the case of reserve funds, as and when permitted under the applicable Loan Documents to be disbursed) as follows: (1) first, to Madison, an amount equal to the accrued and unpaid interest on the Madison Participation Interest at the Madison Interest Rate until such time as all interest then due and payable to Madison has been paid in full and (2) second, to GHCP, an amount equal to the accrued and unpaid interest on the GHCP Participation Interest at the GHCP Interest Rate until such time as all interest then due and payable to GHCP has been paid in full.

**6. Servicing of the Loan.**

(a) Prior to an Event of Default by Borrower, Madison shall have the exclusive authority to administer the Loan and to exercise the rights of "Lender" under the Loan Documents. Madison shall not be obligated to obtain the consent or approval of GHCP prior to taking any action or granting (or withholding) any consent or otherwise making any decision or determination pertaining to a matter that is not a Unanimous Decision. Nothing contained in this Agreement is intended to create an agency or fiduciary relationship, it being acknowledged that Madison's obligations are primarily administrative in nature. Neither Madison nor any of its shareholders, directors, officers or employees, nor any other Person assisting them in their duties or any agent, or employee thereof shall owe any fiduciary duty to any of the other Participants. Neither Madison nor any of its respective shareholders, directors, officers or employees, nor any other Person assisting them in their duties or any agent, or employee thereof shall be required to take any action

which violates the terms of this Agreement or the Loan Documents, or which violates any laws, rules, court orders or decisions, ordinances, regulations, statutes, requirements, codes or executive orders, now existing or hereafter created.

(b) Except as otherwise set forth in this Agreement, Madison shall not, and, if applicable, shall not consent to the Borrower, taking any of the following actions under the Loan Documents (each a "Unanimous Decision") without the prior written consent of GHCP: (i) except as otherwise set forth in this Agreement, sell all or any portion of, or any material estate or interest in, the Property; (ii) enter into any type of workout or settlement with the Borrower under any circumstances, including, but not limited to, any waiver of defaults or forbearance with respect to any default of the Borrower; (iii) release the Property or any part thereof or any other collateral for the Loan from the lien provided for in the Deed of Trust or any associated document; (iv) agree to allow any lien on the Property not specifically permitted by the Loan Documents; (v) consent to the filing by Borrower of a petition in bankruptcy, or consenting to an involuntary petition in bankruptcy; (vi) except as otherwise set forth in this Agreement, assign its interest in the Loan; or (vii) except as otherwise set forth in this Agreement enter into any amendment or modification of, or waive compliance with the terms of, any Loan Document; (viii) any change in the development plans or use of the Property; or (ix) foreclose on the Property. Notwithstanding the foregoing, if GHCP fails to keep Madison current on the Loan such that Madison has continued to timely receive all accrued interest on the Loan at the Madison Interest Rate or has failed to further cure all defaults of the Borrower which are monetary in nature or result in a priority lien over the lien of the Deed of Trust, Madison shall not need the approval of GHCP to foreclose on the Property.

(c) Notwithstanding anything set forth in this Agreement, within ten (10) days of the date of this Agreement Madison will inform Borrower that GHCP has purchased a junior interest in the Loan and GHCP shall have the right to communicate with the Borrower at any time and on any matter while GHCP holds the GHCP Participation Interest and within two (2) business days after an Event of Default under the Loan, Madison will inform Borrower that GHCP has the right to act on behalf of Madison with respect to a foreclosure.

**7. Event of Default; Foreclosure.**

(a) Madison will promptly notify GHCP in writing of any default or Event of Default under any Loan Document of which Madison has knowledge.

(b) Upon the occurrence of an Event of Default by the Borrower, and provided GHCP has elected to keep Madison current on the Loan such that Madison shall continue to timely receive all accrued interest on the Loan at the Madison Interest Rate and has further cured and continues to cure all Event of Defaults of the Borrower which are monetary in nature or result in a priority lien over the lien of the Deed of Trust, Madison acknowledges and agrees that, subject to the restrictions set forth in Section 7(d) hereof:

i. GHCP will make all decisions as if GHCP is "Lender" under the Loan Documents with respect to the foreclosure on the Property pursuant to the Deed of Trust and any enforcement of the Guaranty executed by Timothy Lynch Barton simultaneously

with the Note (the "Guaranty"), exercising its sole discretion, and Madison will take any and all steps requested by GHCP from time to time to implement this control right;

ii. Madison will not communicate directly with the Borrower without GHCP's prior consent with respect to settling, waiving, forbearing, or the exercising of remedies under the Loan Documents; and

iii. Madison will not sell or otherwise assign or transfer the Loan (including GHCP Participation Interest) during the pendency of any workout between GHCP and the Borrower, provided however, even if GHCP fails to keep Madison current on the Loan such that Madison shall continue to timely receive all accrued interest on the Loan at the Madison Interest Rate or has failed to further cure all defaults of the Borrower which are monetary in nature or result in a priority lien over the lien of the Deed of Trust, Madison will not assign or transfer the Loan during the first ninety (90) days after an Event of Default by Borrower.

(c) Upon the occurrence of an Event of Default by the Borrower GHCP shall have the right (but not the obligation) to purchase the Madison Participation Interest for a purchase price equal to the entire outstanding balance of the Madison Participation Interest, including without limitation, all accrued interest at the Default Rate, the Prepayment Premium, the Exit Fee, late charges and any other sums due and owing to Madison in connection with the Loan, provided however, if GHCP has elected to keep Madison current on the Loan such that Madison shall continue to timely receive all accrued interest on the Loan at the Madison Interest Rate and has further and continues to cure all Event of Defaults of the Borrower which are monetary in nature or result in a priority lien over the lien of the Deed of Trust, in order to purchase the Madison Participation Interest, GHCP shall not be obligated to pay the difference between the Madison Rate and the Default Rate on the Madison Participation Interest or any accrued late charges in connection with the Loan.

(d) Notwithstanding anything to the contrary set forth in this Agreement, GHCP may not without the express consent of Madison:

i. Compromise the principal balance of the Loan;

ii. Decrease the rate of interest on the Loan;

iii. Make or consent to any release, substitution or exchange of any collateral for the Loan or any guaranty of the Loan;

iv. Enter into any agreement with the Borrower to extend the maturity of the Loan beyond the maturity date explicitly contained in the Loan documents;

v. Consent to any agreement in any insolvency proceeding relating to the Loan, the Borrower or any property related thereto, including, without limitation, voting for a plan of reorganization or liquidation;

vi. Release any obligor from any material obligation to pay the principal and interest on the Loan;

vii. Sign a subordination agreement concerning the lien of the Loan;

viii. Settle, or consent to the settlement of, (1) any insurance claim or (2) any condemnation claim, unless such proceeds pay off the Loan in full;

ix. Consent to the application of condemnation awards or insurance proceeds for any purpose other than the restoration of the Property, unless such proceeds pay off the Loan in full;

x. Consent to any senior or subordinate financing affecting the underlying borrower in connection with the Property;

xi. Bid at a foreclosure sale/auction in connection with the Loan in an amount less than the amount necessary to repay the obligations under the Loan from the proceeds of such sale/auction, or the amount necessary to be the winning bidder, whichever is less;

xii. Amend, restructure, work out, renegotiate or modify, or waive any one or more provisions of the Loan;

xiii. Permit reinstatement of the Loan or a cure of the default with respect to the Loan;

xiv. Enter into any forbearance or friendly forbearance agreements;

xv. Accept the cure of any "event of default" except as otherwise specifically required pursuant to the Loan Documents or applicable law;

xvi. Consummate any other modification (including by waiver or consent) that the Borrower or GHCP reasonably determines in good faith is reasonably likely to have a material and adverse impact on (A) the value of or the Loan, (B) the rights of the holder of the Loan; and

xvii. Modify any leases or the hotel management agreement in connection with the Property; provided, however, it is acknowledged and agreed that GHCP shall not unreasonably withhold, condition or delay its consent with respect to any approval required or requested in connection with the "Hotel Agreements" and the "Hotel SNDA" (as such terms are defined in the Deed of Trust).

(e) If, after the occurrence of an Event of Default and provided GHCP has elected to keep Madison current on the Loan such that Madison shall continue to timely receive all accrued interest on the Loan at the Madison Interest Rate and has further cured and continues to cure all

Event of Defaults of the Borrower which are monetary in nature or result in a priority lien over the lien of the Deed of Trust, GHCP elects to cause Madison to foreclose on the Property pursuant to the terms and conditions of the Deed of Trust and this Agreement, then:

i. Madison shall credit bid the Loan and take any and all steps necessary to obtain possession of the Property and any other collateral under the Loan Documents free and clear of any liens or encumbrances;

ii. simultaneously with delivery of the documents described in Section 7(e)(iii), below, Madison shall transfer the Property to an entity selected by GHCP and wholly owned by GHCP (the "GHCP SPE");

iii. as consideration for the transfer of the Property, GHCP shall cause the GHCP SPE to enter into (A) a secured promissory note (the "GHCP Note") in the amount of the outstanding balance of the Madison Participation at the time of the completion of the foreclosure, which GHCP Note shall have a term of twelve (12) months, interest accruing at the Interest Rate set forth in the Note, and principal and interest due at the end of such twelve (12) month period, (B) a deed of trust against the Property in favor of Madison (the "GHCP DOT"), (C) a non-recourse carveout guaranty substantially in the form set forth as Exhibit D attached hereto, (D) an environmental indemnity agreement in substantially the same form and substance as the environmental indemnity agreement provided by Borrower only covering acts and liabilities first arising after GHCP takes possession of the Property and (E) an ALTA title policy insuring a first-lien position of Madison (subject only to any exceptions on Madison's existing title policy with respect to the Property and any new exceptions reasonably acceptable to Madison) for the amount of the GHCP Note. For the avoidance of doubt, the form and substance of the GHCP Note and the GHCP DOT shall be substantially similar to the existing Note and Deed of Trust, except (x) for the representations and warranties, which shall be modified as appropriate at the time of closing on the GHCP Note and GHCP DOT and (y) any and all fees that are not percentage based shall be adjusted, pro rata, based on the difference in the original principal balance of the GHCP Note and the original principal balance of the Note. Upon the occurrence of 7(e)(ii) and (iii) hereof, the GHCP Participation shall be terminated and shall cease to exist; and

iv. at its election, GHCP on behalf of Madison, and pursuant to the terms of Section 7(b)(i) and Section 7(f) hereof, shall have the right to enforce the Guaranty for any amounts owed thereunder, including, but not limited to, any shortfall of the amount credit bid to take possession of the Property pursuant to a foreclosure by GHCP, acting as "Lender," and the outstanding balance of the amounts owed on the Loan at such time. Any amounts collected through such suit or action shall be paid to Madison as a dollar-for-dollar reduction of the principal balance of the GHCP Note. Notwithstanding anything to the contrary set forth herein, any payment made to Madison pursuant to the foregoing sentence shall only occur after GHCP has executed and delivered the GHCP Note to Madison in accordance with Section 7(e)(iii) above, and any Exit Fee owing to Madison in connection with such payment shall be included with the payment thereof.

(f) Immediately upon the occurrence of an Event of Default and provided GHCP has elected to keep Madison current on the Loan such that Madison shall continue to timely receive all accrued interest on the Loan at the Madison Interest Rate and has further cured and continues to cure all Event of Defaults of the Borrower which are monetary in nature or result in a priority lien over the lien of the Deed of Trust, Madison appoints GHCP as Madison's attorney-in-fact (the "**Power of Attorney**") solely for the purpose of taking any and all steps necessary to effect a foreclosure of the Property and the enforcement of the Guaranty, including but not limited to requesting the Loan Documents from the Repurchase Lender pursuant to any agreement between Madison and the Repurchase Lender, such Power of Attorney being coupled with an interest, with full authority in the place and stead of Madison and in the name of Madison or otherwise, to act as "Lender" under the Loan Documents for the purpose of foreclosure. Notwithstanding anything set forth in this Section 7(f), (i) GHCP agrees that it shall not exercise its Power of Attorney until such time as Madison has received from GHCP written notice of the actions GHCP requests be taken, in each case with respect to a foreclosure of the Property and the enforcement of the Guaranty, and Madison has failed to comply with the requests of GHCP for two (2) Business Days after receipt of such notice; provided, however, such two (2) Business Day period shall not apply if it causes the earliest foreclosure date to be delayed, and (ii) GHCP shall not have the right to act as Madison's attorney-in-fact to take the step set forth in Section 7(e)(ii), above. For the avoidance of doubt, any notice delivered by GHCP to Madison in accordance with clause (i) of the previous sentence shall be sent to each of the notice parties of Madison set forth on Exhibit A attached hereto. GHCP shall indemnify and defend Madison for any actions taken in the name of Madison which are outside the scope of GHCP's rights under this Agreement.

(g) For the avoidance of doubt, any enforcement proceedings with respect to the Guaranty undertaken by GHCP (or by Madison at the bequest of GHCP) shall not in any event adversely impact the ability to enforce and collect under and pursuant to the Deed of Trust.

**8. Transfer.**

(a) Subject to Section 7.18(a) of the Repurchase Loan Agreement, no Participant may from time to time Transfer its Participation Interest or any interest therein, except as expressly permitted in Section 7(b) above and Section 8(b) below and other than the transfer of an indirect interest in a Participant which results from death.

(b) Any Participant may transfer all or any portion of its Participation Interest, or may cause or permit the transfer of any indirect ownership interest in its Participation, to one or more of its Affiliates.

(c) The Participants agree that Madison may take the necessary steps to enter into the Loan Pledge and Repurchase Lender may realize on such collateral provided that Repurchase Lender directly recognizes GHCP's rights under this Agreement in its agreements with Madison, including, but not limited to, the rights set forth in Section 12 hereto.

(d) Madison shall be prohibited from transferring its interest to any entity controlled by or affiliated with the Borrower or to any direct competitor of, or anyone whose interest is adverse to GHCP.

**9. Extension Fee**. In addition to the Acquisition Fee, Madison shall pay to GHCP a fee in the amount of one percent (1%) of the Purchase Price upon the exercise by the Borrower of any extension option set forth in Section 8 of the Note, to the extent received by Madison. Madison agrees that it shall not waive its right to any fee from Borrower without prior written consent from GHCP.

**10. Financing Right of First Refusal**. Madison acknowledges and agrees that if it exercises its right, pursuant to the terms and conditions set forth in Section 61 of the Deed of Trust or otherwise provides a loan offer for a refinancing of the Property (other than a construction refinancing of the Property), then GHCP shall have the right but not the obligation to participate in such loan offer to the same percentage as is represented by the GHCP Participation Interest, on substantially the same terms as are set forth in this Agreement. With respect to a construction refinancing of the Property, if Madison elects to offer a participation to any Person, then Madison will first offer a participation interest to GHCP. In the event GHCP does not affirmatively accept such participation interest in writing within five (5) Business Days of receipt of the offer by Madison, Madison shall be entitled to offer such a participation interest to other potential investors. For the avoidance of doubt, in the event Madison does not offer a participation interest in a construction refinancing of the Property to any other investors, Madison shall not be obligated to make such participation interest available to GHCP.

**11. Representations and Warranties.**

(a) Each Participant represents and warrants to the other Participants that:

i. the execution, delivery and performance of this Agreement is within its corporate powers, has been duly authorized by all necessary corporate action, and does not contravene in any material respect its organizational documents or any law or contractual restriction binding upon it;

ii. this Agreement is the legal, valid and binding obligation of such Participant enforceable against it in accordance with the terms hereof except as such enforcement may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the enforcement of creditors' rights generally, and by general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law), and except that the enforcement of rights with respect to indemnification and contribution obligations may be limited by applicable law;

iii. the individual or individuals executing this Agreement and any and all documents contemplated hereby on behalf of such Participant has or have the legal and actual authority to bind such Participant to the terms and conditions contained in this Assignment and in such documents;

iv. the execution and delivery of this Agreement by such Participant, and performance of, and compliance with, the terms of this Agreement by such Participant, will not violate such Participant's organizational documents or constitute a default (or an event

which, with notice or lapse of time, or both, would constitute a default) under, or result in the breach of, any material agreement or other instrument to which it is a party or that is applicable to it or any of its assets;

v. such Participant is not an Embargoed Person; and

vi. such Participant has not dealt with any broker, investment banker, agent or other Person that may be entitled to any commission or compensation in connection with the consummation of any of the transactions contemplated hereby.

(b) Madison represents and warrants to GHCP that:

i. the execution, delivery, and performance by Madison of this Agreement and related documents: (a) is within its power and authority and has been duly authorized by all necessary action; (b) does not contravene the terms of its organizational documents or any amendment thereof; and (c) will not violate, conflict with or result in any breach or contravention of any of its material contractual obligations, or any order or decree directly relating to it;

ii. this Agreement has been duly executed and delivered by Madison and constitutes Madison's legal, valid, and binding obligation, enforceable against Madison in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, or similar laws affecting the enforcement of creditors' rights generally or by equitable principles relating to enforceability;

iii. no approval, consent, compliance, exemption, authorization, or other action by, or notice to, or filing with, any governmental authority or any other person in respect of any law, and no lapse of a waiting period under any law, is necessary or required in connection with the execution, delivery, or performance by Madison or enforcement against it of this Agreement or the transactions contemplated hereby;

iv. the Loan Documents set forth on Schedule I represent all Loan Documents entered into in connection with the Loan; and

v. the Loan is currently in good standing and there are no Events of Default or, to the best of Madison's knowledge, outstanding circumstances which, with notice or the passing of time or both, would constitute Events of Default.

For the avoidance of doubt, except as specifically set forth in this Participation Agreement, it is acknowledged and agreed that the GHCP Participation Interest is being sold by Madison "as-is and "where-is", and Madison makes no representation or warranty with respect to the Loan and/or the property except as expressly set forth herein.

**12. Repurchase Lender Loan Agreement.** Madison shall not enter into any material amendment to the Repurchase Loan Agreement, including, but not limited to, any amendment in any way affecting the rights of GHCP as "Participant," without the prior written consent of GHCP.

**13. Independent Analysis; Audit Right; Status of the Parties.**

(a) Each Participant acknowledges that it has entered into this Agreement independently and without reliance upon representations made by any other Participant (except to the extent expressly set forth herein), and each Participant acknowledges and agrees that any information provided to such Participant and based on such documents and information as such Participant has deemed appropriate, made its own credit analysis and decision to purchase or retain its Participation Interest. Each Participant assumes all risk of loss in connection with its Participation Interest.

(b) Notwithstanding the foregoing, GHCP shall, until the Loan has been fully satisfied and GHCP has received all amounts owing to it under this Agreement and for a period of one (1) year thereafter, have the right to audit, from time to time, Madison's books and records concerning the Loan.

(c) Madison and GHCP are not partners, and this Agreement and the transactions contemplated hereby do not create a joint venture between Madison and GHCP.

**14. Limited Liability; Indemnity.**

No Participant, its Affiliates, or any of the directors, officers, employees or agents thereof shall be under any liability to any other Participant or any third party for taking or refraining from taking any action, in good faith pursuant to or in connection with this Agreement, or for errors in judgment; provided, however, that this provision shall not protect Madison against any liability by reason of Madison's bad faith or gross negligence in the performance of its express duties hereunder or any actions taken by Madison contrary to the terms of this Agreement. Each Participant shall indemnify the other Participant and their respective members, principals and agents, on demand, in proportion to their extent of their Participation, for and against any and all claims, demands, liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements (including fees and disbursements of counsel) of any kind or nature whatsoever (collectively, "Losses") which may be imposed on, incurred by, or asserted against the other Participant and/or their respective members, principals and agents in any way relating to or arising under this Agreement and/or the Loan Documents, or any action taken or omitted by a Participant hereunder or thereunder, including with respect to the financing or collection of the Loan, the monitoring of the Loan and the exercise of rights under the Loan Documents. However, neither Participant shall be liable for any portion of such Losses to the extent, but only to the extent, resulting from the other Participant's gross negligence, willful misconduct, fraud or breach or default under this Agreement. The provisions of this Section shall survive any termination of this Agreement.

**15. Acknowledgement by Parties Hereto.**

The agreement to and acceptance of this Agreement by the parties hereto, indicated by the execution of this Agreement, shall evidence each party's acceptance of all the terms and conditions of this Agreement.

**16. Notices.**

Except as otherwise expressly provided herein, all notices, requests and demands to or upon the respective parties hereto to be effective shall be in writing, and shall be deemed to have been duly given or made when delivered by hand, or, in the case of a nationally recognized overnight courier service, one Business Day after delivery to such courier service, addressed at the address specified on Exhibit A hereto as updated and distributed to all parties hereto from time to time.

**17. Entire Agreement.**

This Agreement supersedes all previous agreements, oral or written, among the parties hereto with respect to the subject matter hereof.

**18. Modifications and Amendments.**

This Agreement may not be modified or amended orally or waived or modified in any manner except as expressly set forth herein. All modifications or amendments shall be by an agreement in writing signed by the party against whom enforcement is sought.

**19. Miscellaneous.**

(a) This Agreement and the rights and obligations of the parties hereto shall be construed in accordance with and be governed by the laws of the State of New York.

(b) Any legal action or proceeding with respect to this Agreement and any action for enforcement of any judgment in respect thereof may be brought in the courts of the State of New York, Borough of Manhattan, or of the United States of America for the Southern District of New York and, by execution and delivery of this Agreement, each party hereby accepts for itself and in respect of its property, generally and unconditionally, the non-exclusive jurisdiction of the aforesaid courts and appellate courts for any such action or proceeding. Each party hereby irrevocably waives any objection which it may now or hereafter have to the laying of venue of any of the aforesaid actions or proceedings arising out of or in connection with this Agreement brought in the courts referred to above and hereby further irrevocably waives the right, and agrees not, to plead or claim in any such court that any such action or proceeding brought in any such court has been brought in an inconvenient forum. Nothing herein shall affect the right of any Participant or any holder of the Loan to serve process in any other manner permitted by law or to commence legal proceedings or otherwise proceed against Borrower in any other jurisdiction.

(c) It is the intent of the parties hereto that the Participation Interests are participating beneficial ownership interests of the type and nature contemplated by 11 U.S.C. Section 541(d) of the United States Bankruptcy Code.

(d) This Agreement may be executed in any number of duplicates and counterparts and by the different parties hereto on separate counterparts, each of which when so executed and delivered shall be an original, but all of which shall together constitute one and the same instrument.

(e) In case any provision in or obligation under this Agreement, the Note or the other Loan Documents shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

(f) GHCP's interest in the Loan, including without limitation, the GHCP Participation shall be subject and subordinate to the Axos Loan, subject to the provisions of the Repurchase Loan Agreement. No further instrument shall be necessary to effectuate the foregoing subordination.

(g) Unless Madison defaults under the Axos Loan and GHCP thereafter cures such default or Event of Default, GHCP shall not receive any economic benefits from the Axos Loan; provided, however, that nothing in this Section 19(g) shall be construed to require GHCP to disgorge any funds received or to make payment to any party.

[*Signature page follows.*]

EXECUTED as of the date first set forth above.

**MADISON:**

**2999 TURTLE CREEK LLC,**
a Delaware limited liability company

By:________________________
Name: Joshua Zegen
Title: Authorized Signatory

**GHCP:**

**HNGH TURTLE CREEK, LLC,**
a Delaware limited liability company

By: HN Capital Partners LLC,
its Manager

By:________________________
Name: ________________________
Title: ________________________

EXECUTED as of the date first set forth above.

**MADISON:**

**2999 TURTLE CREEK LLC,**
a Delaware limited liability company

By:_______________________________
Name: _____________________________
Title: _____________________________

**GHCP:**

**HNGH TURTLE CREEK, LLC,**
a Delaware limited liability company

By: HN Green Hollow Capital Partners LLC,
its Authorized Signatory

By:_______________________________
Name: Jim Glasgow
Title: Manager

# EXHIBIT A

Participation Interests

| Participant | Amount of Interest | Percentage | Address |
|---|---|---|---|
| HNGH Turtle Creek, LLC | $7,000,000.00 | 21.54% | HNGH Turtle Creek, LLC<br>c/o HN Green Hollow Capital Partners LLC<br>600 5th Ave., 2nd fl.<br>NY, NY 10020<br>Attention Jim Glasgow<br><br>With a copy to:<br><br>Wick Phillips LLP<br>3131 McKinney Ave., Suite 100<br>Dallas, TX 75204<br>Attention: Michael Bailey |
| 2999 TURTLE CREEK LLC | $25,500,000.00 | 78.46% | 2999 Turtle Creek LLC<br>520 Madison Ave., Suite 3501<br>NY 10022<br>Attn: Brian Shatz<br><br>With a copy to:<br><br>Kriss & Feuerstein LLP<br>360 Lexington Ave.,<br>Suite 1200<br>New York, New York 10017<br>Attention: Jerold Feuerstein |

EXHIBIT B

Payment Instructions

WIRING INSTRUCTIONS

FROST NATIONAL BANK

THE FROST NATIONAL BANK

100 W. Houston Street

San Antonio, Texas 78205

ABA: [redacted]

Account Name: HNGH Turtle Creek, LLC

Account Number: [redacted]

Swift Code: FRSTUS44A

# EXHIBIT C

Indemnification Agreement

**INDEMNIFICATION AGREEMENT**

This INDEMNIFICATION AGREEMENT (this "Agreement") is made as of January 24, 2020, by MADISON REALTY CAPITAL DEBT FUND IV LP, a Delaware limited partnership (the "Fund"), for the benefit of HNGH TURTLE CREEK, LLC, a Delaware limited liability company ("GHCP").

**WHEREAS**, on September 20, 2019, 2999 TURTLE CREEK LLC, a Delaware limited liability company ("Madison"), made a loan in the original principal amount of $32,500,000.00 (the "Loan") to MO 2999TC, LLC, a Delaware limited liability company (the "Borrower"), secured by, among other things, the Borrower's interest in the real property located at 2999 Turtle Creek Boulevard, Dallas, Texas 75219 (the "Property").

**WHEREAS**, the Loan is evidenced by the following documents, each dated as of September 20, 2019 – that certain Secured Promissory Note by Borrower for the benefit of Madison (the "Note"), that certain Deed of Trust, Security Agreement and Fixture Filing by Borrower to Michael B. Massey, as trustee for the benefit of Madison (the "Deed of Trust"), and those other documents entered into in connection therewith (collectively with the Note and the Deed of Trust, the "Loan Documents").

**WHEREAS**, Madison intends to sell, and GHCP intends to purchase, a junior subordinate participation interest in the Loan and Loan Documents pursuant to a Participation Agreement entered into simultaneous herewith by and between Madison and GHCP (the "Participation Agreement"), subject to the terms and conditions set forth therein.

**WHEREAS**, simultaneous herewith, Madison intends to pledge and enter the Loan to Axos Bank (the "Repurchase Lender"), as security for a loan receiver (the "Axos Loan") by Madison to the Repurchase Lender (the "Loan Pledge"), as shall be evidenced by a Loan and Security Agreement (the "Repurchase Loan Agreement").

**WHEREAS**, the Fund is the owner, directly or indirectly, of Madison, and as consideration for GHCP permitting the Loan Pledge, is entering into this Agreement to indemnify GHCP for risks associated with the Loan Pledge as more fully set forth herein.

**NOW, THEREFORE,** in consideration of the mutual covenants, agreements and provisions herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Fund covenants and agrees as follows:

**1. Indemnification.**

The Fund shall indemnify GHCP and its respective members, principals and agents (the "Indemnified Parties"), on demand, for and against any and all claims, demands, liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements (including fees and disbursements of counsel) of any kind or nature whatsoever (collectively, "Losses") which may be imposed on, incurred by, or asserted against GHCP and/or its respective members, principals and agents in any way relating to or arising under:

(a) the Loan Pledge, including, without limitation, any payments made by any Indemnified Party to the Repurchase Lender to cure a monetary default under the Repurchase Loan Agreement or any other document evidencing the Loan Pledge;

(b) any cure payment made by any Indemnified Party to Madison to cure a default by the Borrower that is not paid by Madison to the Repurchase Lender as required by any document evidencing the Axos Loan. However, the Fund shall not be liable for any portion of such Losses to the extent, but only to the extent, resulting from GHCP's gross negligence, willful misconduct, or failure to cure any default by Madison, which default GHCP has the ability to cure, pursuant to the documents evidencing the Axos Loan, provided GHCP has received notice from the Repurchase Lender of such event of default. The provisions of this Section shall survive any termination of the Participation Agreement;

(c) upon GHCP's election to foreclose on the Property pursuant to Section 7 of the Participation Agreement, (i) any failure by the Repurchase Lender or Madison to deliver any Loan Documents requested by GHCP in the timeline set forth in the Participation Agreement and the Repurchase Loan Agreement, respectively and (ii) any failure by Madison to immediately take the steps set forth as "Participant Conversion Conditions" in the Repurchase Loan Agreement;

(d) Madison's failure to transfer the Property to the GHCP SPE pursuant to Section 7(e)(ii) of the Participation Agreement; and

(e) any exercise of remedies by the Repurchase Lender with respect to the Loan or the Loan Documents after the occurrence of an Event of Default (as defined in the Repurchase Loan Agreement or any associated document) by Madison that is uncurable by GHCP pursuant to Section 7.18(f) of the Repurchase Loan Agreement.

Notwithstanding anything to the contrary set forth in this Agreement and the Participation Agreement, the Fund shall have no further obligations under this Agreement (i) for any transactions, occurrences, acts or omissions which occur after the completion of a foreclosure action related to the Loan and/or (ii) at any time during which GHCP has failed to (a) keep Madison current on the Loan such that Madison shall continue to timely receive all accrued interest on the Loan at the Madison Interest Rate and (b) cure any Event of Defaults of the Borrower which would create a priority lien over the Property.

**2. Miscellaneous.**

(a) This Agreement and the rights and obligations of the Fund shall be construed in accordance with and be governed by the laws of the State of New York.

(b) Any legal action or proceeding with respect to this Agreement and any action for enforcement of any judgment in respect thereof may be brought in the courts of the State of New York, Borough of Manhattan, or of the United States of America for the Southern District of New York and, by execution and delivery of this Agreement, the Fund hereby accepts for itself and in respect of its property, generally and unconditionally, the non-exclusive jurisdiction of the aforesaid courts and appellate courts for any such action or proceeding. The Fund hereby

irrevocably waives any objection which it may now or hereafter have to the laying of venue of any of the aforesaid actions or proceedings arising out of or in connection with this Agreement brought in the courts referred to above and hereby further irrevocably waives the right, and agrees not, to plead or claim in any such court that any such action or proceeding brought in any such court has been brought in an inconvenient forum. Nothing herein shall affect the right of GHCP to serve process in any other manner permitted by law or to commence legal proceedings or otherwise proceed against the Fund in any other jurisdiction.

(c) All other capitalized terms used but not otherwise defined in this Agreement shall have the meanings ascribed to such terms in the Participation Agreement.

[*Signature page follows.*]

EXECUTED as of the date first set forth above.

**THE FUND:**

**MADISON REALTY CAPITAL DEBT FUND IV LP,**
a Delaware limited partnership

By: Madison Realty Capital Debt Fund IV GP, LLC
its General Partner

By:____________________
Name: Joshua Zegen
Title: Authorized Signatory

# EXHIBIT D

Form of Guaranty

# CONDITIONAL GUARANTY

**THIS CONDITIONAL GUARANTY** (this "**Guaranty**"), made as of ______________________, by [________________], a [______________], with an address at __________________ (the "**Guarantor**"), in favor of [________________], a Delaware limited liability company having offices at 520 Madison Avenue, Suite 3501, New York, NY 10022 (together with its successors and assigns, hereinafter, collectively, the "**Lender**").

## WITNESSETH:

A. WHEREAS, [________________], a [______________] (the "**Borrower**"), has obtained a loan in the principal amount of $____________________ (the "**Land Loan**") from Lender;

B. WHEREAS, the Land Loan is evidenced by that certain Consolidated, Amended and Restated Note dated as of the date hereof (the "**Land Loan Note**"), executed by Borrower and payable to the order of Lender in the stated principal amount of $___________________, and secured by that certain Consolidated, Amended and Restated Mortgage and Security Agreement dated as of the date hereof, by and among Borrower and Lender (the "**Land Loan Mortgage**"), encumbering certain real property situated in _________________ County, New York State, as more particularly described on Exhibit A attached hereto and incorporated herein by this reference, together with the buildings, structures and other improvements now or hereafter located thereon (said real property, buildings, structures and other improvements being hereinafter collectively referred to as the "**Property**"), and by other documents and instruments;

C. WHEREAS, Borrower has obtained a building loan in the principal amount of up to $______________ (the "**Building Loan**") from Lender, which Building Loan shall be disbursed in accordance with and subject to the disbursement procedures and conditions set forth in that certain Building Loan Agreement dated of even date herewith and executed by Borrower and Lender (hereinafter the "**BLA**");

D. WHEREAS, the Building Loan is evidenced by that certain Building Loan Note dated the date hereof (the "**Building Loan Note**"), executed by Borrower and payable to the order of Lender in the stated principal amount of up to $______________, and secured by that certain Building Mortgage and Security Agreement dated the date hereof, executed by Borrower in favor of Lender (the "**Building Loan Mortgage**"), encumbering the Property, and by other documents and instruments;

E. WHEREAS, the Borrower has obtained a project loan in the principal amount of up to $______________ (the "**Project Loan**"; together with the Land Loan and the Building Loan, hereinafter, collectively, the "**Loan**") from Lender, which Project Loan shall be disbursed in accordance with and subject to the disbursement procedures and conditions set forth in that certain Project Loan Agreement dated of even date herewith and executed by Borrower and Lender (hereinafter the "**PLA**"; together with the BLA hereinafter collectively the "**Loan Agreements**");

F. WHEREAS, the Project Loan is evidenced by that certain Project Loan Note dated the date hereof (the "**Project Loan Note**"; together with the Land Loan Note and the Building

Loan Note hereinafter, collectively, the "**Note**"), executed by Borrower and payable to the order of Lender in the stated principal amount of up to $_____________, and secured by that certain Project Mortgage and Security Agreement dated the date hereof, executed by Borrower in favor of Lender (the "**Project Loan Mortgage**"; together with the Land Loan Mortgage and the Building Loan Mortgage hereinafter, collectively, the "**Mortgage**"), encumbering the Property, and by other documents and instruments;

G. WHEREAS, for purposes herein, the Note, the Mortgage, the Loan Agreements, this Guaranty and such other documents and instruments related to the Loan, as the same may be from time to time amended, consolidated, renewed or replaced, being collectively referred to herein as the "**Loan Documents**";

H. WHEREAS, initially capitalized terms not otherwise defined herein shall have the meanings given to such terms in the Mortgage; and

I. WHEREAS, Guarantor is an owner, either directly or indirectly, of a beneficial interest in Borrower, the extension of the Loan to Borrower is of substantial benefit to Guarantor, and, therefore, Guarantor desires to enter into this Guaranty in favor of Lender.[1]

NOW, THEREFORE, to induce Lender to extend the Loan to Borrower, and in consideration of the foregoing promises and for other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged, Guarantor hereby covenants and agrees for the benefit of Lender, as follows as of the date hereof:

1. **Indemnity and Guarantee**. Guarantor hereby assumes liability as a primary obligor for, hereby unconditionally guarantees payment to Lender of, hereby agrees to pay, protect, defend and save Lender harmless from and against, and hereby indemnifies Lender from and against any and all liabilities, obligations, losses, damages (including punitive damages and those resulting from the diminution in value of the Property), costs and third-party expenses (including, without limitation, reasonable, attorneys' fees of outside counsel), causes of action, suits, claims, demands and judgments of any nature or description whatsoever (collectively, "**Costs**") which may at any time be imposed upon, incurred by or awarded against Lender as a result of:

(a) fraud or misrepresentation or failure to disclose a material fact by Borrower, Guarantor, any of Borrower's officers, agents, attorneys, principals, general partners, managing members or employees, or other person authorized or apparently authorized to make statements, representations or disclosures on behalf of Borrower or any guarantor or indemnitor in connection with the Loan, including without limitation, the origination of the Loan and the performance of Borrower's obligations under the Loan Documents;

(b) the gross negligence or willful misconduct of Borrower, Guarantor, or any of their respective principals, officers, general partners, members, authorized agents or authorized employees;

[1] NTD: Recitals to be revised as needed.

(c) waste committed on the Property or Improvements (as such term is defined in the Mortgage), not including ordinary wear and tear, or damage to the Property or Improvements as a result of the willful misconduct or gross negligence of Borrower or any of its principals, officers, general partners or members, any guarantor, any indemnitor, or any agent or employee of any such persons;

(d) the breach of any material representation, warranty, covenant or indemnification provision in that certain Environmental Indemnity Agreement dated as of the date hereof by and among Borrower and Guarantor in favor of Lender;

(e) the removal or disposal of any portion of the Property (or Improvements) in violation of the terms of the Loan Documents, to the full extent of the losses or damages incurred by Lender on account of such occurrence;

(f) the intentional misapplication or conversion by Borrower of (i) any insurance proceeds paid by reason of any loss, damage or destruction to the Property, (ii) any awards or other amounts received in connection with the condemnation of all or a portion of the Property, (iii) Rents (as defined in the Mortgage) received by Borrower or applicable to a period after the occurrence and during the continuance of an Event of Default or any event which with notice or the passage of time, or both, would constitute an Event of Default, which are not either applied to the ordinary and necessary expenses of owning and operating the Property or paid to Lender, or (iv) any Rents paid more than one month in advance;

(g) if the Property becomes subject to any mechanic's, materialman's liens or other lien other than a lien for local real estate taxes and assessments not then due and payable and such lien shall remain undischarged of record (by payment, bonding or otherwise) within ten (10) days;

(h) all tenant security deposits or other refundable deposits paid to or held by Borrower or any other person or entity in connection with the Leases (as defined in the Mortgage) which are not applied in accordance with the terms of the applicable Leases;

(i) the failure to obtain and maintain or cause to be maintained the fully paid for Policies (as defined in the Mortgage) in accordance with Section 4 of the Mortgage, or to pay or provide or cause to be provided the amount of any insurance deductible, to the extent of the applicable deductible, following a casualty event or other insured event;

(j) Unauthorized transfer of or other voluntary encumbrance on the Property that is prohibited under the Loan Documents; and

(k) Borrower fails to maintain its status as a single asset entity, as required by and in accordance with the terms and provisions of, the Mortgage.

Notwithstanding anything to the contrary in the Note, the Mortgage or any of the Loan Documents, (A) Lender shall not be deemed to have waived any right which Lender may have under Section 506(a), 506(b), 1111(b) or any other provisions of the U.S. Bankruptcy Code to file a claim for the full amount of the Debt (as defined below) or to require that all collateral shall continue to secure all of the Debt owing to Lender in accordance with the Note, the Mortgage

and the Loan Documents, and (B) the Guarantor shall liable for the full amount of the Debt in the event that: (i) Borrower fails to obtain Lender's prior written consent to any subordinate financing or other voluntary lien encumbering the Property; (ii) Borrower fails to obtain Lender's prior written consent to any assignment, transfer, or conveyance of the Property or any interest therein as required by the Mortgage, or any breach or default by Borrower of Section 10 of the Mortgage, or (iii) if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, shall be filed by, consented to, or acquiesced in by, Borrower or any Guarantor or if any proceeding for the dissolution or liquidation of Borrower or of any Guarantor shall be instituted by Borrower or any Guarantor, (iv) Borrower or any Guarantor (or any person comprising such Guarantor) or any Related Party (as hereinafter defined) of any of the foregoing shall, in connection with any enforcement action or exercise or assertion of any right or remedy by or on behalf of Lender under or in connection with the Note, the Mortgage or any of the Loan Documents, asserts a defense, seeks judicial intervention or injunctive or other equitable relief of any kind or asserts in a pleading filed in connection with a judicial proceeding any defense against Lender or any right in connection with any security for the Loan which the court in such action or proceeding determines is without merit (in respect of a defense) or unwarranted (in respect of a request for judicial intervention or injunctive or other equitable relief), or (v) a claim is made by the Borrower or any Guarantor that the Loan Documents were not properly authorized or otherwise consented to upon the origination of the Loan or at any other time; and/or (v) Borrower fails to maintain its status as a single asset entity, as required by, and in accordance with the terms and provisions of, the Mortgage. "**Related Party**" shall mean any person or entity which owns a direct or indirect interest in Borrower or any Guarantor (or any person comprising such Guarantor), or which is owned or controlled by or under common ownership or control with Borrower or any such Guarantor.

The term "**Debt**" as used in this Guaranty shall mean the principal sum evidenced by the Note and secured by the Mortgage, or so much thereof as may be outstanding from time to time, together with interest thereon at the rate of interest specified in the Note and all other sums other than principal or interest which may or shall become due and payable pursuant to the provisions of the Note, the Mortgage or the other Loan Documents.

The Guarantor also agrees to pay any and all costs and reasonable, third-party expenses (including, without limitation, all reasonable fees and disbursements of outside counsel) which may be paid or incurred by Lender in connection with the enforcement of this Guaranty. The foregoing shall not in any manner impair or release the Debt evidenced by the Note or the other Loan Documents or otherwise impair or derogate from the Lender's ability to enforce its rights under the Loan Documents.

The term "**Guaranteed Recourse Obligations of Borrower**" means all obligations and liabilities of Guarantor set forth in this Paragraph 1 for which Borrower shall be personally liable pursuant to the Note.

2. **Guarantee Absolute.** The Guarantor guarantees that, to the extent of the Guaranteed Recourse Obligations of Borrower, the Debt will be paid strictly in accordance with the terms of the Note or any requirement of law, regulation or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of Lender with respect thereto. The liability of the Guarantor hereunder shall be absolute and unconditional irrespective of:

(a) any lack of validity or enforceability of the Note, the Mortgage the other Loan Documents or any other agreement between Lender and the Borrower relating thereto;

(b) any change in the time, manner, place of payment of the indebtedness under, or in any other term of, or any other amendment or waiver of, or any consent to, departure from, or any agreement between the Borrower and Lender, including, without limitation, the Note, the Mortgage or the other Loan Documents;

(c) the insolvency of, or voluntary or involuntary bankruptcy, assignment for the benefit of creditors, reorganization or other similar proceedings affecting, the Borrower or any of its assets; or

(d) any other circumstance which might otherwise constitute a defense available to, or a discharge of, the Borrower in respect of the Debt or of the Guarantor in respect of this Guaranty.

No payment made by the Guarantor, any other guarantor or any other person or entity, or received or collected by the Lender from the Guarantor, any other guarantor or any other person or entity by virtue of any action or proceeding or set off or application at any time in reduction of or in payment of the Debt shall be deemed to modify, release or otherwise affect the liability of Guarantor under this Guaranty. Notwithstanding any such payments received or collected by the Lender in connection with the Debt, Guarantor shall remain liable for the balance of the Guaranteed Recourse Obligations of the Borrower until the Debt is paid in full. This Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time any payment of the Debt or any portion thereof is rescinded or must otherwise be returned by the Lender upon the insolvency, bankruptcy or reorganization of the Borrower or otherwise, all as though such payment had not been made.

Lender shall not be required to inquire into the powers of the Borrower or any of its members, partners, managers or other agents acting or purporting to act on its behalf, and monies, advances, renewals or credits described in the Loan Documents in fact borrowed or obtained from Lender in professed exercise of such powers shall be deemed to form part of the debts and liabilities hereby guaranteed, notwithstanding that such borrowing or obtaining of monies, advances, renewals, or credits shall be in excess of the powers of the Borrower, or of its members, partners, managers or other agents aforesaid, or be in any way irregular, defective or informal.

3. <u>**Dealing with the Borrower and Others.**</u>

(a) The Guaranteed Recourse Obligations of Borrower shall not be released, discharged, limited or in any way affected by anything done, suffered or permitted by Lender in connection with any monies or credit advanced by Lender to the Borrower or any security therefor, including any loss of or in respect of any security received by Lender from the Borrower or others. It is agreed that Lender, without releasing, discharging, limiting or otherwise affecting in whole or

in part the Guaranteed Recourse Obligations of Borrower and liabilities hereunder, may, without limiting the generality of the foregoing:

i. grant time, renewals, extensions, indulgences, releases and discharges to the Borrower and any other person or entity guaranteeing payment of or otherwise liable with respect to the Debt (each such person and entity, an "**Obligor**");

ii. take or abstain from taking security or collateral from the Borrower or any Obligor or from perfecting security or collateral of the Borrower or any Obligor;

iii. accept compromises from the Borrower or any Obligor;

iv. apply all monies at any time received from the Borrower or any Obligor upon such part of the obligations as Lender may see fit; or

v. otherwise deal with the Borrower or any Obligor as Lender may see fit.

(b) Lender shall not be bound or obliged to exhaust recourse against the Borrower or any other Obligor or any security, guarantee, indemnity, mortgage or collateral it may hold or take any other action (other than make demand pursuant to this Guaranty) before being entitled to payment from the Guarantor hereunder; and

(c) Any account settled by or between Lender and the Borrower shall be accepted by the Guarantor as conclusive evidence that the balance or amount thereby appearing due to Lender is so due.

4. **Reinstatement of Obligations**. If at any time all or any part of any payment made by Guarantor or received by Lender from Guarantor under or with respect to this Guaranty is or must be rescinded or returned for any reason whatsoever (including, but not limited to, the insolvency, bankruptcy or reorganization of Borrower or Guarantor), then the obligations of Guarantor hereunder shall, to the extent of the payment rescinded or returned, be deemed to have continued in existence, notwithstanding such previous payment made by Guarantor, or receipt of payment by Lender, and the obligations of Guarantor hereunder shall continue to be effective or be reinstated, as the case may be, as to such payment, all as though such previous payment by Guarantor had never been made.

5. **Waivers by Guarantor**. To the extent permitted by law, Guarantor hereby waives and agrees not to assert or take advantage of (as a defense or otherwise):

(a) Any right to require Lender to proceed against Borrower or any other Person or to proceed against or exhaust any security held by Lender at any time or to pursue any other remedy in Lender's power or under any other agreement before proceeding against Guarantor hereunder;

(b) The defense of the statute of limitations in any action hereunder;

(c) Any defense that may arise by reason of the incapacity, lack of authority, death or disability of any other person or persons or the failure of Lender to file or enforce a claim against the estate (in administration, bankruptcy or any other proceeding) of any other Person or Persons;

(d) Any failure on the part of Lender to ascertain the extent or nature of any property (whether real or personal), rights, estates and interests now or at any time hereafter securing the payment of the Note and/or the other obligations of Borrower under the Loan Documents whether held by Lender or by any person or entity on Lender's behalf or for Lender's account (the "**Collateral**") or any insurance or other rights with respect thereto, or the liability of any party liable for the Loan Documents or the obligations evidenced or secured thereby;

(e) Demand, presentment for payment, notice of nonpayment, protest, notice of protest and all other notices of any kind, or the lack of any thereof, including, without limiting the generality of the foregoing, notice of the existence, creation or incurring of any new or additional indebtedness or obligation or of any action or non-action on the part of Borrower, Lender, any endorser or creditor of Borrower or of any Guarantor or on the part of any other person whomsoever under this or any other instrument in connection with any obligation or evidence of indebtedness held by Lender;

(f) Any defense based upon an election of remedies by Lender;

(g) Any right or claim of right to cause a marshalling of the assets of Guarantor;

(h) Any principle or provision of law, statutory or otherwise, which is or might be in conflict with the terms and provisions of this Guaranty;

(i) Any duty on the part of Lender to disclose to Guarantor any facts Lender may now or hereafter know about Borrower or the Property, regardless of whether Lender has reason to believe that any such facts materially increase the risk beyond that which Guarantor intends to assume or has reason to believe that such facts are unknown to Guarantor or has a reasonable opportunity to communicate such facts to Guarantor, it being understood and agreed that Guarantor is fully responsible for being and keeping informed of the financial condition of Borrower, of the condition of the Property and of any and all circumstances bearing on the risk that liability may be incurred by Guarantor hereunder;

(j) Any lack of notice of disposition or of manner of disposition of any Collateral;

(k) Failure to properly record any document or any other lack of due diligence by Lender in creating or perfecting a security interest in or collection, protection or realization upon any Collateral or in obtaining reimbursement or performance from any person or entity now or hereafter liable for the Loan Documents or any obligation secured thereby;

(l) The inaccuracy of any representation or other provision contained in any Loan Document;

(m) Any sale or assignment of the Loan Documents, or any interest therein;

(n) Any sale or assignment by Borrower of any Collateral, or any portion thereof or interest therein, whether or not consented to by Lender;

(o) Any invalidity, irregularity or unenforceability, in whole or in part, of any one or more of the Loan Documents;

(p) Any lack of commercial reasonableness in dealing with any Collateral;

(q) Any deficiencies in any Collateral or any deficiency in the ability of Lender to collect or to obtain performance from any persons or entities now or hereafter liable for the payment and performance of any obligation hereby guaranteed;

(r) An assertion or claim that the automatic stay provided by 11 U.S.C. § 362 (arising upon the voluntary or involuntary bankruptcy proceeding of Borrower) or any other stay provided under any other debtor relief law (whether statutory, common law, case law or otherwise) of any jurisdiction whatsoever, now or hereafter in effect, which may be or become applicable, shall operate or be interpreted to stay, interdict, condition, reduce or inhibit the ability of Lender to enforce any of its rights, whether now or hereafter acquired, which Lender may have against Guarantor or any Collateral;

(s) Any modifications of the Loan Documents or any obligation of Borrower relating to each Loan by operation of law or by action of any court, whether pursuant to the Bankruptcy Reform Act of 1978, as amended, or any other debtor relief law (whether statutory, common law, case law or otherwise) of any jurisdiction whatsoever, now or hereafter in effect, or otherwise;

(t) Any change in the composition of Borrower, including, without limitation, the withdrawal or removal of Guarantor from any current or future position of ownership, management or control of Borrower;

(u) The release of Borrower or of any other person or entity from performance or observance of any of the agreements, covenants, terms or conditions contained in any of the Loan Documents by operation of law, Lender's voluntary act or otherwise; and

(v) Any action, occurrence, event or matter consented to by Guarantor under Section 10(h) hereof, under any other provision hereof, or otherwise.

6. **Additional Waivers**.

(a) In addition to all the other waivers agreed to and made by Guarantor as set forth in this Guaranty, Guarantor hereby waives all rights and defenses that Guarantor may have because Borrower's debt is secured by real property. This means, among other things:

i. Lender may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by Borrower.

ii. If Lender forecloses on any real property collateral pledged by Borrower:

1) The amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price, except as provided in Section 1371 of the New York Real Property Actions and Proceedings Law; and

2) Lender may collect from Guarantor even if Lender, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Borrower.

(b) This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because Borrower's debt is secured by real property. Guarantor further hereby waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against the principal.

(c) Without limiting the generality of any of the waivers contained in this Guaranty, Guarantor also waives i. any defense based upon Lender's election to waive its lien as to all or any security for the Loan pursuant to any applicable law, and ii. any and all benefits which might otherwise be available to Guarantor.

(d) Without limiting the generality of any of the waivers contained in this Guaranty, Guarantor also waives any defense based upon any statute or rule of law which provides that the obligation of a surety must be neither larger in amount nor in any other respects more burdensome than that of a principal. In this regard, Guarantor acknowledges that Lender's recourse against Borrower for any of the obligations guaranteed hereby may be restricted impaired or prohibited by reason of Lender's election of remedies or other protections afforded debtors under New York law and agrees that no such restriction, impairment or prohibition shall have any effect on Guarantor's obligations to pay and perform the obligations guaranteed hereby under this Guaranty.

7. **Suretyship Waivers**. Guarantor understands and acknowledges that if Lender forecloses judicially or nonjudicially against any real property security for the Note, that foreclosure could impair or destroy any ability that Guarantor may have to seek reimbursement, contribution or indemnification from Borrower or others based on any right Guarantor may have of subrogation, reimbursement, contribution or indemnification for any amounts paid by Guarantor under this Guaranty. Guarantor further understands and acknowledges that in the absence of this provision, the potential impairment or destruction of Guarantor's rights, if any, may entitle Guarantor to assert a defense to this Guaranty. By executing this Guaranty, Guarantor freely, irrevocably and unconditionally: (i) waives and relinquishes that defense, and agrees that Guarantor will be fully liable under this Guaranty, even though Lender may foreclose judicially or nonjudicially against any real property security for the Note; (ii) agree that Guarantor will not assert that defense in any action or proceeding that Lender may commence to enforce this Guaranty; (iii) acknowledge and agree that the rights and defenses waived by Guarantor under this Guaranty include any right or defense that Guarantor may have or be entitled to assert; and (iv)

acknowledges and agrees that Lender is relying on this waiver in making the Loan, and that this waiver is a material part of the consideration that Lender is receiving for making the Loan.

8. **Remedies**. A separate action may be brought to enforce the provisions hereof, which shall in no way be deemed to be an action on the Note, whether or not any Loan has been repaid and whether or not Lender would be entitled to a deficiency judgment following a judicial foreclosure, trustee's sale or sale under the applicable Uniform Commercial Code.

9. **Representations and Warranties.** The Guarantor hereby represents and warrants to Lender that:

(a) the Guarantor is not insolvent (as such term is defined in the debtor/creditor laws of the State of New York);

(b) the execution, delivery and performance of this Guaranty will not (i) make Guarantor insolvent (as such term is defined in the debtor/creditor laws of the State of New York), or (ii) violate any provision of any requirement of law or contractual obligation of Guarantor and will not result in or require the creation or imposition of any lien on any of the properties or revenues of Guarantor pursuant to any requirement of law or contractual obligation of Guarantor;

(c) the Guarantor has all requisite power and authority to execute, deliver and perform his obligations under this Guaranty;

(d) the execution, delivery of this Guaranty and the performance by the Guarantor of his obligations hereunder does not and will not contravene, violate or conflict with any requirement of law, and does not and will not contravene, violate or conflict with, or result in a breach of or default under, the operating agreement of Borrower, or any contractual obligation to which Guarantor or his assets is or are subject, and does not require or result in the creation or imposition of any lien in favor of any person or entity other than Lender;

(e) the execution and delivery hereof and the performance by the Guarantor of his obligations hereunder does not and will not contravene, violate or conflict with, or result in a breach of or default under, any indenture, security instrument, deed of trust, ground lease, contract, assignment, agreement or other instrument to which the Borrower or the assets of the Borrower are subject;

(f) no consent of any other party (including, without limitation, any partner, or any creditor of the Guarantor or Borrower) is required that has not been obtained by the Guarantor; and

(g) this Guaranty has been duly executed and delivered by Guarantor and is the legal, valid and binding obligation of Guarantor, enforceable against Guarantor in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, moratorium, insolvency, reorganization or similar laws affecting creditors' rights generally.

Guarantor warrants and represents that Guarantor is fully aware of the financial condition of Borrower and is executing and delivering this Guaranty based solely upon Guarantor's

own independent investigation of all matters pertinent hereto, and that Guarantor is not relying in any manner upon any representation or statement of Lender. Guarantor warrants, represent and agree that Guarantor is in a position to obtain, and Guarantor hereby assumes full responsibility for obtaining, any additional information concerning the financial condition of Borrower and any other matter pertinent hereto, and that Guarantor is not relying upon Lender to furnish, and shall have no right to require Lender to obtain or disclose, any information with respect to the indebtedness or obligations guaranteed hereby, the financial condition or character of Borrower or the ability of Borrower to pay the indebtedness or perform the obligations guaranteed hereby, the existence of any collateral or security for any or all of such indebtedness or obligations, the existence or nonexistence of any other guaranties of all or any part of such indebtedness or obligations, any actions or non-action on the part of Lender, Borrower or any other person or entity, or any other matter, fact or occurrence whatsoever. By executing this Guaranty, Guarantor acknowledges and knowingly accepts the full range of risks encompassed within a contract of indemnity or guaranty.

10. **General Provisions**.

(a) Financial Covenants. Until all of the Guaranteed Recourse Obligations of Borrower have been indefeasibly paid in full and at all times while the Loan is in effect, Guarantor (i) shall maintain a Net Worth of not less than Twenty Million and 00/100 Dollars ($20,000,000.00) and (ii) shall maintain aggregate Liquid Assets of not less than Two Million and 00/100 Dollars ($2,000,000.00). For purposes of this Section 10(a), (1) the term "Net Worth" shall mean, as of a given date, (x) the total assets of Guarantor as of such date (of which no more than $10,000,000 may be comprised of Guarantor's direct or indirect ownership interest in the Borrower) less (y) Guarantor's total liabilities as of such date, determined in accordance with generally accepted accounting principles and (2) the term "Liquid Assets" shall mean assets in the form of Cash and Cash Equivalents. Further, (X) the term "Cash" shall mean money, currency or a credit balance in any demand or deposit account, other than an account evidenced by a negotiable certificate of deposit and (Y) the term "Cash Equivalents" shall mean the fair market value of unrestricted and unencumbered assets in the form of any of the following: (i) marketable direct obligations issued or unconditionally guaranteed by the United States Government or issued by an agency thereof and backed by the full faith and credit of the United States; (ii) marketable direct obligations issued by any state of the United States of America or any political subdivision of any such state or any public instrumentality thereof which, at the time of acquisition, has one of the two highest ratings obtainable from any two (2) of Standard & Poor's Ratings Services, a division of The McGraw Hill Companies, Inc. ("S&P"), Moody's Investors Service, Inc. ("Moody's") or Fitch, Inc. ("Fitch") (or, if at any time no two of the foregoing shall be rating such obligations, then from such other rating agency as may be acceptable to Lender) and is not listed for possible downgrade in any publication of any of the foregoing rating agencies; (iii) domestic certificates of deposit or domestic time deposits or repurchase agreements issued by any commercial bank organized under the laws of the United States of America or any state thereof or the District of Columbia having combined capital and surplus of not less than One Billion and No/100 Dollars ($1,000,000,000.00), which commercial bank has a rating of at least either AA or such comparable rating from S&P or Moody's, respectively; (iv) money market funds having assets under management in excess of Two Billion and No/100 Dollars ($2,000,000,000.00); (vi) any unrestricted stock, shares, certificates, bonds, debentures, notes or other instrument which constitutes a "security" under the Securities Act of 1933, as amended, which are freely tradable on

any nationally recognized securities exchange and are not otherwise encumbered by Guarantor; and/or (vii) the sum of (a) the amount of any unpledged, unfunded, unconditional, and irrevocable capital commitments of investors in Guarantor, callable as of right by Guarantor, (b) the amount by which any capital commitments of investors in Guarantor pledged to secure a subscription line of credit exceeds the sum of (x) the outstanding balance of such subscription line of credit and (y) the amount described in the following clause (c), and (c) the amount of any proceeds available to be drawn under any subscription line of credit described in the preceding clause (b), provided that, in the cases of clauses (a) and (b), no such investors are in breach of any such capital commitments in Guarantor or are the subject of any bankruptcy or insolvency proceeding, and provided further that, in the cases of clauses (a), (b) and (c), Guarantor has delivered such evidence reasonable requested by Lender to verify (i) the amounts and availability of such capital commitments and subscription line of credit proceeds, (ii) that such capital commitments much be paid within thirty (30) days of written notice from Guarantor, (iii) that such capital commitments do not expire prior to the Maturity Date, and (iv) such other matters as Lender may reasonably require.

(b) Unsecured Obligations. Guarantor hereby acknowledges that Lender's appraisal of the Property is such that Lender is not willing to accept the consequences of the inclusion of Guarantor's guaranty set forth herein among the obligations secured by the Mortgage and the other Loan Documents and that Lender would not make the Loan but for the unsecured personal liability undertaken by Guarantor herein.

(c) Survival. This Guaranty shall be deemed to be continuing in nature and shall remain in full force and effect and shall survive the payment of the indebtedness evidenced and secured by the Loan Documents and the exercise of any remedy by Lender under the Mortgage or any of the other Loan Documents, including, without limitation, any foreclosure or deed in lieu thereof, even if, as a part of such remedy, the Loan are paid or satisfied in full.

(d) No Subrogation; No Recourse Against Lender. Notwithstanding the satisfaction by Guarantor of any liability hereunder, no Guarantor shall have any right of subrogation, contribution, reimbursement or indemnity whatsoever or any right of recourse to or with respect to the assets or property of Borrower or to any Collateral until the expiration of ninety-one (91) days following payment of the Loan in full. In connection with the foregoing, Guarantor expressly waives, until the expiration of ninety-one (91) days following payment of the Loan in full, any and all rights of subrogation to Lender against Borrower, and Guarantor hereby waives any rights to enforce any remedy which Lender may have against Borrower and any right to participate in any Collateral. In addition to and without in any way limiting the foregoing, Guarantor hereby subordinates any and all indebtedness of Borrower now or hereafter owed to Guarantor to all indebtedness of Borrower to Lender, and agrees with Lender that Guarantor shall not demand or accept any payment of principal or interest from Borrower, shall not claim any offset or other reduction of Guarantor's obligations hereunder because of any such indebtedness and shall not take any action to obtain any of the Collateral. Further, no Guarantor shall have any right of recourse against Lender by reason of any action Lender may take or omit to take under the provisions of this Guaranty or under the provisions of any of the Loan Documents.

(e) Reservation of Rights. Nothing contained in this Guaranty shall prevent or in any way diminish or interfere with any rights or remedies, including, without limitation, the right to contribution, which Lender may have against Borrower, Guarantor or any other party under

the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (codified at Title 42 U.S.C. § 9601 et seq.), as it may be amended from time to time, or any other applicable federal, state or local laws, all such rights being hereby expressly reserved.

(f) Financial Statements; Compliance Certificate. Guarantor hereby agrees, as a material inducement to Lender to make the Loan to Borrower, to furnish to Lender promptly upon demand by Lender, but no more frequently than once per calendar year, current and dated financial statements detailing the assets and liabilities of Guarantor, certified by Guarantor, in form and substance acceptable to Lender. Guarantor hereby warrants and represents unto Lender that any and all balance sheets, net worth statements and other financial data which have heretofore been given or may hereafter be given to Lender with respect to Guarantor did or will at the time of such delivery fairly and accurately present the financial condition of Guarantor in all material respects.

(g) Rights Cumulative; Payments. Lender's rights under this Guaranty shall be in addition to all rights of Lender under the Note, the Mortgage, and the other Loan Documents. Further, payments made by Guarantor under this Guaranty shall not reduce in any respect Borrower's obligations and liabilities under the Note, the Mortgage, and the other Loan Documents.

(h) No Limitation on Liability. Guarantor hereby consents and agrees that Lender may at any time, and from time to time, without further consent from Guarantor, do, make, grant, consent or agree to any of the following, and the liability of Guarantor under this Guaranty shall be unconditional and absolute and shall in no way be impaired or limited by any of the following, whether with or without notice to Borrower or Guarantor or with or without consideration: (i) release and surrender the Collateral or any portion thereof; (ii) substitute for any Collateral held by or on behalf of Lender other collateral of like kind, or of any kind; (iii) make overadvances or increase the amount of the Loan; (iv) extend the time for performance required by any of the Loan Documents or extend or renew the Note; (v) sue upon or foreclose the Note, the Mortgage, or any of the other Loan Documents; (vi) sell or transfer the Property subsequent to foreclosure; (vii) release Borrower, Guarantor or any other person or entity from performance or observance of any of the agreements, covenants, terms or conditions contained in any of the other Loan Documents by operation of law, Lender's voluntary act or otherwise; (viii) agree to modify the terms of any one or more of the Loan Documents; (ix) sell, assign or otherwise transfer the Note, the Mortgage, and/or any other Loan Documents or any interest therein; or (x) take or fail to take any action of any type whatsoever. No such action which Lender shall take or fail to take in connection with the Loan Documents or any Collateral, nor any course of dealing with Borrower or any other person, shall limit, impair or release any of Guarantor's obligations hereunder, affect this Guaranty in any way or afford Guarantor any recourse against Lender. Nothing contained in this section shall be construed to require Lender to take or refrain from taking any action referred to herein.

(i) Entire Agreement; Amendment; Severability. This Guaranty contains the entire agreement between the parties respecting the matters herein set forth and supersedes all prior agreements, whether written or oral, between the parties respecting such matters; and Guarantor and Lender acknowledge that there are no contemporaneous oral agreements with respect to the subject matter hereof. This Guaranty may not be changed, modified or amended, except by a

writing executed by the parties hereto; and no obligation of Guarantor can be released or waived by Lender or any agent of Lender, except by a writing duly executed by Lender. A determination that any provision of this Guaranty is unenforceable or invalid shall not affect the enforceability or validity of any other provision, and any determination that the application of any provision of this Guaranty to any person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision as it may apply to any other persons or circumstances.

(j) Governing Law; Binding Effect; Waiver of Acceptance. This Guaranty shall be governed by and construed in accordance with the substantive laws of the State of New York without giving effect to its principles of choice of law or conflicts of law, except to the extent that the applicability of any of such laws may now or hereafter be preempted by Federal law, in which case such Federal law shall so govern and be controlling. This Guaranty shall bind Guarantor and the heirs, executors, legal representatives, successors and assigns of Guarantor and shall inure to the benefit of Lender and the officers, directors, shareholders, agents and employees of Lender and their respective heirs, successors and assigns. This Guaranty shall in no event be impaired by any change which may arise by reason of the death of Borrower or Guarantor, if individuals, or by reason of the dissolution of Borrower or Guarantor, if Borrower or Guarantor is a corporation, partnership, limited liability company or similar entity. Guarantor has executed this Guaranty individually and not as a partner of Borrower or any other Guarantor or guarantor. This Guaranty is assignable by Lender, and any full or partial assignment hereof by Lender shall operate to vest in the assignee all rights and powers herein conferred upon and granted to Lender and so assigned by Lender. Guarantor expressly waives notice of transfer or assignment of this Guaranty and acknowledge that the failure by Lender to give any such notice shall not affect the liabilities of Guarantor hereunder. Notwithstanding the foregoing, Guarantor shall not assign any of its rights or obligations under this Guaranty. Guarantor hereby waives any acceptance of this Guaranty by Lender, and this Guaranty shall immediately be binding upon Guarantor.

(k) Notices. All notices given pursuant to this Guaranty shall be sufficient if mailed either by i. postage prepaid, certified or registered mail, return receipt requested, ii. by delivery to a nationally recognized overnight delivery service, or iii. telecopy to:

**If to Guarantor:** ______________________
______________________
______________________

**with a copy to:** ______________________
______________________
______________________
Attention: __________________, Esq.

**If to Lender:** ______________________
520 Madison Avenue, Suite 3501
New York, New York 10022
Attn.: Brian Shatz & Joshua Zegen

**with a copy to:** Kriss & Feuerstein LLP

360 Lexington Avenue, Suite 1200
New York, New York 10017
Attn: Jerold C. Feuerstein, Esq.

Notices shall be deemed given: (w) if served in person, when served; (x) if telecopied, on the date of transmission if before 3:00 p.m. (New York time) on a Business Day and after such time on the next Business Day; provided, however, that in both instances a hard copy of such notice also is sent pursuant to (y) or (z) below; (y) if by overnight courier, on the first (1st) Business Day after delivery to the courier; or (z) if by U.S. Mail, certified or registered mail, return receipt requested on the fourth (4th) day after deposit in the mail postage prepaid. Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address(es).

(l) No Waiver; Time of Essence; Business Day. The failure of any party hereto to enforce any right or remedy hereunder, or to promptly enforce any such right or remedy, shall not constitute a waiver thereof nor give rise to any estoppel against such party nor excuse any of the parties hereto from their respective obligations hereunder. Any waiver of such right or remedy must be in writing and signed by the party to be bound. This Guaranty is subject to enforcement at law or in equity, including actions for damages or specific performance. Time is of the essence hereof. The term **"business day"** as used herein shall mean a weekday, Monday through Friday, except a legal holiday or a day on which banking institutions in New York are authorized by law to be closed.

(m) Captions for Convenience; Pronouns. The captions and headings of the sections and paragraphs of this Guaranty are for convenience of reference only and shall not be construed in interpreting the provisions hereof. All personal pronouns used herein, whether used in the masculine, feminine or neuter gender, shall include all other genders; and the singular shall include the plural and vice versa.

(n) Attorneys' Fees. In the event it is necessary for Lender to retain the services of an attorney or any other consultants in order to enforce this Guaranty, or any portion thereof, Guarantor agrees to pay to Lender any and all costs and expenses, including, without limitation, attorneys' fees, incurred by Lender as a result thereof and such costs, fees and expenses shall be included in the Guaranteed Recourse Obligations of Borrower.

(o) Successive Actions. A separate right of action hereunder shall arise each time Lender acquires knowledge of any matter indemnified or guaranteed by Guarantor under this Guaranty. Separate and successive actions may be brought hereunder to enforce any of the provisions hereof at any time and from time to time. No action hereunder shall preclude any subsequent action, and Guarantor hereby waives and covenants not to assert any defense in the nature of splitting of causes of action or merger of judgments.

(p) Intentionally Omitted.

(q) Reliance. Lender would not make the Loan to Borrower without this Guaranty. Accordingly, Guarantor intentionally and unconditionally enters into the covenants and agreements as set forth above and understands that, in reliance upon and in consideration of such covenants and agreements, the Loan shall be made and, as part and parcel thereof, specific monetary and other obligations have been, are being and shall be entered into which would not be made or entered into but for such reliance.

(r) **WAIVER OF JURY TRIAL. TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, GUARANTOR AND LENDER (BY ITS ACCEPTANCE HEREOF) EACH HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS GUARANTY OR THE RELATIONSHIP THAT IS BEING ESTABLISHED, IN ANY ACTION, PROCEEDING OR OTHER LITIGATION OF ANY TYPE BROUGHT BY ANY OF THE PARTIES AGAINST ANY OTHER PARTY OR PARTIES, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS, OR OTHERWISE. TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, GUARANTOR AND LENDER (BY ITS ACCEPTANCE HEREOF) EACH AGREE THAT ANY SUCH CLAIM OR CAUSE OF ACTION SHALL BE TRIED BY A COURT TRIAL WITHOUT A JURY. THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY GUARANTOR, AND GUARANTOR ACKNOWLEDGES THAT NEITHER LENDER NOR ANY PERSON ACTING ON BEHALF OF LENDER HAS MADE ANY REPRESENTATIONS OF FACT TO INCLUDE THIS WAIVER OF TRIAL BY JURY OR HAS TAKEN ANY ACTIONS WHICH IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. GUARANTOR ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT LENDER HAS ALREADY RELIED ON THIS WAIVER IN ENTERING INTO THIS GUARANTY AND THAT LENDER WILL CONTINUE TO RELY ON THIS WAIVER IN ITS RELATED FUTURE DEALINGS WITH GUARANTOR. GUARANTOR FURTHER ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED, OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED, IN THE SIGNING OF THIS GUARANTY AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL. WITHOUT LIMITING THE FOREGOING, THE PARTIES FURTHER AGREE THAT THEIR RESPECTIVE RIGHT TO A TRIAL BY JURY IS WAIVED BY OPERATION OF THIS SECTION AS TO ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING WHICH SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY OF THIS GUARANTY, OR ANY PROVISION HEREOF. THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS GUARANTY.**

(s) **VENUE. THE GUARANTOR HEREBY IRREVOCABLY SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF ANY NEW YORK STATE OR FEDERAL COURT OR IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTY, THE NOTE, THE MORTGAGE OR ANY OTHER DOCUMENT DELIVERED IN CONNECTION HEREWITH OR THEREWITH AND THE GUARANTOR HEREBY IRREVOCABLY AGREES THAT ALL CLAIMS IN RESPECT OF SUCH ACTION OR PROCEEDING MAY BE HEARD AND DETERMINED IN SUCH NEW YORK STATE COURT, OR TO THE EXTENT**

**PERMITTED BY LAW, IN SUCH FEDERAL COURT. THE GUARANTOR HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT HE MAY EFFECTIVELY DO SO, THE DEFENSE OF AN INCONVENIENT FORUM TO THE MAINTENANCE OF SUCH ACTION OR PROCEEDING. TO THE EXTENT PERMITTED BY LAW, THE GUARANTOR ALSO IRREVOCABLY CONSENTS TO THE SERVICE OF ANY AND ALL PROCESS IN ANY SUCH ACTION OR PROCEEDING BY THE MAILING OF COPIES (CERTIFIED MAIL, RETURN RECEIPT REQUESTED AND POSTAGE PREPAID) OF SUCH PROCESS TO HIM AT HIS ADDRESS SPECIFIED IN SECTION 10 HEREOF OR IN THE MANNER SET FORTH IN SECTION 37 OF THE MORTGAGE FOR THE GIVING OF NOTICE. THE GUARANTOR AGREES THAT A FINAL JUDGMENT IN ANY SUCH ACTION OR PROCEEDING SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN OTHER JURISDICTIONS BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW.**

(t) Litigation. In the event of any litigation over this Guaranty: (a) if that litigation is heard in the Commercial Division, New York State Supreme Court, then the parties consent and agree to application of the Court's accelerated procedures, Uniform Rules for the Supreme and County Courts (Rules of Practice for the Commercial Division, Section 202.70(g), Rule 9); and (b) the parties shall promptly enter into and submit to the court (with a request to be "**so-ordered**") a Stipulation and Order for the Production and Exchange of Confidential Information in the form promulgated by the New York City Bar Association Committee on State Courts of Superior Jurisdiction.

(u) Waiver by Guarantor. Guarantor covenants and agrees that, upon the commencement of a voluntary or involuntary bankruptcy proceeding by or against Borrower, neither Guarantor shall seek or cause Borrower or any other person or entity to seek a supplemental stay or other relief, whether injunctive or otherwise, pursuant to 11 U.S.C. § 105 or any other provision of the Bankruptcy Reform Act of 1978, as amended, or any other debtor relief law, (whether statutory, common law, case law or otherwise) of any jurisdiction whatsoever, now or hereafter in effect, which may be or become applicable, to stay, interdict, condition, reduce or inhibit the ability of Lender to enforce any rights of Lender against Guarantor or any Collateral by virtue of this Guaranty or otherwise.

(v) Counterparts. This Guaranty may be executed in any number of counterparts, each of which shall be effective only upon delivery and thereafter shall be deemed an original, and all of which shall be taken to be one and the same instrument, for the same effect as if all parties hereto had signed the same signature page. Any signature page of this Guaranty may be detached from any counterpart of this Guaranty without impairing the legal effect of any signatures thereon and may be attached to another counterpart of this Guaranty identical in form hereto but having attached to it one or more additional signature pages.

(w) Secondary Market Transactions. The terms and provisions of Section 40 of the Mortgage are hereby incorporated herein by this reference.

(x) Joint and Several Liability. The liability of all persons and entities who are in any manner obligated hereunder to Lender as Guarantor shall be joint and several.

(y) Payment of Money Only. Guarantor acknowledges that this Guaranty is an **"instrument for the payment of money only,"** within the meaning of New York Civil Practice Law and Rules Section 3213. Thus, Lender is entitled to move for summary judgment in lieu of complaint when enforcing this Guaranty.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

[SIGNATURES ON FOLLOWING PAGE]

**IN WITNESS WHEREOF**, Guarantor has executed this Guaranty as of the day and year first above written.

**GUARANTOR:**

______________________________
[____________________]

STATE OF )
) ss:
COUNTY OF )

On the ___ day of ______________________, 2020, before me, the undersigned, a Notary Public in and for said State, personally appeared, __________________, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument.

______________________________
Notary Public

**EXHIBIT A**

**LEGAL DESCRIPTION**

# SCHEDULE I

## Borrower Loan Documents

1. Secured Promissory Note
2. Deed of Trust, Security Agreement and Fixture Filing
3. Assignment of Leases and Rents
4. Guaranty
5. Prepaid Interest Agreement
6. Environmental Indemnity Agreement
7. UCC-1 Financing Statement (county)
8. UCC-1 Financing Statement (state)
9. Statement of Undertaking
10. Affidavit of Title and Other Borrower Representations
11. Affidavit of Property Management
12. Certification of Organization
13. Certification of Rent Roll
14. Designation of Agent
15. Designation of Independent Manager Agreement
16. Consent
17. Opinion Letter of Jones Day (NY and TX)
18. Opinion Letter of Richards Layton & Finger (DE – Borrower)
19. Opinion Letter (Voluntary Bankruptcy Petition - Borrower)
20. Opinion Letter of Richards Layton & Finger (DE –MO 2999TC MZ, LLC)
21. Opinion Letter (Voluntary Bankruptcy Petition – MO 29999TC MZ, LLC)
22. W-9 (Borrower)
23. W-9 (Tim)
24. Patriot Act Disclosure
25. Loan Settlement Statement

# EXHIBIT 4

**FIRST AMENDMENT TO PARTICIPATION AGREEMENT**

THIS FIRST AMENDMENT TO PARTICIPATION AGREEMENT (this "Amendment") dated as of the 4th day of February, 2020, by and between 2999 TURTLE CREEK LLC, a Delaware limited liability company ("Madison"), and HNGH TURTLE CREEK, LLC, a Delaware limited liability company ("GHCP").

**RECITALS:**

**WHEREAS**, on September 20, 2019, Madison made a loan in the original principal amount of $32,500,000.00 (the "Loan") to MO 2999TC, LLC, a Delaware limited liability company (the "Borrower"), secured by, among other things, the Borrower's interest in the real property located at 2999 Turtle Creek Boulevard, Dallas, Texas 75219 (the "Property").

**WHEREAS**, as of January 24, 2020, Madison sold, transferred and assigned to GHCP, and GHCP purchased from Madison, a $7,000,000.00 junior subordinate participation interest in the Loan and Loan Documents, subject to the terms and conditions set forth in that certain Participation Agreement dated as of January 24, 2020 by and between Madison and GHCP (the "Participation Agreement).

**WHEREAS,** Madison and GHCP desire to hereby amend the Participation Agreement to document the treatment of the Servicing Fee payable by Borrower to Madison pursuant to the Loan Documents.

IN CONSIDERATION of the foregoing and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby covenant, agree, represent and warrant as follows:

1. Participation Agreement. Unless otherwise explicitly amended, deleted or revised in any manner herein, all terms, obligations and conditions of the Participation Agreement shall continue to be effective in strict accordance with the Participation Agreement, notwithstanding the execution of the Amendment. All capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed thereto in the Participation Agreement.

2. Servicing Fee. Pursuant to Section 12 of that certain Secured Promissory Note dated as of September 20, 2019 by Borrower in favor of Lender (the "Underlying Note"), Borrower is required to pay to Lender the Servicing Fee (as defined therein). Madison and GHCP hereby acknowledge and agree that Madison shall be entitled to receive and keep for its own account the full amount of the Servicing Fee paid by Borrower to Lender in accordance with the Underlying Note, and that such amounts shall not be subject to the payment priority waterfall set forth in Section 5(b) of the Participation Agreement. Madison acknowledges and agrees that GHCP shall be under no obligation to cure any failure by Borrower to pay the Servicing Fee to Madison as required by the Underlying Note, and failure by GHCP to cure such a Borrower default shall not result in any loss of rights or remedies of GHCP under the Participation Agreement. GHCP acknowledges and agrees that Madison shall be

under no obligation to call a default or Event of Default under the Loan as a result of failure by Borrower to pay the Servicing Fee as and when required by the Underlying Note, and GHCP shall not be permitted to compel Madison to call such a default or Event of Default against the Borrower pursuant to the Participation Agreement. In addition, it is acknowledged and agreed that if and when GHCP delivers to Madison the GHCP Note in accordance with Section 7(e)(iii) of the Participation Agreement, Section 12 of the Underlying Note shall not be incorporated into the GHCP Note and no servicing fee will be payable by GHCP to Madison thereunder.

3. Legal Counsel. Madison and GHCP each hereby acknowledge that they have been advised to seek the advice of legal counsel in connection with the negotiation and preparation of this Amendment. If either Madison or GHCP has chosen not to obtain legal representation, whether due to cost considerations or for other reasons, the lack of such representation shall not furnish either Madison or GHCP with any defense to the enforcement of this Amendment by the other party.

4. Entire Agreement. This Amendment contains all of the terms of the agreement between Madison and GHCP with respect to the subject matter hereof and supersedes all prior discussions and agreements between Madison and GHCP and all prior drafts of this Amendment. GHCP hereby waives the right to assert the defense of ambiguity by reason of the fact that this Amendment has been drafted by Madison's counsel.

5. Governing Law. Notwithstanding any provision of any previous documents to the contrary, this Amendment shall be governed by and construed and enforced in accordance with the laws of the State of New York (without regard to conflicts of law), except where federal law is applicable (including, without limitation, any applicable federal law preempting state laws).

6. Counterparts. To facilitate execution, this Amendment may be executed in as many counterparts as may be convenient or required. It shall not be necessary that the signature and acknowledgment of each party, or that the signature and acknowledgment of all persons required to bind any party, appear on each counterpart. All counterparts shall collectively constitute single instrument. It shall not be necessary in making proof of this Amendment to produce or account for more than a single instrument. It shall not be necessary in making proof of this Amendment to produce or account for more than a single counterpart containing the respective signatures and acknowledgment of, or on behalf of, each of the parties hereto.

**[SIGNATURES ON THE FOLLOWING PAGE]**

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be duly executed by their duly authorized representatives, all as of the day and year first above written.

**MADISON:**

**2999 TURTLE CREEK LLC,**
a Delaware limited liability company

By:______________________________
Name: Joshua Zegen
Title: Authorized Signatory

**GHCP:**

**HNGH TURTLE CREEK, LLC,**
a Delaware limited liability company

By: HN Green Hollow Capital Partners LLC, its Authorized Signatory

By:______________________________
Name: James Glasgow
Title: Manager

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be duly executed by their duly authorized representatives, all as of the day and year first above written.

**MADISON:**

**2999 TURTLE CREEK LLC,**
a Delaware limited liability company

By:____________________________
Name: ____________________________
Title: ____________________________

**GHCP:**

**HNGH TURTLE CREEK, LLC,**
a Delaware limited liability company

By: HN Green Hollow Capital Partners LLC,
its Authorized Signatory

By: ____________________________
Name: James Glasgow
Title: Manager

# EXHIBIT 5

**ALLONGE**

ENDORSEMENT to that certain Secured Promissory Note dated as of September 20, 2019, by and from MO 2999TC, LLC in favor of 2999 Turtle Creek LLC, in the original principal sum of $32,500,000.00.

Pay to the order of **HNGH TURTLE CREEK, LLC,** a Delaware limited liability company ("Assignee"), without recourse, representation or warranty, express or implied, except as otherwise provided in that certain Assignment and Assumption of Assigned Rights and Obligations dated on or about the date hereof by and between Assignee and the signatory hereto.

DATE: As of December 7, 2020

**2999 TURTLE CREEK LLC**

By: ______________________
Name: Joshua Zegen
Title: Authorized Signatory

**THIS NOTE ALLONGE SHOULD BE PERMANENTLY AFFIXED TO THE PROMISSORY NOTE DESCRIBED ABOVE**

# EXHIBIT 6

**NOTICE OF CONFIDENTIALITY RIGHTS**: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED OF RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

**ASSIGNMENT OF DEED OF TRUST AND ASSIGNMENT OF LEASES AND RENTS**

KNOW THAT

**2999 TURTLE CREEK LLC**
**520 Madison Avenue, Suite 3501**
**New York, New York 10022**

**"Assignor",**

in consideration of TEN and 00/100 DOLLARS ($10.00) and other valuable consideration paid by

**HNGH TURTLE CREEK, LLC**
**600 5th Avenue, 2nd Floor**
**New York, New York 10020**

**"Assignee",**

hereby assigns the unto the Assignee, without recourse to Assignor in any event, the deed of trust and assignment of leases and rents, as is more fully described on Schedule B, attached hereto and made a part hereof, against the property commonly known as 2999 Turtle Creek, Dallas, Texas 75219, as is more fully described on Schedule A, attached hereto and made a part hereof.

TOGETHER with the bonds or notes or obligations described in said deed of trust and assignment of leases and rents, and the monies due and to grow due thereon with the interest;

TO HAVE AND TO HOLD the same unto Assignee and to the successors, legal representatives and assigns of Assignee forever.

IT IS EXPRESSLY UNDERSTOOD AND AGREED that this Assignment is made without any recourse to, and without any covenant or warranty, express or implied, by the Assignor in any event whatsoever, except as otherwise provided in that certain Assignment and Assumption of Assigned Rights and Obligations dated on or about the date hereof by and between Assignee and the signatory hereto.

The word "assignor" or "assignee" shall be construed as if it read "assignors" or "assignees" whenever the sense of this instrument so requires.

IN WITNESS WHEREOF, the Assignor has duly executed this Assignment as of the 7th day of December, 2020.

**2999 TURTLE CREEK LLC**

By:____________________
Name: Joshua Zegen
Title: Authorized Signatory

STATE OF New York )
)ss:
COUNTY OF New York )

On the 2nd day of December in the year 2020, before me, the undersigned, personally appeared, Joshua Zegen, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument.

____________________
Notary Public

**TOM KORDENBROCK**
**Notary Public, State of New York**
**No. 01KO6371148**
**Qualified in New York County**
**Commission Expires February 20, 2022**

**SCHEDULE A**

**PROPERTY DESCRIPTION**

BEING a tract of land situated in the James A. Sylvester Survey Abstract No. 1383, and the John Grisby Survey, Abstract No. 495, City of Dallas Block No. A/1031, Texas and being all of Lot 4, Block A/1031, of TURTLE CREEK OFFICE ADDITION, an Addition to the City of Dallas, Texas, according to the plat thereof recorded in Volume 2003162, Page 48, Deed Records, Dallas County, Texas.

## SCHEDULE B

## DEED OF TRUST SCHEDULE

Deed of Trust, Security Agreement and Fixture Filing dated as of September 20, 2019, by MO 2999TC, LLC in favor of Michael B. Massey, as Trustee for the benefit of 2999 Turtle Creek LLC, recorded in the Office of the County Clerk for the County of Dallas, State of Texas, on September 23, 2019 as Instrument No. 201900253450,

Assignment of Leases and Rents dated as of September 20, 2019, by MO 2999TC, LlLC for the benefit of 2999 Turtle Creek LLC, recorded in the Office of the County Clerk for the County of Dallas, State of Texas, on September 23, 2019 as Instrument No. 201900253451,

As collaterally assigned by Notice of Collateral Assignment of Deed of Trust and Loan Documents dated as of December 31, 2019, by 2999 Turtle Creek LLC in favor of Axos Bank, recorded in the Office of the County Clerk for the County of Dallas, State of Texas, on ________________ as Instrument No. ____________________,

As collateral assignment was terminated by Termination of Notice of Collateral Assignment of Deed of Trust and Lona Documents dated as of _____________, by Axos Bank in favor of 2999 Turtle Creek LLC, recorded in the Office of the County Clerk for the County of Dallas, State of Texas, on _________________ as Instrument No. ___________________.

**Dallas County**
**John F. Warren**
**Dallas County Clerk**

---

**Instrument Number:** 202000341904

eRecording - Real Property

Recorded On: December 08, 2020 11:12 AM

Number of Pages: 5

---

**" Examined and Charged as Follows: "**

Total Recording: $38.00

---

*********** THIS PAGE IS PART OF THE INSTRUMENT ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY because of color or race is invalid and unenforceable under federal law.

**File Information:**

| | |
|---|---|
| Document Number: | 202000341904 |
| Receipt Number: | 20201208000305 |
| Recorded Date/Time: | December 08, 2020 11:12 AM |
| User: | Hilga R |
| Station: | CC17 |

**Record and Return To:**

CSC Global

---

**STATE OF TEXAS**
**COUNTY OF DALLAS**

**I hereby certify that this Instrument was FILED In the File Number sequence on the date/time printed hereon, and was duly RECORDED in the Official Records of Dallas County, Texas.**

John F. Warren
Dallas County Clerk
Dallas County, TX