Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEY FOR DEBTOR/PLAINTIF

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **2999TC ACQUISITIONS, LLC,** | § | **CASE NO. 21-31954-hdh11** |
| | § | |
| **Debtor.** | § | **CHAPTER 11** |

| | | |
|---|---|---|
| **2999TC ACQUISITIONS, LLC,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | **ADVERSARY NO. ____________** |
| | § | |
| **HNGH TURTLE CREEK, LLC,** | § | |
| **Defendant.** | § | |

**2999TC ACQUISITIONS, LLC'S**
**ORIGINAL COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY RELIEF[1]**

**TO THE HONORABLE UNITED STATES BANKRUPTCY COURT**

COMES NOW 2999TC Acquisitions, LLC (f/k/a MO2999 TC, LLC) ("Acquisitions" or "Plaintiff"), Plaintiff in the above styled and numbered case, and files this, its Original Complaint against HNGH Turtle Creek, LLC (the "Defendant" or "HNGH") as an adversary proceeding in the above case and would show the Court the following:

[1] The relief sought herein is mandated that it be presented in the form of an adversary proceeding and not by motion practice. Further the orders and plan at issue place jurisdiction of these types of disputes before this Court and in this form.

## JURISDICTION AND VENUE

1. This Court has jurisdiction of this adversary proceeding, which arises under the Bankruptcy Code and relates to the above-captioned Chapter 11 Case, pending in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, pursuant to 28 U.S.C. §§ 157 and 1334(b).

2. This adversary proceeding is a "core" proceeding, to be heard and determined by this Court, pursuant to 28 U.S.C. § 157(b)(2).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1409.

4. The statutory and legal predicates for the relief sought herein are FRBP 7001(9) and state court causes of action and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

5. Pursuant to Bankruptcy Rule 7008, the Plaintiff consents to entry of final orders or judgments by this Court.

## PARTIES

6. Plaintiff is a Delaware limited liability company with its principal place of business located at 13901 Midway Road, Suite 102-243, Dallas, Texas 75244.

7. Defendant HNGH Turtle Creek, LLC ("HNGH") is a Delaware limited liability company which does not have a registered agent in the State of Texas and is not registered to do business in the State of Texas. HNGH, therefore, may be served through the Texas Secretary of State, with copies to be mailed by the Secretary of State, deliverable to its registered agent in the State of Delaware, Capital Services, Inc., 1675 South State Street, Suite B, Dover, Delaware 19901.

**FACTS AS TO ALL CLAIMS**

8. The primary dispute between Plaintiff and HNGH involves a hotly- contested title to 2999 Turtle Creek, Dallas, Texas (the "Property"), which Plaintiff acquired on September 19, 2019 with the intent of developing a luxury hotel and branded residential project.

9. As part of the original closing on the acquisition of the Property, Plaintiff obtained a loan and executed Deed of Trust, Security Agreement and Fixture Filing (the "Deed of Trust") as well as an Assignment of Leases and Rents ("Assignment of Leases") for the benefit of 2999 Turtle Creek, LLC (the "Original Lender" and not to be confused with the Plaintiff), as well as a Secured Promissory Note (the "Note") in favor of the Original Lender, and other related documents (collectively, the "Loan"). The Loan was personally guaranteed by Mr. Timothy Barton, President of the Plaintiff.

10. Upon information and belief, on or about January 24, 2020, HNGH reportedly acquired a "junior participation interest" in a minority percentage of the Loan through a participation agreement with the Original Lender. It is Plaintiff's firm belief – born by the HNGH Parties' actions – that the HNGH Parties got involved in this project for the express purpose of predatorily seizing ownership of the Property from Plaintiff by any means necessary.

11. These disputes primarily revolved around a deed in lieu of the Property, which was delivered to HNGH pre-petition as collateral but not recorded prior to this Chapter 11 case (the "Deed in Lieu"). The Deed in Lieu was intended to be held in escrow, but HNGH instead improperly and untimely filed it in the Dallas County clerk's real property records.

12. Plaintiff filed its voluntary petition commencing this Chapter 11 bankruptcy case on October 29, 2021 as a defensive pettion to preserve its rights in the Property.

13. Unbeknownst to the Plaintiff, on or about December 7, 2021, HNGH reportedly acquired all remaining interest in the Loan from the Original Lender.

14. The next day, December 8, 2021, HNGH recorded an Assignment of the Deed of Trust and Assignment of Leases and Rents in the property records of Dallas County, Texas. HNGH did so by taking out a separate loan from Happy State Bank ("HSB"). HNGH collaterally assigned the Deed of Trust and loan documents to HSB and indorsed and delivered the Original Note as collateral. HNGH's deal with HSB was finalized on December 3, 2021 – 5 days *before* HNGH actually acquired the remaining interests in the Loan.

15. It is understandable that the HNGH Parties would want to obtain the Property on the terms proposed by HNGH. The Property is worth over $80,000,000. The debt to HNGH is approximately $40,000,000. Plaintiff has opinions and appraisals by third parties and commitments from lenders that establish that valuation.

16. Plaintiff thereafter filed a prior adversary proceeding against the HNGH Parties. (Adversary Proceeding No. 21-03085 herein).

17. Despite these disputes, throughout the pendency of this case, Plaintiff has well compensated HNGH for forbearance and extensions of deadlines. To date, Plaintiff has paid to HNGH over $8 million as described below, excluding payments made in 2019 and 2020 -and yet the outstanding amount due from the original principal amount of $32.5 million is still over $40 million.

| **Payment Date** | **Amount** | **Description (Forbearance Agreement & BK Agreed Order)** |
|---|---:|---|
| 1/5/21 | $100,000.00 | Consideration Payment / Interest |
| 2/2/21 | $100,000.00 | Consideration Payment / Interest |
| 3/1/21 | $100,000.00 | Consideration Payment / Interest |
| 3/18/21 | $35,000.00 | Legal Fees |
| 4/12/21 | $50,000.00 | Consideration Payment / Interest |
| 4/14/21 | $50,000.00 | Consideration Payment / Interest |
| 5/10/21 | $50,000.00 | Consideration Payment / Interest |

| | | |
|---|---|---|
| 5/10/21 | $50,000.00 | Consideration Payment / Interest |
| 5/31/21 | $337,827.55 | Dallas County Tax Office (Property Taxes) |
| 6/1/21 | $50,000.00 | Consideration Payment / Interest |
| 6/4/21 | $50,000.00 | Consideration Payment / Interest |
| 7/1/21 | $100,000.00 | Consideration Payment / Interest |
| 7/30/21 | $744,422.00 | Remaining Interest Reserve |
| 7/30/21 | $784,074.00 | Extension Deposit (applied to interest) |
| 2/28/22 | $409,284.32 | Dallas County Tax Office (Property Taxes) |
| 12/14/21 | $500,000.00 | Consideration Payment |
| 12/31/21 | $500,000.00 | Consideration Payment |
| 1/14/22 | $500,000.00 | Consideration Payment |
| 2/1/22 | $500,000.00 | Consideration Payment |
| 3/1/22 | $500,000.00 | Consideration Payment |
| 3/15/22 | $1,000,000.00 | Agreed Order (towards Allowed Claim of $2M) |
| 3/25/22 | $2,500,000.00 | Agreed Order ($1M - Allowed Claim & $2.5M - PayOff |
| **TOTAL** | **$9,010,607.87** | |

18. Plaintiff intended to resolve these disputes pursuant to an Agreed Order [Doc. 64] Regarding Motion to Lift Stay [Doc. 10], Motion to Dismiss [Doc. 9], Motion for Sanctions [Doc. 15] and Motion to Enforce Stay [Doc. 14] entered on December 10, 2021 (the "December Agreed Order"), which was approved and signed by the Court on December 10, 2021 and constituted a contractual settlement agreement. A further Agreed Order was entered on March 17, 2022, that extended certain deadlines in the December Agreed Order and were later amended to add additional terms benefitting HNGH (collectively, the "Agreed Orders").

19. The Agreed Orders provided, among other things, that:

a. HNGH would, by May 30, 2022, present for recording a "Recission Deed," held in escrow by HNGH's counsel, which would (1) cause the improperly-filed

Deed in Lieu to be "deemed rescinded and avoided", and (2) confirm that Plaintiff "shall retain all title to the Property"2;

b. HNGH would by recording of the Rescission Deed, cause the recission of the Deed in Lieu transaction;

c. HGNH would reinstate the Note and security documents, which would be contemporaneously released with the Payoff Event and recording of the Recission Deed; and

d. Plaintiff would, by May 31, 2022, pay a final payoff to HNGH (the "Payoff Event" or "Final Payoff," the amount of which is under seal).

Pursuant to, and in good faith reliance on, the March Agreed Order, Plaintiff dismissed its first Adversary Proceeding against HNGH and related parties.

20. It was, conceptually, a simple transaction: HGNH would rescind the Deed in Lieu transaction, reinstate the Note and related documents, get paid the Payoff Amount, and cancel the Note and related documents as paid in full. Of course, as in all commercial real estate transactions, these components of the transaction are accomplished by a simultaneous closing at a title company. In addition, the Plaintiff's confirmed plan of reorganization specifically contemplated that the recission would be accomplished by the transfer of the Property to a new entity and a loan from a third-party lender (the "Lender"). Lenders who loan millions of dollars are not stupid: they rightly insist upon clear title to their collateral. Unfortunately, it is the Plaintiff's position that HGNH did not provide the appropriate documentation to provide clean, clear title and carry out the provisions of the Agreed Orders.

---

[2] The December Agreed order provided: "ORDERED, ADJUDGED AND DECREED that the automatic stay shall remain in full force and effect as to HNGH through 5:00 p.m. central time, March 15, 2022, (the "Payoff Deadline") by which the Plaintiff shall make payment to HNGH in the amount set forth on Exhibit A to this Order, which exhibit is filed under seal, in full and final satisfaction of the Note (the "Payoff Amount"), **which note shall be reinstated immediately prior to the Plaintiff's payment to HNGH of the Payoff Amount** and **counsel for HNGH shall hold the rescission deed** during the pendency of the term of this Agreed Order and shall have no liability to the Plaintiff or any other party by way of holding such deed or releasing the deed in accordance with the terms of this Agreed Order."

21. On May 18, 2022, the Court entered an order confirming the Plaintiff's Third Amended Plan of Reorganization [Dkt. No. 108] (the "Plan").The Agreed Orders are incorporated into the Plan by reference.

22. Despite the Agreed Orders' requirement to do so, HGNH never provided an actual Rescission Deed prior to the May 30, 2022, deadline. Instead (and in pale comparison of what had been required), on Friday May 27, 2022 (the Friday preceding the Memorial Day holiday weekend), HNGH provided Plaintiff with a signed "Special Warranty Deed" which it claimed was sufficient to constitute a rescission of the Deed in Lieu. This Special Warranty Deed is – by law – a conveyance and transfer of the property and ***not*** a rescission, which conflicts with any purported rescission language, and which would create potential title ambiguities and tax issues. A special warranty deed ***does not*** accomplish a recission. A special warranty deed evidences that the Property was conveyed to HNGH and then, after several months, reconveyed to the Plaintiff – without proving the details of chain of title and any changes or encumbrances thereto. That it isn't a recission and has serious negative effects to the clarity of title of the Property and income tax consequences.

23. Plaintiff contends that HNGH also failed to deliver other customary documents and assurances necessary to accomplish a recission and ensure delivery of unencumbered title on May 30, 2022. HNGH disputes this contention which is the reason for this complaint.

24. Alarmed by HNGH's failure to timely deliver documents beyond the non-conforming Special Warranty Deed, on May 30, 2022, counsel for Plaintiff issued to counsel for HNGH a detailed letter identifying numerous items HNGH still needed to provide.[3]

[3] HNGH complains that the letter was not timely. The Plaintiff complains that these were customary and necessary documents needed to effectuate a recission. For example, who has the note, HNGH or HSP? No lender in its right

25. Plaintiff had secured funding and was preparing to make the Final Payoff on May 31, 2022, as required by the Agreed Orders. However, after – and *because* – HNGH failed by May 30, 2022 to comply with the terms of the Agreed Orders the lenders, of course, would not consummate the loan without compliance by HNGH with the Agreed Orders and establish clear title. Plaintiff has secured committed funding and will pay off HNGH as soon as the title to the Property is clean, clear and HNGH has provided proper recission documents. The letter provided by Plaintiff's counsel to HNGH describes what should be done to clean the title to the Property.

26. Among other failures, HNGH failed to specifically perform its condition precedent obligations under the Agreed Orders by May 30, 2022, in the following ways:

a. HNGH failed to present a proper *recission deed*, and instead presented a Special Warranty Deed and does not accomplish a recission.

b. HNGH failed to deliver customary closing documents and assurances to effectuate the recission, as thoroughly set forth in the letter provided by Plaintiff's counsel to HNGH; and

c. HNGH failed to disclose the encumbrance on the Property in favor of HSB, and instead made inaccurate statements claiming no such encumbrance existed. The position of HSB is indeed material for closing a recission

Any one of these failings standing alone is sufficient to find HNGH in breach of the Agreed Orders.

27. The Special Warranty Deed prepared by HNGH is not consistent with the Agreed Orders. Texas real property law provides that the goal of a rescission is to avoid the contract and, in this case, the Deed, from its inception, **placing the parties in the position they occupied *before* the instrument was executed**. *Ginn v. NCI Bldg. Sys. Inc.*, 472 S.W.3d 802, 837 (2015); *see also Hunt County Oil Co. v. Scott*, 67 S.W. 451, 452 (Tex. Civ. App.—1902, writ ref'd). A special

---

mind would make a huge loan without a clean title, cancellation of any note and releases of liens, among other documents. The Plaintiff says that HNGH was to provide these documents. HNGH says that the Plaintiff didn't ask. None of that matters because the fact is that HNGH has yet to produce recission documents.

warranty deed "conveys the land itself," but "does not, of itself, carry notice of defects in title." *Chesapeake Exploration, L.L.C. v. Dallas Area Parkinsonism Soc'y High Plains Div. Inc*. No. 07-10-0397-CV, 2011 WL 3717082, at 6 (Tex. App. – Amarillo, Aug. 24, 2011). Thus, the Special Warranty Deed provided by HNGH evidenced a reconveyance, not a recission, and did not satisfy the Agreed Orders' requirement to *rescind* the Deed in Lieu. Indeed, the inclusion of a deed restriction would not be possible under an actual *recission*. As such, HNGH's delivery of the Special Warranty Deed instead of a Rescission Deed is a clear first material breach of the Agreed Orders, and the parties' contractual settlement agreements.

28. The letter from Plaintiff's counsel dated May 30, 2022 describes the additional items required by HNGH to be delivered to the title company as escrow agent, as customarily requested and required in commercial real estate transactions (the "Deliverables"), and which will effectively satisfy the need to establish clear title, and thus close on the Property.

29. In response to such letter, HNGH, by and through counsel, has requested that such Deliverables be limited to those it self-servingly believes are necessary to close this transaction. Plaintiff contends HNGH is massively incorrect. The parties agreed to work together to facilitate a payoff to HNGH through the vehicle of a new loan from a third party to Plaintiff or its assignee. HGNH knew that a lender would require the documents necessary to effectuate a recission: detailed loan documents and corporate/authority documents and necessary affidavit(s) would be needed to complete the recission and satisfy routine title requirements, as well as the reasonable requirements of any new lender, purchaser, and its investor.

30. HNGH's failure to deliver any one or more of the Deliverables to the title company as escrow agent, as customarily requested and required in commercial loan and real estate

transactions such as this, constitutes another breach and of the Agreed Orders, which caused the desired closing to be delayed.

31. HNGH's Proof of Claim in this case, filed March 8, 2022, states at Item 9 as follows: "HNGH is the owner and holder of the Note, the Deed of Trust and all related Liens and security interests." No disclosure is made of HSB's claimed lien on the loan documents and the resulting cloud on the title of the Property.

32. Plaintiff's counsel asked counsel for HNGH about HSB's position in connection with Plaintiff and was advised in writing that HSB had nothing to do with this transaction. Thus, it was a surprise to Plaintiff on May 31, 2022, to receive first a Payoff Statement from HSB, and then a directive ro deliver over $26M to HSB from the closing - which is directly contrary to the Agreed Orders and statements of HNGH's counsel. HNGH had not provided a similar instruction to Plaintiff. Rather on May 31, 2022, contrary to HSB's Payoff Statement, HNGH provided via its wiring instructions that all funds to be sent to it. HNGH never told Plaintiff that a portion of the funds should be sent to HSB. Plaintiff was then faced with conflicting instructions for payment of millions of dollars from a third-party lender. It is in no way surprising - and in no way Plaintiff's fault - that, faced with such a dilemma, the closing could not timely continue.

33. HNGH's encumbrance with HSB, as well as the HNGH's failure to disclose the same, constitute a breach of the Agreed Orders.

## CAUSES OF ACTION

### Count One:
### Breach of Contract

34. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

35. Plaintiff asserts that HNGH breached the express terms and/or implied covenants of the Agreed Orders, which are contracts between the parties, and/or alternatively anticipatorily breached one or more terms of the Agreed Orders in the following ways:

a. failing to place an executed Rescission Deed into escrow with its counsel during the pendency of the term of the Agreed Order;

b. refusing to timely provide a Rescission Deed to be held in escrow pending closing of the transaction and instead providing a non-conforming Special Warranty Deed;

c. failing to timely provide the necessary HNGH Deliverables to effectuate closing; and

d. not delivering confirmation and evidence of the proper indorsement and delivery of the Promissory Note from HSB to be thereafter marked paid in full, terminated, or voided at closing by HNGH or at HNGH's direction and HSB's ratification and consent of HNGH's actions taken as related to the Agreed Order and the Loan.

36. A a result of each of HNGH's multiple breaches, Plaintiff has incurred damages. Plaintiff further has a claim for performance of the orders and agreements at issue and the Plaintiff's performance has been suspended by the failure to perform first by HNGH. The exact amount of damages will be calculated at trial. Plaintiff is also entitled to its reasonable attorneys' fees for such breach.

**Count Two:**
**<u>Request for Declaratory Judgment</u>**

37. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

38. Plaintiff requests that the Court enter a declaratory judgment under the Texas Declaratory Judgment Act (Chapter 37 of the Texas Civil Practice and Remedies Code) to determine the rights, status, and obligations of the parties under the Contractual Settlement

Agreement, Agreed Orders and Confirmed Plan of Reorganization. More specifically, Plaintiff requests that the Court declare that:

a. Plaintiff is the rightful owner of title to the Property; and

b. The lis pendens Debtor filed in the Dallas County land records is valid and enforceable until clear title in Plaintiff's favor is reestablished.

Plaintiff is entitled to its reasonable attorneys fees for this claim.

## **PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that this Honorable Court enter an Order as follows:

a. ruling in favor of Plaintiff on its breach of contract claim and award actual damages incurred by Plaintiff as a result of HNGH's conduct and further award Plaintiff the title to the Property at issue;

b. issuing declaratory relief, including one or more declarations in the manner sought in this Complaint;

c. award Plaintiff all costs of court and attorneys' fees; and

d. grant such other and further relief in law or in equity to which Plaintiff may show itself entitled.

Dated: June 9, 2022

Respectfully submitted,

*/s/ Joyce W. Lindauer*

Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
joyce@joycelindauer.com

Attorneys for Debtor/Plaintiff